Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: 214-855-7500
Facsimile: 214-855-7584

ATTORNEYS FOR LESLIE PRITCHARD/DEFENDANTS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

## ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW Leslie Pritchard ("Pritchard"), court-appointed liquidator for Galmor

Family Limited Partnership (the "GFLP") and Galmor Management, L.L.C. ("GM," with GFLP,

the "Defendants"), the defendants in the above styled and numbered Adversary Proceeding commenced by Kent Ries (the "Trustee") and, responding to the Trustee's *First Amended Complaint* (the "Complaint"), answer as follows. To the extent any factual allegation is not expressly admitted, it is denied.

## I. **ANSWER**

1.      Pritchard admits the allegations in paragraph 1 of the Complaint.

2.      The undersigned does not represent GFLP. The undersigned represents Pritchard who, pursuant to the Court's *Agreed Judgment: (i) Ordering Supervised Liquidation of Texas Entities; (ii) Appointing Managers of the Same; and (iii) Severing Remaining Claims*, entered at Docket No. 26 in Adversary Proceeding No. 19-2006, Pritchard has been appointed with sole authority to defend GFLP as part of winding it down.

3.      The undersigned does not represent GM. The undersigned represents Pritchard who, pursuant to the Court's *Agreed Judgment: (i) Ordering Supervised Liquidation of Texas Entities; (ii) Appointing Managers of the Same; and (iii) Severing Remaining Claims*, entered at Docket No. 26 in Adversary Proceeding No. 19-2006, Pritchard has been appointed with sole authority to defend GM as part of winding it down.

4.      Pritchard admits the allegations in paragraph 4 of the Complaint.

5.      Pritchard admits the allegations in paragraph 5 of the Complaint.

6.      Pritchard generally admits the first two sentences of paragraph 6 of the Complaint, subject to specific amounts. Pritchard denies the allegations in the third sentence of paragraph 6 of the Complaint.

7.      Pritchard admits that that is what the sworn schedules show, but denies the underlying allegations contained in paragraph 7 of the Complaint, or that either Defendant owes the Trustee anything.

8.      Pritchard admits that that is what the sworn schedules and other documents show, but denies the underlying allegations contained in paragraph 8 of the Complaint, or that either Defendant owes the Trustee anything.

9.      Pritchard denies all allegations contained in paragraph 9 of the Complaint, and she denies that the Trustee is entitled to any relief.

10.     Paragraph 10 of the Complaint asserts conclusions of law to which no response is required.  Pritchard denies that the Trustee is entitled to any relief.

11.     Pritchard denies the allegations in paragraph 11 of the Complaint.

## II.     DEFENSES AND AFFIRMATIVE DEFENSES

12.     The alleged debts the Trustee sues on are barred by the Statute of Frauds and the Statute of Limitations.

13.     The alleged debts the Trustee sues on are barred by latches, estoppel, and the unclean hands of Debtor Galmor.

14.     In managing the Defendants, upon information and belief Debtor Galmor engaged in large and systematic self-dealing, breaching his fiduciary duties.  His actions and statements, including on any schedules, are not binding on the Defendants due to his self-dealing and *ultra vires* actions, and his breaches of fiduciary duty.

15.     To the extent that Debtor Galmor was funding the Defendants from himself or his other companies, even as he was denuding the Defendants of their property and funds for his personal benefit, such funding was in the nature of a volunteer without a reasonable expectation of repayment, much less a binding agreement of repayment.

16.     To the extent that the Defendants incurred any obligation as alleged in the Complaint, any such obligation is not binding for Debtor Galmor's failure to follow underlying requirements for obtaining debt and for his *ultra vires* acts.

17. The Trustee's claims are barred by the frauds and illegalities of Debtor Galmor, in whose shoes the Trustee stands.

18. The Trustee's claims are barred by the waiver, accord and satisfaction, and assumption of risk of Debtor Galmor, in whose shoes the Trustee stands.

### III.    COUNTERCLAIM

The Defendants hereby assert the following *Counterclaim* (the "Counterclaim") and pray that the Trustee be cited to appear and to answer the Counterclaim.

19. The Court has jurisdiction over the Counterclaim under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2) as it affects a recovery of the estate. To the extent that the Counterclaim is not core, the Defendants consent to this Court's entry of a final judgment over the same.

20. Bobby Don Galmor and Shirley Jo Galmor set up GFLP and GM as part of a complicated series of estate planning documents. Over time, and through various and complicated transactions, they vested the GFLP with various assets consisting mainly of real property and improvements, mineral interests, equipment, and a rock quarry they owned directly or indirectly, for the ultimate purpose of benefiting their five children upon their deaths. They entrusted the management of GFLP and GM to their oldest son, Michael Stephen Galmor (the "Debtor"), who was co-manager with them prior to their deaths and sole manager after their deaths.

21. Bobby Don Galmor died in in April, 2013, and Shirley Jo Galmor died in March, 2017.

22. Thereafter, and at all times relevant hereto, the Debtor managed GFLP and GM, which was the general partner of GFLP. As such, the Debtor owed fiduciary duties to GFLP and GM and to the other limited partners of GFLP.

23. At all times relevant hereto, the limited partners in the GFLP were, directly or indirectly, the Debtor, his sister Pritchard, and their siblings Randy Mark Galmor, Traci Marie Galmor Wilson, and Shawn D'Lee Galmor Sanders (collectively, the "<u>Five Children</u>"). Therefore, cutting through the various layers of documents and potential trust entities, the result was simple: the parents entrusted their older son, the Debtor, to manage GFLP and its property for the benefit of all Five Children equally, such that each of the Five Children would have their parents' financial legacies to support them, provide income, and provide financial benefit.

