IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' OBJECTION AND RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL DEFENDANTS TO ANSWER DISCOVERY**

TO THE HONORABLE ROBERT JONES, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Leslie Pritchard ("Pritchard"), court-appointed liquidator for Galmor Family Limited Partnership (the "GFLP") and Galmor Management, L.L.C. ("GM," with GFLP, the "Defendants"), the defendants in the above styled and numbered Adversary Proceeding, and files this *Objection and Response to Plaintiff's Motion to Compel Defendants to Answer Discovery* (the "Response"), and in support thereof would respectfully show as follows:

## I.    <u>Introduction</u>

1.    Going into the "fourth quarter" of this case, the score is as follows: Defendants have expended many hours obtaining thousands of documents from a dozen third parties, and have sorted and produced the same to the Trustee, all at their own expense, while the Trustee has produced only a scattering of unverifiable documents and has instead relied on copies of computer printouts from other litigation and perjurious bankruptcy schedules; Defendants have proffered an expert forensic accountant who produced an expert report and sat for a deposition, while the Trustee has defaulted on his own expert deadlines; and Defendants have produced clear evidence where they have the burden while the Trustee has yet to produce any evidence of his alleged claims, while hiding the ball regarding an accountant who possesses critical records.

2.    Now, the Trustee complains that Defendants' interrogatory responses are mere "conclusory legal statements" and that "responsive documents will be produced" is an improper answer to a document production request.  This should not be countenanced.  The Trustee, having the burden of first showing a debt exists, and second, that there has been a default on the same, requests that this Court compel Defendants to do his work for him.  In the end, the debt on which the Trustee sues "exists" only on patently false bankruptcy schedules.  That the Trustee does not like the answers he received in discovery speaks only to the lack of merit in his case and to the poor drafting of his discovery requests.

## II.    <u>Background</u>[1]

3.    Two areas of background are relevant and important.  First, neither Pritchard nor the Trustee have personal knowledge of the matters at issue in this Adversary Proceeding; accordingly, they must rely on documentary evidence, accountants, and third-party testimony to

---

[1] This Response is supported by and cites to the *Declaration of Thomas Berghman* (the "<u>Declaration</u>"), attached hereto as Exhibit 1.

prove their respective cases. Second, Pritchard has made extensive efforts to reconstruct the financial history of the Defendants including prosecuting a dozen subpoenas and collating thousands of documents. Relying on the same, Pritchard has responded to the Trustee's discovery in a fulsome manner.

A.   **Management of the Defendants and Access to Records**

4.      On April 24, 2020, Pritchard was appointed the sole manager and liquidator of the GFLP and GM.[2]  Pritchard, having been excluded from any and all management of Defendants by the Debtor Michael Stephen Galmor ("MSG") prepetition, and likewise having been excluded during the Trustee's custodianship over Defendants following the Trustee's appointment, has no personal knowledge of the operations of the GFLP or GM prior to her appointment as liquidator. Instead, as asserted in the Trustee's *Original Complaint* in this action, prior to the Bankruptcy Cases "[MSG] was the only party who can speak on behalf of the [G]FLP as its management at the time the [Debtor's] schedules were filed."[3]

5.      Subsequent to the conversion of the Bankruptcy Cases, the Trustee inherited management powers for some fifteen (15) months.[4]

6.      The Trustee initiated this adversary proceeding on April 24, 2020.  The Trustee's complaint was amended on May 29, 2020.  The sum total of the factual allegations in the Trustee's *First Amended Complaint* are that (i) Defendants are indebted according to the Debtors' schedules; (ii) the Debtors extended funds to the GFLP to fund operations; and (iii) Debtor MSG (and other

---

[2] *See* Adversary Proceeding 19-02006-rlj Doc. 26, *Agreed Judgment: (i) Ordering Supervised Liquidation of Texas Entities; (ii) Appointing Managers of the Same; and (iii) Severing Remaining Claims* (the "Liquidation Order")

[3] *See* Doc. 1 at page 3, para 9.