24. In addition to the Debtor's actual fiduciary duties to GFLP and GM, and the Five Children, he held the duties of a trustee imposed by law for the benefit of the Five Children, due to the special trust given him by his parents and, indirectly, the remaining Five Children. Among other things, all of these fiduciary, trust, contractual, and common law duties prevented the Debtor from self-dealing with the property of GFLP for less than fair value, prevented him from committing waste, and prevented him from using or taking GFLP property as his own.

25. Prior to the Petition Date, the GFLP owned extensive assets. These assets included: (i) land; (ii) mineral interests; (iii) a rock quarry; (iv) vehicles; (v) machinery; (vi) equipment; and (vii) tools. Notwithstanding his fiduciary duties and obligations to the GFLP and the GM, the Debtor, upon information and belief, caused the following transfers to occur to or for his personal benefit:

    (i)        a transfer of a 175 acre tract of land and improvements referred to as 6535 Highway 83, Shamrock, Texas 79079, owned by GFLP, transferred to the Debtor for the purported price of $225,000 in September, 2014, when the actual value thereof was in excess of $500,000, and with the purchase price secured by an alleged vendor's lien securing a promissory note, which the Debtor failed to pay under and then failed to foreclose on the vendor's lien;

(ii)     a transfer of two tracts of land in Wheeler County, Texas, called the "gin yard" and the "Miller property," to the Debtor from the GFLP in September and October, 2014, for $70,000, which was less than reasonably equivalent value, with the Debtor executing a deed of trust to secure the purchase price and alleged promissory note, which the Debtor failed to pay under and then failed to foreclose on deed of trust, and then the subsequent release of that deed of trust in July, 2015, for less than reasonably equivalent value;

(iii)    the removal and extraction of a large quantity of sand, gravel, and rock from real property owned by the GFLP, to the Debtor or a business owned by the Debtor, without the Debtor or such business paying the GFLP for the same;

(iv)    the transfer of mineral interests owned by the GFLP by the Debtor to himself or others for no return consideration to the GFLP, or the taking by the Debtor or royalties and other payments paid by third parties to GFLP for the same, with no return consideration to the GFLP;

(v)     the taking of cash and other property, including vehicles, equipment, tools, and supplies, from the GFLP by the Debtor, to pay for his personal expenses, including improvements to his properties and his land, his lifestyle, and his businesses, with no return consideration to the GFLP; and

(vi)    the use of real and personal property of the GFLP by the Debtor for his personal benefit, including by grazing livestock on real property owned by the GFLP, for no return consideration to the GFLP.

26.     The foregoing were actually fraudulent transfers or constructively fraudulent transfers by the Debtor of GFLP property to himself, in order to defraud the other beneficiaries of the GFLP.  The foregoing constituted breaches of fiduciary duty by the Debtor in the nature of

self-dealing and waste. The foregoing constituted conversion and defalcation by the Debtor of property of the GFLP and GM while acting in a fiduciary capacity. The foregoing constituted breaches of trust by the Debtor.

27. Upon information and belief, the amount of property of the GFLP and the GM that the Debtor took for himself or for his benefit, with no return consideration, and the damages resulting from his breaches of fiduciary duty, waste, conversion, defalcation, and breaches of trust exceed the amount of any claim of the Debtor, his Estate, or the Trustee against the GFLP and GM as otherwise asserted by the Trustee in this Adversary Proceeding, and the amount of any distribution of the property of the GFLP and GM otherwise distributable to the Debtor or the Estate upon a final liquidation and accounting of the GFLP and GM.

28. The Defendants therefore seek a setoff of all such amounts against any amounts owing to the Trustee in this Adversary Proceeding, and a forfeiture by the Debtor and the Estate of all amounts otherwise distributable to the Debtor and the Estate on account of his interests in the GFLP and GM. Thus, whatever portion of the liquidation proceeds of GFLP and GM that the Debtor and the Estate would otherwise be entitled to should be redistributed between the remaining Five Children.

29. As the Trustee's claims against GFLP and GM, whether on account of alleged debt or for a portion of the liquidation proceeds of GFLP and GM arise prepetition, the Estate stands in the shoes of the Debtor for purposes of the same and is subject to all defenses, legal and equitable, that the Debtor would be subject to.

30. The Defendants do not seek a money judgment on account of the Counterclaim.

31. The Counterclaim is not asserted against the estate of Galmor's / G&G Steam Service, Inc., or the Trustee in his capacity as the trustee of the same.

## IV.    **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Defendants pray that the Court render judgment as follows:

(i)    ordering that the Trustee take nothing by his Complaint;

(ii)    ordering that, to the extent the Trustee has a claim against GFLP and/or GM, such claim be setoff and reduced by the self-dealing, fraudulent transfers, breaches of fiduciary duty and trust, conversion, and defalcation, and damages, caused by the Debtor's breaches of duty and torts to the GFLP and GM;

(iii)    ordering that any distribution of the proceeds and assets of GFLP and GM otherwise payable to the Debtor and the Estate on account of their interests in the GFLP and GM be forfeited and redistributed to the remaining beneficial interest holders therein, *i.e.* the other four of the Five Children;

(iv)    awarding the Defendants their reasonable attorney's fees and costs incurred herein; and

(v)    granting the Defendants such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 12th day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 North Akard St.
    Dallas, Texas  75201
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375

**ATTORNEYS FOR LESLIE PRITCHARD/DEFENDANTS**

## **CERTICIATE OF SERVICE**

The undersigned hereby certifies that, on this the 12th day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on Kent Ries, the plaintiff herein.

By: /s/  Davor Rukavina
Davor Rukavina, Esq.