[4] *See Ebert v. Devries Family Farm, LLC (In re Devries)*, 2014 Bankr. LEXIS 3621, *39 (Bankr. N.D. Tex., Aug. 27, 2014 ) (Lynn, B.J.) ("[W]hen a member of a limited liability company files for bankruptcy, his or her interest in the LLC, and any rights he or she has under the LLC's operating agreement, become property of the estate.")

employees of the GFLP) were not paid certain wages.[5]  The Trustee has the burden of proof on all

of this.

7.        Neither Pritchard (as the representative of the corporate Defendants) nor the Trustee

can testify to the existence of the debt upon which the Trustee has sued.  Disappointingly, despite

having been appointed Chapter 7 Trustee some fifteen (15) months prior to the entry of the

Liquidation Order, and therefore despite having been in control of Defendants for that time, and

despite having unique powers for the turnover of books and records of the Estates,[6] upon

Pritchard's assumption of the liquidator role of the Defendants, the Trustee did not turn over any

information or documents related to the Defendants.

8.        Accordingly, upon her appointment as liquidator, Pritchard was left no choice but

to construct from scratch the financial activities and actions of Defendants.  Parallel to this

litigation, then, starting in May 2020, Pritchard has worked to obtain and liquidate property

belonging to the Defendants, as evidenced by other motion practice in the Bankruptcy Cases.

9.        In terms of obtaining books and records of the Defendants, Pritchard has been busy.

Pursuant to the Liquidation Order, Pritchard is authorized, *inter alia*:

- to investigate, including through subpoena issue in the name of this Court, all prior actions, finances, and transactions of [the GFLP and GMLLC], including all prior actions and transactions of any prior management, including MSG and any agent thereof;

- to assemble, take, marshal, and keep all property of GFLP and GMLLC, including all books and records, bank accounts, accounts receivable, land records, tax records, credit card files, and privileges, further including all passwords, and to compel the same through subpoena duces tecum or through subsequent order of the Court

---

[5] *See* Doc. 10, *First Amended Complaint* p. 3 para. 7–9.

[6] *See, e.g.,* 11 U.S.C. § 542(e).

10. Exercising these powers, Pritchard, through counsel, issued twelve (12) subpoenas (the "Subpoenas") to third parties believed to have documents or information relating to the GFLP or GM, including financial institutions, accounting firms, and title companies. Declaration at pp. 8–147.[7]

11. In response to the Subpoenas, thousands of pages of documents were produced by third parties. *Id.* at p. 6 para. 26. The responsive documents were received by Pritchard's counsel, the undersigned law firm of Munsch Hardt Kopf & Harr, P.C. *Id.* at p. 4 para 17. In addition, Pritchard had separately obtained certain documents related to the Debtors in collateral litigation. The documents produced in response to the Subpoenas and the separate documents in Pritchard's possession were scanned and indexed into an electronic electronic-discovery platform named CS Disco. *Id.* at pp. 4–6 para. 17–23. Starting in May 2020, the database maintained on the CS Disco became the ordinarily-kept business records of the Defendants under Pritchard's management. *Id.*

## B. The Trustee's Discovery Requests

12. On June 22, 2020, Defendants filed their *Answer to First Amended Complaint* [Doc. 11]. On September 28, 2020, the Trustee served discovery requests upon Defendants. With respect to the Trustee's interrogatories and requests for production, Defendants were unable to immediately respond. Not having received any documents from the Trustee upon her appointment as liquidator and there being no centralized place containing Defendants' business records, as described above Pritchard issued a dozen subpoenas in order to obtain documents related to the financial history of Defendants. Receiving responsive documents from third parties in possession

---

[7] The third parties on whom Pritchard issued the Subpoenas include AimBank, Centennial Bank, Deena Carter, Eden Sprowls & Company, PC, First State Bank of Mobeetie, Great Plans Bank, Happy State Bank, Kellye Fuchs, PK & Associates, PK & Company, Shelton Title Company, and Wheeler Title Company.

of same would permit her not only to collect and liquidate Defendants' assets but, by extension, to participate fully in this litigation including responding to the Trustee's discovery requests.

13.     Following the intake of thousands of pages of third-party documents over the previous year or more, and following the retention of an expert in forensic auditing to analyze discrete issues, on August 23, 2021, Pritchard served answers to Interrogatories and RFPs. *Id.* at p. 6 para 24. The Interrogatory responses contained assertions and qualified that discovery was ongoing, and that the responses would be supplemented accordingly. *Id.* at pp. 149–155. The RFP responses as to each request stated that responsive documents would be produced (i.e. Defendants did not object to the RFPs). *Id.* at pp. 157–58.

14.     On September 20, 2021, an "FTP" link was created and sent to the Trustee containing responsive documents. *Id.* at p. 6 para. 25; pp. 162.

15.     On September 21, 2021 (less than 24 hours from receipt of the download link), the Trustee complained about the production. *Id.* at pp. 161–62. Again on September 23, 2021, the Trustee conferred with counsel for Pritchard regarding the document production, complaining that the production required the Trustee to engage in a "digital easter egg hunt." *Id.*

16.     On September 29, 2021, counsel for Pritchard responded via letter to the Trustee's inquiry (the "Letter"), and included therein an itemized list of ninety-two (92) line-item descriptions identifying the documents in the production by Bates number and a description of the same. *Id.* at pp. 165–171. For example: "[Bates] 14778 AimBank Statements for Shirley Galmor" or "5787-7853 Documents related to the Shirley J. Galmor case, including medical records."

17.     The Letter further advised that,

> First, these documents are being produced both in response to your
> document requests and pursuant to the Defendants' obligations
> under Rule 26(a)(1)(A)(ii) to produce all documents in their
> possession, custody or control that may be used to support the

Defendants' defenses. Second, the documents were produced pursuant to Rule 34(b)(2)(E)(i) in the same manner as they have been kept by Leslie in her capacity for the Defendants – and specifically a document-hosting platform called CS Disco. We are prepared to put on evidence of this if necessary, but we are amenable to providing you access to the same such that you can see it for yourself. Additionally, many of the documents were produced by third parties and were produced to you in the manner received. Third, the documents were produced to you in the format I have used countless times in litigation, specifically to preserve "metadata", which permits a litigant to import the data into their own software and run Boolean searches. Fourth, some 15,000 pages' worth of these documents have been previously produced by your Debtor, so you should have these already. … Finally, although the number of pages is extensive, the production is simple and straightforward, including generally (i) bank statements of several individuals and entities connected to this litigation; (ii) pleadings from the bankruptcy and probate case; (iii) business records related to the FLP; and (iv) correspondence or text messages between individuals connected to the litigation. It takes but a few hours' time to look at and understand what this document production includes.

*Id.*

18.     Counsel sent the Letter via e-mail, including an invitation to discuss by phone. Several additional email exchanges followed without resolution of the issues.

19.     On October 14, 2021, the Trustee filed the Motion. The Motion does not request specific relief, nor state specific discovery defaults, instead requesting vaguely that the Court order Defendants to answer discovery. Defendants presume that this applies to all requests, and so will attempt to respond to the Trustee's argument as such.

### III.     ARGUMENTS & AUTHORITIES

### A.     Production As Kept in the Ordinary Course

20.     A party producing documents has two options: producing documents "as they are kept in the usual course of business" or "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E).

21.     Here, Defendants' document production complies with Rule 34's requirement to produce documents "as they are kept in the usual course of business."  Although the Motion does not cite to a single rule or case, in conferring regarding the Motion, the Trustee pointed counsel for Defendants to this Court's order in *Ries v. Ardinger (In re Adkins Supply, Inc.)*, 555 B.R. 579 (Bankr. N.D. Tex. 2016).

22.     Defendants' document production complies with this Court's opinion in *Adkins Supply, Inc.*  First, the liquidation of Defendants is an ongoing operation which has had regular and current activity ever since Pritchard's appointment eighteen (18) months ago.  For all intents and purposes, the liquidation is much like any other business – it conducts regular activities, engages third parties, maintains records, and otherwise exists for a discrete purpose – to convert assets to money for distribution.  Conversely, in *Ardinger*, and in the cases cited in *Ardinger*, the producing party was "no longer functioning and the business records [were] placed in storage." *In re Adkins Supply, Inc.*, 555 B.R. at 592–94.  One need only examine the bankruptcy case docket or ask anyone in the town of Shamrock, Texas if Pritchard is engaged in the affairs of gathering and liquidating the assets of the Defendants.  With respect to business records specifically, the Defendants' business records are maintained in an online database (i.e. not in some physical storage facility) which is accessible world-wide, where the viewing party can run a search down to the penny, download, print, email, and otherwise view documents from the comfort of one's living room couch. *Declaration* at p. 5 para 21.  Moreover, Pritchard has maintained and must maintain the books and records of Defendants in an orderly fashion precisely because these documents are necessary in order for the liquidation to actively proceed.

23.     Further, as even pointed out by the Trustee at the latest status conference regarding the turnover motion in the bankruptcy case, Pritchard is under obligations to make certain regular

reports to the Trustee. The liquidation is therefore a business like any other. To construe it otherwise would mean that any business in the process of winding down could never produce documents in the ordinary course – an absurd result.

24.     Even assuming that an online, indexed, searchable database is somehow equivalent to a physical storage shed, Pritchard has complied with the rules in the manner in which the same was made available to the Trustee. As noted in *Ardinger*, the producing party has to "examine, sort, number, and index bankers boxes in storage." *Id.* at *593 (citing *Mizner Grand Condo Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 701 (S.D. Fla. 2010)). Here, Pritchard (and her counsel) have examined, sorted, numbered, and indexed every single document that Pritchard as liquidator possesses, including by using a costly and sophisticated online database (and offering access to same to the Trustee) and in the Letter, by identifying by Bates range all of the documents for the Trustee. Rather than merely inviting the Trustee to sit in a hot storage facility for hours on end poring over faded documents haphazardly organized stuffed in moldy banker's boxes, each and every document of Defendants is indexed, organized, and at the Trustee's fingertips. More than that the rules cannot and should not require.

25.     Finally, the documents were produced in a format that preserves and makes "metadata" available for review. Counsel for Pritchard made this clear to the Trustee. This is especially important here because it is Defendants' position that the debt does not exist. Metadata can identify the date a document or QuickBooks entry is created. To the extent the Debtors' bankruptcy schedules show some obligation running from Defendants to the Debtors' Estates, then, the metadata of any "supporting" documents would reveal whether such an obligation were recorded contemporaneously or whether they were conveniently created sometime later.

26.     Thus, because Defendants are concerned with the authenticity of documents, Defendants produced documents in a format that preserves metadata.  By comparison, the Trustee's discovery responses and "production" consist only of copies of paper documents produced in other litigation, and there is a total complete lack of underlying electronic documents. For example, the Trustee relies on bates-labeled document SG_016723–24 as "evidence" of the debt. *Declaration* at pp. 183–84.  This document is clearly just a printout of an Excel file.  Ignoring that an Excel file can be created and manipulated at any time by anyone with any computer, the Trustee has not even produced the actual electronic file – he has referenced only a *copy* of a printout from *other litigation* where the Trustee cannot even verify its authenticity and where the Debtors cannot do so either   Worse, while under MSG's management, Defendants used QuickBooks to keep their books, but the FLP QuickBooks file has mysteriously disappeared from the computer where MSG testified at deposition that file could be found.  Comparatively, all of Pritchard's production included metadata.  Pritchard does not wish to be precluded at trial from relying on metadata (or the absence thereof in the Trustee's case); therefore, the production was accomplished in a manner that preserves metadata.

27.     In sum, the liquidation maintains its business records in an online database and conducts regular activities.  Defendants' production of their business records so kept complies with Rule 34.

## B.     Documents are Responsive

28.     Rule 34 alternatively permits document production where documents are organized and labeled to respond to requests.  But where document requests are broad and vague as here, the corresponding production is likely to be unwieldy, i.e. "garbage in, garbage out."  The problem starts with the Trustee's interrogatories, which, while not objectionable on their face, are typical

contention interrogatories which require a party, at the front end of litigation, to marshal their full case, i.e. "Identify all the facts that support your denial that the Defendants do not owe the Trustee anything in paragraph 7 of your Answer." *Declaration* at pp. 152.

29.     Despite the breadth of the questions, Defendants answered these Interrogatories to the best of their ability at the time given that discovery is ongoing (and given that no one provided Pritchard with *any* documents upon her assumption of the liquidator role), and Defendants reserved their rights to supplement. The Interrogatory responses were necessarily broad because the Trustee asked the Defendants to identify, on the one hand, all facts that support the Defendants' position that they do not owe the Estates and, on the other hand, all facts that support the Defendants' arguments that the Trustee's claims are barred by latches, estoppel, unclean hands, and so on.

30.     Next, the Trustee asked for "all documents that relate to" the answers to these broad Interrogatories. Notably, each Interrogatory answer clearly states that the debt does not exist. To wit, in their answers to Interrogatories 5, 6, and 7 (generally relating to the Defendants' position that they do not owe the debt), Defendants assert that there is a complete lack of documentation of the alleged debt on which the Trustee sues:

> Subject to the foregoing, Defendants answer that: (i) they do not believe the Debtors' schedules; (ii) they do not believe that the Debtors were making any advances to the Defendants; (iii) to the extent that the Debtors paid any expenses of the Defendants or otherwise advanced any funds, there is **no promissory note or other writing** evidencing any promise by the Defendants to repay the same; (iv) to the extent that the Debtors paid any expenses of the Defendants or otherwise advanced any funds, Steve Galmor was **not authorized** to cause the Defendants to incur any debt or obligation to repay the same; (v) **documents prepared by the Debtors, including through counsel, for negotiation and other purposes, do not list any debt or obligation of the Defendants to the Debtors**, and **no such debts or obligations appear to have been carried on the books and records** of the Defendants and no such claims appear to have been carried on the books and records of the Debtors, all including potentially tax returns; and (vi) the Debtors

committed self-dealing with the Defendants that should be netted out against any alleged funds owing, including by transferring real property to Steve Galmor for no consideration, extracting rock from the quarry without paying for it, denuding the Debtors of oil and gas royalties, and using the Defendants' funds and properties to support his lifestyle and businesses without payment or return consideration and in breach of his fiduciary duties. Discovery is ongoing and Defendants will supplement this Interrogatory once Defendants learn of additional facts.

31.    In their response to Interrogatory 8, Defendants' answer included the statement that "the Debtors did not … reduce any such debts to documents and instruments." In their response to Interrogatory 9, Defendants' answer included the statement that "the Debtors failed to allege that these debts were owing, and, in fact, represented otherwise …"

32.    Accordingly, because of how the Trustee structured his own Interrogatories and RFPs, the Trustee has requested documents supporting Defendants' assertion that the debt is fictional, i.e. proving a negative. While the Trustee correctly states that the purpose of discovery is to narrow issues and get answers to questions, the burden remains on the requesting party to ask good questions. Perhaps more targeted or artfully crafted Interrogatories and Requests for Production would yield the results the Trustee is looking for.

33.    The Trustee may not like it, but the truth is that there are some 30,000 pages of documents consisting of bank statements, QuickBook ledgers, cancelled checks, emails, corporate documents, and more which plainly *do not show any obligation owing from Defendants to the Debtors' Estates*. This makes them responsive to the Trustee's Interrogatories and RFPs. The Trustee need only access the Defendants' document database, punch in the "coordinates" of this alleged debt, and see that there is nothing showing the debt (and thereby squaring with the Interrogatory answers). Because the Trustee must carry the burden on establishing the existence of the debt in the first place, and after that the Defendants' delinquency on the same, Defendants

turned over their entire database as responsive in showing that the debt does not exist. In short, the document production is responsive to each of the Trustee's requests because the Trustee has essentially requested that Defendants produce documents evidencing that something *does not exist*.

## C.     Discovery Is Ongoing

34.     The Trustee demands complete answers to Interrogatories. But Defendants answered to the best of their abilities at the time of serving their answers. Notably, the date of service of the discovery was prior to any depositions in the case and prior to the expert report deadline, and at a time that Pritchard had very few documents at her disposal. Defendants have still to receive any document production from the very accountant (Kellye Fuchs) who allegedly managed some or all of the Debtors' and/or Defendants' books, despite having sent a subpoena to this person on **November 16, 2020.** Although he does not represent Ms. Fuchs, the Trustee has nevertheless intervened on her behalf and appears to be negotiating on her behalf in responding to the subpoena. *Declaration* at p. 7 para 27. The Trustee has only recently advised that he would coordinate production of these documents by Ms. Fuchs which include general ledgers and tax documents for the GFLP, GM, Bobby and Shirley Galmor, Steve Galmor, SGM Leasing, and SGM Management, LLC. *Id.* at p. 187 Not for nothing, but these are *critical* documents which Defendants believe will put the "non-existence" of the alleged debt beyond all doubt.

35.     But the Trustee complains that Defendants' discovery answers are insufficient while playing keep-away with perhaps the most critical documents in the entire litigation. Defendants commit to revising their discovery responses once these critical documents are produced. But compelling "Defendants … to answer all the discovery asked of them" when the discovery as drafted is vague and circular, and when critical documents have been held back from Defendants, is simply unfair.

### D.   Documents Produced Pursuant to Rule 26

36.    Many of the documents in the production were produced pursuant to Defendants'

obligation under Rule 26 to exchange documents likely be used in proving a claim or defense.  In

fact, approximately half of the pages produced were documents produced in the past by the

Debtors, particularly Steven Galmor, in other litigation.  Ironically, in response to discovery served

by Defendants upon the Trustee, the Trustee (rather than producing documents) referenced bates

ranges in this very documents range. Declaration at pp. 173–185.  Where the Trustee complains

he has to go on an "easter egg hunt," then, the Trustee presumably has already reviewed

approximately half of the documents produced by Defendants and presumably did so before even

filing his complaint.  He cannot now be heard to complain that Defendants are pointing him to a

storage shed to "go fish".  Rather, the Trustee is simply asking Defendants to do his work for him;

this the rules do not require.

37.    Moreover, many of these documents were produced by third parties in response to

Subpoenas, and the same are being produced to the Trustee in the same way that they were

received.  Rule 26 does not require that Defendants do anything more.

38.    Finally, the documents produced fall into discrete and easily-understood categories

and are broken up into separate PDF files which are easy to view and digest.  That the Trustee

complained within a business-day of his receipt of the documents evidences a lack of effort

incumbent on a plaintiff in litigation.  Quite simply, the produced documents consist of (i) bank

statements, (ii) pleadings from other cases which the Trustee is already aware of; (iii) ledgers and

limited corporate documents; (iv) royalty statements; and (v) correspondence between parties

connected to the litigation.  The Trustee or his Estates should already have at least half of these

(the "SG" Bates-labeled documents which exceed some 15,000 pages), and had the Trustee done

any work during his administration of the Defendants, he would have the other third-party documents too. Prior to producing these documents, the undersigned spent less than a day reviewing all of these to ensure the PDF documents were reviewable; given that the Trustee had approximately half of these documents already, it is no unreasonable burden, but simply a litigant's duty, for the Trustee to spend some hours reviewing this document production, *especially* where it is in searchable format.

## IV.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court enter an order denying the Motion and denying the Trustee any relief.

Respectfully submitted this 4th day of November, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  Thomas Berghman
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas D. Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 North Akard St.
    Dallas, Texas  75201
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375

**ATTORNEYS FOR LESLIE PRITCHARD, COURT-APPOINTED LIQUIDATOR FOR GALMOR FAMILY LIMITED PARTNERSHIP AND GALMOR MANAGEMENT, L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 4th day of November, 2021, true and correct copies of this document were served via the Court's ECF system on parties entitled to notice thereby, including Kent Ries, Esq., the Trustee and Plaintiff.

By: /s/  Thomas Berghman
Thomas D. Berghman, Esq.