Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, Texas 75201
Telephone: 214-855-7500
Facsimile: 214-855-7584

ATTORNEYS FOR LESLIE PRITCHARD/DEFENDANTS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

**APPENDIX OF LESLIE PRITCHARD: (I) IN OPPOSITION TO TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (II) IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW, Leslie Pritchard ("Pritchard"), court-appointed liquidator for Galmor Family Limited Partnership (the "FLP"), a defendant in the above styled and numbered Adversary Proceeding, and files this her *Appendix of Leslie Pritchard: (i) In Opposition to Trustee's Motion for Partial Summary Judgment; and (ii) In Support of Cross Motion for Partial Summary Judgment* as follows:

| Item | Description | Range |
|------|-------------|-------|
| 1 | Expert Report of Maison Vasek | 1-20 |
| 2 | October 28, 2021 Deposition of Maison Vasek | 21-55 |
| 3 | March 24, 2021 Deposition of Michael Stephen Galmor | 56-1118 |
| 4 | March 25, 2021 Deposition of Dana Carter | 1119-1290 |
| 5 | Declaration of Leslie Pritchard | 1291-1292 |
| 6 | Declaration of Davor Rukavina | 1293-1304 |

RESPECTFULLY SUBMITTED this 8th day of December, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 North Akard St.
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR LESLIE PRITCHARD / DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 8th day of December, 2021, true and correct copies of this document, with all exhibits hereto, were served via the Court's ECF system on parties entitled to notice thereby, including Kent Ries, Esq., the Trustee and Plaintiff.

By: /s/  Davor Rukavina
Davor Rukavina, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

## EXPERT REPORT OF MAISON VASEK

Maison Vasek hereby submits this Expert Report pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

## I.  INTRODUCTION AND SUMMARY

I have been retained by Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt") and by Davor Rukavina ("Rukavina") in particular, to provide an expert analysis and opinion in the above styled and numbered Adversary Proceeding (the "Adversary Proceeding").

As I understand it, the Adversary Proceeding was filed by Kent Ries (the "Trustee"), the trustee in the bankruptcy cases of Michael Stephen Galmor ("MSG") and Galmor's/G&G Steam

Services, Inc. ("G&G"). The Trustee has alleged that the Galmor Family Limited Partnership (the "FLP") and Galmor Management, L.L.C. ("GM") owed certain debts to MSG and/or G&G (the "Alleged Debts"). Specifically, the Trustee has alleged that the FLP owes $1,310,807.00 to MSG and his bankruptcy estate, and $1,096,051.32 to G&G and its bankruptcy estate.

As I understand it, the FLP and GM are defended in this Adversary Proceeding by Leslie Pritchard ("Pritchard"), appointed by the Court as the co-liquidator of the FLP and GM. Munsch Hardt represents Pritchard in this Adversary Proceeding.

Munsch Hardt requested that I, using my professional training, experience, and expertise, review the books and records of the FLP and GM, and MSG and G&G, and to investigate whether those books and records provide any evidence of the Alleged Debts and whether those books and records should have provided any such evidence if the Alleged Debts existed, employing generally accepted accounting principles (the "Retention").

I have not been asked to opine on whether, and I am not opining on whether, the Alleged Debts exist as a matter of law. Rather, I have only been asked to opine on whether the Alleged Debts have any evidentiary or documentary support for them based on the books and records of the alleged debtor, the FLP (including GM, its general partner) or the alleged creditor, MSG and G&G.

A summary of my opinions for this Retention, applying my professional training, experience, and expertise, is as follows:

(i)     Generally accepted accounting principles, including for internal books and records and tax reporting requirements, require the FLP to book the Alleged Debts, carry the Alleged Debts on its books and records, and report the Alleged Debts.

(ii)    Generally accepted accounting principles, including for internal books and records and tax reporting requirements, require MSG and G&G to book the Alleged Debts and carry the Alleged Debts on their books and records.

(iii)    The FLP, MSG, and G&G were not unsophisticated when it came to accounting and tax matters, generally kept and maintained accounting and financial books and records, and provided periodic accounting and financial reporting, including on tax returns and forms, all with the assistance of various employees tasked with maintaining the books and records, which employees appear competent to have done so and which employees, prior to bankruptcy, routinely and seemingly appropriately did so prior to bankruptcy. These employees also had access to a licensed Certified Public Accountant, who had access to the books and records of the FLP, MSG, and G&G, and who was available to assist with accounting services, and who was responsible for finalizing and preparing tax returns.

(iv)    Accordingly, a reasonably prudent bookkeeper, accountant, certified public accountant, manager, and owner, of the FLP, MSG, and G&G, with access to the above resources, employees, and professional assistance, would have ensured that the Alleged Debts were booked and recorded on various books and records, and reported on tax returns.

(v)    After a thorough review of the documents, including electronic files, provided to me, including all available books and records of the FLP, MSG, and G&G, I was unable to find consistent and reliable evidence that supports the Alleged Debt of the type that I would have expected, consistent with generally accepted accounting principles and the underlying entities' and individual's business and financial record keeping practices.

EXPERT REPORT OF MAISON VASEK—Page 3

(vi)    Accordingly, it is my opinion that the Alleged Debt is not accurately stated and, were I asked to audit these entities in accordance with generally accepted auditing standards utilizing the documentation provided, I would conclude that the Alleged Debt did not exist (except for a small portion as discussed below).

(vii)    I have also been asked to calculate what amount of money G&G would have owed the FLP for the extraction of rock by G&G from the FLP's property, had the rock so extracted been charged at $0.75 per ton as opposed to the $0.50 per ton that was changed and paid after Bobby Galmor died. That amount, at $0.75 per ton, is $400,326.13.

## II.    <u>COMPENSATION</u>

I am a founding partner in the accounting firm of Bodwell Vasek Wells DeSimone LLP ("<u>BVWD</u>"). BVWD is being compensated for its services, including for my services, for this Retention. At all times, I was and am in charge of this Representation for BVWD.

My hourly rate for this Retention, charged by BVWD, is $200 per hour. Other personnel and employees of BVWD that have assisted me on this Retention are: Derek Reddell ("<u>Reddell</u>") at the rate of $150 per hour.

While BVWD and I have been hired by Munsch Hardt, BVWD and I have agreed that my sole source of compensation for this Retention is Pritchard, on behalf of the FLP.

As of the execution of this Expert Report, BVWD has incurred fees for this Representation in the amount of $47,575.00 and expenses in the amount of $646.28. To-date, Pritchard has paid $47,575.00 of these fees, and $646.28 of these expenses. Pritchard remains current to BVWD for this Representation and no amounts are past due.

## III.    <u>INDEPENDENCE</u>

Prior to this Representation, I had never heard of any of MSG, G&G, the FLP, GM, or Pritchard. I have never had any business relationship or affiliation with any of them, and do not know, and do not plan to in the future.

Neither I, nor anyone at BVWD, has or has ever had any economic, ownership, partnership, or other interest in the FLP or GM, or any of their property.

Neither I, nor anyone at BVWD, has or has ever had any economic interest in the outcome of this Adversary Proceeding or in the bankruptcy cases of MSG or G&G.

Neither I, nor anyone at BVWD, has any contingency interest in the Adversary Proceeding, or any bonus from the FLP or GM, or any other economic incentive, promised or otherwise, related to what may happen in this Adversary Proceeding. Neither I nor anyone at BVWD has been promised any "success" fee or any fee, compensation, bonus, or other consideration with respect to what may or may not happen in the Adversary Proceeding.

The fees and expenses of BVWD and myself for this Representation are completely unrelated to any opinions that I may form or may express. Neither Munsch Hardt nor Pritchard have at any time conditioned any work, fees, or expenses on what opinions I may form or may express.

Neither I, nor anyone at BVWD, has been told or implied what opinions I should form or express, and neither BVWD nor I have not been threatened with any loss of fees or expenses based on what opinions I may form and express.

None of my opinions as formed and expressed in this Expert Report have been or are shaped or motivated in any way by anything having to do with the fees and expenses of BVWD or myself.

There is no promise or implied promise, or even discussion, of BVWD or myself obtaining any future work, compensation, fees, or expenses for anything having to do with this Retention or the opinions I may form and express.

## IV.  ASSISTANCE

All opinions in this Expert Report are my own opinions, arrived at independently by me. On occasion, I have used other personnel and employees of BVWD to assist me. Reddell assisted in the gathering, organization, review, and analysis of supporting documentation. Reddell occasionally participated in meetings with Munsch Hardt and Pritchard.

While Reddell assisted me on this Representation, I always remained in charge and he provided services under my direct supervision, undertaking only the tasks that I assigned him.  The foregoing provided certain analyses to me, which I have used in forming my opinions, but he did not provide my opinions to me or told me what opinions I should form.

## V.  SUMMARY OF QUALIFICATIONS

**1.   Professional Education and Licensing**

Bachelor's of Business Administration, Accounting and Finance – University of Oklahoma (December 2006)

Certified Public Accountant – Licensed in the state of Texas (December 2008)

Professional Discipline – none

**2.   Relevant Professional Work History**

I am a founding partner of the accounting firm BVWD and serve as the Partner in Charge of Consulting. I have approximately fourteen (14) years of accounting and finance experience including eight (8) years of audit experience and four (4) years as a Chief Financial Officer.

I began my career with KPMG, LLP in the audit and assurance practice where I spent three (3) years auditing companies ranging from upper middle market private companies to large public

EXPERT REPORT OF MAISON VASEK—Page 6

SEC accelerated filers.  After my time with KPMG, I transitioned to Whitley Penn, LLP's audit and assurance practice where I spent five (5) years auditing companies ranging from middle market private companies to smaller reporting SEC public companies.

I spent the next four (4) years serving as a Chief Financial Officer.  As a CFO, I was responsible for all finance and accounting functions including developing the company's budget, communicating with the company's banking and insurance partners, and advising other executives on strategic matters relating to company finances.  I was responsible for leading new investment initiatives, such as deciding on whether to proceed with new acquisitions, divestitures, strategic partnerships, or capital expenditures.  I was responsible for managing the annual financial statement audit and federal and state tax returns and related compliance issues.  I also coordinated the design and implementation of internal controls over financial reporting.

In the Spring of 2019, I founded HMBL Consulting, LLC ("HMBL"), a finance and accounting consulting firm focused on assisting clients with back-office accounting support, fractional CFO services, technical accounting guidance, audit preparation and coordination, and transaction advisory services.  Effective January 1, 2021, I merged HMBL into BVWD, a full-service registered CPA firm specializing in audit, tax, and consulting.

At BVWD, I assist companies in a variety of ways including technical accounting issues, SEC financial reporting requirements, business combinations and purchase accounting, financial close and reporting, financial planning and analysis, budgeting and cashflow forecasting, audit and tax preparation and coordination, risk assessments, and design and implementation of internal controls.

I have also served on the Board of Directors for six (6) years, the Treasurer for two (2) years, and the Audit Committee Chairman for two (2) years for Ronald McDonald House of Dallas.

EXPERT REPORT OF MAISON VASEK—Page 7

It goes without saying that, among other things, I am an expert on internal financial bookkeeping, systems for the same, including as particularly relevant here, QuickBooks, and financial books and records of business entities and individuals.

**3.** **Prior Expert Retentions**

None

**4.** **Prior Publications**

None

## VI. FACTS AND INFORMATION CONSIDERED

In forming my opinions, I considered the following facts and information:

1. FASB Accounting Standards Codification ("ASC"):

   (i) ASC 310 Receivables

   (ii) ASC 340 Other Assets and Deferred Costs

   (iii) ASC 405 Liabilities

   (iv) ASC 850 Related Party Disclosures

2. Depositions:

   (i) the oral deposition of MSG; and

   (ii) the oral deposition of Deena Carter

3. QuickBooks Company Files:

   (i) THE GALMOR CONTRIBUTION TRUST.QBB

   (ii) THE GALMOR FAMILY TRUST.QBB

   (iii) MSG Oil & Gas.qbw

   (iv) New G & G 2018.QBW

   (v) NEW_G_G Steam Service Inc.QBW

4. Financial Reports:

    (i)      12.05.18 Galmor Family Limited Partnership

    (ii)     12.05.18 Galmor Contribution Trust

    (iii)    12.05.18 Galmor%27s G%26G Steam Service Inc New 2018

    (iv)    12.05.18 Galmors G%26G Steam 2013-2017

    (v)     12.05.18 MSG Oil %26 Gas

    (vi)    12.05.18 Steve Galmor Land %26 Cattle

5.    Tax Returns:

    (i)      GALMOR FAMILY LTD PARTNERSHIP

        (a)    2013 Federal Partnership Income Tax Return

        (b)    2014 Federal Partnership Income Tax Return

        (c)    2015 Amended Federal Partnership Income Tax Return

        (d)    2015 Amended Schedule K-1

        (e)    2016 Federal Partnership Income Tax Return

        (f)    2017 Federal Partnership Income Tax Return

    (ii)     GALMOR MANAGEMENT LLC

        (a)    2013 Federal Partnership Income Tax Return

        (b)    2014 Federal Partnership Income Tax Return

        (c)    2014 Amended Schedule K-1

        (d)    2015 Amended Federal Partnership Income Tax Return

        (e)    2015 Amended Schedule K-1

        (f)    2016 Federal Partnership Income Tax Return

    (iii)    STEVE GALMOR

        (a)    2016 Federal Individual Income Tax Return

        (b)    2017 Federal Individual Income Tax Return

    (iv)    SGM LEASING LLC

        (a)    2016 Amended Federal S Corporation Income Tax Return

        (b)    2017 Amended Federal S Corporation Income Tax Return

7.    Bank Statements:

    (i)    Great Plains National Bank

        (a)    Galmor Family Limited Partnership

            (1)    Account #427799 – Monthly records incomplete

        (b)    G&G/Steve Galmor

            (1)    Account #443766 – Monthly records incomplete

            (2)    Loan #220507 – Monthly records incomplete

            (3)    Loan #286657 – Monthly records incomplete

            (4)    Loan #424110 – Monthly records incomplete

            (5)    Loan #337897 – Monthly records incomplete

            (6)    Certificate of Deposit #5167 – Monthly records incomplete

        (c)    Galmor's Inc

            (1)    Account #443762 – Monthly records incomplete

            (2)    Loan #118672 – Monthly records incomplete

        (d)    G&G Steam Inc

            (1)    Account #443739 – Monthly records incomplete

        (e)    Steve Galmor DBA MSG Oil & Gas

            (1)    Account #443739 – Monthly records incomplete

        (f)    Steve Galmor Land & Cattle

            (1)    Account #395242 – Monthly records incomplete

    (ii)    Aim Bank

(a)  Galmor Family Limited Partnership

  (1)  Account #50792 – Monthly records incomplete

(b)  Galmor Family Trust

  (1)  Account #9085 – Monthly records incomplete

(c)  Galmor Contribution Trust

  (1)  Account #9457 – Monthly records incomplete

(d)  Galmor's Inc

  (1)  Account #14818 – Monthly records incomplete

(e)  Michael Stephen Galmor

  (1)  Account #3955 – Monthly records incomplete

(iii)  Happy State Bank

(a)  Michael Stephen Galmor

  (1)  Account #7010234 – Monthly records incomplete

(b)  Galmor Family Trust

  (1)  Account #2303006904 – Monthly records incomplete

(c)  Galmor Family Limited Partnership

  (1)  Account #**2507 – Monthly records incomplete

(iv)  InterBank

(a)  Michael Stephen Galmor

  (1)  Account #7230755 – Monthly records incomplete

  (2)  Account #6865959 – Monthly records incomplete

(v)  First State Bank of Mobeetie

(a)  Michael Stephen Galmor

  (1)  Account #**1197 – Monthly records incomplete

8.      Other Documents:

    (i)      Official Form 206Sum for Galmor's/G&G Steam Service, Inc. filed in the United States Bankruptcy Court for the Northern District of Texas.

    (ii)     Official Form 207 for Galmor's/G&G Steam Service, Inc. filed in the United States Bankruptcy Court for the Northern District of Texas.

    (iii)    Official Form 107 for Michael Stephen Galmor filed in the United States Bankruptcy Court for the Northern District of Texas.

I reserve the right to supplement, change, or augment my opinions should I be provided additional discovery, books and records, or facts and data.  In particular, I am aware that Kelly Fuchs, the accountant for the FLP, MSG, and G&G has not been deposed yet and has not provided documents to Munsch Hardt.

## VII.   <u>OPINIONS</u>

### *GENERAL DISCUSSION AND FINDINGS*

Before discussing the financial books and records of the various entities and individuals involved, I first will first address the following background questions to determine whether I would expect the FLP, MSG, and G&G, or reasonably prudent businesses in their situation to maintain reliable and complete evidence of the Alleged Debt including supporting schedules and documentation, and to record the Alleged Debt on their financial books and records consistent with such evidence.

First, do generally accepted accounting principles and basic industry standards require that the Alleged Debt be documented, carried on the financial books and records, and recorded both as a debt to the FLP and an asset to MSG and G&G?  I concluded that they do.

Second, is the Alleged Debt material to the financial books and records, either quantitatively or qualitatively, that it should be recorded and carried on the financial books and records, both as a debt to the FLP and an asset to MSG and G&G? I conclude that it is.

Third, did the entities and individuals involved have accounting and bookkeeping processes and systems in place on which I would expect the Alleged Debt to be recorded and carried? I conclude that they did.

Fourth, did these accounting and bookkeeping processes and systems generally function, meaning: (i) was appropriate financial information supplied by ownership or management to bookkeepers and accountants in the ordinary course of business such that they would know to record and carry the Alleged Debt; (ii) is it reasonable that the entities and individuals involved would have maintained the underlying corresponding documentation to support the Alleged Debt recorded and carried; (iii) did these bookkeepers and accountants generally record and carry assets and liabilities in the ordinary course of business; (iv) did these processes and systems include carrying debts and assets of the type of the Alleged Debt? I conclude that these processes and systems functioned appropriately so that the Alleged Debt would and should have been recorded and carried on the financial books and records of the entities and individual involved and would have corresponding documentation to support the amounts recorded and carried.

I ask the foregoing questions because the Alleged Debt is of a size and nature that would have been known and recorded, as it is material to the businesses and individual involved. Internal bookkeeping and financial records were maintained adequately, such that assets and liabilities were recorded and maintained on a periodic level. Other receivable and debts, for example, were carried as assets and liabilities, respectively. The FLP, MSG, and G&G had access to a competent bookkeeper, who properly and regularly did her job, and who would have recorded the Alleged Debt. The FLP, MSG, and G&G had access to a licensed outside accountant, who had access to

financial books and records and who reviewed the books and records and prepared annual tax returns. The FLP, MSG, and G&G, including through their bookkeeper and accountant, provided regular financial reports, including balance sheets, to their principal.

From the foregoing, I conclude that, not only would a reasonably prudent business such as the FLP, MSG, and G&G have been expected to record and carry the Alleged Debt on its financial books and records, but, given the financial and business practices of the FLP, MSG, and G&G, these entities and individual would have recorded and carried the Alleged Debt consistently and accurately on their financial books and records as assets and liabilities, and maintained corresponding supporting documentation.

The fundamental procedures performed during my review were designed to evaluate the financial books and records with the intention of verifying the completeness, accuracy, and existence of the Alleged Debt. Certain fundamental procedures generally provide persuasive evidence when they are designed and performed to obtain evidence that is relevant and reliable. Procedures based on industry standards include reconciling the financial statements with the underlying accounting records and supporting documentation and examining material adjustments made during the course of preparing the financial statements (i.e., journal entries).

In forming an opinion, the information obtained and used as evidence must be evaluated by considering the relevance and reliability of the information and whether such information corroborates or contradicts the financial books and records. The sufficiency and appropriateness of the evidence are interrelated. Together they affect the persuasiveness of the evidence.

Accounting records are an example of evidential information obtained from the financial reporting process and may include (i) the records of initial accounting entries and supporting records, such as checks and records of electronic fund transfers; invoices; contracts; the general

and subsidiary ledgers; and journal entries; and (ii) records, such as spreadsheets, cost allocations, computations, reconciliations, and disclosures.

The reliability of evidence depends on the nature and source of the evidence and the circumstances under which it is obtained. Generally, the reliability of evidence increases when it is obtained from external parties or directly and independently from the accounting system because the information is less susceptible to bias or modification. Consideration of the sources of information to be used as evidence includes the possibility that the information source may not be reliable.

When information has been transformed from its original medium (for example, general ledgers that have been exported into Excel from QuickBooks), the reliability of that information may depend on the controls over the information's transformation and maintenance. In these cases, inspecting the underlying accounting system to validate the authenticity of the information in electronic format may be necessary to address reliability concerns.

Doubts about the reliability of evidence arise when the evidence obtained from one source is inconsistent with that obtained from another source. Contradictory information may be relevant even when the source of that information is less reliable than the source of corroborative information.

It is prudent to note the Trustee provided two copies of G&G's QuickBooks company file. One file contains transactions and balances through December 31, 2017 ("G&G Preceding QB File"), and the most current version which contains calendar year 2018 transactions and balances ("G&G Current QB File").

A copy of the FLP's QuickBooks company file was not provided. Both Stephen Galmor and Deena Carter testified at deposition that this file was on a computer provided to the Trustee. Reddell travelled to Amarillo, the Trustee provided him with access to that computer, and he

searched for any QuickBooks company files of the FLP. While he found various QuickBooks company files for other entities, there was no QuickBooks company file on that computer, and no QuickBooks company file for the FLP has ever been provided to me. All relevant FLP accounting records and schedules reviewed were provided by Pritchard, which were obtain in a previous litigation for which I was not engaged. The FLP's financial reports were provided in Excel format and include the general ledger, balance sheet and income statement.

### *SPECIFIC PROCEDURES AND FINDINGS*

I performed a detailed review of the financial books and records of these entities and individual, including all available supporting accounting documentation and evidence, to see whether there was any record, booking, or entry of the Alleged Debt on any financial books and records or tax returns, as assets or liabilities. I reviewed each specific balance that comprised the Alleged Debt individually and all corresponding books and records, and applicable supporting documentation and evidence provided.

### 1. __MSG: Amount Owed to Debtor by Galmor Family Limited Partnership. Claim: $1,310,807.00__

I was not provided any detail, breakdown, supporting documentation or evidence for this balance. I was not provided a full copy of MSG's personal books and records. Per review of the FLP's financial reports, there are two specific general ledger accounts related to MSG: 'Loan Receivable - Steve Galmor' and 'Loan Payable - Steve Galmor' that in total, net to a payable due to MSG of $21,387.04 as of June 7, 2018.

However, based on review of the general ledger transaction detail of these particular accounts, there is inappropriate accounting related to payments made by MSG to the FLP for debt owed on his homestead resulting in the MSG payments recorded as a loan to the FLP instead of a

reduction of debts owed to the FLP. There is no entry to account for the original homestead balance owed by MSG. In addition, there are general journal entries with insufficient supporting documentation that would be necessary to determine proper accounting treatment.

Other than the aforementioned general ledger accounts, there is no record, booking, or entry at all on any financial books and records or tax returns of any of these entities and individual supporting or evidencing any of the Alleged Debt to MSG, and there is no supporting documentation or evidence to support this claim.

## 2. G&G: Royalty Advances. Claim: $186,341.19

In the G&G Current QB File, there is no record, booking, or entry related to royalty advances due from the FLP. G&G's tax returns provided (2016 and 2017) list "Royalty Advances" as an asset on the federal statements. Per review of the G&G Preceding QB File, the balances recorded on the tax returns are not isolated to the FLP, but include advances made to third parties.

There is no record, booking, or entry related to royalty advances due to G&G on the FLP's financial reports supporting this $186,341.19 claim. The FLP's tax returns for 2015, 2016, and 2017 list "Shale Advance" on the federal statements as a liability. However, these balances are inconsistent with what is recorded on the FLP's financial reports.

## 3. G&G: Expenses Paid by Galmor's G&G. Claim: $384,902.74

MSG's bankruptcy schedules state that MSG loaned funds to G&G and in return, G&G distributed those funds to the FLP to pay the amounts related to this claim. There is no record, booking, or entry on any financial books and records or tax returns to support this alleged flow of funds.

In the G&G Current QB File, there is no record, booking, or entry related to expenses paid by G&G that are due from the FLP. G&G's tax returns provided (2016 and 2017) include the balances allegedly owed by the FLP for these expenses within Accounts Receivable on the federal

EXPERT REPORT OF MAISON VASEK—Page 17

statements.  Per review of the G&G Preceding QB File, the gross balances recorded on the tax returns are not isolated to the FLP but include receivables due from third parties.

There is no record, booking, or entry related to these amounts due to G&G on the FLP's financial reports supporting or evidencing this $384,902.74 claim. The FLP's tax returns provided list do not include a liability related to the alleged balances owed to G&G for these expenses allegedly paid.

**4.**   **G&G: First State Bank - Van. Claim: $24,807.39**

MSG's bankruptcy schedules state that MSG loaned funds to G&G and in return, G&G distributed those funds to the FLP to pay the amounts related to this claim. There is no such record, booking, or entry on any financial books and records or tax returns to support this alleged flow of funds.

There is no record, booking, or entry at all on any financial books and records or tax returns of any of these entities and individual supporting or evidencing this $24,807.39 claim.

**5.**   **G&G: Unpaid Salaries: $500,000.00**

MSG's bankruptcy schedules state that MSG loaned funds to G&G and in return, G&G distributed those funds to the FLP to pay the amounts related to this claim. There is no such record, booking, or entry on any financial books and records or tax returns to support this alleged flow of funds.

Per review of the FLP's financial records, Accounts Payable includes bills for unpaid salaries for MSG.  The entries are recorded monthly beginning April 2013 and end December 2014 in the amount of $9,320.00 per month.  Based on the FLP's financial reports, one payment was made to MSG on October 7, 2014, for $9,320.00, resulting in a net amount allegedly due to MSG as of December 31, 2014, of $186,400.00.  This alleged amount was not recorded as a liability on any of the FLP tax returns provided.  A chart detailing these accruals is attached as Exhibit A

Other than the above, there is no record, booking, or entry at all on any financial books and records or tax returns of any of these entities and individual supporting or evidencing this $500,000.00 claim.

## *OTHER MATTERS: ROCK QUARRY ROYALTIES*

Upon review of both of G&G's QuickBooks company files, G&G historically paid rock quarry royalties to the FLP at a price of $0.75 per ton. The last month of royalties paid at a rate of $0.75 per ton was April 2013. Beginning May 2013, G&G began paying $0.50 per ton, approximately one month after Bob Galmor's death. Munsch Hardt requested that I recalculate total rock quarry royalties due to the FLP had the price remain unchanged at $0.75 per ton, which would result in G&G owing the FLP an additional $400,326.13 in royalties. I arrived at this number by simply taking each invoice and entry in the QuickBooks company files of G&G reflecting rock quarry royalty expenses incurred by G&G due to the FLP commencing May 2013 royalties, and, taking the reported and recorded tonnage of each such invoice and entry, recalculating the amount payable by G&G to the FLP were the correct price $0.75 per ton.

## *OVERALL CONCLUSION*

I believe the Alleged Debt would have been recorded and carried on all applicable financial records consistently and accurately, including tax statements, based on the processes and systems of these entities and individual and on their ordinary practices. I believe that sufficient and reliable accounting records and evidence would have been retained to support the Alleged Debt recorded on all relevant financial records and tax statements.

Due to the improper accounting treatment of transactions, unreliability of the underlying accounting records and evidence, significant discrepancies between financial records and tax

returns, and inconsistencies with generally accepted accounting principles and basic industry standards, I am unable to independently verify the existence, accuracy, and completeness of the Alleged Debt.

Respectfully submitted,

_____
Maison D. Vasek, CPA
Bodwell Vasek Wells DeSimone LLP
8117 Preston Road, Suite 460
Dallas, Texas 75225
817.454.5175
maison.vasek@bvwdllp.com

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

---

**Page 1**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

IN RE: MICHAEL STEPHEN GALMOR  CASE NO. 18-20209-RJL-7

------------------------------------------------

KENT RIES, TRUSTEE                    CHAPTER 7
                 Plaintiff

        v.                          Adv. Proc. No. 20-2003

GALMOR FAMILY PARTNERSHIP

------------------------------------------------

ORAL DEPOSITION BY VIDEOCONFERENCE OF
MAISON DALTON VASEK
October 28, 2021
(Reported Remotely)

------------------------------------------------

        ORAL DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON
VASEK, produced as a witness at the instance of the
PLAINTIFF, was taken in the above-styled and numbered
cause on the 28th day of October, 2021, from 9:35 a.m.
to 12:05 p.m., before Janice Hoelting, CSR, in and for
the State of Texas, reported by machine shorthand,
witness being duly sworn remotely via Zoom Video
Communications, Inc., in accordance with the Supreme
Court of Texas' most current Emergency Order regarding
the COVID-19 State of Disaster, and pursuant to the
Federal Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

---

**Page 2**

A P P E A R A N C E S

FOR THE PLAINTIFF:
    Mr. Kent Ries
    Attorney at Law
    2700 S. Western Street, Suite 300
    Amarillo, Texas 79109
    kent@kentries.com

    Mr. Jerry McLaughlin
    Attorney at Law
    2700 S. Western Street, Suite 1000
    Amarillo, Texas 79109
    jmclaw@suddenlinkmail.com

FOR THE DEFENDANT:  (Appearing remotely)
    Mr. Davor Rukavina
    Mr. Thomas Berghman
    MUNSCH HARDT
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75201

ALSO PRESENT:  Leslie Pritchard (appearing remotely)

---

**Page 3**

I N D E X

                                              PAGE

Appearances----------------------------------  2

MAISON DALTON VASEK

    Examination by Mr. Ries----------------   5

Signature and Changes------------------------  96

Reporter's Certificate-----------------------  98

E X H I B I T S

NO.  DESCRIPTION                              PAGE

1  Subpoena to Testify at a Deposition in a
   Bankruptcy Case---------------------------  27

2  Expert Report of Maison Vasek----------------  17

3  The Bobby Don and Shirley Jo Galmor Living
   Trust M.GALMOR_0100 - M.GALMOR_0150----------  28

4  Agreement of Limited Partnership of Galmor
   Family Limited Partnership
   M.GALMOR_0159 - M.GALMOR_0195----------------  31

5  11-2-18 Michael Stephen Galmor Schedule
   Pg 15 of 20---------------------------------  43

6  7-2-18 Galmor's/G&G Steam Service, Inc.
   Schedule Pg. 7 of 32------------------------  44

7  Partnership Return for Galmor Family LTD
   Partnership---------------------------------  32

8  2016 Partnership Return for Galmor Family LTD
   Partnership---------------------------------  38

9  Not offered at deposition

10  Not offered at deposition

11  Texas Certificate of Title and Check Stub
    M.GALMOR_2309 - M.GALMOR_2310----------------  54

---

**Page 4**

E X H I B I T S (CONT.)

NO.  DESCRIPTION                              PAGE

12  Galmor's/G&G Steam Service, Inc. Invoices
    SG_016739 - SG_016918------------------------  59

13  Royalty Advances to FLP from Galmor's/G&G
    Steam Service, Inc. SG_01672 - SG_016883------  81

---

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

**5**

1 (The witness presented Texas Driver's

2 (License No. 15704359 as proof of

3 (identification and was then duly sworn

4 (remotely via Zoom Video Communications,

5 (Inc.

6 THE REPORTER: Does everybody agree that

7 we can do this deposition remotely?

8 Hello.

9 MR. RUKAVINA: Yes. Hold on a second.

10 (Pause)

11 MR. RUKAVINA: I represent the

12 defendant -- or the defendants, I guess.

13 THE REPORTER: Okay.

14 MR. RUKAVINA: Yes, we are in agreement

15 that this deposition can be handled remotely.

16 THE REPORTER: Okay. Thank you.

17 (Witness sworn remotely.)

18 MAISON DALTON VASEK,

19 having been first duly sworn remotely, testified as

20 follows:

21 <u>EXAMINATION</u>

22 BY MR. RIES:

23 Q. Mr. Vasek, would you state your full name for

24 the record, please?

25 **A. It's Maison Dalton Vasek.**

**6**

1 Q. Mr. Vasek, my name is Kent Ries, and I

2 represent the two bankruptcy estates that are in this

3 adversary proceeding, Michael Stephen Galmor and

4 Galmor's/G&G Steam Service, Inc.

5 You understand that?

6 **A. Yes, sir.**

7 Q. Okay. And just to kind of define a couple of

8 terms here up front, because I know there -- it can get

9 a little bit confusing, especially with the company name

10 so close to his name.

11 Michael Stephen Galmor generally goes by

12 Steve Galmor. Okay?

13 Do you understand that?

14 **A. Okay.**

15 Q. So when I refer to him, I'm -- I'll often just

16 refer to him as Steve or Steve Galmor.

17 You understand that?

18 **A. Yes.**

19 Q. And then to -- to keep the confusion out with

20 Galmor/G&G Steam Service, Inc., I generally -- I

21 generally refer to that as G&G. Okay?

22 **A. Okay.**

23 MR. RIES: Can you hear him okay?

24 THE REPORTER: He needs to speak up a

25 little.

**7**

1 Q. (BY MR. RIES) Yeah, if you could just maybe

2 speak up just a little bit. We're just getting -- it's

3 really short. Okay?

4 **A. Okay.**

5 Q. Thank you.

6 So my understanding is that you were hired

7 in this case to give an expert report. Is that correct?

8 **A. Yes.**

9 Q. Okay. And according to answers I got in

10 discovery from the Galmor Family Limited Partnership,

11 which --

12 By the way, let me just stop and cut off

13 and mention this. Rather than say Galmor Family Limited

14 Partnership over and over, we kind of define that as the

15 FLP or the GFLP. Okay?

16 **A. Okay.**

17 Q. All right. So answers to discovery that I got

18 on this said that the defendants disclosed they have

19 retained you to provide a general forensic accounting of

20 the defendants' books and transactions, and of Steve

21 Galmor's self dealing from the defendants, and to review

22 whether the defendants owe any alleged funds to the

23 debtors, period.

24 Does that sound correct?

25 **A. Yes, sir.**

**8**

1 Q. So in your view, you -- you're doing this work

2 as a forensic accountant; is that correct?

3 **A. Yes.**

4 Q. And were you looking at -- at --

5 I know there's a lot in your report about

6 the -- the -- what's called the alleged debt owed to the

7 debtors, and those are the bankruptcy estates.

8 And that's correct?

9 **A. Yes.**

10 Q. Did you also look at Steve Galmor's self

11 dealing from the defendants?

12 **A. Can you be more specific?**

13 Q. Well, I'm just using their -- their word, so

14 I'm not sure exactly what they mean by self dealing.

15 But did you look at anything -- let me ask

16 you this: Did you look at --

17 Was the scope of your work, did it include

18 something other than just the debt that was -- that has

19 been alleged to be owed by the bankrupt to the

20 bankruptcy estates?

21 **A. I don't think the initial scope, but as we**

22 **looked through some of the records, you know,**

23 **particularly the -- the royalty advances -- or the**

24 **alleged royalty advances and some of the royalty**

25 **expenses, we just -- we noticed an inconsistency in --**

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

**9**

1  in the pricing -- I think it's per ton -- of -- of those
2  royalties.
3      Q.  Okay.  And anything beyond that as far as what
4  you would consider to be self dealing?
5      A.  The books that we were -- were provided did not
6  have, I would say -- which is -- which is mentioned in
7  the opinion -- I would say it did not have a -- a lot of
8  backup outside of just the entries that were reported
9  within the books.
10     So, you know, without getting additional
11  information, which I believe, I guess, could still be
12  out there -- I think -- it's my understanding that
13  Kellye Fuchs -- I think it's Fuchs -- is -- has yet to
14  be deposed or really provided much.
15     So depending on what she has and whatever
16  else is still out there, it's hard to answer that
17  question right now.
18     Q.  Okay.  Fair enough.
19     Well, let me ask you.  There were -- then
20  going on beyond the scope, it sounds like what you put
21  in your report -- because you mention things about the
22  pricing issue on the -- on the -- on the rock quarry --
23     There aren't any -- there aren't any
24  conclusions you have with respect to self dealing and so
25  forth that aren't in your report is -- is what I'm

**10**

1  trying to get at.
2      A.  As of today, that's -- that's correct.  But,
3  you know, like I said before, depending on what Kellye
4  or -- or anything else that comes out of the discovery
5  or anything else that's provided, that could change
6  that.
7      Q.  Okay.  Well, let me -- let me ask you this:  Do
8  you --
9      Did you look at -- for any evidence that
10  Steve Galmor may have breached his fiduciary duty with
11  respect to the family limited partnership?
12     Now, I'm not saying whether you found it or
13  not, but did you even investigate that?
14     A.  Could you repeat that one more time?
15     Q.  Did you -- did you find any evidence that Steve
16  Galmor may have breached his fiduciary duty as the --
17  the manager of the family limited partnership?
18     A.  As of -- as of -- like -- again, what I've been
19  provided, you know, other than what's stated about
20  the -- the -- the royalties, no, not yet.
21     But again, depending on what, you know,
22  Kellye -- or Ms. Fuchs has, you know, that could change
23  that.
24     Q.  Sure.  And -- and I understand.  I mean, we're
25  not asking you to project -- project what might happen;

**11**

1  just what you've already done.
2      So I -- so I kind of have the same
3  question.  Have you found any evidence that Steve Galmor
4  committed fraud in any way against the family limited
5  partnership?
6      A.  I think it's going to be the same answer, you
7  know, depending on what Kellye has as of today, and
8  other than those -- the royalty advances, no.
9      Q.  And, you know, let me just wrap up, kind of,
10  finally.  Have you -- have you found any evidence that
11  Steve Galmor committed conversion or theft of some kind
12  against the property of the family limited partnership?
13     A.  No.  No, I have not found evidence, but that --
14  you know, again, that was outside of the scope.  I
15  believe the scope is -- is to defend the claims that
16  were in the bankruptcy schedules.
17     Q.  Okay.  And, you know, I'm sorry.  I forgot to
18  ask you right up front.  Have you ever given your
19  deposition before in the past?
20     A.  In -- in -- in general?
21     Q.  Yes.
22     A.  Yes, I have been deposed before.
23     Q.  Okay.  So you've probably heard this before,
24  but make sure, because I can be bad about this, if I
25  don't give you a good question, or if you don't

**12**

1  understand what I'm asking for, or if I ask you six
2  questions at once or something like that, please just
3  stop me and say, "Hey, would you repeat that," and make
4  sure you understand my question before you give an
5  answer.  Okay?
6      A.  Okay.
7      Q.  And we've already been pretty good about this,
8  but make sure you let me go ahead and finish my
9  question.  And likewise, I'll try to make sure I let you
10  finish your answer so the court reporter can get a good
11  transcript.  Especially doing these by video, it can be
12  kind of hard to -- well, it can be easy to talk over
13  each other.  Okay?
14     A.  Okay.
15     Q.  And let me just ask you -- you've --
16     You gave some facts in your report about
17  your qualifications.  You -- obviously you have a
18  business administration degree from the University of
19  Oklahoma.  Is that right?
20     A.  Yes, sir.
21     Q.  And you've been a licensed CPA in the State of
22  Texas for, looks like, more than a dozen years?
23     A.  Yes, sir.
24     Q.  Do you have any other professional
25  designations?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

**13**

1  A.  No.
2  Q.  And have you taken any courses in forensic
3  accounting or -- whether it be seminars or formal or
4  informal courses like that?
5  A.  Yes.
6  Q.  And what are those?
7  A.  Oh, there's -- I mean, we have to do 40 hours
8  of CPE every year.  So over the course of the last
9  13 years, you know, I don't recall the specific courses,
10  but yes, we -- I have done courses in -- in the forensic
11  side.
12  Q.  Okay.  And have you ever given a report as a
13  forensic accountant in the past?
14  A.  No.
15  Q.  Have you ever been hired as a --
16      (Zoom audio interference.)
17      THE REPORTER:  We didn't hear that.
18      MR. RIES:  I'm sorry.  Was that you,
19  Mr. Vasek?
20      (Zoom audio interference.)
21      MR. RUKAVINA:  Can you hear me?
22      MR. RIES:  Okay.  I can hear you now.
23      MR. RUKAVINA:  With regard to your last
24  question, I take it you meant expert report.
25      MR. RIES:  Correct.

**14**

1      MR. RUKAVINA:  Okay.  Thank you.
2      MR. RIES:  Do you want to read -- can you
3  read back that question so we make sure we get that
4  right?
5      THE REPORTER:  And have you ever given a
6  report as a forensic accountant in the past?
7  Q.  (BY MR. RIES)  Okay.  Have -- have you ever
8  given a report of any kind as a forensic accountant in
9  the past?
10  A.  Yes.
11  Q.  Okay.  And how many times have you given
12  reports as a forensic accountant?
13      MR. RUKAVINA:  Objection, form.
14  A.  Did you guys hear that?
15      THE REPORTER:  Yes.
16  Q.  (BY MR. RIES)  I did, but you can go ahead and
17  answer.
18  A.  Okay.  Can you repeat the question?
19  Q.  How many times have you given a report to
20  someone as a forensic -- in a role where you were acting
21  as a forensic accountant?
22      MR. RUKAVINA:  Objection, form.
23      You can answer.
24      THE WITNESS:  Oh, go ahead and answer?
25      MR. RUKAVINA:  Yeah.  I might object, but

**15**

1  you still have to answer.
2  A.  Okay.  All right.  I don't recall -- I don't
3  recall how many times.
4  Q.  (BY MR. RIES)  Okay.  More than ten, do you
5  think?
6  A.  I don't recall.  It would be guessing.
7  Q.  Okay.  Have you ever testified at a hearing or
8  other court proceeding as an expert?
9  A.  No.
10  Q.  In any form, for any reason, in any capacity?
11  A.  No.
12  Q.  Are you familiar with the Association of
13  Certified Fraud Examiners?
14  A.  I'm sorry?
15  Q.  Are you familiar with the Association of
16  Certified Fraud Examiners?
17  A.  Yes.
18  Q.  Have you ever taken any courses from them?
19  A.  No, not directly from them.
20  Q.  Let me ask you -- yesterday, I gave your
21  counsel, or Mr. Rukavina -- I guess he's not your
22  counsel -- but Mr. Rukavina, a number of exhibits,
23  I think through Numbers 1 to 13.
24      Do you have those with you?
25  A.  I do.

**16**

1  Q.  Okay.
2      MR. RUKAVINA:  Those --
3      (Zoom audio interference.)
4      MR. RUKAVINA:  -- and Exhibit Number 10, so
5  Maison has 1 through 13, but not Number 10.
6      If you want to send Number 10 right now, I
7  can have it printed as -- as you're talking.
8      MR. RIES:  That's all right.  I tried to
9  send it, and it wouldn't go so -- it was too large of a
10  file.  But that's all right.  We don't need that.
11      And Davor, other than Number 10, I'm just
12  going to go ahead and -- and make sure the court
13  reporter has a copy of the exhibits as I sent them to
14  you numbered.
15      Is that okay?
16      MR. RUKAVINA:  Well, I'm fine with however
17  you want to proceed.  I will just note that what you
18  sent me, Kent, the documents themselves are not
19  numbered.  And so your file name is numbered, but as you
20  print them, there's no exhibit label on there.
21      So as long as the record is clear what
22  you're referring to, I don't care how you proceed.
23      MR. RIES:  Okay.
24      MR. RUKAVINA:  So maybe what you do --
25  maybe what you do when you hand the court reporter the

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

17

1  exhibit and tell us what it is, then we'll confirm that
2  it -- that it corresponds to what we have in this
3  binder.
4      **Q.**  (BY MR. RIES)  Okay.  Mr. Vasek, I have as
5  Exhibit Number 2, your report.
6      **A.**  Okay.
7      **Q.**  And it --
8          MR. RIES:  I'm just going to give you the
9  whole list afterwards.  Okay?
10         THE REPORTER:  That's fine.
11     **Q.**  (BY MR RIES)  If you could turn to page 8 on
12 your report, you list out for -- oh, it looks like all
13 the way into page 12 -- all the information you
14 considered in -- in drafting your report.
15         Is that correct?
16     **A.**  Yes, sir.
17     **Q.**  Okay.  And number 2 on there are a couple of
18 depositions that Mr. -- I assume are the ones that
19 Mr. Rukavina took, the ones of Steve Galmor and Deena
20 Carter.
21         Is that right?
22     **A.**  Yes, sir.
23     **Q.**  Okay.  And beyond those two people, who else
24 did you interview in doing your report?
25     **A.**  So no one specifically while doing the report,

18

1  **but through out the course of -- of the engagement, I've**
2  **spoken with Ms. Pritchard.**
3      **Q.**  Okay.  Have you ever contacted Matt Brooks?
4      **A.**  No.
5      **Q.**  Have you ever contacted Kellye Fuchs?
6      **A.**  No, not directly.
7      **Q.**  Well, did you contact her indirectly?
8      **A.**  **Well, we made requests -- or Mr. Rukavina made**
9  **requests, you know, for -- for documents we needed to go**
10 **through.  For example, I think the QuickBooks files and**
11 **the tax returns, so that's what I'm referring to.**
12     **Q.**  Okay.  I think you mentioned in Item Number 3,
13 still on page 8 there of your report, of the QuickBooks
14 files you got from the various trusts, and it looks like
15 G&G.
16         Is that right?
17     **A.**  Yes.
18         MR. RUKAVINA:  Hold on a second.
19         Thomas, are you on?
20         MR. BERGHMAN:  Yeah.  Can you hear me?
21         MR. RUKAVINA:  Yeah.
22         Hey, Kent.  I'm sick today.  Do you mind if
23 I leave for ten minutes and Thomas can take over rather
24 than taking repeated breaks through the day?
25         MR. RIES:  That's fine.  Whatever you

19

1  want --
2          MR. RUKAVINA:  Okay.  You guys keep going.
3  And, Thomas, you just take over for a little bit.
4          MR. BERGHMAN:  Sure.
5      **Q.**  (BY MR. RIES)  Okay.  And so --
6      **A.**  **Sorry.  Can you repeat that question?**
7      **Q.**  Okay.  So you saw the QuickBooks files, or
8  number 3 on page 8, that you got from the trusts and
9  from G&G.  Is that right?
10     **A.**  Yes.
11     **Q.**  And then number 5 describes a number of years
12 of tax returns you got for both the GFLP; its corporate
13 partner, Galmor Management; Steve Galmor himself; as
14 well as G&G.  Is that right?
15     **A.**  Yes.
16     **Q.**  Okay.  And you then list, in number 7, quite a
17 few bank statements.  Do you have any idea what years
18 these were because I don't -- I didn't notice anything
19 about what -- you know, what years you were looking at?
20     **A.**  **Yes, we have -- it's a schedule.  It's -- it's**
21 **kind of more like a matrix.  It's got, you know, bank**
22 **account reference and then by -- by month and period,**
23 **and which ones we were able to see.**
24         **But that's kind of -- as stated, I think --**
25 **but yeah -- so the records were very incomplete.  They**

20

1  **were missing -- say, missing months for certain --**
2  **certain accounts at different periods in time.**
3      **Q.**  Now, if you could turn over to page 16 on your
4  report, towards the top of it, you mention that you also
5  got --
6          While you were missing some QuickBooks
7  records for the FLP, you got, in your own words, all
8  relevant FLP accounting records and schedules from your
9  client, Ms. Pritchard.
10         Is that right?
11     **A.**  **So we were -- go back to the first part of your**
12 **question.  You know, we were completely missing -- we**
13 **weren't missing some of the QuickBooks files for the**
14 **FLP.  We never got a copy of the actual QuickBooks files**
15 **of the FLP whatsoever.**
16         **And to address your question, yeah, so we**
17 **were able to obtain from Ms. Pritchard essentially**
18 **exports of the financials from -- from that QuickBooks**
19 **file that she had obtained, I believe, through the**
20 **prior -- prior litigation.**
21     **Q.**  Okay.  Now, from what I can tell -- and this is
22 more of a general statement, so just take it as that.
23 From what I could tell in your report, you believe you
24 had all the records you needed to make the conclusions
25 that you formed in your report, correct?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

21

1  MR. BERGHMAN: Objection, form.

2  **A. Could you repeat that one more time?**

3  **Q.** (BY MR. RIES) You believe you had all the

4  records you needed to make the conclusions you reached

5  in your -- that you reached in your report, correct?

6  MR. BERGHMAN: Objection, form.

7  **A. Yes.**

8  **Q.** (BY MR. RIES) Okay. The report doesn't state

9  anywhere, that I could find -- but tell me if I'm

10  wrong -- that you're missing specific records that you

11  would need to make your conclusions.

12  **A. Actually, yes, it's -- I believe it states --**

13  **let's see -- in fact, at the top of page 16, the actual**

14  **QuickBooks company file for the FLP.**

15  **However, you know, I believe we're waiting**

16  **on that from Ms. Fuchs. We -- we were unable to get**

17  **that. It wasn't on the computer you had in your office**

18  **or we've never been given that.**

19  **But, you know, with the information I had**

20  **at the time, yes. But, you know, that's subject to**

21  **change if Ms. Fuchs or anybody else can provide any**

22  **additional information that was requested.**

23  **Q.** Well, and again, you know, fair enough that you

24  may get other information and change your conclusions,

25  but -- but I guess my -- my question is: Do you feel

22

1  that you were missing any information that you could not

2  make the conclusions that you made?

3  I mean, you're -- you're -- you've made

4  your conclusions based on what you had?

5  **A. Yes, yes. No, I feel like -- yes.**

6  MR. BERGHMAN: Objection, form to that

7  question.

8  **Q.** (BY MR. RIES) You had enough -- you had

9  sufficient information to make your conclusions?

10  **A. Yes.**

11  **Q.** So going back to the question I had, you said

12  that for the most part, you -- you -- you really just

13  interviewed, in person, your client, Ms. Pritchard,

14  correct?

15  MR. BERGHMAN: Objection, form.

16  You can answer.

17  **A. Could you repeat that?**

18  **Q.** (BY MR. RIES) For the -- did you interview

19  anyone else beyond Ms. Pritchard to come up with this

20  report?

21  **A. No.**

22  **Q.** Okay. Did you discuss the report with

23  Mr. Rukavina or Mr. Berghman?

24  **A. Yes.**

25  **Q.** So you discussed that before you came up with

23

1  the report?

2  MR. BERGHMAN: Objection, form.

3  **A. I'm -- I'm -- can you be more clear?**

4  **Q.** (BY MR. RIES) Sure. I'm just asking timing

5  wise. Did you talk about what was going to be in the

6  report prior to actually doing the -- giving them a

7  written report?

8  MR. BERGHMAN: I'll object to the extent

9  that it calls for privileged information.

10  So if you can answer without, you know,

11  disclosing discussions --

12  I'm sorry. Is somebody saying something?

13  **A. No. No, I don't think I could answer without**

14  **disclosing the privileged information.**

15  **Q.** (BY MR. RIES) Is Mr. Rukavina your attorney in

16  this case?

17  **A. No.**

18  **Q.** Okay. Do you have an attorney in this -- in

19  this case?

20  **A. No.**

21  **Q.** Okay. So what -- what privilege are you

22  asserting that you have if -- if he's not your counsel?

23  MR. BERGHMAN: And we're not -- we're not

24  asserting that we're his counsel. I'm just objecting to

25  preserve -- you know, to the extent there's any

24

1  privileges.

2  MR. RIES: So you're agreeing you don't

3  have attorney/client privilege with Mr. Vasek?

4  MR. BERGHMAN: Yeah. Of course.

5  **Q.** (BY MR. RIES) Okay. So I think your counsel

6  just said you don't have an attorney/client privilege,

7  so let me just go ahead back and ask the question.

8  Did you discuss with Mr. Rukavina or

9  Mr. Berghman any of these underlying facts that go into

10  your report?

11  **A. We discussed at a high level, but not in the**

12  **detail that's in the report.**

13  **Q.** So is it fair to say you spent more time

14  talking to Ms. Pritchard about the facts that went into

15  the report?

16  **A. Can you be more specific?**

17  **Q.** Well, did you discuss at all with her the facts

18  that went into your report?

19  **A. Again, at a high level.**

20  **Q.** Okay. Did she give you what -- what she felt

21  her conclusions were about the alleged debt in your

22  report?

23  **A. Can you repeat that?**

24  **Q.** Did she give you what her opinion was about the

25  conclusions that you were making -- that you were going

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

25

1  to be making in your report about the alleged debt?
2  **A. She -- she shared opinions.**
3  **Q.** Okay. And what were those?
4  MR. BERGHMAN: Object to the form of that
5  question.
6  **A. Well, yeah. Can -- can you be more specific?**
7  **Q.** (BY MR. RIES) I'm just asking what -- what
8  y'all discussed about the conclusions -- prior to you
9  doing the report, what kind of conclusions she was --
10  she had made that she talked to you about -- with --
11  about -- with regard to the alleged debt?
12  **A. Her conclusions, again, were based on, I think,**
13  **more of a high level or, you know, there weren't**
14  **specific dollar amounts involved in her conclusions, so,**
15  **you know, it -- it was much more of a -- I guess you**
16  **would just say high level opinions on the situation.**
17  **Q.** Okay. Let me ask you to go back -- keeping
18  with your same -- the same Exhibit Number 2, your
19  report, if I could have you look at page 3.
20  And on that page there's some paragraphs
21  marked, and I'm looking at the one that's the small
22  three dot -- three iii dots.
23  See that towards the top?
24  **A. Yes.**
25  **Q.** Okay. You mention that the entities were not

26

1  unsophisticated when it came to accounting and tax
2  matters.
3  I'm not sure I understand what you mean by
4  the FLP and G&G were not unsophisticated. What are you
5  trying to say there about those entities?
6  **A. I think exactly what the -- you know, the**
7  **remaining paragraph says.**
8  **Q.** Okay. So which employees are -- are you basing
9  that on? Are you basing it on Mr. Steve Galmor or on
10  Deena Carter, the two depositions you read, or -- or
11  something else?
12  **A. I'm basing it on the accounting records I was**
13  **provided.**
14  **Q.** Okay. So based on the fact that you got
15  accounting records from them, you consider that
16  Mr. Galmor and Ms. Carter were -- were not
17  unsophisticated with respect to those -- putting out
18  those kind of records?
19  MR. BERGHMAN: Objection, form.
20  **A. No. I'm saying the employees and the CPA that**
21  **maintained their books were not unsophisticated.**
22  **Q.** (BY MR. RIES) Okay. Do you have any
23  understanding of whether Steve Galmor was -- had any
24  sophistication with regard to accounting records?
25  **A. Can you say it again?**

27

1  **Q.** Do you have an opinion as to whether Steve
2  Galmor had any sophistication with respect to accounting
3  records?
4  **A. No.**
5  **Q.** Do you have any opinion about whether Deena
6  Carter had any sophistication with respect to accounting
7  records?
8  **A. It's my understanding she was one of the**
9  **employees that kept those books, so yes.**
10  **Q.** Okay. Let's go back to page 13 on your report.
11  **A. Okay.**
12  **Q.** And about the third line from the bottom, you
13  talk about the family limited partnership, Steve Galmor,
14  G&G all had access to a competent bookkeeper who
15  properly and regularly did her job.
16  Are you referring to Deena Carter at that
17  point?
18  **A. Yes.**
19  **Q.** So you considered Deena Carter to be the
20  bookkeeper for these entities; is that right?
21  **A. That's my understanding.**
22  **Q.** All right. I'm going to try and clean up a
23  little bit the exhibits that we have.
24  Exhibit Number 1, have you seen that
25  before, the subpoena to testify at a deposition to you?

28

1  **A. Yes.**
2  **Q.** Okay. And we've talked about your report which
3  was Number 2.
4  So if you could turn over to Number 3, the
5  living trust dated July 20, 2005. And I'm just -- I'm
6  reading that date on the very first page.
7  **A. July 20, 2005?**
8  **Q.** Correct. Living trust, do you see that?
9  **A. Yes.**
10  **Q.** Have you ever reviewed this document?
11  **A. Yes.**
12  **Q.** And in -- very general terms, what -- what
13  is your understanding of what the living trust was all
14  about?
15  **A. You know, that -- that wasn't really part of**
16  **the scope. We reviewed it because we were provided it.**
17  **But essentially, you know, this is --**
18  **this is the trust that they had set up. They, as in**
19  **Mr. Galmor, Bob Galmor, you know, when he was still**
20  **alive.**
21  **Q.** Okay. So -- and that's really -- I mean, I'm
22  not -- I'm not here to press you on this. I just want
23  to make sure we have some understanding of what this is
24  since it's connected to the family limited partnership.
25  Bobby Don and Shirley Jo Galmor, those --

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

29

1 those are the parents of your client, Leslie Pritchard,
2 correct?
3     **A. Correct.**
4     **Q.** And they are the parents, likewise, of Steve
5 Galmor?
6     **A. Correct.**
7     **Q.** So do you do --
8          Have you done any, in the past, in -- in
9 your career, basic estate planning work?
10     **A. No.**
11     **Q.** Okay. Do you have any knowledge of the fact
12 that people sometimes, as they get older, form a trust
13 to manage their property?
14     **A. Yes.**
15     **Q.** And was it your understanding -- or is it your
16 understanding that essentially that's what this trust
17 is, to help them as they were in their later years,
18 to -- to manage their property and -- and to plan for
19 where it would go after their deaths?
20     **A. That's my understanding.**
21     **Q.** Okay. And the trust -- you can -- this -- this
22 has some numbers on the bottom of them.
23          Do you see where it talks about -- or it
24 says M.GALMOR, and then there's like a dash 00 --
25          Or 0119, for example, if you would turn to

30

1 that page.
2     **A. Okay.**
3     **Q.** Okay. So was it your understanding that the
4 trust beneficiaries initially were -- were the actual
5 people that -- that set this up, Bobby Don Galmor and
6 his -- his wife, Shirley Jo Galmor?
7     **A. Yes.**
8     **Q.** Okay. And then a few pages later, like at
9 page 123, the trust kind of turns into what happens when
10 the -- I think it refers to when the first -- when the
11 first of the two of them pass away, how it will operate.
12          You see that?
13     **A. Yes.**
14     **Q.** And then -- actually, just on the next page,
15 124, starts talking about what will happen when -- when
16 they both pass away, who would be the -- who would be
17 the beneficiaries on -- on -- at the survivors' death.
18          You see that?
19     **A. I see that.**
20     **Q.** And it's all pretty standard stuff, wouldn't --
21 wouldn't you think, of how to -- how to take care of
22 your property kind of at your end -- end of your life
23 for a couple; and then a couple that have children, how
24 it would go?
25     **A. Like I said, I -- you know, I don't work with**

31

1 trusts, so I'm not a trust expert and the legality of
2 how it flows.
3     **Q.** All right. If I could have you turn to what we
4 have marked as Exhibit Number 4.
5     **A. Okay.**
6     **Q.** And again, I just -- I want to look at this at
7 a -- at a very high level. I'm -- I'm not trying to
8 catch you on what this says or doesn't say. I just want
9 to show what the documents are.
10          This is -- is it your understanding this is
11 the actual Galmor Family Limited Partnership Agreement?
12     **A. Yeah. Based on what it says, yes.**
13     **Q.** Okay. And if you look at the very last page of
14 that, which is marked number -- it's marked MGALMOR0195.
15     **A. Okay.**
16     **Q.** It shows that the limited partners are, again,
17 the parents, Bobby Don and Shirley Jo Galmor, correct?
18          Well, they're -- they're 49 1/2 percent
19 each, right?
20     **A. Correct.**
21     **Q.** And then the Galmor Management entity is -- is
22 the other one-percent owner?
23     **A. Correct.**
24     **Q.** And the general partner?
25     **A. According to this, yes.**

32

1     **Q.** Do you have any knowledge as to whether that
2 general partner has changed, or is Galmor Management
3 still the one-percent owner and the general partner?
4     **A. No, I don't know.**
5     **Q.** Okay. Do you know if the actual ownership of
6 the family limited partnership is -- was -- is in the
7 trust at some point instead of the individuals, Bobby
8 Don and Shirley Jo Galmor?
9     **A. Yeah, I don't -- I don't know the -- the legal**
10 **layers that -- that have been implemented in this**
11 **structure.**
12     **Q.** Okay. Let me have you look at Exhibit 7.
13     **A. Okay.**
14     **Q.** And that's the -- is it your understanding
15 that's the 2017 partnership return for the FLP -- for
16 the Galmor Family Limited Partnership?
17          MR. RUKAVINA: And I would just note for
18 the record that what I have as Exhibit 7 is not Bates
19 labeled, so are you representing that this is --
20          (Zoom video interference.)
21          MR. RIES: I couldn't hear what he said.
22          THE REPORTER: He said that --
23          MR. RUKAVINA: Sorry, sorry. Let me come
24 closer.
25          Kent, I'm just -- I'm noting for the record

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

---

**33**

1 that what we have as Exhibit 7 is not Bates labeled.  So
2 are you representing to the witness that this is that
3 document?
4         MR. RIES:  Yeah, Number 7 -- my Exhibit 7
5 would be the 2017 partnership return for the Galmor
6 Family Limited Partnership.
7         MR. RUKAVINA:  I understand.  My only point
8 is that it's not Bates labeled.
9         So I have no problem with you asking him
10 about this document.  I just -- I'm just asking for you
11 to confirm that, to the best of your understanding, this
12 is a true and correct copy of the original.
13         MR. RIES:  As far as I know, it is, yes,
14 and we're marking it Number 7.
15         MR. RUKAVINA:  Okay.
16     Q.  (BY MR. RIES)  Okay.  If I can have you go back
17 to -- towards the end of this -- about four pages from
18 the back, there's some -- there's a schedule K-1.
19         Do you see that?  A K-1 --
20     A.  Yes.
21     Q.  -- to the Galmor Contribution Trust?
22     A.  Okay.
23     Q.  And it shows a beginning --
24         Well, it shows an ending percentage of
25 profit, loss and capital, correct?

**34**

1     A.  Say that again.
2     Q.  For the Galmor Contribution Trust, it is showed
3 to have an ending percentage of profit, loss and
4 capital.  Looks like 49.5 percent; is that right?
5     A.  That's what it says.
6     Q.  Okay.  And if you page back a few more pages,
7 about four pages, there's another K-1 to the Galmor
8 Family Trust.
9         Do you see that?
10     A.  Yes.
11     Q.  Okay.  And it has the same percentage,
12 49.5 percent profit, loss and capital; is that right?
13     A.  That's what it says.
14     Q.  And then if you page back, I think it's four
15 more pages, there's another K-1 to Galmor Management,
16 LLC?
17     A.  Okay.
18     Q.  And it has -- it shows the remaining profit,
19 loss and capital percentage at that one percent; is that
20 correct?
21     A.  That's what it says, yes.
22     Q.  Okay.  So are you familiar with the -- the
23 businesses --
24         From your investigation here, are you
25 familiar with the types of businesses that the family

**35**

1 limited partnership operated?
2     A.  Yes.
3     Q.  And what were those?
4     A.  Based on my review of the -- the accounting,
5 the books and records, it was, you know, the rock --
6 rock quarry, where they were paid royalties; there
7 appeared to be sale of cattle; and I believe there were
8 some oil and gas interests.
9     Q.  Do you know if the family limited partnership
10 did any farming operations?
11     A.  Again, I -- I'd like to see the actual
12 QuickBooks file to answer that.
13     Q.  The tax return didn't tell you that?
14     A.  Well, I'll have to go back and review it.
15         Let me see.  Yeah.  Based on the tax
16 return, yes.
17     Q.  Okay.  So let me just kind of ask you these one
18 by one.  What experience, if any, did you have in the --
19 in a rock quarry business prior to this engagement?
20     A.  Directly -- can you be more specific?
21     Q.  Well, are you familiar with how a business like
22 that would operate?  Did you ever audit one?  Did you
23 ever work for one?  Did you ever do any consulting work
24 for -- for a rock quarry-type business?
25     A.  Can you -- can you ask those one at a time?

**36**

1     Q.  Did you ever work for one?
2     A.  No, I've never worked directly for a rock
3 quarry.
4     Q.  Did you ever audit one?
5     A.  No.
6     Q.  Have you ever done any consulting work for one?
7     A.  No.
8     Q.  Have you -- do you have any familiarity with
9 how a rock quarry business operates?
10     A.  Yes.
11     Q.  And what is that?  Or how did you gain that
12 knowledge?
13     A.  Just reading.
14     Q.  I'm sorry.  I didn't hear that.
15     A.  Reading.
16     Q.  You were reading about rock quarries?
17     A.  Yes.
18     Q.  As part of --
19     A.  I'm sorry?
20     Q.  As part of this engagement or you did that
21 previously?
22     A.  I did that as part of this engagement.
23     Q.  Okay.  And so with respect to the cattle
24 business or livestock, have you ever worked for a
25 livestock-related entity?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

---

**37**

1  A.  No.
2  Q.  Have you ever audited one before?
3  A.  I don't recall.
4  Q.  Have you ever consulted someone in that
5  industry?
6  A.  No.
7  Q.  With respect to farming businesses, have you
8  ever worked for a farming operation of any kind?
9  A.  No.
10  Q.  Have you ever audited such a type of business?
11  A.  I don't recall.
12  Q.  Have you ever consulted with someone -- given,
13  you know, professional consultation to someone in that
14  business operation?
15  A.  No.  Not professional, no.
16  Q.  Okay.  With respect to oil and gas, have you
17  ever --
18        Well, let me ask you this:  What type of
19  oil and gas business do you understand that the -- the
20  FLP was in?
21  A.  It was my understanding that, you know, they
22  were just earning royalties on -- on land that was owned
23  by the father.
24  Q.  Okay.  Do you know if they did any actual
25  operating oil and gas properties, like drilling, typical

**38**

1  production?
2  A.  Can you define who you're referring to as
3  "they"?
4  Q.  I'm sorry.  The FLP.
5  A.  No, I don't believe they were -- they
6  participated in the actual operating.
7  Q.  So essentially it's your understanding they
8  just got royalty checks sent to them?
9  A.  That's my understanding.
10  Q.  Okay.  Just to make this easier, so we can go
11  back and forth, we've been discussing the exhibit marked
12  Number 7, the 2017 partnership return.
13        If you would look at Exhibit Number 8,
14  that's what I'm marking as -- as what I believe is a
15  true and correct copy of the 2016 partnership return.
16        Do you see that?
17  A.  Yes.
18  Q.  So let me ask you with -- on exhibits --
19        On Exhibit 8, where would you go to find
20  what the FLP had in the way of taxable income?
21  A.  Let's see, the numbers are not -- pages aren't
22  numbered, but let me check.
23        So the Form 1065, but it doesn't have a
24  page number.
25  Q.  Okay.  So on Form 265 -- 1065, what does the --

**39**

1  what does the family limited partner show as its
2  ordinary business income or loss?
3  A.  It shows it's approximately $99,000 loss.
4  Q.  And the FLP, up above, marks that they're a
5  cash-basis taxpayer; is that correct?
6  A.  That's what it says.
7  Q.  Okay.  So are there any items that you can
8  tell, off the top of your head looking at this 1065
9  return -- report, that would not -- not be cash items?
10        You know, for example, typically, we
11  would talk about depreciation or amortization and those
12  type of things that are -- are not necessarily
13  reflecting, you know, a cash in and out.
14        Do you see any of that on this return that
15  would affect that $99,000 loss?
16  A.  Can you be more specific on what you're looking
17  for?
18  Q.  Well, I'm looking for --
19        Are there any non-cash items that you can
20  see that affected this $99,000 loss?
21  A.  Well, going back to --
22        Well, that's not what the accounting method
23  refers to when it says cash basis.
24  Q.  No, I'm just asking:  Do you think the $99,000
25  is not just a taxable loss, but -- but essentially a

**40**

1  cash loss for the year, as well?
2  A.  I need to reconcile the return to the
3  QuickBooks file to answer that.
4  Q.  Okay.  Well, let me have you page back to
5  page 5 of the Form 1065.
6  A.  Page 5?
7  Q.  Page 5.
8  A.  Okay.
9  Q.  Okay.  And there's a beginning and ending
10  cash -- beginning and ending of the year cash amount in
11  the FLP.
12        Do you see that?
13  A.  I see that.
14  Q.  Okay.  So what are -- what are those numbers?
15  How much cash did the company have at the beginning and
16  end of the year?
17  A.  According to this tax return, beginning of the
18  year cash was 15K; end of the year was approximately
19  21K.
20  Q.  All right.  Let me have you then go to the next
21  year, which actually is the exhibit for Exhibit 7, and
22  have you look at the 2017 return.
23  A.  Okay.
24  Q.  And you want to go to that same page 5 of
25  Form 1065, please.

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

---

**41**

1    A.   All right.

2    Q.   And so the beginning and ending cash amounts

3  on -- for the -- for the FLP, what are those in 2017?

4    A.   It says that the beginning is 21,000, the

5  ending is $300.

6    Q.   Okay.  And if you go to the first page of the

7  Form 1065, what was the ordinary business income or loss

8  for the company in 2017?

9    A.   So first page of the 2017 return, correct?

10    Q.   Correct.  I'm sorry.

11    A.   According to the tax return, it says that it

12  was about $97,000 loss.

13    Q.   Okay.  So the two years were relatively close,

14  just under $100,000 loss each year.

15          Does that sound right?

16    A.   According to the tax return, that sounds right.

17    Q.   Did you review any trends --

18          And, you know, I didn't put in all the

19  other tax years for the FLP that you looked at, but did

20  you look at any of the trends from the 2013 return you

21  mentioned in your report to this 2017 return on -- on

22  either -- well, on any specific business or the company

23  as a whole?

24          And I'm talking about the family limited

25  partnership here.

---

**42**

1    A.   Can you be specific on trends?

2    Q.   Was it making money earlier in those first few

3  years and then losing money?  Was it losing more?

4          I mean, just these two years, '16 and '17,

5  look, you know, pretty much the same.

6          What about the prior years?  Did --

7          Well, I'm just asking:  Did you even look

8  at whether there was a trend of the FLP from doing

9  better to worse, or worse to better, or either way?

10    A.   Yes, in earlier years it was doing better than

11  in the latter years.

12    Q.   Okay.  Did you look at what specifically was

13  causing that change?

14    A.   The primary driver, from what I was able to

15  see, is -- is the rock quarry.

16    Q.   Okay.  Let me have you look at -- well, that's

17  okay.

18          Now, you also looked at bank statements for

19  the FLP; is that right?

20    A.   That's correct.

21    Q.   And did you look at any trends on those as far

22  as like the cash was getting better, the cash was

23  getting worse -- did it -- over the years?

24    A.   It followed the same trend as -- as what we

25  just discussed.

---

**43**

1    Q.   So the cash was going down?  The level of cash

2  that the FLP had was -- was getting worse year to year?

3    A.   Correct.

4          MR. RIES:  I don't know where we are

5  time-wise.  Do y'all want to take a break or do you want

6  to keep going?  I'm happy either way.

7          THE WITNESS:  I'm good.

8          MS. PRITCHARD:  I'd like to take a break.

9          MR. RIES:  Okay.  Let's just take a short,

10  five-minute break or so.  Is that okay?

11          MS. PRITCHARD:  Okay.  Sounds good.

12          MR. RIES:  Thank you.

13          I think that was Leslie.

14          MS. PRITCHARD:  That was Leslie.

15          THE REPORTER:  We are off record at 10:33.

16          (Recess from 10:33 to 10:39.)

17          THE REPORTER:  We are back on record at

18  10:39.

19    Q.   (BY MR. RIES)  Mr. Vasek, are you ready to go?

20    A.   Yes, sir.

21    Q.   Okay.  Thank you.

22          All right.  If I could have you take a look

23  at what I'm marking Exhibit 5.  It's a -- it's a

24  one-page document.  On the top of it, it says Case

25  18-20209, Doc, D-O-C, 94, filed 11-2-18.

---

**44**

1          Do you see that?

2    A.   Yes.  Page 15 of 20?

3    Q.   Yes.  I'm sorry.  That's -- that's --

4          You're correct.

5    A.   Okay.

6    Q.   Okay.  So I'm going to go ahead and represent

7  to you that's the -- that's a true and correct -- excuse

8  me.

9          That's a true and correct copy of Michael

10  Stephen Galmor -- or Steve Galmor, as we've been

11  stating, bankruptcy schedules that directly relate to a

12  potential debt owed by the Galmor Family Limited

13  Partnership.

14          Do you see that on Number 30?

15    A.   Yes.

16    Q.   Okay.  And there's an amount in there of over a

17  million three, but then at the end where the actual

18  amount normally is, it says "unknown."

19          Do you see that?

20    A.   Yes.

21    Q.   Okay.  And if I could have you then turn to

22  what I'm marking as Exhibit 6, which is actually two

23  pages long, and it's -- it's a different case number,

24  one digit different, 18-20210, Doc 14, filed 7-2 of '18,

25  pages 6 and 7 of 32.

---

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

45

1 Do you see those?

2 **A. Yes.**

3 Q. And I'm going to just tell you that this is, as

4 far as I know, a true and correct copy of the -- the

5 debtor's schedules that were in the G&G case.

6 And I particularly pulled out the -- the

7 pages that relate to the Galmor Family Limited

8 Partnership. Okay?

9 **A. Okay.**

10 Q. All right. And I'm going to work from the

11 page -- well, it says page 7 of 32 up above. On the

12 bottom, it says page 6, but it's the second of the two

13 pages I gave you.

14 Do you have that?

15 **A. So still Exhibit 6?**

16 Q. Yeah, still -- I'm sorry. Still -- still

17 Exhibit 6, just page 2, the second page of that exhibit.

18 **A. Okay.**

19 Q. All right. And again, I'm not asking for

20 your -- for your opinion on this, but I'm just going to

21 inform you these schedules, from both the last exhibits

22 we mentioned, are filed in these two bankruptcy cases.

23 And schedules are generally signed by what

24 we call the debtor, which would be either Steve Galmor

25 or G&G -- G&G.

46

1 They're signed by the debtor under penalty

2 of perjury. You understand that?

3 **A. Yes.**

4 Q. Okay. So the very -- the very last of -- of

5 the things mentioned on that second page talks about an

6 amount owed to debtor by the Galmor Family Limited

7 Partnership.

8 And -- and from your report, I -- it -- it

9 appears you went through each of these essentially four

10 amounts that were listed on these schedules. Kind of

11 did them one by one; is that right?

12 **A. Yes, sir.**

13 Q. Because this is, you know, just again, on a --

14 on a pretty high level. This is essentially what --

15 what the case is all about. This is the debts that are

16 alleged by -- in the lawsuit and in these schedules that

17 the -- the FLP should be paying to G&G.

18 That's the allegation. You understand

19 that?

20 **A. Yes.**

21 Q. Okay. So the -- the bottom number there is --

22 relates to -- sorry. I'm going to have to pick this up

23 to read it.

24 It states the wages of Stephen -- Michael

25 Stephen Galmor and Deena Carter because the Galmor

47

1 Family Limited Partnership couldn't support the wages.

2 And it has an amount requested of $500,000 even.

3 You see that?

4 **A. I see that.**

5 Q. Okay. Are you aware of whether Stephen Galmor

6 did any work for the family limited partnership say

7 during the four years prior to the bankruptcy case?

8 Oh, I'm sorry. Let me -- let me just give

9 you years. Let me give you a better question than that.

10 Let's say during the years 2014

11 through 2018, are you aware whether Stephen Galmor was

12 doing any work on behalf of the family limited

13 partnership in any capacity at all?

14 **A. I'm not -- I'm not sure on the exact years,**

15 **especially '18, but it's my understanding he had a**

16 **responsibility to perform certain duties. I don't know**

17 **if he actually fulfilled those responsibilities.**

18 Q. Okay. And when you say he had a duty to do

19 that, is that because he was essentially the -- and I'm

20 not going to tie you to a -- to a legal term here, but

21 essentially the managing partner?

22 He was -- he was the person that was in

23 charge during those years?

24 **A. That's my understanding.**

25 Q. Okay. I mean, frankly, I don't think there's

48

1 any dispute that, in fact, your client has -- has stated

2 he was in charge during those years, and -- and he

3 didn't do things that he should have.

4 But he was the main person in charge of --

5 of -- of the family limited partnership during that time

6 frame?

7 **A. Is that a question?**

8 Q. No. I'm sorry.

9 Well, yeah.

10 **A. Oh, sorry.**

11 Q. I mean, is that your understanding?

12 **A. Yes, that's my understanding.**

13 Q. Okay. Are you aware of whether he was paid

14 anything by the family limited partnership during any of

15 those years from '13 through '18?

16 **A. Yes, he was.**

17 Q. And how much was he paid and in what years?

18 **A. So that's in my -- the actual opinion. We'll**

19 **just go back to that so I can say --**

20 Q. Okay. That would be great. I think we're

21 looking at page 18, maybe into page 19 of your report.

22 **A. Yes.**

23 Q. And we're talking about Exhibit 2, right,

24 your -- your expert report?

25 **A. That -- that's correct. So yeah, number 5,**

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

49

1 page 18.

2     Q. Okay.

3     A. And it flows into 19.

4     Q. And so what -- what do you believe he was paid

5 during that time frame?

6     A. So based on those records, he was actually paid

7 a little over $9,000.

8     Q. Total?

9     A. Correct.

10     Q. Okay. So did you show that Deena Carter was

11 paid anything during those years by the family limited

12 partnership?

13     A. I believe -- I believe she was paid at the same

14 time period, but I don't recall what the dollar amount

15 was.

16     Q. Okay. Do you think it was any more than the

17 $9,000?

18     A. I don't think so.

19     Q. Okay. And so during those -- that -- that

20 five-year time period, as far as you can tell, that was

21 the only payment that was made by the FLP to either

22 Steve Galmor or Deena Carter?

23     A. That was the only payment that was recorded as

24 payroll.

25     Q. Okay.

50

1     A. If they had, you know, paid themselves some

2 other way, I -- you know, I would need that full

3 QuickBooks file to -- you know, to state something in

4 regard to that.

5     Q. Okay. Do you have any idea what -- prior to

6 Steve Galmor being the person in charge, you understand

7 that -- that his dad, Bobby, was the one that was the

8 managing partner.

9     When they -- for example, when Bobby and

10 his wife, Shirley Jo, set up the limited partnership,

11 Bobby initially was the -- was the guy in charge.

12     A. Okay.

13     Q. Do you have any idea what he was paid during

14 the term he was -- you know, on a monthly or annual

15 basis to be the manager of this family limited

16 partnership?

17     A. I don't recall anything. Yeah, I don't -- I

18 don't recall anything.

19     Q. Okay.

20     A. Or let me restate that. I don't recall seeing

21 any payment to -- to Bobby Galmor.

22     Q. Okay.

23     A. But again, the files I think I have may have

24 only gone back to 2012. But, you know, if we had that

25 QuickBooks file, I'm -- I'm -- there may be, you know,

51

1 additional history in there.

2     Q. Sure. So are you familiar with what the size

3 of the real estate holdings of the family limited

4 partnership were?

5     A. In a dollar amount?

6     Q. In any amount. Size, acres, value?

7     A. I was aware, but I don't recall the specifics.

8     Q. Okay. Well, let me just -- the one part of

9 this -- I'm just going to give you a little background

10 here, okay, so maybe this can help you with my

11 questions.

12     The one part of this that I -- that I was

13 responsible for in liquidating the limited partnership

14 pursuant to a -- and this was all pursuant to an agreed

15 judgment with the Court and with Mr. Rukavina -- was to

16 liquidate out the real estate holdings of the family

17 limited partnership.

18     Do you under -- did you understand that I

19 did that?

20     A. Yes.

21     Q. Okay. So -- and again, I'm going to give you

22 very general -- you know, not real specific numbers.

23     But there were -- there were essentially

24 nine different tracts of land that were sold, about just

25 under 3,000 acres, maybe 2,980 acres or so, and the --

52

1 the gross value was about two and three-quarter million

2 dollars. Okay?

3     A. Okay.

4     Q. So based on the type of businesses that were

5 being operated here by the family limited partnership,

6 do you have any opinion as to what a reasonable amount

7 would be for someone to manage that -- to be the general

8 manager of the -- of the family limited partnership?

9     A. I don't -- I don't know if the size of the land

10 is relevant to that question. You know, that -- that --

11     Just because there was acres doesn't mean

12 there was activity or operations, so I don't know if I

13 could answer that question.

14     Q. Well, just based on your investigation of what

15 businesses were being operated -- you mentioned farming,

16 ranching, rock quarry -- I don't know about the oil and

17 gas or if it was just royalties.

18     But just based on -- on those businesses --

19     Do you have any idea how many acres of land

20 were being farmed?

21     A. No, I don't know how much of that was farmland

22 or -- active farmland or, you know, anything specific to

23 that.

24     Q. Do you have any idea how many cattle were being

25 run on an annual basis on the land?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

53

1   A.   No.
2       Q.   And you -- you have some idea of the rock
3   quarry just based on -- on -- I guess amounts that were
4   sold; is that right?
5   A.   Correct.
6       Q.   But you don't have any opinion, one way or the
7   other, as to what a fair -- a fair value for operating
8   that business would be?
9   A.   No, I -- I wasn't engaged to come up with a
10  fair value.  I was analyzing, you know, the historical
11  payments, you know, basically the trend of those
12  payments, and the pricing of those payments, and the
13  timing of those payments, and how those were calculated,
14  not on -- not on whether it was a fair price or not.
15      Q.   All right.  Let me have you look up -- and I'm
16  on Exhibit Number 6 still, the two-page G&G schedules.
17  A.   Okay.
18      Q.   And we were looking at the $500,000.  I'm just
19  going to have you look up at the next number up there,
20  which I'm going to just read it.
21          It's described as -- this was an amount to
22  pay off a handicap van for his mother that was financed
23  at First State Bank, and the amount is $24,807.39.
24          Do you see that?
25  A.   Yes.

54

1       Q.   Okay.  Now, let me have you go to what I've
2   marked as Exhibit 11.  And this is a two-page exhibit
3   with the first page being a Texas Certificate of Title,
4   just to help you out there.
5   A.   Okay.
6       Q.   Just let me know when you find that.
7   A.   Okay.
8       Q.   Okay.  You see on the second page, it looks
9   like there was a check that was cut in May of '17, a
10  check number 6530 for 24,000 --
11          Well, it's that exact same amount,
12  $24,807.39.
13  A.   Okay.
14      Q.   Okay.  Have you looked at these documents
15  before?
16  A.   I don't believe so.  That's a check stub.
17  That's not the check.
18      Q.   Okay.  Have you looked at the title before or
19  the check stub?
20  A.   No.
21      Q.   Have you looked at whether that check ever
22  cleared a bank account?
23  A.   I was unable to find any amount, especially
24  that amount, in that time frame within the G&G
25  QuickBooks file.  I was -- I was not able to find that

55

1   anywhere --
2       Q.   Okay.  I'm asking --
3   A.   -- so I don't know --
4       Q.   I'm asking about the bank account though.
5          (Zoom audio interference.)
6          MR. RUKAVINA:  -- for the record --
7          THE REPORTER:  I can't --
8   A.   So going back to this check stub, you know,
9   I -- I -- it doesn't -- this doesn't specify what
10  account or what entity it came out of.
11          But I was unable to find anything related
12  to this claim within any of the accounting records I was
13  provided.
14      Q.   (BY MR. RIES)  Okay.  But you said you didn't
15  ever have this check stub before?  You've never seen
16  that before?
17  A.   I don't believe so.
18      Q.   Have you ever seen the title that's the first
19  page?  It's marked page 2309, the actual title to the
20  vehicle.
21  A.   I may have, but I don't recall.
22      Q.   Okay.
23  A.   It wasn't -- this -- this --
24          The title was not utilized in forming any
25  of my opinions.

56

1       Q.   Okay.  On the check stub, it says, on the
2   bottom, Interbank.  Did you try to tie that -- or -- or
3   look and see whether that check cleared that bank
4   account from Interbank?
5   A.   No, because I relied on the -- the accounting
6   records that were provided.  So the actual business
7   claim, I believe, is for G&G, so I looked at their check
8   register and the entire QuickBooks file.
9       Q.   Okay.
10  A.   Because the issue of just relying on a check
11  stub is that it -- one, it's not saying what entity it's
12  coming out of or it's --
13          I'm not sure if this one is specifying who
14  actually got paid.
15          I mean, this could have been paid to Steve,
16  it looks like, not the actual bank.
17      Q.   Okay.  But you didn't investigate that through
18  the bank statements that you looked at one way or the
19  other?
20  A.   No.
21      Q.   Okay.  Did you ask anybody -- and I mean
22  anybody -- as to this -- looks like it's a 2014 Dodge
23  van.
24          Did you ask anybody what that van was used
25  for?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

57

1   A.   No.
2   Q.   Do you have any idea what the van was used for?
3   A.   No.  But again, I don't think it was -- it's
4   relevant to the scope of my work.
5   Q.   Okay.  So -- well, let me ask you.  Is it your
6   understanding that the family limited partnership was
7   supposed to be, at least partially, used to support
8   Bobby Galmor during his lifetime and Shirley Galmor
9   during her lifetime?
10   A.   Yes.
11   Q.   Okay.  But you don't know whether this van --
12   now, Mr. Galmor -- when I say Mr. Galmor --
13        Bobby Galmor died in April of 2013, so this
14   van would have been purchased after his death.
15        You understand that?
16   A.   Yes.
17   Q.   Okay.  And Shirley Galmor died a few years
18   later, in March of 2017.  Did you know that?
19   A.   Yes.
20   Q.   So you don't know, during the approximately
21   three years from 2014 to beginning of 2017, when she
22   passed away, whether she got any value from this van or
23   not?  You wouldn't know one way or the other?
24   A.   No.
25   Q.   Do you think that these documents, these two

58

1   pages, would have been helpful for you in your
2   investigation?
3   A.   (No response.)
4   Q.   Mr. Vasek, did you --
5   A.   Yes.
6   Q.   -- did you hear my question?
7   A.   Which one?  I heard some clanking, but I didn't
8   here anything else.
9   Q.   Okay.  I'm sorry.
10        Do you think it would have been helpful for
11   you, in doing your investigation and putting together
12   your report, to have these -- these two pages, this
13   check stub and title, in -- in determining what -- you
14   know, to make your conclusions you made about this
15   $24,000 claim?
16   A.   I don't think it would have changed my -- my
17   conclusion.
18   Q.   So even if you had had these documents,
19   you're -- you would've -- you wouldn't have done
20   anything with them?
21   A.   Correct, I -- you know, I went back to the
22   accounting records and saw no evidence of this -- what
23   appears to be a check stub.
24   Q.   All right.  So let me have you now point to --
25   and I'm going to stick with -- I'm just -- as you know,

59

1   I'm kind of going up the line on -- on Exhibit 6.
2        The next number up is -- is $384,902.74,
3   and the description is -- it's regarding payroll
4   obligations and medical insurance for the partnership's
5   employees, and also for medical aid for the care of
6   Michael Stephen Galmor's mother.
7        Do you see that?
8   A.   The top one?
9   Q.   The very top number, yes.
10   A.   Yes.
11   Q.   Okay.  And so you wrote on your report, in
12   page 17 to 18, you did some examination -- you did some
13   conclusions about this amount.
14        Let me have you look at what I've marked as
15   Exhibit Number 12.  And Exhibit 12 -- well, these pages
16   are actually marked page by page.  They have a number
17   SG_016739.
18        Do you see that first page?
19   A.   Yes.
20   Q.   Okay.  And the first two pages look like
21   they're all kind of part of the same report.  Have you
22   seen this --
23        This is from QuickBooks.  Is that right?
24   A.   It appears so.
25   Q.   Okay.  Have you seen this report in the past?

60

1   A.   Not this actual printoff, but, you know, I -- I
2   spent time inside the actual QuickBooks company file, so
3   this looks like -- it's essentially -- basically a
4   general ledger, almost.
5        So yeah, I would've spent time within the
6   same data, but not this printout here.
7   Q.   Okay.
8   A.   Screenshot or whatever it is.
9   Q.   So let me have you, then, turn to the third
10   page, which is page 16741.  You see that?
11   A.   Yes.
12   Q.   Okay.  And it's an invoice from G&G to the
13   family limited partnership.  You see that?
14   A.   Yes.
15   Q.   Okay.  And if you want to scroll through,
16   take -- take a minute or so to scroll through the rest
17   of these pages.
18        Essentially, it looks like they're all
19   different invoices.  Some are one page long, some are
20   multiple pages, but they're all invoices.  They have
21   invoice numbers.  They have dates and descriptions on
22   them.
23        But go ahead and take a look so -- because
24   I want to ask you a couple of questions about these.
25   A.   Okay.

61

1    Q.   Now, have you previously reviewed these
2  invoices?
3    A.   Yes.
4    Q.   Are you familiar with what --
5         Let's just take a look at one.  Look at
6  page 16891.
7    A.   Okay.
8    Q.   And if you look through that, are you familiar
9  with what -- what that invoice represents?
10   A.   I'm familiar with what it says.  Is that what
11 your question is?
12   Q.   Yes.
13   A.   Yeah.
14   Q.   Okay.  And so it looks like some dirt work
15 on -- on the farm was done.  It describes the operator,
16 and I can't -- wouldn't for the life of me be able to
17 tell you the first of that -- Courvoisier Caldwell.
18        We'll just call him Mr. Caldwell.  Okay?
19   A.   Okay.
20   Q.   He apparently did what looks like seven hours,
21 at a rate of $50 an hour, $350 --
22        $350, for example, on the very first line,
23 right?
24   A.   Yeah.  According to this invoice copy, yeah.
25   Q.   Okay.  So have you investigated any of these

62

1  invoices to see if work like this was actually done on
2  those dates by those people?
3    A.   Yes, we requested all the backup, but was not
4  provided anything.
5    Q.   You requested that from who?
6    A.   I believe it was in the initial discovery
7  request.
8    Q.   Okay.  Who was it -- who was that to?
9    A.   I believe you.
10   Q.   Okay.  So what kind of backup would you expect
11 there to be for this?
12   A.   Time sheets, at least.
13   Q.   Okay.  So are you claiming that --
14        Then, for example, on that invoice, you
15 just don't think that it should be regarded as -- as
16 factual at this point?
17   A.   No, that's not what I said.
18   Q.   So what are you saying?  I mean, are you saying
19 these invoices are due or not due?
20   A.   We don't have enough information to say if they
21 are due or not.  You know, according to the most recent
22 QuickBooks file, nothing is due, so that's all I can go
23 off of.
24        For example, this is from 2014.  You know,
25 a lot -- a lot happened between them and the latest

63

1  file.  And in the latest file, it shows that none of
2  these are due.
3    Q.   When you say none of them are due, what are --
4  what --
5         I don't understand what that means.
6    A.   So, you know, you bill an invoice in 2014.  It
7  could get paid or written off subsequent to that.  So
8  between 2014 and, you know, the balances I was provided,
9  you know, from that computer in your office, it didn't
10 have --
11        The most current QuickBooks file that we
12 were provided by you is that it shows that there are no
13 open invoices, you know, sitting in Galmor's/G&G's
14 books.
15   Q.   And are you saying that they were not shown as
16 assets, like a receivable?
17   A.   Correct.
18   Q.   Okay.  What if, at the time they were -- they
19 were billed, they were just written off, would they show
20 up as an asset, as a receivable?
21   A.   No, they -- if they were written off, no, they
22 wouldn't show up as a receivable.
23   Q.   Okay.  Let me have you look back at another --
24 another few invoices.  If you would, look to page 16889.
25   A.   Okay.

64

1    Q.   Okay.  This is a fairly simple invoice.  It's
2  got a rate and somebody's name for three months here,
3  January, February, March; Becky Morgan and a Robin
4  Blair.
5         Have you spoken to either of those
6  people --
7    A.   No.
8    Q.   -- as part of your investigation?
9    A.   No, no.  We were going to rely on the backup
10 for the invoice before we proceeded with anything else.
11   Q.   So you don't know whether they were doing work,
12 or if they were doing work and if they were --
13        You haven't confirmed with them whether
14 they were doing work for the GFLP or not, or -- or
15 whatever?  Is that right?
16   A.   No, I have not confirmed with them directly who
17 they were working for and how much.
18   Q.   If we could, go to page 16900.
19   A.   Okay.
20   Q.   Okay.  And now we have some -- some charges,
21 and it looks like from November of '15 and December of
22 '15, a number of people here with wages; Hayden Duncan,
23 Becky Morgan, Mary Tallant, Rudas Galmor.
24        Have you interviewed any of those people
25 about the work they did during those time periods?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

65

1 MR. RUKAVINA: Objection, it assumes facts

2 not in evidence.

3 MR. RIES: Not in evidence. I'm asking

4 whether he actually interviewed any of those people that

5 are listed on that page of the invoice.

6 MR. RUKAVINA: And that's a different

7 question, and I don't object to that.

8 A. Okay. Again, the latest QuickBooks file we

9 were provided had no balance due. So going back and

10 reviewing -- and interviewing people if nothing was due,

11 I don't -- I don't think was very fruitful.

12 Q. (BY MR. RIES) So is it fair to say that you --

13 you did have all these invoices in front of you when you

14 did your report? You reviewed them?

15 A. Yeah, these are generated out of QuickBooks.

16 So by having the QuickBooks file, I had access to these

17 invoices.

18 Q. Okay. And the invoices that I provided in

19 Exhibit 12 add up precisely to $384,902.74, which is the

20 amount that's on those schedules as what is owed.

21 But your contention is that because there's

22 not a receivable for that amount, that it's just not

23 due. Is that correct?

24 Am I summarizing your conclusion properly?

25 A. Yes, if -- if -- if the current set of books

66

1 shows that nothing is due, then I would conclude that

2 nothing is due.

3 Q. Okay. Well, let me ask you a little bit about

4 that. So you're not disputing that these people were

5 paid by G&G or -- over the course of time, or -- or --

6 You don't really know one way or the other,

7 I guess is what I'm saying?

8 A. I did not verify if these people were paid by

9 G&G.

10 Q. You don't know if any of these underlying

11 transactions happened or if they didn't happen? You

12 wouldn't know one way or the other?

13 A. Correct, I don't know if it happened, and I

14 don't know if any of it actually relates to the FLP and

15 the FLP should've been billed for them.

16 Q. Okay. You just don't know?

17 A. I did not verify it.

18 Q. You didn't do any -- you really didn't --

19 You know, without talking to those people,

20 you didn't investigate in any way the comment you just

21 made?

22 And I'm not saying -- I'm just -- I'm

23 trying to summarize. What you're telling me is that you

24 don't know whether the transactions happened or not.

25 You don't know whether they should've been billed to the

67

1 FLP or not. You're saying you just don't --

2 You didn't look into that because you

3 didn't think it was necessary?

4 A. If -- you know, my scope was to defend the

5 claim. The claim is that, you know, at -- at the

6 time of the bankruptcy, the FLP owed G&G $385,000.

7 When we were finally able to get a set of

8 the QuickBooks file from your office, none of these show

9 as due, so the transactions that -- the ins and outs and

10 everything prior to 2016, 2014, I don't think are

11 relevant to the opinion if the set of books that G&G was

12 keeping shows as nothing was due.

13 Q. Okay. So you do understand that -- that this

14 is work -- at least these invoices appear to say that

15 this is work done by G&G, either they paid an employee

16 or they had ordered work done, we had talked about

17 different kinds of work done.

18 That G&G is asserting the family limited

19 partnership should pay them back, you understand that's

20 what these invoices are asserting?

21 Whether that's true or not is a different

22 issue. I'm just saying that's what they're asserting.

23 A. That is what this invoice is asserting,

24 correct.

25 Q. Okay. And these are -- these would have

68

1 been -- therefore, have been things that G&G paid for

2 itself, the company G&G paid for, as opposed to say the

3 Galmor Family Limited Partnership paying for these

4 people?

5 MR. RUKAVINA: Objection, assumes facts

6 that are not in evidence.

7 MR. RIES: Well, what facts are not in

8 evidence? I'm asking you -- I'm asking you who -- who

9 would --

10 Based on what we just -- what you just

11 agreed to, these were amounts paid by G&G as opposed to

12 the GFLP or some other entity.

13 (Zoom audio interference.)

14 THE REPORTER: Mr. Berghman, we didn't hear

15 your objection.

16 MR. RUKAVINA: I'm sorry. This is Davor

17 again, and I objected based on that mischaracterizes his

18 prior testimony.

19 MR. RIES: I didn't hear what he said.

20 THE REPORTER: He objected based on that

21 mischaracterizes his prior testimony.

22 It would have nice for him to tell us that

23 he was back instead of Berghman.

24 MR. RIES: Well, I think they're bouncing

25 back and forth.

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

---

69

1 THE REPORTER: Okay.
2 Q. (BY MR. RIES) Okay. Let me -- let me make it
3 easier. Based on these invoices, these are amounts that
4 G&G would have paid for, correct?
5 **A. That is the implication, correct.**
6 Q. Okay. So in other words, G&G would cut a
7 payroll check or a -- you know, maybe these were
8 contractors, or however they were paid, or an equipment
9 check.
10 They would have -- they would have paid
11 somebody, essentially these people or so forth, and then
12 that -- that check would have been out of G&G's bank
13 accounts, correct?
14 MR. RUKAVINA: I again object that there's
15 no evidence in the record on either of your assertions.
16 MR. RIES: I'm asking his opinion. I'm
17 just asking his opinion; is that's what, mechanically,
18 these invoices would represent.
19 MR. RUKAVINA: I'll again object. They
20 could represent something created for a completely
21 different purpose.
22 MR. RIES: Well, he's an accountant, so I'm
23 asking the accountant what his opinion is. He's your
24 expert.
25 MR. RUKAVINA: That's fine. And I've

---

70

1 objected, so he can answer.
2 **A. You know, I think without the actual backup to**
3 **the invoices, it's hard to make that -- that**
4 **certification.**
5 Q. (BY MR. RIES) Well, I'm not asking you whether
6 it actually happened. I'm asking whether it --
7 We've kind of gone down the line of saying,
8 okay, this is what G&G says is owed by the FLP, correct?
9 **A. Correct.**
10 Q. And that there's itemizations of what those
11 amounts are that G&G paid for, correct?
12 MR. RUKAVINA: And again, I object.
13 That's -- that's not -- Kent, that's not correct.
14 There's no evidence in the record, at least
15 that I'm aware of, that G&G actually made these
16 payments, so that's the basis of my objections.
17 MR. RIES: Well, I didn't say actual. I
18 said --
19 MR. RUKAVINA: If you want -- if you want
20 the witness to speculate, I have no problem with that.
21 MR. RIES: I'm asking him is that what
22 these invoices assert; that G&G paid money to somebody
23 for some thing.
24 **A. Repeat that one more time.**
25 Q. (BY MR. RIES) Do these invoices assert that

---

71

1 G&G paid somebody, you know, whether it was salary or
2 otherwise, for the things listed on these invoices?
3 **A. I don't know if I could say it asserts**
4 **anything. All it shows is that they're trying to bill**
5 **the FLP for these people's time and benefits, it looks**
6 **like.**
7 Q. All right. Have you ever --
8 Do you have any experience with financial
9 institutions in -- as an auditor?
10 **A. Can you be more specific?**
11 Q. Banks, savings and loans, credit card
12 companies.
13 **A. No.**
14 Q. Do you have any experience working for a
15 financial institution?
16 **A. No.**
17 Q. Have you ever consulted with a financial
18 institution on -- on any parts of their business?
19 **A. No.**
20 Q. Okay. So I'm just going to have to ask -- I'm
21 going to ask you, based on your general business
22 experience -- let's just --
23 We're going to do some hypotheticals here.
24 Let's say your typical credit card company that gives --
25 that gives me a credit card and gives me a credit limit

---

72

1 of $10,000.
2 Are you familiar with how credit cards
3 work?
4 **A. Yes.**
5 Q. And say I run up about 7 or $8,000, and pay on
6 it for awhile, but stop paying on it for awhile, and
7 then just quit. Okay.
8 Assuming that -- those facts, are you
9 familiar with the idea that that credit card company may
10 then write off that $7,000 that I haven't paid back as a
11 bad debt?
12 **A. I think they would go to collections before**
13 **they wrote it off.**
14 Q. Okay. So you think that's a requirement before
15 they write off a debt? They have to try to sue
16 somebody?
17 **A. Going to collections isn't suing somebody, and**
18 **I don't know their policies.**
19 Q. Okay. If you were advising --
20 Well, what would be the advantage of -- for
21 that credit card company to write -- write off that
22 $7,000 when I quit paying, say, for six months?
23 Are there any advantages to that -- to that
24 company in doing that?
25 **A. I mean, it's a loss for taxes, but I don't know**

---

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

73

1 if that's the goal for a credit card company.

2 Q. Okay. Do you think that has any legal

3 implications as to whether I still -- if they decided to

4 write that $7,000 off on their tax bill, does that

5 change whether I still owe that $7,000 or not?

6 A. I don't know that.

7 Q. Okay. Now -- well, let me ask you. In your

8 work history, do you do any tax work for clients?

9 A. My firm does, but me, not directly, no.

10 Q. Okay. Have you ever done any tax work for

11 clients?

12 A. No.

13 Q. Okay. You understand --

14 A. Well, I've done more of like, you know, cash

15 accrual adjustments, but I've not prepared tax returns,

16 if that's what you're asking.

17 Q. Okay. You understand one of the goals of

18 people that do tax advising in the accounting business

19 is to try to just pay less in taxes, right, for whatever

20 reason? I mean, that's a goal?

21 A. Okay.

22 Q. And if you can't pay less, another goal, would

23 you agree, would be that you could at least defer taxes

24 for awhile?

25 A. Okay.

74

1 Q. So even in my hypothetical with -- with my bad

2 debt, even if I ended up paying them back $3,000 a few

3 years later, they've -- they've taken that write-off of

4 $7,000 the year they did it. And then two years later,

5 when I pay them back, they have to take that income as

6 3,000.

7 Is that your understanding of what would

8 happen on taxes?

9 A. Correct.

10 Well -- well, actually, it depends.

11 Depends on how they filed the tax return, whether it's

12 on a tax or accrual basis.

13 Q. Well, if they wrote off that debt as an expense

14 on the year that I quit -- that they decided to write it

15 off, let's just say that's in year one. And in year

16 three, I paid them back 3,000, they have -- they have

17 deferred some taxes, 3,000 -- taxes on $3,000, at least,

18 back a couple years, right?

19 A. Okay. But again, it depends on how they're

20 filing their tax return.

21 Q. Okay. But deferring taxes is a -- is a

22 worthwhile goal if you're a tax preparer?

23 A. It depends. If you anticipate your tax rate to

24 be higher in those later years, you don't want to defer

25 it.

75

1 Q. Okay. So you've stated basically that this

2 $384,000 amount, you don't believe -- it's no longer

3 showing as a receivable, as an asset, correct?

4 A. Can you -- can you repeat that?

5 Q. You're saying that this -- the $384,000 is not

6 due -- is not a proper debt because it's not showing up

7 as a receivable on the books of G&G? It's not showing

8 up as that type of an asset?

9 A. That's correct, it is not showing up as a

10 receivable or any kind of asset.

11 Q. And I think you testified earlier that if it

12 had just been written off previously to that, it

13 wouldn't have shown up as an asset. Is that --

14 It wouldn't -- it would no longer be shown

15 as a receivable at the time you looked at the books,

16 correct?

17 A. That's correct, but I -- I didn't see any

18 evidence of write-off either.

19 Q. Okay. Have you asked Kellye Fuchs about how

20 this was -- how these transactions were accounted for?

21 A. No. It was my understanding that the

22 progression of this was going to be that she would

23 provide me everything she has, I would look at that, and

24 then ask her questions.

25 But I don't believe she's provided

76

1 anything, so I essentially had to work with what you

2 gave me.

3 Q. Well, did anyone say you couldn't talk to

4 Kellye Fuchs?

5 A. No. I'd just like to look at the underlying

6 data before I spend time, you know, speaking with

7 anybody or inquiring with anybody.

8 Q. Okay.

9 A. That way I know what to inquire about.

10 Q. Well, you've put out a 20-page report at a

11 pretty significant expense that -- are you saying is

12 then -- could totally change based on your conversations

13 with Kellye Fuchs?

14 A. I don't know if I would say it could change

15 based on conversations with her, but if she has an

16 actual QuickBooks file and underlying support for some

17 of these transactions, it could change, which I think is

18 stated in the report.

19 Q. Okay. So if she would --

20 A. I mean, my position is not to rely on

21 inquiries. It's to rely on the data that support it.

22 Q. Okay. And my understanding and -- and

23 throughout this is, is essentially what you've just

24 stated. That because it's not shown as a receivable,

25 it's not due.

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

77

1 It's not a debt any longer; is that right?
2 A. Yeah. And that's -- that's just general.
3 That's not just this case. If it's not shown as due,
4 then I would conclude it's not due.
5 Q. Okay. Let me ask you another question about --
6 this is --
7 The $384,000 is over a period of about four
8 years. Okay? Do you understand that?
9 Or I'll -- I'll just -- let me just say
10 assume that fact in evidence. Okay? It's over about a
11 four-year period. Okay?
12 A. Okay.
13 Q. So we're talking about just under $100,000 a
14 year that G&G was -- is asserting they were -- say 90,
15 $95,000 a year, that they were asserting they were
16 paying expenses that -- that G&G was paying that much in
17 expenses on an annual basis because the GFLP couldn't
18 afford to pay that.
19 Okay. You understand that's the assertion?
20 A. Yes.
21 Q. Okay. Based on your evidence -- or your review
22 of the -- of the FLP, at least during the last couple of
23 years -- we went through '16 and '17's tax records --
24 did the FLP have the $95,000 a year to pay for these
25 expenses?

78

1 A. I'd have to go back and check by year. Yeah,
2 I'd have to go back and check.
3 Q. Okay. Well, let's go back and look at the tax
4 returns.
5 You went through the cash amounts, and I
6 think you had the beginning cash amounts in '16 at
7 around $15,000, end of year was 20,000.
8 A. Yeah, the beginning and ending cash is not
9 relevant. There's a lot of transactions in the cash
10 accounts that happened in between there.
11 Q. Well, if the GFLP had had to put out $95,000 in
12 2015, and $95,000 in 2016, and $95,000 in 2017, that --
13 you know, over four years, they would've had to come up
14 with $384,000, right, to pay these expenses?
15 A. That is a correct assumption.
16 Q. Okay. So based on the fact that at the end of
17 '17, they essentially had $300 in their bank account, it
18 doesn't appear that they had an extra $385,000 laying
19 around to pay for these expenses, did they?
20 A. No. But that doesn't mean they owed it either.
21 Q. Well, I'm not saying -- I'm just asking whether
22 they had the money to pay those expenses, if those were
23 expenses that were rightfully theirs?
24 A. If those expenses were rightfully theirs, based
25 on the tax return, they did not have the cash to pay

79

1 those.
2 Q. Okay. So you understand one of the reasons why
3 somebody might write off a debt is because it doesn't
4 appear that the other person is going to be able or has
5 the money to pay you back, at least not at this time?
6 You understand that would be a reason why
7 someone might write off a receivable?
8 A. That might be a reason.
9 Q. Okay.
10 A. But again, I haven't seen any actual
11 write-offs, so I think your -- I think that --
12 I think we're working under the assumption
13 that it was written off, which I don't know if we can
14 work under that assumption because I haven't seen an
15 actual write-off.
16 Q. Did you try to tie back any of the payments
17 that were made on these invoices to expenses that were
18 on the G&G books that you did get?
19 A. Can you say that again?
20 Q. Did you attempt to tie back any of the expenses
21 that are on these invoices that make up the $384,000 to
22 G&G's QuickBooks records that you did have?
23 A. Yes. But as stated in the opinion, there was
24 two sets of books, so most of these relate to -- you
25 know, I think it was like 2014, 2015, 2016.

80

1 So again, as you flow through the
2 progression of -- of accounting, from a balance sheet
3 perspective, or an AR perspective, the ins and outs are
4 not relevant.
5 It's just what is due when the claim is
6 made that it's due.
7 Q. So is it possible that these expenses, wages
8 and so forth were just expensed annually on tax returns
9 by G&G?
10 Do you have any idea one way or the other?
11 A. The tax returns don't go into that much detail.
12 Q. So you don't know one way or the other?
13 A. Are you asking if they --
14 Q. I said is it possible that --
15 A. -- if G&G expensed it?
16 Q. Right. Is it possible that G&G just expensed
17 all these -- all these -- over the course of four years,
18 expensed this $384,000 as it was incurred and just
19 expensed it on their tax returns?
20 Is it possible? Do you --
21 A. Anything is possible.
22 Q. I mean, you don't know one way or the other?
23 A. No. Not based on the tax returns, no. They
24 don't -- they don't go into much detail.
25 Q. All right. Let me have you look at -- go back

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

81

1  and look at Exhibit 6. And I'm starting at the first
2  page here. And this is the $186,341.19 item.
3         There's a description, and I think you've
4  kind of talked about this before, about the rock quarry
5  that was on GFLP land, royalties paid.
6         Can you describe what you understand these
7  transactions to be between G&G and the GFLP?
8     A.  So it's my understanding that G&G was operating
9  the mine, so mining the rock and then moving it out. So
10 they were paying a per-ton royalty on that rock they
11 removed.
12    Q.  Okay. And so what --
13       Why would that have resulted in an amount
14 owed to G&G by the FLP?
15    A.  The claim implies that there was advances above
16 and beyond revenue that was earned.
17    Q.  And when you say "advances," you're talking
18 about cash advances from G&G to the family limited
19 partnership?
20    A.  According to the claim, yes.
21    Q.  Okay. So would you look at what I've marked as
22 Exhibit 13. And there's quite a few pages here, but the
23 first couple are --
24       Well, the first three are -- look like kind
25 of like an Excel spreadsheet. They're -- they're marked

82

1  pages SG_016723, 724 and 725.
2     A.  Okay.
3     Q.  And so on that middle page, 16724, there's kind
4  of a real brief reconciliation that says advances of a
5  little -- a little over 561,000, the rock amount; the
6  royalty amount, 374,000; and the net being the
7  $186,341.19 that is to the penny the amount that it's on
8  these schedules.
9         Is that right?
10    A.  The -- so this total amount owed is not --
11 according to this schedule, is not owed for advances --
12 for royalty advances.
13       Is that what you said?
14    Q.  Well, the net amount that's -- that's being
15 claimed is the amount of advances of 561,000 that are
16 over the rock royalty amount of 374 that nets out to
17 186.
18       Is that not right?
19    A.  Well, yeah. But the 384 and the 571 are not --
20 not relevant to the royalty advances. That -- that 384
21 is the same thing we just discussed.
22    Q.  Oh, I'm sorry. I'm sorry. You're right.
23       Well, the -- I think you're looking at the
24 second column. I'm looking at the very --
25       May be better to go back to page 16725.

83

1     A.  Okay.
2         (Zoom audio interference.)
3         MR. RIES: Hold on one second. We've kind
4  of lost our connection here.
5         (Pause)
6     Q.  Okay. I think we're back. Sorry about that.
7     A.  I'm sorry. You're clear on our end.
8     Q.  Okay. So the advances are on these first three
9  columns. They have a date, a check number, and an
10 amount.
11       And they total up to 561,050.00, correct?
12       MR. RUKAVINA: I'll just -- I'll just
13 object to the extent --
14       Kent, can we just agree that all of your
15 questions about this are what this document asserts --
16       MR. RIES: Sure.
17       MR. RUKAVINA: -- and I don't have to
18 object every time? Okay.
19       MR. RIES: Sure.
20       MR. RUKAVINA: Okay. Go ahead.
21       MR. RIES: I mean, I don't know if these
22 are more true than you do. I mean, I'm --
23       MR. RUKAVINA: Okay. Fair enough. Fair
24 enough. Go ahead.
25    Q.  (BY MR. RIES) And then the next -- you see

84

1  that $561,000 number?
2     A.  Yes.
3     Q.  Okay. And then the columns -- the next couple
4  of columns are what they -- they called advance payments
5  back to Galmor's, but essentially that's the royalty
6  amounts that were owed by G&G to the FLP and total up to
7  374,708.81?
8     A.  According to this listing, yes.
9     Q.  Right.
10       And so the net of those two numbers is that
11 184,341.19 that's -- that's on the schedules and -- and
12 is discussed in your report?
13    A.  Yeah. I mean, I believe so.
14    Q.  So have you seen this -- this spreadsheet in
15 the -- as part of your investigation, or in the past?
16    A.  Yes, I've seen this spreadsheet.
17    Q.  Okay. And I'm not going to have you just --
18       You can scroll through the pages behind it,
19 but those are copies of checks, it looks like, to the
20 Galmor Family Limited Partnership and marked "advance?"
21       Like, I'm looking at 16 -- page 16727, and
22 there's a $2,000 check, and it's got a date, 10-6-16.
23       You see that?
24    A.  Yeah. It's not an actual copy of a check,
25 but --

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**

KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP

OCTOBER 28, 2021

85

1  Q. Right.

2  A. -- I see that.

3  Q. But it has a check -- a date and the payment.

4  Have you tried to tie back any of these

5  advances either to G&G's books or the FLP's books or --

6  or bank statements?

7  A. So yes, I have tried.

8  Q. And do you have questions as to whether these

9  advances were actually made?

10 A. I have questions as to if they were actually

11 advances or not.

12 Q. Well, what else would they have been?

13 A. Money that was owed to the FLP for the

14 royalties.

15 Q. Okay. But it was money paid by --

16 You've tied it back that it was -- for

17 whatever reason, the GFLP was paying --

18 I'm sorry. G&G was paying. The GFLP was

19 writing these checks?

20 A. Correct.

21 Q. So the checks exist. It's just a question of

22 what -- what are they for, is what you're --

23 Is that fair to say what your point is?

24 A. Yes.

25 Q. Okay. And I'd like to just kind of compare and

86

1  contrast. The last set of things we talked about was

2  the $384,000 things. Those were -- those were things

3  asserted to be paid by G&G. The advances actually

4  were -- were things --

5  A. Well, I -- I think they were asserted based on

6  the invoice, but I believe the bankruptcy -- bankruptcy

7  schedules themselves assert something different.

8  Q. Okay. Can you explain what you mean by that?

9  A. It's more -- I touched on it more in my

10 opinion. It's more a funds flow. So on the schedules,

11 it -- I believe --

12 And I'd have to go back and read it, but it

13 says that Steve loaned G&G funds, and then G&G turned

14 around and loaned those funds to the FLP.

15 So if that cash flow -- if that flow of

16 funds actually happened like the bankruptcy schedules

17 assert, then there would have been no reason to actually

18 bill for those invoices because the FLP would have had

19 the funds.

20 So I mean, I'm just trying to be careful on

21 what we're trying to, you know, assume on different

22 situations because there's just a lot of conflicting

23 information.

24 Q. All right. So what I'm trying to compare here

25 is that the $384,000 amounts didn't directly hit the

87

1  FLP's books in the way that the rock quarry advances

2  would have because the rock quarry advances had money

3  coming out of G&G and went directly into the books --

4  into the bank account of -- were deposited into the

5  FLP's, so that --

6  So both entities would have had to account

7  for that money going out of G&G and coming into the FLP,

8  correct?

9  A. Yeah. Yeah, you're correct.

10 You know, on the 384, there was no record

11 of any kind in the FLP's books regarding the royalty

12 payments. There was record of that being paid out of

13 the G&G and cash being received by the FLP. However,

14 the accounting, who I presume was done by the same

15 person, was not consistent.

16 Q. Okay. So in looking at -- and I'm trying to

17 look at your report, and I'm on page 17 where you talk

18 about the rock advances.

19 A. Yes.

20 Q. You state in here, or at least you recognize,

21 that the FLP tax returns for several years, '15 -- 2015,

22 '16, '17, all list a shale advance.

23 A. So the tax returns list that through 2017.

24 Q. Uh-huh.

25 A. Obviously it doesn't -- you know, they didn't

88

1  say who it's -- the advance is from. However, the

2  underlying accounting records don't have that recorded

3  anywhere, so I'm not sure how they -- I am not sure.

4  That's a good -- that would be a good

5  Kellye question as to how was -- how was the tax return

6  prepared because it doesn't tie to the underlying

7  financial records.

8  Q. Okay. And you also recognize that G&G's tax

9  returns -- and we could go back through these, but I

10 think your summary mentions it.

11 G&G's tax returns also shows that there's a

12 royalty advance as an asset on their statements as if

13 they're owed money, correct?

14 A. They are. But those -- based on the

15 accounting, that wasn't the -- that wasn't exclusive to

16 the FLP.

17 It appears they were operating multiple

18 quarries, so the receivables -- or the asset on G&G's

19 books is inclusive of independent third parties.

20 Q. Where else was G&G operating a quarry?

21 A. I think it was all around the same area. I

22 think I want to say there was probably three or four

23 other -- maybe three other quarries that they were

24 billing for -- for royalties.

25 Or excuse me. They were paying royalties

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

89

1  on.

2  **Q.** Okay. But at least with respect to the tax

3  returns here, you recognize that there is an asset

4  listed on G&G's tax returns and there is a liability

5  listed on the FLP's tax returns, and the amounts are

6  not correct?

7  **A.** Can you be -- what do you mean they're not

8  **correct?**

9  **Q.** No. I'm sorry.

10      G&G has an asset listed on its tax return

11  of shale advances that are owed to it. It's got an

12  asset as if there's a receivable?

13  **A.** That is correct.

14  **Q.** And likewise, on the flip side, the FLP has a

15  liability for shale advances as if it owes money for

16  that?

17  **A.** That's correct, on the tax return, but not on

18  **the -- not on the accounting records.**

19  **Q.** And the amounts are -- are --

20      At least the FLP's amounts are somewhere

21  around $174,000 and 165,000; is that right?

22  **A.** On the tax return?

23  **Q.** Yeah.

24  **A.** I'd have to go back and look. Which one was

25  **that?**

90

1  **Q.** Let's take a look. This is Exhibit 7.

2  **A.** Okay.

3  **Q.** And I'm sorry these aren't numbered. It's

4  on -- Statement 4 gives the exact beginning and ending

5  amount.

6  **A.** Statement 4. Okay. Yes.

7  **Q.** So the shale advance beginning is a little over

8  174,000, and ending is a little over 165,000; is that

9  right?

10  **A.** That's correct, yes, as of 12-31-17.

11  **Q.** So not -- not terribly inconsistent from the

12  186,000 that is -- is made on the schedules?

13  **A.** Correct.

14      On the bankruptcy schedules, correct?

15  **Q.** Right. I'm sorry. On the bankruptcy schedule.

16  I'm sorry.

17  **A.** Okay.

18  **Q.** Hey, you know what -- I need -- let's take

19  about a ten-minute break if we can.

20      MR. RUKAVINA: When are you going to break

21  for lunch, Kent?

22      MR. RIES: What time is it?

23      MR. McLAUGHLIN: It's 11:50.

24      MR. RIES: We may be able to -- I don't

25  know that I have a whole lot left, so it -- do you think

91

1  if we take a few minute break and then -- because I mean

2  I really need to take a few minute break.

3      If we do that, we may be able to finish

4  within, you know, 15, 20 minutes.

5      MR. RUKAVINA: Yeah, that's better than

6  breaking for lunch now. Sure.

7      MR. RIES: That's what I -- I was just

8  going to try and regroup in every way and then come back

9  and see if he can finish up.

10      MR. RUKAVINA: Yeah. Yeah, take a

11  five-minute break. Sure.

12      MR. RIES: All right.

13      THE REPORTER: We are off record at 11:52.

14      (Recess from 11:52 to 12:00.)

15      THE REPORTER: We are back on record at

16  12 o'clock.

17  **Q.** (BY MR. RIES) Mr. Vasek, are you ready?

18  **A.** Yes, sir.

19  **Q.** Okay. Going back to the rock quarry issue --

20  subject, I just wanted to ask you a little bit about --

21      You put in your report, on page 19 or so,

22  about the amount of the royalty that was paid by G&G to

23  the FLP.

24      Do you have any documentation that shows

25  what that history is?

92

1  **A.** One sec. Which piece was it?

2  **Q.** Okay. I'm sorry. On page 19 of your report --

3  **A.** Okay.

4  **Q.** -- you talk about the rock quarry royalties.

5  **A.** Yes.

6  **Q.** And you stated that G&G historically paid rock

7  quarry royalties to the FLP at a price of 75 cents a

8  ton.

9      And my question is: Do you have any

10  documentation as to what the amounts -- what these

11  historical amounts are?

12  **A.** Yes. It's in the QuickBooks file.

13  **Q.** Okay.

14  **A.** It's QuickBooks, so you have a -- trying to

15  think of the terminology here, but you basically have a

16  quantity you can input and then a price per quantity.

17  And so all the information is in the QuickBooks file.

18  **Q.** So you had QuickBooks files for G&G?

19  **A.** Yeah. Like I said earlier, I think going back

20  to 2012. I'd have -- I can't -- it was --

21      Yeah, I think they were in 2012 maybe. It

22  was -- it was on the computer you -- you had in your

23  office.

24  **Q.** Okay. And so do you have any idea why that

25  amount changed over time?

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

93

1    A.    Which?  The price per ton?

2    Q.    Correct.

3    A.    No.  No, it doesn't indicate a reasoning.  It

4 just changes roughly -- I believe it was -- well, it's

5 probably in here.

6          Yeah, it was -- May 2013 --

7    Q.    Okay.

8    A.    -- was, I think, the -- it was either the last

9 or the first.  I can't remember.

10          But yeah, I believe it states in here.  It

11 went from 75 cents per ton one month, and then the

12 following month it dropped down to 50 cents per ton.

13    Q.    Okay.

14    A.    And it was consistent.

15          I believe it was going back to 2012, maybe.

16 I'd have to check.  I mean, it was a monthly 75 cents

17 per ton beginning in 2012, you know, all the way until,

18 I think, April or May of '13.  And it dropped to 50

19 cents, and then everything after that was done at 50

20 cents for --

21          And let me be clear.  That's the price --

22 that's the royalty price per ton they were paying the

23 FLP, not for the other -- not other quarries they were

24 working for third parties.

25    Q.    Okay.  So --

94

1    A.    Those -- I think those range from a dollar to

2 two dollars.

3    Q.    Do you have any idea what -- if the operation

4 changed at all at that time as to, like, who was doing

5 what?  Whether the GFLP employees became G&G employees

6 or vice-versa?  Or did prices change outside?

7          Do you have any idea what might have

8 changed to make that rate change?

9    A.    No.  We didn't get any records --

10    Q.    Do you --

11    A.    -- that would, you know, support any of that.

12    Q.    Did you investigate at all any kind of industry

13 records that would change?  Not just these companies,

14 but just generally why -- what -- what people pay for

15 this kind of rock and in these time periods?

16    A.    No, not in the general industry, but we did

17 look at, like I said, the --

18          I mean, the industry, yeah, that's pretty

19 vague.  But, you know, I think a more reliable trend is

20 what G&G is paying someone else outside of the FLP.  And

21 like I said, that was between a dollar and two dollars a

22 ton.  And that dollar and two dollars --

23          And I think, getting back to your original

24 question, that didn't drop like -- like the FLP's

25 pricing dropped.  So it's a little more of a micro --

95

1 micro look at it, but probably more relevant.

2    Q.    All right.  I think we're done for today.

3    A.    Okay.

4          MR. RUKAVINA:  I'll reserve questions.

5          Thank you again.  I hope you feel better.

6          MR. RIES:  All right.  Thanks a lot.

7 Appreciate it.

8          THE WITNESS:  Thanks, guys.

9          THE REPORTER:  We are off record at 12:05.

10          (CONCLUSION OF DEPOSITION AT 12:05.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

96

1                CHANGES AND SIGNATURE

2 WITNESS NAME:  MAISON DALTON VASEK

3 DATE:  OCTOBER 28, 2021

4 PAGE LINE     CHANGE          REASON

5 _____

6 _____

7 _____

8 _____

9 _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 _____

23 _____

24 _____

25 _____

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

---

97

1    I, MAISON DALTON VASEK, have read the foregoing
deposition and hereby affix my signature that same is
2    true and correct, except as noted above.

3

4

5          MAISON DALTON VASEK

6

7
8    THE STATE OF _____)
9    COUNTY OF _____)
10
11    Before me, _____, on this day
12    personally appeared MAISON DALTON VASEK, known to me (or
13    proved to me under oath or through
14    _____) (description of identity
15    card or other document) to be the person whose name is
16    subscribed to the foregoing instrument and acknowledged
17    to me that they executed the same for the purposes and
18    consideration therein expressed.
19    Given under my hand and seal of office this
20    _____ day of _____, 2021.
21
22

23          _____
24          NOTARY PUBLIC IN AND FOR
THE STATE OF _____
COMMISSION EXPIRES: _____
25

---

98

1          UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
2          AMARILLO DIVISION

3    IN RE: MICHAEL STEPHEN GALMOR  CASE NO. 18-20209-RJL-7
-------------------------------------------------------
4

KENT RIES, TRUSTEE          CHAPTER 7
5          Plaintiff

6          v.          Adv. Proc. No. 20-2003

7    GALMOR FAMILY PARTNERSHIP
-------------------------------------------------------
8

REPORTER'S CERTIFICATION
9    DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK
OCTOBER 28, 2021
10          (REPORTED REMOTELY)

11    I, JANICE HOELTING, Certified Shorthand Reporter in
12    and for the State of Texas, hereby certify to the
13    following:
14    That the witness, MAISON DALTON VASEK, was duly
15    sworn by the officer and that the transcript of the oral
16    deposition is a true record of the testimony given by
17    the witness;
18    That the deposition transcript was submitted on
19    NOVEMBER 15, 2021 to the witness or to the attorney for
20    the witness for examination, signature and return to me
21    by DECEMBER 15, 2021;
22    The original deposition was/was not returned to the
23    deposition officer on DECEMBER 11, 2021;
24    If returned, the attached Changes and Signature
25    page contains any changes and the reasons therefor;

---

99

1    If returned, the original deposition was delivered
2    to Mr. Kent Ries, Custodial Attorney;
3    That the amount of time used by each party at the
4    deposition is as follows:
5    Mr. Kent Ries - 02 HOUR(S):16 MINUTE(S)
Mr. Davor Rukavina - 00 HOUR(S):00 MINUTE(S)
6
7    That pursuant to information given to the
8    deposition officer at the time said testimony was taken,
9    the following includes counsel for all parties of
10    record:
11    Mr. Kent Ries and Mr. Jerry McLaughlin, Attorneys
12    for the Plaintiff
13    Mr. Davor Rukavina and Mr. Thomas Berghman,
14    Attorneys for Defendants
15    That $1,001.00 is the deposition officer's charges
16    to the Plaintiff for preparing the original deposition
17    transcript and any copies of exhibits;
18    I further certify that I am neither counsel for,
19    related to, nor employed by any of the parties or
20    attorneys in the action in which this proceeding was
21    taken, and further that I am not financially or
22    otherwise interested in the outcome of the action.
23
24
25

---

100

1    Certified to me this _____ day of _____,
2    2021.

3

4          _____
Janice Hoelting, Texas CSR #2450
5          Expiration Date: 11-30-22
Panhandle Court Reporters, LLC
6          Firm Registration No. CRF 10057
P.O. Box 1564
7          Amarillo, Texas 79105
(806) 373-0602
8          pcr@arn.net
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

1

## $

**$10,000** [1] - 72:1
**$100,000** [2] - 41:14, 77:13
**$15,000** [1] - 78:7
**$174,000** [1] - 89:21
**$186,341,19** [1] - 81:2
**$186,341.19** [1] - 82:7
**$2,000** [1] - 84:22
**$24,000** [1] - 58:15
**$24,807.39** [2] - 53:23, 54:12
**$3,000** [2] - 74:2, 74:17
**$300** [2] - 41:5, 78:17
**$350** [2] - 61:21, 61:22
**$384,000** [8] - 75:2, 75:5, 77:7, 78:14, 79:21, 80:18, 86:2, 86:25
**$384,902.74** [2] - 59:2, 65:19
**$385,000** [2] - 67:6, 78:18
**$50** [1] - 61:21
**$500,000** [2] - 47:2, 53:18
**$561,000** [1] - 84:1
**$7,000** [5] - 72:10, 72:22, 73:4, 73:5, 74:4
**$8,000** [1] - 72:5
**$9,000** [2] - 49:7, 49:17
**$95,000** [5] - 77:15, 77:24, 78:11, 78:12
**$97,000** [1] - 41:12
**$99,000** [4] - 39:3, 39:15, 39:20, 39:24

## '

**'13** [2] - 48:15, 93:18
**'15** [3] - 64:21, 64:22, 87:21
**'16** [4] - 42:4, 77:23, 78:6, 87:22
**'17** [4] - 42:4, 54:9, 78:17, 87:22
**'18** [3] - 44:24, 47:15, 48:15

## 0

**00** [1] - 29:24
**0119** [1] - 29:25

## 1

**1/2** [1] - 31:18
**10-6-16** [1] - 84:22
**1065** [6] - 38:23, 38:25, 39:8, 40:5, 40:25, 41:7
**10:33** [2] - 43:15, 43:16
**10:39** [2] - 43:16, 43:18
**11** [1] - 54:2
**11-2-18** [1] - 43:25
**11:50** [1] - 90:23
**11:52** [2] - 91:13, 91:14
**12** [5] - 17:13, 59:15, 65:19, 91:16
**12-31-17** [1] - 90:10
**123** [1] - 30:9
**124** [1] - 30:15
**12:00** [1] - 91:14
**12:05** [2] - 95:9, 95:10
**13** [5] - 13:9, 15:23, 16:5, 27:10, 81:22
**14** [1] - 44:24
**15** [2] - 44:2, 91:4
**15K** [1] - 40:18
**16** [3] - 20:3, 21:13, 84:21
**165,000** [2] - 89:21, 90:8
**16724** [1] - 82:3
**16725** [1] - 82:25
**16727** [1] - 84:21
**16741** [1] - 60:10
**16889** [1] - 63:24
**16891** [1] - 61:6
**16900** [1] - 64:18
**17** [2] - 59:12, 87:17
**17's** [1] - 77:23
**174,000** [1] - 90:8
**18** [3] - 48:21, 49:1, 59:12
**18-20209** [1] - 43:25
**18-20210** [1] - 44:24
**184,341.19** [1] - 84:11
**186** [1] - 82:17
**186,000** [1] - 90:12
**19** [4] - 48:21, 49:3, 91:21, 92:2

## 2

**2,980** [1] - 51:25
**20,000** [1] - 78:7
**20-page** [1] - 76:10
**2005** [2] - 28:5, 28:7
**2012** [5] - 50:24,
92:20, 92:21, 93:15, 93:17
**2013** [4] - 41:20, 57:13, 92:18, 93:6
**2014** [8] - 47:10, 56:22, 57:21, 62:24, 63:6, 63:8, 67:10, 79:25
**2015** [3] - 78:12, 79:25, 87:21
**2016** [4] - 38:15, 67:10, 78:12, 79:25
**2017** [12] - 32:15, 33:5, 38:12, 40:22, 41:3, 41:8, 41:9, 41:21, 57:18, 57:21, 78:12, 87:23
**2018** [1] - 47:11
**21,000** [1] - 41:4
**21K** [1] - 40:19
**2309** [1] - 55:19
**24,000** [1] - 54:10
**265** [1] - 38:25

## 3

**3,000** [4] - 51:25, 74:6, 74:16, 74:17
**30** [1] - 44:14
**32** [2] - 44:25, 45:11
**374** [1] - 82:16
**374,000** [1] - 82:6
**374,708.81** [1] - 84:7
**384** [3] - 82:19, 82:20, 87:10

## 4

**40** [1] - 13:7
**49** [1] - 31:18
**49.5** [2] - 34:4, 34:12

## 5

**50** [3] - 93:12, 93:18, 93:19
**561,000** [2] - 82:5, 82:15
**561,050.00** [1] - 83:11
**571** [1] - 82:19

## 6

**6530** [1] - 54:10

## 7

**7-2** [1] - 44:24
**724** [1] - 82:1
**725** [1] - 82:1

**75** [3] - 92:7, 93:11, 93:16

## 9

**90** [1] - 77:14
**94** [1] - 43:25

## A

**able** [9] - 19:23, 20:17, 42:14, 54:25, 61:16, 67:7, 79:4, 90:24, 91:3
**access** [2] - 27:14, 65:16
**according** [10] - 7:9, 31:25, 40:17, 41:11, 41:16, 61:24, 62:21, 81:20, 82:11, 84:8
**account** [8] - 19:22, 54:22, 55:4, 55:10, 56:4, 78:17, 87:4, 87:6
**accountant** [8] - 8:2, 13:13, 14:6, 14:8, 14:12, 14:21, 69:22, 69:23
**accounted** [1] - 75:20
**accounting** [20] - 7:19, 13:3, 20:8, 26:1, 26:12, 26:15, 26:24, 27:2, 27:6, 35:4, 39:22, 55:12, 56:5, 58:22, 73:18, 80:2, 87:14, 88:2, 88:15, 89:18
**accounts** [3] - 20:2, 69:13, 78:10
**accrual** [2] - 73:15, 74:12
**acres** [5] - 51:6, 51:25, 52:11, 52:19
**acting** [1] - 14:20
**active** [1] - 52:22
**activity** [1] - 52:12
**actual** [21] - 20:14, 21:13, 30:4, 31:11, 32:5, 35:11, 37:24, 38:6, 44:17, 48:18, 55:19, 56:6, 56:16, 60:1, 60:2, 70:2, 70:17, 76:16, 79:10, 79:15, 84:24
**add** [1] - 65:19
**additional** [3] - 9:10, 21:22, 51:1
**address** [1] - 20:16
**adjustments** [1] - 73:15

**administration** [1] - 12:18
**advance** [6] - 84:4, 84:20, 87:22, 88:1, 88:12, 90:7
**advances** [21] - 8:23, 8:24, 11:8, 81:15, 81:17, 81:18, 82:4, 82:11, 82:12, 82:15, 82:20, 83:8, 85:5, 85:9, 85:11, 86:3, 87:1, 87:2, 87:18, 89:11, 89:15
**advantage** [1] - 72:20
**advantages** [1] - 72:23
**adversary** [1] - 6:3
**advising** [2] - 72:19, 73:18
**affect** [1] - 39:15
**affected** [1] - 39:20
**afford** [1] - 77:18
**afterwards** [1] - 17:9
**agree** [2] - 73:23, 83:14
**agreed** [2] - 51:14, 68:11
**agreeing** [1] - 24:2
**Agreement** [1] - 31:11
**ahead** [9] - 12:8, 14:16, 14:24, 16:12, 24:7, 44:6, 60:23, 83:20, 83:24
**aid** [1] - 59:5
**alive** [1] - 28:20
**allegation** [1] - 46:18
**alleged** [8] - 7:22, 8:6, 8:19, 8:24, 24:21, 25:1, 25:11, 46:16
**almost** [1] - 60:4
**amortization** [1] - 39:11
**amount** [30] - 40:10, 44:16, 44:18, 46:6, 47:2, 49:14, 51:5, 51:6, 52:6, 53:21, 53:23, 54:11, 54:23, 54:24, 59:13, 65:20, 65:22, 75:2, 81:13, 82:5, 82:6, 82:7, 82:10, 82:14, 82:15, 82:16, 83:10, 90:5, 91:22, 92:25
**amounts** [16] - 25:14, 41:2, 46:10, 53:3, 68:11, 69:3, 70:11, 78:5, 78:6, 84:6, 86:25, 89:5, 89:19, 89:20, 92:10, 92:11
**analyzing** [1] - 53:10

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

2

annual [3] - 50:14, 52:25, 77:17
annually [1] - 80:8
answer [15] - 9:16, 11:6, 12:5, 12:10, 14:17, 14:23, 14:24, 15:1, 22:16, 23:10, 23:13, 35:12, 40:3, 52:13, 70:1
answers [2] - 7:9, 7:17
anticipate [1] - 74:23
appear [3] - 67:14, 78:18, 79:4
appeared [1] - 35:7
appreciate [1] - 95:7
April [2] - 57:13, 93:18
AR [1] - 80:3
area [1] - 88:21
assert [4] - 70:22, 70:25, 86:7, 86:17
asserted [2] - 86:3, 86:5
asserting [8] - 23:22, 23:24, 67:18, 67:20, 67:22, 67:23, 77:14, 77:15
assertion [1] - 77:19
assertions [1] - 69:15
asserts [2] - 71:3, 83:15
asset [10] - 63:20, 75:3, 75:8, 75:10, 75:13, 88:12, 88:18, 89:3, 89:10, 89:12
assets [1] - 63:16
Association [2] - 15:12, 15:15
assume [3] - 17:18, 77:10, 86:21
assumes [2] - 65:1, 68:5
assuming [1] - 72:8
assumption [3] - 78:15, 79:12, 79:14
AT [1] - 95:10
attempt [1] - 79:20
attorney [2] - 23:15, 23:18
attorney/client [2] - 24:3, 24:6
audio [6] - 13:16, 13:20, 16:3, 55:5, 68:13, 83:2
audit [2] - 35:22, 36:4
audited [2] - 37:2, 37:10
auditor [1] - 71:9
aware [5] - 47:5, 47:11, 48:13, 51:7, 70:15

awhile [3] - 72:6, 73:24

## B

background [1] - 51:9
backup [5] - 9:8, 62:3, 62:10, 64:9, 70:2
bad [3] - 11:24, 72:11, 74:1
balance [2] - 65:9, 80:2
balances [1] - 63:8
bank [12] - 19:17, 19:21, 42:18, 54:22, 55:4, 56:3, 56:16, 56:18, 69:12, 78:17, 85:6, 87:4
Bank [1] - 53:23
bankrupt [1] - 8:19
bankruptcy [13] - 6:2, 8:7, 8:20, 11:16, 44:11, 45:42, 47:7, 67:6, 86:6, 86:16, 90:14, 90:15
banks [1] - 71:11
based [24] - 22:4, 25:12, 26:14, 31:12, 35:4, 35:15, 49:6, 52:4, 52:14, 52:18, 53:3, 68:10, 68:17, 68:20, 69:3, 71:21, 76:12, 76:15, 77:21, 78:16, 78:24, 80:23, 86:5, 88:14
basic [1] - 29:9
basing [3] - 26:8, 26:9, 26:12
basis [7] - 39:5, 39:23, 50:15, 52:25, 70:16, 74:12, 77:17
Bates [3] - 32:18, 33:1, 33:8
became [1] - 94:5
Becky [2] - 64:3, 64:23
beginning [13] - 33:23, 40:9, 40:10, 40:15, 40:17, 41:2, 41:4, 57:21, 78:6, 78:8, 90:4, 90:7, 93:17
behalf [1] - 47:12
behind [1] - 84:18
beneficiaries [2] - 30:4, 30:17
benefits [1] - 71:5
berghman [1] - 22:23
BERGHMAN [12] - 18:20, 19:4, 21:1, 21:6, 22:6, 22:15,

23:2, 23:8, 23:23, 24:4, 25:4, 26:19
Berghman [3] - 24:9, 68:14, 68:23
best [1] - 33:11
better [8] - 42:9, 42:10, 42:22, 47:9, 82:25, 91:5, 95:5
between [5] - 62:25, 63:8, 78:10, 81:7, 94:21
beyond [5] - 9:3, 9:20, 17:23, 22:19, 81:16
bill [4] - 63:6, 71:4, 73:4, 86:18
billed [3] - 63:19, 66:15, 66:25
billing [1] - 88:24
binder [1] - 17:3
bit [6] - 6:9, 7:2, 19:3, 27:23, 66:3, 91:20
Blair [1] - 64:4
Bob [1] - 28:19
Bobby [10] - 28:25, 30:5, 31:17, 32:7, 50:7, 50:9, 50:11, 50:21, 57:8, 57:13
bookkeeper [2] - 27:14, 27:20
books [19] - 7:20, 9:5, 9:9, 26:21, 27:9, 35:5, 63:14, 65:25, 67:11, 75:7, 75:15, 79:18, 79:24, 85:5, 87:1, 87:3, 87:11, 88:19
bottom [5] - 27:12, 29:22, 45:12, 46:21, 56:2
bouncing [1] - 68:24
breached [2] - 10:10, 10:16
break [8] - 43:5, 43:8, 43:10, 90:19, 90:20, 91:1, 91:2, 91:11
breaking [1] - 91:6
breaks [1] - 18:24
brief [1] - 82:4
Brooks [1] - 18:3
business [17] - 12:18, 35:19, 35:21, 35:24, 36:9, 36:24, 37:10, 37:14, 37:19, 39:2, 41:7, 41:22, 53:8, 56:6, 71:18, 71:21, 73:18
businesses [6] - 34:23, 34:25, 37:7, 52:4, 52:15, 52:18
BY [25] - 7:1, 14:7,

14:16, 15:4, 17:4, 17:11, 19:5, 21:3, 21:8, 22:8, 22:18, 23:4, 23:15, 24:5, 25:7, 26:22, 33:16, 43:19, 55:14, 65:12, 69:2, 70:5, 70:25, 83:25, 91:17

## C

calculated [1] - 53:13
Caldwell [2] - 61:17, 61:18
capacity [2] - 15:10, 47:13
capital [4] - 33:25, 34:4, 34:12, 34:19
card [6] - 71:11, 71:24, 71:25, 72:9, 72:21, 73:1
cards [1] - 72:2
care [3] - 16:22, 30:21, 59:5
career [1] - 29:9
careful [1] - 86:20
Carter [9] - 17:20, 26:10, 26:16, 27:6, 27:16, 27:19, 46:25, 49:10, 49:22
case [8] - 7:7, 23:16, 23:19, 44:23, 45:5, 46:15, 47:7, 77:3
Case [1] - 43:24
cases [1] - 45:22
cash [24] - 39:5, 39:9, 39:13, 39:19, 39:23, 40:1, 40:10, 40:15, 40:18, 41:2, 42:22, 43:1, 73:14, 78:5, 78:6, 78:8, 78:9, 78:25, 81:18, 86:15, 87:13
cash-basis [1] - 39:5
catch [1] - 31:8
cattle [3] - 35:7, 36:23, 52:24
causing [1] - 42:13
cents [6] - 92:7, 93:11, 93:12, 93:16, 93:19, 93:20
certain [3] - 20:1, 20:2, 47:16
Certificate [1] - 54:3
certification [1] - 70:4
Certified [2] - 15:13, 15:16
change [12] - 10:5, 10:22, 21:21, 21:24, 42:13, 73:5, 76:12,

76:14, 76:17, 94:6, 94:8, 94:13
changed [5] - 32:2, 58:16, 92:25, 94:4, 94:8
changes [1] - 93:4
charge [5] - 47:23, 48:2, 48:4, 50:6, 50:11
charges [1] - 64:20
check [25] - 38:22, 54:9, 54:10, 54:16, 54:17, 54:19, 54:21, 55:8, 55:15, 56:1, 56:3, 56:7, 56:10, 58:13, 58:23, 69:7, 69:9, 69:12, 78:1, 78:2, 83:9, 84:22, 84:24, 85:3, 93:16
checks [4] - 38:8, 84:19, 85:19, 85:21
children [1] - 30:23
claim [25] - 55:12, 56:7, 58:15, 67:5, 80:5, 81:15, 81:20
claimed [1] - 82:15
claiming [1] - 62:13
claims [1] - 11:15
clanking [1] - 58:7
clean [1] - 27:22
clear [4] - 16:21, 23:3, 83:7, 93:21
cleared [2] - 54:22, 56:3
client [4] - 20:9, 22:13, 29:1, 48:1
clients [2] - 73:8, 73:11
close [2] - 6:10, 41:13
closer [1] - 32:24
collections [2] - 72:12, 72:17
column [1] - 82:24
columns [3] - 83:9, 84:3, 84:4
coming [3] - 56:12, 87:3, 87:7
comment [1] - 66:20
committed [2] - 11:4, 11:11
companies [2] - 71:12, 94:13
company [12] - 6:9, 21:14, 40:15, 41:8, 41:22, 60:2, 68:2, 71:24, 72:9, 72:21, 72:24, 73:1
compare [2] - 85:25, 86:24
competent [1] - 27:14

Case 20-02003-rlj Doc 45 Filed 12/08/21    Entered 12/08/21 16:34:41    Page 51 of 650

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

3

**completely** [2] - 20:12, 69:20
**computer** [3] - 21:17, 63:9, 92:22
**conclude** [2] - 66:1, 77:4
**conclusion** [2] - 58:17, 65:24
**CONCLUSION** [1] - 95:10
**conclusions** [16] - 9:24, 20:24, 21:4, 21:11, 21:24, 22:2, 22:4, 22:9, 24:21, 24:25, 25:8, 25:9, 25:12, 25:14, 58:14, 59:13
**confirm** [2] - 17:1, 33:11
**confirmed** [2] - 64:13, 64:16
**conflicting** [1] - 86:22
**confusing** [1] - 6:9
**confusion** [1] - 6:19
**connected** [1] - 28:24
**connection** [1] - 83:4
**consider** [2] - 9:4, 26:15
**considered** [2] - 17:14, 27:19
**consistent** [2] - 87:15, 93:14
**consultation** [1] - 37:13
**consulted** [3] - 37:4, 37:12, 71:17
**consulting** [2] - 35:23, 36:6
**contact** [1] - 18:7
**contacted** [2] - 18:3, 18:5
**contention** [1] - 65:21
**contractors** [1] - 69:8
**contrast** [1] - 86:1
**Contribution** [2] - 33:21, 34:2
**conversations** [2] - 76:12, 76:15
**conversion** [1] - 11:11
**copies** [1] - 84:19
**copy** [8] - 16:13, 20:14, 33:12, 38:15, 44:9, 45:4, 61:24, 84:24
**corporate** [1] - 19:12
**correct** [64] - 7:7, 7:24, 8:2, 8:8, 10:2, 13:25, 17:15, 20:25, 21:5, 22:14, 28:8, 29:2, 29:3, 29:6,

31:17, 31:20, 31:23, 33:12, 33:25, 34:20, 38:15, 39:5, 41:9, 41:10, 42:20, 43:3, 44:4, 44:7, 44:9, 45:4, 48:25, 49:9, 53:5, 58:21, 63:17, 65:23, 66:13, 67:24, 69:4, 69:5, 69:13, 70:8, 70:9, 70:11, 70:13, 74:9, 75:3, 75:9, 75:16, 75:17, 78:15, 83:11, 85:20, 87:8, 87:9, 88:13, 89:6, 89:8, 89:13, 89:17, 90:10, 90:13, 90:14, 93:2
**corresponds** [1] - 17:2
**counsel** [5] - 15:21, 15:22, 23:22, 23:24, 24:5
**couple** [6] - 6:7, 17:17, 30:23, 60:24, 74:18, 77:22, 81:23, 84:3
**course** [5] - 13:8, 18:1, 24:4, 66:5, 80:17
**courses** [5] - 13:2, 13:4, 13:9, 13:10, 15:18
**Court** [1] - 51:15
**court** [4] - 12:10, 15:8, 16:12, 16:25
**Courvoisier** [1] - 61:17
**CPA** [2] - 12:21, 26:20
**CPE** [1] - 13:8
**created** [1] - 69:20
**credit** [8] - 71:11, 71:24, 71:25, 72:2, 72:9, 72:21, 73:1
**current** [2] - 63:11, 65:25
**cut** [3] - 7:12, 54:9, 69:6

**D**

**dad** [1] - 50:7
**dash** [1] - 29:24
**data** [3] - 60:6, 76:6, 76:21
**date** [4] - 28:6, 83:9, 84:22, 85:3
**dated** [1] - 28:5
**dates** [2] - 60:21, 62:2
**Davor** [2] - 16:11, 68:16

**dealing** [5] - 7:21, 8:11, 8:14, 9:4, 9:24
**death** [2] - 30:17, 57:14
**deaths** [1] - 29:19
**debt** [13] - 8:6, 8:18, 24:21, 25:1, 25:11, 44:12, 72:11, 72:15, 74:2, 74:13, 75:6, 77:1, 79:3
**debtor** [3] - 45:24, 46:1, 46:6
**debtor's** [1] - 45:5
**debtors** [2] - 7:23, 8:7
**debts** [1] - 46:15
**December** [1] - 64:21
**decided** [2] - 73:3, 74:14
**Deena** [8] - 17:19, 26:10, 27:5, 27:16, 27:19, 46:25, 49:10, 49:22
**defend** [2] - 11:15, 67:4
**defendants** [4] - 7:18, 7:21, 7:22, 8:11
**defendants'** [1] - 7:20
**defer** [2] - 73:23, 74:24
**deferred** [1] - 74:17
**deferring** [1] - 74:21
**define** [3] - 6:7, 7:14, 38:2
**degree** [1] - 12:18
**deposed** [2] - 9:14, 11:22
**deposited** [1] - 87:4
**DEPOSITION** [1] - 95:10
**deposition** [2] - 11:19, 27:25
**depositions** [2] - 17:18, 26:10
**depreciation** [1] - 39:11
**describe** [1] - 81:6
**described** [1] - 53:21
**describes** [2] - 19:11, 61:15
**description** [2] - 59:3, 81:3
**descriptions** [1] - 60:21
**designations** [1] - 12:25
**detail** [3] - 24:12, 80:11, 80:24
**determining** [1] - 58:13
**died** [2] - 57:13, 57:17

**different** [11] - 20:2, 44:23, 44:24, 51:24, 60:19, 65:6, 67:17, 67:21, 69:21, 86:7, 86:21
**digit** [1] - 44:24
**directly** [9] - 15:19, 18:6, 35:20, 36:2, 44:11, 64:16, 73:9, 86:25, 87:3
**dirt** [1] - 61:14
**disclosed** [1] - 7:18
**disclosing** [2] - 23:11, 23:14
**discovery** [4] - 7:10, 7:17, 10:4, 62:6
**discuss** [3] - 22:22, 24:8, 24:17
**discussed** [6] - 22:25, 24:11, 25:8, 42:25, 82:21, 84:12
**discussing** [1] - 38:11
**discussions** [1] - 23:11
**dispute** [1] - 48:1
**disputing** [1] - 66:4
**Doc** [2] - 43:25, 44:24
**DOC** [1] - 43:25
**document** [4] - 28:10, 33:3, 33:10, 43:24, 83:15
**documentation** [2] - 91:24, 92:10
**documents** [6] - 16:18, 18:9, 31:9, 54:14, 57:25, 58:18
**Dodge** [1] - 56:22
**dollar** [6] - 25:14, 49:14, 51:5, 94:1, 94:21, 94:22
**dollars** [4] - 52:2, 94:2, 94:21, 94:22
**Don** [4] - 28:25, 30:5, 31:17, 32:8
**done** [15] - 11:1, 13:10, 29:8, 36:6, 58:19, 61:15, 62:1, 67:15, 67:16, 67:17, 73:10, 73:14, 87:14, 93:19, 95:2
**dot** [1] - 25:22
**dots** [1] - 25:22
**down** [3] - 43:1, 70:7, 93:12
**dozen** [1] - 12:22
**drafting** [1] - 17:14
**drilling** [1] - 37:25
**driver** [1] - 42:14
**drop** [1] - 94:24
**dropped** [3] - 93:12,

93:18, 94:25
**due** [19] - 62:19, 62:21, 62:22, 63:2, 63:3, 65:9, 65:10, 65:23, 66:1, 66:2, 67:9, 67:12, 75:6, 76:25, 77:3, 77:4, 80:5, 80:6
**Duncan** [1] - 64:22
**during** [15] - 47:7, 47:10, 47:23, 48:2, 48:5, 48:14, 49:5, 49:11, 49:19, 50:13, 57:8, 57:9, 57:20, 64:25, 77:22
**duties** [1] - 47:16
**duty** [3] - 10:10, 10:16, 47:18

**E**

**earned** [1] - 81:16
**earning** [1] - 37:22
**easier** [2] - 38:10, 69:3
**easy** [1] - 12:12
**either** [12] - 41:22, 42:9, 43:6, 45:24, 49:21, 64:5, 67:15, 69:15, 75:18, 78:20, 85:5, 93:8
**employee** [1] - 67:15
**employees** [6] - 26:8, 26:20, 27:9, 59:5, 94:5
**end** [9] - 30:22, 33:17, 40:16, 40:18, 44:17, 78:7, 78:16, 83:7
**ended** [1] - 74:2
**ending** [9] - 33:24, 34:3, 40:9, 40:10, 41:2, 41:5, 78:8, 90:4, 90:8
**engaged** [1] - 53:9
**engagement** [4] - 18:1, 35:19, 36:20, 36:22
**entire** [1] - 56:8
**entities** [4] - 25:25, 26:5, 27:20, 87:6
**entity** [5] - 31:21, 36:25, 55:10, 56:11, 68:12
**entries** [1] - 9:8
**equipment** [1] - 69:8
**especially** [4] - 6:9, 12:11, 47:15, 54:23
**essentially** [17] - 20:17, 28:17, 29:16, 38:7, 39:25, 46:9, 46:14, 47:19, 47:21,

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

4

51:23, 60:3, 60:18, 69:11, 76:1, 76:23, 78:17, 84:5
**estate** [3] - 29:9, 51:3, 51:16
**estates** [3] - 6:2, 8:7, 8:20
**evidence** [15] - 10:9, 10:15, 11:3, 11:10, 11:13, 58:22, 65:2, 65:3, 68:6, 68:8, 69:15, 70:14, 75:18, 77:10, 77:21
**exact** [3] - 47:14, 54:11, 90:4
**exactly** [2] - 8:14, 26:6
**examination** [1] - 59:12
**Examiners** [2] - 15:13, 15:16
**example** [7] - 18:10, 29:25, 39:10, 50:9, 61:22, 62:14, 62:24
**Excel** [1] - 81:25
**exclusive** [1] - 88:15
**excuse** [2] - 44:7, 88:25
**exhibit** [8] - 16:4, 16:20, 17:1, 32:18, 38:11, 40:21, 45:17, 54:2
**Exhibit** [24] - 17:5, 25:18, 27:24, 31:4, 32:12, 33:1, 33:4, 38:13, 38:19, 40:21, 43:23, 44:22, 45:15, 45:17, 48:23, 53:16, 54:2, 59:1, 59:15, 65:19, 81:1, 81:22, 90:1
**exhibits** [5] - 15:22, 16:13, 27:23, 38:18, 45:21
**exist** [1] - 85:21
**expect** [1] - 62:10
**expense** [2] - 74:13, 76:11
**expensed** [5] - 80:8, 80:15, 80:16, 80:18, 80:19
**expenses** [12] - 8:25, 77:16, 77:17, 77:25, 78:14, 78:19, 78:22, 78:23, 78:24, 79:17, 79:20, 80:7
**experience** [4] - 35:18, 71:8, 71:14, 71:22
**expert** [6] - 7:7, 13:24, 15:8, 31:1, 48:24,

69:24
**explain** [1] - 86:8
**exports** [1] - 20:18
**extent** [3] - 23:8, 23:25, 83:13
**extra** [1] - 78:18

## F

**fact** [6] - 21:13, 26:14, 29:11, 48:1, 77:10, 78:16
**facts** [8] - 12:16, 24:9, 24:14, 24:17, 65:1, 68:5, 68:7, 72:8
**factual** [1] - 62:16
**fair** [11] - 9:18, 21:23, 24:13, 53:7, 53:10, 53:14, 65:12, 83:23, 85:23
**fairly** [1] - 64:1
**familiar** [11] - 15:12, 15:15, 34:22, 34:25, 35:21, 51:2, 61:4, 61:8, 61:10, 72:2, 72:9
**familiarity** [1] - 36:8
**Family** [12] - 7:10, 7:13, 31:11, 32:16, 33:6, 34:8, 44:12, 45:7, 46:6, 47:1, 68:3, 84:20
**family** [25] - 10:11, 10:17, 11:4, 11:12, 27:13, 28:24, 32:6, 34:25, 35:9, 39:1, 41:24, 47:6, 47:12, 48:5, 48:14, 49:11, 50:15, 51:3, 51:16, 52:5, 52:8, 57:6, 60:13, 67:18, 81:18
**far** [5] - 9:3, 33:13, 42:21, 45:4, 49:20
**farm** [1] - 61:15
**farmed** [1] - 52:20
**farming** [4] - 35:10, 37:7, 37:8, 52:15
**farmland** [2] - 52:21, 52:22
**father** [1] - 37:23
**February** [1] - 64:3
**felt** [1] - 24:20
**few** [10] - 19:17, 30:8, 34:6, 42:2, 57:17, 63:24, 74:2, 81:22, 91:1, 91:2
**fiduciary** [2] - 10:10, 10:16
**file** [21] - 16:10, 16:19, 20:19, 21:14, 35:12,

40:3, 50:3, 50:25, 54:25, 56:8, 60:2, 62:22, 63:1, 63:11, 65:8, 65:16, 67:8, 76:16, 92:12, 92:17
**filed** [4] - 43:25, 44:24, 45:22, 74:11
**files** [7] - 18:10, 18:14, 19:7, 20:13, 20:14, 50:23, 92:18
**filing** [1] - 74:20
**finally** [2] - 11:10, 67:7
**financed** [1] - 53:22
**financial** [4] - 71:8, 71:15, 71:17, 88:7
**financials** [1] - 20:18
**fine** [4] - 16:16, 17:10, 18:25, 69:25
**finish** [4] - 12:8, 12:10, 91:3, 91:9
**firm** [1] - 73:9
**First** [1] - 53:23
**first** [18] - 20:11, 28:6, 30:10, 30:11, 41:6, 41:9, 42:2, 54:3, 55:18, 59:18, 59:20, 61:17, 61:22, 81:1, 81:23, 81:24, 83:8, 93:9
**five** [3] - 43:10, 49:20, 91:11
**five-minute** [2] - 43:10, 91:11
**five-year** [1] - 49:20
**flip** [1] - 89:14
**flow** [4] - 80:1, 86:10, 86:15
**flows** [2] - 31:2, 49:3
**FLP** [42] - 7:15, 20:7, 20:8, 20:14, 20:15, 21:14, 26:4, 32:15, 37:20, 38:4, 38:20, 39:4, 40:11, 41:3, 41:19, 42:8, 42:19, 43:2, 46:17, 49:21, 66:14, 66:15, 67:1, 67:6, 70:8, 71:5, 77:22, 77:24, 81:14, 84:6, 85:13, 86:14, 86:18, 87:7, 87:13, 87:21, 88:16, 89:14, 91:23, 92:7, 93:23, 94:20
**FLP's** [7] - 85:5, 87:1, 87:5, 87:11, 89:5, 89:20, 94:24
**followed** [1] - 42:24
**following** [1] - 93:12
**forensic** [10] - 7:19, 8:2, 13:2, 13:10,

13:13, 14:6, 14:8, 14:12, 14:20, 14:21
**forgot** [1] - 11:17
**form** [11] - 14:13, 14:22, 15:10, 21:1, 21:6, 22:6, 22:15, 23:2, 25:4, 26:19, 29:12
**Form** [5] - 38:23, 38:25, 40:5, 40:25, 41:7
**formal** [1] - 13:3
**formed** [1] - 20:25
**forming** [1] - 55:24
**forth** [5] - 9:25, 38:11, 68:25, 69:11, 80:8
**four** [10] - 33:17, 34:7, 34:14, 46:9, 47:7, 77:7, 77:11, 78:13, 80:17, 88:22
**four-year** [1] - 77:11
**frame** [3] - 48:6, 49:5, 54:24
**frankly** [1] - 47:25
**fraud** [1] - 11:4
**Fraud** [2] - 15:13, 15:16
**front** [3] - 6:8, 11:18, 65:13
**fruitful** [1] - 65:11
**Fuchs** [9] - 9:13, 10:22, 18:5, 21:16, 21:21, 75:19, 76:4, 76:13
**fulfilled** [1] - 47:17
**full** [1] - 50:2
**funds** [6] - 7:22, 86:10, 86:13, 86:14, 86:16, 86:19

## G

**G&G** [56] - 6:21, 18:15, 19:9, 19:14, 26:4, 27:14, 45:5, 45:25, 46:17, 53:16, 54:24, 56:7, 60:12, 66:5, 66:9, 67:6, 67:11, 67:15, 67:18, 68:1, 68:2, 68:11, 69:4, 69:6, 70:8, 70:11, 70:15, 70:22, 71:1, 75:7, 77:14, 77:16, 79:18, 80:9, 80:15, 80:16, 81:7, 81:8, 81:14, 81:18, 84:6, 85:18, 86:3, 86:13, 87:3, 87:7, 87:13, 88:20, 89:10, 91:22, 92:6, 92:18,

94:5, 94:20
**G&G's** [7] - 69:12, 79:22, 85:5, 88:8, 88:11, 88:18, 89:4
**gain** [1] - 36:11
**Galmor** [57] - 6:3, 6:11, 6:12, 6:16, 7:10, 7:13, 10:10, 10:16, 11:3, 11:11, 17:19, 19:13, 26:9, 26:16, 26:23, 27:2, 27:13, 28:19, 28:25, 29:5, 30:5, 30:6, 31:11, 31:17, 31:21, 32:2, 32:8, 32:16, 33:5, 33:21, 34:2, 34:7, 34:15, 44:10, 44:12, 45:7, 45:24, 46:6, 46:25, 47:5, 47:11, 49:22, 50:6, 50:21, 57:8, 57:12, 57:13, 57:17, 64:23, 68:3, 84:20
**Galmor's** [4] - 7:21, 8:10, 59:6, 84:5
**Galmor's/G&G** [1] - 6:4
**Galmor's/G&G's** [1] - 63:13
**Galmor/G&G** [1] - 6:20
**gas** [5] - 35:8, 37:16, 37:19, 37:25, 52:17
**general** [13] - 7:19, 11:20, 20:22, 28:12, 31:24, 32:2, 32:3, 51:22, 52:7, 60:4, 71:21, 77:2, 94:16
**generally** [5] - 6:11, 6:20, 6:21, 45:23, 94:14
**generated** [1] - 65:15
**GFLP** [11] - 7:15, 19:12, 64:14, 68:12, 77:17, 78:11, 81:5, 81:7, 85:17, 85:18, 94:5
**given** [8] - 11:18, 13:12, 14:5, 14:8, 14:11, 14:19, 21:18, 37:12
**goal** [4] - 73:1, 73:20, 73:22, 74:22
**goals** [1] - 73:17
**great** [1] - 48:20
**gross** [1] - 52:1
**guess** [6] - 9:11, 15:21, 21:25, 25:15, 53:3, 66:7
**guessing** [1] - 15:6

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

5

guy [1] - 50:11
guys [3] - 14:14, 19:2, 95:8

## H

hand [1] - 16:25
handicap [1] - 53:22
happy [1] - 43:6
hard [3] - 9:16, 12:12, 70:3
Hayden [1] - 64:22
head [1] - 39:8
hear [11] - 6:23, 13:17, 13:21, 13:22, 14:14, 18:20, 32:21, 36:14, 58:6, 68:14, 68:19
heard [2] - 11:23, 58:7
hearing [1] - 15:7
help [3] - 29:17, 51:10, 54:4
helpful [2] - 58:1, 58:10
high [6] - 24:11, 24:19, 25:13, 25:16, 31:7, 46:14
higher [1] - 74:24
himself [1] - 19:13
hired [2] - 7:6, 13:15
historical [2] - 53:10, 92:11
historically [1] - 92:6
history [3] - 51:1, 73:8, 91:25
hit [1] - 86:25
hold [2] - 18:18, 83:3
holdings [2] - 51:3, 51:16
hope [1] - 95:5
hour [1] - 61:21
hours [2] - 13:7, 61:20
hypothetical [1] - 74:1
hypotheticals [1] - 71:23

## I

idea [2] - 19:17, 50:5, 50:13, 52:19, 52:24, 53:2, 57:2, 72:9, 80:10, 92:24, 94:3, 94:7
iii [1] - 25:22
implemented [1] - 32:10
implication [1] - 69:5
implications [1] - 73:3
implies [1] - 81:15
Inc [2] - 6:4, 6:20
include [1] - 8:17

inclusive [1] - 88:19
income [3] - 38:20, 39:2, 41:7, 74:5
incomplete [1] - 19:25
inconsistency [1] - 8:25
inconsistent [1] - 90:11
incurred [1] - 80:18
independent [1] - 88:19
indicate [1] - 93:3
indirectly [1] - 18:7
individuals [1] - 32:7
industry [4] - 37:5, 94:12, 94:16, 94:18
inform [1] - 45:21
informal [1] - 13:4
information [12] - 9:11, 17:13, 21:19, 21:22, 21:24, 22:1, 22:9, 23:9, 23:14, 62:20, 86:23, 92:17
initial [2] - 8:21, 62:6
input [1] - 92:16
inquire [1] - 76:9
inquiries [1] - 76:21
inquiring [1] - 76:7
inside [1] - 60:2
instead [2] - 32:7, 68:23
institution [2] - 71:15, 71:18
institutions [1] - 71:9
insurance [1] - 59:4
Interbank [2] - 56:2, 56:4
interests [1] - 35:8
interference [7] - 13:16, 13:20, 16:3, 32:20, 55:5, 68:13, 83:2
interview [2] - 17:24, 22:18
interviewed [3] - 22:13, 64:24, 65:4
interviewing [1] - 65:10
investigate [4] - 10:13, 56:17, 66:20, 94:12
investigated [1] - 61:25
investigation [6] - 34:24, 52:14, 58:2, 58:11, 64:8, 84:15
invoice [1] - 60:12, 60:21, 61:9, 61:24, 62:14, 63:6, 64:1, 64:10, 65:5, 67:23,

86:6
invoices [21] - 60:19, 60:20, 61:2, 62:1, 62:19, 63:13, 63:24, 65:13, 65:17, 65:18, 67:14, 67:20, 69:3, 69:18, 70:3, 70:22, 70:25, 71:2, 79:17, 79:21, 86:18
involved [1] - 25:14
issue [4] - 9:22, 56:10, 67:22, 91:19
item [1] - 81:2
Item [1] - 18:12
itemizations [1] - 70:10
items [3] - 39:7, 39:9, 39:19
itself [1] - 68:2

## J

January [1] - 64:3
Jo [5] - 28:25, 30:6, 31:17, 32:8, 50:10
job [1] - 27:15
judgment [1] - 51:15
July [2] - 28:5, 28:7

## K

K-1 [4] - 33:18, 33:19, 34:7, 34:15
keep [3] - 6:19, 19:2, 43:6
keeping [2] - 25:17, 67:12
Kellye [9] - 9:13, 10:3, 10:22, 11:7, 18:5, 75:19, 76:4, 76:13, 88:5
Kent [7] - 6:1, 16:18, 18:22, 32:25, 70:13, 83:14, 90:21
kept [1] - 27:9
kind [29] - 6:7, 7:14, 11:2, 11:9, 11:11, 12:12, 14:8, 19:21, 19:24, 25:9, 26:18, 30:9, 30:22, 35:17, 37:8, 46:10, 59:1, 59:21, 62:10, 70:7, 75:10, 81:4, 81:24, 82:3, 83:3, 85:25, 87:11, 94:12, 94:15
kinds [1] - 67:17
knowledge [3] - 29:11, 32:1, 36:12

## L

label [1] - 16:20
labeled [3] - 32:19, 33:1, 33:8
land [6] - 37:22, 51:24, 52:9, 52:19, 52:25, 81:5
large [1] - 16:9
last [8] - 13:8, 13:23, 31:13, 45:21, 46:4, 77:22, 86:1, 93:8
latest [3] - 62:25, 63:1, 65:8
latter [1] - 42:11
lawsuit [1] - 46:16
layers [1] - 32:10
laying [1] - 78:18
least [1] - 57:7, 62:12, 67:14, 70:14, 73:23, 74:17, 77:22, 79:5, 87:20, 89:2, 89:20
leave [1] - 18:23
ledger [1] - 60:4
left [1] - 90:25
legal [2] - 32:9, 47:20, 73:2
legality [1] - 31:1
Leslie [3] - 29:1, 43:13, 43:14
less [2] - 73:19, 73:22
level [7] - 24:11, 24:19, 25:13, 25:16, 31:7, 43:1, 46:14
liability [2] - 89:4, 89:15
licensed [1] - 12:21
life [2] - 30:22, 61:16
lifetime [2] - 57:8, 57:9
likewise [3] - 12:9, 29:4, 89:14
limit [1] - 71:25
limited [28] - 10:11, 10:17, 11:4, 11:12, 27:13, 28:24, 31:16, 32:6, 35:1, 35:9, 39:1, 41:24, 47:6, 47:12, 48:5, 48:14, 49:11, 50:10, 50:15, 51:3, 51:13, 51:17, 52:5, 52:8, 57:6, 60:13, 67:18, 81:18
Limited [7] - 7:10, 7:13, 31:11, 32:16, 33:6, 44:12, 45:7, 46:6, 47:1, 68:3, 84:20
line [2] - 27:12, 59:1,

61:22, 70:7
liquidate [1] - 51:16
liquidating [1] - 51:13
list [5] - 17:9, 17:12, 19:16, 87:22, 87:23
listed [6] - 46:10, 65:5, 71:2, 89:4, 89:5, 89:10
listing [1] - 84:8
litigation [1] - 20:20
livestock [2] - 36:24, 36:25
livestock-related [1] - 36:25
living [3] - 28:5, 28:8, 28:13
LLC [1] - 34:16
loaned [2] - 86:13, 86:14
loans [1] - 71:11
look [41] - 8:10, 8:15, 8:16, 10:9, 25:19, 31:6, 31:13, 32:12, 38:13, 40:22, 41:20, 42:5, 42:7, 42:12, 42:16, 42:21, 43:22, 53:15, 53:19, 56:3, 59:14, 59:20, 60:23, 61:5, 61:8, 63:23, 63:24, 67:2, 75:23, 76:5, 78:3, 80:25, 81:1, 81:21, 81:24, 87:17, 89:24, 90:1, 94:17, 95:1
looked [9] - 8:22, 41:19, 42:18, 54:14, 54:18, 54:21, 56:7, 56:18, 75:15
looking [12] - 8:4, 19:19, 25:21, 39:8, 39:16, 39:18, 48:21, 53:18, 82:23, 82:24, 84:21, 87:16
looks [14] - 12:22, 17:12, 18:14, 34:4, 54:8, 56:16, 56:22, 60:3, 60:18, 61:14, 61:20, 64:21, 71:5, 84:19
losing [2] - 42:3
loss [14] - 33:25, 34:3, 34:12, 34:19, 39:2, 39:3, 39:15, 39:20, 39:25, 40:1, 41:7, 41:12, 41:14, 72:25
lost [1] - 83:4
lunch [2] - 90:21, 91:6

## M

**M.GALMOR** [1] - 29:24
**main** [1] - 48:4
**maintained** [1] - 26:21
**Maison** [1] - 16:5
**manage** [3] - 29:13, 29:18, 52:7
**Management** [4] - 19:13, 31:21, 32:2, 34:15
**manager** [3] - 10:17, 50:15, 52:8
**managing** [2] - 47:21, 50:8
**March** [2] - 57:18, 64:3
**marked** [12] - 25:21, 31:4, 31:14, 38:11, 54:2, 55:19, 59:14, 59:16, 81:21, 81:25, 84:20
**marking** [4] - 33:14, 38:14, 43:23, 44:22
**marks** [1] - 39:4
**Mary** [1] - 64:23
**matrix** [1] - 19:21
**Matt** [1] - 18:3
**matters** [1] - 26:2
**McLAUGHLIN** [1] - 90:23
**mean** [27] - 8:14, 10:24, 13:7, 22:3, 26:3, 28:21, 42:4, 47:25, 48:11, 52:11, 56:15, 56:21, 62:18, 72:25, 73:20, 76:20, 78:20, 80:22, 83:21, 83:22, 84:13, 86:8, 86:20, 89:7, 91:1, 93:16, 94:18
**means** [1] - 63:5
**meant** [1] - 13:24
**mechanically** [1] - 69:17
**medical** [2] - 59:4, 59:5
**mention** [4] - 7:13, 9:21, 20:4, 25:25
**mentioned** [6] - 9:6, 18:12, 41:21, 45:22, 46:5, 52:15
**mentions** [1] - 88:10
**method** [1] - 39:22
**MGALMOR0195** [1] - 31:14
**Michael** [5] - 6:3, 6:11, 44:9, 46:24, 59:6
**micro** [2] - 94:25, 95:1
**middle** [1] - 82:3

**might** [6] - 10:25, 14:25, 79:3, 79:7, 79:8, 94:7
**million** [2] - 44:17, 52:1
**mind** [1] - 18:22
**mine** [1] - 81:9
**mining** [1] - 81:9
**minute** [6] - 43:10, 60:16, 90:19, 91:1, 91:2, 91:11
**minutes** [2] - 18:23, 91:4
**mischaracterizes** [2] - 68:17, 68:21
**missing** [7] - 20:1, 20:6, 20:12, 20:13, 21:10, 22:1
**money** [11] - 42:2, 42:3, 70:22, 78:22, 79:5, 85:13, 85:15, 87:2, 87:7, 88:13, 89:15
**month** [3] - 19:22, 93:11, 93:12
**monthly** [2] - 50:14, 93:16
**months** [3] - 20:1, 64:2, 72:22
**Morgan** [2] - 64:3, 64:23
**most** [4] - 22:12, 62:21, 63:11, 79:24
**mother** [2] - 53:22, 59:6
**moving** [1] - 81:9
**multiple** [2] - 60:20, 88:17

## N

**name** [5] - 6:1, 6:9, 6:10, 16:19, 64:2
**necessarily** [1] - 39:12
**necessary** [1] - 67:3
**need** [6] - 16:10, 21:11, 40:2, 50:2, 90:18, 91:2
**needed** [3] - 18:9, 20:24, 21:4
**needs** [1] - 6:24
**net** [3] - 82:6, 82:14, 84:10
**nets** [1] - 82:16
**never** [4] - 20:14, 21:18, 36:2, 55:15
**next** [6] - 30:14, 40:20, 53:19, 59:2, 83:25, 84:3
**nice** [1] - 68:22

**nine** [1] - 51:24
**non** [1] - 39:19
**non-cash** [1] - 39:19
**none** [3] - 63:1, 63:3, 67:8
**normally** [1] - 44:18
**note** [2] - 16:17, 32:17
**nothing** [5] - 62:22, 65:10, 66:1, 66:2, 67:12
**notice** [1] - 19:18
**noticed** [1] - 8:25
**noting** [1] - 32:25
**November** [1] - 64:21
**number** [25] - 15:22, 16:4, 16:5, 16:6, 16:11, 17:17, 19:8, 19:11, 19:16, 28:4, 31:14, 38:24, 44:14, 44:23, 46:21, 48:25, 53:19, 54:10, 59:2, 59:9, 59:16, 64:22, 83:9, 84:1
**Number** [2] - 17:5, 18:12, 25:18, 27:24, 28:3, 31:4, 33:4, 33:14, 38:12, 38:13, 53:16, 59:15
**numbered** [5] - 16:14, 16:19, 38:22, 90:3
**Numbers** [1] - 15:23
**numbers** [6] - 29:22, 38:21, 40:14, 51:22, 60:21, 84:10

## O

**o'clock** [1] - 91:16
**object** [9] - 14:25, 23:8, 25:4, 65:7, 69:14, 69:19, 70:12, 83:13, 83:18
**objected** [3] - 68:17, 68:20, 70:1
**objecting** [1] - 23:24
**objection** [11] - 14:13, 14:22, 21:1, 21:6, 22:6, 22:15, 23:2, 26:19, 65:1, 68:5, 68:15
**objections** [1] - 70:16
**obligations** [1] - 59:4
**obtain** [1] - 20:17
**obtained** [1] - 20:19
**obviously** [2] - 12:17, 87:25
**OF** [1] - 95:10
**office** [4] - 21:17, 63:9, 67:8, 92:23
**offs** [1] - 79:11

**often** [1] - 6:15
**oil** [5] - 35:8, 37:16, 37:19, 37:25, 52:16
**Oklahoma** [1] - 12:19
**older** [1] - 29:12
**once** [1] - 12:2
**one** [46] - 10:14, 17:25, 21:2, 25:21, 27:8, 31:22, 32:3, 34:19, 35:17, 35:18, 35:22, 35:23, 35:25, 36:1, 36:4, 36:6, 37:2, 43:24, 44:24, 46:11, 50:7, 51:8, 51:12, 53:6, 56:11, 56:13, 56:18, 57:23, 58:7, 59:8, 60:19, 61:5, 66:6, 66:12, 70:24, 73:17, 74:15, 79:2, 80:10, 80:12, 80:22, 83:3, 89:24, 92:1, 93:11
**one-page** [1] - 43:24
**one-percent** [2] - 31:22, 32:3
**ones** [3] - 17:18, 17:19, 19:23
**open** [1] - 63:13
**operate** [2] - 30:11, 35:22
**operated** [3] - 35:1, 52:5, 52:15
**operates** [1] - 36:9
**operating** [6] - 37:25, 38:6, 53:7, 81:8, 88:17, 88:20
**operation** [2] - 37:8, 37:14, 94:3
**operations** [2] - 35:10, 52:12
**operator** [1] - 61:15
**opinion** [14] - 9:7, 24:24, 27:1, 27:5, 45:20, 48:18, 52:6, 53:6, 67:11, 69:16, 69:17, 69:23, 79:23, 86:10
**opinions** [3] - 25:2, 25:16, 55:25
**opposed** [2] - 68:2, 68:11
**ordered** [1] - 67:16
**ordinary** [2] - 39:2, 41:7
**original** [2] - 33:12, 94:23
**otherwise** [1] - 71:2
**outs** [2] - 67:9, 80:3
**outside** [4] - 9:8, 11:14, 94:6, 94:20

**owe** [2] - 7:22, 73:5
**owed** [15] - 8:6, 8:19, 44:12, 46:6, 65:20, 67:6, 70:8, 78:20, 81:14, 82:10, 82:11, 84:6, 85:13, 88:13, 89:11
**owes** [1] - 89:15
**own** [1] - 20:7
**owned** [1] - 37:22
**owner** [2] - 31:22, 32:3
**ownership** [1] - 32:5

## P

**page** [59] - 17:11, 17:13, 18:13, 19:8, 20:3, 21:13, 25:19, 25:20, 27:10, 28:6, 30:1, 30:9, 30:14, 31:13, 34:6, 34:14, 38:24, 40:4, 40:5, 40:6, 40:7, 40:24, 41:6, 41:9, 43:24, 44:2, 45:11, 45:12, 45:17, 46:5, 48:21, 49:1, 53:16, 54:2, 54:3, 54:8, 55:19, 59:12, 59:16, 59:18, 60:10, 60:19, 61:6, 63:24, 64:18, 65:5, 81:2, 82:3, 82:25, 84:21, 87:17, 91:21, 92:2
**pages** [19] - 30:8, 33:17, 34:6, 34:7, 34:15, 38:21, 44:23, 44:25, 45:7, 45:13, 58:1, 58:12, 59:15, 59:20, 60:17, 60:20, 81:22, 82:1, 84:18
**paid** [32] - 35:6, 48:13, 48:17, 49:4, 49:6, 49:11, 49:13, 50:1, 50:13, 56:14, 56:15, 63:7, 66:5, 66:8, 67:15, 68:1, 68:2, 68:11, 69:4, 69:8, 69:10, 70:11, 70:22, 71:1, 72:10, 74:16, 81:5, 85:15, 86:3, 87:12, 91:22, 92:6
**paragraph** [1] - 26:7
**paragraphs** [1] - 25:20
**parents** [3] - 29:1, 29:4, 31:17
**part** [10] - 20:11, 22:12, 28:15, 36:18, 36:20, 36:22, 51:8,

Case 20-02003-rlj Doc 45 Filed 12/08/21 Entered 12/08/21 16:34:41 Page 55 of 650

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

7

51:12, 59:21, 64:8, 84:15
**partially** [1] - 57:7
**participated** [1] - 38:6
**particularly** [2] - 8:23, 45:6
**parties** [2] - 88:19, 93:24
**partner** [7] - 19:13, 31:24, 32:2, 32:3, 39:1, 47:21, 50:8
**partners** [1] - 31:16
**partnership** [30] - 10:11, 10:17, 11:5, 11:12, 27:13, 28:24, 32:6, 32:15, 33:5, 35:1, 35:9, 38:12, 38:15, 41:25, 47:6, 47:13, 48:5, 48:14, 49:12, 50:10, 50:16, 51:4, 51:13, 51:17, 52:5, 52:8, 57:6, 60:13, 67:19, 81:19
**Partnership** [11] - 7:10, 7:14, 31:11, 32:16, 33:6, 44:13, 45:8, 46:7, 47:1, 68:3, 84:20
**partnership's** [1] - 59:4
**parts** [1] - 71:18
**pass** [2] - 30:11, 30:16
**passed** [1] - 57:22
**past** [7] - 11:19, 13:13, 14:6, 14:9, 29:8, 59:25, 84:15
**Pause** [1] - 83:5
**pay** [14] - 53:22, 67:19, 72:5, 73:19, 73:22, 74:5, 77:18, 77:24, 78:14, 78:19, 78:22, 78:25, 79:5, 94:14
**paying** [13] - 46:17, 68:3, 72:6, 72:22, 74:2, 77:16, 81:10, 85:17, 85:18, 88:25, 93:22, 94:20
**payment** [4] - 49:21, 49:23, 50:21, 85:3
**payments** [8] - 53:11, 53:12, 53:13, 70:16, 79:16, 84:4, 87:12
**payroll** [2] - 49:24, 59:3, 69:7
**penalty** [1] - 46:1
**penny** [1] - 82:7
**people** [16] - 17:23, 29:12, 30:5, 62:2, 64:6, 64:22, 64:24,

65:4, 65:10, 66:4, 66:8, 66:19, 68:4, 69:11, 73:18, 94:14
**people's** [1] - 71:5
**per** [8] - 9:1, 81:10, 92:16, 93:1, 93:11, 93:12, 93:17, 93:22
**per-ton** [1] - 81:10
**percent** [6] - 31:18, 31:22, 32:3, 34:4, 34:12, 34:19
**percentage** [4] - 33:24, 34:3, 34:11, 34:19
**perform** [1] - 47:16
**period** [6] - 7:23, 19:22, 49:14, 49:20, 77:7, 77:11
**periods** [3] - 20:2, 64:25, 94:15
**perjury** [1] - 94:3
**person** [6] - 22:13, 47:22, 48:4, 50:6, 79:4, 87:15
**perspective** [2] - 80:3
**pick** [1] - 46:22
**piece** [1] - 92:1
**plan** [1] - 29:18
**planning** [1] - 29:9
**point** [6] - 27:17, 32:7, 33:7, 58:24, 62:16, 85:23
**policies** [1] - 72:18
**position** [1] - 76:20
**possible** [5] - 80:7, 80:14, 80:16, 80:20, 80:21
**potential** [1] - 44:12
**precisely** [1] - 65:19
**prepared** [2] - 73:15, 88:6
**preparer** [1] - 74:22
**preserve** [1] - 23:25
**press** [1] - 28:22
**presume** [1] - 87:14
**pretty** [6] - 12:7, 30:20, 42:5, 46:14, 76:11, 94:18
**previously** [3] - 36:21, 61:1, 75:12
**price** [6] - 53:14, 92:7, 92:16, 93:1, 93:21, 93:22
**prices** [1] - 94:6
**pricing** [4] - 9:1, 9:22, 53:12, 94:25
**primary** [1] - 42:14
**print** [1] - 16:20
**printed** [1] - 16:7
**printoff** [1] - 60:1

**printout** [1] - 60:6
**PRITCHARD** [3] - 43:8, 43:11, 43:14
**Pritchard** [7] - 18:2, 20:9, 20:17, 22:13, 22:19, 24:14, 29:1
**privilege** [3] - 23:21, 24:3, 24:6
**privileged** [2] - 23:9, 23:14
**privileges** [1] - 24:1
**problem** [2] - 33:9, 70:20
**proceed** [2] - 16:17, 16:22
**proceeded** [1] - 64:10
**proceeding** [2] - 6:3, 15:8
**production** [1] - 38:1
**professional** [3] - 12:24, 37:13, 37:15
**profit** [4] - 33:25, 34:3, 34:12, 34:18
**progression** [2] - 75:22, 80:2
**project** [2] - 10:25
**proper** [1] - 75:6
**properly** [2] - 27:15, 65:24
**properties** [1] - 37:25
**property** [4] - 11:12, 29:13, 29:18, 30:22
**provide** [3] - 7:19, 21:21, 75:23
**provided** [14] - 9:5, 9:14, 10:5, 10:19, 26:13, 28:16, 55:13, 56:6, 62:4, 63:8, 63:12, 65:9, 65:18, 75:25
**pulled** [1] - 45:6
**purchased** [1] - 57:14
**purpose** [1] - 69:21
**pursuant** [1] - 51:14
**put** [5] - 9:20, 41:18, 76:10, 78:11, 91:21
**putting** [2] - 26:17, 58:11

**qualifications** [1] - 12:17
**quantity** [2] - 92:16
**quarries** [4] - 36:16, 88:18, 88:23, 93:23
**quarry** [9] - 9:22, 35:6, 35:19, 35:24, 36:3, 36:9, 42:15, 52:16, 53:3, 81:4,

87:1, 87:2, 88:20, 91:19, 92:4, 92:7
**quarry-type** [1] - 35:24
**quarter** [1] - 52:1
**questions** [8] - 12:2, 51:11, 60:24, 75:24, 83:15, 85:8, 85:10, 95:4
**QuickBooks** [28] - 18:10, 18:13, 19:7, 20:6, 20:13, 20:14, 20:18, 21:14, 35:12, 40:3, 50:3, 50:25, 54:25, 56:8, 59:23, 60:2, 62:22, 63:11, 65:8, 65:15, 65:16, 67:8, 76:16, 79:22, 92:12, 92:14, 92:17, 92:18
**quit** [3] - 72:7, 72:22, 74:14
**quite** [2] - 19:16, 81:22

**R**

**ranching** [1] - 52:16
**range** [1] - 94:1
**rate** [4] - 61:21, 64:2, 74:23, 94:8
**rather** [2] - 7:13, 18:23
**reached** [2] - 21:4, 21:5
**read** [6] - 14:2, 14:3, 26:10, 46:23, 53:20, 86:12
**reading** [4] - 28:6, 36:13, 36:15, 36:16
**ready** [2] - 43:19, 91:17
**real** [4] - 51:3, 51:16, 51:22, 82:4
**really** [8] - 7:3, 9:14, 22:12, 28:15, 28:21, 66:6, 66:18, 91:2
**reason** [6] - 15:10, 73:20, 79:6, 79:8, 85:17, 86:17
**reasonable** [1] - 52:6
**reasoning** [1] - 93:3
**reasons** [1] - 79:2
**receivable** [11] - 63:16, 63:20, 63:22, 65:22, 75:3, 75:7, 75:10, 75:15, 76:24, 79:7, 89:12
**receivables** [1] - 88:18
**received** [1] - 87:13
**recent** [1] - 62:21

**Recess** [2] - 43:16, 91:14
**recognize** [3] - 87:20, 88:8, 89:3
**reconcile** [1] - 40:2
**reconciliation** [1] - 82:4
**record** [13] - 16:21, 32:18, 32:25, 43:15, 43:17, 55:6, 69:15, 70:14, 87:10, 87:12, 91:13, 91:15, 95:9
**recorded** [2] - 49:23, 88:2
**records** [25] - 8:22, 19:25, 20:7, 20:8, 20:24, 21:4, 21:10, 26:12, 26:15, 26:18, 26:24, 27:3, 27:7, 35:5, 49:6, 55:12, 56:6, 58:22, 77:23, 79:22, 88:2, 88:7, 89:18, 94:9, 94:13
**refer** [3] - 6:15, 6:16, 6:21
**reference** [1] - 19:22
**referring** [4] - 16:22, 18:11, 27:16, 38:2
**refers** [2] - 30:10, 39:23
**reflecting** [1] - 39:13
**regard** [4] - 13:23, 25:11, 26:24, 50:4
**regarded** [1] - 62:15
**regarding** [2] - 59:3, 87:11
**register** [1] - 56:8
**regroup** [1] - 91:8
**regularly** [1] - 27:15
**relate** [3] - 44:11, 45:7, 79:24
**related** [2] - 36:25, 55:11
**relates** [2] - 46:22, 66:14
**relatively** [1] - 41:13
**relevant** [8] - 20:8, 52:10, 57:4, 67:11, 78:9, 80:4, 82:20, 95:1
**reliable** [1] - 94:19
**relied** [1] - 56:5
**rely** [3] - 64:9, 76:20, 76:21
**relying** [1] - 56:10
**remaining** [2] - 26:7, 34:18
**remember** [1] - 93:9
**removed** [1] - 81:11
**repeat** [9] - 10:14,

Case 20-02003-rlj Doc 45 Filed 12/08/21 Entered 12/08/21 16:34:41 Page 56 of 650

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

8

12:3, 14:18, 19:6, 21:2, 22:17, 24:23, 70:24, 75:4
**repeated** [1] - 18:24
**report** [52] - 7:7, 8:5, 9:21, 9:25, 12:16, 13:12, 13:24, 14:6, 14:8, 14:19, 17:5, 17:12, 17:14, 17:24, 17:25, 18:13, 20:4, 20:23, 20:25, 21:5, 21:8, 22:20, 22:22, 23:1, 23:6, 23:7, 24:10, 24:12, 24:15, 24:18, 24:22, 25:1, 25:9, 25:19, 27:10, 28:2, 39:9, 41:21, 46:8, 48:21, 48:24, 58:12, 59:11, 59:21, 59:25, 65:14, 76:10, 76:18, 84:12, 87:17, 91:21, 92:2
**reported** [1] - 9:8
**reporter** [3] - 12:10, 16:13, 16:25
**REPORTER** [15] - 6:24, 13:17, 14:5, 14:15, 17:10, 32:22, 43:15, 43:17, 55:7, 68:14, 68:20, 69:1, 91:13, 91:15, 95:9
**reports** [1] - 14:12
**represent** [4] - 6:2, 44:6, 69:18, 69:20
**representing** [2] - 32:19, 33:2
**represents** [1] - 61:9
**request** [1] - 62:7
**requested** [4] - 21:22, 47:2, 62:3, 62:5
**requests** [2] - 18:8, 18:9
**requirement** [1] - 72:14
**reserve** [1] - 95:4
**respect** [9] - 9:24, 10:11, 26:17, 27:2, 27:6, 36:23, 37:7, 37:16, 89:2
**response** [1] - 58:3
**responsibilities** [1] - 47:17
**responsibility** [1] - 47:16
**responsible** [1] - 51:13
**rest** [1] - 60:16
**restate** [1] - 50:20
**resulted** [1] - 81:13
**retained** [1] - 7:19

**return** [23] - 32:15, 33:5, 35:13, 35:16, 38:12, 38:15, 39:9, 39:14, 40:2, 40:17, 40:22, 41:9, 41:11, 41:16, 41:20, 41:21, 74:11, 74:20, 78:25, 88:5, 89:10, 89:17, 89:22
**returns** [15] - 18:11, 19:12, 73:15, 78:4, 80:8, 80:11, 80:19, 80:23, 87:21, 87:23, 88:9, 88:11, 89:3, 89:4, 89:5
**revenue** [1] - 81:16
**review** [5] - 7:21, 35:4, 35:14, 41:17, 77:21
**reviewed** [4] - 28:10, 28:16, 61:1, 65:14
**reviewing** [1] - 65:10
**Ries** [1] - 6:1
**RIES** [58] - 6:23, 7:1, 13:18, 13:22, 13:25, 14:2, 14:7, 14:16, 15:4, 16:8, 16:23, 17:4, 17:8, 17:11, 18:25, 19:5, 21:3, 21:8, 22:8, 22:18, 23:4, 23:15, 24:2, 24:5, 25:7, 26:22, 32:21, 33:4, 33:13, 33:16, 43:4, 43:9, 43:12, 43:19, 55:14, 65:3, 65:12, 68:7, 68:19, 68:24, 69:2, 69:16, 69:22, 70:5, 70:17, 70:21, 70:25, 83:3, 83:16, 83:19, 83:21, 83:25, 90:22, 90:24, 91:7, 91:12, 91:17, 95:6
**rightfully** [2] - 78:23, 78:24
**Robin** [1] - 64:3
**rock** [23] - 9:22, 35:5, 35:6, 35:19, 35:24, 36:2, 36:9, 36:16, 42:15, 52:16, 53:2, 81:4, 81:9, 81:10, 82:5, 82:16, 87:1, 87:2, 87:18, 91:19, 92:4, 92:6, 94:15
**role** [1] - 14:20
**roughly** [1] - 93:4
**royalties** [11] - 9:2, 10:20, 35:6, 37:22, 52:17, 81:5, 85:14, 88:24, 88:25, 92:4, 92:7

**royalty** [15] - 8:23, 8:24, 11:8, 38:8, 81:10, 82:6, 82:12, 82:16, 82:20, 84:5, 87:11, 88:12, 91:22, 93:22
**Rudas** [1] - 64:23
**RUKAVINA** [35] - 13:21, 13:23, 14:1, 14:13, 14:22, 14:25, 16:2, 16:4, 16:16, 16:24, 18:18, 18:21, 19:2, 32:17, 32:23, 33:7, 33:15, 55:6, 65:1, 65:6, 68:5, 68:16, 69:14, 69:19, 69:25, 70:12, 70:19, 83:12, 83:17, 83:20, 83:23, 90:20, 91:5, 91:10, 95:4
**Rukavina** [8] - 15:21, 15:22, 17:19, 18:8, 22:23, 23:15, 24:8, 51:15
**run** [2] - 52:25, 72:5

## S

**salary** [1] - 71:1
**sale** [1] - 35:7
**savings** [1] - 71:11
**saw** [2] - 19:7, 58:22
**schedule** [4] - 19:20, 33:18, 82:11, 90:15
**schedules** [17] - 11:16, 20:8, 44:11, 45:5, 45:21, 45:23, 46:10, 46:16, 53:16, 65:20, 82:8, 84:11, 86:7, 86:10, 86:16, 90:12, 90:14
**scope** [8] - 8:17, 8:21, 9:20, 11:14, 11:15, 28:16, 57:4, 67:4
**screenshot** [1] - 60:8
**scroll** [3] - 60:15, 60:16, 84:18
**sec** [1] - 92:1
**second** [7] - 18:18, 45:12, 45:17, 46:5, 54:8, 82:24, 83:3
**see** [38] - 19:23, 21:13, 25:23, 28:8, 29:23, 30:12, 30:18, 30:19, 33:19, 34:9, 35:11, 35:15, 38:16, 38:21, 39:14, 39:20, 40:12, 40:13, 42:15, 44:1, 44:14, 44:19, 45:1, 47:3, 47:4, 53:24,

54:8, 56:3, 59:7, 59:18, 60:10, 60:13, 62:1, 75:17, 83:25, 84:23, 85:2, 91:9
**seeing** [1] - 50:20
**self** [5] - 7:21, 8:10, 8:14, 9:4, 9:24
**seminars** [1] - 13:3
**send** [2] - 16:6, 16:9
**sent** [3] - 16:13, 16:18, 38:8
**Service** [2] - 6:4, 6:20
**set** [7] - 28:18, 30:5, 50:10, 65:25, 67:7, 67:11, 86:1
**sets** [1] - 79:24
**seven** [1] - 61:20
**several** [1] - 87:21
**SG_016723** [1] - 82:1
**SG_016739** [1] - 59:17
**shale** [4] - 87:22, 89:11, 89:15, 90:7
**shared** [1] - 25:2
**sheet** [1] - 80:2
**sheets** [1] - 62:12
**Shirley** [7] - 28:25, 30:6, 31:17, 32:8, 50:10, 57:8, 57:17
**short** [2] - 7:3, 43:9
**should've** [2] - 66:15, 66:25
**show** [6] - 31:9, 39:1, 49:10, 63:19, 63:22, 67:8
**showed** [1] - 34:2
**showing** [4] - 75:3, 75:6, 75:7, 75:9
**shown** [5] - 63:15, 75:13, 75:14, 76:24, 77:3
**shows** [12] - 31:16, 33:23, 33:24, 34:18, 39:3, 63:1, 63:12, 66:1, 67:12, 71:4, 88:11, 91:24
**sick** [1] - 18:22
**side** [2] - 13:11, 89:14
**signed** [2] - 45:23, 46:1
**significant** [1] - 76:11
**simple** [1] - 64:1
**sitting** [1] - 63:13
**situation** [1] - 25:16
**situations** [1] - 86:22
**six** [2] - 12:1, 72:22
**size** [3] - 51:2, 51:6, 52:9
**small** [1] - 25:21
**sold** [2] - 51:24, 53:4
**someone** [7] - 14:20,

37:4, 37:12, 37:13, 52:7, 79:7, 94:20
**sometimes** [1] - 29:12
**somewhere** [1] - 89:20
**sophistication** [3] - 26:24, 27:2, 27:6
**sorry** [29] - 11:17, 13:18, 15:14, 19:6, 23:12, 32:23, 36:14, 36:19, 38:4, 41:10, 44:3, 45:16, 46:22, 47:8, 48:8, 48:10, 58:9, 68:16, 82:22, 83:6, 83:7, 85:18, 89:9, 90:3, 90:15, 90:16, 92:2
**sound** [2] - 7:24, 41:15
**sounds** [3] - 9:20, 41:16, 43:11
**speaking** [1] - 76:6
**specific** [8] - 8:12, 13:9, 21:10, 24:16, 25:6, 25:14, 35:20, 39:16, 41:22, 42:1, 51:22, 52:22, 71:10
**specifically** [2] - 17:25, 42:12
**specifics** [1] - 51:7
**specify** [1] - 55:9
**specifying** [1] - 56:13
**speculate** [1] - 70:20
**spend** [1] - 76:6
**spent** [3] - 24:13, 60:2, 60:5
**spoken** [2] - 18:2, 64:5
**spreadsheet** [3] - 81:25, 84:14, 84:16
**standard** [1] - 30:20
**starting** [1] - 81:1
**starts** [1] - 30:15
**state** [3] - 21:8, 50:3, 87:20
**State** [2] - 12:21, 53:23
**Statement** [1] - 90:4
**statement** [2] - 20:22, 90:6
**statements** [5] - 19:17, 42:18, 56:18, 85:6, 88:12
**states** [3] - 21:12, 46:24, 93:10
**stating** [1] - 44:11
**Steam** [2] - 6:4, 6:20
**Stephen** [8] - 6:3, 6:11, 44:10, 46:24, 46:25, 47:5, 47:11,

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

9

59:6
**Steve** [22] - 6:12, 6:16, 7:20, 8:10, 10:10, 10:15, 11:3, 11:11, 17:19, 19:13, 26:9, 26:23, 27:1, 27:13, 29:4, 44:10, 45:24, 49:22, 50:6, 56:15, 86:13
**stick** [1] - 58:25
**still** [13] - 9:11, 9:16, 15:1, 18:13, 28:19, 32:3, 45:15, 45:16, 53:16, 73:3, 73:5
**stop** [3] - 7:12, 12:3, 72:6
**structure** [1] - 32:11
**stub** [8] - 54:16, 54:19, 55:8, 55:15, 56:1, 56:11, 58:13, 58:23
**stuff** [1] - 30:20
**subject** [2] - 21:20, 91:20
**subpoena** [1] - 27:25
**subsequent** [1] - 63:7
**sue** [1] - 72:15
**sufficient** [1] - 22:9
**suing** [1] - 72:17
**summarize** [1] - 66:23
**summarizing** [1] - 65:24
**summary** [1] - 88:10
**support** [5] - 47:1, 57:7, 76:16, 76:21, 94:11
**supposed** [1] - 57:7
**survivors'** [1] - 30:17

**T**

**talks** [2] - 29:23, 46:5
**Tallant** [1] - 64:23
**tax** [37] - 18:11, 19:12, 26:1, 35:13, 35:15, 40:17, 41:11, 41:16, 41:19, 73:4, 73:8, 73:10, 73:15, 73:18, 74:11, 74:12, 74:20, 74:22, 74:23, 77:23, 78:3, 78:25, 80:8, 80:11, 80:19, 80:23, 87:21, 87:23, 88:5, 88:8, 88:11, 89:2, 89:4, 89:5, 89:10, 89:17, 89:22
**taxable** [2] - 38:20, 39:25
**taxes** [7] - 72:25, 73:19, 73:23, 74:8,

74:17, 74:21
**taxpayer** [1] - 39:5
**ten** [3] - 15:4, 18:23, 90:19
**ten-minute** [1] - 90:19
**term** [2] - 47:20, 50:14
**terminology** [1] - 92:15
**terms** [2] - 6:8, 28:12
**terribly** [1] - 90:11
**testified** [2] - 15:7, 75:11
**testify** [1] - 27:25
**testimony** [2] - 68:18, 68:21
**Texas** [2] - 12:22, 54:3
**THE** [18] - 6:24, 13:17, 14:5, 14:15, 14:24, 17:10, 32:22, 43:7, 43:15, 43:17, 55:7, 68:14, 68:20, 69:1, 91:13, 91:15, 95:8, 95:9
**theft** [1] - 11:11
**theirs** [2] - 78:23, 78:24
**themselves** [3] - 16:18, 50:1, 86:7
**therefore** [1] - 68:1
**they've** [2] - 74:3
**third** [4] - 27:12, 60:9, 88:19, 93:24
**Thomas** [3] - 18:19, 18:23, 19:3
**three** [1] - 25:22, 44:17, 52:1, 57:21, 64:2, 74:16, 81:24, 83:8, 88:22, 88:23
**three-quarter** [1] - 52:1
**throughout** [1] - 76:23
**tie** [6] - 47:20, 56:2, 79:16, 79:20, 85:4, 88:6
**tied** [1] - 85:16
**time-wise** [1] - 43:5
**timing** [2] - 23:4, 53:13
**Title** [1] - 54:3
**title** [5] - 54:18, 55:18, 55:19, 55:24, 58:13
**today** [4] - 10:2, 11:7, 18:22, 95:2
**together** [1] - 58:11
**ton** [9] - 9:1, 81:10, 92:8, 93:1, 93:11, 93:12, 93:17, 93:22, 94:22
**took** [1] - 17:19
**top** [7] - 20:4, 21:13,

25:23, 39:8, 43:24, 59:8, 59:9
**total** [4] - 49:8, 82:10, 83:11, 84:6
**totally** [1] - 76:12
**touched** [1] - 86:9
**towards** [3] - 20:4, 25:23, 33:17
**tracts** [1] - 51:24
**transactions** [8] - 7:20, 66:11, 66:24, 67:9, 75:20, 76:17, 78:9, 81:7
**transcript** [1] - 12:11
**trend** [4] - 42:8, 42:24, 53:11, 94:19
**trends** [4] - 41:17, 41:20, 42:1, 42:21
**tried** [3] - 16:8, 85:4, 85:7
**true** [7] - 33:12, 38:15, 44:7, 44:9, 45:4, 67:21, 83:22
**trust** [12] - 28:5, 28:8, 28:13, 28:18, 29:12, 29:16, 29:21, 30:4, 30:9, 31:1, 32:7, 33:21
**Trust** [2] - 34:2, 34:8
**trusts** [3] - 18:14, 19:8, 31:1
**try** [7] - 12:9, 27:22, 56:2, 72:15, 73:19, 79:16, 91:8
**trying** [10] - 10:1, 26:5, 31:7, 66:23, 71:4, 86:20, 86:21, 86:24, 87:16, 92:14
**turn** [7] - 17:11, 20:3, 28:4, 29:25, 31:3, 44:21, 60:9
**turned** [1] - 86:13
**turns** [1] - 30:9
**two** [21] - 6:2, 17:23, 26:10, 30:11, 41:13, 42:4, 44:22, 45:12, 45:22, 52:1, 53:16, 54:2, 57:25, 58:12, 59:20, 74:4, 79:24, 84:10, 94:2, 94:21, 94:22
**two-page** [2] - 53:16, 54:2
**type** [6] - 35:24, 37:10, 37:18, 39:12, 52:4, 75:8
**types** [1] - 34:25
**typical** [2] - 37:25, 71:24
**typically** [1] - 39:10

**U**

**unable** [3] - 21:16, 54:23, 55:11
**under** [7] - 41:14, 46:1, 51:18, 51:25, 77:13, 79:12, 79:14
**underlying** [6] - 24:9, 66:10, 76:5, 76:16, 88:2, 88:6
**University** [1] - 12:18
**unknown** [1] - 44:18
**unsophisticated** [4] - 26:1, 26:4, 26:17, 26:21
**up** [34] - 6:8, 6:24, 7:2, 11:9, 11:18, 22:19, 22:25, 27:22, 28:18, 30:5, 39:4, 45:11, 46:22, 50:10, 53:9, 53:15, 53:19, 59:1, 59:2, 63:20, 63:22, 65:19, 72:5, 74:2, 75:6, 75:8, 75:9, 75:13, 78:13, 79:21, 83:11, 84:6, 91:9
**utilized** [1] - 55:24

**V**

**vague** [1] - 94:19
**value** [5] - 51:6, 52:1, 53:7, 53:10, 57:22
**van** [5] - 53:22, 56:23, 56:24, 57:2, 57:11, 57:14, 57:22
**various** [1] - 18:14
**Vasek** [7] - 6:1, 13:19, 17:4, 24:3, 43:19, 58:4, 91:17
**vehicle** [1] - 55:20
**verify** [2] - 66:8, 66:17
**versa** [1] - 94:6
**vice** [1] - 94:6
**vice-versa** [1] - 94:6
**video** [2] - 12:11, 32:20
**view** [1] - 8:1

**W**

**wages** [4] - 46:24, 47:1, 64:22, 80:7
**waiting** [1] - 21:15
**whatsoever** [1] - 20:15
**whole** [3] - 17:9, 41:23, 90:25
**wife** [2] - 30:6, 50:10
**wise** [2] - 23:5, 43:5

**WITNESS** [3] - 14:24, 43:7, 95:8
**witness** [2] - 33:2, 70:20
**word** [1] - 8:13
**words** [2] - 20:7, 69:6
**worse** [4] - 42:9, 42:23, 43:2
**worthwhile** [1] - 74:22
**would've** [3] - 58:19, 60:5, 78:13
**wrap** [1] - 11:9
**write** [12] - 72:10, 72:15, 72:21, 73:4, 74:3, 74:14, 75:18, 79:3, 79:7, 79:11, 79:15
**write-off** [3] - 74:3, 75:18, 79:15
**write-offs** [1] - 79:11
**writing** [1] - 85:19
**written** [6] - 23:7, 63:7, 63:19, 63:21, 75:12, 79:13
**wrote** [3] - 59:11, 72:13, 74:13

**Y**

**y'all** [2] - 25:8, 43:5
**yeah** [34] - 18:21, 19:25, 20:16, 24:4, 25:6, 31:12, 32:9, 35:15, 45:16, 48:9, 48:25, 50:17, 60:5, 61:13, 61:24, 65:15, 77:2, 78:1, 78:8, 82:19, 84:13, 84:24, 87:9, 89:23, 91:5, 91:10, 92:19, 92:21, 93:6, 93:10, 94:18
**Yeah** [4] - 7:1, 14:25, 18:20, 33:4
**year** [21] - 13:8, 40:1, 40:10, 40:16, 40:18, 40:21, 41:14, 43:2, 49:20, 74:4, 74:14, 74:15, 77:11, 77:14, 77:15, 77:24, 78:1, 78:7
**years** [34] - 12:22, 13:9, 19:11, 19:17, 19:19, 29:17, 41:13, 41:19, 42:3, 42:4, 42:6, 42:10, 42:11, 42:23, 47:7, 47:9, 47:10, 47:14, 47:23, 48:2, 48:15, 48:17, 49:11, 57:17, 57:21, 74:3, 74:4, 74:18,

**DEPOSITION BY VIDEOCONFERENCE OF MAISON DALTON VASEK**
KENT RIES, TRUSTEE VS. GALMOR FAMILY PARTNERSHIP
OCTOBER 28, 2021

10

74:24, 77:8, 77:23,
78:13, 80:17, 87:21
**yesterday** [1] - 15:20

**Z**

**Zoom** [6] - 13:16,
13:20, 32:20, 55:5,
68:13, 83:2
**zoom** [1] - 16:3



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS







(800) 528-3335

NAEGELIUSA.COM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

IN RE:

MICHAEL STEPHEN GALMOR,            Case No. 18-20209-RLJ-7

       Debtor,
and

GALMOR'S/G&G STEAM               Case No. 18-20210-RLJ-7
SERVICE, INC.,

       Debtor.

KENT RIES, TRUSTEE,

       Plaintiff,

v.                               Adversary No. 20-2003

GALMOR FAMILY LIMITED
PARTNERSHIP and GALMOR
MANAGEMENT, L.L.C.,

       Defendants.
_____

DEPOSITION OF

MICHAEL STEPHEN GALMOR


TAKEN ON
WEDNESDAY, MARCH 24, 2021
9:45 A.M.


BROWN AND FORTUNATO PC
905 SOUTH FILLMORE STREET, FIRST FLOOR
AMARILLO, TEXAS 79101

PAPP 0056

Michael Galmor March 24, 2021 NDT Assgn # 36389-1 Page 2

1                              **APPEARANCES**

2

3    **Appearing on Behalf of the Plaintiff, Trustee:**

4    KENT RIES, ESQUIRE

5    **Ries Law Offices**

6    2700 South Western Street, Suite 300

7    Amarillo, Texas 79109

8    (806) 242-7437

9    (806) 242-7440 (fax)

10   kent@kentries.com

11

12   **Appearing on Behalf of the Plaintiff, Trustee:**

13   JERRY McLAUGHLIN, ESQUIRE

14   **McLaughlin Law Offices**

15   2700 South Western Street, Suite 1000

16   Amarillo, Texas 79109

17   (806)371-9110

18   jmclaw@suddenlinkmail.com

19

20

21

22

23

24

25

APPEARANCES CONTINUED

**Appearing on Behalf of the Defendant, Leslie Pritchard:**

DAVOR RUKAVINA, ESQUIRE

**Munsch Hardt Kopf & Harr PC**

500 North Akard Street, 3800 Ross Tower

Dallas, Texas 75201

(214) 855-7500

(214) 855-7584 (fax)

drukavina@munsch.com


**Appearing on behalf of the Debtor/Deponent:**

MATT W. SHERWOOD, ESQUIRE

**Brown and Fortunato PC**

905 South Fillmore Street, Suite 400

Amarillo, Texas 79101

(833) 228-6300

(806) 345-6363 (fax)

msherwood@bf-law.com

1                          **APPEARANCES CONTINUED**

2

3    **ALSO PRESENT:**

4    Randy Hopper, Videographer

5    Leslie Pritchard

6    Brandon Galmor

7    Monique Galmor

8    Shawn Zaiontz

9    Laramie Jernigan

10   Charlotte Trew (via Zoom)

11   Traci Coleman (via Zoom)

12   Thomas Berghman (via Zoom)

13   Maison Vasek (via Zoom)

14   Derek Reddell (via Zoom)

15

16

17

18

19

20

21

22

23

24

25

```
 1                         EXAMINATION INDEX

 2                                                    Page

 3

 4    EXAMINATION BY MR. RUKAVINA                      10

 5

 6    EXAMINATION BY MR. RIES                          263

 7

 8    FURTHER EXAMINATION BY MR. RUKAVINA              276

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        EXHIBITS INDEX

 2    Exhibit                                   Page

 3

 4      1      SUBPOENA TO TESTIFY AT A          37

 5             DEPOSITION

 6

 7      2      2017 PARTNERSHIP RETURN           73

 8

 9      3      SUMMARY OF ASSETS AND            142

10             LIABILITIES FOR

11             NON-INDIVIDUALS

12

13      4      ADVANCES                         146

14

15      5      STATEMENT OF FINANCIAL AFFAIRS   167

16             FOR NON-INDIVIDUALS FILING FOR

17             BANKRUPTCY

18

19      6      DECLARATION CONCERNING DEBTORS   175

20             AMENDED SCHEDULES

21

22      7      STATEMENT OF FINANCIAL AFFAIRS   182

23             FOR NON-INDIVIDUALS FILING FOR

24             BANKRUPTCY

25
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800) 528-3335
NAEGELIUSA.COM

PAPP 0061

```
 1                  EXHIBITS INDEX CONTINUED

 2    Exhibit                                     Page

 3

 4     8      2016 PARTNERSHIP RETURN             183

 5

 6     9      2017 INDIVIDUAL RETURN              193

 7

 8    10      PROFIT & LOSS ALL TRANSACTIONS      197

 9

10    11      PROFIT & LOSS ALL TRANSACTIONS      199

11

12    12      PROFIT & LOSS ALL TRANSACTIONS      200

13

14    13      2018 S-CORPORATION RETURN           209

15

16    14      2016 S-CORPORATION RETURN           212

17

18    15      2016 PARTNERSHIP RETURN             214

19

20    16      CUSTOMER QUICKREPORT                216

21

22    17      EMAIL CORRESPONDENCE AND OTHER      217

23            DOCUMENTS

24

25
```

**NAEGELI**
**DEPOSITION & TRIAL**
CELEBRATING 40 YEARS IN BUSINESS
**(800) 528-3335**
NAEGELIUSA.COM

PAPP 0062

1                         EXHIBITS INDEX CONTINUED

2    Exhibit                                          Page

3

4     18      ORDER EXCEPTIONS TO CONVEYANCE          229

5             AND WARRANTY

6

7     19      UNANIMOUS WRITTEN CONSENT               235

8

9     20      INVOICES                                242

10

11    21      AMENDMENT AND RATIFICATION OF           276

12            COMPROMISE AND SETTLEMENT

13            AGREEMENT

14

15

16

17

18

19

20

21

22

23

24

25

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

PAPP 0063

1              **DEPOSITION OF**

2          **MICHAEL STEPHEN GALMOR**

3              **TAKEN ON**

4          **WEDNESDAY, MARCH 24, 2021**

5              **9:45 A.M.**

6

7          **VIDEOGRAPHER:** This is a videotape deposition of

8 Mr. Michael Stephen Galmor in re case number 18-20209-RLJ-7

9 and case number 18-20210-RLJ-7 and adversary 20-2003.

10 Today's date is March 24th, 2021, and the time is

11 approximately 9:45 a.m.

12          Will counsel present please state whom they

13 represent, on the record?

14          **MR. RUKAVINA:** My name is Davor Rukavina. I

15 represent Leslie Pritchard.

16          **MR. RIES:** Kent Ries. I represent the bankruptcy

17 estates.

18          **MR. SHERWOOD:** Matt Sherwood, represent Steve

19 Galmor.

20          **MR. McLAUGHLIN:** Jerry McLaughlin. I'm co-counsel

21 on the bankruptcy estates.

22          **VIDEOGRAPHER:** Court reporter, please swear the

23 witness.

24          **THE REPORTER:** I have to do a quick statement for

25 the record.

1              It's my pleasure to serve as your professional

2     reporter in today's matter.  I would like all attorneys

3     present to stipulate that the testimony will be captured by

4     a professional digital reporter and that all present agree

5     to this method of recording, preserving today's record by

6     audio and visual means.

7              Mr. Rukavina, do you agree?

8              **MR. RUKAVINA:**  Yep.

9              **THE REPORTER:**  Mr. Sherwood, do you agree?

10             **MR. SHERWOOD:**  Yes.

11             **THE REPORTER:**  Mr. McLaughlin, do you agree?

12             **MR. McLAUGHLIN:**  Yes.

13             **THE REPORTER:**  Mr. Ries, do you agree?

14             **MR. RIES:**  Yes.

15             **THE REPORTER:**  Mr. Galmor, please raise your right

16     hand.

17             **THE WITNESS:**  Yes, sir.

18             **THE REPORTER:**  Do you solemnly swear or affirm the

19     testimony that you are about to give will be the truth, the

20     whole truth, and nothing but the truth, so help you God?

21             **THE WITNESS:**  Yes, sir.

22     **MICHAEL STEPHEN GALMOR,** having been duly sworn, was

23     examined, and testified as follows:

24     **EXAMINATION**

25     **BY MR. RUKAVINA:**

1      Q.    Mr. Galmor, if you'll please state your full name

2  for the record.

3      A.    Michael Stephen Galmor.

4      Q.    And what's your date of birth?

5      A.    10 in 12 in '55.

6      Q.    Where do you live, sir?

7      A.    Shamrock, Texas.

8      Q.    What's your residence address, please?

9      A.    Seven -- 6535 U.S. 83.

10     Q.    Okay.  Is that the only residence that you stay at

11  periodically or do you have other places where you spend the

12  night sometimes as a residence?

13     A.    I stay at the lake a little bit.

14     Q.    What's that address, sir?

15     A.    I don't know the address.

16     Q.    Okay.  How would -- How would you tell me where it

17  is if you -- if I -- if you invited me over for dinner or

18  something?

19     A.    It's on Highway 44A going into the park, state

20  park.

21     Q.    Which lake, sir?

22     A.    Lake -- Lake Altus-Lugert

23     Q.    Okay.  So have you been deposed before?

24     A.    Yes, sir.

25     Q.    Okay.  So you understand it's your job to give

1   honest answers and my job to ask clear questions, right?

2        A.   Yes, sir.

3        Q.   Okay.  Do you hear just fine or are you a little

4   bit hard of hearing?

5        A.   I'm a little hard hearing.

6        Q.   Okay.  That plus my accent, if you don't

7   understand or hear my question, please just ask me to

8   restate it or to repeat it, okay?

9        A.   Yes, sir.

10       Q.   Are you on any kind of medication that would

11  affect your ability to testify today?

12       A.   No, sir.

13       Q.   Okay.  Did you do anything to prepare for today's

14  deposition?

15       A.   I visited with Mr. -- my attorney.

16       Q.   Okay.  Other than that, which I don't want to hear

17  about, did you talk to anyone else about this deposition?

18       A.   No, sir.

19       Q.   You didn't talk to Mr. Ries?

20       A.   Yes, sir.

21       Q.   Okay.  When did you talk to Mr. Ries and what did

22  you talk about?

23       A.   Monday, and we discussed just the case.

24       Q.   Okay.  Do you have a general understanding of what

25  this lawsuit is about?

1    A.    Yes, sir.

2    Q.    **What's your understanding?**

3    A.    That we're protesting my claims in the bankruptcy

4  record about the authenticity of what they are.

5    Q.    **What claims are you referring to, sir?**

6    A.    The two million or something, whatever's in the --

7  my statement for the bankruptcy.

8    Q.    **Okay.  So the -- the claims that the family**

9  **partnership owes you money and owes Galmor's/G&G money,**

10 **right?**

11   A.    Yes, sir.

12   Q.    **And you understand that that's in dispute in this**

13 **lawsuit, correct?**

14   A.    Yes, sir.

15   Q.    **Okay.  Have you read the trustee's complaint in**

16 **this lawsuit?**

17   A.    Yes, sir.

18   Q.    **Okay.  Have you read my answer and counterclaim?**

19   A.    I don't think so.

20   Q.    **Okay.  Other than talking to your counsel and Mr.**

21 **Ries, did you talk to anyone else about today's deposition?**

22   A.    No, sir.

23   Q.    **Did you talk to Ms. Carter?**

24   A.    Yes, sir.

25   Q.    **Okay.  What did you talk to her about, and when?**

1    A.    We just -- We were all in the same room together.

2    Q.    Got it.  That's okay.

3          Other than when you met with Mr. -- when you met

4    with counsel and Ms. Carter, did you talk to Ms. Carter at

5    any other time about this deposition?

6    A.    No, sir.

7    Q.    What about Ms., is it Fox?  Fuchs?  How do you --

8    How do you pronounce her name?  Do you --

9    A.    Fuchs.

10   Q.    Fuchs?

11   A.    Yes, sir.

12   Q.    Did you talk to Ms. Fuchs about this deposition?

13   A.    Hadn't talked to Kellye Fuchs in four or five

14   years.

15   Q.    Okay.  You didn't talk to any of your siblings

16   about this deposition?

17   A.    No, sir.

18   Q.    Any of your children about this deposition?

19   A.    No, sir.

20   Q.    I asked you whether you've been deposed before,

21   and you said yes.  How many times, please?

22   A.    Once after the bankruptcy started in Newsom and

23   Young's office over there.  And then when I was trying to

24   get custody of my children, there in like '84,'85, something

25   like that.

```
 1        Q.    Okay.  What -- the most --

 2              The more recent one, the one at Young's office, do

 3   you recall what the topic of that deposition was or what the

 4   lawsuit was?

 5        A.    No, sir, I don't remember that.  I know it was

 6   kind of a whirlwind deal.

 7        Q.    But it was after the bankruptcy?

 8        A.    We were at the adversary or a meeting or something

 9   or we were at the creditors' meeting or something when Mr.

10   Carruth and Leslie came in and claimed that I owed them a

11   million dollars.

12        Q.    I understand.

13              Are you referring perhaps to the Section 341

14   meeting of creditors?

15        A.    Maybe so.  I don't know what that -- I don't know

16   those numbers.

17        Q.    Okay.  But sitting here today --

18              And you're not a lawyer obviously, right?

19        A.    No, sir.

20        Q.    Sitting here today, you -- you remember that being

21   a deposition perhaps?

22        A.    Yes, sir.

23        Q.    Do you recall if these claims of yours against a

24   family partnership for unpaid amounts was discussed at that

25   deposition?
```

1    A.    I can't remember that.

2    Q.    Okay.  Did you ever get a transcript of that

3  deposition, to your memory?

4    A.    No, sir, that I remember.

5    Q.    Okay.  Do you recall if that one -- that one was

6  videotaped as well?

7    A.    I don't think so.  It was pretty quick.

8    Q.    I'm going to ask you a series of questions about

9  yourself and your family.

10        Please tell me about your educational background?

11    A.    Graduated from Shamrock High School.  Had one year

12  or a half a year at Panhandle State University, then I went

13  into work.

14    Q.    Okay.  Where'd you go into work at?

15    A.    I worked up here at Aircraftsman at the airport

16  for a little bit.  Then I went back to work at Shamrock and

17  we started that G&G Steam Service, me and my dad.

18    Q.    When did you start G&G Steam Service?

19    A.    '75, maybe.

20    Q.    And you started it with your dad right at the

21  beginning?

22    A.    Yes, sir.

23    Q.    Okay.  So I -- I reckon you graduated high school

24  around '73?

25    A.    '4

```
 1      Q.    '74.

 2            Okay.  Have you ever been arrested?

 3      A.    No, sir.

 4      Q.    Okay.  Then obviously you have no criminal record,

 5 right?

 6      A.    No, sir.

 7      Q.    Are you married?

 8      A.    No, sir.

 9      Q.    Have you been married before?

10      A.    Four times.

11      Q.    Four times.

12            So are you divorced right now or a widower?

13      A.    Divorced.

14      Q.    When did you divorce?

15      A.    I don't remember.  '13 or '14, something like

16 that.

17      Q.    And what was the ex-wife's name?

18      A.    Becky Counts.

19      Q.    Okay.  And what about the wife before that, what

20 was her name?

21      A.    Bonnie, I think.

22      Q.    Okay.  And when do you, to the best of your

23 memory, when did you divorce her?

24      A.    I -- I can't recall that.

25      Q.    Okay.  And what was the name of the wife before
```

```
 1   that?

 2        A.    Connie Hurley.

 3        Q.    Okay.  Do you recall about when you divorced or

 4   when -- when you all got divorced?

 5        A.    No, sir.

 6        Q.    Okay.  And what about the first wife?

 7        A.    Well, I guess there are five times, 'cause there

 8   was the -- Donna was my second wife.

 9        Q.    Okay.  Do you remember her last name?

10        A.    Glover.

11        Q.    And then what was your first wife's name?

12        A.    Charlotte Smith.

13        Q.    Do you remember approximately when you and -- and

14   Ms. Glover and Ms. Smith were divorced?

15        A.    No, sir.

16        Q.    Okay.  Do you have any children?

17        A.    Yes, sir.

18        Q.    How many?

19        A.    Have six.

20        Q.    Six children, okay.

21        A.    Mm-hmm.

22        Q.    And do you have any living siblings?

23        A.    Yes.

24        Q.    Okay.  I know the answers to some of these

25   questions, so I'm just asking you for the record.  I'm not
```

```
 1  as stupid as --

 2       A.    Okay.

 3       Q.    -- as my questions might make it sound.

 4             And obviously Leslie is one of your siblings?

 5       A.    Yes.

 6       Q.    Okay.  And then tell me about the other siblings?

 7       A.    Be Traci Coleman, Rudas or Mark Galmor, and Shawn

 8  Zaiontz.

 9       Q.    Okay.  Did you ever have any siblings that are no

10  longer alive?

11       A.    No, sir.

12       Q.    Okay.  You're the oldest of these five siblings?

13       A.    Yes, sir.

14       Q.    Okay.  How would you describe your relationship

15  with your siblings?  And we can go one by one or you can

16  just tell me in your own words, however you'd prefer?

17       A.    All -- You can ask the questions.  I thought it

18  was all good for a long time, but I don't know that.

19       Q.    Well, how would you describe your relationship

20  with Leslie Pritchard today?

21       A.    Not very well.

22       Q.    You don't like her and she doesn't like you?

23       A.    I assume that's the truth.  I mean, I don't -- I

24  love her; she's my sister.  But, you know, I don't know.

25  That's what we got to deal with.
```

1    Q.    Why do you think that the relationship is not very

2  well today?

3    A.    Well, we wouldn't be here if it was very well.

4    Q.    Is that it or are there other things between you?

5    A.    I -- I don't know what it might be, sir.

6    Q.    Okay.  When did your relationship with Ms.

7  Pritchard go south?

8    A.    I guess after my mother passed away.

9    Q.    Before that, it was more or less okay?

10    A.    Yeah, I think so.

11    Q.    What about your relationship with your sister

12  Traci, how would you describe that today?

13    A.    It was always well, I think.

14    Q.    You think it's well today?

15    A.    I don't think so because of this litigation.

16    Q.    So when did that relationship kind of take a turn

17  for the worse?

18    A.    I guess really kind of after my mother passed

19  away.  Right there around the time my mother did pass away.

20  I'm not real sure about all that.

21    Q.    Okay.  And what about your brother, Mark?  I guess

22  he goes by -- by Rudas?

23    A.    Rudas.

24    Q.    How's your relationship with him today?

25    A.    It's okay.  I mean Rudas is just Rudas.  You just

1  have to take him for what he is.

2      Q.   **What do you mean by that, sir?**

3      A.   Well, he's up and down.  He drinks a lot and just

4  have to depend on what -- what day of the week it is with

5  him.

6      Q.   **Okay.  What about your sister Shawn, how would you**

7  **describe that relationship today?**

8      A.   Well, we used to be pretty close.  She was

9  probably the closest one of the mess.  But, you know, I

10  don't know.  I haven't spoke to her in a long time either.

11      Q.   **From before your mother passed away or after?**

12      A.   All through the periods when my mom and dad were

13  having trouble and the things that happened, Shawn was

14  probably the one that was there to help my mom and dad the

15  most.  And, so I mean, it always -- she's had trouble

16  herself, but it was always -- we could always kind of talk

17  through things and visit about things and got through that.

18  So I mean, that's -- I mean, I was probably closer to her

19  than I was any of them.

20      Q.   **So is it fair to conclude that it's really when**

21  **the litigation concerning your parents' estates, et cetera,**

22  **when that litigation began, that you started having issues**

23  **with -- with some of your  siblings at least?**

24      A.   I would say so.

25      Q.   **Okay.  And tell me about your parents, sir.  What**

1  was your dad's name?

2      A.   Bobby Don Galmor.

3      Q.   **Okay.  And when did he die?**

4      A.   April the 3rd in '13.

5      Q.   **And what was your mom's name, sir?**

6      A.   Shirley Jo.

7      Q.   **And when did she die, sir?**

8      A.   The 23rd of March, five years ago, I think.

9      Q.   **Okay.  So 2016?**

10     A.   (Nods head)

11          **THE REPORTER:**  Is that a yes?

12          **MR. SHERWOOD:**  You can't nod your head.  You got

13 to --

14          **THE WITNESS:**  Yes, sir.

15          **MR. SHERWOOD:**  -- give verbal answers.

16          **THE REPORTER:**  Thank you.

17 BY MR. RUKAVINA:

18     Q.   **And, and how was your relationship with your**

19 **parents before they passed?**

20     A.   It was good.

21     Q.   **With your dad in particular, 'cause you all were**

22 **in business together?**

23     A.   We've always done some type of business together,

24 yes, sir.

25     Q.   **Okay.  And with your mom, were you pretty close**

1 | with her as well?

2 | A.   I became closer with her after my dad passed away.

3 | But, yes, my mom was always there for me and they -- I

4 | always had a family that -- always had a house to go home

5 | to, whether it was right or wrong and indifferent, I still

6 | had a place to go.

7 | Q.   Okay.  So you mentioned that you started the G&G

8 | Steam, was it the steam business, steam cleaning business,

9 | with your dad in about 1975?

10 | A.   '75, yes, sir, I think so.

11 | Q.   And that was called --

12 |      What was that name of that --

13 | A.   G&G Steam Service.

14 | Q.   Okay.  And what did that business do?

15 | A.   Steam rods and tubing in the oilfields, steam -- I

16 | mean that's vessels and -- basically worked in the oilfield.

17 | Q.   Was that the business since 1975 until it field

18 | bankruptcy?  Is that what the business did?

19 | A.   That was the -- the start company, yes, sir.

20 | Q.   Okay.  And your dad and you started that company?

21 | A.   Yes, sir.

22 | Q.   And did you all grow that company into a

23 | successful company?

24 | A.   Yes, sir.

25 | Q.   Can you give me kind of a top-level kind of just

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM

PAPP 0078

1  how it went year-by-year or decade-by-decade?  I mean, tell

2  me just in your own words from '75 until the bankruptcy how

3  that company did.  How did it grow?  How many employees did

4  it have?  Revenues?

5      A.   Well, I don't know the revenue part.  I know in

6  '75, it was myself and my brother, that's why we called it

7  G&G.  And then we grew there 'til '85 until Penn Square went

8  broke and there wasn't any work for us to work, so we ended

9  up at Elk City.  And when I went to Elk City, there was five

10 hands went with me and we started working out at Elk City.

11     Q.   And about when -- About when was that?

12     A.   '85.

13     Q.   Okay.

14     A.   It was a -- I'd say it was like April of '85, when

15 I moved over there.

16     Q.   And then how did the business do after '85?

17     A.   It's a typical oilfield business.  It'd struggle.

18 It'd go up.  It'd go down, and just depend on the -- the

19 frame of the -- the price of the oil and the -- and the gas

20 markets.

21     Q.   When would you say that that business was doing

22 its best, approximately what years?

23     A.   '09 to '10, probably.

24     Q.   Okay.  Can you give me an idea of the -- of the

25 annual revenue during that period of time for G&G?  We're

1    talking about millions of dollars?

2        A.    There was millions of dollars, but I can't give

3    you the numbers.  I never looked at that.  I mean, we looked

4    at reports on Fridays, and that's what I worked my stuff off

5    of.

6        Q.    Would you estimate that it was more than $10

7    million a year when it was at its best or less than $10

8    million a year?

9        A.    Probably less.

10        Q.    Okay.  And approximately how many employees did it

11    have when it was doing its best?

12        A.    I remember around 200, I think.  I don't -- I'm

13    not going to say that's accurate, but I know that somewheres

14    in that neighborhood.  There's a lot of going and coming.

15        Q.    Okay.  And did -- did that business acquire

16    physical property during all those years; machinery,

17    equipment, et cetera?

18        A.    Yeah, we -- a lot of equipment, yes, sir.

19        Q.    Okay.  What was the nature of that equipment?

20    What -- What type of equipment are we talking about?

21        A.    Sir?

22        Q.    What -- What was the nature of that equipment?

23        A.    What do you mean, the nature?

24        Q.    Well, was it vehicles?  Was it machinery?  I mean,

25    I don't know what a steaming business --

1    A.   All -- all it --

2    Q.   -- is.  So what all did it have?

3    A.   It was an oilfield construction business after --

4 later on in the life, we did -- we had a group that was

5 roustabouts.  We had a group that were dirt work people.  We

6 had a group that hauled rock.  And then we had a pipeline

7 outfit.

8    Q.   Okay.  What's a roustabout?

9    A.   They just do kind of like plumber work.

10    Q.   Okay.  So at the height of that business, do you

11 remember what the book value of all of its assets was?

12    A.   The assets would be based on who might want them

13 or what they were -- who was involved in it, because it --

14 it's -- it's not any different than a car or a tractor.

15 It's -- It's what it's worth to somebody.  I mean, I don't

16 know if you can put a number on it all.  We -- We actually,

17 you know, tried to sell it two or three times, and it never

18 would come up to what we thought it was worth, you know.

19    Q.   So you never sold the G&G business?

20    A.   Yes, sir, we did.  There when we sold to

21 Advantage, whenever that was.

22    Q.   Okay.  Tell me about that, sir.  So you sold to

23 Advantage?

24    A.   Yes, sir.

25    Q.   So the G&G business was sold to a company called

1  **Advantage?**

2      A.   Yes, sir.  Well, G&G and -- and the Galmor's, they

3  were combined.

4      **Q.   Okay. Let's talk about that before we talk about**

5  **the sale then.**

6           **What was Galmor's when it started?**

7      A.   Damor was my dad's start company and he sold rope,

8  dope, and soap.  He would service the rigs in the oilfields

9  with that, that's what it -- bottom hole pumps.

10          And I don't know when the transition came.  But

11  when I bought it from my folks in '99, we operated it like

12  two or three years and we had two separate sets of books.

13  And I told them then, instead of having two sets of

14  liability and all this complicated paperwork, we merged them

15  together.  And I don't know the dates of all that.  It was

16  done by CPAs and attorneys.  But I don't know the dates on

17  that.

18      **Q.   Okay.  So, so Galmor's, when did your dad start**

19  **Galmor's; do you remember?**

20      A.   He didn't start -- He started Damor.

21      **Q.   I'm sorry.  Damor, okay.**

22           **So how did Damor becomes Galmor's?**

23      A.   In '99, he came to me and said that we were going

24  to break him.  And I said, well, we don't want that either.

25  So he owed $2 million approximately.  I'm not going to give

1  the exact numbers.  And he talked to my mother and he talked

2  to my brother.  And he told my brother, he said, if you want

3  to -- if you can come up to $2 million, you can have it, but

4  I -- I want out.  So that's what we done.  And they signed

5  the stocks all over to me in '99 and early 2000.

6      Q.   Okay.  So, so your dad started a company called

7  Dalmor?

8      A.   Damor.

9      Q.   Damor.

10     A.   D-a-m-o-r.  Yes, sir, Damor.

11     Q.   When did he start that company?

12     A.   '64 or '65.

13     Q.   Okay.  And up to '99, was he the only owner of --

14  of Damor?

15     A.   Yes, sir.

16     Q.   Okay.  And then in '99, did he sell it all to you?

17     A.   Yes, sir.  Well, he had a interest in the G&G

18  Steam Service, sir, but I don't know what percentage his

19  interest in that was.

20     Q.   Okay.

21     A.   But I know him and my mother and my brother had to

22  sign off for me to get the stock.

23     Q.   The stock of Damor?

24     A.   G&G.

25     Q.   Okay.  I thought you started G&G with your father

1  in 1975?

2      A.   I did.

3      Q.   Okay.  So I want to focus on Damor right now.

4      A.   Okay.

5      Q.   So, so in 1999, is it correct that you purchased

6  Damor from your father?

7      A.   Yes, sir.

8      Q.   You and you alone?

9      A.   Yes, sir.

10     Q.   Okay.  And then when did it become Galmor's?

11     A.   A few years later.  I mean, I don't know the dates

12  on that.

13     Q.   Do you know if it was just a name change or was it

14  actually a new company that was created to be Galmor's?

15     A.    It was just a name -- a transfer of some type,

16  sir, is all -- I mean, it had to go through all the -- the

17  hoops to get the -- the money back to where we have tax

18  numbers and stuff to go to with that.

19     Q.   Okay.  And then at some point, Galmor's was merged

20  with G&G?

21     A.   Yes, sir.

22     Q.   Okay.  And after that it was Galmor's/G&G?

23     A.   Yes, sir.

24     Q.   You're nodding --

25          And approximately when was the -- when was it

```
 1  merged?

 2      A.   I can't tell you that date; I don't know that.  I

 3  mean --

 4      Q.   Was it shortly around 1999?

 5      A.   No, no, no, no.  It'd be a few years past that.  I

 6  don't know.

 7      Q.   Were you able to buy out your father when you

 8  bought Damor?

 9      A.   I had to pay that $2 million worth of debt off.

10      Q.   So you assumed the debt?

11      A.   Yes, sir.

12      Q.   Okay.  Now, you mentioned something about G&G,

13  that your brother and your mother had to sign off on it.

14  Did I understand that correctly?

15      A.   Well, in '99, that's what -- when it all came to a

16  head, my mother -- what started G&G was a -- they were two

17  different entities.  And my dad, when he asked us to take it

18  over or to liquidate it, whatever we needed to do, he had to

19  sign off, my mother had to sign off, Mark had to sign off,

20  and then they signed the stock over to me.

21      Q.   The stock of --

22      A.   G&G.

23      Q.   -- Damor?

24      A.   No, G&G.  There never was any stock in Damor.

25  Damor was always my dad's.  But --
```

1    Q.   Okay.

2    A.   -- I assumed all of that in '99.

3    Q.   So it sounds like Damor was never a corporation,

4 it was just a business that your dad ran through his --

5 through a, what's called a dba?

6    A.   I don't know.  I couldn't answer that.

7    Q.   Okay.  So to go back to G&G.  Your father and you

8 started that in 1975?

9    A.   Yes, sir.

10    Q.   And then at some point did your brother Mark and

11 your mother acquire interests in that company?

12    A.   Two or three years after we formed the G&G, my dad

13 wanted that all to come up and it was starting to grow.  So

14 that's when he built, I think he had a guy named Jim Fling

15 or someone draw up the papers for that corporation for G --

16 it was just a -- I don't think it was even a corporation.  I

17 think it was just a -- a company.

18    And that's how we -- they -- I mean, my mom owned

19 -- they owned half of it and I think Rudas and I owned 25

20 percent a piece, that's what I think.

21    Q.   Did -- Did Rudas work for these companies back

22 then?

23    A.   Off and on, he'd work for us awhile there and then

24 he went off on his own pipeline welding.

25    Q.   Do you want a water, by the way?  We have some

1   waters.

2       A.    I'd sure like to have one.

3       Q.    I don't think it's cold, but...

4       A.    That's all right.

5       Q.    Anyone else?  Okay.

6             So did your dad continue working with Damor,

7   slash, Galmor's after he sold it to you in 1999?

8       A.    Yes, sir.

9       Q.    Okay.  And did your dad continue working with you

10  in G&G?

11      A.    Yes, sir.

12      Q.    Did your dad ever like retire or just stop working

13  or did he keep working until he died?

14      A.    Worked every day since I've known him.

15      Q.    Okay.  What did your -- What did your dad die of?

16      A.    He had stage 3 or 4 cancer.  He had a prostate

17  cancer, then he has a colon cancer which went into his

18  lungs.  And anyways, I think it was a stage 4 cancer that

19  finally went into his lungs and it -- it killed him.

20      Q.    So it was not pleasant?

21      A.    Sir?

22      Q.    It was not -- it was -- it was a painful --

23  painful process?

24      A.    He was on morphine the last three weeks of his

25  life, yes, sir.

1    Q.   Other than Damor and G&G, did your dad, to your

2  knowledge, ever own other businesses?

3    A.   Lots of other businesses.

4    Q.   What?  In the '80s?  In the '90s?  In the 2000s?

5  Or...

6    A.   My dad never let us know really what he was doing

7  and what he wasn't doing, sir.  But I know he had a partner

8  named Davenport.  I know he had a partner named Barker.  I

9  know he had a guy named Basil Hindman one time; they had

10  water trucks.

11       My dad made his own energy all the time and he

12  didn't include me in any of that type of stuff.  I'd know

13  about it later, but most of the things he done, no one --

14  not even my mother knew he was doing it most of the time.

15    Q.   And I don't mean to be personal or disrespectful.

16  But were -- were they a happily married couple there to the

17  end?

18    A.   Yes, sir.

19    Q.   So just kind of like an old-fashioned guy, he just

20  didn't share all -- all the business details with his wife?

21    A.   Yes, sir.  He didn't even let my mother know --

22  She wasn't on his checking account 'til he found out he had

23  this cancer real bad.

24    Q.   Okay.  But it's fair to say that through the

25  course of his life, your dad built up some pretty decent

1  wealth, right?

2      A.    Yes, sir.

3      Q.    He started -- He started acquiring, whether

4  directly or indirectly, land and oil and gas interests and

5  all that stuff?

6      A.    Yes, sir.

7      Q.    So he was a hard-working, successful man?

8      A.    Yes, sir.

9      Q.    Did he -- Did he come from money or did he come

10 from humble means?

11     A.    Humble.

12     Q.    Where did he -- Where was he born and where did he

13 grow up?

14     A.    Mobeetie, Texas.

15     Q.    Is that where he grew up, too?

16     A.    No.  I grew up in Shamrock.

17     Q.    No, no.  Where did your dad grow up?

18     A.    At Mobeetie in --

19     Q.    And I'm sorry.  I do not know where Mobeetie is.

20     A.    It's six -- 11 miles west of Wheeler or 40 miles

21 east of Pampa on 152.

22     Q.    Okay.  So let's say by the year 2010, your dad had

23 a net worth probably in the millions of dollars?

24     A.    I wouldn't know that.  I know he had a lot of

25 things going on.

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0089

1    Q.    Okay.  So we mentioned that he had acquired some

2    land and he acquired some oil and gas interests, right?

3    A.    Yes, sir.

4    Q.    Do you know of other significant assets that he

5    had been able to acquire during his life?

6    A.    Like I said, I don't know all of his business.  He

7    never would tell me all of his business.

8    Q.    Okay.  Did he have like a confidante or a lawyer

9    or an accountant that -- that he would tell all his business

10   to, or a business partner or someone?

11   A.    Well, like I said, Mr. Barker, Rodney Barker and

12   Roy Barker were his first partners in that oil and gas

13   business.  And, and then him and Vernon Davenport did some

14   things together.

15         But a lot of those things that happened, you know,

16   we wouldn't know they were even happening, they were just

17   happening.  But I don't know of a -- Like I said, I didn't

18   know his business.  I didn't ask his business.

19   Q.    No, I respect that.  I'm just wondering if you

20   knew of someone that he did have that knew all of his

21   business, like a close friend or an accountant or someone.

22   A.    Well, I -- there's a few attorneys and stuff.  I

23   know at one point, you say those things, he was a member of

24   the -- he was on -- a board member of the bank over there.

25   Q.    Which bank, sir?

```
 1         A.    First State Bank, I think was it, or something.

 2   And -- But that's another thing, sir, I don't know -- my dad

 3   never included me in none of that stuff.  I mean, we'd find

 4   out about it later.  I mean, he -- through -- I mean he was

 5   kind of funny about those things.  That was his business.

 6         Q.    Did your dad use the Underwood Law Firm a lot?

 7         A.    Yes, sir.

 8         Q.    Okay.  Do you know how long he used that law firm?

 9   Like are we talking about '80s, '70s, or...

10         A.    He used Ken Fields for as long -- he used -- I

11   can't remember the first attorneys he was using.  I

12   mentioned it while ago.  But I think that he -- him and

13   mother, when he started getting things kind of together, he

14   used Ken Fields for most of his business 'cause Ken was a

15   local boy.

16         Q.    Was he up in Shamrock?

17         A.    I think it was Pampa.

18         Q.    Pampa, okay.

19               Now, how long were your parents married?  Or what

20   year did they get married in, do you know?

21         A.    Well, they were born in '36, and they were married

22   March 17th in probably '54, '55.

23         Q.    So they were married for almost 60 years before

24   your dad passed?

25         A.    Yes, sir.
```

1      Q.    Did your mom ever have a job of her own or -- or

2 any kind of business interest of her own?

3      A.    She had a greenhouse, yes, sir.

4      Q.    Was that it?

5      A.    Well, she -- early on when they first started, she

6 worked for J.R. Barber.  She was keeping books to help make

7 income for us.  And, and then but most of the time she was a

8 housewife.  But I said after the girls, after everyone kind

9 of got out of school, I think she started that Shamrock

10 Greenhouse and Floral she called it.

11     Q.    What -- What land was that on?

12     A.    It was on their property there in Section 64.

13     Q.    Is that the homestead property?

14     A.    Yes, sir.  Mm-hmm.

15     Q.    Okay.  Other than that, do you know of any

16 significant assets that she would have had in her own name

17 when your dad died?

18     A.    Whatever my dad left her.

19     Q.    So to the best of your understanding, whenever

20 your dad died, she would have had her community property and

21 then whatever your dad left her, right?

22     A.    Yes, sir.

23     Q.    Okay.  We'll talk some more about that.  I'd like

24 to first introduce into evidence this subpoena.  Pardon me,

25 sir.  This is going to be Exhibit 1.

```
 1              (WHEREUPON, Exhibit 1 was marked for

 2   identification.)

 3              MR. RUKAVINA:  Want me to throw it at you?

 4              MR. RIES:  You can just pass it through Steve.

 5              THE WITNESS:  Yours is -- Are they the same or --

 6              MR. SHERWOOD:  You keep -- You keep that one,

 7   Steve.

 8              THE WITNESS:  Keep that one?

 9              MR. SHERWOOD:  Yeah.

10              MR. RUKAVINA:  I'll just -- I'll walk it over.

11   BY MR. RUKAVINA:

12       Q.   Sir, have you seen this subpoena before?

13       A.   Saturday a week ago I saw this first page of this.

14   I think this is the same document.

15       Q.   Were you not served by a process server at the

16   post office with this subpoena last fall?

17       A.   Yes, sir.

18       Q.   So did you see it -- So the process server says

19   that he served it -- oh, I'm not sure of the date right now.

20   But would it have been September of last year, somewhere

21   around there?

22       A.   I -- I wouldn't know.  I know that someone gave me

23   some papers at the post office, yes, sir.

24       Q.   Okay.  But the process server, if he says that he

25   gave it to you at the post office last September or October,
```

1  would you disagree with that?

2      A.   No, sir.

3      Q.   Okay.  Did you look at the subpoena then when you

4  received it?

5      A.   I read through it, yes, sir.

6      Q.   Okay.  And did you, other than, well, before Mr.

7  Sherwood, did you talk to a lawyer about this subpoena?

8      A.   I contacted Mr. Ries and asked him what this might

9  be.

10     Q.   Okay.  Was -- Was there some problem, to your

11 knowledge, with the process server serving you?  Why did he

12 serve you at the post office, do you know?

13     A.   I -- I couldn't answer that.

14     Q.   Did you ever see the process server coming onto

15 your property and try to avoid him serving you?

16     A.   No, sir.

17     Q.   Okay.  You -- Do you see that this subpoena

18 requests you to produce various documents?  Do you see that,

19 sir?

20     A.   I saw that, but, you know, I had no documents.

21 Mr. Ries has got all my documents.

22     Q.   When you received the subpoena, did you understand

23 that it was asking you to produce certain documents?

24     A.   I saw that, but that's when I called Mr. Ries.

25     Q.   Okay.  So other than calling Mr. Ries because he

1   had these documents, did you take any other steps to try to

2   find any documents included here?

3       A.   There's no documents to be had.  Mr. Ries took

4   them.  They took a computer and took all the stuff that -- I

5   mean, when they -- when I filed that bankruptcy and they

6   came got my equipment at Twitty, that's the last I've seen

7   of any of -- I had -- I saw the computer the other day when

8   I was at Mr. Ries' office.  That's the first time I saw the

9   computer in four years.

10      Q.   So you don't have any personal tax returns in --

11  in your personal possession at all?

12      A.   No, sir.

13      Q.   Okay.  No appraisals of any properties?

14      A.   No, sir.

15      Q.   Okay.  You're -- You are testifying under oath

16  that all of the documents requested here were turned over to

17  Mr. Ries whenever the Chapter 7 happened?

18      A.   Well, I don't -- I'm not going to say that 'cause

19  I'm not sure what all this means.  I'm not an attorney.

20           But I know that all the -- the records that I -- I

21  surrendered them to Kent Ries and -- I forget my other

22  attorney, the other one, they showed up out there, and Mr. -

23  - Leslie's attorney.  And they put them all in the back of a

24  Suburban car.  We loaded two cars full of paperwork.  And

25  they said that's all that they needed, and then they left

```
 1  with it.

 2       Q.   So you mentioned a computer.  You -- Did you

 3  surrender to Mr. Ries a computer that you had that would

 4  have had some of this?

 5       A.   Yes, sir.

 6       Q.   Okay.  And that --

 7            Was that right around the time of the Chapter 7?

 8       A.   I'm -- I don't know that.  I just know that Kent

 9  and my -- the attorney that I had hired to help me out of

10  Elk -- of Amarillo here --

11       Q.   Is that Swindell?

12       A.   Yeah, Mr. Swindell.  And then Leslie's attorney,

13  they were all there at Twitty that day.  And they wanted to

14  look at what we were all talking about and -- 'cause I

15  remember that day that we'd run out of propane, didn't have

16  money for propane.  So there wasn't no heat in the building.

17  It was like today.

18            So we gathered up all the information that -- that

19  everybody wanted.  They wanted to see what -- what we were

20  dealing with.  And we took everyone to see everything.  And

21  then they took those computers, and that's the last -- Kent

22  asked me to close that office, and that's what I did.

23       Q.   So was Mr. Ries there with Mr. Swindell and

24  Leslie's attorney?

25       A.   Yes, sir.
```

1    Q.    Okay.  And is that when Mr. Ries took the

2  computer?

3    A.    Huh?

4    Q.    Was that when Mr. Ries took the computer?

5    A.    Yes, sir.

6    Q.    Okay.  Did you give Mr. Ries any passwords that he

7  might need to open that computer?

8    A.    Yes, sir.  I've been open with Mr. Ries, whatever

9  he needs.  I mean, I don't -- Sir, I don't know how to even

10 open a computer.  I couldn't even start the computer if you

11 asked me.

12    Q.    Did Ms. Carter help you a lot with that?

13    A.    Yes, sir.

14    Q.    Okay.  Do you know -- I mean, you might not know.

15 Did that computer have QuickBooks files?

16    A.    Well, I'm sure if you say it's there, it's there.

17    Q.    I -- I don't know.  But do you know what --

18    A.    I --

19    Q.    -- QuickBooks is?

20    A.    Yes, sir, I know.  I think that's how all these

21 documents were generated, with QuickBooks.

22    Q.    Okay.  Did that computer have any -- do you --

23          Do you use email?

24    A.    A little.  Not very much.

25    Q.    Did you use email in the 2015, 2016, 2017, 2018

1  time frame?

2      A.   I -- I could have, I could not.  Most of my stuff

3  I did was text.

4      Q.   Okay.  Did you --

5           Do you know if that computer had your emails on

6  it?

7      A.   You know, I -- I think that it might, because I

8  know after Mr. Ries took my computer and then we quit using

9  the -- the people at Elk City that backed our computers up,

10 I lost all my emails, because way I understand it -- and I'm

11 not an electronic guru.  I know there -- it comes in on

12 this, and they had a deal to protect for the cyber whatever

13 it was.

14          Well, that -- my email, when they shut that

15 service off, got lost in -- in between them two deals.  I

16 didn't get emails for four or five years.  I just now

17 started getting emails about four months ago.

18     Q.   Do you --

19     A.   I had to change my address.

20     Q.   Do you remember if it was one computer that Mr.

21 Ries and the others took or were there multiple computers?

22     A.   I just think one, the main one.  The main computer

23 that had all the -- what -- where we all worked off of or

24 them girls worked off of.

25     Q.   So when you -- when you received this subpoena,

1  you called Mr. Ries and you told him what?

2      A.   I asked him what -- what I was looking at.

3           And he said, well, I'm not sure what you're

4  looking at.  He said, I didn't request it.

5           But I said, well, it's got your name on it and it

6  says it --

7           And he said, well, I'm not sure what it might

8  mean.

9           And so I didn't -- I didn't say no more about it.

10  I just left it alone.

11      Q.   Did Mr. Ries tell you to do or not to do anything

12  in response to this subpoena?

13      A.   No, sir.

14      Q.   Okay.  So let me ask again.

15           Other than calling Mr. Ries, did you take any

16  steps to see whether you might could have had some of these

17  documents in your possession?

18      A.   I'm about 99 percent sure I don't have any of

19  those documents, 'cause they picked up everything what --

20  when we did this -- when we went through the QuickBooks,

21  Kellye Fuchs had access to our computers all the time.  So

22  all the information that was gave come off of that computer,

23  and that's what Mr. -- I told Mr. Ries, anything that was

24  dealt with was dealt with that computer.  And that's what

25  they wanted to have.

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0099

```
 1              And then, like I said, you asked about Kellye

 2   Fuchs.  She had access 'cause she was always reviewing it

 3   'cause we were so busy at that time, to keep us in

 4   compliance with everyone.

 5       Q.    So do you -- do you think a -- I understand you're

 6   not a computer expert.

 7              Do you think she had what's called remote access

 8   to that computer?

 9       A.    No, I don't think so.

10       Q.    So she was there physically at --

11       A.    Oh, no.  She had remote, yes, sir.

12       Q.    Okay.

13       A.    Kellye did.  She -- She actually had a -- She

14   could type in and access what we were doing.  I guess you

15   could see it, the girls could see it when she accessed it,

16   so they know that she was there.  But --

17       Q.    Who's the girls; Ms. Fuchs and Ms. Carter?

18       A.    Yeah, basically.

19       Q.    Anyone else?

20       A.    Well, anyone that was in the management part of it

21   could see it.  I mean, I don't know that there was -- there

22   was like three or four of those girls that were there.  I

23   mean, but I -- I don't know.  I can't answer that, I guess.

24       Q.    On site?  Were they on site, the girls?

25       A.    No, there was a shop.  We had a place at Elk City
```

1  and we had a place there at the rock pit.  Then we had a

2  place there at Twitty.

3      Q.    Okay.  So I think -- I think Ms. Carter already

4  said this at the meeting of creditors.  Galmor's and G&G

5  kept its books in Quick Kept -- QuickBooks, correct?

6      A.    Yes, sir.

7      Q.    Did you keep your personal financials or books on

8  QuickBooks?

9      A.    I think they're all in that same computer on the

10  back side of that.

11      Q.    But did you -- did you keep --

12          Did you personally as a human being, Michael

13  Stephen Galmor, keep your financial records in a QuickBooks

14  file?

15      A.    It'll -- it -- in the same computer, yes, sir.

16      Q.    So the answer is yes?

17      A.    Yes, sir.

18      Q.    Okay.  So Ms. Fuchs had access to it and Ms.

19  Carter had access to it, and maybe a couple three more girls

20  that will just do what, data entry?

21      A.    Mm-hmm.

22      Q.    Yes?

23      A.    Yes, sir.

24      Q.    Okay.  Do you know what the cloud is?

25      A.    No, sir.

```
 1        Q.    Do you know if any backups of that computer or the

 2   QuickBooks files exist anywhere?

 3        A.    Dynaturn is what -- where all that went in to

 4   secure us there at Elk City.

 5        Q.    Deena?

 6        A.    Dynaturn.

 7        Q.    Is that a name of a person?

 8        A.    It's a -- No, that's a --

 9        Q.    Company?

10        A.    It's a company.  There's like six individuals that

11   operate it, and that's what they do is backup and it's out

12   of Elk City.

13        Q.    Okay.

14        A.    If there's anyone would have something like that,

15   it would be Dynaturn 'cause they were the one that -- that

16   kept track of the computer.  We -- We leased all the

17   equipment or bought the equipment from them and run it

18   through their -- their servers there.

19        Q.    So the business, Galmor's/G&G paid Dynaturn for

20   this service?

21        A.    Mm-hmm.

22        Q.    Yes?

23        A.    Yes, sir.

24        Q.    And at least in your understanding, that would

25   have included some level of backup?
```

1      A.    Yes, sir, I think that's what it was for.

2      Q.    Okay.  Do you know whether you or anyone like Ms.

3   Carter ever instructed them to preserve records or anything

4   like that?

5      A.    No, sir, I don't know that.

6      Q.    Do you know if anyone ever asked them to turn over

7   any backups or records that they might have?

8      A.    No, sir, I don't know that.

9      Q.    Did you -- I'm try -- And I'm struggling.  I'm not

10  trying to set you up, okay.  I'm trying to use non-legal

11  words here 'cause I know that you're not a lawyer.

12          But did you ever basically tell anyone who was

13  working for you to preserve records because there might be

14  litigation in the future?

15     A.    No, sir.

16     Q.    Why you didn't do that?

17     A.    Well, I mean, I assumed that we had to keep those

18  records for the government and everyone else so we keep

19  accurate records.  And that's why we went to Dynaturn is to

20  preserve those deals in case -- 'cause the books were

21  getting so big that, you know, we had to have -- we're --

22  there would be flaws all the time.  And I don't know about

23  all that.  I just know that we could call them and they

24  could repair what we were doing.  We paid them for that

25  service.

```
 1       Q.    But other than that, you never told anyone to
 2  preserve books and records because there might be
 3  litigation?
 4       A.    No, sir.
 5       Q.    Okay.  Dynaturn, they're in Elk City, Oklahoma?
 6       A.    Yes, sir.
 7       Q.    And was G&G paying them until the bankruptcy?
 8       A.    Yes, sir.  I think -- Well, I don't know when it
 9  stopped; I don't know that.
10       Q.    Okay.  Do you have any memory, and I -- I don't
11  blame you if you don't -- as to how long they might have
12  been required to preserve those records?
13       A.    I have no idea.
14       Q.    Okay.  Do you remember the name of any gentleman
15  or lady there if I wanted to call them to talk about this?
16  Do you remember that?
17       A.    No, sir.
18       Q.    Is that something that Ms. Carter might have dealt
19  with more than you or someone else?
20       A.    Yes, sir.  Deena would probably know that.
21       Q.    Okay.  Did you ever --
22             Did you personally ever destroy intentionally any
23  books and records of yourself or of Galmor's/G&G?
24       A.    No, sir.
25       Q.    Did you, to your knowledge, ever accidentally
```

1  destroy any of those records?

2      A.   I don't know how to accidentally destroy them.  I

3  never...

4      Q.   Okay.  To your knowledge, were any of the books

5  and records of you personally or of Galmor's/G&G stolen by

6  anyone?

7      A.   Not that I'm aware of.

8      Q.   To your knowledge, were any of those records ever

9  destroyed in a fire or flood or whatever, tornado?

10     A.   No, sir, not that I'm aware of.

11     Q.   Did you ever burn any computers or hard drives or

12  anything like that?

13     A.   No, sir.

14     Q.   Did you ever ask anyone --

15          So now not you, but did you ever ask anyone else,

16  your relatives or -- or anyone working for you to destroy

17  any books and records?

18     A.   No, sir.

19     Q.   Okay.  Again, not thrown them in the garbage, not

20  burned them, nothing like that?

21     A.   No, sir.

22     Q.   Okay.  So as you sit here today, to the best of

23  your knowledge, under oath, whatever records there were as

24  of bankruptcy are going to be either with Mr. Ries or were

25  taken from Twitty that day by the lawyers you mentioned?

```
 1       A.    Yes, sir.

 2       Q.    Okay.  Did you check your personal house or the

 3  lake house for whether you might have any of -- any paper

 4  files for these records in my subpoena there?

 5       A.    There's -- There's no record at the lake.  The

 6  lake was just a recreation place.  My house is at my

 7  mother's now and we never kept anything there.  I mean, my

 8  dad had an office there, but he didn't use it for none of

 9  that.

10       Q.    So is it fair to summarize that -- Well, let me --

11  let me --

12             Do you agree with me that you have not produced to

13  me a single document in response to my subpoena?

14       A.    I assume that's true if that's what you say.

15             MR. RIES:  I'm going to object.  He's already

16  testified that he produced a number of documents, in fact,

17  loaded up the back of a Suburban full of documents to Mrs.

18  Pritchard's counsel after the 341 meeting.

19             MR. RUKAVINA:  Well --

20             MR. RIES:  So he's produced, my -- my recollection

21  is it's 20, 40 boxes.  It was a significant number of boxes

22  that --

23             THE WITNESS:  Yes, sir.

24             MR. RIES:  -- we released to her.

25             THE WITNESS:  And we've -- we've loaded the --
```

1  Patrick's van plumb full.  And you had a pretty big bunch

2  for yourself.

3  **BY MR. RUKAVINA:**

4      **Q.   Now, Mr. Ries will ask you questions later.**

5      A.   Okay.

6      **Q.   So right now he's going to object and it's back to**

7  **me.  Let me ask -- Let me ask a different question.**

8          **You did not -- You personally did not send to me**

9  **or my office any documents in response to the subpoena,**

10 **correct?**

11     A.   No, sir.

12     **Q.   Okay.  Because you believed that whatever you**

13 **might have had in response to the subpoena was no longer in**

14 **your possession, correct?**

15     A.   Yes, sir.

16     **Q.   Okay.  And to the best of your knowledge sitting**

17 **here today, that's still true, you don't have any documents**

18 **in your possession in response to that subpoena?**

19     A.   No, sir.

20     **Q.   Okay.  Did you ever discuss with Mr. Ries, after**

21 **you received the subpoena, that he might have the documents**

22 **that are responsive?**

23     A.   No, sir.

24     **Q.   Okay.  Was it only that one conversation you had**

25 **with Mr. Ries about the subpoena back when you called him**

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0107

1    after you got it?

2        A.    Yes, sir.

3        Q.    Okay.  And since that time, you have not discussed

4    with Mr. Ries the subpoena?

5        A.    I hadn't talked to Mr. Ries until I got whatever

6    you all sent me the other day on a Saturday.

7        Q.    Okay.  For this deposition, right?

8        A.    Yes, sir.

9        Q.    Well, you understand that -- that -- that I

10   noticed your deposition last fall, but we all agreed to move

11   it because there was COVID issues and all that, right?

12       A.    I don't know what the reason for moving it was.  I

13   know it didn't happen.

14       Q.    Okay.  So let's go back -- And by the way, any

15   time you need a break, just tell us that you need a break.

16           Let's go back to -- to your parents now and the

17   beginning of how the family partnership and all the trust --

18   all these trusts got set up, okay.

19       A.    Okay.

20       Q.    Do you know what the Galmor Contribution Trust is

21   or was?

22       A.    I just know what the words are on -- on the label.

23       Q.    Do you know what the Galmor Family Trust was?

24       A.    I know that my dad decided he wanted to do

25   something different and come to Mr. King to build that

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0108

1  trust.  I brought him up here for that, yes, sir.

2       Q.    Okay.  So, so would you agree with me that, that

3  there around 2010 or thereafter, your dad started doing what

4  we call estate planning?  Have you heard that term before,

5  estate planning?

6       A.    Yes, sir.

7       Q.    Do you know what it means?

8       A.    Yes, sir.

9       Q.    Did your dad at some point in time start doing

10 some estate planning?

11      A.    We came up here and talk -- Well, he already

12 started that estate planning.  He -- I took him and my

13 mother to a place up in Booker, Oklahoma or somewheres one

14 day, and they met with a gentleman.  And I think that's when

15 they started that Galmor Contribution Trust or something

16 like that, sir.

17      Q.    Okay.

18      A.    And that's when -- 'Cause I drove him and my

19 mother up there, and I didn't really play a part in what

20 they were doing.  They went in the office and dealt with the

21 gentleman.  I don't know what his name was.

22            And then things sat still for a long time.  And

23 then, like I said, in '10, my dad decided he wanted to build

24 a -- that Galmor FLP, and -- and that's when, I mean, I -- I

25 knew about those things.

1      Q.    Well, did you discuss with your dad what he was

2  trying to accomplish with this estate planning?

3      A.    No, sir.

4      Q.    Okay.  You didn't discuss with him that he was

5  trying to provide for his children upon his passing?

6      A.    Well, and I -- I realize that's what he had on his

7  mind, yes, sir, I do.  But I know that he, when we got into

8  the discussion of all those things, he -- he got kind of

9  upset one day.  And I don't know what triggered him, but we

10  got up and left the first time we was up there.  And it took

11  him nearly a year to go back and re-discuss it all.

12          But he never finished fully putting the pieces in

13  either one.  He didn't finish -- That's why we've got these

14  two corporations, I guess, or two entities, because he

15  didn't -- instead of taking all the parts and putting them

16  into one, he never did finish implementing all of those

17  things.

18          But about that time he was getting sick and the

19  checks he was receiving, he didn't want to put them into --

20  and I'm not saying what he said.  I'm saying what Deena told

21  me.  He didn't want -- He said those checks were his checks

22  and they didn't belong to that trust or that relationship

23  there.

24      Q.    Okay.  Well, again, I understand you're not a

25  lawyer.  I don't -- I'm not asking you for perfection, okay.

1    A.    Yeah.

2    Q.    I'm asking you for your understanding.

3    A.    Well --

4    Q.    So, so what is your understanding as to what your

5  dad was trying to accomplish with all these trusts and

6  companies he was setting up?

7         MR. RIES:  I'm going to object.  This is

8  speculation.  He doesn't know what his dad intended.

9  BY MR. RUKAVINA:

10    Q.    Please answer the question.

11    A.    Well, he just -- I think he was planning on for --

12  for us for our family, yes, sir.

13    Q.    Okay.  And you mentioned that some of these trusts

14  weren't done or something?  What -- What's your

15  understanding of --

16    A.    I don't understand all -- I just know what I've

17  heard from all the different attorneys is that there's why

18  there are two -- instead of him taking his interest in --

19  and putting everything where it was supposed to be, it never

20  really got completed, sir.  That's what I do know.

21    Q.    It was kind of a mess, huh?

22    A.    Yes, sir.

23    Q.    Yeah.  I can tell you that just from looking at

24  it.

25         So cut through all the legal crap.  What -- What

1  do you think or do you understand your dad was trying to

2  effectuate at the end of the day by going through all this

3  estate planning?

4          MR. RIES:  I'm going --

5          THE WITNESS:  Leave something --

6          MR. RIES:  -- to object --

7          THE WITNESS:  -- for us --

8          MR. RIES:  -- again.

9          THE WITNESS:  -- kids.

10         MR. RIES:  This is speculation and hearsay both.

11 BY MR. RUKAVINA:

12     Q.   Go ahead, please.

13     A.   Leave something for all of us kids, I -- what I

14 would think.

15     Q.   Do you have an understanding as to whether he was

16 trying to leave things equally for all five kids or

17 preferring one kid to another?

18     A.   I think it was all for every one.  I think that at

19 one point he -- Shawn had some troubles and he took her

20 plumb out of everything.  And, but I think everyone was

21 aware of all of that.

22         But as far as the girls didn't know the daily

23 operations; I understand that.  And Rudas was there.  I

24 mean, it -- he just kind of left it to me to -- to deal with

25 it all, I guess.

1      Q.    But at the end of the day, you think your dad was

2  trying to provide for all five of you equally?

3           MR. SHERWOOD:  Objection.

4           THE WITNESS:  All four.

5           MR. RIES:  Objection.

6           MR. SHERWOOD:  Mischaracterizes his testimony.

7           MR. RIES:  And we're also talking about -- Let's

8  get to the best evidence.  We've got documents that talk

9  what the trust said.

10          MR. RUKAVINA:  It's my deposition, Mr. Ries.  You

11 can object.

12          MR. RIES:  And I understand it's your --

13          MR. RUKAVINA:  You can object.

14          MR. RIES:  -- deposition.  But I'm just saying

15 this -- there's better evidence than what he remembers the

16 documents might say.  We've got documents that say exactly

17 what his parents meant to do.

18          MR. SHERWOOD:  Hey, Davor.  Real quick.  I'm not

19 trying to interrupt.  Are you hearing something from the --

20 You hear anything from the computer or is that just me?

21          MR. RUKAVINA:  That needs to be mute.  Yeah, you

22 shouldn't hear anything.

23          THE WITNESS:  I don't hear anything.

24          MR. SHERWOOD:  Okay.  Maybe I'm just -- all right.

25 Sorry.  Go ahead.

```
 1              MR. RUKAVINA:  Well, if you -- it should be mute.

 2   BY MR. RUKAVINA:

 3       Q.   I think you, in answer to my question, you said

 4   all four kids.  Is that, were you referring to when he cut

 5   Shawn out?

 6       A.   Yes, sir.

 7       Q.   Okay.  Was it also your understanding that your

 8   father was going trying to provide for your mother upon his

 9   passing?

10       A.   Yes, sir.

11       Q.   Okay.  Was that something to do with these trusts

12   as well?

13       A.   Yes, sir, I'm sure.

14       Q.   Okay.  Did your father, other than the time that

15   you drove him to the -- the two times that you drove him to

16   the lawyer's offices, did your father discuss with you, I

17   guess as his oldest son, what it was that he was trying to

18   do here?

19       A.   Not necessarily.  I mean, he had his idea, 'cause

20   --

21              MR. RUKAVINA:  Hold on a second.  Hey, Maison, you

22   got to be on mute.  Make sure that anyone there is on mute.

23              MR. SHERWOOD:  Yeah, there -- there's -- there's

24   some --

25              MR. RUKAVINA:  Something.  Yeah, there's
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0114

1   something.

2          MR. SHERWOOD:  Yeah, there's one of the Zoom I can

3   see at the top doesn't have a mute button on it.

4          MR. RIES:  Okay.  So do we have somebody else

5   here?

6          MR. RUKAVINA:  Yeah, my expert witness and Traci

7   is sick with the COVID, the other daughter, the other

8   sister.

9          MR. SHERWOOD:  Yeah.  Can we -- Can we get at

10  least an announcement on the record as to who's present in

11  person and on Zoom.

12         MR. RIES:  Yeah, I mean, we've got --

13         MR. RUKAVINA:  We'll get -- we'll get --

14         MR. RIES:  We've got five people here, I don't

15  even know who they are.  And now apparently we find out

16  we've got other people that are listening to this --

17         MR. RUKAVINA:  Yeah, no problem.

18         MR. RIES:  -- that aren't here that aren't even

19  announced.

20         MR. RUKAVINA:  On here is Thomas Berghman; he's my

21  -- he's my partner.  On here is Maison Vasek.

22         MR. RIES:  Who?

23         MR. RUKAVINA:  Vasek, V-a-s-e-k.  He's my expert

24  accountant.  Remind me who Derek is.

25         MS. PRITCHARD:  Charlotte Trew.

1          **THE REPORTER:** Do you want this on the record or -

2   -

3          **MR. RIES:** Yeah, I'll --

4          **MR. RUKAVINA:** Yeah. Yeah. We'll -- We'll get

5   back to this in a moment. And then let's -- let's take --

6   let's announce who is in here.

7          **MS. PRITCHARD:** I'm Leslie Pritchard. I'm sister

8   to Steve.

9          **MR. RUKAVINA:** Just announce your name.

10         **MS. ZAIONTZ:** Shawn Zaiontz.

11         **MR. RIES:** Shawn?

12         **MS. ZAIONTZ:** S-h-a-w-n.

13         **MR. RIES:** And Dykes?

14         **MS. ZAIONTZ:** No.

15         **MR. SHERWOOD:** Zaiontz.

16         **MS. ZAIONTZ:** Z-a-i-o-n-t-z.

17         **MR. B. GALMOR:** Brandon Galmor.

18         **MS. JERNIGAN:** Laramie Jernigan.

19         **MR. RUKAVINA:** Good time for a break?

20         **MR. SHERWOOD:** Whenever.

21         **MR. RUKAVINA:** It's been an hour.

22         **MS. M. GALMOR:** Monique Galmor.

23         **MR. RUKAVINA:** If everyone's okay, let's take a

24  short break. It's been an hour and --

25         **MR. SHERWOOD:** That's good.

1       MR. RUKAVINA:  -- coffee's working.

2       VIDEOGRAPHER:  Going off the record; it's 10:37.

3       **(WHEREUPON, a recess was taken.)**

4       VIDEOGRAPHER:  Back on; it's 10:45.

5       MR. RIES:  So I'm going to go ahead and invoke the

6  rule and all these people that are not expert, expert --

7  your expert and your associate are fine, but -- and

8  obviously your client is.  But the rest of the people need

9  to be gone.

10      MR. RUKAVINA:  So you believe that the rule

11 applies in Federal Court depositions?

12      MR. RIES:  I'm going to go ahead and invoke the

13 rule.  They all need to be gone.  We don't need all these

14 people in this room.

15      MR. RUKAVINA:  Well, the deposition's already

16 started.

17      MR. RIES:  Well, you just announced who was -- I

18 didn't even realize there's however many people you have on

19 the laptop that weren't announced as well.  No one else was

20 announced at all in this deposition, so...

21      MR. RUKAVINA:  So what do you propose to do?  I

22 need to go look at the law.  I don't -- I don't think the

23 rule applies -- It does apply in state.  I don't know --

24      MR. RIES:  Well --

25      MR. RUKAVINA:  -- if it applies in federal.

1          MR. RIES:  -- who -- whoever isn't your expert or

2    your associate or your client doesn't need to be in here.

3          MR. RUKAVINA:  It's an open deposition.  There's

4    no -- There's no court order limiting the scope of who can

5    be here.

6          MR. RIES:  You can go forward if you want.  I'm

7    just telling you, that's -- I don't think they need to be

8    here.

9          MR. RUKAVINA:  Well, I'll go forward and I'll run

10   that risk.

11   BY MR. RUKAVINA:

12       Q.   Mr. Galmor, we discussed some of these trusts.  So

13   I get you don't know the details.  But, but there was at

14   least an attempt to create a contribution trust, right?

15       A.   Yes, sir.

16       Q.   Do you have any idea what the purpose of the

17   contribution trust was?

18       A.   Like you said while ago, I think it's all for --

19   for my dad's retirement for -- for our family, to -- to

20   support.  I mean to leave something for everybody to have.

21       Q.   Okay.  And then -- And then there was that Galmor

22   Family Trust, right?

23       A.   Yes, sir.

24       Q.   And is -- is your understanding of the purpose of

25   that trust the same?

```
 1        A.    Yes, sir.

 2        Q.    Do you have any understanding as to why there were

 3   these two trusts created as opposed to just one trust?

 4        A.    I think I explained that to you while ago.  I

 5   mean, I don't know why he didn't finish what he did, but he

 6   just didn't do it, sir.

 7        Q.    Were there also individual trusts created for each

 8   of the children?

 9        A.    I don't know anything about that.

10        Q.    Okay.  Do you have an understanding as to whether

11   these trusts failed for some reason?  Or -- Or what do you

12   mean that he didn't complete what he did?

13        A.    The word that I understood, he didn't -- he didn't

14   put his interest into one or the other.  They were split --

15   He started putting things into one and then he quit.  And I

16   think he put everything into the -- the contribution trust

17   when he started, if I'm -- understand that.  But then when

18   he started the FLP, he just took half of that and put them

19   in the FLP and didn't finish implementing them into the

20   other one, sir.  I don't -- I don't know.  That's just the

21   way I understood it.

22        Q.    That's all I'm asking for, just what you -- what

23   you understood.

24              Was there also a marital trust or a trust for your

25   mom?
```

 1      A.    There -- I think there -- I've heard that term,

 2  yes, sir.

 3      Q.    Okay.  Do you have any memory of what that might

 4  have been called?

 5      A.    No, sir.

 6      Q.    Okay.  Other than those three trusts, the

 7  contribution, the family, and maybe one for the marital, are

 8  you aware of any other trust that your dad might have tried

 9  to create as part of this estate planning?

10      A.    No, sir, not that I know of.

11      Q.    So you are familiar with an entity called the

12  Galmor Family Limited Partnership, right?

13      A.    Yes, sir.

14      Q.    Okay.  And you are familiar with an entity called

15  Galmor Management, L.L.C., right?

16      A.    And I think they all fell in at the -- under one

17  of the other of those.  When they went to those attorneys, I

18  remembered there's a lot of things that were done, yes, sir.

19      Q.    Well, is it your understanding that the Galmor

20  Management, L.L.C., is the general partner of the Family

21  Limited Partnership?

22      A.    I can't answer that.

23      Q.    Okay.  Do you have an understanding of who

24  controlled, until the bankruptcy, the Galmor Family Limited

25  Partnership?

1    A.    I assume it was myself and my mother 'til it --

2    'til she passed away.

3        Q.    Do you have an understanding of who the limited

4    partners in the Galmor Family Limited Partnership are?

5        A.    No, sir, I don't.

6        Q.    Cutting through all the legalese, do you believe

7    that it's the children?

8        A.    If that's what you say, I'll believe you.  I don't

9    know.  I --

10        Q.    But you -- you just have no --

11        A.    I -- I don't -- I don't understand any of that,

12    sir, at all.

13        Q.    That's -- That's a fair answer.  I'm not --

14        A.    Yeah.  I don't --

15        Q.    If you think --

16        A.    -- understand --

17        Q.    -- I'm putting words in your mouth just say I

18    don't understand.

19        A.    I don't -- I don't understand it.

20        Q.    Okay.  Did you have an understanding of why the

21    Family Limited Partnership was created?

22        A.    Like we said awhile ago, I think it was for

23    retirement for my -- for my mom and dad and for our kids --

24    our -- my siblings.

25        Q.    Okay.  Do you agree with me that at the beginning

1  of that family partnership, your dad, your mom, and you were

2  the three managers?

3       A.   If you say that's true, that's probably true.

4       Q.   You don't -- But you don't have any memory of

5  that?

6       A.   There was a lot of legal things happening, sir,

7  and there was a lot of -- it happened quick and fast and I

8  don't -- I don't -- I can't grasp it.  I don't understand

9  that.  I never have understood really.  I mean, Deena could

10 help me with it and the attorneys that drew it up would help

11 me with it, but I can't answer that.

12      Q.   Well, who -- who were the attorneys that drew it

13 up?

14      A.   Well, Mr. King was one of them and Ken Fields was

15 one of them; the Underwood Firm.

16      Q.   Okay.  So you relied on Ms. Carter to some degree

17 to help you understand all this?

18      A.   Yes, sir.

19      Q.   And you relied on the attorneys to help you

20 understand some of this?

21      A.   Yes, sir.

22      Q.   Did you rely on anyone else to help you understand

23 some of this?

24      A.   No, sir.

25      Q.   Okay.  When your dad and your mom died, who do you

1  understand was the manager of the Galmor Family Limited

2  Partnership?

3      A.   Myself.

4      Q.   Well, as the manager, did you not have some

5  understanding of who the partners in that partnership were?

6      A.   Yes, sir.

7      Q.   Okay.

8      A.   I think so.

9      Q.   Who did you understand, right or wrong, who did

10  you understand were the partners in the Galmor Family

11  Limited Partnership?

12      A.   My other three siblings.

13      Q.   Okay.  So again, not Shawn, because your dad, for

14  whatever reason, cut her out?

15      A.   Mm-hmm.

16      Q.   Yes?

17      A.   Yes, sir.

18      Q.   Okay.  Did you feel --

19          So you were a partner and the other three

20  siblings, right?

21      A.   All of us were partners, yes.

22      Q.   Did you feel like you owed any duty to that family

23  partnership since you were the manager?

24          MR. RIES:  I'm going to object to -- to the fact

25  we're talking about two different things, I think.  You're

 1  asking him who the partners are as opposed to who the

 2  beneficiaries are.  I think he's answering one question and

 3  you're asking a different question.

 4          MR. RUKAVINA:  Well, again, you get to object.

 5  Please don't give a speaking objection.  And you get to ask

 6  him questions at the end of this.

 7          I'm asking him who the partners of the limited

 8  partnership were.

 9          THE WITNESS:  And I said the four siblings.

10  BY MR. RUKAVINA:

11      Q.   That's right.

12          Did you feel like you had a duty as the manager of

13  the Family Limited Partnership to the partners?

14      A.   Yes.

15      Q.   Okay.  What did you understand your duty to be?

16      A.   To make sure that everyone knew where we were at.

17      Q.   Did you have an understanding as to any duty that

18  you had with respect to when you personally would interact

19  with that family partnership?

20      A.   No, sir.  I -- I mean -- I'm not real sure what

21  you're asking me.

22      Q.   Well, I'm -- I'm trying to use -- I'm trying to

23  use common English words, okay, so that I don't mislead you.

24          Have you heard the term self dealing ever?

25      A.   Well, I -- I've heard the term, but I don't know

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

PAPP 0124

```
 1  what it means.

 2        Q.    Have you heard the term fiduciary duty ever?

 3        A.    I've heard the term.

 4        Q.    Did you feel like back then when you were the sole

 5  manager of the family partnership that you had any fiduciary

 6  duty?

 7              MR. SHERWOOD:  I'm going to object to the extent

 8  it calls for a legal conclusion.

 9              THE WITNESS:  Well, I just think that, you know,

10  my role was to keep it going as best I could, whatever it

11  took for me to make it stay at what it was.  I mean, that's

12  what I understood from that, but...

13  BY MR. RUKAVINA:

14        Q.    And who were you trying to benefit by keeping it

15  going and making it stable?

16        A.    My family.  My mother and dad's estate.

17        Q.    And the partners, right?

18        A.    The partners, yes.

19        Q.    Partners, right.

20              Okay.  Were you also a trustee on any of these

21  trusts we discussed?

22        A.    I'm sure I was.  I mean, I don't know that.  I

23  can't answer that.

24        Q.    You never heard anyone tell you that you were a

25  trustee on any of these trusts?  Other than, I -- I don't --
```

1    I do not want to know what Mr. Sherwood told you, so just

2    forget about that.  But --

3        A.    I hadn't talked to Mr. Sherwood about any of that.

4        Q.    Okay.  Well, I don't want to know what you talked

5    about with him.

6        A.    No, I don't --

7        Q.    Did you --

8        A.    -- know --

9        Q.    Did you never have anyone tell you that you were a

10   trustee on any trust?

11       A.    Well, I'm sure that I was.  I mean, I'm not gonna

12   -- I'm not -- I said I don't understand these terms and the

13   things we're doing; I don't understand that.  But I'm sure

14   if I was a trustee, Ken Fields or Mr. Charles would have

15   told me.  I mean, 'cause when I had troubles, I dealt with

16   them direct.  I mean, what -- what do we need to do here, is

17   what I done.

18       Q.    Let me give you an example to try to explain to

19   you what I'm asking.

20             So one of the businesses that G&G eventually

21   transacted in was extracting rock from the quarry, right?

22       A.    Yes, sir.

23       Q.    Okay.  And the quarry was owned by the family

24   partnership, right?

25       A.    Yes, sir.

1       Q.    So the business was owned by G&G, but the quarry

2    was owned by the family partnership, right?

3       A.    Yes, sir.

4       Q.    Did you have any understanding as to whether you

5    had any duties to the family partnership in transacting that

6    business between the two companies?

7       A.    Well, my dad, we had a little contract signed up

8    where I'd pay him a royalty for the mineral, for what we

9    sold out of there, yes, sir.

10      Q.    We'll talk more about that maybe later.  What is

11   --

12            Do you understand what the word vest means, like

13   to vest something?

14      A.    What's that?

15      Q.    Vest, v-e-s-t.

16      A.    I don't know what that term means.

17      Q.    Okay.  Do you have an understanding of what your

18   father put into the family partnership, the Galmor Family

19   Limited Partnership when it was created?

20      A.    Well, the land and -- and those things, yes, sir,

21   and the wells he owned.

22      Q.    So some land, some wells.  Anything else?

23      A.    Not that I'm aware of.

24      Q.    Okay.  The -- Your home right now, your homestead

25   is your parents' former home, right?

1      A.    Yes, sir.

2      Q.    Did -- Do you know whether he put that home into

3  the limited partnership?

4      A.    I believe it was homesteaded and none of those

5  things happened until he passed away, maybe.  I mean it's

6  what I understood.

7      Q.    Do you believe or understood, did you understand

8  that the limited -- the Family Limited Partnership at any

9  point in time owned any part of -- of your current

10 homestead?

11     A.    I know there's a -- I made payments to one of

12 those entities after my mother gave me her part, and my

13 dad's part, I had to pay out.  So I was making payments to

14 one of those entities; I'm not sure which one it was.

15     Q.    Let me -- I'll try to make this a little easier so

16 you have something in front of you.

17     A.    Okay.

18     Q.    We'll mark the 2017 tax return for the family

19 partnership as Exhibit 2.

20         (WHEREUPON, Exhibit 2 was marked for

21 identification.)

22 BY MR. RUKAVINA:

23     Q.    Now, sir, do you remember ever signing tax returns

24 for the Family Limited Partnership?

25     A.    I'm sure if Kellye Fuchs told me to sign them, I

1  signed them, yes, sir.

2       Q.   Is she the one that --

3            Was she the one at PK & Company in Elk City that

4  would prepare these tax returns?

5       A.   Yes, sir.

6       Q.   Okay.  To your understanding, was she a licensed

7  accountant?

8       A.   Yes, sir.

9       Q.   Okay.  So if -- if we look at this and if you go

10  to the next page, page 1, this is called a depreciation

11  schedule.  Do you see that, sir?

12           Do you need -- Do you need glasses?

13      A.   Well, I -- I don't have either/or.

14           I see a prior something depreciation.  I see a --

15      Q.   Okay.

16      A.   I see at the top federal -- okay.  I gotcha, up

17  here at the top.

18      Q.   Let me ask you first, and maybe it's a question

19  for Ms. Carter or Ms. Fuchs, do you know whether the family

20  partnership ever prepared 2018 tax returns?

21      A.   No, sir, I don't know that.  I mean, I know when

22  the litigation -- when all this started, pretty much all

23  that stopped when I filed bankruptcy.

24      Q.   So as you're sitting here today, and, again, maybe

25  you're just not the right person to ask, but you don't know

1   of any tax returns filed after 2017 for the family

2   partnership, do you?

3        A.   No, sir.

4        Q.   Okay.  So you may not be able to read this.  I'm

5   going to try to read it.  And I'm going to represent to you

6   that I'm not lying, that I'm reading it correctly.  But if I

7   -- if I'm misstating it, there's two lawyers that can tell

8   you.

9             So the first line is rent house improvements.  Do

10  you have any idea what -- what that line item would have

11  referred to?  It says date acquired December 15th, 2009.

12       A.   I'm not real sure.

13       Q.   Okay.

14       A.   I'd have to go back and...

15       Q.   Was there -- Was there a property at the family

16  partnership that you all called the rent house?

17       A.   There was two or three of those properties that

18  were rent houses.

19       Q.   Okay.  Do you remember their addresses or just

20  give me a general --

21       A.   I --

22       Q.   -- idea of where they were?

23       A.   -- recall there was a trailer house and a house on

24  the Pitcock Place.

25       Q.   Those are two different houses, right?

1    A.    Yes.  There's a trailer house and a -- and a house

2  there that -- that would -- they leased.

3    **Q.    Okay.**

4    A.    And I guess that's -- that's the two that were

5  there, yes, sir.

6    **Q.    The next line item says 2005 Clayton mobile --**

7  **mobile -- mobile home.  Was that the trailer you mentioned**

8  **or is this --**

9    A.    That's the trailer.

10   **Q.    That's the trailer?  Okay.**

11   A.    Uh-huh.  I'm --

12   **Q.    And next --**

13   A.    -- sure it is.  I mean, I don't know -- I mean,

14 that would be the only reason it'd be on there.

15   **Q.    Okay.  What -- And then the next line item says**

16 **Twitty septic.  Do you have any idea what that is?  It says**

17 **acquired in May 2011.**

18   A.    I don't know that.

19   **Q.    Okay.  The next line items says improvements**

20 **Bartlett.  Do you know what that's referring to maybe?**

21   A.    No, sir.

22   **Q.    Okay.  The next line items says skirting Twitty.**

23 **Do you have any idea what -- what that is?  It's --**

24   A.    I would think that would have to do with the motor

25 -- mobile home up there.

1      Q.   Okay.  So the mobile home was on -- on some land

2  in Twitty?

3      A.   Yes, sir.

4      Q.   Okay.  Do you know if that land in Twitty was

5  owned by the family partnership?

6      A.   Yes, sir.

7      Q.   Okay.  The next line items says rent house of --

8  improvements.  That's kind of like before, you don't know

9  what that refers to other than maybe the trailer or the

10  Pitcock Place?

11     A.   No, sir, I don't know.

12     Q.   Okay.  All right.  We'll -- We'll go to other

13  stuff here.  We're not going to go through this line by

14  line, I promise you.

15          There's a -- Beginning at the bottom of that page

16  and going onto the next page there are a series of pickup

17  trucks and vehicles.

18     A.   Mm-hmm.

19     Q.   Did -- Did your dad transfer into the family

20  partnership any trucks or vehicles that someone else might

21  have owned?

22     A.   I -- I don't know that.

23     Q.   Okay.  Do you know if the family partnership ever

24  purchased its own vehicles?

25     A.   Sometimes he did, yes, sir.  I mean, I don't know

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0132

1  which ones are -- he traded and dealt with a lot of cars.

2      Q.    Well, sir, but this -- this says that as of

3  December 31, 2017, the family partnership claimed that it

4  owned these assets or --

5              So I'm -- So I'm going to ask you, based on your

6  memory or your knowledge, as of December 31, 2017, did the

7  family partnership own any vehicles or pickups or trucks?

8      A.    Well, if it's on this schedule, I have to believe

9  that they were.

10     Q.    So Ms. Fuchs would have prepared these returns,

11  right?

12     A.    Yes, sir.

13     Q.    Would anyone have helped Ms. Fuchs prepare these

14  returns?

15     A.    I don't know that.

16     Q.    Well, would you have given her records to help

17  her?

18     A.    I'm sure that Deena or the secretaries gave them.

19  But Kellye had access to what was put into the computer.

20     Q.    And you have no reason to believe that Ms. Fuchs

21  would do something not true -- that -- that's not truthful,

22  right?

23     A.    That's correct.

24     Q.    So, so if she believes that these were accurate

25  entries, you would think that she believed that in good

1  faith and not for any improper purpose?

2      A.   Yes, sir.

3      Q.   Okay.  Would you review these returns before they

4  were filed?

5      A.   No, sir, I didn't.

6      Q.   You would rely on Ms. Fuchs and the other people

7  to get it right?

8      A.   Yes, sir.

9      Q.   Okay.  So it talks about like a -- an '08 King

10  Ranch pickup that was sold in June 15 -- on June 15, 2017.

11  Do you have any memory of such a truck?

12      A.   There was -- My dad, there was a lot of trading

13  when -- I don't know.  I don't know what it means.

14      Q.   Well, sir, your -- your dad -- and I don't mean to

15  be disrespectful.  But your dad had passed away by June 15,

16  2017.

17      A.   Yeah.  Like I said, I'm not sure how everything

18  was carried in these books, sir.  I just -- If it's there,

19  I'll have to say that it's -- it's true.

20      Q.   Okay.  There's a line item here for an '09 CPS

21  belly dump trailer; date sold, January 31, 2017.  Do you

22  have any memory of anything like that?

23      A.   No.

24      Q.   Okay.  There are several vehicles that are shown

25  as having been sold in 2017.  I can go through them for you

1  if you can't read that fine print.

2          Do you have a memory of any vehicles owned by the

3  family partnership sold in 2017?

4      A.   Well, if they're on this record, there'd be

5  records to show that it happened in the computer.

6      Q.   Okay.  Do you have any --

7          But other than that, you have no personal memory

8  of that?

9      A.   No, sir.

10     Q.   Okay.  Do you have any personal memory of any sale

11 proceeds being paid to the family partnership for -- for

12 selling any trucks?

13     A.   Sir, if it's not in here, I mean...

14     Q.   Okay.  Let me give you another example here, so --

15 so -- I'm on -- on line 54, it says '06 Ford dually; date

16 acquired, July 17, 2008, and it does not have a date sold.

17 Do you have any knowledge or memory of an '06 Ford dually?

18     A.   It's still there.

19     Q.   Where is it, sir?

20     A.   It's there at my mother's.

21     Q.   Okay.  That would be your property?

22     A.   Yeah.  Well, it's...

23     Q.   And, and if it's -- And if it's true that it's

24 family partnership property as opposed to your own property,

25 would you have any problem with surrendering that to the

```
 1   family partnership?

 2        A.   No, sir.

 3        Q.   Who do you --

 4             Do you have any current belief as to who owns that

 5   '06 Ford dually?  Any belief?  I mean, do you personally

 6   have any belief just from your memory?

 7        A.   No, I -- I think they're both -- both those

 8   vehicles are still sitting there.

 9        Q.   What's the other vehicle you're talking about?

10        A.   Well, there's two of those one tons just --

11        Q.   Okay.

12        A.   -- they're sitting there.

13        Q.   Okay.  What about a 2010 white Jeep, do -- do you

14   --

15        A.   It's sitting in the carport.

16        Q.   So that -- So that vehicle exists?

17        A.   Yes, sir.

18        Q.   Do you have any present understanding as to who

19   owns that vehicle?

20        A.   It shows here it belongs to my -- my family, so...

21        Q.   Well --

22        A.   I mean --

23        Q.   But other than -- other than this document, do you

24   have any understanding as to who owns that vehicle?

25        A.   Well, I know it belongs to --
```

1    Q.    To the family partnership?

2    A.    Family partnership.

3    Q.    Okay.  Then, then I am going to go through these

4 one by one.  But I'm going to go through them quickly, okay.

5 But we can certainly slow it down if you need to.

6         It lists a '97 International grain truck.  Do you

7 know what that vehicle is and whether it still exists?

8    A.    It's there at the house, yes, sir.

9    Q.    And the '08 King Range pickup that it shows as

10 being sold in June 2017, you have no memory of what happened

11 -- whether that sale even happened and no memory of where

12 the proceeds went?

13   A.    No, I -- I can't answer that.

14   Q.    You just have no memory, is that why you can't

15 answer?

16   A.    Well, I, I mean, I don't -- there's a lot of

17 things going on.  I -- I can't answer that.  I don't -- I

18 can't tell you with a straight face what happened.

19   Q.    If you cannot give me an answer that you believe

20 is truthful, then just say I don't answer -- I can't answer,

21 that's fine.

22        All right.  The -- The next item is '01 Ford one

23 ton pickup.  Is that the -- the second dually that you just

24 mentioned?

25   A.    I'm sure that is.

1     Q.    Okay.  Is that still at -- at the mother's house?

2     A.    Yes.

3     Q.    Okay.  There's a GMC grain truck.  It doesn't give

4  me a year, but it looks like it's very cheap, not worth a

5  lot.  Do you know what that is?

6     A.    No, I really I can't tell you.  There's -- There's

7  three or four of those trucks around there, little grain

8  boxes that were bought.  They're -- They're just around the

9  house there.

10    Q.    What about there's a listing here for a '91 Ford

11 fuel truck.  Do you know what that vehicle is?

12    A.    He had two fuel trucks, I mean, and they're still

13 around there somewheres, yes, sir.

14    Q.    Okay.  The next category talks about buildings.

15 There's a line item for a cone, c-o-n-e, style grain bins.

16 Do you have any idea what that is?

17    A.    Yes, sir.

18    Q.    Okay.  Do those still exist?

19    A.    Yes, sir.

20    Q.    Where?  Where is that?

21    A.    They're there at Twitty.

22    Q.    Okay.  Twitty.

23    A.    Mm-hmm.

24    Q.    And I'm sorry, sir.  I might have asked you this

25 before.  What land is that in Twitty?

1    A.    I don't know.  It's on -- We call it the Pitcock.

2  I mean, it's -- they're sitting on Deena Carter's property

3  right now.

4    **Q.    Okay.  Is there any reason why they're sitting on**

5  **Ms. Carter's property?**

6    A.    When they sold the Gin Yard, we moved all the

7  property off of that, not knowing who owned it or where it

8  was going.  So we moved everything that was of value off of

9  it.

10   **Q.    Okay.  And that's -- that's just temporarily being**

11 **stored by Ms. Carter until the courts figure it out?**

12   A.    We just moved it across the road there, yes, sir.

13   **Q.    And, and Mr. Ries authorized you and asked you to**

14 **do that, right?**

15   A.    No, sir.

16   **Q.    Okay.  So, so Mr. Ries sold the Gin Yard, right?**

17   A.    He sold the Gin Yard.

18   **Q.    Okay.  So who got the idea to -- to move stuff off**

19 **the Gin Yard?  Who told you --**

20   A.    It was my -- I mean, I was under the understanding

21 that anything that was -- that wasn't affixed to the Gin

22 Yard and that might be part of the -- my family or part of -

23 - Mr. Weatherly had power up, there's a bunch of things that

24 were there, and we just moved the stuff to secure them.

25   **Q.    Okay.  And you moved it to Ms. Carter's property**

1    'cause it's just very convenient to --

2       A.    Yes, sir.  It's right across the street there.

3       Q.    Okay.  And since that -- Since that was moved off

4    the Gin Yard, has any of that property been transferred or

5    sold?

6       A.    No, sir.

7       Q.    None of it's been destroyed or trashed?

8       A.    No, sir.

9       Q.    Okay.  The next line item, sir, says barn Bradley

10   land.  Do you know what that is?

11      A.    I have no idea.

12      Q.    Okay.  Then there's a line item for grain bins.

13   That sounds like it's the same that we've already discussed,

14   right?

15      A.    I --

16      Q.    Or you don't -- you don't recall?

17      A.    I don't know what that means even.

18      Q.    The next line item is mobile home 592.  Do you

19   have any idea what that's referring to?

20      A.    It's the same one we talked about earlier.

21      Q.    The next category here talks about improvements.

22   It talks about a barn from 1990 and then stock pens from '01

23   and '03.  Do you have any idea what that's referring to?

24      A.    No, sir.

25      Q.    Okay.  What -- help me.  I'm -- I'm a city guy.

1  What is a stock pen?

2      A.   A what?

3      Q.   A stock pen.

4      A.   That's where you pen your animals.

5      Q.   Animals?

6      A.   Cattle.

7      Q.   Cattle?

8      A.   Yes, sir.

9      Q.   Did, to your knowledge, did -- did you or Galmor's

10 or any entity that you know of own any stock pens?

11     A.   My dad.  We built them on all those properties.

12     Q.   Okay.  Are -- Is a stock pen fixed to the property

13 or is it moveable?

14     A.   No, sir, they're built in the ground.

15     Q.   Okay.  So whatever property that's on, they're

16 going to stay on?

17     A.   Yes, sir.

18     Q.   Okay.  Gotcha.

19          Is -- Is that the same thing as a cattle pen?

20     A.   I --

21     Q.   Do you --

22     A.   Sir, I don't know.

23     Q.   Okay.  'Cause it talks about cattle pens acquired

24 in 2006, do you have any knowledge about that?

25     A.   No, sir.

1    Q.    Okay.  All right.  Now let's move on to land.  It

2    talks about the Gin Yard land.

3    A.    Where is this on --

4    Q.    Sir, now it's -- it -- on the top -- I'm sorry.

5    On the top here it says page 3, on the top right.

6    A.    Top of page 3?

7    Q.    Yeah.  And then on the bottom you'll see category

8    land.

9    A.    Okay.

10   Q.    Do you see it?

11          MR. SHERWOOD:  Yep.

12          THE WITNESS:  Mm-hmm.

13   BY MR. RUKAVINA:

14   Q.    Gin Yard, it says date sold January 2017.  Do you

15   know what that's referring to?

16   A.    Yes, sir.

17   Q.    Okay.  What is that referring to?

18   A.    Well, when things started getting tight with my

19   mom and them, we was running short of money, I bought the

20   Gin Yard back and put money in my momma's checking account

21   so she could pay her bills.

22   Q.    Okay.  So you bought --

23          So you're the one who bought that Gin Yard?

24   A.    Yes, sir.

25   Q.    I got it.  Okay.

1          So you agree that it was owned by the family

2   partnership, but then you bought it out from --

3      A.    My mother was aware of the transaction.

4      Q.    I understand.

5          Do you remember how much you paid for that?

6      A.    25,000, maybe.  Whatever -- Whatever was gave for

7   it.  I -- I give them their money back.

8      Q.    What do you mean, whatever was -- was gave for it?

9      A.    Whatever my dad and mother bought -- purchased

10  them for, I matched those purchases back.

11     Q.    Okay.  Did you try to look at what the fair market

12  value was or it was just whatever the original purchase was?

13     A.    Well, like I said while ago, that those numbers

14  could be whatever anybody wanted them to be, just if you

15  wanted it.  I mean, I told my mother, I said, I'll do this

16  if -- and that's what we done.

17     Q.    Who did you pay the $25,000 to?

18     A.    To whoever the -- owned the property.

19     Q.    Was it to the family partnership?

20     A.    I -- I don't know that.  I know I went and signed

21  the papers and that's that.

22     Q.    I had thought that we discussed a few minutes ago

23  that Mr. Ries also sold the Gin Yard.  Were there two gin --

24     A.    It was in my possession when I filed bankruptcy.

25     Q.    Okay.  So there was one, one thing called the Gin

1  Yard?

2      A.   Yes, sir.

3      Q.   Okay. I see.  I see.

4           So, so because you owned it, to your

5  understanding, Mr. Ries got it because he's the trustee, and

6  then he sold it?  I understand.

7           MR. SHERWOOD:  Be sure and answer out loud.

8           THE WITNESS:  Yes, sir.

9  BY MR. RUKAVINA:

10     Q.   Okay.  The next line item says land Emeritt.  Do

11 you know what that's referring to?

12     A.   Yeah, that's Section 5.

13     Q.   Section 5.

14          And, and please understand that you guys use

15 terminology for land, the Gin Yard, the mulberry, but I have

16 no idea what that is.

17     A.   I understand.

18     Q.   So I'm not trying to be a smartass asking these

19 questions.

20     A.   I understand.

21     Q.   And to your understanding, that land -- or do you

22 have an understanding as to who owned that land?

23     A.   It's Galmor, the family limited partners, I

24 assume.

25     Q.   Do you understand whether that's part of the land

1   that your dad originally transferred to the family

2   partnership as part of funding it?

3        A.   Yes, sir, I remember that.

4        Q.   Is -- Are there any improvements or were there any

5   improvements on that Emeritt land?

6        A.   Yes, sir.

7        Q.   Okay.   What was on there?   Or what's on there?

8        A.   Well, I built a -- about $100,000 worth of pens on

9   it.  And I built two barns.

10       Q.   Were those the barns and pens we were talking

11  about a few minutes ago?   Different?

12       A.   Different.

13       Q.   You're -- You're shaking your head, so --

14       A.   No, sir.

15       Q.   Okay.

16       A.   Different.

17       Q.   When you say you built $100,000 of pens and two

18  bars, what do you mean by you or -- or me?

19       A.   Galmor, slash, G&G Steam Service.  My dad asked us

20  to go and build those pens on those properties.

21       Q.   Got it.   Okay.

22       A.   'Cause the -- we were operating from town, then we

23  moved to the gin -- out to Twitty.  That's where we put all

24  of our cattle when we received them and shipped them.

25       Q.   Okay.   So the family partnership owned the land,

1  but Galmor's and G&G paid for the pens and --

2     A.   We built the pens.  My dad was supposed to pay us.

3  We built the pens for him.

4     Q.   So who paid for the pens and the barns?

5     A.   I paid for them out of -- G&G Steam Service paid

6  for them.

7     Q.   G&G?

8     A.   Yes, sir.

9     Q.   So, so help me understand.

10         So did Galmor's/G&G also have cattle or livestock?

11    A.   No, sir.  We were helping my father.

12    Q.   I'm sorry?

13    A.   We were helping my father.

14    Q.   I got it.  So your -- your dad owned some

15 livestock -- okay.  I think I understand.

16         Did -- And again, please understand I'm not being

17 a smartass.  I'm a city boy.

18         Did you also own any cattle or livestock?

19    A.   Yes, sir.

20    Q.   Okay.  Did you ever use that Emeritt land for your

21 personal cattle or livestock?

22    A.   I may have, yes, sir.

23    Q.   To graze or other things?

24    A.   Yes, sir.

25    Q.   Did you ever pay the family partnership for that?

1    A.    No, sir.

2    **Q.    The next --**

3    A.    But -- Let me finish my statement.

4    **Q.    I'm sorry.  I'm sorry.**

5    A.    But my mother had cattle on me in Oklahoma.  And

6    these girls know about it 'cause they went and took pictures

7    of them.  But at one point in this whole operation, I had a

8    kid named Hayden Duncan.  And for some reason he put cattle

9    where they shouldn't have been.  And my mother's cattle were

10   on me or the FLP's cattle on me and my cattle were -- it

11   just depend on how they divvied the cattle up.  But they

12   were all branded different.  My brands are in the -- the rib

13   cage and my dad's brands on the hip.

14   **Q.    So can I conclude that back then, you and your dad**

15   **and your mom were so tight that it didn't really matter; you**

16   **all were helping each other?**

17   A.    We knew the headcount and whose cattle belonged to

18   who.

19   **Q.    Well, in -- in the business of cattle raising, do**

20   **you typically pay the owner of land for grazing?**

21   A.    Or you trade.

22   **Q.    The next -- The next line items says Bradley land,**

23   **603 acres.  Which -- which land -- Do you know what land**

24   **that is?**

25   A.    Yes, sir.

1    Q.   What -- What land is that, sir?

2    A.   I can't give you the section.  It's east of town,

3  a half -- about a mile and a half.

4    Q.   And did you understand that the family partnership

5  owned that land?

6    A.   Yes, sir.

7    Q.   Was there any improvements on that?

8    A.   My dad built a fence when he first started.  Then

9  I went in and put some -- had city water, and I put some

10  tanks in for him to get water to the cattle.

11    Q.   Okay. So was that land used for grazing?

12    A.   Yes, sir.

13    Q.   Okay.  Anything other than grazing?  I mean like

14  slaughter?  Again, I don't know the terminology.  Was it

15  just grazing?

16    A.   Just grazing.

17    Q.   Okay.  Did you have any of your personal cattle on

18  that land ever?

19    A.   I'm sure at one time I did, but not -- if there

20  were cattle there, there were cattle other places.  I mean,

21  I didn't just use it for myself.

22    Q.   Let me ask you this.  Did you ever pay the Family

23  Limited Partnership ever anything for using its land to

24  graze your personal cattle?

25    A.   No, sir.

1    Q.   The next line item says land S of Jack's house.

2  I'm taking it S means south of Jack's hose.

3    A.   Yes, sir.

4    Q.   Do -- Do you know what land that is?

5    A.   Yes, sir.

6    Q.   What -- what is -- What was that land, sir?

7    A.   It was part of the Tindal properties.

8    Q.   Okay.

9    A.   And my dad sold that property to Jack Ledford, and

10  he didn't have the clear title to sell that property.  That

11  property, when they come in and surveyed it, the property

12  went right through the middle of Jack's house.  So my dad

13  did some trading.

14        Then after my dad passed away, Mr. Tindal came

15  back in and claimed ownership of that property.  I

16  reimbursed Mr. Ledford his money for that land.

17    Q.   Did you reimburse it out of the family partnership

18  or out of G&G or somewhere else?

19    A.   It was out of the family partners.  And my mother

20  was aware, I -- 'cause I told her.  I said, you know, we've

21  got this -- this is coming here now, so we're going to have

22  to repay Jack his money.

23    Q.   Do you remember how much you repaid him?

24    A.   Whatever's in this list right here.  I think there

25  was two -- There may be two transactions in there, too.

1    Q.    Okay.  'Cause I was going to ask, this says date

2    sold January 1, 2017.  Do you know what that's referring to?

3    Does --

4    A.    I think that's when we had to correct the...

5    Q.    Okay.  Okay.  What -- What land was the rock

6    quarry on?

7    A.    Six and five.

8    Q.    Okay.  Was that -- That's the land Emeritt that we

9    looked at earlier?

10    A.    Yes, sir.

11    Q.    Okay.  Gotcha.  Okay.

12          How -- So that's a whole section, 640 acres?

13    A.    Yes, sir.

14    Q.    Okay.  Now, the next many line items talk about

15    machinery and equipment.

16          Did the family partnership, to your understanding,

17    own a -- the machinery and equipment generally listed on

18    here?

19    A.    I'm sure they do if it's on that list, sir.

20    Q.    Okay.  For example -- I'll look at the bigger

21    priced items.  I won't bore you with the little stuff.

22          There's an entry for Kubota four-wheel tractor.

23    Do you know what that is?

24    A.    Yeah.  My dad bought and sold a lot of Kubota

25    tractors.

1    Q.    Okay.  But do you know what a Kubota four-wheel

2    tractor purchased in August 2006, do you know what -- what

3    that one in particular was?

4    A.    Not knowing what -- what was bought, I can't say

5    what it is, no, sir.

6    Q.    Okay.  Here -- Do you know of an existing Kubota

7    four-wheel drive tractor anywhere on your property or other

8    properties that this might be?

9    A.    Well, there's -- there's Kubota tractors there,

10   but I own some and -- and, I mean, I'm not sure what this

11   tractor's listed.  I'd have to see the serial number to know

12   what we've got.

13   Q.    Okay.  When you say that there's some tractors

14   there, where are you talking about?

15   A.    Well, my son's got some tractors there.  And that

16   Spanish boy that works for us, he's got some tractors there.

17   There's a lot of equipment there.

18   Q.    Any on your personal property, like the mother's

19   house?

20   A.    Yes.

21   Q.    Okay.  So we'd have to look at the serial number?

22   A.    Yes.

23   Q.    Okay.  Gotcha.

24        There's line item for case tracking hoe, line 20.

25   Do you know what that is?

```
 1        A.    Yeah, I know where that is.

 2        Q.    Where is that?

 3        A.    Sitting on Barker Productions -- or Rodney

 4  Barker's homestead property north of the Pitcock.

 5        Q.    Do you know why it's there?

 6        A.    Rodney and my dad were partners on that tractor.

 7  And we cleaned the bottom out with it, the Pitcock we call

 8  it, and then they moved it up to Rodney's property, was

 9  cleaning that property up.  And then I haven't saw that

10  tractor in ten years, but I'm -- I would assume that it's

11  still sitting right where they left it.

12        Q.    Okay.  It talks about a swather, s-w-a-t-h-e-r.

13  What is -- what is a -- How do you pronounce that?  And what

14  is that?

15        A.    Well, it's a -- it's what you cut hay with.

16        Q.    Okay.

17        A.    Yeah.

18        Q.    Do you recall anything like that being sold in

19  January 2017?

20        A.    Not really.

21        Q.    Okay.  Nearer to the bottom, it talks about a 1400

22  Steiger tractor.  Do you know what that's referring to?

23        A.    Yeah.  Dad had a Steiger, yes, sir.

24        Q.    And it says that it was sold in January 2017.  Do

25  you know anything about that?
```

1    A.    Yes, sir.  We sold it to IronPlanet, and the

2  proceeds -- we sold it and I think maybe that swather, maybe

3  that's what you're seeing right there when we say that.  I

4  mean, 'cause we sold some equipment to generate some money.

5    **Q.    Do you remember about how much you sold that**

6  **equipment for?**

7    A.    No, sir, I have no idea.

8    **Q.    Do you know what happened to that money, the --**

9  **the proceeds?**

10    A.    They went into my mom's account.  And I think then

11  she owed me some money and I -- I paid the money to some of

12  my debt.

13    **Q.    Okay.  Was it like just a few thousand dollars or**

14  **was it a few tens of thousands or --**

15    A.    Sir, I can't tell you what that was.  I don't

16  know.  It was a pretty -- pretty weak sale.

17    **Q.    Okay.  On the next page, there's several tractors**

18  **again, a JD 4960, a JD 9300, a JD 9600 combine.  Do you know**

19  **what those three or any of those are?**

20    A.    I know the combine is sitting there at the -- on -

21  - on a piece of property by Bob Weatherly's.  And I'm not --

22  I'm not sure if the tractor's -- I'm not sure what's there.

23  No, sir, I don't know that.

24    **Q.    Okay.  Do you know whether any of those three**

25  **tractors are on property that you or Ms. Carter own?**

```
 1        A.   I don't think so.

 2        Q.   Okay.  Do you remember the family partnership ever

 3   owning a JD 4960 tractor?

 4        A.   Yeah, my brother and my dad bought one.

 5        Q.   Do you know whatever happened to that tractor?

 6        A.   I'm not sure.  I talked to Rudas the other day.

 7   He -- I think it's sitting there at Weatherly's maybe.  But

 8   he's claiming that tractor his self.  I mean, I don't know

 9   that.  I just know what he said.

10        Q.   And I apologize.  What is Weatherly's?

11        A.   Sir?

12        Q.   What is Weatherly's?

13        A.   Oh, it's a -- just a piece of property down from

14   the flats or from Section 5.

15        Q.   Is Section 5 the flats?

16        A.   Both of them Section 4 and 5 are the flats.

17        Q.   That helps a lot.

18             Who -- Do you know who owns the -- that Weatherly

19   property?

20        A.   Quincy Weatherly now.  Bob passed away, I think.

21        Q.   Okay.  The JD 93000 -- I'm sorry.  The JD9300

22   tractor, do you -- do you know what that is or was?

23        A.   Well, we had a -- a farm tractor, a big tractor.

24   But the -- the transmission's out of it and I'm not sure

25   where it's at.  I mean, they -- they were using it to farm
```

1  with and the -- the transmission went out of it.

2      Q.   Who was using it to farm with?

3      A.   We leased it out to Mr. Weatherly.

4      Q.   Did Mr. Weatherly pay any -- anything in return?

5      A.   No.  He actually -- we bartered some work.  He put

6  some wheat in for -- in the flats for us, for some grazing,

7  and they used our tractor and he furnished the -- the wheat

8  and the fertilizer to install it.  And we used it all three

9  places.

10     Q.   Did the family partnership ever own its own

11 livestock or cattle, do you know?

12     A.   Lots of them, yes, sir.

13     Q.   Okay.  So did the family partnership also graze

14 its cattle on the flats and other lands?

15     A.   They didn't use the flats as much as used the

16 grass.  Most of the money that they got, we went through a -

17 - a crossroads out of San Anton and we brought -- we planted

18 wheat and we'd run cattle on it in the wintertime.  And then

19 there at the last, Mr. Weatherly and -- and Glenda

20 Weatherly, they ran cattle on it.  But all the money that --

21 that was generated with that was deposited straight into the

22 Happy State Bank.

23     Q.   'Cause they had a lien on that property?

24     A.   They didn't have a lien on it.  The -- The money

25 that was generated off those properties belonged to the

1  family.  So the -- those moneys, I had them deposit them

2  straight into the Galmor account there at Happy State Bank.

3      Q.   I gotcha.  The -- The Family Limited Partnership

4  account?

5      A.   Yeah.  The money that was generated off those

6  properties went straight to the -- to that checking account.

7      Q.   So you think that that, that JD 9300 tractor might

8  still be in existence somewhere?

9      A.   Somewheres, yeah.  I'll have to look and see about

10 that.

11     Q.   What about the JD 9600 combine from 1991?

12     A.   It's sitting on Mr. Weatherly's.

13     Q.   That's the one you mentioned is over --

14     A.   Yes, sir.

15     Q.   -- at Mr. Weatherly's?  Okay.

16          Was that tractor ever sold or bartered to Mr.

17 Weatherly?

18     A.   No, sir.

19     Q.   Okay.  So if -- if it was owned by the family

20 partnership, should it still be owned by the family

21 partnership, to the best of your knowledge?

22     A.   Yes, sir.

23     Q.   There are several -- several entries here, sir,

24 for irrigation system, big dollars; one for 58,000, one for

25 78,000, one for 58,000.  Do you have any idea what these

1  entries for irrigation system and irrigation equipment refer

2  to?

3      A.   You'd have to go back and see what the checks were

4  written for.  Item -- I mean, I'm sure -- it takes a lot to

5  operate those pens.  I don't know what actually happened.  I

6  don't know what those charges are.  I don't know that.

7      Q.   Would they have been irrigations systems and

8  equipment for land owned by the family partnership?

9      A.   Yes, sir.

10     Q.   Okay.  Which of that land has some pretty good

11  irrigation?

12     A.   Section 4.

13     Q.   Section 4, okay.

14          Do you have any idea when it says irrigation

15  system as to whether it's something that's buried underneath

16  the ground or -- or is it one of those big above ground ones

17  that moves around and -- and waters?

18     A.   Sir, I told you I have no idea.  It -- there's --

19     Q.   Fair.

20     A.   All the irrigation is in Section 4.  So if it's

21  got some of the better irrigation, that's the only

22  irrigation that any of this family ever owned is right there

23  on that Section 4.

24     Q.   Understood.

25          And that was only used to grow wheat for cattle

1  grazing?

2      A.   Wheat and hay grazing, yes.

3      Q.   But only -- but -- But only for grazing?  Never to

4  sell to third parties?  Like did the -- did the -- did the

5  wheat ever get cut and sold off the property or was it

6  always just for the cattle?

7      A.   Just for the cattle.  I think one time we -- my

8  dad and I cut some for hay when it got the bindweed in it.

9  But the rest of the time, that's how we operated; we planted

10 wheat and ran gang cattle on them.

11     Q.   There's a -- There's an entry here for a

12 Caterpillar CH85C, apparently sold in January 2017.  Do you

13 know what -- what that -- what that Caterpillar was?

14     A.   That was that same with that sale for the

15 IronPlanet.

16     Q.   The Iron Planning (sic)?

17     A.   That's who sold it all.

18     Q.   Okay.  There's an entry on the next page -- well,

19 actually, it's on page 6 now.  It says three Harrows, also

20 sold January 2017.  Would that have been part of that sale?

21     A.   Yes, sir, I'm sure.

22     Q.   And I think you mentioned before that -- that the

23 family partnership did -- did that sale back then because it

24 needed some money?

25     A.   Yes, sir.

1    Q.   Okay.  And it used the proceeds to pay your mom

2  and then your mom paid you what -- what she owed you?

3    A.   I'm not sure how it cycled through, but we -- we

4  were shuffling money to stay afloat, yes, sir.

5    Q.   Who was needing to stay afloat?

6    A.   We were trying to pay our bills for the FLP and

7  even my personal self, 'cause this was about the time all of

8  the rock pits and everything, we were all having trouble

9  generating money.

10   Q.   And then the -- the final category there talks

11 about livestock, bulls, buffalo, et cetera, cows; dates

12 sold, various.

13         So did there come a time when the family

14 partnership no longer had any livestock of its own?

15   A.   No, sir.  They had livestock up until this

16 liquidation deal.

17   Q.   Okay.  Approximately --

18   A.   But I -- I can't answer those questions on that,

19 'cause there's -- there's -- you see how many head of cattle

20 went through there.

21   Q.   Sure.  Sure.

22   A.   And it's pretty hard to deal with.

23   Q.   Well, I'm far more interested in what happened in

24 2019 when the Chapter 7 happened.

25         Can you give me an estimate -- No one's going to

1 hold you to precision. Can you give me an estimate as to

2 what kind or number of livestock the family partnership

3 owned in 2019?

4     A. I don't think they owned anything in '19.

5     Q. Okay. What about in 2018?

6     A. I'd have to go back and look when the last sale

7 events come on these things, sir. I -- I don't know. I

8 can't answer that.

9     Q. Okay. So did there come a time when the family

10 partnership no longer owned livestock?

11     A. Yes, sir.

12     Q. Okay. Why? Why did it no longer own livestock?

13     A. We were spending what we could to keep the money

14 coming in to pay our bills.

15     Q. So what happens with livestock? I guess they're

16 sold for slaughter or --

17     A. They were sold and then they were -- the moneys

18 are all put -- they should all be -- all these transactions

19 are there, even with the crossroad transactions. Anything

20 that was there went right back to my mom and dad's estate or

21 whatever the FLP was, sir.

22     Q. So whenever the family partnership sold its

23 livestock in whatever year that was, the money should have

24 gone, it'll be in the books, records of the family

25 partnership?

NAEGELI DEPOSITION & TRIAL    CELEBRATING 40 YEARS IN BUSINESS    (800)528-3335 NAEGELIUSA.COM

PAPP 0160

1     A.    Yes, sir, should -- should reflect that.

2     Q.    Do you recall, was it one bulk sale of whatever

3  was left at some point?  Or did you just slowly sell it off

4  into due course of a business?

5     A.    I -- I can't answer that, 'cause when the cattle

6  get weak or whatever happens, you just move things as they

7  go.  I -- I can't answer that.

8     Q.    Did you have someone in charge for the family

9  partnership of the cattle operation, a ranch hand or

10 someone, or were you personally handling it?

11    A.    If you look back at the books, whenever we let

12 Hayden Duncan go, 'cause we couldn't afford to pay him and

13 Bob O'Gorman anymore, we started doing it ourselves.  So --

14    Q.    So let -- let's talk about the family partnership

15 at a high level here.  So obviously it had some revenue and

16 obviously it had some expenses, right?

17    A.    Yes, sir.

18    Q.    Do you know what -- what positive cash flow means?

19 Do you know what that term means?

20    A.    Yes, sir.

21    Q.    Okay.  Was the family partnership ever able to

22 positively cash flow?

23    A.    I don't think it ever was real positive.  Kellye

24 Fuchs told that we were asset rich and cash poor is the term

25 she used.

1    Q.   Okay.  So the revenue that the family partnership

2  had there in 2016, 2017, 2018, I'd like to talk about the

3  types of revenue it had.

4         Did it have revenue from the rental of some of

5  these properties that we mentioned?

6    A.   Yes, sir.

7    Q.   So third parties would pay rent to the partnership

8  for the trailer or the house or whatever?

9    A.   Yes, sir.

10   Q.   To the best of your understanding, was -- were

11 those rent checks always deposited into the family

12 partnership?

13   A.   Yes, sir.

14   Q.   Okay.  What other kinds of revenue did -- did the

15 family partnership have?  Did it have oil and gas revenue?

16   A.   The oil and gas wells went to negative.  There

17 wasn't any -- that's why we got in trouble with the land

18 payments and stuff, 'cause my dad had all these things on

19 long-term payments and we were running short of money to

20 make the payments.  And we still had the rock pit and we

21 were putting some money up until '18, when we shut the rock

22 pits down that the revenue -- all the rock pit's money was

23 put on a dot matrix.  And every load that came out of there

24 reflected what came out of that pit.  And those were one of

25 the ways we kept the thing going was by paying, you know,

1  running for the -- running that rock pit.

2      Q.   Well, let me break it down a little bit.  So -- So

3  the family partnership was receiving oil and gas revenue,

4  but that went down because of the fluctuation in the price

5  of oil?

6      A.   Yes, sir.

7      Q.   Okay.  Did -- Do you know whether the family

8  partnership ever owned any wells itself or did it have

9  leases or working or override interest?  What did it own; do

10 you know?

11     A.   To the best of my knowledge, my mom and dad owned

12 50 percent of Barker Production.

13     Q.   Is that a company?

14     A.   That's a production company.  And they owned half

15 the mineral rights, 50/50 partners in those mineral leases.

16          And then they started a Shamrock Limited Partners,

17 which we own 25 percent of and Rodney Barker and Martha

18 Barker own 25 percent of.  Then a guy named Jason Bradley

19 out of Dallas owned 50 percent of.  So, but I think all

20 those mineral interests were listed in the Galmor FLP and

21 the...

22     Q.   Yeah.  Do you know whether in this time frame,

23 '16, '17, and '18, there were any -- any charges against

24 these mineral interests, jibs or anything like that?  And

25 any plugging liabilities?  Any -- Any extraordinary charges

1  **against the mineral interests?**

2       A.   I know right before we had that -- the mediation

3  and I let Leslie have the management position, that the

4  bills I was getting from Barker, the last one I paid was

5  $22,000 to stay in the Barker Production and the -- and the

6  Shamrock Limited Partners.  They were going into negative.

7  And the -- the daily operations and the cost for the meters

8  and all that, I mean, I just go by what Annie Barker told

9  me, and she would send me a bill.

10           And I made -- if there's any -- it should reflect

11 in the checkbook where I paid them two different draws for

12 their money to keep operating those wells.

13      **Q.   Do you have an understanding today as to whether**

14 **the family partnership should still own its wells and -- and**

15 **mineral interests?**

16      A.   You'd have to ask Leslie, she runs that part of it

17 now and I don't know.  I, I mean, and whenever that

18 transaction happened, I stepped back, and she was the

19 manager.  And whatever happened with that, that's her

20 business; I don't know.

21      **Q.   So let me ask you about that.**

22           **After you stepped back and it became her business,**

23 **did you receive any royalty or other checks after that time?**

24      A.   If I received anything with my mom and dad's name

25 on it, it was put in a Happy State Bank checking account.

1    Q.    Okay.  Who owned that Happy State Bank checking

2  account?

3    A.    My -- Galmor FLP and the contribution trust.

4    Q.    Two different accounts or one account?

5    A.    I think there's two different accounts there.

6    Q.    So after you stepped back and Leslie took over, do

7  you remember whether you received any checks or moneys

8  belonging to the family partnership after Leslie left --

9  after you stepped back is what I'm asking.

10    A.    If I received any money at all, sir, it went in

11  that checking account.

12    Q.    Well, again --

13    A.    But I don't remember receiving any money.

14    Q.    That -- That was my question.  You don't, sitting

15  here today, you don't remember --

16    A.    I don't remember receiving any money.  If I did

17  receive that money, it went into my mom and dad's account.

18    Q.    Okay.  Two -- One of the two checking accounts at

19  Happy State Bank?

20    A.    It went in the Galmor FLP if I had to deposit it,

21  'cause Leslie knows this, Mrs. Weatherly, when they sold the

22  properties, they had that property leased, and Glenda had

23  already paid the lease.  And so Glenda had to be reimbursed

24  for the end of the lease.  Leslie talked to Mrs. Weatherly

25  about it.

1       Q.   Okay.

2       A.   And, 'cause Glenda told me and she said she got

3   her money back.  So I mean, that wasn't my part to take care

4   of, but I know that that's what happened.  So Leslie should

5   know that, 'cause they paid the money and she had to get

6   reimbursed for it, for the lease.

7       **Q.   So to round off the discussion on the -- on the**

8   **oil and gas and the mineral interests, to the best of your**

9   **knowledge, the family partnership did not sell those**

10  **interests to anyone else as long as you were manager?**

11      A.   As long as I was there, it's like it was when my

12  mom and dad was there.  And when she took over the manager,

13  that's her deal; I don't know.  I have no -- She needs to

14  talk to Amy or the people involved.  I don't know that.

15      **Q.   So we've talked about the -- the revenue from**

16  **tenants.  We've talked about the revenue from oil and gas.**

17  **And that -- that -- The oil and gas revenue declined**

18  **sharply, I take it --**

19      A.   Yes, sir.

20      **Q.   -- right around when, 2016, 2017?**

21      A.   I don't remember all that.  I just know it all

22  happened.

23      **Q.   Were the costs of production greater than the**

24  **revenue that -- that was -- should have been received, do**

25  **you know?  Is that what you're talking about --**

1    A.    On the gas wells?

2    **Q.    -- the -- yeah.**

3    A.    Yes, sir.

4    **Q.    Okay.  Then, then you mentioned the rock quarry**

5    **revenue, right?  So, so I think we established before G&G**

6    **would -- would take or extracted lime rock from property**

7    **owned by the family partnership and G&G would pay a royalty**

8    **in return, right?**

9    A.    Yes, sir.

10   **Q.    Was that a part of a written contract?**

11   A.    There was a contract my dad wrote, yes, sir.

12   **Q.    So this would have been back even when your dad**

13   **was alive?**

14   A.    Yeah, he -- he's the one that got it started in

15   that rock business, yes, sir.

16   **Q.    Do you remember seeing that contract in the last**

17   **few years?**

18   A.    No, I -- I think it was for like 40 cents a ton or

19   -- sir, I can't remember.  It was a -- we come up with a

20   term, whatever RB&J had been paying him for the other lease

21   that they had on the Section 4, we matched that lease in

22   Section 5.

23   **Q.    So RBJ was a third party that was also extracting**

24   **rock?**

25   A.    They were there first, yes, sir.

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

PAPP 0167

1    Q.   And, and to the best of your memory, when was that

2   contract done with your dad for whatever it was, 40 cents a

3   ton?

4    A.   I can't remember all that stuff.  I can go back

5   and look when I started buying rock equipment.  I mean, I --

6   I don't recall that.  I can't say.

7    Q.   But it was back when your dad was alive?

8    A.   Yeah, my dad was still alive.

9    Q.   Okay.  Do you have any belief or -- or even a

10  hypothetical possibility as to where that contract might be

11  today?

12   A.   No, sir.

13   Q.   Do you have any belief that it was ever copied and

14  given to some lawyer or some accountant or that there might

15  be a copy of it existing today?

16   A.   Sir, I don't have any idea.

17   Q.   I think you mentioned that at your meeting of

18  creditors early on, that there was one or two safe deposit

19  boxes like in Oklahoma or somewhere; do you remember that?

20   A.   Yes, sir.

21   Q.   Okay.  Did you ever, since the bankruptcy, go take

22  a look at what's in those safe deposit boxes?

23   A.   I don't think so.

24   Q.   But I think you mentioned that it would -- it's

25  going to have contracts and old records.  I mean, was that -

1  **- does that ring a bell?**

2      A.    You know, I had some property in there myself.

3  And when all this started, I went and got what I owned out

4  of it.  We all just shared boxes.  And when that happened, I

5  went and got my belongings that I had in there, but I never

6  looked at my dad's business in there.

7      **Q.    So, so that would have been your dad's papers in**

8  **some of -- one of those boxes?**

9      A.    Yeah, there -- there's still, I assume there's

10  still paperwork in those boxes.

11      **Q.    Do you -- Do you suspect or have any reason to**

12  **suspect that this contract might be in one of those boxes?**

13      A.    I -- It might be if it -- If my dad put it in

14  there, it would still be there, yes, sir.

15      **Q.    Do you have any memory at all as to when the last**

16  **time was or where it was when you actually saw that**

17  **contract?**

18      A.    About the time that Mr. Ries come got all the

19  paperwork and asked us to move that off that facility.  He

20  said they -- He said it's tied up in litigation and it would

21  be better for me if you didn't operate out here.

22          So when we left there, we boxed all those things

23  and took them to the rock pit.  And, and then, when the rock

24  pit sold, I mean, I got in trouble.  So people that were

25  helping me, we were hauling some documents or whatever was

1  left in those, and one of the drawers fell open on one of

2  the files and had papers all up and down 83.  I mean, I

3  don't know -- it's -- that's the last time I saw it was when

4  Mr. Ries and them come got the -- asked us to move our

5  office.

6      Q.   Is that the time that Mr. Ries came up with Mr.

7  Swindell and Leslie's lawyer?  Is that the --

8      A.   Yes, sir.

9      Q.   -- same time?

10         Okay.  So you think that the contract might have

11  been amongst those documents that Mr. Ries and Mr. Swindell

12  and Leslie's lawyer --

13     A.   I can't say that.  I don't know that.

14     Q.   Let me just be clear.  There was only one time or

15  was there more than one time that Mr. Ries came and got

16  documents?

17     A.   One time.

18     Q.   You said that -- that you -- that someone moved it

19  to the rock pit, though, didn't you?

20     A.   We moved it all to the -- I mean, what -- what

21  part to keep the rock pit going and to keep what little bit

22  I had going then going, that we moved them to that rock pit,

23  yes, sir.

24     Q.   So let me --

25     A.   That office at the rock pit.

1      Q.   And I apologize for being so detail-oriented, but

2  let me see if I understand.

3           So Mr. Ries, Mr. Swindell, and Leslie's old lawyer

4  came and took, I think you said two SUVs full of documents

5  up, right?

6      A.   Yes, sir.

7      Q.   Okay.  But then there were other documents that

8  they didn't take that you moved to the rock pit, right?

9      A.   Yes, sir.

10     Q.   Okay.  And those are the -- the --

11     A.   Most of those documents were payload documents

12 from the -- the company and had private information on them.

13     Q.   Okay.

14     A.   So, 'cause we had so many people working.  And I

15 don't know how long that information is good.  But all those

16 payroll files that I had, I moved them.

17     Q.   Would the payroll files of Galmor's/G&G?

18     A.   Yes, sir.

19     Q.   Okay.  So the -- the documents that went to the

20 rock pit, they were the books and records of Galmor's/G&G,

21 mostly in the form of payroll records?

22     A.   They're all -- They were all old records.  There

23 was nothing -- All the current records we kept up for the

24 IRS or whatever we had to do.  That's where we stayed at on

25 that.

1          And, but you're talking about documents that

2   started back in '64.  I mean, my dad never threw nothing

3   away.  There was piles of documents, and I can't tell you

4   what was in any of it.

5       **Q.   Okay.  Let me --**

6          **So Mr. Ries and Swindell and Leslie's lawyer took**

7   **some documents from your property, right?  Right?**

8       A.   They took all the current documents they needed to

9   deal with the bankruptcy.

10      **Q.   And then other documents were sent to the rock**

11  **pit, right?**

12      A.   Yes, sir.

13      **Q.   And those are mainly old records, right?**

14      A.   Payroll records, basically.

15      **Q.   Did any documents stay on your property after**

16  **these two things were taken away?**

17      A.   I don't guess I know what you're asking me.

18      **Q.   Okay.  So that was the Twitty property where all**

19  **these documents were at one point, right?**

20      A.   Mm-hmm.

21      **Q.   Mr. Ries took some of them away from the Twitty**

22  **property, right?**

23      A.   Mm-hmm.

24      **Q.   And you moved some to the rock pit, right?**

25      A.   Yes, sir.

1    Q.    Okay.  Did any documents after that remain on the

2 Twitty property?

3    A.    There were some documents there, yes, sir.  And

4 then when the property sold, we went and finished getting

5 all the rest of the -- the cabinets and the stuff that were

6 there.

7        There were some documents that had to do with the

8 Marion oil stuff, the leases and stuff.  They picked up a

9 bunch of them.

10       But all those documents that might have been

11 critical for somebody later on to purchase those properties,

12 we took all that stuff with us.

13   Q.    Well, where did you move those documents?

14   A.    Well, we took them to Twitty.  And then after we

15 left Twitty, most of that stuff was destroyed, because there

16 was nothing else -- there's no reason to keep any of the

17 rest of it.

18   Q.    I'm sorry.  I got to start again.

19       Before the bankruptcy was filed, Galmor's/G&G kept

20 its books and records in Twitty, right?

21   A.    There -- For a long time it was at Elk City 'til I

22 sold out to Advantage.  Then we moved what was left over of

23 the companies I kept back to Elk -- to Shamrock at Twitty.

24   Q.    Okay.  And maybe I misheard you.  But I thought

25 you said a little bit ago that you moved documents to Twitty

1  later.  So that's why I'm going through this.

2      A.  No, that --

3      Q.  So after -- after you moved them out of Elk City,

4  more or less, the books and records of Galmor's/G&G were in

5  Twitty, right?

6      A.  Yes, sir.

7      Q.  Would that have also included your personal

8  finances?

9      A.  Yes, sir.

10     Q.  Okay.  Mr. Ries, we've already established, with

11 the lawyers, took some of those away, the more recent ones,

12 right?

13     A.  Yes, sir.

14     Q.  You moved some of the more older ones and pay --

15 payroll records to the rock pit, right?

16     A.  Yes, sir.

17     Q.  Okay.  At that point in time, did any -- did any

18 documents remain in Twitty?

19     A.  No, sir.

20     Q.  Okay.  So once Mr. Ries took them away and once

21 they went to the rock pit, there were no more documents in

22 Twitty?

23     A.  There were some in -- still in the -- the office

24 there at Twitty, which we were trying to purchase it back.

25 But when we realized we couldn't purchase it back when we

1  moved the tanks and all that other stuff off of those

2  properties, we got all the -- the things that had anything

3  to do with the old business with us and destroyed them.

4      **Q.    Okay.  With the oil business?**

5      A.    No, no, no, no.

6      **Q.    The old business I mean.**

7      A.    No.  I mean, all of the old records we had all

8  those years.  And when we lost all of the property and we

9  lost all the business, there was no reason to keep any of

10 those documents.  I mean, they wouldn't be any good for

11 anyone to have.

12     **Q.    Okay.  And again, I'm not trying to be a smartass.**

13 **But I asked you an hour ago whether you destroyed and books**

14 **and records of the business, and you said no.**

15          **Now you're saying that -- that -- that some of**

16 **these very old records were destroyed.**

17     A.    They were all payroll records.  There's nothing

18 that would do anything with the day-to-day business of

19 anything.

20     **Q.    I understand.**

21     A.    I mean, all I kept was the -- the IRS documents,

22 the stuff that needed to be kept to keep us out of trouble

23 with the IRS.

24     **Q.    And were those the documents moved to the rock**

25 **pit?**

```
 1       A.   Yeah, but except they run out of their cycle when

 2   they got there, I believe.  I mean, I don't know.  I just

 3   know that -- that the --

 4          When you asked me awhile ago about those

 5   documents, I'm -- I'm thinking the documents that we needed

 6   to -- to satisfy Mr. Ries and the business I done before

 7   then.  But --

 8       Q.   Okay.

 9       A.   -- there's nothing that I would say was prudent to

10   -- to keep any of that documents that were there.  They were

11   all terribly old documents.

12       Q.   The documents that were removed to the rock pit,

13   what happened to those documents?

14       A.   That's what I said, they were -- they lost the --

15   the people that were moving some of them, they fell off the

16   trailer.  I mean, there just a bunch of different things and

17   -- and I think the -- most of them were destroyed or they

18   were left set outside and they're all ruined.  There was no

19   place to put them.

20       Q.   When, when Galmor/G&G would extract rock from the

21   quarry, was there any kind of paper ticket or whatever it's

22   called, created to evidence the tonnage, the date of

23   removal, et cetera?

24       A.   Every truck that came in there, we had to -- we

25   had LOADRITE scales on all our loaders.  And anyone that
```

1  come purchased a load of rock would have to go down -- they

2  had to have a credit with us and we had to set them up an

3  account.  And then when the trucks were in the yard, the

4  boys on the loaders would call the rock office and tell them

5  truck number such and such and such and such, we put 28 tons

6  on this truck.

7         By the time they would get to the office, the boys

8  had a dot matrix, they loaded -- showed everything that was

9  loaded and everything that was moved.  And those boys had to

10  sign that because they couldn't run down the highway without

11  a bill of lading on their trucks.  So everyone had to have a

12  copy of what they had on, in their possession the whole

13  time.  And then that's how we kept track of all that.

14     Q.   So what you're saying is the detailed records were

15  removed as to the quantity of rock removed?

16     A.   Yes, sir.

17     Q.   I'm sorry.  Detailed records were kept --

18     A.   Yes.

19     Q.   -- as to the quantity of rock removed?

20     A.   Yes, sir.

21     Q.   Okay.  And, and I think that the rock business

22  kind of also took a turn for the worse in around 2017, or

23  so, right?

24     A.   Yes, sir.

25     Q.   Okay.  How was the rock business in 2016?

1    A.    It was -- it was pretty -- I mean, I wouldn't have

2  sold that if it wasn't doing well.  I mean, that's why I

3  focused on just selling rock and, and working there where my

4  folks were at.

5    Q.    **When was the high point, to your belief, of the**

6  **rock business?  When was it doing the most revenue or...**

7    A.    Oh, I couldn't answer that.

8    Q.    **But it was before 2017?**

9    A.    It was right there around 2016 or 2017, I'd say.

10   Q.    **And can you give me an estimate on a daily or**

11 **weekly basis as to how many trucks would come out of there**

12 **or how many tons of rock would be extracted?**

13   A.    I couldn't answer that.

14   Q.    **Okay.  Are we talking about --**

15   A.    There was -- There were lots.

16   Q.    **More than one truck a day?**

17   A.    Yes, sir.

18   Q.    **Okay.  More than ten trucks a day on average?**

19   A.    Just depends on the day.

20   Q.    **Okay.  Where did -- And I'm asking you these**

21 **things, as I'm sure you know, is because, as I understand**

22 **it, part of the debt that the family partnership owes to you**

23 **is for advances against royalties, right?**

24   A.    Yes, sir.

25   Q.    **That's why I'm -- That's why I'm asking you these.**

1    Do you have any understanding as to where these

2  dot matrix records would be today?

3    A.    No, sir, I -- I don't know that.  I know -- I

4  don't know that -- they turn them in in invoices.  Everyone

5  had an invoice and it all went back to the -- to billing the

6  customer.  But I don't -- As far as knowing where all that -

7  - that is, I have no idea.

8    Q.    So let -- So let's break this down in some detail.

9        So G&G or Galmor's had its own rock business,

10  right?

11    A.    Yes, sir.

12    Q.    Okay.  Did -- So G&G's --

13        Did G&G have its own trucks that would remove that

14  or was that contracted out?

15    A.    I owned those trucks early on and I sold them.

16  Then there at the last, we had one old truck that we used.

17  But no, as far as -- we mainly -- it was more we just sold

18  it to people.

19    Q.    Okay.  And, and I think I heard that -- that G&G's

20  had some awesome huge machine out there that would actually

21  cut the rock or something, right?

22    A.    That's correct.

23    Q.    Okay.  And that was G&G's property, right?

24    A.    Yes, sir.

25    Q.    Okay.  So I guess here's what I'm building up to.

1  Did -- Did G&G itself remove -- I'm sorry -- extract and

2  remove the rock?  Was G&G the only customer or were there

3  other people that were allowed to go there, other companies

4  that were allowed to go there and remove rock?

5      A.   That's what I told you.  They had to set up

6  accounts for all of them.  There was counties.  There was

7  businesses.  There was oil companies.

8      Q.   Okay.  So that -- that's what I'm trying to

9  understand.

10          So it's not like -- So it's not like G&G extracts

11  the rock and then sells it out to all these other companies.

12  Those other companies could go in there themselves and

13  actually physically remove the -- the rock.

14      A.   They go and get a --

15      Q.   I got it.

16      A.   -- truckload and they sell it, yeah.

17      Q.   And would they then pay the same 40 cent or

18  whatever it was royalty to the -- the family partnership?

19      A.   No.  We made the rock.  G&G built the rock 'cause

20  you had to have those big machines to build it.  Then you

21  had to have big trucks to haul it and screen it and clean it

22  up.

23      Q.   That's what I'm getting at.  That's what -- so --

24          So G&G would pay the -- the royalty for the

25  unprocessed crap.  G&G would then incur the expense to

1　remove it and shape it or whatever it is.  And then G&G

2　would sell it to third parties.

3　　　　A.　We'd pay the royalty off what was a sellable

4　product.

5　　　　Q.　Got it.  Excellent.  Okay.

6　　　　　　Is there -- Is there any dispute that G&G should

7　have paid the family partnership the -- the set royalty per

8　ton of rock?

9　　　　A.　No, sir.

10　　　　Q.　Okay.  And you mentioned that G&G set up credit

11　and accounts for these customers, right?

12　　　　A.　Yes, sir.

13　　　　Q.　Okay.  And then ultimately the -- the final

14　product was an invoice that would go out to these customers,

15　right?

16　　　　A.　Yes, sir.

17　　　　Q.　Okay.  And I take it that -- that a reasonably

18　smart accountant or bookkeeper could look at those records

19　and figure out how much rock was actually extracted, right?

20　　　　A.　Yes, sir.

21　　　　Q.　Okay.  So to the best of -- to the best of your

22　knowledge, were these the records, any of these, the credit

23　and account set up, the dot matrix, the invoices, were these

24　the records given to Mr. Ries when he came out there with

25　Mr. Swindell and Leslie's lawyer?

1    A.   They were all in the computer, yes, sir.

2    **Q.   So they're on the computer.**

3         **Those were stored electronically?  You got --**

4    **you're shaking --**

5    A.   When the girls loaded the material on the dot

6    matrix, they were tied into our computer at Twitty at the

7    Gin Yard.

8    **Q.   Okay.**

9    A.   So we knew what was going and coming every day.

10   **Q.   Did --**

11   A.   But the girls at the rock pit actually generated

12   their own invoices to go, but we just picked them up off of

13   the computer, what they billed out.

14   **Q.   Do you know -- And we're almost ready for lunch.**

15       **Do you know whether all that would have been kept**

16   **in QuickBooks or was there a separate program on that**

17   **computer?  Do you know or would that have been separate?**

18   A.    I don't think -- I think the dot matrix is the

19   only thing we had to -- we had to have it so we could build

20   a bill of lading for the trucks to haul the rock out of

21   there with, so they'd be legal.

22   **Q.   Do you know whether there was a file cabinet or**

23   **storage location where these bills of lading --**

24       **Do you know whether there's any or was there any**

25   **file cabinet or -- or paper files of where these bills of**

1 ladings or dot matrices or invoices, copies of them would

2 have been kept?

3     A.   They would have all been there with those girls

4 when they made them.  But you know you're talking -- When

5 they get the bill of lading, all the -- that was just to get

6 the trucks out of there.  And if you would have kept every

7 one of those documents -- I mean, we -- we sent a copy of

8 the document to the buyers.  But after that was done, we

9 didn't need a copy of the -- of the other stuff as long as

10 we got our -- got paid for it.  I mean, if we got paid for

11 it, then we could reverse what we were at.

12     Q.   Sir, I'm not suggesting that there's anything

13 wrong with getting rid of --

14     A.   Yeah.

15     Q.   -- trivial documents.  I'm just asking whether --

16 whether when the bankruptcy was filed there would have been

17 a location where those documents would have been kept.

18     A.   Well, they were at the gin -- at the -- at the

19 rock yard there on Section 5.

20     Q.   But primarily they should have been on the

21 computer, right?

22     A.   They're all on the computer.

23     Q.   Okay.

24     A.   Yeah.

25     Q.   And again, we're almost done for -- for lunch.

1  But I just want to round off this discussion.

2       Did -- Did Galmor's/G&G do a markup or charge

3  every customer the same price or was it different per

4  customer or per volume?

5       A.   It was all the same.

6       Q.   All the same.  So if --

7       A.   Well, I take that back.  The county got a little

8  bit different -- a cut because they bought more material.

9  But they -- it might -- if it was $9 a ton that we were

10 selling it for, we might give the county for 7.50.  But

11 whatever the market was is where that came from.

12      Q.   Well, do you know what -- what the term reverse

13 engineer means?

14      A.   No.

15      Q.   Okay.  I guess I'm trying to say if -- if we can't

16 get the actual records from that computer for whatever

17 reason, do you think I'm able to go get the actual invoices

18 from the county and then reverse figure out how much rock

19 the county actually extracted?

20      A.   Yes, sir.

21      Q.   Okay.  Would that be information on the invoices?

22      A.   It'd be on the invoice.  Yes, it's listed on the

23 invoice.

24      Q.   And would -- so --

25           So Galmor's/G&G would pay the family partnership

1  the royalty, right?

2      A.   Yes, sir.

3      Q.   **Was that the subject of any kind of paper or**

4  **electronic invoices?**

5      A.   We used the invoices off the computer.  What we

6  generated through the computer's what we based their --

7  their royalty on.

8      Q.   **Okay.  But would -- would the family partnership**

9  **send a formal invoice to G&G and say, here's how much you**

10 **owe me in payment?  Anything like that?**

11     A.   No.  I just gave my dad what we'd sold when he was

12 alive, then my mom what we sold for the -- for the month, so

13 they'd have an idea what they had coming.

14     Q.   **What do you mean you would give it to them?  You**

15 **mean --**

16     A.   I'd give them a total of the -- what we'd invoiced

17 for the month.  You know --

18     Q.   **You --**

19     A.   -- if we sold 10,000 tons, sir, I'd say, well, you

20 all, you've got a royalty for 10,000 tons coming.  That's

21 what I'd tell them.

22     Q.   **Okay.**

23     A.   But they never sent me a bill.

24     Q.   **But, but -- But hear me, sir.**

25          **Did you give your mom and dad that information or**

1    did you give them the actual money for that royalty when

2    they --

3        A.    Both.

4        Q.    -- were alive?  Both?

5        A.    Both.

6        Q.    Okay.  And, and then after, after your mom died,

7    did -- did Galmor's/G&G physically pay to the family

8    partnership the royalty?

9        A.    Yes, sir.

10       Q.    Okay.  But there was never a formal bill from one

11   to the other?

12       A.    No, sir.

13       Q.    You would just take information at Galmor's and

14   calculate the royalty and then -- and then pay it?

15       A.    Yes, sir, off the computer.

16       Q.    Do you remember what the terms for payment were?

17   Like net 30 days, net 90 days, or right then and there?

18       A.    No, sir.

19       Q.    Okay.  You have no memory of whether it was

20   payment in arrears or anything like that?

21       A.    I -- No, sir.

22           MR. RUKAVINA:  Okay.  Is it okay if we take an

23   hour lunch?

24           MR. SHERWOOD:  That's great.

25           MR. RUKAVINA:  We're going to be here for a while,

1  so I think it's good to have a decent lunch.  So back at

2  1:00?

3          MR. SHERWOOD:  Sure.

4          VIDEOGRAPHER:  Going off the record; it's 12:01

5  p.m.

6          (WHEREUPON, a luncheon recess was taken.)

7          VIDEOGRAPHER:  Back on; it's 1:10 p.m.

8  BY MR. RUKAVINA:

9      Q.   Mr. Galmor, back to this rock quarry.  I think you

10 said that you thought it might have been a 40 cent a ton

11 royalty, but you weren't certain, right?

12     A.   Yes, sir.  I'm not sure what it was.

13     Q.   Okay.  Was it ever 75 cents a ton?

14     A.   I don't think so.  But I mean, we can go back and

15 look at the checks I wrote them and see.

16     Q.   Well, was there ever a time when the amount of the

17 royalty changed or was it always whatever it was?

18     A.   It was always whatever it was.

19     Q.   So, so at no point in time did the royalty go down

20 from some number to 40 cents a ton?

21     A.   No, sir.

22     Q.   Okay.  And you mentioned that --that there was a

23 sale of Galmor/G&G, right?

24     A.   Yes, sir.

25     Q.   To Arrow, was it?  Who -- who --

1    A.    No.   It was Advantage.

2    Q.    **Advantage.   I apologize.**

3          **Okay.   When did that sale -- Did the sale actually**

4  **take place?**

5    A.    In '16, I think, yes, sir.

6    Q.    **At the end of '16, you said?**

7    A.    I'm not -- Underwood handled the case for me, and

8  they'll -- those documents will prove when it happened.

9    Q.    **What was the last thing you said?**

10   A.    Mr. -- The Underwood Firm helped me close that

11 deal out, so I don't know when it all was final or -- or

12 not.  But I know I got the documents to prove where it sold.

13   Q.    **Okay.  So did you come back into ownership at some**

14 **later point in time?  Did you buy it back from -- from them?**

15   A.    No, sir.  My son -- They owed me $2 million.

16   Q.    **Okay.**

17   A.    And they were fixing -- they were liquidating

18 equipment and trying to -- They were, what I understood were

19 on the verge of losing a lot of that equipment.  So I talked

20 my son into making a deal with them, Justin, to get what we

21 could get back and get what cash I could get out of them so

22 I could pay some bills.

23   Q.    **Okay.  Let's -- Let's break that down.**

24         **So you think the sale might have closed at the end**

25 **of 2016, but it might have been some different time?**

 1    A.    I don't know the dates on that.

 2    Q.    **Well, would it have been 2017?**

 3    A.    I don't know the dates.

 4    Q.    **Okay.  Okay.  Did you receive any money from Arrow**

 5 **for the sale?**

 6    A.    Advantage?

 7    Q.    **I don't know why I keep saying -- I apologize.**

 8    A.    I think I got like a million four maybe, or

 9 million three, something like that.

10    Q.    **That would have been cash money?**

11    A.    They wrote me a check, yes, sir.

12    Q.    **Okay.  Did they give you any other form of**

13 **consideration, like a earn-out or any future payments or**

14 **anything like that?**

15    A.    They told me they'd -- I carried like two million,

16 I think.  You'll have to go back and look at the documents.

17 But I think they carry -- I carried $2 million like a open

18 note.  But then they got -- they couldn't pay their note.

19    Q.    **Okay.  So the -- the -- the sale price was 1.3,**

20 **1.4 cash, and around 2 million that they owed you going**

21 **forward?**

22    A.    Yes, sir.

23    Q.    **Okay.  And then for a period of time, were they**

24 **the -- the sole owner of Galmor's/G&G?**

25    A.    Yes, sir.

1    **Q.    Okay.**

2    A.    Well, except -- no, I had the -- the rock quarry.

3    I had a pump shop.  And I had my cattle and stuff.

4    **Q.    Well, I'm saying, whatever Galmor's/G&G owned, was**

5    **there a point in time when Advantage owned that, because --**

6    A.    Yes, sir.

7    **Q.    -- they --**

8    **How long did they own it before it -- it came back**

9    **to you or to your son?**

10    A.    You know, I'm thinking in '16, but I don't know

11    that.

12    **Q.    But was it one month later?  Six months later?  A**

13    **year later?  Can you give me an estimate?**

14    A.    About 18 months, I'd say.

15    **Q.    Were they paying you on that note in the meantime?**

16    A.    They didn't pay me anything between the time they

17    paid me and then.

18    **Q.    Okay.  So then, then what did you do when they**

19    **weren't paying you?**

20    A.    Well, we started asking them to get -- get our

21    money.  And when it wasn't going to happen, we went and

22    renegotiated a deal.  I said my son renegotiated a deal with

23    them for partial, just to get something back from nothing.

24    **Q.    Okay.  And your son's name again, sir?**

25    A.    Justin.

1     Q.    Justin.

2           Okay.  So let me see if I understand.  So these

3    guys owed you money and they weren't paying you, but they

4    owned Galmor's and G&G and were liquidating it, right?

5     A.    Yes, sir.

6     Q.    And you were very worried that as a result of that

7    liquidation they'd have no ability to pay you in the end?

8     A.    That's what I was afraid of, yes, sir.

9     Q.    Was there any litigation involved?

10    A.    I don't think so.  I think we negotiated it

11   through ourselves, or Justin did.  I mean, I don't know.

12   Justin did all that his self.

13    Q.    So how did you come -- come to own Galmor's/G&G

14   again?

15    A.    Well, it never did liquidate 'cause Advantage took

16   -- they didn't take my name.  They took part of it, but they

17   didn't take -- 'cause I still had to operate.

18    Q.    Ah.  Okay.  So let -- so, okay.

19          So do you know what an asset sale is?

20    A.    Yes, sir.

21    Q.    Okay.  So, so Advantage bought the assets of

22   Galmor/G&G, but they didn't buy actually Galmor's/G&G?

23    A.    No, sir, they -- they didn't buy the name.  They

24   bought the --

25    Q.    Gotcha.  Gotcha.

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800) 528-3335
NAEGELIUSA.COM

PAPP 0191

1         So they owned these assets and then your son

2   negotiated a deal where the assets would come back to

3   Galmor/G&G?

4         A.   Mm-hmm.

5         Q.   Yes?

6         A.   Yes, sir.

7         Q.   Okay.  And what was that deal, just on a -- on a

8   high level?

9         A.   I don't know that deal.  I -- He made that his

10  self.  I told him he could have the equipment, I just needed

11  the money to pay bills.

12        Q.   What do you mean, he could have the equipment?

13        A.   Well, anything he bartered back.  I don't know

14  what he did, 'cause I didn't give him any money to make the

15  deal.  But whatever he could gain to help himself out of the

16  deal, but I needed the cash that -- whatever cash we could

17  get, I needed the cash to pay bills.

18        Q.   So did Advantage pay back some of that $2 million

19  at the end of the day?

20        A.   Yes, sir.  I don't -- I think it was like 80 --

21  800,000 or something like that.  And I -- I put it in the

22  bank and was paying bills with that.

23        Q.   Okay.  And then, then your son somehow acquired

24  some of the equipment back from Advantage?

25        A.   Yes, sir.

1    Q.    All of the equipment or just some of it?

2    A.    I don't know what he got back.

3    Q.    Do you know if he paid them for that?

4    A.    No, I don't -- I said I think he traded it for

5  that debt that they owed me, that $2 million that they were

6  supposed to pay me.

7    Q.    Okay.  So if they were supposed to pay you $2

8  million, then why did they transfer equipment to your son?

9    A.    Because he's the one that bartered the deal.

10   Q.    By bartered the deal, you mean he -- he brokered

11  it, he -- he --

12   A.    He --

13   Q.    -- brought it together?

14   A.    He's the one that brought the deal to the table to

15  get me the money that I could get so I could pay bills with

16  it.

17   Q.    Okay.  Do you -- Do you know approximately how

18  much worth of equipment Justin got back from Advantage?

19   A.    I have no idea.

20   Q.    Do you know whether Justin paid Advantage anything

21  for that equipment?

22   A.    I don't think he paid them anything, no, sir.

23   Q.    Okay.  Well, when -- when Galmor's/G&G filed

24  bankruptcy it had an operating business, right?

25   A.    Yes, sir.

1    Q.    And that operating business was the rock quarry,

2  right?

3    A.    Yes, sir.

4    Q.    Okay.  So did Galmor's/G&G ever sell the rock

5  quarry to Advantage?

6    A.    No, sir.

7    Q.    Okay.  I see.  So again, I'm going back to it was

8  an asset sale.

9          So only a limited number of the property of

10 Galmor's/G&G was sold to Advantage?

11   A.    Yes, sir.

12   Q.    Okay.  Got it.

13         And what would that, that equipment generally have

14 consisted of?  Like what business was sold?

15   A.    The trucking part of the business.

16   Q.    Okay.

17   A.    The roustabout part of the business.  The dirt

18 work part of the business.  And I think that, that covers

19 all of that.

20   Q.    And the purchase price was more or less 2.3, 2.4

21 million dollars?

22   A.    I don't know.  I can't tell you the exact numbers.

23 They -- They've jockeyed those numbers.  We -- We bartered

24 for six months, and I don't know what the last numbers were.

25   Q.    Okay.  And is it fair to say that when your son

1  Justin got that equipment back, it would have been worth

2  north of $1 million?

3      A.   I'm not going to say that.  I don't know what he

4  got back.

5      Q.   Okay.  But this would have happened within four

6  years of the bankruptcy, right?

7      A.   It was in '16, like June of '16 or something, or

8  May.  I don't know.  He started his own deal.  You can go

9  back and look it up; it's GRS, called Galmor Roustabout

10  Service that he --

11     Q.   Well, I'm --

12     A.   -- started.

13     Q.   I'm not saying that you're lying.  I'm just trying

14  to get --

15     A.   Yeah.

16     Q.   -- to an understanding.

17     A.   'Cause that's --

18     Q.   This is news to me.

19     A.   I mean, I can go look at that date when that

20  started, because that's when he started his little business.

21     Q.   Okay.  Did -- When you sold --

22          When Galmor's/G&G sold the assets to Advantage, do

23  you know if Galmor's retained any kind of lien or security

24  interest to secure the repayment of that promissory note?

25     A.   I can't answer that.  It's in that -- If you go to

1  Mr. Under -- or Ken Fields and them handled the transaction,

2  and there was -- it's as thick as all that right there. And

3  I just assumed my attorneys knew what we were doing, so

4  that's the way I left it.

5      **Q. Do you recall whether Galmor's/G&G released**

6  **Advantage of its -- of the money that it was owed whenever**

7  **it paid back the 800,000 or so?**

8      A. Well, no. I don't know how that all fit back

9  together because there's litigation over that when we come

10  into this, because there was a -- a problem with who paid

11  the taxes on the equipment. And, so I don't know all of

12  that, though. That's what I do know.

13      **Q. Okay. Is -- is -- Is your son's business still in**

14  **operation today?**

15      A. Somewhat.

16      **Q. Okay. Is any of that equipment still around in**

17  **his business today?**

18      A. I can't answer that, 'cause I don't have anything

19  to do with his operation.

20      **Q. Are you employed today?**

21      A. No -- Well, I am, yes, sir. I got -- I check

22  wells and I draw Social Security.

23      **Q. Okay. Is that the only work you've done since you**

24  **filed bankruptcy?**

25      A. No, sir. I do day work. I run equipment for

```
 1  people.  I do whatever I can do to make a living.

 2      Q.   You mentioned that some of the rock that was --

 3  What's the word?  Mined?  Extracted?  Quarry?

 4      A.   Strip mined.

 5      Q.   Some of the rock that was mined was sold to the

 6  county?

 7      A.   Yes, sir.

 8      Q.   Okay.  Can you give me an estimate of how much,

 9  what percentage of that business was the county as against

10  other customers?

11      A.   No, sir.

12      Q.   Was the county more than half the business?

13      A.   At the last, probably so.

14      Q.   Okay.  Okay.  Let's keep talking about Galmor/G&G.

15  And just so that you have something in front of you, I'm

16  going to give you a couple of documents; if you'll just bear

17  with me, please.

18           So we're on Exhibit 3, correct?

19           THE REPORTER:  Correct.

20           MR. RUKAVINA:  I'm sorry.  I have them right here.

21           (WHEREUPON, Exhibit 3 was marked for

22  identification.)

23  BY MR. RUKAVINA:

24      Q.   Exhibit 3, Mr. Galmor, are the schedules filed by

25  Galmor's/G&G in its Chapter 11 bankruptcy case.
```

1          Sir, you're familiar with these schedules?

2     A.   Yes, sir.

3     Q.   Okay.  And you signed them under oath and penalty

4  of perjury, correct?

5     A.   Yes, sir.

6     Q.   Okay.  And sitting here today, do you have any

7  reason to believe that these were wrong when they were

8  filed?  I know it was a couple years ago, but...

9     A.   I don't think so.

10    Q.   Okay.

11    A.   Mr. Tarbox's secretary come out and helped me --

12    Q.   Okay.

13    A.   -- work on them for two or three weeks.

14    Q.   I'd like for you, sir, if you see on the top it

15  says page x of 32.  If you'll go to page 6 of 32, on the

16  very top, and if you'll let me know when you're there, sir.

17    A.   Okay.

18    Q.   Okay.

19    A.   So I got 9 of 32.

20    Q.   Try to find 6 of 32, sir.  It's on the top.  Did I

21  give you the wrong --

22    A.   You got equip --

23    Q.   May I see it?

24    A.   Pardon me.

25    Q.   It's going to be -- It's going to be up here.

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0198

```
 1        A.   I get to eight.

 2        Q.   Up here, 6 of 32.  You might need your glasses for

 3   that.

 4        A.   Well, I might ought to get me some.

 5        Q.   So if you take a look at this, line item 74 says,

 6   Amount owed to debtor by Galmor Family Limited Partnership.

 7        A.   Yes, sir.

 8        Q.   But then it's -- it's $186,000.  You see that?

 9        A.   Yes, sir.

10        Q.   Okay.  It says, Debtor operated a rock quarry in -

11   - on Galmor Family Limited Partnership land and paid a

12   royalty of 50 cent per ton of product.

13             Does that refresh your memory that it might have

14   been 50 cents?

15        A.   Yes, sir, probably so.

16        Q.   Okay.  Do you have any reason to dispute that it

17   was 50 cents per ton?

18        A.   No, that's...

19        Q.   Okay.  Debtor gave an advance to Galmor Family

20   Limited Partnership to cover their personal expenses and

21   bills.  After the death of Steve Galmor's father, Steve's

22   mother couldn't pay her bills.  Debtor advanced money on the

23   rock to be sold so his mother could pay her bills.

24             Is that all true and correct, sir?

25        A.   Yes, sir.
```

1    Q.    Okay.  So, so G&G was advancing money to the

2  family partnership so that the mother could pay for her

3  bills?

4    A.    Yes, sir.

5    Q.    Why wasn't G&G advancing the money to the mother?

6  I mean let me ask you this way.  Why was it the family

7  partnership's responsibility to pay your mom's bills?

8    A.    Well, I don't know.  I can't answer that, I don't

9  guess.  I mean, I'd assumed that my mother, if she needed

10 money, we needed to get her some money.

11   Q.    Okay.  Do you know how that amount of $186,000 was

12 calculated?

13   A.    Out of the computer, like I told you while ago.

14 Whatever was stripped from the mine went on those computer

15 and we took those numbers right off of the -- what was

16 computed in the computer.

17   Q.    Did Ms. Carter do that?

18   A.    Ms. Carter, and then there was another lady.  I --

19 I can't recall her name.  But she was kind of the boss.  And

20 a guy named Mike Hobbs.  They ran the rock pits and did

21 those things.  So that -- that's how it was put in the

22 computer.

23   Q.    Okay.  Did you personally do that calculation?

24   A.    No, sir.

25   Q.    You relied on them to do it, correct?

```
 1        A.    Yes, sir.

 2        Q.    Okay.  Was this debt ever memorialized by like a

 3   written promissory note or something in writing?

 4        A.    No, sir.

 5        Q.    Okay.  I think I -- I might have something to --

 6   that I wanted to ask you about on this, if you'll just give

 7   me a second to see if I --

 8              Here it is.  This will be Exhibit 4.

 9              (WHEREUPON, Exhibit 4 was marked for

10   identification.)

11   BY MR. RUKAVINA:

12        Q.    Sir, have you seen Exhibit 4?

13        A.    Yes, sir.

14        Q.    Okay.  Do you know who prepared Exhibit 4?

15        A.    A guy named Matt Brooks.

16        Q.    Okay.  And what do you think Exhibit 4 is?

17        A.    It shows the actual what was bought and what was

18   advanced and crossed them up off of the...

19        Q.    Okay.  So this would be, let's just call it a

20   reconciliation or -- or evidence supporting that $186,000

21   number?

22        A.    Yes, sir.  Parts of it, yes, sir.

23        Q.    Okay.  And to your knowledge, this gentleman did

24   it by looking at the actual computer records?

25        A.    Yes, sir.
```

1    Q.    Okay.  So it looks like the first royalty advance

2    was on May 27, 2015, right, for $15,000?

3    A.    Probably so.

4    Q.    Why was -- Why was there a royalty advance back in

5    2015, when -- when things were presumably going well?

6    A.    Well, I can't answer that unless Mother had

7    something that needed to be paid, we knew that we'd get some

8    money later on.  I mean, I -- I can't answer that.

9    Q.    Okay.  So are you -- are you saying that every one

10   of these advances listed on this left column was triggered

11   by your mom needing something to be paid?

12   A.    Well, it wasn't -- wasn't just my mom.  It was

13   land payments and operating expense for the FLP.

14   Q.    Okay.  So some of the expenses were for your mom

15   and some of the expenses for -- for -- were land payments

16   for the FLP?

17   A.    Well, I don't -- I don't really think it would be

18   all for my mother.  I think it'd be for the operation of the

19   FLP.  I mean, my mother -- her house was paid for.  She

20   didn't have very many expenses.  I mean...

21   Q.    Well, but if you look at Exhibit 3, it says, After

22   the death of Steve Galmor's father, Steve's mother couldn't

23   pay her bills.  Debtor advanced money on the rock to be sold

24   so his mother could pay her bills.

25   A.    Well, I'm not sure why Mrs. -- or that secretary

1    at Tarbox put that in there.  But we discussed that, and she

2    asked me what it was for.  I said, help pay the expenses for

3    my mother.  And I -- I can't answer to how it's typed in

4    there.

5        **Q.    Okay.  But you just said that you told her it was**

6    **to help pay for the expenses of your mother.**

7        A.    Yeah.

8        **Q.    Okay.  But now you're telling me that it was to**

9    **actually pay the expenses of the family partnership?**

10       A.    Well, and I assume that's all part of the family.

11   When you say my mother, she was the owner of that operation

12   or -- or her -- I mean, she was the last heir to operate it,

13   so, yes, sir.

14       **Q.    Did you have an understanding at that time that**

15   **your mother was a partner in the limited partnership, the**

16   **Family Limited Partnership?**

17       A.    I think her and I were co-operators, if I'm -- I

18   mean, I don't know.

19       **Q.    Okay.  And then the right column talks about**

20   **advance payments back to Galmor's/G&G.  Do you see that?**

21       A.    Yes, sir.

22       **Q.    Now, here's what I want to know.  And you may not**

23   **understand my question and you may not know the answer, so**

24   **be careful.**

25       **Q.    These two columns, did they show all of the**

1   transactions back and forth or only the ones that were

2   related to royalty advances?  In other words, did -- would

3   these show regular royalty payments that were made to the

4   family partnership that were not advances?

5       A.   I'm not going to answer it.  I'm not sure what

6   you're even saying to me.

7       Q.   Yeah, it's -- it's complicated.

8            How often would G&G pay the family partnership

9   royalties, like on a daily basis? weekly basis? monthly

10  basis?

11      A.   I would think it'd be monthly.

12      Q.   Okay.  What I'd like to know is, looking at

13  Exhibit 4, it says, royalty payments given to FLP, right?

14  We've already established that's the advance, right?

15           But do you know, and maybe you don't, whether

16  these were the only payments from G&G to FLP, or were there

17  other payments from G&G to FLP that were straight royalty

18  payments and not advances?

19      A.   I -- I don't know that.

20      Q.   And I asked that because all these are very round

21  numbers, $7,000; $10,000.  I would have thought that a

22  royalty payment would have some decimal or something like

23  that.

24      A.   God, I can't answer that for you.

25      Q.   Okay.  And if you look at the second page of

1   Exhibit 4, it says advance payments back to Galmor's/G&G.

2   And the last advance payment was April 30th.  Do you see

3   that?  On the second page, sir.

4        A.   I'm on the second page.

5        Q.   Is that Exhibit 4, sir?

6        A.   That's the second page?

7        Q.   I'm sorry.  I -- Okay.  Mine are double-sided,

8   that's the problem.  On -- On the third page, sir, the one

9   that's the bottom, it says 16725.

10       A.   Which -- Which one are you talking about now here?

11       Q.   The -- The right-hand column, April --

12       A.   Okay.

13       Q.   -- 30th, 2018.

14       A.   Mm-hmm.

15       Q.   Two -- 2,848.68, do you see that?

16       A.   Yes, sir.

17       Q.   Okay.  All of these payments back, most of them

18  rather, are down to the penny.  You see that?

19       A.   Yes, sir.

20       Q.   Is it fair to conclude that those were actual

21  invoices for -- for royalties that were -- that were

22  basically forgiven, and that's how the family partnership

23  was repaying the debt?

24       A.   I'm not going to answer.  I don't know that.

25       Q.   Okay. I'd have to talk to that gentleman to -- to

1   get more information?

2       A.    Mrs. Fuchs or Matt or --

3       Q.    **Yeah.**

4       A.    -- whoever.  Matt's the one that built it.  You

5   can contact Matt and visit with him about it.

6       Q.    **Okay.  So it's fair to conclude that you just**

7   **don't know about this particular document, you just know**

8   **about the general transactions?**

9       A.    That's correct.

10      Q.    **Okay.  And when did G&G stop extracting rock from**

11  **that quarry?**

12      A.    I can't answer that.

13      Q.    **When did G&G go out of business?**

14      A.    Whenever -- When did the final bankruptcy, when I

15  went from 7 to 11, or whenever that was.

16      Q.    **You mean when you went from 11 to 7?**

17      A.    Eleven to 7, yeah.

18      Q.    **Does that sound like it would have been late 2018**

19  **maybe, early 2019?**

20      A.    I'm not gonna -- I don't know.

21      Q.    **Okay.  Well, whatever -- but what --**

22            **So whatever the conversion was, that's when it --**

23  **it ceased business, right?**

24      A.    Yes, sir.

25      Q.    **Okay.  Was that extracting rock, was G&G**

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

PAPP 0206

Case 20-02003-rli Doc 45 Filed 12/08/21 Entered 12/08/21 16:34:41 Page 210 of 650
Michael Galmor   March 24, 2021   NDT Assgn # 36389-1

Page 152

1  extracting rock at that quarry until pretty much the day it

2  ceased business?

3      A.   Probably so.

4      Q.   Okay.  Was it paying its royalties to the FLP

5  there at the end?

6      A.   I assume that we were.  If we had the money to pay

7  them, we did.

8      Q.   Okay.  But if you didn't have the money to pay

9  them, you didn't?

10     A.   I'm not gonna say one way or the other, I don't

11  know.  I don't know that.

12     Q.   Well, they -- Again, I'm not trying to set you up.

13  I'm asking that, we know that as of April 30th, 2018, the

14  family partnership owed $186,000.  That's the numbers that

15  are calculated here.

16          What I'm asking you is -- is, did some of that

17  $186,000 get repaid after that because rock was extracted

18  that royalties weren't paid on?

19     A.   I can't answer that.  I don't know.

20     Q.   If there are no payments after April 30th, 2018

21  for -- for royalties to the family partnership, would you

22  agree with me that that should be deducted from $186,000?

23     A.   I'm not going to agree to any of that, no, sir.

24     Q.   That's fine.

25          Let's go back to Exhibit 3, sir.  Exhibit 3.  You

1    can put that spreadsheet aside, the other exhibit.

2          The -- The next entry on the next page, sir, it

3    says, Amount owed to debtor by Galmor Family Limited

4    Partnership, $384,000.  Do you see that?

5        A.    384,000?

6        Q.    Yeah.  Do you see that, sir?

7        A.    Yes, sir.

8        Q.    Okay.  So then it says, Michael Stephen Galmor

9    loaned funds to Galmor's/G&G Steam Service, Inc.  In turn,

10   Galmor's/G&G Steam Service, Inc., distributed those funds to

11   Galmor Family Limited Partnership to pay payroll obligations

12   and medical insurance for the partnership employees and also

13   for medical aid for the care of Michael Stephen Galmor's

14   mother.  Do you see that, sir?

15       A.    Yes, sir.

16       Q.    Sitting here today, do you still believe that that

17   is true and accurate?

18       A.    Yes, sir.

19       Q.    Okay.  How was that $384,000 number calculated, do

20   you know?

21       A.    It came out of the check -- out of the computer.

22       Q.    Did you pull that number out or did someone do it

23   for you?

24       A.    Someone did it for me.

25       Q.    Okay.  Is there any kind of written contract or

1  promissory note that you're aware of where the family

2  partnership promises to pay that back?

3      A.    No, sir, I don't guess.

4      Q.    Is there any kind of written document or partner -

5  - or -- or promissory note between you and Galmor's/G&G

6  where Galmor's/G&G promises to pay you that back?

7      A.    No, sir.

8      Q.    When -- when you --

9            So when you loaned these funds to Galmor's/G&G,

10  did you expect Galmor's/G&G to pay you back those funds?

11      A.    Yes, sir.

12      Q.    Okay.  You didn't think it was just contributing

13  to your equity position to protect your equity?

14      A.    No, sir.

15      Q.    Okay.  Why didn't you do a promissory note?

16      A.    Well, I'm not used to sitting with guys like you.

17  Usually a handshake gets you there.

18      Q.    But you can't shake hands with yourself, right?

19      A.    Yeah, that's it.  Well, I don't -- So all I'm

20  saying is, those moneys were spent for my mother and they

21  come out of my pocket, so...

22      Q.    The 384,000?

23      A.    Yes, sir.

24      Q.    Okay.  Do you -- Do we know or do you know when

25  those $384,000 were accrued, like over what period of time?

1       A.    They're in the register in the checkbook.  I mean,

2    they're in the computer.

3       Q.    **The computer that Mr. Ries has?**

4       A.    Yes, sir.

5       Q.    **Okay.**

6       A.    Yes, sir.

7       Q.    **Do you know whether they were somehow accounted**

8    **for in that computer as a loan or -- or -- or I mean, are**

9    **they -- are they somehow -- somehow labeled in a way that we**

10   **could add them up to this $384,000 number?**

11      A.    They may have advances on them or -- I don't know

12   that.

13      Q.    **Okay.  The next line item, sir, Amount owed to**

14   **debtor by Galmor Family Limited Partnership.  Michael**

15   **Stephen Galmor loaned funds to Galmor's/G&G Steam Service,**

16   **Inc.  In turn, Galmor's/G&G Steam Service, Inc., distributed**

17   **those funds to Galmor Family Limited Partnership to pay off**

18   **a handicap van for his mother that was financed at First**

19   **State Bank.**

20      A.    Yes.

21      Q.    **Did I read -- okay.**

22            **Sitting here today, do you believe that to be**

23   **correct?**

24      A.    Yes, sir.

25      Q.    **Okay.  And true?**

 1       A.    Yes, sir.

 2       Q.    Okay.  The family partnership never owned that

 3  handicap van, did it?

 4       A.    I'm not sure how it's titled.

 5       Q.    If the family owner -- partnership owned that

 6  handicap van, would you have expected it to be listed on the

 7  tax schedules?

 8       A.    I don't know about that, sir.

 9       Q.    Okay.  So tell me about this, this handicap van.

10  Who was -- It was purchased for your mom, I take it?

11       A.    Yes, sir.

12       Q.    Do you know when it was purchased?

13       A.    No.  She broke her leg completely off up here.

14  She had a lung worked on at BS -- at one of the hospitals.

15  And her and Becky Morgan, they come up to get inspected and

16  she stepped on a rail like, kind of like today, and her foot

17  slipped through the side rail on the car and it broke her

18  leg in three places and her ankle.  So she couldn't get

19  around.

20            And rather than -- all the pickups that we owned

21  had -- were F-150s or bigger, she had to crawl up in them.

22  So we purchased that van through the bank so we could get

23  her back and forth, 'cause Becky couldn't handle her.  She

24  was hard for me to handle her.  So we bought that van to get

25  her back and forth to her doctor.

1    Q.    But do you remember who actually purchased that

2  van, who actually owned the title to that van?

3    A.    I -- No, I don't know how it's titled.  I know

4  that the -- we still have it.

5    Q.    Okay.  Where is the van?

6    A.    It's at my mother's.

7    Q.    Okay.  Is it used at all?

8    A.    No, it's just kind of sitting there right now.

9    Q.    Do you remember who got the loan at First State

10  Bank to finance that van?

11    A.    Mmm.  No, I sure don't.

12    Q.    Okay.  Do you know whether there is any promissory

13  note or written agreement whereby the family partnership

14  promises to pay back that amount?

15    A.    No, sir.

16    Q.    There is no such agreement --

17    A.    No, sir.

18    Q.    -- written agreement?  Okay.

19        Then the last, the last entry says, Amount owed to

20  debtor by Galmor Family Limited Partnership.  Michael

21  Stephen Galmor loaned funds to Galmor's/G&G Steam Service,

22  Inc.  In turn, Galmor's/G&G Steam Service, Inc., distributed

23  those funds to Galmor Family Limited Partnership to pay the

24  wages of Michael Stephen Galmor and Deena Carter because the

25  Galmor Family Limited Partnership couldn't support the

1  wages, $500,000.

2         Do you see that, sir?

3     A.   Yes, sir.

4     Q.   Do you still believe that that is true and correct

5  sitting here today?

6     A.   Yes, sir.

7     Q.   Okay.  Were you entitled to wages by the -- or

8  from the Galmor Family Limited Partnership?

9     A.   Yes, sir.

10     Q.   Had you ever collected wages from the family

11  partnership?

12     A.   I think I collected one check.

13     Q.   Do you remember when that was?

14     A.   Right after my dad died.

15     Q.   Was there a -- a set annual amount that you think

16  you should have been paid?  Like was -- was there a salary?

17     A.   My dad told me he'd pay me $100,000 a year to

18  operate the FLP or the company -- the -- his operations

19  after -- if he passed away, and that's where that number

20  come from.

21     Q.   Okay.  Did you ever really expect to get that

22  money back for working for the family partnership?

23     A.   I damn sure did.

24     Q.   Why didn't you pay yourself a salary then when you

25  could have?

1    A.    There wasn't no money to pay a salary.

2    **Q.    There was never any money since 2014, to pay a**

3 **salary?**

4    A.    Not enough to pay me a salary and -- and pay

5 everyone else.

6    **Q.    So you believed that you were entitled to**

7 **compensation for managing the -- the family partnership?**

8    A.    Yes, sir.

9    **Q.    Okay.  Did you ever share that with any of your**

10 **siblings?**

11    A.    Sir?

12    **Q.    Did you -- Did you ever say that to any of your**

13 **siblings?**

14    A.    No, sir.

15    **Q.    Okay.  Was that written down in any kind of**

16 **agreement or employment agreement or anything?**

17    A.    No, sir.

18    **Q.    Okay.  And Deena Carter, did she work for the**

19 **family partnership?**

20    A.    Yes, sir.

21    **Q.    But she worked for Galmor's/G&G as well, right?**

22    A.    Yes, sir.

23    **Q.    And for some of the other businesses?**

24    A.    Whatever we had going on, Deena worked for us,

25 yes, sir.

1    Q.    So how much of that $500,000 do you -- do you --

2  do you think should have been her wages?

3    A.    I can't answer that.

4    Q.    Why would you think that she'd be entitled to any

5  wages?

6    A.    She did all the -- all the paperwork for the FLP.

7    Q.    And did she ever receive a salary or paycheck from

8  the FLP?

9    A.    She drew one check also.

10   Q.    When was that, sir?

11   A.    About two months after my dad passed away.

12   Q.    Are you saying, sir, that she worked for the FLP

13  for five years, expecting to be paid, but was never paid

14  after that?

15   A.    Yes, sir.

16   Q.    Have you discussed that with her?

17   A.    I told her she ought to sue them, yes, sir.

18   Q.    Sue the family partnership?

19   A.    Yeah, for what she had coming.

20   Q.    You're the manager of the family partnership and

21  you told her to sue the company that you were managing?

22   A.    For not getting paid.  I mean, she has a right to

23  get paid what she's got.  Just because she got caught in

24  this doesn't mean she has to suffer through it.

25   Q.    How -- how -- okay.  And I'll depose Deena Carter

1   tomorrow, so she might know more about it.

2          But was Deena Carter's sole employment for your

3   companies or did she work for other people as well?

4      A.    I can't answer that.

5      Q.    Okay.  The work that she did for Galmor's --

6          So she worked for Galmor's/G&G, right?

7      A.    Yes, sir.

8      Q.    How much per year was her salary at Galmor's/G&G?

9      A.    I don't know that.

10     Q.    Okay.  Didn't you expect her, as part of her job

11  for Galmor's/G&G, to do work for the other companies?

12     A.    No, sir.

13     Q.    So you're saying that, that you had an

14  understanding with Ms. Carter that she would be paid

15  separately by the family partnership for the work she did

16  for the family partnership?

17     A.    That's what my dad told her.

18     Q.    That's what your dad told her or you?

19     A.    Yes, sir, her.

20     Q.    Her, okay.

21          Is there any written contract or agreement that

22  you know of that would support that, that salary?

23     A.    No, sir.

24     Q.    So that $500,000, that would be from shortly after

25  your father passed away until the filing of this document?

```
 1        A.   I would assume.

 2        Q.   Okay.  The -- The $24,000 for the van, when was

 3   that, sir?  When did that arise?

 4        A.   I went to probate my mother's will, and we needed

 5   to clear that van so we could get the probate done.  And

 6   that's when Leslie protested all that.  So that's when it --

 7        Q.   Well, your mom -- your mom was still alive when

 8   you bought that van, right?

 9        A.   Yes.  She was hurt.  She was hurt, yes, sir.

10        Q.   So it would have been before July of 2016?

11        A.   What'd you --

12        Q.   It would have been before -- I'm sorry -- June of

13   2016?

14        A.   What's --

15        Q.   I'm sorry.  I apologize.

16             Your mom died in 2016?

17        A.   Yeah, April -- I mean in March 23rd, yes, sir.

18             MR. RIES:  I think it's 2017.

19             MS. ZAIONTZ:  It's 2017.

20             THE WITNESS:  Twenty-seven?

21   BY MR. RUKAVINA:

22        Q.   I'm sorry.  Your mom died in 2017?

23        A.   I thought it was 23.  But maybe it is 27.  I don't

24   know.

25             MS. ZAIONTZ:  It was the 23rd.
```

```
 1            THE REPORTER:  What's your name, ma'am?
 2  BY MR. RUKAVINA:
 3       Q.   Of what year?
 4            MS. ZAIONTZ:  Shawn.
 5            MS. PRITCHARD:  2017.
 6            MR. RUKAVINA:  Twenty seven -- okay.
 7            MR. RIES:  I filed a certificate.  Just so, I mean
 8  I'm not picking a number out of thin air.
 9            MR. RUKAVINA:  Yeah, that -- that ought to be
10  ascertained.  Okay.  That's --
11            MR. RIES:  Yeah.
12  BY MR. RUKAVINA:
13       Q.   Do you remember now that your mom died in 2017?
14       A.   Yeah, I -- I do.
15       Q.   Okay.  'Cause I -- I'd written down earlier you
16  said 2016, but people -- that's a simple mistake.
17            Okay.  So that debt would have arisen, at the
18  latest, before March 23rd of 2017?
19       A.   Sir?
20       Q.   Yeah.  That $24,000 debt --
21       A.   Came after her death.  I mean that's when I paid
22  that money.
23       Q.   Oh.  You paid off the -- the van after her death?
24       A.   Yes.
25       Q.   Okay.  Do you --
```

1          Was it soon after her death or late after her

2   death?

3       A.   I'll have to go back and look when we did the --

4   we were getting ready to file for the probate.

5       Q.   Okay.  The -- Going back to the lineup -- line

6   item before, the $384,000, again, you always considered that

7   a loan, right?

8       A.   Advance.

9       Q.   Michael Stephen Galmor loaned funds to

10  Galmor's/G&G.  We're not talking about the rock quarry

11  advance now.  We're talking about the $384,000.

12      A.   Sir, Mrs. -- the Tarbox's secretary helped me fill

13  this out.  I can't run a typewriter.  So if that's what they

14  put on there, I mean, I -- I could -- I got to say that's

15  okay.  But I -- that's not -- as far as I'm concerned, it

16  was all advances.

17      Q.   Were you literally speaking to the secretary as

18  she was typing this out?

19      A.   Deena and I both were sitting there when we were

20  working these things out.  The -- She sat there.  She come

21  on a Thursday, a Friday, and a Saturday, I believe, to help

22  us and like three weekends to do it, yes, sir.

23      Q.   Okay.  Define for me what you mean by advance when

24  you just said advance.

25      A.   Well, that's just like I said, it's advances due

```
 1  to come back.
 2      Q.   Okay.  That $384,000, you see that there, sir?
 3  Over what period of time did -- did that accrue or arise?
 4      A.   I can't tell you that.
 5      Q.   Was it over a multiple number of years or was
 6  there one or two huge things that happened that necessitated
 7  that?
 8      A.   I can't answer that to you.  It's in the computer.
 9  We can go to the computer and dissect it from there, if you
10  want.  I mean --
11      Q.   But you understand that I'm not trying to be
12  funny.  I don't have that computer.
13      A.   Well --
14      Q.   And Mr. --
15      A.   -- I'm sorry.  I just --
16      Q.   Mr. Ries hasn't --
17      A.   I just assumed that you had access.
18      Q.   No, I do not, that's why I'm asking these
19  questions.
20      A.   Leslie's got all the --
21      Q.   No, sir.
22      A.   We give her the --
23      Q.   We'll talk --
24      A.   -- card out of the deal.
25      Q.   We'll talk about it with Mr. Ries later, but we
```

1  don't have that.

2       A.   Okay.

3       Q.   In fact, that's why I was asking you about the

4  passwords.

5       A.   Okay.

6       Q.   Okay.  And in the first -- the first category,

7  $186,000, to the best of your knowledge, that -- that would

8  have arisen on the dates that we saw on Exhibit 4?

9       A.   Yes, sir.

10      Q.   Okay.  Good.

11           Why did you, in all those years of being owed

12  those moneys, not take any action against the family

13  partnership to collect on those moneys?

14      A.   I felt like if we keep this all together, we keep

15  our family together, the land and what my mom and dad built,

16  but...

17      Q.   Okay.  Was -- okay.

18           So the family partnership was running some

19  businesses at a loss, right?

20      A.   Pretty much, yes, sir.

21      Q.   The grazing business, right?

22      A.   Yes, sir.

23      Q.   Okay.  Why didn't you just end those non-

24  profitable businesses?

25      A.   I can't answer that.  I -- I really thought it's

```
 1  just farming is like gambling, you know next year might be a

 2  better one.

 3      Q.   Did you ever ask any of the other partners to

 4  approve those loans?

 5      A.   No, sir.

 6      Q.   Okay.  The next exhibit is Exhibit 4.

 7          THE REPORTER:  Exhibit 5.

 8          (WHEREUPON, Exhibit 5 was marked for

 9  identification.)

10          MR. RUKAVINA:  Which one was Exhibit 4?

11          THE REPORTER:  There's -- your spreadsheet.

12          MR. RUKAVINA:  Mr. Galmor, may I have the

13  spreadsheet back?  Looks like I forgot to label it.  Thank

14  you.  You know what?  I didn't put a label on it.

15          MR. SHERWOOD:  Thank you, sir.

16  BY MR. RUKAVINA:

17          Exhibit 5, Mr. Galmor, is the statement of

18  financial affairs filed by G&G in its Chapter 11 case.

19      A.   Are you through with this?

20      Q.   Yes, sir.

21          Sir, I take it you've seen this document before?

22      A.   Yes, sir.

23      Q.   Okay.  And you -- you did sign it under penalty of

24  perjury?

25      A.   Yes, sir.
```

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

CELEBRATING 40 YEARS IN BUSINESS

PAPP 0222

1    Q.    Okay.  Sitting here today, do you have any reason

2  to doubt the accuracy of this document at the time that it

3  was signed?

4    A.    No, sir.

5    Q.    Okay.  So in the year 2016, gross revenue of G&G

6  was $4.2 million and change?

7    A.    If that's what they read, that's probably true.

8    Q.    Okay.  You're going to have to work with me a

9  little bit 'cause this is some kind of small print.  But on

10  the -- on page 3 out of 10, there's a line item says line 4,

11  Payments or other transfers of property made within one year

12  before filing this case that benefited any insider.

13    A.    Which line's it on, sir?

14    Q.    It's line 4, line item 4.

15    A.    Okay.

16    Q.    It's -- It's small print.  I apologize.

17          But it's asking you to list payments or transfers,

18  including expense reimbursements, made within one year

19  before filing this case on debts owed to an insider, et

20  cetera, et cetera.

21          Do you remember discussing this with the secretary

22  at Mr. Tarbox's firm?

23    A.    I don't -- I don't believe.  I'm sure we did, but

24  I don't remember that.

25    Q.    Okay.  Here's by question.  Do you -- I know

1    you're not a lawyer, okay.

2           But do you have any understanding as to whether

3    the family partnership was an insider of Galmor's/G&G?

4    A.   No, sir.

5    Q.   Okay.  My question is, on -- on -- on question 3,

6    which looks at 90-day payments and question 4, which looks

7    at one-year payments to insiders, I don't see any payments

8    to the family partnership for quarry royalties.

9           Do you have any explanation for why they're not on

10   there?

11   A.   No, sir.

12   Q.   Again I'm going -- I'm going back to my question

13   as to whether after that spreadsheet was prepared, the --

14   the -- G&G just didn't pay the family partnership for that

15   rock because the family partnership owed it money back.

16          You don't have any memory of anything like that?

17   A.   No, sir, I don't.

18   Q.   But you have no explanation for why no payments to

19   the family partnership are listed in this section 4?

20   A.   No, sir.

21   Q.   Okay.  Go to question 13, please; it's going to be

22   on page 6 of 10.

23   A.   Okay.

24   Q.   Okay.  Page (sic) 13 says, List any transfers of

25   money or other property by sale, trade, or otherwise.

```
 1              This does not list any sale to Advantage, right?

 2   Now, it only asks you to go back two years.  It only asks

 3   you to go back two years.

 4        A.   Okay.

 5        Q.   So that would mean that the -- that -- that you

 6   would have had to answer that only if the Advantage had

 7   happened before, let's say July 2016.

 8        A.   Right.  Okay.

 9        Q.   So we got to go back and look at when the

10   Advantage sale actually happened.

11        A.   Okay.  That's fine.

12        Q.   Okay.  But, okay.  Well, I -- I won't burden you

13   with that.  We'll just go back and find out when that sale

14   happened.

15        A.   I guess why were you making loans to G&G and then

16   G&G making advances to the family partnership?  Didn't G&G

17   just have its own money to do that?

18        A.   I can't answer that.  I'm sure someone advised me

19   to do it that a way, but I -- I'm not sure why it happened

20   that way.

21        Q.   Okay.  I'd like to go back, sir, to Exhibit 2;

22   that's the 2017 partnership agreement.

23              Before we go into it, I remember you saying that

24   one of those tractors we discussed was on your son's,

25   Jason's property.  Do you remember that?  Or some -- some
```

1  vehicle was on his property.

2       A.   No.  What -- I mean which --

3       Q.   I might be -- I might be wrong.  But, but I

4  thought that when we were talking about some of those

5  tractors of the family partnership, that you said that one

6  of them was on your son's property?

7       A.   No, I don't --

8       Q.   Okay.

9       A.   I don't think that.

10      Q.   Okay.  To the best of your knowledge, is any

11 property of the family partnership, any of these vehicles,

12 et cetera, on your son's property today?

13      A.   I'm -- Not that I'm aware, but I don't know.

14      Q.   I could be wrong.  I could be wrong.

15           If you'll go into this -- into this part -- into

16 this tax return, please, and it's going to be a few pages

17 in, it's called Schedule L.

18           Are you on Schedule L, sir?

19      A.   No, sir, not yet.

20      Q.   Might I help you or just --

21      A.   Yes, sir --

22      Q.   -- you keep going?

23      A.   -- that's fine.  You know what you're looking for,

24 not me.

25      Q.   I do.  The mess here is that I've given you the

1  single-space one -- single-page ones and I've take the

2  double-page one.  So it's going to take me a second.

3  Schedule K, Schedule -- Schedule J, K, L.  There it is.

4          Are you there, Matt?

5          MR. SHERWOOD:  No.  What's -- it's -- okay.

6          THE WITNESS:  Five.

7          MR. RUKAVINA:  On -- On yours -- It's the seventh

8  page in on yours, Matt.

9          MR. SHERWOOD:  Okay.  Thanks.

10         MR. RUKAVINA:  And the top of it says page 5 --

11         MR. SHERWOOD:  Okay.

12         MR. RUKAVINA:  -- for some reason.

13         MR. SHERWOOD:  Okay.

14  BY MR. RUKAVINA:

15     Q.   Are you there by any chance?

16     A.   Yep.

17     Q.   Okay.  What I want to ask you about here, Mr.

18  Galmor, is the portion of Schedule L that talks about

19  liabilities and capital.  Line 19a says loans from partners.

20     A.   Okay.

21     Q.   And those are blank, right?

22     A.   Yes, sir.

23     Q.   Line 19b says mortgages, notes, bonds payable in

24  one year or more, $640,000 and 593 at the end of the year.

25  Do you see that, sir?

 1     A.    Yes, sir.

 2     Q.    That was just a mortgage on some of the land,

 3  right?

 4     A.    I -- I can't answer that.

 5     Q.    Okay.  Then it says other liabilities, attach

 6  statement.  And those are zero, right?

 7     A.    Yes, sir.

 8     Q.    And it says above it on line 17, it says, other

 9  current liabilities, see statement 4, $174,000.  Do you see

10  that?

11     A.    Yes, sir.

12     Q.    This is the partnership return for 2017 for the

13  family partnership, by which time you are saying that the

14  family partnership owed G&G more than a million dollars for

15  loans and advances.

16          And I'm asking you why aren't those loans and

17  advances listed here as liabilities of the family

18  partnership's to G&G?

19     A.    I can't answer that.  I don't -- I don't know why.

20     Q.    Ms. Fuchs prepared this?

21     A.    Yes, sir.

22     Q.    Okay.  And you trusted her to do it right?

23     A.    Yes, sir.

24     Q.    And you made all the information available to her

25  that she would need to have available to her, right?

1    A.    She had access to the computer, yes, sir.

2        Q.    Did you ever discuss with Ms. Fuchs these advances

3    or loans that G&G and you were making to the family

4    partnership?

5        A.    No, sir, I don't think so.

6        Q.    But you -- And you haven't talked to her in four

7    or five years?

8        A.    At least.

9        Q.    Okay.  Has she tried to reach you in the last few

10    months?

11        A.    Not that I'm aware of.

12        Q.    Okay.  So if there is a mistake here, it would be

13    Ms. Fuch's mistake?

14        A.    Well, I would assume.  I -- I'm not gonna point a

15    finger at anybody; I don't know.

16        Q.    But you have no memory discussing with Ms. Fuchs

17    what should or should not appear on this Schedule F?

18        A.    No, sir.

19        Q.    What, by the way, when we talked about the G&G

20    advances and loans, in your own mind, when would those

21    advances and loans be repaid by the family partnership?

22        A.    When they started receiving money when we got

23    flush again.

24        Q.    So no set number of years?

25        A.    No, sir.

```
 1        Q.   Okay.   I'm handing you now Exhibit 6.   These are

 2   your amended schedules filed in your personal Chapter 11

 3   case.

 4             (WHEREUPON, Exhibit 6 was marked for

 5   identification.)

 6   BY MR. RUKAVINA:

 7        Q.   And if we go some pages into it, sir -- I'll point

 8   you to where.   Question 4, 4.1, talks about aircraft, a 1955

 9   Cessna.  Did you own that, that aircraft?

10        A.   Yes, sir.

11        Q.   Do you still own it?

12        A.   No, sir.

13        Q.   How'd you come to own that aircraft?

14        A.   Bought it from some people at Elk City?

15        Q.   It wasn't your dad's aircraft?

16        A.   No, sir.

17        Q.   Did your dad ever own an aircraft?

18        A.   Yes, sir.

19        Q.   What did he own, do you know?

20        A.   A Mark 21 Mooney.

21        Q.   What year, do you know?

22        A.   '64.

23        Q.   What happened --

24        A.   '63.

25        Q.   What happened to that aircraft?
```

1      A.    Sitting in the hangar.

2      Q.    **Where?**

3      A.    Shamrock.

4      Q.    **Okay.  Who owns that now, do you know?**

5      A.    I guess the family limited partners or however

6  it's registered.

7      Q.    **What hangar in Shamrock?**

8      A.    Just one.

9      Q.    **I mean -- I'm not trying to be smart.**

10           **Is there like a little airport there or --**

11     A.    There's a airport at Shamrock and it's in the

12  hangar.

13     Q.    **Okay.  Have you been paying for -- for that hangar**

14  **all these -- all this time?**

15     A.    No, sir.

16     Q.    **Okay.  Do you own that property that the hangar**

17  **sits on?**

18     A.    No, sir.

19     Q.    **Okay.  So if you go to page 15 of 20, please.  On**

20  **the top right, there's a 15 of 20.**

21           **And line 30, sir, talks about other amounts**

22  **someone owes you.**

23     A.    Yes, sir.

24     Q.    **Amount owed to debtor by Galmor Family Limited**

25  **Partnership, claim, $1,310,807.  Do you see that?**

```
 1        A.    Yes, sir.

 2        Q.    Okay.  Is that still true and correct to your

 3   knowledge?

 4        A.    If I put it on there, that's what -- it should be

 5   correct.

 6        Q.    Okay.  When did you personally advance or loan

 7   those funds to the family partnership?

 8        A.    Sir, there'd be in the computer.

 9        Q.    Was it over the course of multiple years?

10        A.    Yes, sir, I'm sure.  I mean, I can't answer that.

11        Q.    Where'd you have the money?  Where did the money

12   come from for you to be able to -- to advance such large

13   sums to the family partnership?

14        A.    Well, I can't answer that either.

15        Q.    When you say it would be in the -- in the

16   computer, would it be in the Family Limited Partnership's

17   books or in your personal books?

18        A.    All of those are in that computer.  Both -- All of

19   it's listed in there, 'cause they're on the back side in

20   that computer.  So the numbers was generated out of that

21   computer for this.

22        Q.    Is there any kind of written agreement or

23   promissory note evidencing this $1.31 million loan?

24        A.    No, sir.

25        Q.    Can you give me any information, sir, from memory,
```

1   as to how often or when or what the largest amount of these

2   loans or advances was?

3       A.   No, sir.

4       Q.   Were they always done by check?

5       A.   Yes, sir.

6       Q.   Okay.  Were they ever done by cash?

7       A.   No, sir.

8       Q.   Why were you loaning money to the Galmor Family

9   Limited Partnership?

10      A.   To keep it operating.

11      Q.   So both you personally were loaning money and

12  Galmor's/G&G was loaning money to the family partnership to

13  keep it operating?

14      A.   Yes, sir.  That's how it's wrote down.  That's how

15  it was -- That's how it was wrote out of the checkbooks.

16      Q.   And you can't tell me over the course of how many

17  years that was?

18      A.   No, sir.

19      Q.   Well, if we go back to Exhibit 2, Mr. Galmor, the

20  first page of the actual tax return.  So it's a few pages

21  in, sir. It's Form 1065, if you'd let me know when you're

22  there.

23      A.   How many pages in, you think?

24      Q.   Well, that's the problem 'cause you got the

25  single-sided one.  You know it's faster if I just flip it

1    for you.  Thank you.

2              There you go, Mr. Galmor.  Are you looking at the

3    top it says Form 1065?

4         A.   Yes, sir.

5         Q.   So it looks like in the year 2017, the limited

6    partnership lost about $96,000.  Do you see that?

7         A.   Yes, sir.

8         Q.   Okay.  So it had about $80,000 in gross receipts,

9    right?  At the top.

10        A.   Okay.  Yes, sir.

11        Q.   And it had a loss from its farming operation of

12   137,000.  You see that?

13        A.   Yes, sir.

14        Q.   And then Ms. -- I apologize.  I speak German.  But

15   for me --

16        A.   Fuchs.

17        Q.   Yeah.  For me to pronounce that in German would be

18   rude.

19             Ms. Fuchs calculated that there was a loss of

20   96,000.  You see that?

21        A.   Yes, sir.

22        Q.   And is that about the case that every year or so

23   the family partnership was losing about $100,000 or -- I

24   mean, do you remember?  Or we just have to go through each

25   of these records?

1    A.   Well, I don't remember, but...

2    Q.   Okay.  Well, I mean, my question to you, and I'm

3  not trying to be a smartass, is, if the family partnership

4  is losing $100,000 a year and you're financing it, then how

5  do we get to a $2.5 million number that you and G&G have

6  financed in the course of five or six years?

7    A.   Sir, you'll have to -- it's all in the computer.

8  I took all those numbers out of that computer.

9    Q.   You took the numbers out of the computer?

10   A.   No, I didn't take it.  They were taken from the

11 computer.

12   Q.   Yeah.  So every time -- Well, let me ask this as

13 well.  This one point -- Going back to your schedule.  The

14 $1.31 million that is owed to you --

15   A.   Yes, sir.

16   Q.   Was each one of those a transfer from you to the

17 family partnership?  Or were some of those where you are

18 personally paying a bill of the family partnership or buying

19 a -- a TV, I mean, whatever, for the family partnership?  Do

20 you understand my question?

21   A.   Yes, sir.

22   Q.   Okay.  So what --

23        Was it a combination of these?  Or was it always a

24 -- a check from you for the family partnership?

25   A.   I -- from -- A check straight across so we could

1  track it.

2      Q.   And you actually expected to get that money back

3  from the family partnership?

4      A.   Yes, sir.

5      Q.   As a debt of the family partnership?

6      A.   Yes, sir.

7      Q.   Did you have any -- any sense of when you would

8  get that debt back; in other words, what time?

9      A.   No, sir.

10     Q.   I'm -- I don't want to know what you discussed

11  with Mr. Tarbox.

12          But before you listed these debts of the family

13  partnership to you and G&G, did you tell anyone else that

14  those debts were actually owing to you?

15     A.   No, sir.

16     Q.   No, you did not?

17     A.   Hmm-mm.

18     Q.   Did you believe that by listing these debts that

19  the family partnership was owing to you, that you would get

20  money back from the bankruptcy?

21     A.   No, sir.

22     Q.   Okay.  Did you believe that if you listed the debt

23  from the family partnership to G&G, that you would get money

24  back from its bankruptcy?

25     A.   No, sir.

1    Q.    So why did you list these debts?

2    A.    They told me to be authentic.

3    Q.    Okay.  Did you expect that Mr. Tarbox -- I'm

4  sorry.

5          Did you expect that Mr. Ries would eventually sue

6  the family partnership to get these moneys back?

7    A.    No, sir; had no idea of that.

8    Q.    Sir, Exhibit 7 is going to be the statement of

9  financial affairs filed in your personal Chapter 11 case.

10          (WHEREUPON, Exhibit 7 was marked for

11  identification.)

12  BY MR. RUKAVINA:

13    Q.    Do you have any reason --

14          Well, first of all, do you remember signing these

15  --

16    A.    Yes, sir.

17    Q.    -- under penalty of perjury?  Right?  In the --

18    A.    Yes, sir.

19    Q.    Did your --

20          Do you have any reason, to date, to doubt that

21  they're -- that they were correct when you prepared them?

22    A.    I feel like they were correct, yes, sir.

23    Q.    Okay.  We might look at these a little bit in the

24  future, but just set them aside for now.

25          Just to round off this discussion about

1  partnership returns, I'm going to give you the 2016

2  partnership return for Galmor Family Limited Partnership,

3  which is going to be Exhibit 8.

4          (WHEREUPON, Exhibit 8 was marked for

5  identification.)

6  BY MR. RUKAVINA:

7      Q.   If you'll just give me a second, sir.  Each one of

8  these is different every year.

9          So if you look at Form 1065.  Again, it's a few

10 pages in.

11     A.   Okay.

12     Q.   Do you see that at the bottom it says ordinary

13 business loss, $99,000 and change?

14     A.   Yes, sir.

15     Q.   Do you have any reason to dispute that amount?

16     A.   No, sir.

17     Q.   Okay.  Do you have any reason to believe that you

18 would have advanced or loaned the family partnership more

19 than $99,000 in the year 2016, to cover its losses?

20     A.   I have no idea.

21     Q.   Did you ever advance the family partnership money

22 to purchase a hard asset?

23     A.   Not that I'm aware of.

24     Q.   Okay.  And a few pages in, sir, we're going to

25 look at that Schedule L again, as in Larry.  Please let me

 1  know when you're there.

 2           Here, let me -- I might just help you.  I do

 3  apologize 'cause ours are -- yours are single-paged and mine

 4  are double-paged. It's right here.

 5           So again, Schedule L --

 6      A.   Thank you.

 7      Q.   -- I want to focus on the liabilities and capital.

 8  Zero for loans from partners.  Zero for other liabilities.

 9  And then there's 677,000 for mortgages and $174,000 for

10  other current liabilities.  You see that, sir?

11      A.   Yes, sir.

12      Q.   Do you have any explanation --

13           Okay.  By -- By the end of 2016, would you agree

14  that the family partnership owed more than a million dollars

15  to you and G&G by that time?

16      A.   I -- If that's what the books show, that's what

17  they show.

18      Q.   Okay.  Well, that's 'cause that's -- that's

19  because Schedule L says balance sheet per books, right?

20      A.   Yes, sir.

21      Q.   So this should be, the accountant should just be

22  taking whatever's on the books and putting it here, right?

23      A.   Yes, sir.

24      Q.   Do you have any explanation for why Ms. Fuchs

25  wouldn't list the -- the loan that the partnership owed to

1    you and to G&G?

2        A.    No, sir.

3        Q.    Okay.  By the way, Schedule 4 -- You don't have to

4    look at it.  I'll tell you -- I mean you can, but --

5            If you look at this balance sheet liabilities and

6    capital, line 17, other current liabilities, the $174,000

7    amount, it says, see statement 4.  Statement 4 says, sale

8    advance 174,000 and change.

9            Do you have any idea what sale advance is?

10       A.    No, sir.

11       Q.    Okay.  If the 2015, 2014, and 2013 tax returns do

12   not list any debts like we just looked at here, to G&G or to

13   you personally -- I'm just going to tell you that they

14   don't, but --

15       A.    Okay.

16       Q.    -- rather than wasting time going through it.

17       A.    Yes, sir.

18       Q.    Would you have any explanation for why they would

19   not?

20       A.    No, sir.

21       Q.    Okay.

22           MR. SHERWOOD:  Davor, are you at a transition spot

23   or a --

24           MR. RUKAVINA:  Yes, I am.

25           MR. SHERWOOD:  Can we take a break?

1          MR. RUKAVINA:  Yeah, of course.

2          MR. SHERWOOD:  Thanks.

3          VIDEOGRAPHER:  Going off record; it's 2:12.

4          (WHEREUPON, a recess was taken.)

5          VIDEOGRAPHER:  Back on the record; it's 2:26.

6    BY MR. RUKAVINA:

7      Q.   Mr. Galmor, you personally and G&G, you all -- you

8    all were making advances to the family partnership because

9    the family partnership didn't have enough revenue to cover

10   its costs; is that --

11     A.   Basically, yes.

12     Q.   Okay.  And the costs of the family partnership,

13   some of them were for some mortgages on the lands, right?

14     A.   I can't answer that.

15     Q.   Do you have any memory as to whether there were

16   any liens against the lands that the family partnership

17   owned?

18     A.   I'm not aware of any liens, except for the ones

19   that was financed.

20     Q.   That's what I mean.  What -- okay.

21     A.   Great Plains Bank and the Capital Credit.

22     Q.   That's what I'm -- so, okay.

23          Great Plains Bank and Capital Credit financed some

24   of the land that the family partnership owned, right?

25     A.   Yes, sir.  Mm-hmm.

```
 1        Q.    And the family partnership had to be making

 2   periodic payments to them, right?

 3        A.    Yes, sir.

 4        Q.    And did you always basically keep those payments

 5   current to avoid a foreclosure?

 6        A.    Best we could, yes, sir.

 7        Q.    Okay.  Did any of those two banks ever try to

 8   foreclose on the property of the family partnership?

 9        A.    Great Plains did, yes, sir.

10        Q.    Did they actually foreclose?

11        A.    I think they had the sheriff's sale couple of

12   times, yes, sir.

13        Q.    What happened, do you know?

14        A.    No, I don't know what stopped it.  I just know

15   that they -- they had a -- a sheriff's sale that they bought

16   at.

17        Q.    Okay.  So is it -- is it your view that -- that

18   the sheriff's sale actually closed and -- and the family

19   partnership lost some real property that it owned?

20        A.    I don't think they ever closed.  I think Leslie

21   bought the -- the note out from Great Plains Bank.

22        Q.    Did the family partnership in '15, '16, '17, '18,

23   have employees other than you and Ms. Carter?

24        A.    Early on there was the -- the labor hands, like I

25   said, Justin Stroup and Hayden Duncan and Bob O'Gorman, and
```

 1  Kuco (phonetic), the Mexican boy that works for us.

 2      Q.    **When -- Did they ever stop being employees?**

 3      A.    Sir?

 4      Q.    **Did they ever not --**

 5            **Did they ever stop being employees, those people**

 6  **you mentioned?**

 7      A.    Yes.

 8      Q.    **When?  When was that?**

 9      A.    When we realized that there wasn't enough money to

10  keep paying them.

11      Q.    **Approximately what year was that?**

12      A.    I can't remember that.  I can go look at the

13  payroll schedules and see when I quit paying them.

14      Q.    **Did the family partnership have other periodic**

15  **expenses, like utilities and insurance and stuff like that?**

16      A.    Yes, sir.

17      Q.    **And you -- you made it very clear and you were**

18  **passionate about it that you were advancing money to help**

19  **pay for your mom, right?**

20      A.    Well, if that's how you want to say it; the FLP,

21  the family operation.

22      Q.    **The family operation was -- was paying for some of**

23  **the mother's expenses, but you and G&G were advancing money**

24  **to the FLP to let them pay that, right?**

25      A.    Yes, sir.

1    Q.    Okay.  Why did your mom need money?

2    A.    Her gas checks become minimal.  I mean there

3  wasn't money to -- the Barkers -- there wasn't any money

4  coming in to help pay the bills.

5    Q.    Well, your mom owned her house free and clear,

6  isn't that correct?

7    A.    Yes, sir.

8    Q.    Okay.  Your -- I take it your mom was on Medicare?

9    A.    Yes, sir.

10    Q.    And she probably had some supplemental private

11  insurance?

12    A.    Oh, I don't know about that.

13    Q.    You don't know about that, okay.

14          What other expenses did your mom have?

15    A.    Well, I don't -- just to -- electric, taxes.

16  Those things like that, just normal operating expense for a

17  house.

18    Q.    Can you estimate the -- well, did you -- let me --

19  let me put it this way.

20          So your father died in 2013.  Was it only after

21  that, that the family partnership started paying for your

22  mom's expenses?  Or was it already paying for her expenses

23  before your father died?

24    A.    There was already some transition of equipment and

25  -- Dad was running out of money and we did whatever we could

NAEGELI
DEPOSITION & TRIAL          (800)528-3335
                            NAEGELIUSA.COM

PAPP 0244

1 to keep him in what he needed to operate.

2     **Q.   I guess --**

3     A.   I can't -- I can't tell you exactly when those

4 times started and when they didn't start.

5     **Q.   Is it fair to say that you advanced the family**

6 **partnership over a million dollars to help pay for your**

7 **mom's expenses?**

8     A.   I'm not going to say yes or no on that; I don't

9 know that.

10     **Q.   Is it more than $100,000, do you think?**

11     A.   I'm -- I'm not going to answer that.  I don't know

12 how much it was.  Have to look in the computer and see what

13 the checks were wrote for.

14     **Q.   Okay.  But if you go back to Exhibit 3, that's the**

15 **schedules for G&G.  And I apologize, my accent.  Exhibit 3;**

16 **one, two, three.**

17     A.   Yes, sir.

18     **Q.   Turn to page 6 of 32.**

19     A.   Yes, sir.

20     **Q.   So for the $186,000 entry, you say -- G&G says,**

21 **Debtor advanced money on the rock to be sold so his mother**

22 **could pay her bills.**

23     A.   Okay.

24     **Q.   And then for the $384,000, you talk about to pay**

25 **payroll obligations and medical insurance for employees and**

 1  also for medical aid for the care of Michael Stephen

 2  Galmor's mother, right?

 3      A.   Yes, sir.

 4      Q.   Then the $24,000 was for a van for her benefit,

 5  right?

 6      A.   Yes, sir.

 7      Q.   So doesn't it sound like maybe around $500,000 was

 8  advance for your mother's expenses?

 9      A.   I'm not gonna say that.  I -- I'm not gonna --

10      Q.   Well, did your --

11      A.   I --

12      Q.   -- mom have any extraordinary expenses that needed

13  to be paid?  Did she --

14      A.   Not necessarily.

15      Q.   Did she lead an extravagant life?

16      A.   No, sir, pretty simple.

17      Q.   Okay.  Her house is paid off and obviously she had

18  utilities and other things, but --

19           Well, wow much do you think she needed every year

20  to support her life?

21      A.   I -- I can't answer that.

22      Q.   And I -- I don't mean to be disrespectful to your

23  father.  But didn't your father leave money to take care of

24  her when he passed?

25      A.   He left that oil and gas interest.  And when it

1    was producing, there was enough money to take care of all of

2    his debts plus the land and everything.

3            But when the rail -- when the gas prices dropped

4    and there wasn't no money coming in, we had to do what we

5    could do to -- to keep the money, keep everything like it

6    was in place, hoping that maybe the gas market would come

7    back.

8        **Q.    Okay.  So the -- the gas revenue was financing**

9    **your mother's expenses?**

10       A.    The gas -- The gas supported my dad in every

11   adventure he went in.  But when the profits went down from

12   the gas, things got slim 'cause he put everything on such

13   long-term payments.  And if the gas would stay at $5 or $6 a

14   thousand, we wouldn't have had any of these troubles at all.

15       **Q.    But sir, I'm trying to focus just on your mother's**

16   **--**

17       A.    That's --

18       **Q.    -- expenses.**

19       A.    -- what I'm saying.  That's -- That money was left

20   there for her to live on and to -- for all of us to have.

21   But I can't include the fact that it's -- it didn't happen

22   that way.

23       **Q.    Well, I'm not saying that it didn't.  I'm just**

24   **trying to figure out how much of the money that you earned**

25   **--**

1     A.   I don't know.

2     Q.   But sitting here today, can you remember any

3 extraordinary expense, by extraordinary I mean unexpected

4 large expense or large expense that your mom had towards the

5 end of her life?

6     A.   No, sir.

7     Q.   Did your dad leave any cash money to help your mom

8 after he passed?

9     A.   Not that I'm aware of.

10     Q.   Exhibit 9, sir, is your individual 2017 tax

11 return.

12           (WHEREUPON, Exhibit 9 was marked for

13 identification.)

14 BY MR. RUKAVINA:

15     Q.   Before we go into this, real quick, do you know

16 who the trustee of the contribution trust was after your dad

17 passed?

18     A.   No, sir.

19     Q.   And you don't think you were ever the trustee?

20     A.   I'm not going to say that; I don't know.  I don't

21 understand that part of that -- the whole system, sir.

22     Q.   But in your mind, understanding that you're not a

23 lawyer, you don't think that you were a trustee?

24     A.   I'm not going to answer that question.

25     Q.   Okay.  What about the family trust?  Were you ever

1  the trustee of the family trust?

2      A.    I'm not going to answer those questions, sir.

3      **Q.    Just because -- just because you --**

4      A.    I don't understand the -- I never understood the

5  whole principle of all the -- that they built.  I never

6  looked at it.  I, when -- if I needed something, I would

7  call the attorneys and visit with them.

8      **Q.    You're not refusing to answer my question; you**

9  **just don't feel like you can because you don't understand?**

10     A.    That's correct.

11     **Q.    Okay.  And I'm going to ask you the same question**

12 **for the marital trust, were you ever the trustee of that?**

13     A.    Well, I don't know that.

14     **Q.    Okay.  Do you have any understanding of what those**

15 **trusts, any of those trusts were funded with?**

16     A.    No, sir.

17     **Q.    Do you have any understanding of -- of whether**

18 **those trusts had any cash money in them when your dad passed**

19 **that was intended to support your mom's life?**

20     A.    I can't answer that.

21     **Q.    Did your dad have a gambling problem?**

22     A.    Yes, sir.

23     **Q.    Okay.  Was it a pretty serious gambling problem?**

24     A.    I don't know to the extent of it all.  I just know

25 the stories that I've been told.

1    Q.    Did you ever go take him up to Oklahoma to the

2    casino or go there with him?

3    A.    I went with him twice.  Once we went to Tulsa to a

4    business meeting and then once we went to -- I took him over

5    to Clinton.  But I just, I couldn't do that.

6    Q.    Did your dad lose a lot of money at the casinos

7    towards the end of his life?

8    A.    I can't say what he lost.  I know what my brother

9    told me and I know what the people around him told.

10    Q.    What did your brother tell you?

11    A.    He asked dad -- He said, what are we doing?  We're

12    spending a lot of money here.  And he said, it's none of

13    your business; I made it and I'll keep it.  I don't need

14    your help, sis.

15        But, no, I don't know how much he lost or what he

16    spent, but...

17    Q.    I'm just trying to explore, it sounds like your

18    dad was a hard-working man and built a decent estate for

19    himself and his wife.  And, and I'm trying to find out why

20    there was very little or no money there when he died, to

21    take care of your mom.

22    A.    Like I said, if we'd have had gas prices like they

23    were supposed to be and everything would have went like he

24    thought it would be, there would have been a lot of money

25    for everybody.

1    Q.    Did the family partnership pay for a remodel of

2    the mother's house?

3    A.    They put her bathroom stuff on, yes, sir.

4    Q.    When was that?  While she was alive?

5    A.    Yeah.  My mother -- My dad had just passed away, I

6    think, when we built that.

7    Q.    Do you have any idea of how much that cost?

8    A.    I don't know.  Seventy-five, 80 thousand dollars

9    maybe; I don't know.  She paid them every week.

10   Q.    She paid who every week?

11   A.    The carpenters.

12   Q.    But the family partnership ultimately paid for --

13   A.    Well, mother paid.  I don't know.  I mean, mother

14   talked to the people that were building all that.  I mean, I

15   lined the contractors up, but mother dealt with them, what

16   she wanted done.

17   Q.    Okay.  In 2014, do you think that your mom was

18   receiving enough oil and gas revenue to pay for her

19   expenses?

20   A.    I'm not going to say that.  I don't know that.

21   Q.    Again, I'm trying to -- I'm trying to help you

22   explain to me when the loans that you made to the

23   partnership began to help your mom.  I'm just -- I'm trying

24   to -- I'm trying to understand.

25   A.    Well, sir, alls I can tell you, it -- they're in

1  that computer that Mr. Ries -- if you don't have the

2  computer, maybe Mr. Ries'll let you use the computer.

3          All these things that are in these documents came

4  out of that computer.

5      Q.   With Ms. Carter's assistance and with Mark -- Max

6  Tarbox's assistant's assistance?

7      A.   I assume that's true, yes, sir.

8      Q.   So to the best of your understanding in that

9  computer certain expenses or payments were coded as a loan

10 from you or from G&G?

11     A.   All those transactions that are in these documents

12 came off of that computer, sir.

13     Q.   Okay.

14     A.   And I don't know -- I can't say which are what or

15 -- I don't understand that.  But I know they all come out of

16 the computer.

17     Q.   Okay.  Well, we'll put that exhibit aside for a

18 second, sir.  We'll move on to a different topic.

19          Okay.  I need a -- Exhibit 10, Mr. Galmor.

20          (WHEREUPON, Exhibit 10 was marked for

21 identification.)

22 BY MR. RUKAVINA:

23     Q.   Sir, you probably have no personal knowledge of

24 this.  But this is a profit and loss and the balance sheet

25 of Galmor's/G&G.

1        Have you seen documents like this before?

2    A.    Yes, sir.

3    Q.    Did you -- Would you ever ask Ms. Carter to give

4  you a P&L or a balance sheet or anything like that?

5    A.    We looked at everything on Fridays, yes, sir.

6    Q.    Would you ever give something like this to Ms.

7  Fuchs to help her prepare tax returns?

8    A.    Oh, I'm not sure about that.  I don't know that.

9    Q.    Well, what I'd like to look at is a few pages in,

10  Mr. Galmor.  There's something called a balance sheet.  Let

11  me know when you're there, where --

12    A.    Okay.  I'm there.

13    Q.    -- it says balance sheet.  Okay.

14    A.    Okay.

15    Q.    And the top half of it you see talks about assets?

16    A.    Yes, sir.

17    Q.    Okay.  And the bottom half talks about

18  liabilities.  Do you see that?

19    A.    Yes, sir.

20    Q.    You got accounts payable.  You got other stuff.

21    A.    Mm-hmm.

22    Q.    Okay.  And we're going to look at the computer

23  that Mr. Ries has.

24        But do you have any explanation for why this

25  balance sheet of Galmor's/G&G doesn't show as an asset the

1  loan that it made to the family partnership?

2       A.   No, sir.

3       Q.   Do you have any explanation why this balance sheet

4  doesn't show as a liability of Galmor's/G&G of what it owes

5  you for the advances you made to it in order to enable it to

6  make advances for the family partnership?

7       A.   No, sir.

8       Q.   I'm going to show you Exhibit 11.

9            (WHEREUPON, Exhibit 11 was marked for

10  identification.)

11  BY MR. RUKAVINA:

12       Q.   This is also what we call a P&L and the balance

13  sheet of Galmor's/G&G.  And this is a more robust version.

14  And we can go through it in detail.  But I'm going to tell

15  you that these two are different.

16            So I'd like to ask you flat out, did you maintain

17  two sets of books for Galmor's/G&G?

18       A.   No, sir.

19       Q.   Now, you did say that at one point before the

20  merger, your dad's company, Dalmor or Damor, and -- and G&G

21  kept different books and you wanted to merge those, right?

22       A.   Yes, sir.

23       Q.   After that, was there two sets of books

24  maintained?

25       A.   No, sir.

1    Q.   Do you have any understanding for why Exhibits 10

2  and 11 are different?

3    A.   No, sir.

4    Q.   Okay.  Exhibit 11, I'm going to ask you the same

5  question on the balance sheet.  It shows no asset being a

6  loan to the family partnership.  Take a look at it, see if

7  I'm wrong.

8    A.   I'm sure you're right.

9    Q.   Okay.  And it shows no liability to you for the

10  advances that you made that -- so they could finance the

11  partnership.  We can take a look at it, but I certainly

12  don't see it.

13    A.   Okay.

14    Q.   And you don't have any explanation for why those

15  things would be missing, do you?

16    A.   No, sir.

17    Q.   Okay.  And you have no explanation for why these

18  two documents would be different?

19    A.   No, sir.

20    Q.   Exhibit 12, Mr. Galmor, will be the P&L and

21  balance sheet for the family partnership.

22         (WHEREUPON, Exhibit 12 was marked for

23  identification.)

24  BY MR. RUKAVINA:

25    Q.   Would Ms. Carter prepare documents like this for

1    you to review on behalf of the family partnership?

2        A.    She would put the input in, but most of when we

3    dealt with this, I dealt with Kellye.

4        Q.    Okay.  And I think you already said Ms. Fuchs had

5    access to the QuickBooks, right?

6        A.    Yes, sir.

7        Q.    Okay.  If you go on to the balance sheet, please,

8    I'm looking at liabilities.  I see liabilities and the

9    nature of accounts payable.  I see a couple credit cards.  I

10   see long-term liabilities, farm credit, et cetera, Kubota.

11            I see a line that says loan payable, Steve Galmor.

12   Do you see that, sir, here in the middle of that, that --

13   that page?

14       A.    Yes, sir, I see that right there.

15       Q.    And do you see that it says 15, one five, thousand

16   dollars?  Well, I know it's small print.

17       A.    I -- I'm showing $7,000.

18       Q.    Well, I --

19       A.    Loan receivables, Steve Galmor; is that what

20   you're saying?

21            MR. SHERWOOD:  Loan payable.

22            THE WITNESS:  Loan payable.

23   BY MR. RUKAVINA:

24       Q.    Loan payable, Steve Galmor.  At the -- At the far

25   right, it says $15,000.

```
 1              Okay.  Sir, you're looking -- you're looking on

 2      the -- on the assets.

 3         A.    You said the --

 4         Q.    Please look --

 5         A.    -- balance sheet.

 6         Q.    Yeah, yeah.  But you're looking at the assets.

 7      I'm asking you now to look at the liabilities.

 8              So this is where the family partnership's books

 9      and records are showing its liabilities, sir.

10         A.    Okay.  All right.

11         Q.    And near the middle of there, it says, loan

12      payable, Steve Galmor, $15,000.

13         A.    Okay.

14         Q.    Do you have any explanation for why that says

15      $15,000 and not a million dollars?

16         A.    No, sir.

17         Q.    Okay.  Do you have any explanation for why there's

18      no line entry that says loan payable Galmor's/G&G?

19         A.    No, sir.

20         Q.    Okay.  Do you have any idea what the Lincoln

21      Automotive Financial $40,000 or so liability is?

22         A.    Mother's car, I guess; I don't know.

23         Q.    Okay.  What kind --

24              What car does she have?

25         A.    Had a Lincoln.
```

1    Q.    Does that car still exist?

2    A.    No, sir.

3    Q.    What happened to that?

4    A.    I'd have to go back and look.  I don't -- I don't

5  know that.

6    Q.    Was it a Lincoln Navigator?

7    A.    Yes, sir.

8    Q.    Okay.  Was that -- Do you know was that --

9          Was that car titled in the family partnership or

10  your mom?  And if you don't know, you don't --

11    A.    I don't know.

12    Q.    Sir, now let's go back to Exhibit 9, which was

13  your individual return for 2017.  And I don't care about the

14  first few pages, what are -- what is your depreciation

15  schedule.

16          I'd like for you, if you could, go to Form 1040.

17  And I'd be happy to point him to it, if you like.

18          MR. SHERWOOD:  Thank you.

19  BY MR. RUKAVINA:

20    Q.    Are you there on line (sic) 1040, Mr. Galmor?

21    A.    1040, yes, sir.

22    Q.    Okay.  For, for wages, et cetera, it lists 100 --

23  $111,000 and change for 2017; do you see?

24    A.    Yes, sir.

25    Q.    And then a capital gain of $115,000 here in the

1    middle of that, do you see that?

2        A.    Yes, sir.

3        Q.    Do you know what that capital gain was?

4        A.    No, sir.

5        Q.    Okay.  And then a farm loss of $76,000, you see

6    that?

7        A.    Yes, sir.

8        Q.    And a net operating loss on line 21 of $45,000,

9    you see that?

10       A.    Yes, sir.

11       Q.    Okay.  Do you believe that, that this Schedule

12   1040 -- I know you're not an accountant, nor am I.  But do

13   those numbers sound like the money that you actually made in

14   2017 personally?

15       A.    If Kellye put them in there, that's what happened.

16       Q.    And I'm taking it that whatever money you made in

17   2017, you had your own expenses, right?  I mean your own

18   car, your own lifestyle, right?

19       A.    Yes, sir.

20       Q.    So if you were advancing money to the family

21   partnership from your personal funds in 2017, where did that

22   money come from?

23       A.    I can't answer that.

24       Q.    Between 2013 and 2018, did you have a savings

25   account?  Personally, you Steve Galmor, did you have a

1    savings account?

2         A.    Mmm.  I got a 401(k).  I don't know when we

3    started them.  But I don't -- As far as me ever saving money

4    in a -- I had a life insurance policy once.  But I don't

5    remember having a savings account.

6         Q.    Did you ever cash out that life insurance policy?

7         A.    No.

8         Q.    I'm sorry?

9         A.    I never did use it.

10         Q.    Okay.

11         A.    I think I quit paying on it.

12         Q.    Did -- What was the maximum amount of money --

13    well, let me --

14               Did you ever take money out of your 401(k)?

15         A.    No, sir.

16         Q.    Okay.  And you don't remember having a savings

17    account?

18         A.    No, I don't remember -- I mean -- No, I don't

19    remember ever owning a savings account?

20         Q.    Did you -- Did you own checkings -- checking

21    accounts personally as Steve Galmor?

22         A.    Yes.

23         Q.    Okay.  Did you have a -- anything more than a

24    couple hundred dollars of cash saved anywhere?  Like I mean

25    physical cash saved anywhere?

```
 1      A.   I -- I don't -- I've always put it in checks and

 2  stuff.

 3      Q.   What is the biggest amount of money that you,

 4  Steve Galmor, remember having at any given point in time,

 5  that you could immediately access?

 6      A.   When I sold out to Advantage.

 7      Q.   Okay.  That was like the 1.2 or 1.3 --

 8      A.   Whatever that number was, yes, sir.

 9      Q.   And then did you use some of that money to pay

10  debt immediately?

11      A.   Yes, I paid off all my land and stuff.

12      Q.   How much of that 1.2 or 1.3 million can you

13  estimate was left over after you paid off the land?

14      A.   I can't answer that.

15      Q.   Was it a large amount of money?

16      A.   I'm sure it was if it was close to a million

17  dollars.

18      Q.   So I -- I'll ask it again, Mr. Galmor, and I've

19  asked it before.

20           You loaned a million dollars from yourself to the

21  family partnership and you loaned more than a million

22  dollars from yourself to G&Gs that then loaned the money to

23  the partnership.  So that's more than $2 million.  Where did

24  that money come from, sir?

25      A.   I'm not sure.  I can't answer that.
```

 1      Q.   Before you sold G&G to Advantage, can you estimate

 2  what the most amount of money you had at any given point in

 3  time since the year 2000 to then was?

 4      A.   Not really, no, sir, I can't.

 5      Q.   Did you ever keep cash in a safety deposit box?

 6      A.   No, sir.

 7      Q.   Did you ever own any securities?  Do you know what

 8  a security is?

 9      A.   No.

10      Q.   No, you don't know what a security is?  Or no, you

11  never had securities?

12      A.   I -- I don't -- I don't know what a security is

13  and I never owned one, I don't guess.

14      Q.   Did you ever own stock?  I mean not -- not your

15  own company.  But did you ever own like stock in any --

16      A.   No.

17      Q.   -- company but your --

18      A.   No, I never did any of that.

19      Q.   Do you ever remember selling any significant asset

20  for cash money that you then used to loan to the

21  partnership, the family partnership?

22      A.   The only money I loaned them was the money I got

23  from Advantage.

24      Q.   But you can't tell me how much of that Advantage

25  money went to the family partnership?

```
 1        A.    No, sir.

 2        Q.    And you can't tell me when that sale to Advantage

 3   was, it's with the lawyers?

 4        A.    No, I can't.

 5        Q.    So is it fair to conclude that all the money you

 6   loaned to the family partnership came after that Advantage

 7   transaction or had you already been loaning money before

 8   that?

 9        A.    I -- I can't answer that.

10        Q.    You just don't know?

11        A.    I don't know.  That's -- I mean, if I knew, I'd

12   tell you, sir.

13        Q.    Well, I -- I'm not -- okay.  I'm not trying to be

14   a jerk, okay.

15              When you say I can't answer that, it could have

16   two meanings.  I just wanted to clarify that it's because

17   you don't know?

18        A.    I don't know.

19        Q.    Do you -- Do you think that you would have

20   disclosed on your tax returns or that Galmor/G&G would have

21   disclosed on its tax returns the sale to Advantage?

22        A.    It should be there, yes, sir.

23        Q.    Does Galmor's/G&G, to your knowledge, is it

24   consolidated for tax purposes with SGM Leasing?  And if you

25   don't know, just say you don't know.
```

1      A.    I don't know.

2      Q.    **Okay.**

3      A.    I mean, I -- There was a business man came in and

4  helped put a bunch of those things together, and it never

5  did pan out; none of it ever worked.  Well, I mean, so I

6  don't --

7      Q.    **The reason why I'm asking you is because I asked**

8  **Mr. Ries whether he has the tax returns for Galmor's/G&G,**

9  **and Mr. Ries told me that he thinks that it was part of the**

10  **same tax return as SG&M.**

11      **Does that sound right or does that sound wrong to**

12  **you?**

13      A.    I don't know.  I can't answer that.

14      Q.    **Okay.  That'll be -- That'll be a Ms. Fuchs**

15  **question?**

16      A.    Probably so.

17      Q.    **Okay.  We're going to mark as Exhibit 13, the 2017**

18  **return of SGM Leasing.**

19      **(WHEREUPON, Exhibit 13 was marked for**

20  **identification.)**

21  BY MR. RUKAVINA:

22      Q.    **This is a very complicated return, sir, so it's**

23  **going to take a second.**

24      **But generally, what is or what was SGM Leasing?**

25      A.    Sir?

1    Q.    Yes.   What is or what was SGM Leasing?

2    A.    I think they put equipment in and -- I don't

3 really know what -- Like I said, there's a gentleman from

4 Tennessee or a - a man named Mac -- Ben Jarman came and was

5 setting things up so we could do some different stuff or

6 whatever this is.  He said it was a business plan.  And he

7 started it, but we never did really get it off the ground.

8 And none of the -- There was like four entities built with

9 this SGM Leasing.  But I don't know -- None of them ever

10 really got off the ground.

11    Q.    One second, please.

12          Were you the sole owner of SGM Leasing?

13    A.    I assume.

14    Q.    Okay.  Do you think that you had any partners or

15 any other shareholders in SGM Leasing?

16    A.    Not that I'm aware of.

17    Q.    Okay.  If you go to Federal Schedule K, it's about

18 the tenth page in, the fifth page for us.

19          MR. RIES:  I can help you find it.

20 BY MR. RUKAVINA:

21    Q.    Or actually, go to form 8903.  Looks like this.  I

22 think you might have passed it.  8903.

23    A.    8903?

24    Q.    Yes, sir.

25    A.    Okay.

1    Q.    Are you there?

2         Okay.  It says line 1 is domestic production gross

3    receipts, $6,014,000 and change.  Do you see that?

4    A.    Yes, sir.

5    Q.    Do you have any idea what that is?

6    A.    Yes, sir, that was I think when -- when we started

7    the -- the mining project, that looks like the numbers that

8    would go with the mining project.

9    Q.    The mining project --

10   A.    Strip mining.  The strip mines.

11   Q.    The -- The quarry deal are we talking about?

12   A.    Yes, sir.

13   Q.    Okay.  Okay.  So help me understand.

14        Did SGM run the mining company or did -- did

15   Galmor/G&G?

16   A.    I can't answer that.  I know that that's how they

17   set it up to do business.

18   Q.    Okay.

19   A.    And I know that SGM was buying that equipment,

20   'cause those -- that's -- when you talk the six million,

21   that's -- that's where those numbers came from.

22   Q.    That being the -- the large equipment that

23   actually did the mining?

24   A.    Yes, sir, that's the stuff that...

25   Q.    Okay.  You know, I know now why this has been

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800) 528-3335
NAEGELIUSA.COM

PAPP 0266

1  confusing, 'cause the 2017 return is just confusing.  Let me

2  get the 2016, okay.  I confused myself and you in the

3  process.  I apologize.

4          Exhibit 14 is the 2016 return for SGM.

5          (WHEREUPON, Exhibit 14 was marked for

6  identification.)

7  BY MR. RUKAVINA:

8      Q.   So if we go quite a bit into this, there's a Form

9  1120S.

10     A.   Okay.  1120S.

11     Q.   Yes.  And it -- it shows gross receipts of $6.5

12  million.  Do you see that?

13     A.   Yes, sir.

14     Q.   Okay.  And I think a few pages on -- just go off

15  the record here for a second.

16         MR. SHERWOOD:  Sure.  That's fine.

17         VIDEOGRAPHER:  Going off; 3:00 p.m.

18         (WHEREUPON, a recess was taken.)

19         VIDEOGRAPHER:  Back on the record.

20  BY MR. RUKAVINA:

21     Q.   Mr. Galmor, you're on that form 1120S, right?

22     A.   The one you got for me, yes.

23     Q.   Yeah.  And then the second page of that, the next

24  page of that talks about Galmor's/G&G Steam Service.  You

25  see that?

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0267

1    A.    I see it right here.

2    Q.    Okay.  On the one I marked?  Yeah.  Yeah.  Yeah.

3  Okay.

4          According to this, SGM Leasing owned, at that

5  time, 100 percent of Galmor's/G&G.  Does that sound right to

6  you?

7    A.    I assume.

8    Q.    Do you remember when you created SGM Leasing?

9    A.    We'll have to get with Kellye.  I mean, she's the

10  one that prepared all this stuff.

11    Q.    But if we go back to the first page of this Form

12  1120S, the $6.5 million revenue in 2016, just it's the very

13  -- it's the page right before that one.

14          You think that that's from the actual sale of the

15  rock, correct?

16    A.    I'm going to assume that, yes, sir.

17    Q.    Well, did SGM have any income other than from the

18  potential sale of rock?

19    A.    I don't know that.  That's something Kellye can

20  answer, I'm sure.

21    Q.    So you, you just don't feel qualified to talk

22  about that?

23    A.    No, sir, I don't --

24    Q.    Then I'm -- then I'm going -- That's okay.  I'm

25  not going to ask a bunch about it.  I'll -- I'll save my

1  questions for Ms. Fuchs or -- you know, I told you, I'm not

2  trying to set you up.

3      A.   Like I said, I -- I'm -- this is all Greek to me.

4      Q.   Yeah.

5           MR. SHERWOOD:  You're not the only one.

6  BY MR. RUKAVINA:

7      Q.   I'll ask Ms. Fuchs about that.

8      A.   Okay.

9      Q.   I also wanted to discuss the Galmor Management,

10  L.L.C., partnership return briefly.  I have the 2016 one,

11  which will be Exhibit 15.

12           (WHEREUPON, Exhibit 15 was marked for

13  identification.)

14  BY MR. RUKAVINA:

15      Q.   Now, Galmor's Management never had any real

16  revenue of its own, did it?

17      A.   Not that I'm aware of.

18      Q.   All the business would have been through the

19  family partnership, right?

20      A.   I assume that, yes, sir.

21      Q.   Okay.  I just want to ask you again, if you go to

22  Schedule L.  It's page 759 on the bottom right.  That might

23  help you out.

24      A.   Okay.

25      Q.   And we go back to that like we looked before,

1   liabilities and capital.  It shows no amounts owing to

2   either you or G&G, Galmor's for loans, right?

3       A.   Yes, sir.

4       Q.   Okay.  Do you have any explanation for why that's

5   the case?

6       A.   No, sir.

7       Q.   Okay.  Very briefly, to go back to the rock

8   quarry, the rock business.

9            You don't remember when Galmor/G&G was supposed to

10  pay the family partnership for the royalties, whether it was

11  30 days later, 10 days later, or 60 days later?  You don't

12  remember that at all?

13      A.   I assume it's 30.

14      Q.   Okay.  Would that have been standard in the

15  business?

16      A.   I assume.

17      Q.   Is it fair to say that at the time that

18  Galmor's/G&G filed bankruptcy, it owed money to the family

19  partnership for unpaid royalties, some amount?

20      A.   I -- I'm not -- I don't know that at all.

21      Q.   Okay.  Well, do you know whether Galmor's/G&G was

22  current on its royalty payments to the family partnership

23  when it filed bankruptcy?

24      A.   I'm not -- I don't know that.

25      Q.   One way or the other, you don't know that?

```
 1        A.    I don't know that.

 2        Q.    This will be Exhibit 16.

 3              (WHEREUPON, Exhibit 16 was marked for

 4   identification.)

 5   BY MR. RUKAVINA:

 6        Q.    So, sir, this -- this is a document produced by

 7   your lawyer, not your current lawyer, but the prior lawyer,

 8   and it printed out December 10th, 2018.  And it looks like

 9   it's a report of the royalty payments and royalty advances

10   from Galmor's/G&G to the family partnership.  Do you see

11   that, sir?

12        A.    Yes, sir.  Mm-hmm.

13        Q.    And it shows that there towards the end, beginning

14   in 2016, there's a lot of royalty advances.  Do you see that

15   near the bottom?

16        A.    Yes.

17        Q.    Okay.  Before that, it talks about royalty

18   payments up there.  You see all through 2016 and 2015?

19              I'd like to know, sir, do you know what this

20   document is and why it was prepared?

21        A.    No, sir.

22        Q.    Okay.  Do you -- Do you have any explanation for

23   why this document, after June 8th, 2016, shows no royalty

24   payments, just royalty advances?

25        A.    No, sir.
```

1    Q.    Okay.  Do you have any idea who prepared this

2  document?

3    A.    I would assume Matt Brooks.

4    Q.    Okay.  The gentleman we discussed before?

5    A.    Yes, sir.

6    Q.    Okay.  One moment, please.

7          The next document -- The next document will be

8  Exhibit 17, a document produced by the Lovell firm.

9          (WHEREUPON, Exhibit 17 was marked for

10  identification.)

11  BY MR. RUKAVINA:

12    Q.    Before I give you this document, just one second,

13  please.

14          Have you ever seen this binder before?

15    A.    I'm not sure.

16    Q.    Take a look at it.

17    A.    I don't know.  I -- There's a bunch of those

18  binders at the office.

19    Q.    Okay.  Do you recall ever preparing an accounting

20  on behalf of the family partnership at the request of Ms.

21  Pritchard or her lawyer?

22    A.    No, sir.

23    Q.    Do you know what a -- an accounting under Texas

24  law is?

25    A.    Well, I'm not sure.

1    Q.    Okay.  Well, what I've given you, Exhibit 17, is a

2    page-by-page copy of this binder.

3    A.    Okay.

4    Q.    And the first page of it is an email from --

5         MR. RIES:  Is this 17 or 18?

6         MR. RUKAVINA:  I'm sorry.  This is Exhibit 17.

7    Isn't it?

8         MR. SHERWOOD:  I thought this two-page --

9         THE WITNESS:  Seventeen.

10        MR. SHERWOOD:  -- one was 17.

11        MR. RUKAVINA:  Did I make another mistake?

12        THE REPORTER:  No, I've got -- I've got --

13        VIDEOGRAPHER:  Seventeen.

14        THE REPORTER:  -- Exhibit 17.

15        MR. RUKAVINA:  Yeah.

16        MR. RIES:  I think this is 16.

17        THE REPORTER:  Yes, that was Exhibit 17, the last

18   one you --

19        MR. RUKAVINA:  Yeah, the two-page thing is Exhibit

20   16, Kent.

21   BY MR. RUKAVINA:

22    Q.    Okay.  Sir, you remember that, that there was a

23   mediation held at some point with Ms. Pritchard and other

24   people?

25    A.    Yes, sir.

 1      Q.   All right.  Help me.  In the summer of '19?

 2      A.   We had two or three; I'm not sure.

 3      Q.   Okay.  And I apologize, I don't know if I got your

 4  answer.

 5           Do you know what an accounting under Texas law is?

 6      A.   No, sir.

 7      Q.   Okay.  Do you have any memory at all of anything

 8  like -- like you were preparing an accounting with other

 9  people's assistance, of the Family Limited Partnership?

10      A.   No, sir.

11      Q.   Do you have any memory at all that you were doing

12  something in response to a request from Ms. Pritchard's

13  lawyer, to provide details as to the Family Limited

14  Partnership's assets and liabilities?

15      A.   Deena sent some correspondence back for Leslie,

16  and it wasn't suitable for what they wanted.  I remember

17  things happening that way, yes, sir.

18      Q.   Well, this, this very first page here, is an email

19  from Matthew Merriott to Deena Carter and it looks like

20  yourself.

21           Is that your email address?

22      A.   At that time it was, yes, sir.

23      Q.   Okay.  And it looks like Mr. Merriott is -- is

24  writing a -- a -- or copying Texas law that talks about

25  Contents of Accounting.  Do you see that, sir?

```
 1        A.    Yes, sir.

 2        Q.    Do you remember receiving this email?

 3        A.    No, sir.

 4        Q.    Okay.  Nothing about this jogs your memory?

 5        A.    No.  But it was, like I said, after the

 6   bankruptcy, I didn't have any email at all.

 7        Q.    Okay.  And seeing that, that binder there, didn't

 8   refresh your memory at all?

 9        A.    Well, I saw binders.  There's a pile of them

10   binders that, that were at the shop back in the day.

11        Q.    Okay.  But that was the binder at the Lovell firm.

12        A.    Well, I must have brought it to them.

13        Q.    Was the Lovell firm helping you with respect to

14   the limited -- the Family Limited Partnership?

15        A.    Yes, sir.

16        Q.    Okay.  Were they helping you at that mediation?

17        A.    I believe so.

18        Q.    Okay.  So this is going to be a little tricky.

19   But two-thirds of the way through, there's a tab.  And I'll

20   let your lawyer look at this, and if he needs to make

21   another copy, he can.  There's a big tab that says

22   liabilities.

23             MR. SHERWOOD:  See that.

24   BY MR. RUKAVINA:

25        Q.    And I'm going to give you the original here and
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800) 528-3335
NAEGELIUSA.COM

PAPP 0275

1  I'm going to try to help the other lawyers find it.

2          Kent, this is at tab -- Are you there on

3  liabilities?

4          MR. RIES:  Yeah.

5          MR. RUKAVINA:  Oh, you're faster than me.  Well,

6  good.

7  BY MR. RUKAVINA:

8      Q.   Mr. Galmor, do you have any memory as to what this

9  tab, liabilities, was prepared for, or why?

10          It's going to be -- You're getting there, Matt.

11  You're almost there.  Let me give you a sticky.  I'm sorry.

12  I should have done this before.

13          MR. SHERWOOD:  Got it.  Thanks.

14          THE WITNESS:  I don't know who we made it for.  I

15  remember we talked about it 'cause we were looking at the --

16  what my family owed.

17  BY MR. RUKAVINA:

18      Q.   Who'd you talk to about it?

19      A.   Well, I can't remember that.  I just remember

20  seeing, there -- wanted to know about expenses and stuff.

21      Q.   Who wanted to know about expenses and stuff?

22      A.   I can't remember that.  I just remember the

23  conversation.

24      Q.   But you don't remember the word accounting at all

25  used in that conversation?

1     A.    No, sir.

2     Q.    Okay.  You don't remember the -- the reason why

3  this was prepared, other than someone asked for it?

4     A.    That's -- That's all done...

5     Q.    Do you know whether this was provided to Ms.

6  Pritchard's lawyer at that time?

7     A.    I have no idea.

8     Q.    Okay.  Did you help prepare this, this tab here

9  called liabilities?

10     A.    No, sir.

11     Q.    Did you look at it?

12     A.    No, I -- I mean, the loan numbers and stuff, they

13  were all in a file there.  I mean, I -- I...

14     Q.    Have you seen this, to the best of your memory

15  sir, have you seen this document before today?

16     A.    Seems like I have.

17     Q.    Okay.  And if you --

18           Please look through here and tell me if you see

19  any liability listed here to you or to Galmor/G&G?

20     A.    No, sir.

21     Q.    Okay.  So if I -- If I represent to you that this

22  was a formal accounting that your lawyers helped you prepare

23  to send to Ms. Pritchard's lawyer, you -- that does not ring

24  your memory at all?

25     A.    No, sir.

1      Q.    Okay.  Sir, well -- well, please give me that

2  binder back and we'll -- I'll -- I'll leave this binder in

3  its current state if anyone ever questions it in the future.

4            And also, Kent, also the Lovell firm scanned it

5  and has a copy of it if you ever --

6            MR. RIES:  Okay.

7            MR. RUKAVINA:  -- need to see, you know, something

8  other than this.

9  BY MR. RUKAVINA:

10     Q.    Sir, I'm going to try to be respectful, okay?  I'm

11  not trying to be a jerk.

12            But you blame Ms. Pritchard for years of

13  litigation against you and that that caused a rift in your

14  family, fair?

15     A.    Yes, sir.

16     Q.    Okay.  And you think she was unfair by alleging

17  that you forged your mother's will, right?

18     A.    Yes, sir.

19     Q.    And you think she made that up?

20     A.    Yes, sir.

21     Q.    Okay.  And, and you feel that her, all that

22  litigation was just a waste of everyone's time and just

23  everyone pissing in the well, fair?

24     A.    I think so, yes, sir.

25     Q.    But you understand today, sir, that Mr. Ries has

1  sued the family partnership based on your statements that it

2  owes you money; do you understand that, sir?

3      A.   Yes, sir.

4      Q.   Okay.  And sir, we've looked at tax returns.

5  We've looks -- We've looked at balance sheets.  We've looked

6  at what purports to be this accounting here, and we don't

7  see anywhere, where before this bankruptcy you said that

8  there was any debt.  Am I --

9           MR. RIES:  Well, I'm going to object.  It's --

10          MR. RUKAVINA:  Am I --

11          MR. RIES:  That's not the evidence --

12  BY MR. RUKAVINA:

13      Q.   Am I wrong about that?

14      A.   You're right, I guess, yes, sir.

15      Q.   Do you have --

16           And you have no explanation for that?

17      A.   No, sir.

18      Q.   Do you think --

19           Do you know, putting the computer aside, do you

20  know of any human being that could support your -- the debt

21  owed to you and to Galmor's/G&G?

22      A.   Do what now?

23      Q.   Yes.  I'm trying --

24           Is there any witness that you know of, whether Ms.

25  Carter or Ms. Fuchs or anyone, that can testify, you think,

1  under oath, that that debt actually exists?

2      A.   I'm the only one, I guess.

3      Q.   And then you can't point me to a single document

4  before your bankruptcy case where you recorded that debt,

5  can you?

6      A.   No, sir.

7          MR. RIES:  Again I'm going to object to that.

8  We've got records you put in here today that were presented

9  that -- beyond the bankruptcy case, so -- that were

10 prepared.  I mean you put exhibits in today that refute what

11 you just said, so...

12         MR. RUKAVINA:  That's fine.  That's what a judge

13 is for.

14         I think we're getting near done.  Let's take a

15 longer break, maybe 15 minutes, and I'll try to wrap it up

16 in the next session.

17         MR. SHERWOOD:  Okay.  That's a promise, right?

18         MR. RUKAVINA:  It's not a promise, but I'll do my

19 best.

20         VIDEOGRAPHER:  Going off record, 3:21.

21         (WHEREUPON, a recess was taken.)

22         VIDEOGRAPHER:  You're back on; it's 3:48.

23 BY MR. RUKAVINA:

24     Q.   Mr. Galmor, if you could, please -- I'm sorry.

25 I'm at that age where these things kill me.

1          Will you go back to Exhibit 12?  This was the

2  balance sheet for the Family Limited Partnership.  And if

3  you will please turn to the balance sheet itself, under the

4  assets column.

5      A.   Balance sheet on the profit and loss or the --

6      Q.   The balance sheet, please, assets.  At the top it

7  says Galmor Family Limited Partnership --

8      A.   I've got that.

9      Q.   -- balance sheet.

10     A.   I've got the all -- but it says all transactions,

11 all transactions.

12     Q.   Yep, all transactions.

13     A.   Sir?

14     Q.   Let me take a look, please.  Thank you.

15          Here's where it begins.

16          MR. RIES:  Thank you.

17          THE WITNESS:  Thank you, sir.

18 BY MR. RUKAVINA:

19     Q.   Now, my first question for you is, I'm not an

20 accountant, but I don't think you are either.

21          Do you have any idea why these assets here is

22 listed with negative numbers?  Some of them, not all of

23 them.

24     A.   No, sir.

25     Q.   Okay.  And near the bottom, it talks about other

1   assets, loan receivable Carter.

2       A.   Yes, sir.

3       Q.   Are you -- Are you there, sir?

4       A.   Uh-huh.

5       Q.   Do you know who that Carter is?

6       A.   No, sir.

7       Q.   Could it be only Deena Carter or some other

8   Carter?

9       A.   I don't think it'd be Deena.

10      Q.   Okay.

11      A.   I don't know what that might be.

12      Q.   Okay.  So I guess you don't know my next question

13  either, which is, did the family partnership make a loan to

14  any Carter, to your knowledge?

15      A.   Not that I'm aware of.

16      Q.   Okay.  The next line item is loan receivable Steve

17  Galmor.  Do you have any idea why that's listed there?

18      A.   No, sir.

19      Q.   Did the partnership ever make a loan to you?

20      A.   No, sir.

21      Q.   Okay.  And then if you go on the very last page,

22  there's a series of partner's draws under equity.  Let me

23  know when you're there.

24      A.   Total liabilities and equity?

25      Q.   Yes.  Right above it you'll see a -- a heading

1    that says partner's draw.

2        A.    Okay, sir.

3        Q.    Do you have any idea what partner's draw means?

4        A.    No, sir.

5        Q.    Okay.  Do you have any idea why there's a negative

6    60,000, et cetera, listed for home expense?

7        A.    No, sir.

8        Q.    Okay.  Any idea why there's at the end there a

9    negative 113,000 listed for personal?

10       A.    No, sir.

11       Q.    Okay.  You don't know anything about what these

12   line items under partner -- partner's draw means, do you?

13       A.    What?

14       Q.    Hold on a second, got some loud cars.

15             Do you have any idea what these entries under

16   partner's draw mean?

17       A.    No, sir, I have no idea.

18       Q.    Did you, sir, ever take out money from the family

19   partnership for yourself or your -- your expenses?

20       A.    No, sir.

21       Q.    Okay.  If you ever did that, would Ms. Carter have

22   -- have, to your understanding, somehow put it in the books?

23       A.    No, sir.

24       Q.    This is just a topic that you don't know anything

25   about?

1       A.    No, I don't know.

2       Q.    Fair enough.  Fair enough.

3             I'm just preparing our next exhibit.  It'll just

4  take me a second.

5             Sir, I'm going to give you Exhibit 18, which is

6  called a deed of trust.

7             (WHEREUPON, Exhibit 18 was marked for

8  identification.)

9  BY MR. RUKAVINA:

10      Q.    Do you know what a deed of trust is?

11      A.    Transferring the land, I think.

12      Q.    Okay.  This looks like it's an -- an October 7,

13 2014 deed of trust from you to the family partnership, for

14 $50,000; borrower, Michael Stephen Galmor; lender, Galmor

15 Family Limited Partnership.  Do you see that, sir?

16      A.    I see it there, yes, sir.

17      Q.    Okay.  And it says, maturity date, July 1, 2019.

18 Do you --

19      A.    Yes, sir.

20      Q.    -- see that?

21      A.    Mm-hmm.

22      Q.    Do you know what this is?

23      A.    I sure don't.

24      Q.    Okay.  It talks about property, see Exhibit A.

25 Now, the property is metes and bounds.

1          Exhibit A is the last page of that.  It should be

2  the last page or the second-to-last page.

3      A.    Yes, sir.

4      Q.    It has Track 1 and Track 2.  Do you see that?

5      A.    Yes, sir.

6      Q.    Do you have any idea what these properties are?

7      A.    Well, the first one is the Gin Yard.

8      Q.    Okay.

9      A.    And the second one, I'm not sure which track it

10  is, but it shows that it's the Hefley.  And then --

11     Q.    That's --

12     A.    -- the third one is Jacey.  And --

13     Q.    The last --

14     A.    I think -- I think what happened right there,

15  Jacey bought this Hefley property, and then I traded her the

16  house at the Gin Yard for the transaction.

17     Q.    Okay.  Do you remember being indebted to the

18  family partnership for $50,000?

19     A.    No, sir, I do not.

20     Q.    Do you remember ever signing this document?

21     A.    Well, I -- it's my signature.  But I'm not -- I

22  don't think this is all complete.

23     Q.    Okay.  What -- What do you think is incomplete

24  about it?

25     A.    'Cause I remember this transaction because there

1  was a house sits on the Gin Yard that belonged to -- my

2  daddy sold to Jacey.  And when she got a chance to buy the

3  property next to Deena, well, she went to the -- she bought

4  that for 50,000 and then I bought the other one back from

5  her for the 50,000.  We traded properties, basically.  I'm

6  not -- I'm not sure -- I think there should be some more

7  documents to go with this.

8      Q.    What?

9      A.    I mean, because I didn't -- there was no money

10 owed right then.  I mean, it was a slick transition.  But

11 I'm not going to argue what I'm seeing.  That's my

12 signature, those are what happened.  But I know we traded a

13 -- the property on the corner, the 592 and 83, Jacey bought

14 it and I ended up back with the -- the house that was in the

15 Gin Yard property back; put the Gin Yard all back together.

16     Q.    What other documents do you think there might be

17 related to that transaction?

18     A.    Well, and 'cause here's the -- the Miller

19 property, too.  All those transactions happened at the same

20 time, pretty close.

21     Q.    Do you believe that this lien was ever released?

22     A.    I'm sure it has been.  I mean, I -- I -- 'cause --

23     Q.    Do you believe that this lien was invalid or this

24 is a mistake?

25     A.    Well, I -- I'm not going to say what it is or what

 1  it's not.  I'm -- I'm not familiar with this transaction.  I

 2  know -- I know what did happen.

 3      Q.    Okay.

 4      A.    And that's what I said, I traded properties with

 5  her, and I know that.

 6      Q.    Okay.  Please -- okay.  I'm going -- I'm going to

 7  ask you now to be very detail-oriented, please, and try to

 8  avoid words like they or we.

 9            So, so start again.  What -- What happened in this

10  transaction with the Gin Yard?

11      A.    When we started our conversation, we visited about

12  me having to give the $3,000 back to Jack Ledford.

13      Q.    Okay.

14      A.    I don't know if you remember that or not.

15      Q.    Yeah.

16      A.    Well, my dad sold that property and he didn't own

17  it.

18      Q.    Okay.

19      A.    Well, the corner on that property was still should

20  have been my dad's, but Mr. Tindal refused and said it was

21  his.

22      Q.    Okay.

23      A.    So they put it up to sell.

24      Q.    Who's they, Tindal?

25      A.    Yes, sir.  And they put it, I think Richard Hefley

1  or someone was the one that sold it.  Or there was somebody

2  there that sold it.

3         Well, my daddy sold the corner of the Gin Yard,

4  the north part of the Gin Yard, part of it to the county and

5  part of it to Jacey Carter.  And when Jacey made a deal with

6  Mr. Tindal to buy that corner back next to her mother, and

7  then I bought that house that's on the Gin Yard back from

8  her.

9      **Q.    So Jacey Carter owned that house?**

10     A.    Yes, sir.

11     **Q.    And you bought it back from her?**

12     A.    Yes, sir.

13     **Q.    Did the Family Limited Partnership ever -- ever**

14 **own that, that --**

15     A.    No, that was -- I'd already bought this out from

16 the --

17     **Q.    And, and you're saying that no money changed**

18 **hands?  There was just a land-for-land swap?**

19     A.    Well, there's probably some money changed so we

20 could get it all said and done, but there -- I didn't borrow

21 any money from the family limited partners.

22     **Q.    Okay.  That's what I'm getting at.**

23         **So to your memory, you did not borrow, if any**

24 **money changed hands, you didn't borrow it --**

25     A.    No.

1    Q.   -- from the family limited partners?

2    A.   No.  No, I don't --

3    Q.   And you have no understanding of why there might

4  be a lien out there?

5    A.   No.  We need to go check it.  I mean, I'll check

6  that.  But, no, there should -- that ought to have been a

7  clean --

8    Q.   Okay.

9    A.   -- trade.

10   Q.   Remember we looked at the balance sheet and there

11  was a Carter that we didn't know?  Could that have been

12  Jacey Carter?

13   A.   I don't think so.

14   Q.   Okay.  Is Jacey Carter related to Deena Carter?

15   A.   That's her daughter.

16   Q.   Okay.  Okay.  I'm going to make one more exhibit,

17  so it'll just take me a minute.

18   A.   Okay.

19   Q.   This exhibit will be Exhibit 19.  I'll give it to

20  you so you can start looking at it, while I prepare it for

21  the other gentlemen.

22   A.   Okay.

23   Q.   May I -- May I have that back for a second just to

24  make sure that I got the full thing.

25        MR. SHERWOOD:  Steve?

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM

PAPP 0289

1   BY MR. RUKAVINA:

2       Q.   May I have that back just for a second?  Thank

3   you.

4            (WHEREUPON, Exhibit 19 was marked for

5   identification.)

6   BY MR. RUKAVINA:

7       Q.   Mr. Galmor, do you recognize Exhibit 19?

8       A.   Yes, sir.

9       Q.   Okay.  It's actually more than one document.  The

10  first one is a unanimous written consent.  And then the

11  second one is a warranty deed with vendor's lien.  Do you

12  see that, sir?

13      A.   Yes, sir.

14      Q.   Okay.  All right.  First, do you recognize the

15  property that's listed on Exhibit A to the unanimous written

16  consent?

17      A.   I'm not sure what Section 3 reads.  I'm not -- I'm

18  not sure where that's at.

19      Q.   This -- This is not your homestead, is it?

20      A.   Huh?

21      Q.   Is this your homestead?

22      A.   Well, I see Section 64 on the back on Track 2.

23      Q.   Okay.

24      A.   Section 64 is the homestead.

25      Q.   Okay.  But the homestead's a lot bigger than 7.15

1    acres, right?

2        A.    I think that's just the house and the barns.

3        Q.    Okay.  What do you remember about this unanimous

4    written consent and -- and what -- what was being sold to

5    you and why?

6        A.    Well, and I'm not going to answer that for sure,

7    because I'm not sure what all this other on the front is.  I

8    don't know what Track 1 in Section 3 is.

9        Q.    Okay.

10       A.    And Track 2, I don't know; 2.4 acres out of

11   Section 3, I'm not sure what Section 3 means.

12       Q.    Okay.  Well, do you recall buying some property

13   from the family partnership for $70,000 back in the summer

14   of 2014?

15       A.    I bought two properties.

16       Q.    Which one?

17       A.    I bought the place that you're -- the Gin Yard and

18   I bought the, what we call the trailer house next to my mom

19   and dad's right there.

20       Q.    Could that be that -- this property?

21       A.    I'm thinking that's what it might be.  I mean...

22       Q.    And what do you mean you bought the Gin Yard?  I

23   thought you swapped the Gin Yard with -- with Jacey Carter.

24       A.    Well, the -- there's -- the Gin Yard's in three

25   different sections.  My daddy sold Jacey the north part of

```
 1   that Gin Yard.  And --
 2        Q.   And we talked about that.
 3             But did, did you buy any part of the Gin Yard from
 4   the Family Limited Partnership?
 5        A.   No.
 6        Q.   I'm sorry, sir.  I just asked you a minute ago did
 7   you buy any property from the Family Limited Partnership,
 8   and I thought you said you bought two lands.
 9        A.   I did.
10        Q.   One of them was the Gin Yard.
11        A.   No.  I -- I did buy -- you're correct.  I bought
12   the Gin Yard and I bought the -- the trailer house on the
13   south side of my mother's house.  And it was a transaction
14   like $70,000.
15        Q.   Okay.  So that's -- that's what this might be
16   referring to?
17        A.   May be.  It may be.
18        Q.   Could that prior deed of trust we just looked at
19   as the last exhibit, be the one for the Gin Yard you
20   purchased?
21        A.   Oh, I don't know.
22        Q.   Okay.
23        A.   I don't know that.
24        Q.   Well, again, this metes and bounds, you know, it's
25   Greek to us.  I get it.
```

```
 1            But you do recall a transaction where you

 2   purchased land from the Family Limited Partnership for

 3   $70,000?

 4        A.    Yes, sir.

 5        Q.    Okay.  And you didn't pay that 70,000.  You were

 6   going to pay that over time.  Well --

 7        A.    No.

 8        Q.    -- you -- you paid 20,000 of it.

 9        A.    I paid it off at -- at the same -- at the time of

10   the transaction.

11        Q.    Okay.  Then why -- why is -- why is the next page

12   on that have a warranty deed with vendor's lien?

13        A.    Now, the home place in Section 64, my mother gave

14   me her half of that estate, my mom and dad's estate.  And we

15   appraised it at 50,000.  My mother did the appraisal, what

16   it was worth.  And I had to buy my dad's half out, and it

17   was like for $250,000, or something.  And we set it up, Ken

18   Fields or somebody made payments on it so we could all --

19   we'd make payments every month on it to purchase it back, to

20   purchase my dad's part of the Section 64.

21        Q.    I -- I get it, sir.  But, but these documents say

22   that the seller is the Family Limited Partnership, not your

23   mom or not your dad.

24        A.    Well, it was the partnership; they sold it, yes,

25   sir.
```

1    Q.    And, and do you remember signing a -- a warranty

2   deed with vendor's lien obligating you to repay back

3   $50,000?

4    A.    No, sir.

5    Q.    Okay.  So it's your testimony that you paid the

6   full amount of $70,000 in cash?

7    A.    Yes, sir.

8    Q.    Do you know if you ever paid back this $50,000 of

9   this vendor's lien?

10   A.    I never -- I don't remember that $50,000 at all.

11   Q.    So let's just again be super clear.  Currently

12  today, how many acres is your homestead?

13   A.    Like 174, approximately.

14   Q.    Was it always 174, or did you add onto it over

15  time?

16   A.    It's always been that since I've lived there.

17   Q.    So your mom and your dad, at one point in time,

18  owned 174 acres, right?

19   A.    Whatever's in that Section 64.

20   Q.    Well, sir, a section is 640 acres.

21   A.    Whatever's listed for their homestead is what's

22  there.

23   Q.    Okay.

24   A.    I didn't buy anything else or -- I mean, I bought

25  where I was raised and that land behind it.

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0294

1      Q.    And, and your mom gave you her half of that

2   homestead, right?

3      A.    Yes, sir.

4      Q.    And you had to buy out your dad's right?

5      A.    Yes, sir.

6      Q.    And for -- you said the number.  I forget --

7      A.    Two hundred fifty thousand, I believe, or

8   something like that.

9      Q.    And did you end up paying that $250,000?

10     A.    I was paying it 'til this litigation come up, yes,

11  sir.

12     Q.    Who were you paying it to?

13     A.    To the Galmor family limited partners.

14     Q.    Why were you paying it to the Galmor family

15  limited partners if they didn't own that property before you

16  bought it?

17     A.    Whoever I was making my payments to was what Ken

18  Fields and them told me to make the payment to.

19     Q.    So that the -- the -- the bank statements of the

20  family partnership will show periodic monthly payments from

21  you until this --

22     A.    Like 1,000 or 1,100 dollars, yes.

23     Q.    Per month?

24     A.    Yes, sir.

25     Q.    Towards that $250,000?

```
 1        A.   Towards that 250, yes, sir.

 2        Q.   And you have --

 3             And that 250,000 is separate from this 50,000 that

 4   you don't have any memory of?

 5        A.   No, that -- those -- that should be cleared.  I

 6   don't know where those numbers came from.

 7        Q.   Okay.

 8        A.   And I don't -- I don't remember any of that.

 9        Q.   And looking at these metes and bounds, that 7.15

10   acre tract of land out of Section 64, that's separate land

11   from the 170 acres that was always owned by your parents?

12        A.   Yes, sir.

13        Q.   Is that the trailer house you said, or something?

14        A.   No.  They took those out for tax purposes.  They

15   coded it different is all -- what I was always told.  'Cause

16   my dad had some barns and some stuff there, and they coded

17   that -- they took, for tax purposes, they took that seven

18   point whatever that number is, out of the deal and it was

19   taxed different than the -- the land.

20        Q.   Okay.  So was your parents land at some point in

21   time before more than 170 acres and then they reduced it by

22   the seven acres?

23        A.   I -- I can't answer that until I look at the -- I

24   don't -- I know what was bought and we surveyed it and I

25   know what's there.
```

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800) 528-3335
NAEGELIUSA.COM

PAPP 0296

1  Q.  Do you think that today you own this land that's

2  on Exhibit A to this unanimous written consent?

3  A.  Well, that was what was supposed to happen, yes,

4  sir.

5  Q.  And you think Tract 1 might be the Gin Yard?

6  A.  I'm not going to answer that.  I don't know what

7  those -- I don't recognize those numbers, sir.

8  Q.  Okay.  Exhibit 20.

9      Before we go to that, going back to the 170 acres

10 that's your homestead, did you buy your -- your dad's half

11 while he was alive?

12 A.  Why would I buy it when he was alive?

13 Q.  So you bought it after he died?

14 A.  Yes.

15 Q.  Okay.  So who sold it to you, the probate estate

16 or the -- his trust?

17 A.  My mother.  I don't know how it was sold.  I'm not

18 gonna go through all that again.

19 Q.  But -- okay.  I got it.  I got it.

20     Did you buy your mother's half -- or I'm sorry.

21 Did you buy your mother's interest while she was still

22 alive?

23 A.  No, sir.

24 Q.  So when did you acquire the 170 acres?

25 A.  My mother after she passed away, it was her will

 1  that I get that hundred and --

 2      **Q.   Okay.**

 3      A.   I got half of the property.  And then when we went

 4  to do this other, that's what she told me.  She said, you

 5  have to -- I can't give you your dad's half, you'll have to

 6  pay for it, but I'll give you anything I've got.

 7      **Q.   And did she tell you why she can't give you your**

 8  **dad's half and you have to pay for it?**

 9      A.   Because she didn't have control of that half.

10      **Q.   It was --**

11      A.   It'd have to be -- That was controlled by these

12  entities that you're talking about.

13      **Q.   Okay.  I think I understand.**

14          **So it sounds like your mom wanted to fair to the**

15  **other siblings by having you pay over time a fair amount?**

16      A.   Well, yes, sir, to pay the difference of what the

17  properties were worth, supposedly.

18      **Q.   Okay.  When did you start living in that house?**

19      A.   Oh, probably three years before my mother died;

20  three or four years.

21      **Q.   Did you ever build an outdoor kitchen there?**

22      A.   Yes, sir, I did.

23      **Q.   About how much did that cost?**

24      A.   I think I spent 38,000 or 40,000.

25      **Q.   Did the family partnership pay for that?**

```
 1        A.   I paid for that myself.

 2        Q.   Okay.  And you mentioned the bathroom, the -- was,

 3   did you say $70,000?

 4        A.   I don't know the numbers on it.  I mean we can

 5   look back what she paid.

 6        Q.   Your -- It's your testimony that the family

 7   partnership did not pay for that?

 8        A.   No.  I'm not sure how my mother paid for it.  My

 9   mother paid for the bathroom.  I don't know where the money

10   came from.

11        Q.   Exhibit 20, Mr. Galmor.  Thank you.

12             (WHEREUPON, Exhibit 20 was marked for

13   identification.)

14   BY MR. RUKAVINA:

15        Q.   This is a series of invoices.  I just want to know

16   generally what's going on here, and here's my question.

17             It looks like it's an invoice from Galmor's/G&G,

18   bill to the Galmor Family Limited Partnership and remit to

19   Galmor's/G&G.

20             Do you know what these invoices are for?

21        A.   It shows there that they're work at the farm on

22   the first ones.  I mean they're all -- and they'll all be in

23   the computer, because these boys all got paid from these

24   work orders and that's why we generated that stuff.

25        Q.   Okay.
```

 1    A.    That's how they get paid.  And when they were --

 2  When my dad or when they asked us to come help, that's what

 3  we done so they'd get paid.

 4    Q.    Okay.  So let's look at this first invoice, which

 5  is invoice number 121090 for $80,880.

 6    A.    Okay.

 7    Q.    So dirt work at farm.  What's farm?

 8    A.    In Section 64.

 9    Q.    Your homestead?

10    A.    Yes, sir.

11    Q.    Okay.  So why is the Galmor Family Limited

12  Partnership paying Galmor's for work done on your homestead?

13    A.    I didn't own it then.

14    Q.    You did not own it in 2014?

15    A.    I don't think so.

16    Q.    Okay.  To the best of your recollection, when did

17  you purchase the homestead?

18    A.    After my dad passed away.  I'm not sure what the

19  date was on it.

20    Q.    The next, the next invoice, Mr. Galmor, is 127966.

21  It's for $72,540.

22          Do you remember this invoice at all?

23    A.    Seven -- 27966?

24    Q.    Yes, sir.  Dated 9/30/2016.

25    A.    Yep, those are the cowboys and the people that

```
 1  work for us, that's their insurance and wages.

 2       Q.   Okay.  Who do these cowboys work for?

 3       A.   The FLP.

 4       Q.   So why is Galmor's/G&G billing the FLP for these

 5  cowboys?

 6       A.   Because my dad -- My brother got crushed with a

 7  combine in like '11 or '12.  My dad didn't have any

 8  liability on those farms.  So when he started expanding his

 9  self, I told him, I said, Daddy, you're gonna have to get a

10  payroll company or someone to help you 'cause you can't have

11  these people out there working without some type of

12  insurance on them.

13            So he said, well, you bill me.  I don't want to

14  mess with that.  You bill me, and I'll reimburse you the

15  money.  And that's what these transactions are.

16       Q.   Okay.  So Galmor's/G&G had employees that it --

17  that it was paying, but those employees were doing the work

18  of the family partnership?

19       A.   Yes, sir.

20       Q.   And the family partnership was reimbursing those

21  employees?

22       A.   They were supposed to.

23       Q.   Okay.  Are you --

24            Do you believe that this invoice was never paid?

25       A.   I can't answer that.
```

1    Q.    Okay.  And the other invoices here, they all look

2 to be very similar for cowboys, if you want to look through

3 it.  Is it generally the same?

4    A.    Yes, sir.

5    Q.    Okay.  So these are 2014, 2016, and 2017 invoices?

6    A.    Yes, sir.

7    Q.    Okay.  And these invoices would be some --

8 somewhere reflected in the books and records of

9 Galmor's/G&G?

10    A.    Yes, sir.

11    Q.    Okay.  And whether or not these invoices were

12 paid, would that also be reflected in the books and records?

13    A.    I would assume so.

14    Q.    Okay.  We talked about the -- the debt owed by the

15 family partnership to Galmor's/G&G.

16        Do you think that all of that debt would be

17 somehow the subject of more invoices like this?

18    A.    I'm sure they are.

19    Q.    Was it -- Do you know whether it was ordinary

20 course for Galmor's/G&G to send an invoice to the family

21 partnership every time that Galmor's/G&G made an advance to

22 the family partnership?

23    A.    No, sir.

24    Q.    You don't know or that didn't happen?

25    A.    Well, I'm not gonna answer.  I don't -- I don't

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0302

 1  think --

 2      Q.   You don't remember?

 3      A.   Yeah.

 4      Q.   Okay.  The QuickBooks, I -- I'm not sure I asked

 5  you this question; I apologize if I did.  The QuickBooks

 6  files that you think might be on the --

 7           Do you think that the computer that Mr. Ries took

 8  has QuickBook files on it?

 9      A.   I'm sure there are, yes, sir.

10      Q.   Do you know if those are password protected?

11      A.   If they are, I mean, we got Deena, she can unlock

12  them, if that's what we need.

13      Q.   Do you know what --

14           Do you personally know what those passwords would

15  have been?

16      A.   I never know, no, sir.

17      Q.   You don't remember passwords like butthole2?

18           I'm not trying to be smart.  That is a password on

19  one of these QuickBook files.

20      A.   I have no idea.  I've never heard that.

21      Q.   It would be Ms. Carter that would have set up the

22  passwords?

23      A.   I'm not going to say who said any of that.  I know

24  that, like I told you earlier in the day, we worked through

25  that computer outfit there at -- at Elk City, Dynaturn, and

1  they all worked together.  I mean, I don't know any of

2  those.

3      Q.   Did you --

4           Do you remember ever you or Ms. Carter giving Mr.

5  Ries passwords for the QuickBooks?

6      A.   I don't -- I don't remember that.

7      Q.   Because at -- at the Chapter 7 meeting of

8  creditors on the CD, he asked you for it and you say you'll

9  get them to him.  Do you have any memory of that at all?

10     A.   I hope Deena gave them to him; I don't know.

11     Q.   Do you know if you ever wrote down the passwords

12  for the files on some piece of paper or somewhere?

13     A.   No, sir, I -- I don't know any of that, what

14  you're asking me.

15     Q.   That's fine.

16          You -- So you had nothing to do with the

17  passwords?

18     A.   I had nothing to do with the computer.

19     Q.   Okay.  There are several businesses that popped up

20  here and there that I don't know what they are.  I'm just

21  going to ask you very briefly if you know what they are, to

22  tell me what they are.

23          A company called Galmor Land and Cattle, you ever

24  hear of that company?

25     A.   It's a dba of mine.

```
 1        Q.    Okay.  You ever hear of a company called Galmor's
 2  Rock?
 3        A.    No.
 4        Q.    Okay.  You ever hear of a company called MSG Oil
 5  and Gas?
 6        A.    That's me.
 7        Q.    Okay.  Is that a formal company or a dba?
 8        A.    DBA.
 9        Q.    Okay.  Is that where you ran your oil and gas
10  interests through?
11        A.    Yes, sir.
12        Q.    Okay.  A company called SGM Management, do you
13  know that company?
14        A.    I know of it.  That's what we discussed earlier.
15  I'm not sure -- A lot of those things were built, but none
16  of them were ever used.
17        Q.    Okay.  You don't think that SGM Management was
18  ever vested with any property?
19        A.    Not that I'm aware.
20        Q.    Okay.  SGM Real Estate, you ever hear of that
21  company?
22        A.    Yeah.
23        Q.    Okay.  What about --
24              Was that a company or just a dba?
25        A.    Like I said, those gentlemen come in and built all
```

 1  that stuff, and I think the -- none of it ever got populated

 2  or used.

 3      Q.   Okay.  So to your understanding, SGM Real Estate

 4  was never vested with property?

 5      A.   Not that I'm aware of.

 6      Q.   Okay.  You hear of a company called G&G Leasing?

 7      A.   A long time ago.  I mean, that's where we kind of

 8  started then with -- before the SGM, I think, something like

 9  that.  But it never did get off the ground either.

10      Q.   Okay.  Not vested with any assets to your

11  knowledge?

12      A.   No, sir.

13      Q.   Okay.  And the last company, Brandon Galmor Ranch.

14  You ever hear of that?

15      A.   No.

16      Q.   Okay.  Is Brandon --

17      A.   That's my son.

18      Q.   -- the one that was here?

19      A.   Yes, sir.

20      Q.   Gotcha.

21           Okay.  At one point in time, you caused 10 or 15

22  acres of land to be transferred to Deena Carter, right?

23      A.   Yes, sir.

24      Q.   Okay.  Was it 10 or 15?

25      A.   No, my mother did.  It's ten acres, yes, sir.

1      Q.    You did not -- You did not sign the deed?

2      A.    Well, I may have signed the deed.  But the

3  transaction we were just discussing, Mr. Ledford, and that

4  Tindal place on the corner, my dad sold Deena all those

5  properties and those properties weren't his to sell.

6          So when they claimed -- they put the sign up in

7  front of my mother, said we told you we was going to pay

8  you, you -- we bought -- what you bought, take the ten acres

9  behind your house since we lost this other land.

10     Q.    Okay.  Did Ms. Carter pay any money for that ten

11 acres?

12     A.    I think she bought it when she bought the -- she

13 bought all the Carlton Place there that -- the house --

14 there was two houses, I think, and a -- and an old store or

15 something there.

16     Q.    And I apologize.  The $250,000 that you paid by

17 way of promissory note for your father's interest in the

18 homestead, you stopped paying that when the litigation

19 started?

20     A.    Yes, sir.

21     Q.    Do you know how much was outstanding at that point

22 in time?

23     A.    No, I sure don't.  It'll be in that computer

24 'cause we kept track what we were doing.

25     Q.    Are you not worried about being foreclosed on

 1  that?

 2      A.   Sir, all the crap I've been through, that'd be the

 3  simple deal for me.

 4      Q.   **I'm informed that at your dad's passing he owned a**

 5  **gun collection of some 36 guns; is that true?**

 6      A.   He owned a lot of guns, yes, sir, he did.

 7      Q.   **Okay.  Do you know what happened to those guns?**

 8      A.   They're all still around there somewheres.  I mean

 9  what hadn't been stole.  Brandon stole a bunch of them.

10  Just a bunch of guns that are missing.  I got serial numbers

11  on them and -- but I'm not going to say what -- I don't know

12  what he owned.  I know what the serial numbers were, but I

13  don't know what all's there.  But the gun safes are still

14  there.

15      Q.   **Did your dad maintain a -- a written document of**

16  **all the guns he owned at some point in time with serial**

17  **numbers?**

18      A.   No, sir.

19      Q.   **Okay.  So how do you -- how do you know what the**

20  **serial numbers are?**

21      A.   Well, he wrote some of them down.  I found a sheet

22  of paper --

23      Q.   **Okay.**

24      A.   -- that the -- had numbers on them.

25      Q.   **Can you tell me approximately how many guns**

1    remain; 10? 20?

2        A.    There's 20 maybe, something like that.

3        Q.    **And are they in your possession?**

4        A.    They're at my mother's house, yes, sir.

5        Q.    **Okay.  Do you have any understanding of who owns**

6    **those guns?**

7        A.    No.

8        Q.    **Do you have any understanding that those were**

9    **transferred to the family partnership?**

10       A.    I'm not sure of any of that.

11       Q.    **Okay.  So why are -- why are they with you if you**

12   **don't know who owns them?**

13       A.    Well, my family owns them, sir.

14       Q.    **Okay.  Do you have any idea of the value of those**

15   **guns?**

16       A.    I have no idea.

17       Q.    **Okay.  Do you believe that you personally own any**

18   **of those guns that your dad had before he died?**

19       A.    No.  I know what I own and I know what my brother

20   owns.  I mean, but I -- I wouldn't claim none of his.  Why

21   would I do that?

22       Q.    **Okay.  Do you remember what some of those guns**

23   **were that were his?**

24       A.    I'd have to look at them and see.

25       Q.    **Any -- Anything particularly exotic or antique or**

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM

PAPP 0309

1   valuable?

2       A.   No, not -- I mean, most of the guns he bought were

3   transactions that people come by, needed money for

4   something, and he'd buy a gun off of them.  I don't remember

5   him ever buying anything real fancy.

6       Q.   And, and you mentioned that there's a gun safe.

7   Is that at your house as well?

8       A.   Yes, sir.

9       Q.   Okay.  And you and I can talk about it afterwards.

10  I'm not going to burden you with argument.

11           Do you recall that, that -- that Ms. Carter, Deena

12  Carter owed money to the family partnership that she was

13  paying on every month?

14      A.   Yes, sir.

15      Q.   Okay.  Was that a different transaction than the

16  ten acres?

17      A.   It was all the same transaction.

18      Q.   Okay.

19           THE REPORTER:  I'm sorry, sir.  Can you repeat

20  that?  The engine --

21           THE WITNESS:  It was the same transaction.

22           THE REPORTER:  Thank you.

23  BY MR. RUKAVINA:

24      Q.   At the time of filing bankruptcy, Galmor's/G&G

25  owed a lot in unpaid IRS taxes, right?

 1    A.    Yes, sir.

 2    Q.    1.2 million or something?

 3    A.    Sounds familiar.

 4    Q.    Okay.  Why wasn't Galmor/G&G paying those taxes?

 5    A.    I guess there wasn't any money to pay them.

 6    Q.    But Galmor's/G&G was withholding those moneys from

 7 employees?

 8    A.    I'm sure we did.

 9    Q.    Okay.  Do you remember a $91,000 and change IRS

10 payment made by the Family Limited Partnership in late 2013?

11    A.    No, sir.

12    Q.    Do you remember if the Family Limited Partnership

13 had its own tax liabilities of any size in the year 2013?

14    A.    No, sir.

15    Q.    Okay.  Did there come a time when oil and gas

16 revenues that should have been payable were suspended after

17 your dad died?

18    A.    Yes.

19    Q.    What -- What happened with those?

20    A.    I can't explain the whole tenor of it all.  But I

21 know that after my dad passed away, he didn't put all the

22 leases into one -- instead of the two corporations, the

23 Galmor Family Trust and the FLP.  So after he passed away,

24 we had to build an entity to receive the money to have its

25 own code, tax code to receive the moneys before we could get

```
 1  our money from the Barkers.

 2      Q.   Was that done?  And was the -- were the funds

 3  released?

 4      A.   Yes, sir.

 5      Q.   Do you remember about how much was suspended?

 6      A.   No.  I mean, it'll be -- it'll show when it come

 7  into the checkbook.

 8      Q.   Okay.  Was your mother asking about those

 9  royalties, the suspended royalties?

10      A.   She didn't ask a lot about them.  It concerned her

11  that we hadn't got the money because we were running short

12  of money.

13      Q.   Let me -- Let me ask you generally.

14           Did your mom, I mean was she hands-on with respect

15  to all these family assets or did she just kind of let you

16  run them and trust that you'd run them right?

17      A.   My mother and I talked pretty much about

18  everything we done --

19      Q.   Okay.

20      A.   -- after it was all happening, 'cause I didn't

21  want her to be blindsided by something that I might have

22  done.

23      Q.   So she was pretty hands-on?

24      A.   My mother was smarter than a tack.  I mean she

25  could do it all.  She was pretty intelligent.
```

1     Q.    Okay.  Did -- Did your parents own a vintage red

2  Volkswagen bug?

3     A.    Yes, sir.

4     Q.    Does that car still exist?

5     A.    Yes, sir.

6     Q.    Where is it, sir?

7     A.    It's in the barn.

8     Q.    Do you have an understanding of who owns that?

9     A.    I assume it's the family limited partners.

10    Q.    Do you recall a Wiley's Jeep that was in

11  camouflage paint?

12    A.    Yes, sir.

13    Q.    Okay.  Does that vehicle still exist?

14    A.    Yes, sir.

15    Q.    And where is it, sir?

16    A.    It's at Elk City.

17    Q.    Okay.  What property in Elk City?

18    A.    Well, that -- it was signed over to my son.

19    Q.    Okay.  Do you know who owned that car before it

20  was signed over?

21    A.    My dad.

22    Q.    Okay.  When was it signed over to your son?

23    A.    It's on the -- like '12 or '13, something --

24    Q.    So long --

25    A.    -- like --

1      Q.   -- time ago?

2      A.   Yes, sir.

3      Q.   Okay.  A green Ford LTD that -- Was there ever a

4  green Ford LTD in the family?

5      A.   It's my grandmother's.

6      Q.   Okay.  Does that car still exist?

7      A.   Sitting at the barn.

8      Q.   Okay.  Do you have an understanding of who owns

9  that car?

10     A.   FLP, I guess.

11     Q.   And the Lincoln Navigator we talked about, was

12  that your -- your mother's car?

13     A.   She had two or three of those Navigators.  And my

14  dad, he would go buy a new one and I would buy her old one.

15  So I'm not sure.  We'll have to look at the numbers and what

16  we've got there, sir.

17     Q.   We talked about a bunch of cars.  And obviously

18  cars, at least I guess in the last 50 years, have

19  certificates of title.

20          Are you aware of what a certificate of title is?

21     A.   Yes, sir, I am.

22     Q.   Okay.  Do you know or have possession or access to

23  certificates of title for some or all of these cars that

24  we've talked about; the bug, the Navigator, the handicap

25  van?

1    A.    I think there's -- there's records there somewhere

2   in my dad's office.

3        Q.    Okay.  Do you recall if he kept a physical file of

4   certificates of title?

5        A.    No.  He had a book.

6        Q.    Where's your dad's office?

7        A.    There at the house at Section 64.

8        Q.    Okay.  When I -- Whenever I sent you that

9   subpoena, did you look through your dad's office for any --

10  any documents that could respond to that?

11       A.    No, sir.

12       Q.    Was there ever a Ford Excursion in the family?

13       A.    Yes, sir.

14       Q.    Okay.  Does that car still exist?

15       A.    Yes, sir.

16       Q.    Where is that car?

17       A.    It's in Elk City.  Well, that's in Arkansas right

18  now.

19       Q.    Was that transferred out at some point?

20       A.    I bought that from my father, yes, sir.

21       Q.    So you actually purchased that for yourself?

22       A.    There should be a canceled check to show it, yes,

23  sir.

24       Q.    Okay.  There was a -- also like a white older

25  Cadillac, correct?

1  A. Yes, sir.

2  Q. **Okay.  Does that car still exist?**

3  A. Yes, sir.

4  Q. **What -- Do you know what the make and model of**

5 **that is?**

6  A. I don't know that.

7  Q. **Where is that car?**

8  A. It's there at Shamrock.

9  Q. **In Shamrock?**

10  A. Mm-hmm.

11  Q. **In whose possession, do you know?**

12  A. Kuco's driving it right now, my Mexican boy.

13  Q. **Okay.  Is that your car?**

14  A. Yes, sir.  My dad gave it to me.

15  Q. **Was there ever a board of directors for the**

16 **quarry?**

17  A. I don't think so.

18  Q. **Okay.  Was -- Were there ever two lots in**

19 **Clarendon, Texas, the Peyton Place?**

20  A. They're still there, yes, sir.

21  Q. **Okay.  Were they ever transferred to the Family**

22 **Limited Partnership?**

23  A. I don't know those things.

24  Q. **Do you -- Do you have any idea who owns those**

25 **properties?**

1    A.   The last -- When I was still managing the FLP, I

2  paid the taxes on them.  So I don't know who owns them now.

3    **Q.   Okay.  Can you tell me what you know about those**

4  **two lots?  Are they big? small? crap land? good land?**

5    A.   Never -- I just heard about them all my life.

6  I've never saw them.

7    **Q.   And forgive me.  Where is Clariton -- Clarendon?**

8    A.   It's a little south.

9    **Q.   Little south --**

10    A.   South and west by Clarendon Lake.

11    **Q.   Okay.  And those were called the Peyton Place?**

12    A.   I have no idea, sir.

13    **Q.   Well, why was the Family Limited Partnership**

14  **paying taxes on those if you have no idea about those**

15  **properties?**

16    A.   They was something my dad acquired.  And rather

17  than just let it go to taxes, I -- I thought that was what I

18  was supposed to do.

19    **Q.   Do you have any idea if eventually it went to**

20  **taxes or who the current owner is?**

21    A.   I didn't anything with them after Leslie took over

22  the managing part.  I -- I didn't make any more decisions on

23  any of that.

24    **Q.   Got it.**

25    **I know this has been difficult for you.  But have**

1    I been courteous and professional with you today?

2        A.    Yes, sir.

3            MR. RUKAVINA:    Okay.    Thank you, sir.    I'll pass

4    the witness.

5    EXAMINATION

6    BY MR. RIES:

7        Q.    Mr. Galmor, we've met a few times before.

8        A.    Yes, sir.

9            MR. RUKAVINA:    You need a microphone.

10    BY MR. RIES:

11        Q.    Mr. Galmor, we've met a few times before.    My name

12    is Kent Ries and I was the trustee and still am in your

13    bankruptcy case and in your corporate case.    You remember

14    all that?

15        A.    Yes, sir.

16        Q.    If you would look at a couple exhibits, Exhibit 2

17    and Exhibit 8 out of that pile.

18        A.    There it is.    Okay.

19        Q.    I'm going to have you look at Exhibit 8 first, and

20    that's the 2016 partnership return for Galmor Family Limited

21    Partnership.    You see that?    On the front page.

22        A.    On the front page?

23        Q.    And if I could have you go back --

24        A.    Okay.

25        Q.    Little more than half, two-thirds of the way

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0318

1  through there are some pages marked Schedule K-1 2016.

2          MR. RUKAVINA:  This?

3          MR. RIES:  K-1s.

4          MR. SHERWOOD:  Steve, should look like this.

5          THE WITNESS:  I'm looking, guys.

6  BY MR. RIES:

7      Q.   On the very top left it'll say, kind of smaller

8  letters, it'll say Schedule K-1.

9      A.   I see -- I'm on Schedule K.

10          MR. RUKAVINA:  Is it the actual K-1 or the

11  Schedule K?

12          MR. RIES:  It says Schedule K-1.

13          THE WITNESS:  You're going to have to find it for

14  me.

15          MR. SHERWOOD:  Let me help you.

16          THE WITNESS:  My eyes is playing now.  Look at

17  you.  Thank you.

18          MR. SHERWOOD:  Mm-hmm.

19          THE WITNESS:  Okay.

20  BY MR. RIES:

21      Q.   All right.  There's some letters, boxes -- all

22  these boxes have letters and numbers by them.  There's a box

23  number F that talks about partner's name.

24      A.   Yes, sir.

25      Q.   Do you see that?

 1    A.    Mm-hmm.

 2    Q.    What's -- What's typed inside that?

 3    A.    Galmor Family Contribution Trust.

 4    Q.    Okay.  And then you see a few more lines down

 5  there's a --

 6          MR. RUKAVINA:  Kent, I'm sorry.  Are you on

 7  Exhibit 8?

 8          MR. RIES:  On Exhibit 8 on Schedule K-1.

 9          MR. RUKAVINA:  Let me come over to you.

10          MR. RIES:  Well, there's more than one K-1.

11          MR. RUKAVINA:  Ahh.

12          MR. RIES:  There's three.

13          MR. RUKAVINA:  Got it.

14          MR. RIES:  There should be three.  That -- I think

15  that's the second one.  Yeah, it's the second one.

16          MR. RUKAVINA:  Okay.  Thank you.

17  BY MR. RIES:

18    Q.    Okay.  You see a few lines further down on J where

19  it says Partner's share of profit, loss, and capital?

20    A.    Yes, sir.

21    Q.    And it's got a whole bunch of beginning, ending,

22  profit, loss, capital numbers, but they're all the same.

23  What's the percentage for that?

24    A.    49.5 percent on both sides.

25    Q.    Okay.  So is it your understanding from that then

1    that the Galmor Contribution Trust owns 49.5 percent of the

2    Galmor Family Limited Partnership, at least at the end of

3    2016?

4        A.   Yes, sir.

5            MR. RUKAVINA:  Objection; legal conclusion.  GO

6    ahead and answer.

7            THE WITNESS:  Yes, sir.

8    BY MR. RIES:

9        Q.   Go a few more pages, there's another K-1.  And

10   just so you notice it, on Part F, I'm going to ask you this,

11   it should state Galmor Management L.L.C.  You see that?

12       A.   Got Management L.L.C., yes, sir.

13       Q.   Do you see that?

14       A.   Yes, sir.

15       Q.   And then a few lines down it -- on J, it talks

16   about what the partner's share is for that entity, and what

17   is that?

18       A.   One percent.

19       Q.   Okay.  And let's go a few more pages, and there's,

20   I think the final K-1.

21       A.   Okay.

22       Q.   And on F, who is -- who's the owner?  Who's the

23   other partner listed?

24       A.   Galmor Family Trust.

25       Q.   Okay.  And on J, what are the percentages of that?

1    A.    49.5 and 49.5.

2    Q.    Okay.  And I forgot to ask you, on number -- on

3  letter G, there's a -- there's a box checked.  Does it say -

4  - What does that box say?

5    A.    Domestic partner.

6    Q.    No.  On G.  You're looking at H.

7    A.    G.  Oh, G is limited partner of other LLC member.

8    Q.    Okay.  I'm sorry.  And I meant to ask you that

9  same thing on -- if you go back a few pages to the one

10  that's Galmor Management, the K-1 that's Galmor Management.

11    A.    Okay.

12    Q.    On G, what's checked in there?

13    A.    Limited partner or other LLC member.

14    Q.    On Galmor Management L.L.C.?

15    A.    The Galmor Contribution -- I got the Galmor Family

16  Limited Partnership in B.

17    Q.    Okay.  And what's on F?

18    A.    F says Galmor Contribution Trust.

19    Q.    Okay.  And on that one it says G is checked.  You

20  said limited partner --

21    A.    Limited partner of (sic) other LLC.

22    Q.    Okay.  So let's get the one in the middle.

23    A.    Okay.

24    Q.    The one that's -- where F is Galmor Management

25  L.L.C.

```
 1        A.    Okay.

 2        Q.    Okay.  And on G, what's checked?  Of those two,

 3   what's checked?

 4        A.    It says Galmor partner or LLC member.

 5        Q.    What's the first word?

 6        A.    General partner or --

 7        Q.    Okay.

 8        A.    -- LLC member.

 9        Q.    Okay.  I may have heard the wrong -- I thought you

10   said Galmor.

11              So it's your understanding then that the -- for

12   the Family Limited Partnership, for the Galmor Family

13   Limited Partnership, the ownership was Galmor Management

14   L.L.C. one percent and then these two trusts the other 99

15   percent split in half?

16        A.    That's what it's saying there, yes, sir.

17        Q.    Okay.  And the limited partner, limited partner

18   were the two trusts and the general partner was Galmor

19   Management L.L.C.?

20        A.    That's what it's showing there.

21        Q.    So when you testified earlier that you -- you

22   thought your siblings might be the owners of the limited

23   partnership, in fact, it's the two trusts in -- in the

24   management company?

25        A.    I don't -- Yeah, I guess that's right.
```

1      Q.   We'll skip '17.  '17, just for the record, shows

2  the same things, if -- if that needs to be mentioned, the

3  same ownership.

4           And I think you were asked -- You know you were

5  asked a lot of questions today about this -- the debt that

6  we're here about, the debt that you scheduled on your two

7  bankruptcy schedules, your corporate loan from G&G and on

8  your personal one, Galmor's correct?

9      A.   Yes, sir.

10     Q.   And, and that's the basis of -- of why we're here

11 is my lawsuit saying that those need to be paid to the

12 estate by the Family Limited Partnership; you understand

13 that?

14     A.   Yes, sir.

15     Q.   Okay.  So you were asked a little bit about who

16 knows about those and who knew about these debts and, and

17 how they all arose and so forth.  We're not going to go over

18 all the details of that; the -- the records show some of

19 that.  There are other records that show it.

20          But, now, you've given a lot of context about

21 generally how those debts arose, correct?

22     A.   Yes, sir.

23     Q.   You know, whether it was advances, I think part of

24 it was advances that -- that G&G made that exceeded the

25 amount that the Family Limited Partnership paid back

1   essentially in rock, in -- in royalties that you owed,

2   correct?

3       A.   Yes, sir.

4       Q.   And then we just went through I think the very --

5   I think it was the last exhibit, Exhibit 20, there's another

6   -- an amount owed to G&G that was G&G employees paying --

7   being paid by G&G that were actually employees' time that

8   was being used for the benefit of the Family Limited

9   Partnership, correct?

10      A.   Yes, sir.

11      Q.   So you mentioned something about, well, you

12  weren't sure how many other people knew.  I mean, you kind

13  of had different -- different things about how many other

14  people knew about this.

15           But there were a number of other people that kept

16  the records, the actual detailed records of all these

17  amounts, correct?

18      A.   Yes, sir.

19      Q.   Like you talked about the rock quarry, there were

20  people that weighed it in and then sent invoices and -- and

21  then somebody else put the invoices in.  That really wasn't

22  something you did, though, on a daily basis, was is --

23      A.   No, sir.

24      Q.   -- that you personally did?

25      A.   No, sir.

 1      Q.   They -- You knew the process of how all that

 2 worked --

 3      A.   Yes, sir.

 4      Q.   -- and you've explained that as best you can today

 5 --

 6      A.   Yes, sir.

 7      Q.   -- the best you can?

 8           But the details of it were also known by several

 9 other people.  And I just want to kind of make sure I know

10 who all those people are in case we need to talk to each of

11 them.

12           But, but the most obvious ones were Deena Carter;

13 is that right?

14      A.   Yes, sir.

15      Q.   And she did a lot of the data on this infamous

16 computer we talked about today --

17      A.   Yes, sir.

18      Q.   -- that I have?  Matt --

19      A.   Brooks.

20      Q.   -- Brooks, okay.

21      A.   Yes, sir.

22      Q.   And he worked for G&G as well?

23      A.   Yes, sir.

24      Q.   Okay.  And so he did some of the data input as

25 well?

1    A.    Yes, sir.

2    Q.    And he did some of the analysis that was -- we've

3 gone over here today, for example, some of those reports,

4 the spreadsheet and the royalties and so forth?

5    A.    Yes, sir.

6    Q.    Okay.  And we've also talked about Kellye Fuchs

7 who's -- who would have taken all the source documents and

8 turned them into a tax return and maybe financials as well,

9 correct?

10    A.    Yes, sir.

11    Q.    All right.  Besides -- I know those are the people

12 I've heard you say the most and you talked the most about.

13        Was there anybody else that -- that on a day-to-

14 day basis had something more than just -- and I'm -- and I

15 want to exclude the people that, you know, maybe weighted

16 the scales what the rock was.  And we, you know, probably

17 not -- hopefully we don't have to go take depositions of --

18 of every clerk that worked at the place.  But people that

19 were more, I'd say more management, like Deena or you or

20 Matt or obviously Kellye, although she didn't work for you.

21        Any other people that -- besides those ones?

22    A.    No, 'cause that -- that's -- I basically based on

23 Deena and -- and there at the last Matt, you know.

24    Q.    Okay.  And they all knew about this -- they

25 actually did the invoices, for example, as they went along

1  --

2       A.    Yes, sir.

3       Q.    -- correct?

4             So like they would be the ones that knew how much

5  was owed, how much was advanced to the Family Limited

6  Partnership and then how much rock was and -- and royalties

7  were due to -- to the Family Limited Partnership?

8       A.    Yes, sir.

9       Q.    And they would have known -- did --

10            I assume they prepared like all the payroll checks

11 and so forth and -- and the insurance checks that were for -

12 - for all these different employees that were in the

13 invoices, they would have prepared all those kind of

14 invoices and checks?

15      A.    Well, Deena wouldn't have prepared the payroll.

16 Jacey Carter did most of the payrolls.

17      Q.    Okay.  So she would --

18            She might know some of that?

19      A.    Yes, sir.

20      Q.    Okay.  Do you think --

21            Now, Deena and Matt were familiar with the

22 information that went into your bankruptcy schedules about

23 what was owed, correct?

24      A.    Yes, sir.

25      Q.    Would Jacey Carter also know some of that?

```
 1        A.    No, sir.

 2        Q.    She just did the pay -- actual payroll, like she'd

 3   get timesheets and do payroll for people?

 4        A.    Yes, sir.

 5        Q.    But she didn't really keep track of that's --

 6   that's somebody that's doing work at the Family Limited

 7   Partnership versus that's somebody who's doing work for G&G?

 8        A.    No.

 9        Q.    Okay.  So we're back to Deena and Matt and Kellye;

10   is that right?

11        A.    Yes, sir.

12        Q.    Anyone -- Am I missing anybody else then?

13        A.    Not that I know of.

14        Q.    Okay.  But all those people knew about, not just

15   you, but Deena and Kellye, all those people knew about these

16   transactions, these kind of inter-company transactions --

17        A.    Even --

18        Q.    -- correct?

19        A.    -- my mother.  I mean, she knew what we were

20   doing.

21        Q.    Well, we can't depose her.

22        A.    Oh.

23        Q.    But she would have known about those is what --

24        A.    Yes, sir.

25        Q.    -- you're saying?
```

```
 1        A.     Mm-hmm.

 2        Q.     She knew what was happening as it was happening?

 3        A.     Yes, sir.

 4        Q.     Okay.  And, and just to clear -- make this clear.

 5               From what I understand from your testimony, for a

 6   while there were a number of years where the limited

 7   partnership had oil and gas income that was sufficient to --

 8   to pay its bills; is that right?

 9        A.     Yes, sir.

10        Q.     And then in the downturn, which it's oil and gas,

11   so the downturn in prices, there became a time where G&G

12   essentially had to fund all the operations the FLP had?

13        A.     Yes, sir.

14        Q.     The rock quarry, running -- there's a number of

15   sections of land.  I mean I've sold, I can't remember, but I

16   think I've sold eight or nine sections -- not all full

17   sections, but tracks of land that the partnership owned.

18        A.     Yes, sir.

19        Q.     And that's -- that stuff all has to be operated.

20   I mean, you still have to keep track of it.  There's a lot

21   of work that has to be done on land, I take it?

22        A.     Yes, sir.

23        Q.     Okay.  There was a -- the question asked about

24   whether G&G owed the Family Limited Partnership money at the

25   time of the bankruptcy filing for royalties.  But my
```

1    understanding of -- of the exhibit, the spreadsheet was that

2    at the -- from 2017 through the time you filed -- I think

3    you filed -- let me just give you the exact date.

4              You filed your Chapter 11 case on June 19th of

5    2018, okay.

6        A.    Yes, sir.

7        Q.    At that time, your schedules for G&G showed not

8    that it owed the Family Limited Partnership money, but that

9    it had advanced the Family Limited Partnership more money

10   than it owed it in royalties back; is that right?

11       A.    Yes, sir.

12       Q.    And that amount was roughly $186,000?

13       A.    Mm-hmm.

14       Q.    Does that sound right?

15       A.    Yes, sir.

16       Q.    So there was no debt owed to the Family Limited

17   Partnership that wouldn't have been scheduled, it was the --

18   it was the opposite?

19       A.    Yeah, that's right.

20             MR. RIES:  I'll pass the witness.

21   FURTHER EXAMINATION

22   BY MR. RUKAVINA:

23       Q.    I have one more.  It's going to be Exhibit 21.

24   Pardon me.  Let me...

25             MR. SHERWOOD:  Thank you.

```
 1              (WHEREUPON, Exhibit 21 was marked for

 2   identification.)

 3   BY MR. RUKAVINA:

 4       Q.   Mr. Galmor, have you ever made any allegation or

 5   any suspicion against Deena Carter at all regarding what she

 6   did for you?

 7       A.   No, sir.

 8       Q.   Okay.  Never accused her of any kind of

 9   embezzlement of company funds?

10       A.   No, sir.

11       Q.   No reason to suspect that that's what happened?

12       A.   No, sir.

13       Q.   Are you and her friends?

14       A.   Yes, sir.

15       Q.   You still trust her?

16       A.   Yes, sir.

17       Q.   Does she do any work for you today?

18       A.   No, sir.

19       Q.   Okay.  Do you all hang out socially or see each

20   other from time to time?

21       A.   First time I talked to Deena was Monday after I

22   got this paperwork from -- from you all.

23       Q.   When was the -- the last time you talked to her

24   before that?

25       A.   Oh, probably a month and a half.  She had a horse
```

 1  die, and we buried a horse.

 2      Q.   Do you recognize the exhibit I put in front of you

 3  here, the amended and -- amendment and ratification of

 4  compromise and settlement agreement and then the next

 5  document being the compromise and settlement agreement?  Do

 6  you recognize this?

 7      A.   Yes, sir, I think so.

 8      Q.   You remember that this was the result of the

 9  mediation we discussed earlier?

10      A.   Yes, sir.

11      Q.   And this was signed by -- Well, I'm not sure it

12  was signed by Rudas.  But it was signed by you, correct?

13      A.   I've signed it where my name is, yes, sir.

14      Q.   And Leslie signed it?

15      A.   Yes, sir.

16      Q.   Okay.  Please go to section 4.03.  It's on page 8.

17  Do you see that, sir?

18      A.   Yes, sir, 4.8.

19      Q.   Section 4.03, it's labeled Disposition of Trust

20  Assets; do you see that?

21      A.   I see a 4.01.

22      Q.   Go to the next page.

23      A.   4.03, yes, sir.

24      Q.   Okay.  Take a moment to read that and refresh your

25  memory.

1     A.   (Reviews document)

2   Okay.

3     Q.   Okay.  I think we've already established that you

4   don't really know much about the contribution trust or the

5   family trust, do you?

6     A.   No, sir.

7     Q.   Have you ever taken the position that one or both

8   of those trusts failed?

9     A.   No, sir.

10     Q.   Okay.

11          You have never told any of your siblings that

12   those trusts failed because your dad failed to follow

13   certain legal requirements in order to create them?

14     A.   I assume.

15     Q.   No, no.  I don't want to say assume.

16          Have you -- Did you ever tell any of your

17   siblings, Shawn, that the trusts failed because your daddy

18   or his lawyer messed some documentation up?

19     A.   I don't remember any of that, no, sir.

20     Q.   You never told any of your siblings that the

21   trusts failed, right?

22     A.   No, sir.

23     Q.   Okay.  And you don't remember if you were the

24   trustee of those trusts at any point in time, do you?

25     A.   No, sir.

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0334

1    Q.    Okay.

2          Do you remember who the --

3          Do you know what a beneficiary of a trust is?

4    A.    Yes, sir.

5    Q.    Okay.  Who were the beneficiaries after your mom

6    died, of those trusts?

7    A.    I can't answer that, sir.

8    Q.    Well, you all agreed at the mediation that you

9    would basically distribute the assets of the trusts, right?

10   A.    That's what it says here, yes, sir.

11   Q.    So why did you think that you and Leslie and Rudas

12   and Traci were able to decide how to distribute those trusts

13   unless you all were the beneficiaries of those trusts?

14   A.    I -- I can't answer that.  I don't know what --

15   really what you're saying.

16   Q.    Okay.  Well, what -- and I'm not -- Again, I'm not

17   trying to attack you.

18         But what -- what made you think that you had the

19   right to agree to distribute with your siblings the assets

20   of those trusts?

21   A.    Through that mediation that day, I guess.  I mean,

22   we discussed all of it.

23   Q.    Can you think of any beneficiary of those trusts,

24   now that your parents are dead, other than you and three of

25   your siblings?

```
 1        A.    That's correct.

 2        Q.    Okay.  There -- you don't --

 3              You can't think of any possible other beneficiary,

 4  can you?

 5        A.    No, sir.

 6        Q.    Okay.

 7              Is it fair to conclude that -- that you all

 8  decided, well, we're the only beneficiaries and we can

 9  pretty much do what we want, so we're just going to split

10  those assets as this provides?  Is that a fair

11  characterization?

12        A.    Yes, sir.

13        Q.    Okay.  And is it also fair to say that because you

14  had filed bankruptcy, you might not be able to control your

15  share and it might be Mr. Ries that controlled your share?

16  Is that fair to say that that was a -- a concern?

17        A.    Yes, sir.

18        Q.    Okay.  And that's why it talks about later on how

19  if Mr. Ries succeeds, he'll basically step into your role;

20  do you remember that?

21        A.    Yes, sir.

22        Q.    Okay.  So let me just jump to the chase.

23              Whoever owned the Family Limited Partnership prior

24  to this mediation, you all agreed that you would cut right

25  through that and just basically find that the four siblings
```

1  would own that limited -- those limited partnerships,

2  correct?

3      A.   I assume, if that's what this reads, yes, sir.

4      Q.   Well, we -- we've seen that at one point in time

5  the contribution trust owned 49.5 percent of the family

6  partnership, right?

7      A.   Yes, sir.

8      Q.   And at one point in time the family trust owned 49

9  percent of the Family Limited Partnership, right?

10     A.   Yes, sir.

11     Q.   Do you know of any other assets at that point in

12 time that the contribution trust would have owned?

13     A.   No, sir.

14     Q.   Okay.  Do you know of any other assets at that

15 point in time that the family trust would have owned?

16     A.   No, sir.

17     Q.   Is it fair to say that by the time of this

18 mediation, the only assets that the contribution trust and

19 the family trust owned were its limited partnership

20 interests in the family partnership?

21     A.   I assume.  I don't...

22     Q.   Okay.  And is it -- is it a fair characterization

23 that -- that because of the complexity with respect to

24 trusts and what your dad did, you and the other siblings

25 just said, let's cut through that crap and just split the

1   actual assets as it provides here?

2       A.   Okay.

3       Q.   Is -- Is that fair or not?  I'm -- I wasn't there.

4       A.   Well, I'm not sure -- Lovell and them did this

5   all.

6            And for me to sign this document, the deal was

7   that I renege, give up the operations of all the properties.

8   I give up all my oil and gas interests that I had in any of

9   this stuff, and she gives me the homestead and the home and

10  then I -- that's all I get out of the whole mess.

11      Q.   Okay.  And that -- That's your understanding of

12  this?

13      A.   Yes, sir.

14      Q.   And all the rest is just legal detail?

15      A.   Well, that's -- that was what -- that's what they

16  told me we were doing when I signed these documents.

17      Q.   I understand.  That's the economic deal in your

18  mind?

19      A.   Yes, sir.

20      Q.   Okay.  Here's one thing that I do not understand.

21  Was Mr. Ries at that mediation?

22      A.   I don't -- Yeah, I think he was.  I think he was

23  in the other room, weren't you?  Maybe or --

24      Q.   Well, did Mr. --

25      A.   I don't know.

1    Q.    Mr. Ries didn't sign this document, right?

2    A.    No, sir.

3    Q.    Okay.  Why did you and the others thing that --

4    that you all could do the settlement if Mr. Ries doesn't

5    approve it?

6    A.    Well, I -- I'm just going by what Joe Lovell and

7    them asked me to do.

8    Q.    Okay.  Were they your lawyers?

9    A.    Yes, sir.

10   Q.    Well, we don't want to go into what they told you,

11   okay.

12         So, but was there any discussion with the other

13   parties there as to, oh, my, we can't do this without Kent's

14   signature?  No -- No one raised that?

15   A.    Well, I -- I don't know any of those things.

16   We're all in different rooms and we're all talking.

17   Q.    Okay.

18   A.    I mean, that's -- I just know that they come in

19   and told me that this would be the best way to get through

20   this, Leslie -- me resign, I end up with my home; my mom and

21   dad's estate, I mean, and the -- and the land, and I give up

22   my gas interests and I walk away from it.  That's what I do

23   know.

24   Q.    Do you know whether -- whether you or anyone

25   working for you ever asked Mr. Ries to sign this contract?

1        A.    I had no idea about that.

2              MR. RUKAVINA:  Thank you, sir.  I'll pass the

3    witness.

4              MR. RIES:  I don't have any questions.

5              MR. SHERWOOD:  No questions.  I would like him to

6    have the opportunity to read and sign the deposition.

7              MR. RUKAVINA:  Oh, yeah.  There's no rush on this.

8              MR. SHERWOOD:  I don't need a copy, but I just

9    need the ability to let him have a copy to review.

10             MR. RIES:  You want to send it to me and then I'll

11   send it to Matt or just send it direct to Matt.

12             MR. RUKAVINA:  Send it direct to Matt and copy me.

13             MR. RIES:  Okay.

14             MR. RUKAVINA:  And sir, let's be on the record a

15   little bit longer.  So your lawyer has just asked to read

16   and review.  You have 30 days to do that after you receive

17   the -- the transcript.  If you do not make changes to the

18   transcript -- there'll be a sheet at the back for you to

19   make changes.  If you do not make changes in those 30 days

20   and return them to me, then you will not be able to change

21   it later on.  Do you understand that?

22             THE WITNESS:  Yes, sir.

23             MR. RUKAVINA:  Okay.  Very good.  Thank you.

24             THE REPORTER:  So just to clarify, Mr. Rukavina.

25             We're going to send the original to you and you're

1  going to get the --

2          **MR. RUKAVINA:**  No.  No.  No.  Do it however you

3  usually do it.

4          **THE REPORTER:**  Okay.

5          **MR. RUKAVINA:**  Don't rely on me not messing

6  something up.

7          **THE REPORTER:**  You'd like the transcript.

8          **MR. RUKAVINA:**  I just want to know -- I just want

9  to know what -- what Matt gets and when he gets it, so that

10  I can see when the changes come, if any, and what they are,

11  that's all.

12          **THE REPORTER:**  No problem.  But you want the

13  transcript, right?

14          **MR. RUKAVINA:**  Yeah.  Yeah.  And there's no --

15  there's no urgency on this.  So let's not, you know --

16          **THE REPORTER:**  No rush.

17          **MR. RUKAVINA:**  -- burn everyone's budget on this.

18          **THE REPORTER:**  And Mr. Ries, would you like a copy

19  of the transcript?

20          **MR. RIES:**  If somebody wants to send me one,

21  that's fine.

22          **THE REPORTER:**  Well, do you want to order one?

23  That's how it works.

24          **MR. RUKAVINA:**  Save the $800.

25          **MR. RIES:**  I don't -- I don't really -- If you're

1  going to send me one, I don't need to buy an extra copy.

2          **THE REPORTER:**  Okay.

3          **MR. RUKAVINA:**  Good.  Then we'll see each other at

4  10:00.

5          **VIDEOGRAPHER:**  Going off record.

6          **(WHEREUPON, the deposition of MICHAEL STEPHEN**

7  **GALMOR was concluded at 5:00 p.m.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                CERTIFICATE

2

3          I, Ryan Batterson, do hereby certify that I

4     reported all proceedings adduced in the foregoing

5     matter and that the foregoing transcript pages

6     constitutes a full, true and accurate record of said

7     proceedings to the best of my ability.

8

9          I further certify that I am neither related

10    to counsel or any party to the proceedings nor have any

11    interest in the outcome of the proceedings.

12

13         IN WITNESS HEREOF, I have hereunto set my hand this

14    16th day of April, 2021.

15

16

17

18    _____

19                    Ryan Batterson

20

21

22

23

24

25

```
 1  Date:       April 16, 2021    Assignment #: 36389-1

 2  Attorney: Matt W. Sherwood, Esquire

 3  Deponent: Michael Galmor

 4  Case:       Galmor vs. Galmor Family Limited

 5              Partnership

 6

 7

 8  ATTORNEY - NO TRANSCRIPT ORDERED:  Signature of your

 9  client is required.  It will be necessary for you to call our

10  offices and arrange for an appointment for your client to come

11  in to read and sign their transcript.

12

13

14

15

16

17

18  CC:  Naegeli Deposition & Trial

19

20

21

22

23

24

25
```

NAEGELI
DEPOSITION & TRIAL

(800)528-3335
NAEGELIUSA.COM

PAPP 0344

```
 1                    CORRECTION SHEET

 2   Deposition of: Michael Galmor    Date: 3/24/2021

 3   Regarding:    Galmor vs Galmor Family Limited

 4                 Partnership

 5   Reporter:     Batterson/Sprague

 6   _____

 7   Please make all corrections, changes or clarifications

 8   to your testimony on this sheet, showing page and line number.

 9   If there are no changes, write "none" across

10   the page.  Sign this sheet on the line provided.

11   Page   Line   Reason for Change

12   _____  _____  _____

13   _____  _____  _____

14   _____  _____  _____

15   _____  _____  _____

16   _____  _____  _____

17   _____  _____  _____

18   _____  _____  _____

19   _____  _____  _____

20   _____  _____  _____

21   _____  _____  _____

22   _____  _____  _____

23   _____  _____  _____

24            Signature_____

25                    Michael Galmor
```

```
 1                         DECLARATION

 2   Deposition of: Michael Galmor     Date: 3/24/2021

 3   Regarding:     Galmor vs Galmor Family Limited

 4                  Partnership

 5   Reporter:      Batterson/Sprague

 6   _____

 7

 8   I declare under penalty of perjury the following to

 9   be true:

10

11   I have read my deposition and the same is true and

12   accurate save and except for any corrections as made

13   by me on the Correction Page herein.

14

15   Signed at _____, _____

16   on the _____ day of _____, 2021.

17

18

19

20

21

22

23              Signature_____

24                   Michael Galmor

25
```

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0346

**$**

**$1** 140:2

**$1,310,807**
176:25

**$1.31** 177:23
180:14

**$10** 25:6 25:7

**$10,000** 149:21

**$100,000** 90:8
90:17
158:17 179:23
180:4 190:10

**$111,000** 203:23

**$115,000** 203:25

**$15,000** 147:2
201:25 202:12
202:15

**$174,000**
173:9 184:9
185:6

**$186,000**
144:8
145:11 146:20
152:14 152:17
152:22
166:7
190:20 276:12

**$2** 27:25 28:3
30:9 133:15
134:17 137:18
138:5 138:7
206:23

**$2.5** 180:5

**$22,000** 109:5

**$24,000** 162:2
163:20 191:4

**$25,000** 88:17

**$250,000** 238:17
240:9
240:25 252:16

**$3,000** 232:12

**$384,000**
153:4
153:19 154:25
155:10
164:6
164:11
165:2 190:24

**$4.2** 168:6

**$40,000** 202:21

**$45,000** 204:8

**$5** 192:13

**$50,000**
229:14 230:18
239:3 239:8
239:10

**$500,000**
158:1 160:1
161:24 191:7

**$6** 192:13

**$6,014,000**
211:3

**$6.5** 212:11
213:12

**$640,000** 172:24

**$7,000** 149:21
201:17

**$70,000**
236:13 237:14
238:3 239:6
244:3

**$72,540** 245:21

**$76,000** 204:5

**$80,000** 179:8

**$80,880** 245:5

**$800** 286:24

**$9** 129:9

**$91,000** 256:9

**$96,000** 179:6

**$99,000**
183:13 183:19

**0**

**01** 82:22 85:22

**03** 85:23

**06** 80:15
80:17 81:5

**08** 79:9 82:9

**09** 24:23 79:20

**1**

**1** 37:25 38:1
74:10 95:2
211:2
229:17
230:4 236:8
242:5

**1,000** 240:22

**1,100** 240:22

**1.2** 206:7
206:12 256:2

**1.3** 134:19
206:7 206:12

**1.4** 134:20

**1:00** 132:2

**1:10** 132:7

**10** 11:5 24:23
54:23
168:10 169:22
197:19 197:20
200:1
215:11 251:21
251:24 254:1

**10,000** 130:19
130:20

**10:00** 287:4

**10:37** 62:2

**10:45** 62:4

**100** 203:22
213:5

**1040** 203:16
203:20 203:21

204:12

**1065** 178:21
179:3 183:9

**10th** 216:8

**11** 34:20 142:25
151:15 151:16
167:18
175:2 182:9
199:8 199:9
200:2 200:4
246:7 276:4

**1120S** 212:9
212:10 212:21
213:12

**113,000** 228:9

**12** 11:5
200:20 200:22
226:1 246:7
258:23

**12:01** 132:4

**121090** 245:5

**127966** 245:20

**13** 17:15 22:4
169:21 169:24
209:17 209:19
258:23

**137,000** 179:12

**14** 17:15
212:4 212:5

**1400** 97:21

**15** 79:10
79:10 79:15
176:19 176:20
187:22 201:15
214:11 214:12
225:15 251:21
251:24

**152** 34:21

**15th** 75:11

**16** 108:23 133:5
133:6 135:10

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0347

140:7 140:7
187:22
216:2 216:3
218:16 218:20

**16725** 150:9

**17** 80:16 108:23
173:8 185:6
187:22
217:8 217:9
218:1 218:5
218:6
218:10 218:14
218:17
269:1 269:1

**170** 241:11
241:21
242:9 242:24

**174** 239:13
239:14 239:18

**174,000** 185:8

**17th** 36:22

**18** 107:21
108:23 135:14
187:22
218:5 229:5
229:7

**18-20209-RLJ-7** 9:8

**18-20210-RLJ-7** 9:9

**19** 105:4
219:1
234:19
235:4 235:7

**1955** 175:8

**1975** 23:9 23:17
29:1 31:8

**1990** 85:22

**1991** 101:11

**1999** 29:5
30:4 32:7

**19a** 172:19

**19b** 172:23

**19th** 276:4

------

**2**

**2** 73:19 73:20
134:20 170:21
178:19
230:4
235:22 236:10
263:16

**2,848.68** 150:15

**2.3** 139:20

**2.4** 139:20
236:10

**2:12** 186:3

**2:26** 186:5

**20** 51:21
96:24
176:19 176:20
242:8
244:11 244:12
254:1 254:2
270:5

**20,000** 238:8

**200** 25:12

**2000** 28:5 207:3

**2000s** 33:4

**2005** 76:6

**2006** 86:24 96:2

**2008** 80:16

**2009** 75:11

**2010** 34:22 54:3
81:13

**2011** 76:17

**2013** 185:11
189:20 204:24
256:10 256:13

**2014** 159:2
185:11 196:17
229:13 236:14

245:14 247:5

**2015** 42:25
147:2 147:5
185:11 216:18

**2016** 22:9 42:25
107:2
111:20 122:25
123:9
133:25 162:10
162:13 162:16
163:16
168:5 170:7
183:1
183:19 184:13
212:2 212:4
213:12 214:10
216:14 216:18
216:23
247:5
263:20
264:1 266:3

**2017** 42:25
73:18 75:1
78:3 78:6
79:10 79:16
79:21 79:25
80:3 82:10
87:14 95:2
97:19 97:24
103:12 103:20
107:2
111:20 122:22
123:8 123:9
134:2
162:18 162:19
162:22
163:5
163:13 163:18
170:22 173:12
179:5
193:10 203:13
203:23 204:14
204:17 204:21
209:17
212:1 247:5
276:2

**2018** 42:25

74:20 105:5
107:2
150:13 151:18
152:13 152:20
204:24
216:8 276:5

**2019** 104:24
105:3
151:19 229:17

**20-2003** 9:9

**2021** 9:4 9:10

**21** 175:20 204:8
276:23 277:1

**23** 162:23

**23rd** 22:8
162:17 162:25
163:18

**24** 9:4

**24th** 9:10

**25** 31:19 108:17
108:18

**25,000** 88:6

**250** 241:1

**250,000** 241:3

**27** 147:2 162:23

**27966** 245:23

**28** 122:5

------

**3**

**3** 32:16 87:5
87:6 142:18
142:21 142:24
147:21 152:25
152:25 168:10
169:5
190:14 190:15
235:17
236:8
236:11 236:11

**3:00** 212:17

**3:21** 225:20

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

PAPP 0348

**3:48** 225:22

**30** 131:17
176:21 215:11
215:13 285:16
285:19

**30th** 150:2
150:13 152:13
152:20

**31** 78:3 78:6
79:21

**32** 143:15
143:15 143:19
143:20
144:2 190:18

**341** 15:13 51:18

**36** 36:21 253:5

**38,000** 243:24

**384,000** 153:5
154:22

**3rd** 22:4

_____

4

**4** 16:25 32:16
32:18 99:16
102:12 102:13
102:20 102:23
112:21
146:8 146:9
146:12 146:14
146:16 149:13
150:1 150:5
166:8 167:6
167:10 168:10
168:14 168:14
169:6
169:19
173:9 175:8
185:3 185:7
185:7

**4.01** 278:21

**4.03** 278:16
278:19 278:23

**4.1** 175:8

**4.8** 278:18

**40** 34:20
51:21
112:18
113:2
125:17 132:10
132:20

**40,000** 243:24

**401(k** 205:2
205:14

**44A** 11:19

**49** 282:8

**49.5** 265:24
266:1 267:1
267:1 282:5

**4960** 98:18 99:3

_____

5

**5** 89:12 89:13
99:14 99:15
99:16
112:22 128:19
167:7 167:8
167:17 172:10

**5:00** 287:7

**50** 108:12
108:19 144:12
144:14 144:17
259:18

**50,000** 231:4
231:5
238:15 241:3

**50/50** 108:15

**54** 36:22 80:15

**55** 11:5 36:22

**58,000** 101:24
101:25

**592** 85:18
231:13

**593** 172:24

_____

6

**6** 103:19 143:15
143:20
144:2
169:22
175:1 175:4
190:18

**60** 36:23 215:11

**60,000** 228:6

**603** 92:23

**63** 175:24

**64** 28:12
37:12 117:2
175:22 235:22
235:24 238:13
238:20 239:19
241:10
245:8 260:7

**640** 95:12
239:20

**65** 28:12

**6535** 11:9

**677,000** 184:9

_____

7

**7** 40:17 41:7
104:24 151:15
151:16 151:17
182:8
182:10 229:12
249:7

**7.15** 241:9

**7.50** 129:10

**7.15** 235:25

**70,000** 238:5

**70s** 36:9

**73** 16:24

**74** 17:1 144:5

**75** 16:19
23:10 24:2

24:6 132:13

**759** 214:22

**78,000** 101:25

_____

8

**8** 183:3 183:4
263:17 263:19
265:7 265:8
278:16

**80** 137:20 196:8

**800,000**
137:21 141:7

**80s** 33:4 36:9

**83** 11:9 115:2
231:13

**84,'85** 14:24

**85** 24:7 24:12
24:14 24:16

**8903** 210:21
210:22 210:23

**8th** 216:23

_____

9

**9** 143:19 193:10
193:12 203:12

**9/30/2016**
245:24

**9:45** 9:5 9:11

**90** 131:17

**90-day** 169:6

**90s** 33:4

**91** 83:10

**9300** 98:18
101:7

**93000** 99:21

**96,000** 179:20

**9600** 98:18
101:11

**97** 82:6

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0349

99 27:11
  27:23 28:5
  28:13 28:16
  30:15 31:2
  44:18 268:14

_____

A

a.m 9:5 9:11

ability 12:11
  136:7 285:9

able 30:7
  35:5 75:4
  106:21 129:17
  177:12 280:12
  281:14 285:20

accent 12:6
  190:15

access 44:21
  45:2 45:7
  45:14 46:18
  46:19 78:19
  165:17
  174:1 201:5
  206:5 259:22

accessed 45:15

accidentally
  49:25 50:2

accomplish 55:2
  56:5

According 213:4

account 33:22
  87:20 98:10
  101:2 101:4
  101:6
  109:25
  110:2 110:4
  110:11 110:17
  122:3
  126:23 204:25
  205:1 205:5
  205:17 205:19

accountant 35:9
  35:21 60:24
  74:7 113:14

126:18 184:21
204:12 226:20

accounted 155:7

accounting
  217:19 217:23
  219:5 219:8
  219:25 221:24
  222:22 224:6

accounts
  110:4 110:5
  110:18
  125:6
  126:11 198:20
  201:9 205:21

accrue 165:3

accrued 154:25

accuracy 168:2

accurate
  25:13 48:19
  78:24 153:17

accused 277:8

acquire 25:15
  31:11 35:5
  242:24

acquired 35:1
  35:2 75:11
  76:17 80:16
  86:23
  137:23 262:16

acquiring 34:3

acre 241:10

acres 92:23
  95:12 236:1
  236:10 239:12
  239:18 239:20
  241:11 241:21
  241:22
  242:9
  242:24 251:22
  251:25
  252:8
  252:11 255:16

across 84:12

85:2 180:25

action 166:12

actual 129:16
  129:17
  131:1
  146:17 146:24
  150:20 178:20
  213:14 264:10
  270:16
  274:2 283:1

actually
  26:16 29:14
  45:13 100:5
  102:5
  103:19 114:16
  124:20 125:13
  126:19 127:11
  129:19
  133:3
  136:22
  148:9 157:1
  157:2
  170:10
  181:2
  181:14 187:10
  187:18 204:13
  210:21 211:23
  225:1 235:9
  260:21
  270:7 272:25

add 155:10
  239:14

address 11:8
  11:14 11:15
  43:19 219:21

addresses 75:19

advance
  144:19
  147:1 147:4
  148:20 149:14
  150:1 150:2
  164:8
  164:11 164:23
  164:24
  177:6
  177:12 183:21

185:8 185:9
191:8 247:21

advanced 144:22
  146:18 147:23
  183:18
  190:5
  190:21
  273:5 276:9

advances 123:23
  147:10
  149:2 149:4
  149:18 155:11
  164:16 164:25
  170:16 173:15
  173:17
  174:2
  174:20 174:21
  178:2 186:8
  199:5 199:6
  200:10
  216:9
  216:14 216:24
  269:23 269:24

advancing 145:1
  145:5
  188:18 188:23
  204:20

Advantage 26:21
  26:23 27:1
  118:22
  133:1 133:2
  134:6 135:5
  136:15 136:21
  137:18 137:24
  138:18 138:20
  139:5
  139:10 140:22
  141:6 170:1
  170:6
  170:10
  206:6 207:1
  207:23 207:24
  208:2 208:6
  208:21

adventure
  192:11

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0350

adversary 9:9
15:8

advised 170:18

affairs
167:18 182:9

affect 12:11

affirm 10:18

affixed 84:21

afford 106:12

afloat 104:4
104:5

afraid 136:8

afterwards
255:9

against 15:23
108:23
109:1
123:23
142:9
166:12 186:16
223:13 277:5

age 225:25

ago 22:8
36:12 38:13
43:17 63:18
64:4 66:22
88:13 88:22
90:11
118:25 120:13
121:4 143:8
145:13
237:6 251:7
259:1

agreed 53:10
280:8 281:24

agreement
157:13 157:16
157:18 159:16
159:16 161:21
170:22 177:22
278:4 278:5

Ah 136:18

ahead 57:12
58:25 62:5
62:12 266:6

Ahh 265:11

aid 153:13
191:1

air 163:8

aircraft
175:8 175:9
175:13 175:15
175:17 175:25

Aircraftsman
16:15

airport 16:15
176:10 176:11

alive 19:10
112:13
113:7 113:8
130:12
131:4 162:7
196:4
242:11 242:12
242:22

allegation
277:4

alleging 223:16

allowed 125:3
125:4

alls 196:25

all's 253:13

alone 29:8
44:10

already 46:3
51:15 54:11
62:15 85:13
110:23 119:10
149:14 189:22
189:24
201:4 208:7
233:15 279:3

Altus-Lugert
11:22

am 82:3
141:21 185:24
204:12
224:8
224:10 224:13
259:21 263:12
274:12

Amarillo 41:10

amended 175:2
278:3

amendment 278:3

amongst 115:11

amount 132:16
144:6
145:11
153:3
155:13 157:14
157:19 158:15
176:24
178:1
183:15
185:7
205:12
206:3
206:15
207:2
215:19
239:6
243:15 269:25
270:6 276:12

amounts 15:24
176:21
215:1 270:17

Amy 111:14

analysis 272:2

animals 86:4
86:5

ankle 156:18

Annie 109:8

announce 61:6
61:9

announced 60:19
62:17 62:19

62:20

announcement
60:10

annual 24:25
158:15

answer 13:18
31:6 39:13
45:23 46:16
56:10 59:3
65:22 66:13
67:11 70:23
82:13 82:15
82:17 82:19
82:20 82:20
89:7 104:18
105:8 106:5
106:7 123:7
123:13 140:25
141:18
145:8 147:6
147:8 148:3
148:23
149:5
149:24 150:24
151:12 152:19
160:3 161:4
165:8
166:25
170:6
170:18
173:4
173:19 177:10
177:14 186:14
190:11 191:21
193:24
194:2 194:8
194:20 204:23
206:14 206:25
208:9
208:15 209:13
211:16 213:20
219:4 236:6
241:23
242:6
246:25 247:25
266:6 280:7
280:14

answering 69:2

answers 12:1
18:24 22:15

antique 254:25

Anton 100:17

anybody 88:14
174:15 272:13
274:12

anymore 106:13

anyone 12:17
13:21 32:5
45:19 45:20
47:14 48:2
48:6 48:12
49:1 50:6
50:14 50:15
50:16 59:22
67:22 70:24
71:9 78:13
111:10 120:11
121:25 181:13
223:3
224:25 274:12
284:24

anything
12:13 44:11
44:23 48:3
50:12 51:7
58:20 58:22
58:23 64:9
72:22 79:22
84:21 93:13
93:23 97:18
97:25 100:4
105:4
105:19 108:24
109:24
120:2
120:18 120:19
128:12 130:10
131:20 134:14
135:16 137:13
138:20 138:22
141:18 159:16
169:16

198:4
205:23
219:7
228:11 228:24
239:24
243:6
254:25
255:5 262:21

anyways 32:18

anywhere 47:2
96:7 205:24
205:25 224:7

apologize 99:10
116:1 133:2
134:7
162:15 168:16
179:14
184:3
190:15
212:3 219:3
248:5 252:16

apparently
60:15 103:12

appear 174:17

applies 62:11
62:23 62:25

apply 62:23

appraisal
238:15

appraisals
40:13

appraised
238:15

approve 167:4
284:5

approximately
9:11 18:13
24:22 25:10
27:25 29:25
104:17 138:17
188:11 239:13
253:25

April 22:4

24:14 150:2
150:11 152:13
152:20 162:17

aren't 60:18
60:18 173:16

argue 231:11

argument 255:10

arise 162:3
165:3

arisen 163:17
166:8

Arkansas 260:17

arose 269:17
269:21

arrears 131:20

arrested 17:2

Arrow 132:25
134:4

ascertained
163:10

aside 153:1
182:24 197:17
224:19

asset 106:24
136:19
139:8
183:22 198:25
200:5 207:19

assets 26:11
26:12 35:4
37:16 78:4
136:21
137:1 137:2
140:22 198:15
202:2 202:6
219:14
226:4 226:6
226:21
227:1
251:10 257:15
278:20
280:9
280:19 281:10

282:11 282:14
282:18 283:1

assistance
197:5 197:6
219:9

assistant's
197:6

associate
62:7 63:2

assume 19:23
51:14 66:1
89:24 97:10
114:9
148:10
152:6 162:1
174:14
197:7
210:13
213:7
213:16 214:20
215:13 215:16
217:3
247:13
258:9
273:10 279:14
279:15
282:3 282:21

assumed 30:10
31:2 48:17
141:3 145:9
165:17

attach 173:5

attack 280:17

attempt 63:14

attorney
12:15 40:19
40:22 40:23
41:9 41:12
41:24

attorneys
10:2 27:16
35:22 36:11
56:17 65:17
67:10 67:12

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0352

67:19 141:3
194:7

**audio** 10:6

**August** 96:2

**authentic** 182:2

**authenticity**
13:4

**authorized**
84:13

**Automotive**
202:21

**available**
173:24 173:25

**average** 123:18

**avoid** 39:15
187:5 232:8

**aware** 50:7
50:10 57:21
65:8 72:23
88:3 94:20
154:1
171:13 174:11
183:23 186:18
193:9
210:16 214:17
227:15 250:19
251:5 259:20

**away** 20:8 20:19
20:19 21:11
23:2 66:2
73:5 79:15
94:14 99:20
117:3
117:16 117:21
119:11 119:20
158:19 160:11
161:25
196:5
242:25 245:18
256:21 256:23
284:22

**awesome** 124:20

**awhile** 31:23

66:22 121:4

---

B

**backed** 43:9

**background**
16:10

**backup** 47:11
47:25

**backups** 47:1
48:7

**bad** 33:23

**balance**
184:19
185:5
197:24
198:4
198:10 198:13
198:25
199:3
199:12
200:5
200:21
201:7 202:5
224:5 226:2
226:3 226:5
226:6 226:9
234:10

**bank** 35:24
35:25 36:1
100:22
101:2
109:25
110:1
110:19 137:22
155:19 156:22
157:10 186:21
186:23 187:21
240:19

**bankruptcy** 9:16
9:21 13:3
13:7 14:22
15:7 23:18
24:2 40:5
49:7 50:24
65:24 74:23

88:24
113:21
117:9
118:19 128:16
138:24
140:6
141:24 142:25
151:14 181:20
181:24 215:18
215:23
220:6 224:7
225:4 225:9
255:24 263:13
269:7
273:22 275:25
281:14

**banks** 187:7

**Barber** 37:6

**Barker** 33:8
35:11 35:11
35:12 97:3
108:12 108:17
108:18
109:4 109:5
109:8

**Barkers** 189:3
257:1

**Barker's** 97:4

**barn** 85:9 85:22
258:7 259:7

**barns** 90:9
90:10 91:4
236:2 241:16

**bars** 90:18

**bartered**
100:5
101:16 137:13
138:9
138:10 139:23

**Bartlett** 76:20

**based** 26:12
78:5 130:6
224:1 272:22

**basically** 23:16

45:18 48:12
117:14 150:22
186:11
187:4 231:5
272:22
280:9
281:19 281:25

**Basil** 33:9

**basis** 123:11
149:9 149:9
149:10 269:10
270:22 272:14

**bathroom**
196:3 244:2
244:9

**bear** 142:16

**became** 23:2
109:22 275:11

**Becky** 17:18
156:15 156:23

**become** 29:10
189:2

**becomes** 27:22

**beginning** 16:21
53:17 66:25
77:15
216:13 265:21

**begins** 226:15

**behalf** 201:1
217:20

**behind** 239:25
252:9

**belief** 81:4
81:5 81:6
113:9
113:13 123:5

**believe** 62:10
66:6 66:8
73:4 73:7
78:8 78:20
82:19 121:2
143:7
153:16 155:22

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0353

158:4
164:21 168:23
181:18 181:22
183:17 204:11
220:17 231:21
231:23
240:7
246:24 254:17

**believed**
52:12 78:25
159:6

**believes** 78:24

**bell** 114:1

**belly** 79:21

**belong** 55:22

**belonged**
92:17
100:25 231:1

**belonging** 110:8

**belongings**
114:5

**belongs** 81:20
81:25

**Ben** 210:4

**beneficiaries**
69:2 280:5
280:13 281:8

**beneficiary**
280:3
280:23 281:3

**benefit** 70:14
191:4 270:8

**benefited**
168:12

**Berghman** 60:20

**besides**
272:11 272:21

**best** 17:22
24:22 25:7
25:11 37:19
50:22 52:16
58:8 70:10

101:21 107:10
108:11
111:8 113:1
126:21 126:21
166:7
171:10
187:6 197:8
222:14 225:19
245:16
271:4 271:7
284:19

**better** 58:15
102:21 114:21
167:2

**beyond** 225:9

**bigger** 95:20
156:21 235:25

**biggest** 206:3

**bill** 109:9
122:11 127:20
128:5
130:23 131:10
180:18 244:18
246:13 246:14

**billed** 127:13

**billing** 124:5
246:4

**bills** 87:21
104:6
105:14
109:4
127:23 127:25
133:22 137:11
137:17 137:22
138:15 144:21
144:22 144:23
145:3 145:7
147:23 147:24
189:4
190:22 275:8

**binder** 217:14
218:2 220:7
220:11
223:2 223:2

**binders**
217:18
220:9 220:10

**bindweed** 103:8

**bins** 83:15
85:12

**birth** 11:4

**bit** 11:13
12:4 16:16
108:2
115:21 118:25
129:8 168:9
182:23
212:8
269:15 285:15

**blame** 49:11
223:12

**blank** 172:21

**blindsided**
257:21

**board** 35:24
261:15

**Bob** 98:21 99:20
106:13 187:25

**Bobby** 22:2

**bonds** 172:23

**Bonnie** 17:21

**book** 26:11
260:5

**Booker** 54:13

**bookkeeper**
126:18

**books** 27:12
37:6 46:5
46:7 48:20
49:2 49:23
50:4 50:17
79:18
105:24 106:11
116:20 118:20
119:4
120:13 177:17

177:17 184:16
184:19 184:22
199:17 199:21
199:23
202:8
228:22
247:8 247:12

**bore** 95:21

**born** 34:12
36:21

**borrow** 233:20
233:23 233:24

**borrower** 229:14

**boss** 145:19

**bottom** 27:9
77:15 87:7
97:7 97:21
150:9
183:12 198:17
214:22 216:15
226:25

**bought** 27:11
30:8 47:17
83:8 87:19
87:22 87:23
88:2 88:9
95:24 96:4
99:4 129:8
136:21 136:24
146:17 156:24
162:8
175:14 187:15
187:21 230:15
231:3 231:4
231:13
233:7
233:11 233:15
236:15 236:17
236:18 236:22
237:8
237:11 237:12
239:24 240:16
241:24 242:13
252:8 252:8
252:12 252:12
252:13

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

PAPP 0354

255:2 260:20

**bounds** 229:25
237:24 241:9

**box** 207:5
264:22
267:3 267:4

**boxed** 114:22

**boxes** 51:21
51:21 83:8
113:19 113:22
114:4 114:8
114:10 114:12
264:21 264:22

**boy** 36:15 91:17
96:16 188:1
261:12

**boys** 122:4
122:7 122:9
244:23

**Bradley** 85:9
92:22 108:18

**branded** 92:12

**Brandon** 61:17
251:13 251:16
253:9

**brands** 92:12
92:13

**break** 27:24
53:15 53:15
61:19 61:24
108:2 124:8
133:23 185:25
225:15

**briefly**
214:10
215:7 249:21

**broke** 24:8
156:13 156:17

**brokered** 138:10

**Brooks** 146:15
217:3
271:19 271:20

**brother** 20:21
24:6 28:2
28:2 28:21
30:13 31:10
99:4 195:8
195:10
246:6 254:19

**brought** 54:1
100:17 138:13
138:14 220:12

**BS** 156:14

**budget** 286:17

**buffalo** 104:11

**bug** 258:2
259:24

**build** 53:25
54:23 90:20
125:20 127:19
243:21 256:24

**building**
41:16
124:25 196:14

**buildings** 83:14

**built** 31:14
33:25 86:11
86:14 90:8
90:9 90:17
91:2 91:3
93:8 125:19
151:4
166:15
194:5
195:18
196:6 210:8
250:15 250:25

**bulk** 106:2

**bulls** 104:11

**bunch** 52:1
84:23 118:9
121:16
209:4
213:25 217:17
253:9
253:10 259:17

265:21

**burden** 170:12
255:10

**buried** 102:15
278:1

**burn** 50:11
286:17

**burned** 50:20

**business**
22:22 22:23
23:8 23:8
23:14 23:17
23:18 24:16
24:17 24:21
25:15 25:25
26:3 26:10
26:19 26:25
31:4 33:20
35:6 35:7
35:9 35:10
35:13 35:18
35:18 35:21
36:5 36:14
37:2 47:19
72:1 72:6
92:19 106:4
109:20 109:22
112:15
114:6 120:3
120:4 120:6
120:9
120:14 120:18
121:6
122:21 122:25
123:6 124:9
138:24
139:1
139:14 139:15
139:17 139:18
140:20 141:13
141:17
142:9
142:12 151:13
151:23
152:2
166:21 183:13

195:4
195:13
209:3 210:6
211:17 214:18
215:8 215:15

**businesses** 33:2
33:3 71:20
125:7
159:23 166:19
166:24 249:19

**busy** 45:3

**butthole2**
248:17

**button** 60:3

**buy** 30:7 133:14
136:22 136:23
231:2 233:6
237:3 237:7
237:11 238:16
239:24
240:4
242:10 242:12
242:20 242:21
255:4
259:14 259:14
287:1

**buyers** 128:8

**buying** 113:5
180:18 211:19
236:12 255:5

---

C

**cabinet**
127:22 127:25

**cabinets** 118:5

**Cadillac** 260:25

**cage** 92:13

**calculate**
131:14

**calculated**
145:12 152:15
153:19 179:19

**calculation**

145:23

**camouflage**
258:11

**canceled** 260:22

**cancer** 32:16
32:17 32:17
32:18 33:23

**capital**
172:19
184:7 185:6
186:21 186:23
203:25
204:3 215:1
265:19 265:22

**captured** 10:3

**car** 26:14 40:24
156:17 202:22
202:24
203:1 203:9
204:18
258:4
258:19
259:6 259:9
259:12 260:14
260:16
261:2 261:7
261:13

**card** 165:24

**cards** 201:9

**care** 111:3
153:13
191:1
191:23
192:1
195:21 203:13

**careful** 148:24

**Carlton** 252:13

**carpenters**
196:11

**carport** 81:15

**carried** 79:18
134:15 134:17

**Carruth** 15:10

**carry** 134:17

**cars** 40:24 78:1
228:14 259:17
259:18 259:23

**Carter** 13:23
14:4 14:4
42:12 45:17
46:3 46:19
48:3 49:18
67:16 74:19
84:11 98:25
145:17 145:18
157:24 159:18
160:25 161:14
187:23
198:3
200:25 219:19
224:25
227:1 227:5
227:7 227:8
227:14 228:21
233:5 233:9
234:11 234:12
234:14 234:14
236:23 248:21
249:4
251:22 252:10
255:11 255:12
271:12 273:16
273:25 277:5

**Carter's** 84:2
84:5 84:25
161:2 197:5

**case** 9:8 9:9
12:23 48:20
96:24 133:7
142:25 167:18
168:12 168:19
175:3
179:22
182:9 215:5
225:4 225:9
263:13 263:13
271:10 276:4

**cash** 106:18

106:22 106:24
133:21 134:10
134:20 137:16
137:16 137:17
178:6 193:7
194:18
205:6
205:24 205:25
207:5
207:20 239:6

**casino** 195:2

**casinos** 195:6

**category**
83:14 85:21
87:7 104:10
166:6

**Caterpillar**
103:12 103:13

**cattle** 86:6
86:7 86:19
86:23 90:24
91:10 91:18
91:21 92:5
92:8 92:9
92:10 92:10
92:11 92:17
92:19 93:10
93:17 93:20
93:20 93:24
100:11 100:14
100:18 100:20
102:25
103:6 103:7
103:10 104:19
106:5 106:9
135:3 249:23

**caught** 160:23

**cause** 18:7
22:21 36:14
40:18 41:14
44:19 45:2
45:3 47:15
48:11 48:20
54:18 59:19
71:15 85:1
86:23 90:22

92:6 94:20
95:1 98:4
100:23
104:7
104:19
106:5
106:12 107:18
110:21
111:2 111:5
116:14 125:19
136:15 136:17
137:14 140:17
141:18 156:23
163:15
168:9
177:19 178:24
184:3
184:18 192:12
211:20
212:1
221:15 230:25
231:18 231:22
241:15 246:10
252:24 257:20
272:22

**caused** 223:13
251:21

**CD** 249:8

**ceased** 151:23
152:2

**cent** 125:17
132:10 144:12

**cents** 112:18
113:2
132:13 132:20
144:14 144:17

**certain** 39:23
132:11
197:9 279:13

**certainly**
82:5 200:11

**certificate**
163:7 259:20

**certificates**
259:19 259:23

260:4

**Cessna** 175:9

**cetera** 21:21
25:17
104:11 121:23
168:20 168:20
171:12 201:10
203:22 228:6

**CH85C** 103:12

**chance** 172:15
231:2

**change** 29:13
43:19 168:6
183:13
185:8
203:23
211:3 256:9
285:20

**changed**
132:17 233:17
233:19 233:24

**changes**
285:17 285:19
285:19 286:10

**Chapter** 40:17
41:7 104:24
142:25 167:18
175:2 182:9
249:7 276:4

**characterizatio
n** 281:11
282:22

**charge** 106:8
129:2

**charges** 102:6
108:23 108:25

**Charles** 71:14

**Charlotte** 18:12
60:25

**chase** 281:22

**cheap** 83:4

**check** 51:2

134:11 141:21
153:21 158:12
160:9 178:4
180:24 180:25
234:5 234:5
260:22

**checkbook**
109:11
155:1 257:7

**checkbooks**
178:15

**checked** 267:3
267:12 267:19
268:2 268:3

**checking**
33:22 87:20
101:6
109:25
110:1
110:11 110:18
205:20

**checkings**
205:20

**checks** 55:19
55:21 55:21
102:3
107:11 109:23
110:7
132:15
189:2
190:13
206:1
273:10 273:11
273:14

**children**
14:18 14:24
18:16 18:20
55:5 64:8
66:7

**city** 24:9
24:9 24:10
43:9 45:25
47:4 47:12
49:5 74:3
85:25 91:17

93:9 118:21
119:3
175:14 248:25
258:16 258:17
260:17

**claim** 176:25
254:20

**claimed** 15:10
78:3 94:15
252:6

**claiming** 99:8

**claims** 13:3
13:5 13:8
15:23

**Clarendon**
261:19
262:7 262:10

**clarify**
208:16 285:24

**Clariton** 262:7

**Clayton** 76:6

**clean** 125:21
234:7

**cleaned** 97:7

**cleaning** 23:8
97:9

**clear** 12:1
94:10
115:14
162:5
188:17
189:5
239:11
275:4 275:4

**cleared** 241:5

**clerk** 272:18

**client** 62:8
63:2

**Clinton** 195:5

**close** 21:8
22:25 35:21
41:22

133:10 206:16
231:20

**closed** 133:24
187:18 187:20

**closer** 21:18
23:2

**closest** 21:9

**cloud** 46:24

**co-counsel** 9:20

**code** 256:25
256:25

**coded** 197:9
241:15 241:16

**coffee's** 62:1

**cold** 32:3

**Coleman** 19:7

**collect** 166:13

**collected**
158:10 158:12

**collection**
253:5

**colon** 32:17

**column** 147:10
148:19 150:11
226:4

**columns** 148:25

**combination**
180:23

**combine** 98:18
98:20
101:11 246:7

**combined** 27:3

**comes** 43:11

**coming** 25:14
39:14 94:21
105:14
127:9
130:13 130:20
160:19
189:4 192:4

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0357

common 69:23

community 37:20

companies 31:21
56:6 72:6
118:23
125:3 125:7
125:11 125:12
161:3 161:11

company 23:19
23:20 23:22
23:23 24:3
26:25 27:7
28:6 28:11
29:14 31:11
31:17 47:9
47:10 74:3
108:13 108:14
116:12 158:18
160:21 199:20
207:15 207:17
211:14 246:10
249:23 249:24
250:1 250:4
250:7
250:12 250:13
250:21 250:24
251:6
251:13 268:24
277:9

compensation
159:7

complaint 13:15

complete
64:12 230:22

completed 56:20

completely
156:13

complexity
282:23

compliance 45:4

complicated
27:14 149:7
209:22

compromise

278:4 278:5

computed 145:16

computer 40:4
40:7 40:9
41:2 41:3
42:2 42:4
42:7 42:10
42:10 42:15
42:22 43:5
43:8 43:20
43:22 44:22
44:24 45:6
45:8 46:9
46:15 47:1
47:16 58:20
78:19 80:5
127:1 127:2
127:6
127:13 127:17
128:21 128:22
129:16
130:5
131:15 145:13
145:14 145:16
145:22 146:24
153:21
155:2 155:3
155:8 165:8
165:9
165:12
174:1 177:8
177:16 177:18
177:20 177:21
180:7 180:8
180:9
180:11 190:12
197:1 197:2
197:2 197:4
197:9
197:12 197:16
198:22 224:19
244:23
248:7
248:25 249:18
252:23 271:16

computers 41:21
43:9 43:21

44:21 50:11

computer's
130:6

concern 281:16

concerned
164:15 257:10

concerning
21:21

conclude
21:20 92:14
150:20
151:6 208:5
281:7

concluded 287:7

conclusion 70:8
266:5

cone 83:15

c-o-n-e 83:15

confidante 35:8

confused 212:2

confusing 212:1
212:1

Connie 18:2

consent
235:10 235:16
236:4 242:2

consideration
134:13

considered
164:6

consisted
139:14

consolidated
208:24

construction
26:3

contact 151:5

contacted 39:8

Contents 219:25

context 269:20

continue 32:6
32:9

contract 72:7
112:10 112:11
112:16
113:2
113:10 114:12
114:17 115:10
153:25 161:21
284:25

contracted
124:14

contractors
196:15

contracts
113:25

contributing
154:12

contribution
53:20 54:15
63:14 63:17
64:16 65:7
110:3
193:16
265:3 266:1
267:15 267:18
279:4 282:5
282:12 282:18

control 243:9
281:14

controlled
65:24
243:11 281:15

convenient 85:1

conversation
52:24
221:23 221:25
232:11

conversion
151:22

co-operators
148:17

copied 113:13

copies 128:1

copy 113:15
122:12
128:7 128:9
218:2
220:21
223:5 285:8
285:9
285:12 286:18
287:1

copying 219:24

corner 231:13
232:19
233:3 233:6
252:4

corporate
263:13 269:7

corporation
31:3 31:15
31:16

corporations
55:14 256:22

correct 13:13
29:5 46:5
52:10 52:14
78:23 95:4
124:22 142:18
142:19
143:4
144:24 145:25
151:9
155:23
158:4 177:2
177:5
182:21 182:22
189:6
194:10 213:15
237:11 260:25
269:8
269:21
270:2 270:9
270:17
272:9 273:3
273:23 274:18

278:12
281:1 282:2

correctly 30:14
75:6

correspondence
219:15

cost 109:7
196:7 243:23

costs 111:23
186:10 186:12

counsel 9:12
13:20 14:4
51:18

counterclaim
13:18

counties 125:6

Counts 17:18

county 129:7
129:10 129:18
129:19
142:6 142:9
142:12 233:4

couple 33:16
46:19
142:16
143:8
187:11
201:9
205:24 263:16

course 33:25
106:4 177:9
178:16
180:6 186:1
247:20

court 9:22
62:11 63:4

courteous 263:1

courts 84:11

cover 144:20
183:19 186:9

covers 139:18

COVID 53:11

60:7

cowboys
245:25
246:2 246:5
247:2

cows 104:11

CPAs 27:16

CPS 79:20

crap 56:25
125:25
253:2 262:4
282:25

crawl 156:21

create 63:14
65:9 279:13

created 29:14
64:3 64:7
66:21 72:19
121:22 213:8

credit 122:2
126:10 126:22
186:21 186:23
201:9 201:10

creditors
15:9 15:14
46:4 113:18
249:8

criminal 17:4

critical 118:11

crossed 146:18

crossroad
105:19

crossroads
100:17

crushed 246:6

current 73:9
81:4 116:23
117:8 173:9
184:10
185:6 187:5
215:22
216:7 223:3

262:20

Currently
239:11

custody 14:24

customer
124:6 125:2
129:3 129:4

customers
126:11 126:14
142:10

cut 56:25
59:4 68:14
97:15 103:5
103:8
124:21
129:8
281:24 282:25

Cutting 66:6

cyber 43:12

cycle 121:1

cycled 104:3

_____

D

dad 16:17 16:20
21:12 21:14
22:21 23:2
23:9 23:20
27:18 28:6
30:17 31:4
31:12 32:6
32:9 32:12
32:15 33:1
33:6 33:11
33:25 34:17
34:22 36:2
36:6 36:24
37:17 37:18
37:20 37:21
51:8 53:24
54:3 54:9
54:23 55:1
56:5 56:8
57:1 58:1
65:8 66:23

67:1 67:25
68:13 72:7
77:19 79:12
79:14 79:15
86:11 88:9
90:1 90:19
91:2 91:14
92:14 93:8
94:9 94:12
94:14 95:24
97:6 97:23
99:4 103:8
107:18 108:11
111:12 112:11
112:12
113:2 113:7
113:8
114:13
117:2
130:11 130:25
158:14 158:17
160:11 161:17
161:18 166:15
175:17 189:25
192:10
193:7
193:16 194:18
194:21
195:6
195:11 195:18
196:5
232:16 238:23
239:17 241:16
245:2
245:18
246:6 246:7
252:4
253:15 254:18
256:17 256:21
258:21 259:14
261:14 262:16
279:12 282:24

**daddy** 231:2
233:3
236:25
246:9 279:17

**dad's** 22:1 27:7

30:25 63:19
70:16 73:13
92:13
105:20 109:24
110:17
114:6 114:7
175:15 199:20
232:20 236:19
238:14 238:16
238:20
240:4
242:10
243:5 243:8
253:4 260:2
260:6 260:9
284:21

**daily** 57:22
109:7
123:10
149:9 270:22

**Dallas** 108:19

**Dalmor** 28:7
199:20

**damn** 158:23

**Damor** 27:7
27:20 27:21
27:22 28:8
28:9 28:10
28:14 28:23
29:3 29:6
30:8 30:23
30:24 30:25
31:3 32:6
33:1 199:20

**D-a-m-o-r** 28:10

**data** 46:20
271:15 271:24

**date** 9:10
11:4 30:2
38:19 75:11
79:21 80:15
80:16 87:14
95:1 121:22
140:19 182:20
229:17 245:19

276:3

**Dated** 245:24

**dates** 27:15
27:16 29:11
104:11
134:1 134:3
166:8

**daughter** 60:7
234:15

**Davenport**
33:8 35:13

**Davor** 9:14
58:18 185:22

**day** 21:4
32:14 40:7
41:13 41:15
50:25 53:6
54:14 55:9
57:2 58:1
99:6 123:16
123:18 123:19
127:9
137:19 141:25
152:1
220:10 248:24
272:14 280:21

**days** 131:17
131:17 215:11
215:11 215:11
285:16 285:19

**day-to** 272:13

**day-to-day**
120:18

**dba** 31:5 249:25
250:7 250:8
250:24

**dead** 280:24

**deal** 15:6 19:25
43:12 57:24
104:16 104:22
111:13
117:9
133:11 133:20
135:22 135:22

137:2 137:7
137:9
137:15 137:16
138:9
138:10 138:14
140:8
165:24 211:11
233:5
241:18
253:3 283:6
283:17

**dealing** 41:20
69:24

**deals** 43:15
48:20

**dealt** 44:24
44:24 49:18
54:20 71:15
78:1 196:15
201:3 201:3

**death** 144:21
147:22 163:21
163:23
164:1 164:2

**debt** 30:9 30:10
98:12
123:22
138:5 146:2
150:23 163:17
163:20
181:5 181:8
181:22 206:10
224:8
224:20
225:1 225:4
247:14 247:16
269:5 269:6
276:16

**debtor** 144:6
144:10 144:19
144:22 147:23
153:3
155:14 157:20
176:24 190:21

**debts** 168:19
181:12 181:14

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0360

181:18
182:1
185:12
192:2
269:16 269:21

**decade-by-**
**decade** 24:1

**December**
75:11 78:3
78:6 216:8

**decent** 33:25
132:1 195:18

**decide** 280:12

**decided** 53:24
54:23 281:8

**decimal** 149:22

**decisions**
262:22

**declined** 111:17

**deducted** 152:22

**deed** 229:6
229:10 229:13
235:11 237:18
238:12
239:2 252:1
252:2

**Deena** 47:5
49:20 55:20
67:9 78:18
84:2 157:24
159:18 159:24
160:25
161:2
164:19 219:15
219:19
227:7 227:9
231:3
234:14 248:11
249:10 251:22
252:4
255:11 271:12
272:19 272:23
273:15 273:21
274:9

274:15
277:5 277:21

**Define** 164:23

**degree** 67:16

**depend** 21:4
24:18 92:11

**depends** 123:19

**depose** 160:25
274:21

**deposed** 11:23
14:20

**deposit** 101:1
110:20 113:18
113:22 207:5

**deposited**
100:21 107:11

**deposition**
9:1 9:7 12:14
12:17 13:21
14:5 14:12
14:16 14:18
15:3 15:21
15:25 16:3
53:7 53:10
58:10 58:14
62:20 63:3
285:6 287:6

**depositions**
62:11 272:17

**deposition's**
62:15

**depreciation**
74:10 74:14
203:14

**Derek** 60:24

**describe**
19:14 19:19
20:12 21:7

**destroy** 49:22
50:1 50:2
50:16

**destroyed**

50:9 85:7
118:15
120:3
120:13 120:16
121:17

**detail** 124:8
199:14 283:14

**detailed** 122:14
122:17 270:16

**detail-oriented**
116:1 232:7

**details** 33:20
63:13
219:13 269:18
271:8

**die** 22:3 22:7
32:15 278:1

**died** 32:13
37:17 37:20
67:25 131:6
158:14 162:16
162:22 163:13
189:20 189:23
195:20 242:13
243:19 254:18
256:17 280:6

**difference**
243:16

**different** 26:14
30:17 52:7
53:25 56:17
68:25 69:3
75:25 90:11
90:12 90:16
92:12
109:11
110:4 110:5
121:16
129:3 129:8
133:25
183:8
197:18 199:15
199:21
200:2 200:18

210:5
236:25 241:15
241:19 255:15
270:13 270:13
273:12 284:16

**difficult**
262:25

**digital** 10:4

**dinner** 11:17

**direct** 71:16
285:11 285:12

**directly** 34:4

**directors**
261:15

**dirt** 26:5
139:17 245:7

**disagree** 39:1

**disclosed**
208:20 208:21

**discuss** 52:20
55:1 55:4
59:16 174:2
214:9

**discussed** 12:23
15:24 53:3
63:12 70:21
85:13 88:22
148:1
160:16 170:24
181:10
217:4
250:14
278:9 280:22

**discussing**
168:21 174:16
252:3

**discussion** 55:8
111:7 129:1
182:25 284:12

**Disposition**
278:19

**dispute** 13:12

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

PAPP 0361

126:6
144:16 183:15

**disrespectful**
33:15 79:15
191:22

**dissect** 165:9

**distribute**
280:9
280:12 280:19

**distributed**
153:10 155:16
157:22

**divorce** 17:14
17:23

**divorced**
17:12 17:13
18:3 18:4
18:14

**divvied** 92:11

**doctor** 156:25

**document**
38:14 51:13
81:23 128:8
151:7 154:4
161:25 167:21
168:2 216:6
216:20 216:23
217:2 217:7
217:7 217:8
217:12 222:15
225:3
230:20
235:9
253:15
278:5 279:1
283:6 284:1

**documentation**
279:18

**documents** 39:18
39:20 39:21
39:23 40:1
40:2 40:3
40:16 42:21
44:17 44:19

51:16 51:17
52:9 52:17
52:21 58:8
58:16 58:16
114:25 115:11
115:16
116:4 116:7
116:11 116:11
116:19
117:1 117:3
117:7 117:8
117:10 117:15
117:19
118:1 118:3
118:7
118:10 118:13
118:25 119:18
119:21 120:10
120:21 120:24
121:5 121:5
121:10 121:11
121:12 121:13
128:7
128:15 128:17
133:8
133:12 134:16
142:16
197:3
197:11
198:1
200:18 200:25
231:7
231:16 238:21
260:10
272:7 283:16

**dollars** 15:11
25:1 25:2
34:23 98:13
101:24 139:21
173:14 184:14
190:6 196:8
201:16 202:15
205:24 206:17
206:20 206:22
240:22

**domestic**
211:2 267:5

**Don** 22:2

**done** 22:23
27:16 28:4
33:13 56:14
65:18 71:17
88:16 113:2
121:6 128:8
128:25 141:23
162:5 178:4
178:6
196:16 221:12
222:4
225:14 233:20
245:3
245:12
257:2
257:18 257:22
275:21

**Donna** 18:8

**dope** 27:8

**dot** 107:23
122:8 124:2
126:23
127:5
127:18 128:1

**double-page**
172:2

**double-paged**
184:4

**double-sided**
150:7

**doubt** 168:2
182:20

**downturn** 275:10
275:11

**draw** 31:15
141:22
228:1 228:3
228:12 228:16

**drawed** 160:9

**drawers** 115:1

**draws** 109:11
227:22

**drew** 67:10
67:12

**drinks** 21:3

**drive** 96:7

**drives** 50:11

**driving** 261:12

**dropped** 192:3

**drove** 54:18
59:15 59:15

**dually** 80:15
80:17 81:5
82:23

**due** 106:4
164:25 273:7

**duly** 10:22

**dump** 79:21

**Duncan** 92:8
106:12 187:25

**during** 24:25
25:16 35:5

**duties** 72:5

**duty** 68:22
69:12 69:15
69:17 70:2
70:6

**Dykes** 61:13

**Dynaturn** 47:3
47:6 47:15
47:19 48:19
49:5 248:25

---
E
---
**earlier** 85:20
95:9 163:15
248:24 250:14
268:21 278:9

**early** 28:5 37:5
113:18 124:15
151:19 187:24

**earned** 192:24

**NAEGELI**
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
**(800)528-3345**
NAEGELIUSA.COM
PAPP 0362

earn-out 134:13

easier 73:15

east 34:21 93:2

economic 283:17

educational
16:10

effectuate 57:2

eight 144:1
275:16

either 21:10
27:24 50:24
55:13
177:14
215:2
226:20 227:13
251:9

either/or 74:13

electric 189:15

electronic
43:11 130:4

electronically
127:3

Eleven 151:17

Elk 24:9 24:9
24:10 41:10
43:9 45:25
47:4 47:12
49:5 74:3
118:21 118:23
119:3
175:14 248:25
258:16 258:17
260:17

else 12:17
13:21 32:5
45:19 48:18
49:19 50:15
60:4 62:19
67:22 72:22
77:20 94:18
111:10 118:16
159:5
181:13 239:24

270:21 272:13
274:12

email 42:23
42:25 43:14
218:4
219:18 219:21
220:2 220:6

emails 43:5
43:10 43:16
43:17

embezzlement
277:9

Emeritt 89:10
90:5 91:20
95:8

employed 141:20

employees
24:3 25:10
153:12 187:23
188:2 188:5
190:25 246:16
246:17 246:21
256:7 270:6
270:7 273:12

employment
159:16 161:2

enable 199:5

energy 33:11

engine 255:20

engineer 129:13

English 69:23

entities
30:17 55:14
73:12 73:14
210:8 243:12

entitled
158:7 159:6
160:4

entity 65:11
65:14 86:10
256:24 266:16

entries 78:25

101:23
102:1 228:15

entry 46:20
95:22
103:11 103:18
153:2
157:19 190:20
202:18

equally 57:16
58:2

equip 143:22

equipment 25:17
25:18 25:19
25:20 25:22
40:6 47:17
47:17 95:15
95:17 96:17
98:4 98:6
102:1 102:8
113:5
133:18 133:19
137:10 137:12
137:24
138:1 138:8
138:18 138:21
139:13
140:1
141:11 141:16
141:25 189:24
210:2
211:19 211:22

equity 154:13
154:13 227:22
227:24

essentially
270:1 275:12

established
112:5
119:10 149:14
279:3

estate 54:4
54:5 54:10
54:12 55:2
57:3 65:9
70:16

105:20 195:18
238:14 238:14
242:15 250:20
251:3
269:12 284:21

estates 9:17
9:21 21:21

estimate 25:6
104:25
105:1
123:10 135:13
142:8
189:18 206:13
207:1

et 21:21
25:17
104:11 121:23
168:19 168:20
171:12 201:10
203:22 228:6

events 105:7

eventually
71:20 182:5
262:19

everybody 41:19
63:20 195:25

everyone 37:8
41:20 45:4
48:18 57:20
69:16
122:11
124:4 159:5
223:23

everyone's
61:23
223:22 286:17

everything
41:20 44:19
56:19 57:20
64:16 79:17
84:8 104:8
122:8 122:9
192:2 192:5
192:12 195:23

198:5 257:18

**evidence**
37:24 58:8
58:15
121:22 146:20
224:11

**evidencing**
177:23

**exact** 28:1
139:22 276:3

**exactly** 58:16
190:3

**EXAMINATION**
10:24 263:5
276:21

**examined** 10:23

**example** 71:18
80:14 95:20
272:3 272:25

**exceeded** 269:24

**Excellent** 126:5

**except** 121:1
135:2 186:18

**exclude** 272:15

**Excursion**
260:12

**exhibit** 37:25
38:1 73:19
73:20
142:18 142:21
142:24
146:8 146:9
146:12 146:14
146:16 147:21
149:13
150:1 150:5
152:25 152:25
153:1 166:8
167:6 167:6
167:7 167:8
167:10 167:17
170:21
175:1 175:4

178:19
182:8
182:10
183:3 183:4
190:14 190:15
193:10 193:12
197:17 197:19
197:20
199:8 199:9
200:4
200:20 200:22
203:12 209:17
209:19
212:4 212:5
214:11 214:12
216:2 216:3
217:8 217:9
218:1 218:6
218:14 218:17
218:19
226:1 229:3
229:5 229:7
229:24
230:1
234:16 234:19
234:19
235:4 235:7
235:15 237:19
242:2 242:8
244:11 244:12
263:16 263:17
263:19
265:7 265:8
270:5 270:5
276:1
276:23
277:1 278:2

**exhibits**
200:1
225:10 263:16

**exist** 47:2
83:18 203:1
258:4
258:13
259:6
260:14 261:2

**existence** 101:8

**existing** 96:6
113:15

**exists** 81:16
82:7 225:1

**exotic** 254:25

**expanding** 246:8

**expect** 154:10
158:21 161:10
182:3 182:5

**expected**
156:6 181:2

**expecting**
160:13

**expense**
125:25 147:13
168:18 189:16
193:3 193:4
193:4 228:6

**expenses** 106:16
144:20 147:14
147:15 147:20
148:2 148:6
148:9
188:15 188:23
189:14 189:22
189:22
190:7 191:8
191:12
192:9
192:18 196:19
197:9
204:17 221:20
221:21 228:19

**expert** 45:6
60:6 60:23
62:6 62:6
62:7 63:1

**explain** 71:18
196:22 256:20

**explained**
64:4 271:4

**explanation**
169:9
169:18 184:12

184:24 185:18
198:24
199:3
200:14 200:17
202:14 202:17
215:4
216:22 224:16

**explore** 195:17

**extent** 70:7
194:24

**extra** 287:1

**extract**
121:20 125:1

**extracted** 112:6
123:12 126:19
129:19
142:3 152:17

**extracting**
71:21
112:23 151:10
151:25 152:1

**extracts** 125:10

**extraordinary**
108:25 191:12
193:3 193:3

**extravagant**
191:15

**ex-wife's** 17:17

**eyes** 264:16

———————

F

**F-150s** 156:21

**face** 82:18

**facility** 114:19

**fact** 51:16
68:24 166:3
192:21 268:23

**failed** 64:11
279:8
279:12 279:12
279:17 279:21

**fair** 21:20

33:24 51:10
66:13 88:11
102:19 139:25
150:20
151:6 190:5
208:5
215:17 223:14
223:23
229:2 229:2
243:14 243:15
281:7
281:10 281:13
281:16 282:17
282:22 283:3

**faith** 79:1

**fall** 38:16
53:10

**familiar**
65:11 65:14
143:1 232:1
256:3 273:21

**family** 13:8
15:24 16:9
23:4 53:17
53:23 56:12
63:19 63:22
65:7 65:12
65:20 65:24
66:4 66:21
67:1 68:1
68:10 68:22
69:13 69:19
70:5 70:16
71:23 72:2
72:5 72:18
72:18 73:8
73:18 73:24
74:19 75:1
75:15 77:5
77:19 77:23
78:3 78:7
80:3 80:11
80:24 81:1
81:20 82:1
82:2 84:22
88:1 88:19
89:23 90:1

90:25 91:25
93:4 93:22
94:17 94:19
95:16 99:2
100:10 100:13
101:1 101:3
101:19 101:20
102:8
102:22 103:23
104:13
105:2 105:9
105:22 105:24
106:8
106:14 106:21
107:1
107:11 107:15
108:3 108:7
109:14
110:8 111:9
112:7
123:22 125:18
126:7
129:25
130:8 131:7
144:6
144:11 144:19
145:2 145:6
148:9
148:10 148:16
149:4 149:8
150:22 152:14
152:21
153:3
153:11
154:1
155:14 155:17
156:2 156:5
157:13 157:20
157:23 157:25
158:8
158:10 158:22
159:7
159:19 160:18
160:20 161:15
161:16 166:12
166:15 166:18
169:3 169:8
169:14 169:15

169:19 170:16
171:5
171:11 173:13
173:14 173:17
174:3
174:21
176:5
176:24
177:7
177:13 177:16
178:8
178:12 179:23
180:3
180:17 180:18
180:19 180:24
181:3 181:5
181:12 181:19
181:23
182:6 183:2
183:18 183:21
184:14
186:8 186:9
186:12 186:16
186:24
187:1 187:8
187:18 187:22
188:14 188:21
188:22 189:21
190:5
193:25
194:1 196:1
196:12
199:1 199:6
200:6
200:21
201:1 202:8
203:9
204:20 206:21
207:21 207:25
208:6
214:19 215:10
215:18 215:22
216:10 217:20
219:9
219:13 220:14
221:16 223:14
224:1 226:2
226:7

227:13 228:18
229:13 229:15
230:18 233:13
233:21
234:1
236:13
237:4 237:7
238:2
238:22 240:13
240:14 240:20
243:25
244:6
244:18 245:11
246:18 246:20
247:15 247:20
247:22
254:9
254:13 255:12
256:10 256:12
256:23 257:15
258:9 259:4
260:12 261:21
262:13 263:20
265:3 266:2
266:24 267:15
268:12 268:12
269:12 269:25
270:8 273:5
273:7 274:6
275:24
276:8 276:9
276:16
279:5
281:23
282:5 282:8
282:9
282:15 282:19
282:20

**fancy** 255:5

**farm** 99:23
99:25 100:2
201:10
204:5
244:21
245:7 245:7

**farming** 167:1
179:11

farms 246:8

fast 67:7

faster 178:25
221:5

father 28:25
29:6 30:7
31:7 59:8
59:14 59:16
72:18 91:11
91:13
144:21 147:22
161:25 189:20
189:23 191:23
191:23 260:20

father's 252:17

federal 62:11
62:25 74:16
210:17

feel 68:18
68:22 69:12
70:4 182:22
194:9
213:21 223:21

fell 65:16
115:1 121:15

felt 166:14

fence 93:8

fertilizer
100:8

fiduciary
70:2 70:5

field 23:17

Fields 36:10
36:14 67:14
71:14 141:1
238:18 240:18

fifth 210:18

fifty 240:7

figure 84:11
126:19 129:18
192:24

file 46:14

127:22 127:25
164:4
222:13 260:3

filed 40:5
74:23 75:1
79:4 88:24
118:19 128:16
138:23 141:24
142:24
143:8 163:7
167:18
175:2 182:9
215:18 215:23
276:2 276:3
276:4 281:14

files 42:15
47:2 51:4
115:2
116:16 116:17
127:25
248:6 248:8
248:19 249:12

filing 161:25
168:12 168:19
255:24 275:25

fill 164:12

final 104:10
126:13 133:11
151:14 266:20

finally 32:19

finance
157:10 200:10

financed 155:18
180:6
186:19 186:23

finances 119:8

financial 46:13
167:18
182:9 202:21

financials 46:7
272:8

financing 180:4
192:8

fine 12:3
62:7 80:1
82:21
152:24 170:11
171:23 212:16
225:12 249:15
286:21

finger 174:15

finish 55:13
55:16 64:5
64:19 92:3

finished
55:12 118:4

fire 50:9

firm 36:6
36:8 67:15
133:10 168:22
217:8
220:11 220:13
223:4

first 18:6
18:11 35:12
36:1 36:11
37:5 37:24
38:13 40:8
55:10 74:18
75:9 93:8
112:25
147:1
155:18
157:9 166:6
166:6
178:20 182:14
203:14 213:11
218:4
219:18 226:19
230:7
235:10 235:14
244:22
245:4
263:19
268:5 277:21

fit 141:8

five 14:13 18:7
19:12 22:8

24:9 43:16
57:16 58:2
60:14 95:7
160:13
172:6 174:7
180:6 201:15

fixed 86:12

fixing 133:17

flat 199:16

flats 99:14
99:15 99:16
100:6
100:14 100:15

flaws 48:22

Fling 31:14

flip 178:25

flood 50:9

Floral 37:10

flow 106:18
106:22

FLP 54:24 64:18
64:19 104:6
105:21 108:20
110:3
110:20 147:13
147:16 147:19
149:13 149:16
149:17
152:4
158:18
160:6 160:8
160:12 188:20
188:24
246:3 246:4
256:23 259:10
262:1 275:12

FLP's 92:10

fluctuation
108:4

flush 174:23

focus 29:3
184:7 192:15

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0366

focused 123:3

folks 27:11
 123:4

foot 156:16

Ford 80:15
 80:17 81:5
 82:22 83:10
 259:3 259:4
 260:12

foreclose 187:8
 187:10

foreclosed
 252:25

foreclosure
 187:5

forged 223:17

forget 40:21
 71:2 240:6

forgive 262:7

forgiven 150:22

forgot 167:13
 267:2

form 116:21
 134:12 178:21
 179:3 183:9
 203:16 210:21
 212:8
 212:21 213:11

formal 130:9
 131:10 222:22
 250:7

formed 31:12

former 72:25

forth 149:1
 156:23 156:25
 269:17
 272:4 273:11

forward 63:6
 63:9 134:21

four-wheel
 95:22 96:1

96:7

Fox 14:7

frame 24:19
 43:1 108:22

free 189:5

Friday 164:21

Fridays 25:4
 198:5

friend 35:21

friends 277:13

front 73:16
 142:15
 236:7 252:7
 263:21 263:22
 278:2

Fuchs 14:7 14:9
 14:10 14:12
 14:13 44:21
 45:2 45:17
 46:18 73:25
 74:19 78:10
 78:13 78:20
 79:6 106:24
 151:2
 173:20
 174:2
 174:16 179:16
 179:19 184:24
 198:7 201:4
 209:14
 214:1 214:7
 224:25 272:6

Fuch's 174:13

fuel 83:11
 83:12

full 11:1 40:24
 51:17 52:1
 116:4
 234:24
 239:6 275:16

fully 55:12

fund 275:12

funded 194:15

funding 90:2

funds 153:9
 153:10
 154:9
 154:10 155:15
 155:17 157:21
 157:23
 164:9 177:7
 204:21
 257:2 277:9

funny 36:5
 165:12

furnished 100:7

future 48:14
 134:13 182:24
 223:3

_____

G

G&G 16:17 16:18
 23:7 23:13
 24:7 24:25
 26:19 26:25
 27:2 28:17
 28:24 28:25
 29:20 30:12
 30:16 30:22
 30:24 31:7
 31:12 32:10
 33:1 46:4
 49:7 71:20
 72:1 90:19
 91:1 91:5
 91:7 94:18
 112:5 112:7
 124:9
 124:13
 125:1 125:2
 125:10 125:19
 125:24 125:25
 126:1 126:6
 126:10
 130:9 136:4
 145:1 145:5
 149:8
 149:16 149:17

151:10 151:13
 151:25 167:18
 168:5
 169:14 170:15
 170:16 170:16
 173:14 173:18
 174:3
 174:19
 180:5
 181:13 181:23
 184:15
 185:1
 185:12
 186:7
 188:23 190:15
 190:20 197:10
 199:20
 207:1 215:2
 251:6 269:7
 269:24
 270:6 270:6
 270:7
 271:22
 274:7
 275:11 275:24
 276:7

G&Gs 206:22

G&G's 124:12
 124:19 124:23

gain 137:15
 203:25 204:3

Galmor 9:2
 9:8 9:19
 10:15 10:22
 11:1 11:3
 19:7 22:2
 46:13 53:20
 53:23 54:15
 54:24 61:17
 61:17 61:22
 61:22 63:12
 63:21 65:12
 65:15 65:19
 65:24 66:4
 68:1 68:10
 72:18 89:23
 90:19 101:2

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0367

108:20
110:3
110:20
132:9 140:9
142:24
144:6
144:11 144:19
153:3 153:8
153:11 155:14
155:15 155:17
157:20 157:21
157:23 157:24
157:25
158:8 164:9
167:12 167:17
172:18 176:24
178:8
178:19
179:2 183:2
186:7
197:19 198:10
200:20 201:11
201:19 201:24
202:12 203:20
204:25 205:21
206:4
206:18 212:21
214:9 221:8
225:24
226:7
227:17 229:14
229:14
235:7
240:13 240:14
244:11 244:18
245:11 245:20
249:23 251:13
256:23
263:7
263:11 263:20
265:3 266:1
266:2
266:11 266:24
267:10 267:10
267:14 267:15
267:15 267:18
267:24 268:4

268:10 268:12
268:13 268:18
277:4 287:7

**Galmor/G&G**
121:20 132:23
136:22
137:3
142:14 208:20
211:15
215:9
222:19 256:4

**Galmor's** 27:2
27:6 27:18
27:19 27:22
29:10 29:14
29:19 32:7
46:4 86:9
91:1 124:9
131:13
136:4
140:23 144:21
147:22 153:13
161:5 191:2
214:15
215:2
245:12
250:1 269:8

**Galmor's/G&G**
13:9 29:22
47:19 49:23
50:5 91:10
116:17 116:20
118:19
119:4 129:2
129:25
131:7
134:24
135:4
136:13 136:22
138:23
139:4
139:10 140:22
141:5
142:25 148:20
150:1 153:9
153:10
154:5 154:6

154:9
154:10 155:15
155:16 157:21
157:22 159:21
161:6 161:8
161:11 164:10
169:3
178:12 197:25
198:25
199:4
199:13 199:17
202:18 208:23
209:8
212:24
213:5
215:18 215:21
216:10 224:21
244:17 244:19
246:4
246:16
247:9
247:15 247:20
247:21 255:24
256:6

**gambling**
167:1
194:21 194:23

**gang** 103:10

**garbage** 50:19

**gas** 24:19
34:4 35:2
35:12
107:15 107:16
108:3 111:8
111:16 111:17
112:1 189:2
191:25
192:3 192:6
192:8
192:10 192:10
192:12 192:13
195:22 196:18
250:5 250:9
256:15
275:7 275:10

283:8 284:22

**gathered** 41:18

**general** 12:24
65:20 75:20
151:8 268:6
268:18

**generally** 95:17
139:13 209:24
244:16
247:3
257:13 269:21

**generate** 98:4

**generated** 42:21
100:21 100:25
101:5
127:11
130:6
177:20 244:24

**generating**
104:9

**gentleman** 49:14
54:14 54:21
146:23 150:25
210:3 217:4

**gentlemen**
234:21 250:25

**German** 179:14
179:17

**gets** 154:17
286:9 286:9

**getting** 36:13
43:17 48:21
55:18 87:18
109:4 118:4
125:23 128:13
160:22
164:4
221:10 225:14
233:22

**gin** 84:6
84:16 84:17
84:19 84:21
85:4 87:2
87:14 87:20

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0368

87:23 88:23
88:23 88:25
89:15 90:23
127:7
128:18
230:7
230:16
231:1
231:15 231:15
232:10
233:3 233:4
233:7
236:17 236:22
236:23 236:24
237:1 237:3
237:10 237:12
237:19 242:5

**girls** 37:8
43:24 45:15
45:17 45:22
45:24 46:19
57:22 92:6
127:5
127:11 128:3

**given** 78:16
113:14 126:24
149:13 171:25
206:4 207:2
218:1 269:20

**gives** 283:9

**giving** 249:4

**glasses** 74:12
144:2

**Glenda** 100:19
110:22 110:23
111:2

**Glover** 18:10
18:14

**GMC** 83:3

**God** 10:20
149:24

**gone** 62:9 62:13
105:24 272:3

**gonna** 71:11

151:20 152:10
174:14
191:9 191:9
242:18
246:9 247:25

**gotcha** 74:16
86:18 95:11
96:23 101:3
136:25 136:25
251:20

**government**
48:18

**graduated** 16:11
16:23

**grain** 82:6 83:3
83:7 83:15
85:12

**grandmother's**
259:5

**grasp** 67:8

**grass** 100:16

**graze** 91:23
93:24 100:13

**grazing** 92:20
93:11 93:13
93:15 93:16
100:6 103:1
103:2 103:3
166:21

**great** 131:24
186:21 186:23
187:9 187:21

**greater** 111:23

**Greek** 214:3
237:25

**green** 259:3
259:4

**greenhouse** 37:3
37:10

**grew** 24:7 34:15
34:16

**gross** 168:5

179:8 211:2
212:11

**ground** 86:14
102:16 102:16
210:7
210:10 251:9

**group** 26:4 26:5
26:6

**grow** 23:22 24:3
31:13 34:13
34:17 102:25

**GRS** 140:9

**guess** 18:7 20:8
20:18 20:21
45:14 45:23
55:14 57:25
59:17 76:4
105:15 117:17
124:25 129:15
145:9 154:3
170:15
176:5 190:2
202:22 207:13
224:14
225:2
227:12
256:5
259:10 259:18
268:25 280:21

**gun** 253:5
253:13
255:4 255:6

**guns** 253:5
253:6 253:7
253:10 253:16
253:25
254:6
254:15 254:18
254:22 255:2

**guru** 43:11

**guy** 31:14
33:9 33:19
85:25
108:18 145:20

146:15

**guys** 89:14
136:3
154:16 264:5

----

H

**half** 16:12
31:19 64:18
93:3 93:3
108:14 142:12
198:15 198:17
238:14 238:16
240:1
242:10 242:20
243:3 243:5
243:8 243:9
263:25 268:15
277:25

**hand** 10:16
106:9

**handicap** 155:18
156:3 156:6
156:9 259:24

**handing** 175:1

**handle** 156:23
156:24

**handled** 133:7
141:1

**handling** 106:10

**hands** 24:10
154:18 187:24
233:18 233:24

**handshake**
154:17

**hands-on** 257:14
257:23

**hang** 277:19

**hangar** 176:1
176:7
176:12 176:13
176:16

**happen** 53:13
135:21 192:21

232:2 242:3
247:24

**happened**
21:13 35:15
40:17 67:7
73:5 80:5
82:10 82:11
82:18 98:8
99:5 102:5
104:23 104:24
109:18 109:19
111:4
111:22
114:4
121:13
133:8 140:5
165:6 170:7
170:10 170:14
170:19 175:23
175:25 187:13
203:3
204:15 230:14
231:12 231:19
232:9 253:7
256:19 277:11

**happens**
105:15 106:6

**happily** 33:16

**happy** 100:22
101:2
109:25
110:1
110:19 203:17

**hard** 12:4
12:5 50:11
104:22 156:24
183:22

**hard-working**
34:7 195:18

**Harrows** 103:19

**haul** 125:21
127:20

**hauled** 26:6

**hauling** 114:25

**haven't** 21:10
97:9 174:6

**having** 10:22
21:13 21:22
27:13 79:25
104:8 205:5
205:16
206:4
232:12 243:15

**hay** 97:15 103:2
103:8

**Hayden** 92:8
106:12 187:25

**head** 22:10
22:12 30:16
90:13 104:19

**headcount** 92:17

**heading** 227:25

**hear** 12:3
12:7 12:16
58:20 58:22
58:23
130:24 249:24
250:1 250:4
250:20
251:6 251:14

**heard** 54:4
56:17 65:1
69:24 69:25
70:2 70:3
70:24
124:19 248:20
262:5 268:9
272:12

**hearing** 12:4
12:5 58:19

**hearsay** 57:10

**heat** 41:16

**he'd** 31:23
158:17 255:4

**Hefley** 230:10
230:15 232:25

**height** 26:10

**heir** 148:12

**held** 218:23

**he'll** 281:19

**help** 10:20
21:14 37:6
41:9 42:12
67:10 67:10
67:17 67:19
67:22 78:16
85:25 91:9
137:15
148:2 148:6
164:21 171:20
184:2
188:18
189:4 190:6
193:7
195:14 196:21
196:23
198:7
210:19 211:13
214:23
219:1 221:1
222:8 245:2
246:10 264:15

**helped** 78:13
133:10 143:11
164:12
209:4 222:22

**helping** 91:11
91:13 92:16
114:25 220:13
220:16

**helps** 99:17

**here's** 124:25
130:9
148:22 168:25
226:15 231:18
244:16 283:20

**herself** 21:16

**he's** 21:3 51:15
51:20 52:6
60:20 60:21

60:23 69:2
89:5 96:16
99:8 112:14
138:9 138:14

**Hey** 58:18 59:21

**high** 16:11
16:23
106:15
123:5 137:8

**highway** 11:19
122:10

**Hindman** 33:9

**hip** 92:13

**hired** 41:9

**Hmm-mm** 181:17

**Hobbs** 145:20

**hoe** 96:24

**hold** 59:21
105:1 228:14

**hole** 27:9

**home** 23:4 72:24
72:25 73:2
76:7 76:25
77:1 85:18
228:6
238:13
283:9 284:20

**homestead** 37:13
72:24 73:10
97:4 235:19
235:21 235:24
239:12 239:21
240:2
242:10
245:9
245:12 245:17
252:18 283:9

**homesteaded**
73:4

**homestead's**
235:25

**honest** 12:1

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0370

**hoops** 29:17

**hope** 249:10

**hopefully**
272:17

**hoping** 192:6

**horse** 277:25
278:1

**hose** 94:2

**hospitals**
156:14

**hour** 61:21
61:24
120:13 131:23

**house** 23:4 51:2
51:3 51:6
75:9 75:16
75:23 75:23
76:1 76:1
77:7 82:8
83:1 83:9
94:1 94:12
96:19 107:8
147:19
189:5
189:17 191:17
196:2
230:16
231:1
231:14
233:7 233:9
236:2
236:18 237:12
237:13 241:13
243:18
252:9
252:13
254:4 255:7
260:7

**houses** 75:18
75:25 252:14

**housewife** 37:8

**How'd** 175:13

**How's** 20:24

**huge** 124:20
165:6

**huh** 42:3
56:21 235:20

**human** 46:12
224:20

**humble** 34:10
34:11

**hundred**
205:24
240:7 243:1

**Hurley** 18:2

**hurt** 162:9
162:9

**hypothetical**
113:10

— I —

**I'd** 24:14
32:2 33:12
37:23 72:8
75:14 96:11
105:6 107:2
123:9
130:16 130:19
130:21 135:14
143:14
145:9
149:12 150:25
163:15 170:21
198:9
199:16
203:4
203:16 203:17
208:11 216:19
233:15 254:24
272:19

**idea** 24:24
49:13 59:19
63:16 75:10
75:22 76:16
76:23 83:16
84:18 85:11
85:19 85:23
89:16 98:7

101:25 102:14
102:18 113:16
124:7
130:13 138:19
182:7
183:20
185:9 196:7
202:20
211:5 217:1
222:7
226:21 227:17
228:3 228:5
228:8
228:15 228:17
230:6
248:20 254:14
254:16 261:24
262:12 262:14
262:19 285:1

**identification**
38:2 73:21
142:22 146:10
167:9 175:5
182:11
183:5
193:13 197:21
199:10 200:23
209:20
212:6
214:13
216:4
217:10
229:8 235:5
244:13 277:2

**I'll** 38:10
38:10 61:3
63:9 63:9
66:8 73:15
79:19 88:15
95:20 101:9
160:25
164:3 175:7
185:4
195:13 206:18
213:25 213:25
214:7 220:19

223:2 223:2
225:15 225:18
234:5
234:19
243:6
246:14
263:3
276:20
285:2 285:10

**I'm** 9:20 12:5
16:8 18:25
18:25 20:20
25:12 27:21
27:25 34:19
35:19 38:19
40:18 40:19
40:19 41:8
42:16 43:10
44:3 44:7
44:18 48:9
48:9 48:9
48:10 50:7
50:10 51:15
55:20 55:20
55:25 56:2
56:7 57:4
58:14 58:18
58:24 59:13
61:7 61:7
62:5 62:12
63:6 64:17
64:22 66:13
66:17 68:24
69:7 69:20
69:22 69:22
69:22 70:7
70:22 71:11
71:11 71:12
71:13 71:19
72:23 73:14
73:25 75:4
75:5 75:6
75:6 75:7
75:12 76:11
78:5 78:5
78:18 79:17
80:15 82:4
82:25 83:24

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0371

85:25 85:25
87:4 89:18
91:12 91:16
91:17 92:4
92:4 93:19
94:2 95:19
96:10 97:10
98:21 98:22
98:22 99:6
99:21 99:24
102:4
103:21
104:3
104:23
110:9
118:18
119:1
120:12
121:5 121:5
122:17 123:20
123:21 123:25
123:25 124:25
125:1 125:8
125:23 128:12
128:15 129:15
129:17 132:12
133:7 135:4
135:10
139:7 140:3
140:11 140:13
140:13 142:15
142:20 147:25
148:17
149:5 149:5
150:4 150:7
150:24 151:20
152:10 152:12
152:13 152:16
152:23 154:16
154:19
156:4
162:12 162:15
162:22
163:8
164:15 165:11
165:15 165:18
168:23 169:12
169:12 170:18

170:19 171:13
171:13 173:16
174:11 174:14
175:1 176:9
177:10
180:2
181:10
182:3 183:1
183:23 185:13
186:18 186:22
190:8
190:11 190:11
191:9 191:9
192:15 192:19
192:23 192:23
193:9
193:20 193:24
194:2
194:11 195:17
195:19 196:20
196:21 196:21
196:23 196:23
196:24
198:8
198:12
199:8
199:14
200:4 200:7
200:8 201:8
201:17
202:7
204:16
205:8
206:16 206:25
208:13 208:13
209:7
210:16 213:16
213:20 213:24
213:24 213:24
214:1 214:3
214:17 215:20
215:24 217:15
217:25
218:6 219:2
220:25
221:1
221:11 223:10
223:10

224:9
224:23
225:2 225:7
225:24 225:25
226:19 227:15
229:3 229:5
230:9
230:21
231:5 231:6
231:11 231:11
231:22 231:25
232:1 232:1
232:6 232:6
233:22 234:16
235:17 235:17
235:17
236:6 236:7
236:11 236:21
237:6 242:6
242:17 242:20
244:8
245:18 247:18
247:25
248:4 248:9
248:18 248:23
249:20 250:15
250:19
251:5 253:4
253:11 254:10
255:10 255:19
256:8
259:15 263:19
264:5 264:9
265:6
266:10
267:8
272:14 278:11
280:16 280:16
283:3 283:4
284:6

**immediately**
206:5 206:10

**implementing**
55:16 64:19

**improper** 79:1

**improvements**
75:9 76:19

77:8 85:21
90:4 90:5
93:7

**Inc** 153:9
153:10 155:16
155:16 157:22
157:22

**include** 33:12
192:21

**included** 36:3
40:2 47:25
119:7

**including**
168:18

**income** 37:7
213:17 275:7

**incomplete**
230:23

**incur** 125:25

**indebted** 230:17

**indifferent**
23:5

**indirectly** 34:4

**individual** 64:7
193:10 203:13

**individuals**
47:10

**infamous** 271:15

**information**
41:18 44:22
116:12 116:15
129:21 130:25
131:13
151:1
173:24 177:25
273:22

**informed** 253:4

**input** 201:2
271:24

**inside** 265:2

**insider**

168:12 168:19
169:3

**insiders** 169:7

**inspected**
156:15

**install** 100:8

**instead** 27:13
55:15 56:18
256:22

**instructed** 48:3

**insurance**
153:12 188:15
189:11 190:25
205:4 205:6
246:1
246:12 273:11

**intelligent**
257:25

**intended** 56:8
194:19

**intentionally**
49:22

**interact** 69:18

**inter-company**
274:16

**interest**
28:17 28:19
37:2 56:18
64:14 108:9
140:24 191:25
242:21 252:17

**interested**
104:23

**interests** 31:11
34:4 35:2
108:20 108:24
109:1
109:15
111:8
111:10 250:10
282:20
283:8 284:22

**International**
82:6

**interrupt** 58:19

**introduce** 37:24

**invalid** 231:23

**invited** 11:17

**invoice** 124:5
126:14 129:22
129:23
130:9
244:17
245:4 245:5
245:20 245:22
246:24 247:20

**invoiced** 130:16

**invoices**
124:4
126:23 127:12
128:1
129:17 129:21
130:4 130:5
150:21 244:15
244:20
247:1 247:5
247:7
247:11 247:17
270:20 270:21
272:25 273:13
273:14

**invoke** 62:5
62:12

**involved**
26:13
111:14 136:9

**Iron** 103:16

**IronPlanet** 98:1
103:15

**irrigation**
101:24
102:1 102:1
102:11 102:14
102:20 102:21
102:22

**irrigations**
102:7

**IRS** 116:24
120:21 120:23
255:25 256:9

**isn't** 63:1
189:6 218:7

**issues** 21:22
53:11

**it'd** 24:17
24:18 24:18
30:5 76:14
129:22 147:18
149:11
227:9 243:11

**item** 75:10 76:6
76:15 79:20
82:22 83:15
85:9 85:12
85:18 89:10
94:1 96:24
102:4 144:5
155:13
164:6
168:10 168:14
227:16

**items** 76:19
76:22 77:7
92:22 95:14
95:21 228:12

**it'll** 46:15
105:24
229:3
234:17 252:23
257:6 257:6
264:7 264:8

**I've** 32:14 40:6
42:8 56:16
65:1 69:25
70:3 171:25
172:1
194:25
206:1
206:18 218:1

218:12 218:12
226:8
226:10 239:16
243:6
248:20
253:2 262:6
272:12 275:15
275:16 278:13

---

J

**J.R** 37:6

**Jacey** 230:12
230:15
231:2
231:13
233:5 233:5
233:9
234:12 234:14
236:23 236:25
273:16 273:25

**Jack** 94:9 94:22
232:12

**Jack's** 94:1
94:2 94:12

**January** 79:21
87:14 95:2
97:19 97:24
103:12 103:20

**Jarman** 210:4

**Jason** 108:18

**Jason's** 170:25

**JD** 98:18
98:18 98:18
99:3 99:21
101:7 101:11

**JD9300** 99:21

**Jeep** 81:13
258:10

**jerk** 208:14
223:11

**Jernigan**
61:18 61:18

**Jerry** 9:20

jibs 108:24

Jim 31:14

Jo 22:6

job 11:25
  12:1 37:1
  161:10

jockeyed 139:23

Joe 284:6

jogs 220:4

judge 225:12

July 80:16
  162:10
  170:7 229:17

jump 281:22

June 79:10
  79:10 79:15
  82:10 140:7
  162:12 216:23
  276:4

Justin 133:20
  135:25
  136:1
  136:11 136:12
  138:18 138:20
  140:1 187:25

―――――――
    K
―――――――
K-1 264:1 264:8
  264:10 264:12
  265:8
  265:10
  266:9
  266:20 267:10

K-1s 264:3

Kellye 14:13
  44:21 45:1
  45:13 73:25
  78:19
  106:23
  201:3
  204:15
  213:9 213:19

272:6
272:20
274:9 274:15

Ken 36:10 36:14
  36:14 67:14
  71:14 141:1
  238:17 240:17

Kent 9:16 40:21
  41:8 41:21
  218:20
  221:2 223:4
  263:12 265:6

Kent's 284:13

kid 57:17 92:8

kids 57:9 57:13
  57:16 59:4
  66:23

kill 225:25

killed 32:19

kinds 107:14

King 53:25
  67:14 79:9
  82:9

kitchen 243:21

knew 33:14
  35:20 35:20
  54:25 69:16
  92:17 127:9
  141:3 147:7
  208:11 269:16
  270:12 270:14
  271:1
  272:24
  273:4
  274:14 274:15
  274:19 275:2

knowledge
  33:2 39:11
  49:25 50:4
  50:8 50:23
  52:16 78:6
  80:17 86:9
  86:24
  101:21 108:11

111:9
126:22 146:23
166:7
171:10
177:3
197:23 208:23
227:14 251:11

known 32:14
  271:8 273:9
  274:23

Kubota 95:22
  95:24 96:1
  96:6 96:9
  201:10

Kuco 188:1

Kuco's 261:12

―――――――
    L
―――――――
L.L.C 65:15
  65:20
  214:10 266:11
  266:12 267:14
  267:25 268:14
  268:19

label 53:22
  167:13 167:14

labeled 155:9
  278:19

labor 187:24

lading 122:11
  127:20 127:23
  128:5

ladings 128:1

lady 49:15
  145:18

lake 11:13
  11:21 11:22
  11:22 51:3
  51:5 51:6
  262:10

land 34:4
  35:2 37:11
  72:20 72:22

77:1 77:4
83:25 85:10
87:1 87:2
87:8 89:10
89:15 89:21
89:22 89:25
90:5 90:25
91:20 92:20
92:22 92:23
92:23 93:1
93:5 93:11
93:18 93:23
94:1 94:4
94:6 94:16
95:5 95:8
102:8
102:10 107:17
144:11 147:13
147:15 166:15
173:2
186:24
192:2
206:11 206:13
229:11
238:2
239:25 241:10
241:10 241:19
241:20
242:1
249:23 251:22
252:9 262:4
262:4
275:15 275:17
275:21 284:21

land-for-land
  233:18

lands 100:14
  186:13 186:16
  237:8

laptop 62:19

Laramie 61:18

large 177:12
  193:4 193:4
  206:15 211:22

largest 178:1

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0374

**Larry** 183:25

**last** 18:9 32:24
38:16 38:20
38:25 40:6
41:21 53:10
100:19
105:6 109:4
112:16 114:15
115:3
124:16
133:9
139:24 142:13
148:12
150:2
157:19 157:19
174:9
218:17 227:21
230:1 230:2
230:13 237:19
251:13 259:18
262:1 270:5
272:23 277:23

**late** 151:18
164:1 256:10

**later** 26:4
29:11 33:13
36:4 52:4
72:10
118:11
119:1
133:14 135:12
135:12 135:13
147:8
165:25 215:11
215:11 215:11
281:18 285:21

**latest** 163:18

**law** 36:6 36:8
62:22
217:24
219:5 219:24

**lawsuit** 12:25
13:13 13:16
15:4 269:11

**lawyer** 15:18

35:8 39:7
48:11 55:25
113:14
115:7
115:12
116:3 117:6
126:25
169:1
193:23
216:7 216:7
216:7
217:21 219:13
220:20
222:6
222:23 279:18
285:15

**lawyers** 50:25
75:7 119:11
208:3 221:1
222:22 284:8

**lawyer's** 59:16

**lead** 191:15

**lease** 110:23
110:24
111:6
112:20 112:21

**leased** 47:16
76:2 100:3
110:22

**leases** 108:9
108:15
118:8 256:22

**Leasing**
208:24 209:18
209:24
210:1 210:9
210:12 210:15
213:4 213:8
251:6

**least** 21:23
47:24 60:10
63:14 174:8
259:18 266:2

**leave** 57:5
57:13 57:16

63:20
191:23
193:7 223:2

**Ledford** 94:9
94:16
232:12 252:3

**leg** 156:13
156:18

**legal** 56:25
67:6 70:8
127:21
266:5
279:13 283:14

**legalese** 66:6

**lender** 229:14

**Leslie** 9:15
15:10 19:4
19:20 61:7
109:3
109:16
110:6 110:8
110:21 110:24
111:4 162:6
187:20 219:15
262:21 278:14
280:11 284:20

**Leslie's**
40:23 41:12
41:24 115:7
115:12
116:3 117:6
126:25 165:20

**less** 20:9
25:7 25:9
119:4 139:20

**let's** 27:4
34:22 53:14
53:16 58:7
61:5 61:5
61:6 61:23
87:1 106:14
124:8
133:23 133:23
142:14 146:19
152:25

170:7
203:12 225:14
239:11
245:4
266:19 267:22
282:25 285:14
286:15

**letter** 267:3

**letters** 264:8
264:21 264:22

**level** 47:25
106:15 137:8

**liabilities**
108:25 172:19
173:5 173:9
173:17
184:7 184:8
184:10
185:5 185:6
198:18
201:8 201:8
201:10
202:7 202:9
215:1
219:14 220:22
221:3 221:9
222:9
227:24 256:13

**liability** 27:14
199:4 200:9
202:21 222:19
246:8

**licensed** 74:6

**lien** 100:23
100:24 140:23
231:21 231:23
234:4
235:11 238:12
239:2 239:9

**liens** 186:16
186:18

**life** 26:4 32:25
33:25 35:5
191:15 191:20
193:5

194:19
195:7 205:4
205:6 262:5

**lifestyle**
204:18

**lime** 112:6

**limited** 65:12
65:21 65:24
66:3 66:4
66:21 68:1
68:11 69:7
69:13 72:19
73:3 73:8
73:8 73:24
89:23 93:23
101:3
108:16
109:6 139:9
144:6
144:11 144:20
148:15 148:16
153:3
153:11 155:14
155:17 157:20
157:23 157:25
158:8 176:5
176:24 177:16
178:9 179:5
183:2 219:9
219:13 220:14
220:14
226:2 226:7
229:15 233:13
233:21
234:1 237:4
237:7 238:2
238:22 240:13
240:15 244:18
245:11 256:10
256:12
258:9
261:22 262:13
263:20
266:2 267:7
267:13 267:16
267:20 267:21
268:12 268:13

268:17 268:17
268:22 269:12
269:25
270:8 273:5
273:7 274:6
275:6
275:24
276:8 276:9
276:16 281:23
282:1 282:1
282:9 282:19

**limiting** 63:4

**Lincoln**
202:20 202:25
203:6 259:11

**line** 75:9 75:10
76:6 76:15
76:19 76:22
77:7 77:13
77:14 79:20
80:15 83:15
85:9 85:12
85:18 89:10
92:22 94:1
95:14 96:24
96:24 144:5
155:13
164:5
168:10 168:10
168:14 168:14
172:19 172:23
173:8
176:21
185:6
201:11 202:18
203:20
204:8 211:2
227:16 228:12

**lined** 196:15

**lines** 265:4
265:18 266:15

**line's** 168:13

**lineup** 164:5

**liquidate** 30:18
136:15

**liquidating**
133:17 136:4

**liquidation**
104:16 136:7

**list** 94:24
95:19
168:17 169:24
170:1 182:1
184:25 185:12

**listed** 95:17
96:11
108:20 129:22
147:10
156:6
169:19 173:17
177:19 181:12
181:22 222:19
226:22 227:17
228:6 228:9
235:15 239:21
266:23

**listening** 60:16

**listing** 83:10
181:18

**lists** 82:6
203:22

**literally**
164:17

**litigation**
20:15 21:21
21:22 48:14
49:3 74:22
114:20
136:9 141:9
223:13 223:22
240:10 252:18

**little** 11:13
12:3 12:5
16:16 42:24
72:7 73:15
83:7 95:21
108:2
115:21 118:25
129:7 140:20

168:9
176:10 182:23
195:20 220:18
262:8 262:9
263:25 269:15
285:15

**live** 11:6
192:20

**lived** 239:16

**livestock** 91:10
91:15 91:18
91:21
100:11 104:11
104:14 104:15
105:2
105:10 105:12
105:15 105:23

**living** 18:22
142:1 243:18

**LLC** 267:7
267:13 267:21
268:4 268:8

**load** 107:23
122:1

**loaded** 40:24
51:17 51:25
122:8 122:9
127:5

**loaders**
121:25 122:4

**LOADRITE** 121:25

**loan** 155:8
157:9 164:7
177:6
177:23 184:25
197:9 199:1
200:6
201:11 201:19
201:21 201:22
201:24 202:11
202:18 207:20
222:12
227:1
227:13 227:16

227:19 269:7

**loaned** 153:9
154:9
155:15 157:21
164:9
183:18 206:20
206:21 206:22
207:22 208:6

**loaning** 178:8
178:11 178:12
208:7

**loans** 167:4
170:15 172:19
173:15 173:16
174:3
174:20 174:21
178:2 184:8
196:22 215:2

**local** 36:15

**location** 127:23
128:17

**long** 19:18
21:10 36:8
36:10 36:19
49:11 54:22
111:10 111:11
116:15 118:21
128:9 135:8
251:7 258:24

**longer** 19:10
52:13
104:14 105:10
105:12 225:15
285:15

**long-term**
107:19 192:13
201:10

**lose** 195:6

**losing** 133:19
179:23 180:4

**loss** 166:19
179:11 179:19
183:13 197:24
204:5 204:8

226:5
265:19 265:22

**losses** 183:19

**lost** 43:10
43:15 120:8
120:9
121:14
179:6
187:19
195:8
195:15 252:9

**lot** 21:3
25:14 25:18
34:24 35:15
36:6 42:12
65:18 67:6
67:7 78:1
79:12 82:16
83:5 95:24
96:17 99:17
102:4
133:19
195:6
195:12 195:24
216:14 235:25
250:15
253:6
255:25 257:10
269:5
269:20 271:15
275:20

**lots** 33:3
100:12 123:15
261:18 262:4

**loud** 89:7
228:14

**love** 19:24

**Lovell** 217:8
220:11 220:13
223:4 283:4
284:6

**LTD** 259:3 259:4

**lunch** 127:14
128:25 131:23

132:1

**luncheon** 132:6

**lung** 156:14

**lungs** 32:18
32:19

**lying** 75:6
140:13

———————

M

**ma'am** 163:1

**Mac** 210:4

**machine** 124:20

**machinery** 25:16
25:24 95:15
95:17

**machines** 125:20

**main** 43:22
43:22

**mainly** 117:13
124:17

**maintain** 199:16
253:15

**maintained**
199:24

**Maison** 59:21
60:21

**man** 34:7 195:18
209:3 210:4

**management**
45:20 65:15
65:20 109:3
214:9
214:15 250:12
250:17 266:11
266:12 267:10
267:10 267:14
267:24 268:13
268:19 268:24
272:19

**manager** 68:1
68:4 68:23
69:12 70:5

109:19 111:10
111:12 160:20

**managers** 67:2

**managing**
159:7
160:21
262:1 262:22

**March** 9:4
9:10 22:8
36:22
162:17 163:18

**Marion** 118:8

**marital** 64:24
65:7 194:12

**mark** 19:7 20:21
30:19 31:10
73:18
175:20
197:5 209:17

**marked** 38:1
73:20
142:21
146:9 167:8
175:4
182:10
183:4
193:12 197:20
199:9
200:22 209:19
212:5 213:2
214:12
216:3 217:9
229:7 235:4
244:12
264:1 277:1

**market** 88:11
129:11 192:6

**markets** 24:20

**markup** 129:2

**married** 17:7
17:9 33:16
36:19 36:20
36:21 36:23

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0377

**Martha** 108:17

**matched** 88:10
  112:21

**material**
  127:5 129:8

**matrices** 128:1

**matrix** 107:23
  122:8 124:2
  126:23
  127:6 127:18

**Matt** 9:18
  146:15
  151:2 151:5
  172:4 172:8
  217:3
  221:10 271:18
  272:20 272:23
  273:21
  274:9
  285:11 285:11
  285:12 286:9

**matter** 10:2
  92:15

**Matthew** 219:19

**Matt's** 151:4

**maturity** 229:17

**Max** 197:5

**maximum** 205:12

**may** 75:4
  76:17 91:22
  94:25 140:8
  143:23
  147:2
  148:22 148:23
  155:11 167:12
  234:23 234:23
  235:2
  237:17 237:17
  252:2 268:9

**maybe** 15:15
  16:19 46:19
  58:24 65:7
  72:10 73:5

74:18 74:24
76:20 77:9
88:6 98:2
98:2 99:7
118:24
134:8
149:15 151:19
162:23
191:7 192:6
196:9 197:2
225:15
254:2 272:8
272:15 283:23

**mclaughlin** 9:20
  10:12

**McLaughlin** 9:20
  10:11

**mean** 19:23
  20:25 21:2
  21:15 21:18
  21:18 23:16
  24:1 25:3
  25:23 25:24
  26:15 29:11
  29:16 30:3
  31:18 33:15
  36:3 36:4
  36:4 40:5
  42:9 42:14
  44:8 45:21
  45:23 48:17
  51:7 54:24
  57:24 59:19
  60:12 63:20
  64:5 64:12
  67:9 69:20
  70:11 70:22
  71:11 71:15
  71:16 73:5
  74:21 76:13
  76:13 77:25
  79:14 80:13
  81:5 81:22
  82:16 83:12
  84:2 84:20
  88:8 88:15
  90:18 93:13

93:20 96:10
98:4 99:8
99:25 102:4
109:8
109:17
111:3 113:5
113:25 114:24
115:2
115:20
117:2 120:6
120:7
120:10 120:21
121:2
121:16
123:1 123:2
128:7
128:10 130:14
130:15 132:14
136:11 137:12
138:10 140:19
145:6 145:9
147:8
147:19 147:20
148:12 148:18
151:16
155:1 155:8
160:22 160:24
162:17
163:7
163:21 164:14
164:23 165:10
170:5 171:2
176:9
177:10 179:24
180:2
180:19
185:4
186:20
189:2
191:22
193:3
196:13 196:14
204:17 205:18
205:24 207:14
208:11
209:3 209:5
213:9
222:12 222:13

225:10 228:16
231:9
231:10 231:22
234:5
236:21 236:22
239:24
244:4
244:22 248:11
249:1 251:7
253:8
254:20
255:2 257:6
257:14 257:24
270:12 274:19
275:15 275:20
280:21 284:18
284:21

**meanings** 208:16

**means** 10:6
  34:10 40:19
  54:7 70:1
  72:12 72:16
  79:13 85:17
  94:2 106:18
  106:19 129:13
  228:3
  228:12 236:11

**meant** 58:17
  267:8

**meantime** 135:15

**mediation** 109:2
  218:23 220:16
  278:9 280:8
  280:21 281:24
  282:18 283:21

**medical**
  153:12 153:13
  190:25 191:1

**Medicare** 189:8

**medication**
  12:10

**meeting** 15:8
  15:9 15:14
  46:4 51:18
  113:17

195:4 249:7

**member** 35:23
35:24 267:7
267:13
268:4 268:8

**memorialized**
146:2

**memory** 16:3
17:23 49:10
65:3 67:4
78:6 79:11
79:22 80:2
80:7 80:10
80:17 81:6
82:10 82:11
82:14 113:1
114:15 131:19
144:13 169:16
174:16 177:25
186:15
219:7
219:11
220:4 220:8
221:8
222:14 222:24
233:23
241:4 249:9
278:25

**mentioned**
23:7 30:12
35:1 36:12
41:2 50:25
56:13 76:7
82:24
101:13 103:22
107:5 112:4
113:17 113:24
126:10 132:22
142:2 188:6
244:2 255:6
269:2 270:11

**merge** 199:21

**merged** 27:14
29:19 30:1

**merger** 199:20

**Merriott** 219:19
219:23

**mess** 21:9 56:21
171:25 246:14
283:10

**messed** 279:18

**messing** 286:5

**met** 14:3 14:3
54:14 263:7
263:11

**meters** 109:7

**metes** 229:25
237:24 241:9

**method** 10:5

**Mexican** 188:1
261:12

**Michael** 9:2 9:8
10:22 11:3
46:12 153:8
153:13 155:14
157:20 157:24
164:9 191:1
229:14 287:6

**microphone**
263:9

**middle** 94:12
201:12 202:11
204:1 267:22

**Mike** 145:20

**mile** 93:3

**miles** 34:20
34:20

**Miller** 231:18

**million** 13:6
15:11 25:7
25:8 27:25
28:3 30:9
133:15
134:8 134:9
134:15 134:17
134:20 137:18
138:5 138:8

139:21
140:2 168:6
173:14 177:23
180:5
180:14 184:14
190:6
202:15 206:12
206:16 206:20
206:21 206:23
211:20 212:12
213:12 256:2

**millions** 25:1
25:2 34:23

**mind** 55:7
174:20 193:22
283:18

**mine** 145:14
150:7 184:3
249:25

**mined** 142:3
142:4 142:5

**mineral** 72:8
108:15 108:15
108:20 108:24
109:1
109:15 111:8

**mines** 211:10

**minimal** 189:2

**mining** 211:7
211:8 211:9
211:10 211:14
211:23

**minute** 234:17
237:6

**minutes** 88:22
90:11 225:15

**Mischaracterize
s** 58:6

**misheard** 118:24

**mislead** 69:23

**missing**
200:15 253:10

274:12

**misstating** 75:7

**mistake**
163:16 174:12
174:13 218:11
231:24

**Mm-hmm** 18:21
37:14 46:21
47:21 68:15
77:18 83:23
87:12
117:20 117:23
137:4
150:14 186:25
198:21 216:12
229:21 261:10
264:18
265:1 275:1
276:13

**Mmm** 157:11
205:2

**Mobeetie**
34:14 34:18
34:19

**mobile** 76:6
76:7 76:7
76:25 77:1
85:18

**model** 261:4

**mom** 21:12 21:14
22:25 23:3
31:18 37:1
64:25 66:23
67:1 67:25
87:19 92:15
104:1 104:2
105:20 108:11
109:24 110:17
111:12 130:12
130:25
131:6
147:11 147:12
147:14 156:10
162:7 162:7
162:16 162:22

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0379

163:13 166:15
188:19
189:1 189:5
189:8
189:14 191:12
193:4 193:7
195:21 196:17
196:23 203:10
236:18 238:14
238:23 239:17
240:1
243:14 257:14
280:5 284:20

**moment** 61:5
217:6 278:24

**momma's** 87:20

**mom's** 22:5
98:10 145:7
189:22
190:7 194:19

**Monday** 12:23
277:21

**money** 13:9 13:9
29:17 34:9
41:16 87:19
87:20 88:7
94:16 94:22
98:4 98:8
98:11 98:11
100:16 100:20
100:24
101:5
103:24
104:4 104:9
105:13 105:23
107:19 107:21
107:22 109:12
110:10 110:13
110:16 110:17
111:3 111:5
131:1 134:4
134:10 135:21
136:3
137:11 137:14
138:15 141:6

144:22
145:1 145:5
145:10 145:10
147:8
147:23
152:6 152:8
158:22
159:1 159:2
163:22 169:15
169:25 170:17
174:22 177:11
177:11
178:8
178:11 178:12
181:2
181:20 181:23
183:21
188:9
188:18 188:23
189:1 189:3
189:3
189:25 190:21
191:23
192:1 192:4
192:5
192:19 192:24
193:7
194:18
195:6
195:12 195:20
195:24 204:13
204:16 204:20
204:22
205:3
205:12 205:14
206:3 206:9
206:15 206:22
206:24
207:2
207:20 207:22
207:22 207:25
208:5 208:7
215:18
224:2
228:18
231:9
233:17 233:19
233:21 233:24

244:9
246:15 252:10
255:3
255:12
256:5
256:24
257:1
257:11 257:12
275:24
276:8 276:9

**moneys** 101:1
105:17
110:7
154:20 166:12
166:13
182:6 256:6
256:25

**Monique** 61:22

**month** 130:12
130:17 135:12
238:19 240:23
255:13 277:25

**monthly** 149:9
149:11 240:20

**months** 43:17
135:12 135:14
139:24 160:11
174:10

**Mooney** 175:20

**Morgan** 156:15

**morphine** 32:24

**mortgage** 173:2

**mortgages**
172:23
184:9 186:13

**mostly** 116:21

**mother** 20:8
20:18 20:19
21:11 28:1
28:21 30:13
30:16 30:19
31:11 33:14
33:21 36:13
54:13 54:19

59:1 66:1
70:16 73:12
88:3 88:9
88:15 92:5
94:19
144:22 144:23
145:2 145:5
145:9 147:6
147:18 147:19
147:22 147:24
148:3 148:6
148:11 148:15
153:14 154:20
155:18 190:21
191:2 196:5
196:13 196:13
196:15
233:6
238:13 238:15
242:17 242:25
243:19
244:8 244:9
251:25
252:7 257:8
257:17 257:24
274:19

**mother's** 51:7
80:20 83:1
92:9 96:18
157:6 162:4
188:23
191:8 192:9
192:15
196:2
202:22 223:17
237:13 242:20
242:21
254:4 259:12

**motor** 76:24

**mouth** 66:17

**move** 53:10
84:18 87:1
106:6
114:19
115:4
118:13 197:18

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0380

moveable 86:13

moved 24:15
84:6 84:8
84:12 84:24
84:25 85:3
90:23 97:8
115:18 115:20
115:22
116:8
116:16 117:24
118:22 118:25
119:3
119:14
120:1
120:24 122:9

moves 102:17

moving 53:12
121:15

MSG 250:4

mulberry 89:15

multiple
43:21 165:5
177:9

mute 58:21 59:1
59:22 59:22
60:3

myself 24:6
66:1 68:3
93:21 114:2
212:2 244:1

——————————
N
nature 25:19
25:22 25:23
201:9

Navigator 203:6
259:11 259:24

Navigators
259:13

Nearer 97:21

nearly 55:11

necessarily

59:19 191:14

necessitated
165:6

negative 107:16
109:6
226:22
228:5 228:9

negotiated
136:10 137:2

neighborhood
25:14

net 34:23
131:17 131:17
204:8

news 140:18

Newsom 14:22

night 11:12

nine 275:16

nod 22:12

nodding 29:24

Nods 22:10

non 166:23

none 36:3
51:8 73:4
85:7 195:12
209:5 210:8
210:9
250:15
251:1 254:20

non-legal 48:10

nor 204:12

normal 189:16

north 97:4
140:2 233:4
236:25

note 134:18
134:18 135:15
140:24
146:3 154:1
154:5
154:15 157:13

177:23 187:21
252:17

notes 172:23

nothing 10:20
50:20
116:23
117:2
118:16 120:17
121:9
135:23
220:4
249:16 249:18

notice 266:10

noticed 53:10

——————————
O
oath 40:15
50:23 143:3
225:1

object 51:15
52:6 56:7
57:6 58:11
58:13 68:24
69:4 70:7
224:9 225:7

objection
58:3 58:5
69:5 266:5

obligating
239:2

obligations
153:11 190:25

obvious 271:12

obviously 15:18
17:4 19:4
62:8 106:15
106:16 191:17
259:17 272:20

October 38:25
229:12

office 14:23
15:2 38:16
38:23 38:25

39:12 40:8
41:22 51:8
52:9 54:20
115:5
115:25 119:23
122:4 122:7
217:18
260:2 260:6
260:9

offices 59:16

O'Gorman 106:13
187:25

oh 38:19
45:11 99:13
123:7
163:23 189:12
198:8 221:5
237:21 243:19
267:7
274:22 277:25
284:13 285:7

oil 24:19
34:4 35:2
35:12
107:15 107:16
108:3 108:5
111:8
111:16 111:17
118:8 120:4
125:7
191:25 196:18
250:4 250:9
256:15
275:7
275:10 283:8

oilfield
23:16 24:17
26:3

oilfields 23:15
27:8

okay 11:10
11:16 11:23
11:25 12:3
12:6 12:8
12:13 12:16
12:21 12:24

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0381

| | | | |
|---|---|---|---|
| 13:8 13:15 | 48:2 48:10 | 86:12 86:15 | 123:14 123:18 |
| 13:18 13:20 | 49:5 49:10 | 86:18 86:23 | 123:20 124:12 |
| 13:25 14:2 | 49:14 49:21 | 87:1 87:9 | 124:19 124:23 |
| 14:15 15:1 | 50:4 50:19 | 87:17 87:22 | 124:25 |
| 15:17 16:2 | 50:22 51:2 | 87:25 88:11 | 125:8 126:5 |
| 16:5 16:14 | 52:5 52:12 | 88:25 89:3 | 126:10 126:13 |
| 16:23 17:2 | 52:16 52:20 | 89:10 90:7 | 126:17 126:21 |
| 17:4 17:19 | 52:24 53:3 | 90:15 90:21 | 127:8 |
| 17:22 17:25 | 53:7 53:14 | 90:25 91:15 | 128:23 129:15 |
| 18:3 18:6 | 53:18 53:19 | 91:20 93:11 | 129:21 |
| 18:9 18:16 | 54:2 54:17 | 93:13 93:17 | 130:8 |
| 18:20 18:24 | 55:4 55:24 | 94:8 95:1 | 130:22 |
| 19:2 19:6 | 55:25 56:13 | 95:5 95:5 | 131:6 |
| 19:9 19:12 | 58:24 59:7 | 95:8 95:11 | 131:10 131:19 |
| 19:14 20:6 | 59:11 59:14 | 95:11 95:14 | 131:22 131:22 |
| 20:9 20:21 | 60:4 61:23 | 95:20 96:1 | 132:13 132:22 |
| 20:25 21:6 | 63:21 64:10 | 96:6 96:13 | 133:3 |
| 21:25 22:3 | 65:3 65:6 | 96:21 96:23 | 133:13 133:16 |
| 22:9 22:25 | 65:14 65:23 | 97:12 97:16 | 133:23 |
| 23:7 23:14 | 66:20 66:25 | 97:21 98:13 | 134:4 134:4 |
| 23:20 24:13 | 67:16 67:25 | 98:17 98:24 | 134:12 134:19 |
| 24:24 25:10 | 68:7 68:13 | 99:2 99:21 | 134:23 |
| 25:15 25:19 | 68:18 69:15 | 100:13 101:15 | 135:1 |
| 26:8 26:10 | 69:23 70:20 | 101:19 102:10 | 135:18 135:24 |
| 26:22 27:4 | 71:4 71:23 | 102:13 103:18 | 136:2 |
| 27:18 27:21 | 72:17 72:24 | 104:1 | 136:18 136:18 |
| 28:6 28:13 | 73:17 74:6 | 104:17 | 136:21 |
| 28:16 28:20 | 74:9 74:15 | 105:5 105:9 | 137:7 |
| 28:25 29:3 | 74:16 75:4 | 105:12 106:21 | 137:23 |
| 29:4 29:10 | 75:13 75:19 | 107:1 | 138:7 |
| 29:19 29:22 | 76:3 76:10 | 107:14 | 138:17 138:23 |
| 30:12 31:1 | 76:15 76:19 | 108:7 110:1 | 139:4 139:7 |
| 31:7 32:5 | 76:22 77:1 | 110:18 | 139:12 139:16 |
| 32:9 32:15 | 77:4 77:7 | 111:1 112:4 | 139:25 |
| 33:24 34:22 | 77:12 77:23 | 113:9 | 140:5 |
| 35:1 35:8 | 79:3 79:9 | 113:21 115:10 | 140:21 141:13 |
| 36:8 36:18 | 79:20 79:24 | 116:7 | 141:16 141:23 |
| 37:15 37:23 | 80:6 80:10 | 116:10 116:13 | 142:8 |
| 38:24 39:3 | 80:14 80:21 | 116:19 | 142:14 142:14 |
| 39:6 39:10 | 81:11 81:13 | 117:5 | 143:3 143:6 |
| 39:17 39:25 | 82:3 82:4 | 117:18 | 143:10 143:12 |
| 40:13 40:15 | 83:1 83:3 | 118:1 | 143:17 143:18 |
| 41:6 42:1 | 83:14 83:18 | 118:24 119:10 | 144:10 144:16 |
| 42:6 42:14 | 83:22 84:4 | 119:17 119:20 | 144:19 |
| 42:22 43:4 | 84:10 84:16 | 120:4 | 145:1 |
| 44:14 45:12 | 84:18 84:25 | 120:12 | 145:11 145:23 |
| 46:3 46:18 | 85:3 85:9 | 121:8 | 146:2 146:5 |
| 46:24 47:13 | 85:12 85:25 | 122:21 122:25 | 146:14 146:16 |

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0382

| | | | |
|---|---|---|---|
| 146:19 146:23 | 170:11 170:12 | 203:22 | 232:3 232:6 |
| 147:1 147:9 | 170:12 170:21 | 204:5 | 232:6 |
| 147:14 | 171:8 | 204:11 205:10 | 232:13 232:18 |
| 148:5 148:8 | 171:10 | 205:16 205:23 | 232:22 233:22 |
| 148:19 149:12 | 172:5 172:9 | 206:7 | 234:8 |
| 149:25 | 172:11 172:13 | 208:13 208:14 | 234:14 234:16 |
| 150:7 | 172:17 172:20 | 209:2 | 234:16 234:18 |
| 150:12 150:17 | 173:5 | 209:14 209:17 | 234:22 |
| 150:25 | 173:22 | 210:14 210:17 | 235:9 |
| 151:6 | 174:9 | 210:25 | 235:14 235:23 |
| 151:10 151:21 | 174:12 | 211:2 | 235:25 |
| 151:25 | 175:1 176:4 | 211:13 211:13 | 236:3 236:9 |
| 152:4 152:8 | 176:13 176:16 | 211:18 211:25 | 236:12 237:15 |
| 153:8 | 176:19 | 212:2 | 237:22 |
| 153:19 153:25 | 177:2 177:6 | 212:10 212:14 | 238:5 |
| 154:12 154:15 | 178:6 179:8 | 213:2 213:3 | 238:11 |
| 154:24 | 179:10 | 213:24 | 239:5 |
| 155:5 | 180:2 | 214:8 | 239:23 |
| 155:13 155:21 | 180:22 181:22 | 214:21 214:24 | 241:7 |
| 155:25 | 182:3 | 215:4 215:7 | 241:20 |
| 156:2 156:9 | 182:23 183:11 | 215:14 215:21 | 242:8 |
| 157:5 157:7 | 183:17 183:24 | 216:17 216:22 | 242:15 242:19 |
| 157:12 157:18 | 184:13 184:18 | 217:1 217:4 | 243:2 |
| 158:7 | 185:3 | 217:6 | 243:13 243:18 |
| 158:21 | 185:11 185:15 | 217:19 | 244:2 |
| 159:9 | 185:21 186:12 | 218:1 218:3 | 244:25 |
| 159:15 159:18 | 186:20 186:22 | 218:22 | 245:4 245:6 |
| 160:25 | 187:7 | 219:3 219:7 | 245:11 245:16 |
| 161:5 | 187:17 | 219:23 | 246:2 |
| 161:10 161:20 | 189:1 189:8 | 220:4 220:7 | 246:16 246:23 |
| 162:2 163:6 | 189:13 190:14 | 220:11 220:16 | 247:1 247:5 |
| 163:10 163:15 | 190:23 191:17 | 220:18 | 247:7 |
| 163:17 163:25 | 192:8 | 222:2 222:8 | 247:11 247:14 |
| 164:5 | 193:25 194:11 | 222:17 222:21 | 248:4 |
| 164:15 164:23 | 194:14 194:23 | 223:1 223:6 | 249:19 |
| 165:2 166:2 | 196:17 197:13 | 223:10 223:16 | 250:1 250:4 |
| 166:5 166:6 | 197:17 197:19 | 223:21 | 250:7 250:9 |
| 166:10 166:17 | 198:12 198:13 | 224:4 | 250:12 250:17 |
| 166:17 166:23 | 198:14 198:17 | 225:17 226:25 | 250:20 250:23 |
| 167:6 | 198:22 | 227:10 227:12 | 251:3 251:6 |
| 167:23 | 200:4 200:9 | 227:16 227:21 | 251:10 251:13 |
| 168:1 168:5 | 200:13 200:17 | 228:2 228:5 | 251:16 251:21 |
| 168:8 | 201:4 201:7 | 228:8 | 251:24 252:10 |
| 168:15 168:25 | 202:1 | 228:11 228:21 | 253:7 |
| 169:1 169:5 | 202:10 202:13 | 229:12 229:17 | 253:19 253:23 |
| 169:21 169:23 | 202:17 202:20 | 229:24 | 254:5 |
| 169:24 | 202:23 203:8 | 230:8 | 254:11 254:14 |
| 170:4 170:8 | | 230:17 230:23 | 254:17 254:22 |

255:9
255:15 255:18
256:4 256:9
256:15
257:8
257:19
258:1
258:13 258:17
258:19 258:22
259:3 259:6
259:8
259:22
260:3 260:8
260:14 260:24
261:2
261:13 261:18
261:21
262:3
262:11
263:3
263:18 263:24
264:19
265:4
265:16 265:18
265:25 266:19
266:21 266:25
267:2 267:8
267:11 267:17
267:19 267:22
267:23
268:1 268:2
268:7 268:9
268:17 269:15
271:20 271:24
272:6
272:24 273:17
273:20
274:9
274:14
275:4
275:23
276:5 277:8
277:19 278:16
278:24
279:2 279:3
279:10 279:23
280:1 280:5
280:16

281:2 281:6
281:13 281:18
281:22 282:14
282:22
283:2
283:11 283:20
284:3 284:8
284:11 284:17
285:13 285:23
286:4 287:2

**Oklahoma** 49:5
54:13 92:5
113:19 195:1

**old** 113:25
116:3
116:22 117:13
120:3 120:6
120:7
120:16 121:11
124:16 252:14
259:14

**older** 119:14
260:24

**oldest** 19:12
59:17

**old-fashioned**
33:19

**ones** 78:1
102:16 119:11
119:14
149:1 172:1
186:18 244:22
271:12 272:21
273:4

**one's** 104:25

**one-year** 169:7

**onto** 39:14
77:16 239:14

**open** 42:7
42:8 42:10
63:3 115:1
134:17

**operate** 47:11
102:5

114:21 136:17
148:12 158:18
190:1

**operated**
27:11 103:9
144:10 275:19

**operating** 90:22
109:12 138:24
139:1
147:13 178:10
178:13 189:16
204:8

**operation**
92:7 106:9
141:14 141:19
147:18 148:11
179:11 188:21
188:22

**operations**
57:23 109:7
158:18 275:12
283:7

**opportunity**
285:6

**opposed** 64:3
69:1 80:24

**opposite** 276:18

**order** 63:4
199:5
279:13 286:22

**orders** 244:24

**ordinary** 183:12
247:19

**original**
88:12
220:25 285:25

**originally** 90:1

**others** 43:21
284:3

**otherwise**
169:25

**ought** 144:4

160:17
163:9 234:6

**ours** 184:3

**ourselves**
106:13 136:11

**outdoor** 243:21

**outfit** 26:7
248:25

**outside** 121:18

**outstanding**
252:21

**override** 108:9

**owe** 130:10

**owed** 15:10
27:25 68:22
98:11 104:2
133:15 134:20
136:3 138:5
141:6 144:6
152:14
153:3
155:13 157:19
166:11 168:19
169:15 173:14
176:24 180:14
184:14 184:25
215:18 221:16
224:21 231:10
247:14 255:12
255:25
270:1 270:6
273:5
273:23 275:24
276:8
276:10 276:16

**owes** 13:9
13:9 123:22
176:22
199:4 224:2

**owing** 181:14
181:19 215:1

**owned** 31:18
31:19 31:19
71:23 72:1

**NAEGELI**
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

**(800)528-3335**
NAEGELIUSA.COM

PAPP 0384

72:2 72:21
73:9 77:5
77:21 78:4
80:2 84:7
88:1 88:18
89:4 89:22
90:25 91:14
93:5 101:19
101:20
102:8
102:22
105:3 105:4
105:10
108:8
108:11 108:14
108:19
110:1 112:7
114:3
124:15
135:4 135:5
136:4 137:1
156:2 156:5
156:20
157:2
186:17 186:24
187:19
189:5
207:13
213:4 233:9
239:18 241:11
253:4 253:6
253:12 253:16
258:19 275:17
281:23
282:5 282:8
282:12 282:15
282:19

**owner** 28:13
92:20
134:24 148:11
156:5
210:12 262:20
266:22

**owners** 268:22

**ownership** 94:15
133:13 268:13
269:3

**owning** 99:3
205:19

**owns** 81:4 81:19
81:24 99:18
176:4 254:5
254:12 254:13
254:20
258:8 259:8
261:24
262:2 266:1

---

P

**P&L** 198:4
199:12 200:20

**p.m** 132:5 132:7
212:17 287:7

**page** 38:13
74:10 74:10
77:15 77:16
87:5 87:6
98:17
103:18 103:19
143:15 143:15
149:25
150:3 150:4
150:6 150:8
153:2
168:10 169:22
169:24
172:8
172:10 176:19
178:20 190:18
201:13 210:18
210:18 212:23
212:24 213:11
213:13 214:22
218:4
219:18 227:21
230:1 230:2
230:2
238:11 263:21
263:22 278:16
278:22

**page-by-page**
218:2

**pages** 171:16

175:7
178:20 178:23
183:10 183:24
198:9
203:14 212:14
264:1 266:9
266:19 267:9

**paid** 47:19
48:24 80:11
88:5 91:1
91:4 91:5
91:5 98:11
104:2 109:4
109:11 110:23
111:5 126:7
128:10 128:10
135:17
138:3
138:20 138:22
141:7
141:10 144:11
147:7
147:11 147:19
152:18 158:16
160:13 160:13
160:22 160:23
161:14 163:21
163:23 191:13
191:17
196:9
196:10 196:12
196:13 206:11
206:13
238:8 238:9
239:5 239:8
244:1 244:5
244:8 244:9
244:23
245:1 245:3
246:24 247:12
252:16
262:2
269:11 269:25
270:7

**painful** 32:22
32:23

**paint** 258:11

**Pampa** 34:21
36:17 36:18

**pan** 209:5

**Panhandle** 16:12

**paper** 51:3
121:21 127:25
130:3
249:12 253:22

**papers** 31:15
38:23 88:21
114:7 115:2

**paperwork** 27:14
40:24
114:10 114:19
160:6 277:22

**Pardon** 37:24
143:24 276:24

**parents** 21:21
21:25 22:19
36:19 53:16
58:17 72:25
241:11 241:20
258:1 280:24

**park** 11:19
11:20

**partial** 135:23

**particular**
22:21 96:3
151:7

**particularly**
254:25

**parties** 103:4
107:7 126:2
284:13

**partner** 33:7
33:8 35:10
60:21 65:20
68:19
148:15
154:4
228:12 266:23
267:5 267:7
267:13 267:20

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0385

267:21
268:4 268:6
268:17 268:17
268:18

**partners**
35:12 66:4
68:5 68:10
68:21 69:1
69:7 69:13
70:17 70:18
89:23 94:19
97:6 108:15
167:3
172:19
176:5 184:8
210:14 233:21
234:1
240:13 240:15
258:9

**partner's**
227:22
228:1 228:3
228:12 228:16
264:23 266:16

**Partners**
70:19
108:16 109:6

**Partner's**
265:19

**partnership**
13:9 15:24
53:17 65:12
65:21 65:25
66:4 66:21
67:1 68:2
68:5 68:11
68:23 69:8
69:13 69:19
70:5 71:24
72:2 72:5
72:18 72:19
73:3 73:8
73:19 73:24
74:20 75:2
75:16 77:5
77:20 77:23

78:3 78:7
80:3 80:11
80:24 81:1
82:1 82:2
88:2 88:19
90:2 90:25
91:25 93:4
93:23 94:17
95:16 99:2
100:10 100:13
101:3
101:20 101:21
102:8
103:23 104:14
105:2
105:10 105:22
105:25
106:9
106:14 106:21
107:1 107:7
107:12 107:15
108:3 108:8
109:14
110:8 111:9
112:7
123:22 125:18
126:7
129:25
130:8 131:8
144:6
144:11 144:20
145:2 148:9
148:15 148:16
149:4 149:8
150:22 152:14
152:21
153:4
153:11 153:12
154:2
155:14 155:17
156:2 156:5
157:13 157:20
157:23 157:25
158:8
158:11 158:22
159:7
159:19 160:18
160:20 161:15

161:16 166:13
166:18
169:3 169:8
169:14 169:15
169:19 170:16
170:22
171:5
171:11 173:12
173:13 173:14
174:4
174:21 176:25
177:7
177:13
178:9
178:12
179:6
179:23
180:3
180:17 180:18
180:19 180:24
181:3 181:5
181:13 181:19
181:23
182:6 183:1
183:2 183:2
183:18 183:21
184:14 184:25
186:8 186:9
186:12 186:16
186:24
187:1 187:8
187:19 187:22
188:14 189:21
190:6 196:1
196:12 196:23
199:1 199:6
200:6
200:11 200:21
201:1 203:9
204:21 206:21
206:23 207:21
207:21 207:25
208:6
214:10 214:19
215:10 215:19
215:22 216:10
217:20 219:9

220:14
224:1 226:2
226:7
227:13 227:19
228:19 229:13
229:15 230:18
233:13 236:13
237:4 237:7
238:2
238:22 238:24
240:20 243:25
244:7
244:18 245:12
246:18 246:20
247:15 247:21
247:22
254:9
255:12 256:10
256:12 261:22
262:13 263:20
263:21
266:2
267:16 268:12
268:13 268:23
269:12 269:25
270:9 273:6
273:7 274:7
275:7
275:17 275:24
276:8 276:9
276:17 281:23
282:6 282:9
282:19 282:20

**partnerships**
282:1

**partnership's**
145:7
173:18 177:16
202:8 219:14

**party** 112:23

**pass** 20:19 38:4
263:3
276:20 285:2

**passed** 20:8
20:18 21:11
22:19 23:2

36:24 66:2
73:5 79:15
94:14 99:20
158:19 160:11
161:25 191:24
193:8
193:17 194:18
196:5
210:22 242:25
245:18 256:21
256:23

**passing** 55:5
59:9 253:4

**passionate**
188:18

**password** 248:10
248:18

**passwords**
42:6 166:4
248:14 248:17
248:22
249:5
249:11 249:17

**past** 30:5

**Patrick's** 52:1

**pay** 30:9 72:8
73:13 87:21
88:17 91:2
91:25 92:20
93:22 100:4
104:1 104:6
105:14 106:12
107:7 112:7
119:14 125:17
125:24
126:3
129:25
131:7
131:14 133:22
134:18 135:16
136:7
137:11 137:17
137:18
138:6 138:7
138:15 144:22
144:23

145:2 145:7
147:23 147:24
148:2 148:6
148:9 149:8
152:6 152:8
153:11
154:2 154:6
154:10 155:17
157:14 157:23
158:17 158:24
159:1 159:2
159:4 159:4
169:14 188:19
188:24
189:4 190:6
190:22 190:24
196:1
196:18
206:9
215:10
238:5 238:6
243:6 243:8
243:15 243:16
243:25
244:7 252:7
252:10
256:5 274:2
275:8

**payable**
172:23 198:20
201:9
201:11 201:21
201:22 201:24
202:12 202:18
256:16

**paycheck** 160:7

**paying** 49:7
107:25 112:20
135:15 135:19
136:3
137:22
152:4
176:13 180:18
188:10 188:13
188:22 189:21
189:22 205:11
240:9

240:10 240:12
240:14 245:12
246:17 252:18
255:13
256:4
262:14 270:6

**payload** 116:11

**payment**
130:10 131:16
131:20 149:22
150:2
240:18 256:10

**payments**
73:11 73:13
107:18 107:19
107:20 134:13
147:13 147:15
148:20
149:3
149:13 149:16
149:17 149:18
150:1
150:17 152:20
168:11 168:17
169:6 169:7
169:7
169:18
187:2 187:4
192:13
197:9
215:22
216:9
216:18 216:24
238:18 238:19
240:17 240:20

**payroll**
116:16 116:17
116:21 117:14
119:15 120:17
153:11 188:13
190:25 246:10
273:10 273:15
274:2 274:3

**payrolls** 273:16

**pen** 86:1 86:3
86:4 86:12

86:19

**penalty** 143:3
167:23 182:17

**Penn** 24:7

**penny** 150:18

**pens** 85:22
86:10 86:23
90:8 90:10
90:17 90:20
91:1 91:2
91:3 91:4
102:5

**people** 26:5
43:9 60:14
60:16 62:6
62:8 62:14
62:18 79:6
111:14 114:24
116:14 121:15
124:18
125:3 142:1
161:3
163:16 175:14
188:5 195:9
196:14 218:24
245:25 246:11
255:3
270:12 270:14
270:15 270:20
271:9
271:10 272:11
272:15 272:16
272:21
274:3
274:14 274:15

**people's** 219:9

**per** 126:7 129:3
129:4
144:12 144:17
161:8
184:19 240:23

**percent** 31:20
44:18
108:12 108:17
108:18 108:19

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0387

213:5
265:24
266:1
266:18 268:14
268:15
282:5 282:9

**percentage**
28:18 142:9
265:23

**percentages**
266:25

**perfection**
55:25

**perhaps** 15:13
15:21

**period** 24:25
134:23 154:25
165:3

**periodic**
187:2
188:14 240:20

**periodically**
11:11

**periods** 21:12

**perjury** 143:4
167:24 182:17

**person** 47:7
60:11 74:25

**personal**
33:15 40:10
40:11 46:7
51:2 80:7
80:10 91:21
93:17 93:24
96:18 104:7
119:7
144:20
175:2
177:17
182:9
197:23 204:21
228:9 269:8

**personally**
46:12 49:22

50:5 52:8
69:18 81:5
106:10 145:23
177:6
178:11 180:18
185:13
186:7
204:14 204:25
205:21 248:14
254:17 270:24

**Peyton** 261:19
262:11

**phonetic** 188:1

**physical**
25:16
205:25 260:3

**physically**
45:10
125:13 131:7

**picked** 44:19
118:8 127:12

**picking** 163:8

**pickup** 77:16
79:10 82:9
82:23

**pickups** 78:7
156:20

**pictures** 92:6

**piece** 31:20
98:21 99:13
249:12

**pieces** 55:12

**pile** 220:9
263:17

**piles** 117:3

**pipeline** 26:6
31:24

**pissing** 223:23

**pit** 46:1 107:20
107:24
108:1
114:23 114:24

115:19 115:21
115:22 115:25
116:8
116:20 117:11
117:24 119:15
119:21 120:25
121:12 127:11

**Pitcock** 75:24
77:10 84:1
97:4 97:7

**pits** 104:8
107:22 145:20

**pit's** 107:22

**PK** 74:3

**places** 11:11
93:20 100:9
156:18

**Plains** 186:21
186:23
187:9 187:21

**plan** 210:6

**planning** 54:4
54:5 54:10
54:12 55:2
56:11 57:3
65:9 103:16

**planted**
100:17 103:9

**play** 54:19

**playing** 264:16

**pleasant** 32:20

**please** 9:12
9:22 10:15
11:1 11:8
12:7 14:21
16:10 56:10
57:12 69:5
89:14 91:16
142:17 169:21
171:16 176:19
183:25
201:7 202:4
210:11

217:6
217:13 222:18
223:1
225:24
226:3 226:6
226:14
232:6 232:7
278:16

**pleasure** 10:1

**plugging** 108:25

**plumb** 52:1
57:20

**plumber** 26:9

**plus** 12:6 192:2

**pocket** 154:21

**point** 29:19
31:10 35:23
54:9 57:19
73:9 92:7
106:3
117:19 119:17
123:5
132:19 133:14
135:5
174:14
175:7
180:13 199:19
203:17
206:4 207:2
218:23
225:3
239:17 241:18
241:20 251:21
252:21 253:16
260:19 279:24
282:4 282:8
282:11 282:15

**policy** 205:4
205:6

**poor** 106:24

**popped** 249:19

**populated** 251:1

**portion** 172:18

position
    109:3
    154:13 279:7

positive 106:18
    106:23

positively
    106:22

possession
    40:11 44:17
    52:14 52:18
    88:24
    122:12
    254:3
    259:22 261:11

possibility
    113:10

possible 281:3

post 38:16
    38:23 38:25
    39:12

potential
    213:18

power 84:23

precision 105:1

prefer 19:16

preferring
    57:17

prepare 12:13
    74:4 78:13
    198:7
    200:25
    222:8
    222:22 234:20

prepared
    74:20 78:10
    146:14 169:13
    173:20 182:21
    213:10 216:20
    217:1 221:9
    222:3
    225:10 273:10
    273:13 273:15

preparing

217:19
219:8 229:3

present 9:12
10:3 10:4
60:10 81:18

presented 225:8

preserve 48:3
48:13 48:20
49:2 49:12

preserving 10:5

presumably
147:5

pretty 16:7
21:8 22:25
33:25 52:1
74:22 98:16
98:16
102:10 104:22
123:1 152:1
166:20 191:16
194:23 231:20
257:17 257:23
257:25 281:9

price 24:19
108:4 129:3
134:19 139:20

priced 95:21

prices 192:3
195:22 275:11

primarily
128:20

principle 194:5

print 80:1
168:9
168:16 201:16

printed 216:8

prior 74:14
216:7
237:18 281:23

Pritchard
9:15 19:20
20:7 60:25

61:7 61:7
163:5
217:21 218:23
223:12

Pritchard's
51:18
219:12
222:6 222:23

private
116:12 189:10

probably 21:9
21:14 21:18
24:23 25:9
34:23 36:22
49:20 67:3
142:13 144:15
147:3 152:3
168:7
189:10 197:23
209:16 233:19
243:19 272:16
277:25

probate 162:4
162:5 164:4
242:15

problem 39:10
60:17 80:25
141:10
150:8
178:24 194:21
194:23 286:12

proceeds
80:11 82:12
98:2 98:9
104:1

process 32:23
38:15 38:18
38:24 39:11
39:14 212:3
271:1

produce 39:18
39:23

produced
51:12 51:16
51:20 216:6

217:8

producing 192:1

product 126:4
126:14 144:12

production
108:12 108:14
109:5
111:23 211:2

Productions
97:3

professional
10:1 10:4
263:1

profit 197:24
226:5
265:19 265:22

profitable
166:24

profits 192:11

program 127:16

project 211:7
211:8 211:9

promise 77:14
225:17 225:18

promises
154:2 154:6
157:14

promissory
140:24
146:3 154:1
154:5
154:15 157:12
177:23 252:17

pronounce
14:8 97:13
179:17

propane 41:15
41:16

properties
40:13 75:17
86:11 90:20
94:7 96:8

100:25
101:6 107:5
110:22 118:11
120:2 230:6
231:5 232:4
236:15 243:17
252:5 252:5
261:25 262:15
283:7

**property**
25:16 37:12
37:13 37:20
39:15 75:15
80:21 80:24
80:24 84:2
84:5 84:7
84:25 85:4
86:12 86:15
88:18 94:9
94:10 94:11
94:11 94:15
96:7 96:18
97:4 97:8
97:9 98:21
98:25 99:13
99:19
100:23
103:5
110:22
112:6 114:2
117:7
117:15 117:18
117:22
118:2 118:4
120:8
124:23
139:9
168:11 169:25
170:25
171:1 171:6
171:11 171:12
176:16
187:8
187:19 229:24
229:25 230:15
231:3
231:13 231:15
231:19 232:16

232:19 235:15
236:12 236:20
237:7
240:15
243:3
250:18
251:4 258:17

**propose** 62:21

**prostate** 32:16

**protect** 43:12
154:13

**protected**
248:10

**protested** 162:6

**protesting** 13:3

**prove** 133:8
133:12

**provide** 55:5
58:2 59:8
219:13

**provided** 222:5

**provides** 281:10
283:1

**prudent** 121:9

**pull** 153:22

**pump** 135:3

**pumps** 27:9

**purchase**
88:12
118:11 119:24
119:25 139:20
183:22 238:19
238:20 245:17

**purchased**
29:5 77:24
88:9 96:2
122:1
156:10 156:12
156:22
157:1
237:20
238:2 260:21

**purchases** 88:10

**purports** 224:6

**purpose** 63:16
63:24 79:1

**purposes** 208:24
241:14 241:17

**putting** 55:12
55:15 56:19
64:15 66:17
107:21 184:22
224:19

─────────

Q

**qualified**
213:21

**quantity** 122:15
122:19

**quarry** 71:21
71:23 72:1
95:6 112:4
121:21
132:9 135:2
139:1 139:5
142:3
144:10 151:11
152:1
164:10
169:8
211:11
215:8
261:16 270:19
275:14

**question** 12:7
52:7 56:10
59:3 69:2
69:3 74:18
110:14 148:23
168:25
169:5 169:5
169:6
169:12 169:21
175:8 180:2
180:20 193:24
194:8 194:11

200:5
209:15 226:19
227:12 244:16
248:5 275:23

**questions**
12:1 16:8
18:25 19:3
19:17 52:4
69:6 89:19
104:18 165:19
194:2 214:1
223:3 269:5
285:4 285:5

**quick** 9:24 16:7
46:5 58:18
67:7 193:15

**QuickBook** 248:8
248:19

**QuickBooks**
42:15 42:19
42:21 44:20
46:5 46:8
46:13 47:2
127:16
201:5 248:4
248:5 249:5

**quickly** 82:4

**Quincy** 99:20

**quit** 43:8 64:15
188:13 205:11

**quite** 212:8

─────────

R

**rail** 156:16
156:17 192:3

**raise** 10:15

**raised** 239:25
284:14

**raising** 92:19

**ran** 31:4 100:20
103:10 145:20
250:9

**ranch** 79:10

106:9 251:13

**Range** 82:9

**rather** 150:18
156:20 185:16
262:16

**ratification**
278:3

**RB&J** 112:20

**RBJ** 112:23

**re** 9:8

**reach** 174:9

**reading** 75:6

**reads** 235:17
282:3

**ready** 127:14
164:4

**real** 20:20
33:23 58:18
69:20 75:12
106:23 187:19
193:15 214:15
250:20
251:3 255:5

**realize** 55:6
62:18

**realized** 119:25
188:9

**really** 20:18
21:20 33:6
54:19 56:20
67:9 83:6
92:15 97:20
147:17 158:21
166:25
207:4 210:3
210:7
210:10 270:21
274:5 279:4
280:15 286:25

**reason** 53:12
64:11 68:14
76:14 78:20

84:4 92:8
114:11 118:16
120:9
129:17
143:7
144:16
168:1
172:12 182:13
182:20 183:15
183:17
209:7 222:2
277:11

**reasonably**
126:17

**recall** 15:3
15:23 16:5
17:24 18:3
75:23 85:16
97:18 106:2
113:6 141:5
145:19 217:19
236:12
238:1
255:11 258:10
260:3

**receipts**
179:8 211:3
212:11

**receivable**
227:1 227:16

**receivables**
201:19

**receive**
109:23 110:17
134:4 160:7
256:24 256:25
285:16

**received** 39:4
39:22 43:25
52:21 90:24
109:24
110:7
110:10 111:24

**receiving** 55:19
108:3

110:13 110:16
174:22 196:18
220:2

**recent** 15:2
119:11

**recess** 62:3
132:6 186:4
212:18 225:21

**reckon** 16:23

**recognize** 235:7
235:14
242:7 278:2
278:6

**recollection**
51:20 245:16

**reconciliation**
146:20

**record** 9:13
9:25 10:5
11:2 13:4
17:4 18:25
51:5 60:10
61:1 62:2
80:4 132:4
186:3 186:5
212:15 212:19
225:20
269:1
285:14 287:5

**recorded** 225:4

**recording** 10:5

**records** 40:20
46:13 48:3
48:7 48:13
48:18 48:19
49:2 49:12
49:23 50:1
50:5 50:8
50:17 50:23
51:4 78:16
80:5 105:24
113:25 116:20
116:21 116:22
116:23 117:13

117:14 118:20
119:4
119:15
120:7
120:14 120:16
120:17 122:14
122:17
124:2
126:18 126:22
126:24 129:16
146:24 179:25
202:9 225:8
247:8
247:12
260:1
269:18 269:19
270:16 270:16

**recreation** 51:6

**red** 258:1

**re-discuss**
55:11

**reduced** 241:21

**refer** 102:1

**referred** 75:11

**referring**
13:5 15:13
59:4 76:20
85:19 85:23
87:15 87:17
89:11 95:2
97:22 237:16

**refers** 77:9

**reflect** 106:1
109:10

**reflected**
107:24
247:8 247:12

**refresh**
144:13
220:8 278:24

**refused** 232:20

**refusing** 194:8

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0391

refute 225:10

regarding 277:5

register 155:1

registered
176:6

regular 149:3

reimburse 94:17
246:14

reimbursed
94:16
110:23 111:6

reimbursements
168:18

reimbursing
246:20

related 149:2
231:17 234:14

relationship
19:14 19:19
20:1 20:6
20:11 20:16
20:24 21:7
22:18 55:22

relatives 50:16

released
51:24 141:5
231:21 257:3

relied 67:16
67:19 145:25

rely 67:22 79:6
286:5

remain 118:1
119:18 254:1

remember 15:5
15:20 16:1
16:4 17:15
18:9 18:13
25:12 26:11
27:19 36:11
41:15 43:20
49:14 49:16
73:23 75:19

88:5 90:3
94:23 98:5
99:2 110:7
110:13 110:15
110:16 111:21
112:16 112:19
113:4
113:19 131:16
157:1 157:9
158:13 163:13
168:21 168:24
170:23 170:25
179:24
180:1
182:14 188:12
193:2 205:5
205:16 205:18
205:19
206:4
207:19
213:8 215:9
215:12 218:22
219:16
220:2
221:15 221:19
221:19 221:22
221:22 221:24
222:2
230:17 230:20
230:25 232:14
234:10
236:3 239:1
239:10
241:8
245:22
248:2
248:17
249:4 249:6
254:22
255:4 256:9
256:12
257:5
263:13 275:15
278:8
279:19 279:23
280:2 281:20

remembered
65:18

remembers 58:15

Remind 60:24

remit 244:18

remodel 196:1

remote 45:7
45:11

removal 121:23

remove 124:13
125:1 125:2
125:4
125:13 126:1

removed
121:12 122:15
122:15 122:19

renege 283:7

renegotiated
135:22 135:22

rent 75:9 75:16
75:18 77:7
107:7 107:11

rental 107:4

repaid 94:23
152:17 174:21

repair 48:24

repay 94:22
239:2

repaying 150:23

repayment
140:24

repeat 12:8
255:19

report 216:9

reporter 9:22
9:24 10:2
10:4 10:9
10:11 10:13
10:15 10:18
22:11 22:16
61:1 142:19
163:1 167:7
167:11 218:12

218:14 218:17
255:19 255:22
285:24
286:4 286:7
286:12 286:16
286:18 286:22
287:2

reports 25:4
272:3

represent
9:13 9:15
9:16 9:18
75:5 222:21

request 44:4
217:20 219:12

requested 40:16

requests 39:18

required 49:12

requirements
279:13

residence
11:8 11:10
11:12

resign 284:20

respect 35:19
69:18
220:13 257:14
282:23

respectful
223:10

respond 260:10

response
44:12 51:13
52:9 52:13
52:18 219:12

responsibility
145:7

responsive
52:22

rest 62:8 103:9
118:5
118:17 283:14

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0392

restate 12:8

result 136:6
  278:8

retained 140:23

retire 32:12

retirement
  63:19 66:23

return 73:18
  100:4 112:8
  171:16 173:12
  178:20
  183:2
  193:11 203:13
  209:10 209:18
  209:22
  212:1 212:4
  214:10 263:20
  272:8 285:20

returns 40:10
  73:23 74:4
  74:20 75:1
  78:10 78:14
  79:3 183:1
  185:11
  198:7
  208:20 208:21
  209:8 224:4

revenue 24:5
  24:25
  106:15
  107:1 107:3
  107:4
  107:14 107:15
  107:22
  108:3
  111:15 111:16
  111:17 111:24
  112:5 123:6
  168:5 186:9
  192:8
  196:18 213:12
  214:16

revenues 24:4
  256:16

reverse

128:11 129:12
129:18

review 79:3
  201:1 285:9
  285:16

reviewing 45:2

Reviews 279:1

rib 92:12

rich 106:24

Richard 232:25

rid 128:13

Ries 9:16
  9:16 10:13
  10:14 12:19
  12:21 13:21
  38:4 39:8
  39:21 39:24
  39:25 40:3
  40:8 40:17
  40:21 41:3
  41:23 42:1
  42:4 42:6
  42:8 43:8
  43:21 44:1
  44:11 44:15
  44:23 50:24
  51:15 51:20
  51:24 52:4
  52:20 52:25
  53:4 53:5
  56:7 57:4
  57:6 57:8
  57:10 58:5
  58:7 58:10
  58:12 58:14
  60:4 60:12
  60:14 60:18
  60:22 61:3
  61:11 61:13
  62:5 62:12
  62:17 62:24
  63:1 63:6
  68:24 84:13
  84:16 88:23
  89:5 114:18

115:4 115:6
115:11 115:15
116:3 117:6
117:21 119:10
119:20
121:6
126:24
155:3
162:18
163:7
163:11 165:16
165:25
182:5 197:1
198:23
209:8 209:9
210:19
218:5
218:16
221:4 223:6
223:25
224:9
224:11
225:7
226:16
248:7 249:5
263:6
263:10 263:12
264:3 264:6
264:12 264:20
265:8
265:10 265:12
265:14 265:17
266:8
276:20 281:15
281:19 283:21
284:1 284:4
284:25
285:4
285:10 285:13
286:18 286:20
286:25

Ries'll 197:2

rift 223:13

right-hand
  150:11

rights 108:15

rigs 27:8

ring 114:1
  222:23

risk 63:10

road 84:12

robust 199:13

rock 26:6
  46:1 71:21
  95:5 104:8
  107:20 107:21
  107:22
  108:1 112:4
  112:6
  112:15 112:24
  113:5
  114:23 114:23
  115:19 115:21
  115:22 115:25
  116:8
  116:20 117:10
  117:24 119:15
  119:21 120:24
  121:12 121:20
  122:1 122:4
  122:15 122:19
  122:21 122:25
  123:3 123:6
  123:12
  124:9
  124:21
  125:2 125:4
  125:11 125:13
  125:19 125:19
  126:8
  126:19 127:11
  127:20 128:19
  129:18
  132:9 135:2
  139:1 139:4
  142:2 142:5
  144:10 144:23
  145:20 147:23
  151:10 151:25
  152:1
  152:17 164:10
  169:15 190:21

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0393

213:15 213:18
215:7 215:8
250:2 270:1
270:19 272:16
273:6 275:14

**Rodney** 35:11
97:3 97:6
108:17

**Rodney's** 97:8

**rods** 23:15

**role** 70:10
281:19

**room** 14:1 62:14
283:23

**rooms** 284:16

**rope** 27:7

**roughly** 276:12

**round** 111:7
129:1
149:20 182:25

**roustabout** 26:8
139:17 140:9

**roustabouts**
26:5

**Roy** 35:12

**royalties**
123:23
149:9
150:21
152:4
152:18 152:21
169:8
215:10 215:19
257:9 257:9
270:1 272:4
273:6
275:25 276:10

**royalty** 72:8
109:23
112:7
125:18 125:24
126:3 126:7
130:1 130:7

130:20
131:1 131:8
131:14 132:11
132:17 132:19
144:12
147:1 147:4
149:2 149:3
149:13 149:17
149:22 215:22
216:9 216:9
216:14 216:17
216:23 216:24

**Rudas** 19:7
20:22 20:23
20:25 20:25
31:19 31:21
57:23 99:6
278:12 280:11

**rude** 179:18

**ruined** 121:18

**Rukavina** 9:14
9:14 10:7
10:8 10:25
22:17 38:3
38:10 38:11
51:19 52:3
56:9 57:11
58:10 58:13
58:21 59:1
59:2 59:21
59:25 60:6
60:13 60:17
60:20 60:23
61:4 61:9
61:19 61:21
61:23 62:1
62:10 62:15
62:21 62:25
63:3 63:9
63:11 69:4
69:10 70:13
73:22 87:13
89:9 131:22
131:25
132:8
142:20 142:23
146:11 162:21

163:2 163:6
163:9
163:12 167:10
167:12 167:16
172:7
172:10 172:12
172:14
175:6
182:12
183:6
185:24
186:1 186:6
193:14 197:22
199:11 200:24
201:23 203:19
209:21 210:20
212:7
212:20
214:6
214:14
216:5
217:11
218:6
218:11 218:15
218:19 218:21
220:24
221:5 221:7
221:17
223:7 223:9
224:10 224:12
225:12 225:18
225:23 226:18
229:9 235:1
235:6
244:14 255:23
263:3 263:9
264:2
264:10
265:6 265:9
265:11 265:13
265:16
266:5
276:22
277:3 285:2
285:7
285:12 285:14
285:23 285:24
286:2 286:5

286:8
286:14 286:17
286:24 287:3

**rule** 62:6 62:10
62:13 62:23

**run** 41:15 47:17
63:9 100:18
121:1
122:10 141:25
164:13 211:14
257:16 257:16

**running** 87:19
107:19
108:1 108:1
166:18 189:25
257:11 275:14

**runs** 109:16

**rush** 285:7
286:16

_____
S
_____

**safe** 113:18
113:22 255:6

**safes** 253:13

**safety** 207:5

**salary** 158:16
158:24
159:1 159:3
159:4 160:7
161:8 161:22

**sale** 27:5 80:10
82:11 98:16
103:14 103:20
103:23
105:6 106:2
132:23
133:3 133:3
133:24
134:5
134:19 136:19
139:8
169:25
170:1
170:10 170:13

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0394

185:7 185:9
187:11 187:15
187:18
208:2
208:21 213:14
213:18

**San** 100:17

**sat** 54:22
164:20

**satisfy** 121:6

**Saturday**
38:13 53:6
164:21

**save** 213:25
286:24

**saved** 205:24
205:25

**saving** 205:3

**savings**
204:24
205:1 205:5
205:16 205:19

**saw** 38:13 39:20
39:24 40:7
40:8 97:9
114:16
115:3 166:8
220:9 262:6

**scales** 121:25
272:16

**scanned** 223:4

**schedule**
74:11 78:8
171:17 171:18
172:3 172:3
172:3
172:18 174:17
180:13 183:25
184:5
184:19
185:3
203:15 204:11
210:17 214:22
264:1 264:8

264:9
264:11 264:12
265:8

**scheduled** 269:6
276:17

**schedules**
142:24
143:1 156:7
175:2
188:13 190:15
269:7
273:22 276:7

**school** 16:11
16:23 37:9

**scope** 63:4

**screen** 125:21

**second** 18:8
59:21 82:23
146:7
149:25
150:3 150:4
150:6 172:2
183:7
197:18 209:23
210:11 212:15
212:23 217:12
228:14
229:4 230:9
234:23
235:2
235:11 265:15
265:15

**second-to-**
**last** 230:2

**secretaries**
78:18

**secretary**
143:11 147:25
164:12 164:17
168:21

**section** 15:13
37:12 89:12
89:13 93:2
95:12 99:14

99:15 99:16
102:12 102:13
102:20 102:23
112:21 112:22
128:19 169:19
235:17 235:22
235:24
236:8
236:11 236:11
238:13 238:20
239:19 239:20
241:10
245:8 260:7
278:16 278:19

**sections** 236:25
275:15 275:16
275:17

**secure** 47:4
84:24 140:24

**securities**
207:7 207:11

**security** 140:23
141:22
207:8
207:10 207:12

**seeing** 98:3
112:16
220:7
221:20 231:11

**Seems** 222:16

**seen** 38:12 40:6
146:12 167:21
198:1
217:14 222:14
222:15 282:4

**self** 69:24 99:8
104:7
136:12 137:10
246:9

**sell** 26:17
28:16 94:10
103:4 106:3
111:9
125:16
126:2 139:4

232:23 252:5

**sellable** 126:3

**seller** 238:22

**selling** 80:12
123:3
129:10 207:19

**sells** 125:11

**send** 52:8 109:9
130:9
222:23 247:20
285:10 285:11
285:11 285:12
285:25 286:20
287:1

**sense** 181:7

**sent** 53:6
117:10
128:7
130:23 219:15
260:8 270:20

**separate**
27:12
127:16 127:17
241:3 241:10

**separately**
161:15

**September** 38:20
38:25

**septic** 76:16

**serial** 96:11
96:21
253:10 253:12
253:16 253:20

**series** 16:8
77:16
227:22 244:15

**serious** 194:23

**serve** 10:1
39:12

**served** 38:15
38:19

**server** 38:15

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0395

38:18 38:24
39:11 39:14

**servers** 47:18

**service** 16:17
16:18 23:13
27:8 28:18
43:15 47:20
48:25 90:19
91:5 140:10
153:9
153:10 155:15
155:16 157:21
157:22 212:24

**serving** 39:11
39:15

**session** 225:16

**sets** 27:12
27:13
199:17 199:23

**setting** 56:6
210:5

**settlement**
278:4 278:5
284:4

**seven** 11:9
163:6
241:17 241:22
245:23

**Seventeen** 218:9
218:13

**seventh** 172:7

**Seventy-five**
196:8

**several** 79:24
98:17
101:23 101:23
249:19 271:8

**SG&M** 209:10

**SGM** 208:24
209:18 209:24
210:1 210:9
210:12 210:15
211:14 211:19

212:4 213:4
213:8
213:17 250:12
250:17 250:20
251:3 251:8

**shake** 154:18

**shaking** 90:13
127:4

**Shamrock** 11:7
16:11 16:16
34:16 36:16
37:9 108:16
109:6
118:23
176:3 176:7
176:11
261:8 261:9

**shape** 126:1

**share** 33:20
159:9
265:19 266:16
281:15 281:15

**shared** 114:4

**shareholders**
210:15

**sharply** 111:18

**Shawn** 19:7 21:6
21:13 57:19
59:5 61:10
61:11 68:13
163:4 279:17

**S-h-a-w-n** 61:12

**she'd** 160:4
274:2

**sheet** 184:19
185:5
197:24
198:4
198:10 198:13
198:25
199:3
199:13
200:5 200:21

201:7 202:5
226:2 226:3
226:5 226:6
226:9
234:10 253:21
285:18

**sheets** 224:5

**sheriff's**
187:11 187:15
187:18

**Sherwood** 9:18
9:18 10:9
10:10 22:12
22:15 38:6
38:9 39:7
58:3 58:6
58:18 58:24
59:23 60:2
60:9 61:15
61:20 61:25
70:7 71:1
71:3 87:11
89:7 131:24
132:3
167:15
172:5 172:9
172:11 172:13
185:22 185:25
186:2
201:21 203:18
212:16
214:5 218:8
218:10 220:23
221:13 225:17
234:25
264:4
264:15 264:18
276:25
285:5 285:8

**she's** 19:24
21:15
160:23 213:9

**shipped** 90:24

**Shirley** 22:6

**shop** 45:25

135:3 220:10

**short** 61:24
87:19
107:19 257:11

**shortly** 30:4
161:24

**showed** 40:22
122:8 276:7

**showing**
201:17
202:9 268:20

**shown** 79:24

**shows** 81:20
82:9 146:17
200:5 200:9
212:11
215:1
216:13 216:23
230:10 244:21
269:1

**shuffling** 104:4

**shut** 43:14
107:21

**siblings**
14:15 18:22
19:4 19:6
19:9 19:12
19:15 21:23
66:24 68:12
68:20 69:9
159:10 159:13
243:15 268:22
279:11 279:17
279:20 280:19
280:25 281:25
282:24

**sic** 103:16
169:24 203:20
267:21

**sick** 55:18 60:7

**sides** 265:24

**sign** 28:22
30:13 30:19

30:19 30:19
73:25
122:10 167:23
252:1 252:6
283:6 284:1
284:25 285:6

**signature**
230:21 231:12
284:14

**signed** 28:4
30:20 72:7
74:1 88:20
143:3 168:3
252:2
258:18 258:20
258:22 278:11
278:12 278:12
278:13 278:14
283:16

**significant**
35:4 37:16
51:21 207:19

**signing** 73:23
182:14 230:20
239:1

**similar** 247:2

**simple** 163:16
191:16 253:3

**single** 51:13
225:3

**single-page**
172:1

**single-paged**
184:3

**single-sided**
178:25

**single-space**
172:1

**sir** 10:17 10:21
11:6 11:14
11:21 11:24
12:2 12:9
12:12 12:18
12:20 13:1

13:5 13:11
13:14 13:17
13:22 13:24
14:6 14:11
14:17 14:19
15:5 15:19
15:22 16:4
16:22 17:3
17:6 17:8
18:5 18:15
18:17 19:11
19:13 20:5
21:2 21:25
22:5 22:7
22:14 22:24
23:10 23:19
23:21 23:24
25:18 25:21
26:20 26:22
26:24 27:2
28:10 28:15
28:17 28:18
29:7 29:9
29:16 29:21
29:23 30:11
31:9 32:8
32:11 32:21
32:25 33:7
33:18 33:21
34:2 34:6
34:8 35:3
35:25 36:2
36:7 36:25
37:3 37:14
37:22 37:25
38:12 38:17
38:23 39:2
39:5 39:16
39:19 40:12
40:14 41:5
41:25 42:5
42:8 42:9
42:13 42:20
44:13 45:11
46:6 46:15
46:17 46:23
46:25 47:23
48:1 48:5

48:8 48:15
49:4 49:6
49:8 49:17
49:20 49:24
50:10 50:13
50:18 50:21
51:1 51:23
52:11 52:15
52:19 52:23
53:2 53:8
54:1 54:6
54:8 54:16
55:3 55:7
56:12 56:20
56:22 59:6
59:10 59:13
63:15 63:23
64:1 64:6
64:20 65:2
65:5 65:10
65:13 65:18
66:5 66:12
67:6 67:18
67:21 67:24
68:6 68:17
69:20 71:22
71:25 72:3
72:9 72:20
73:1 73:23
74:1 74:5
74:8 74:11
74:21 75:3
76:5 76:21
77:3 77:6
77:11 77:25
78:2 78:12
79:2 79:5
79:8 79:14
79:18 80:9
80:13 80:19
81:2 81:17
82:8 83:13
83:17 83:19
83:24 84:12
84:15 85:2
85:6 85:8
85:9 85:24
86:8 86:14

86:17 86:22
86:25 87:4
87:16 87:24
89:2 89:8
90:3 90:6
90:14 91:8
91:11 91:19
91:22 91:24
92:1 92:25
93:1 93:6
93:12 93:25
94:3 94:5
94:6 95:10
95:13 95:19
96:5 97:23
98:1 98:7
98:15 98:23
99:11
100:12 101:14
101:18 101:22
101:23
102:9
102:18 103:21
103:25
104:4
104:15
105:7
105:11 105:21
106:1
106:17 106:20
107:6 107:9
107:13
108:6
110:10 111:19
112:3 112:9
112:11 112:15
112:19 112:25
113:12 113:16
113:20 114:14
115:8
115:23
116:6 116:9
116:18 117:12
117:25
118:3 119:6
119:9
119:13 119:16
119:19 122:16

| | | | |
|---|---|---|---|
| 122:20 122:24 | 151:24 152:23 | 174:18 174:25 | 196:25 |
| 123:17 123:24 | 152:25 | 175:7 | 197:7 |
| 124:3 | 153:2 153:6 | 175:10 175:12 | 197:12 197:18 |
| 124:11 124:24 | 153:7 | 175:16 175:18 | 197:23 |
| 126:9 | 153:14 153:15 | 176:15 176:18 | 198:2 198:5 |
| 126:12 126:16 | 153:18 | 176:21 176:23 | 198:16 198:19 |
| 126:20 | 154:3 154:7 | 177:1 177:8 | 199:2 199:7 |
| 127:1 | 154:11 154:14 | 177:10 177:24 | 199:18 199:22 |
| 128:12 129:20 | 154:23 | 177:25 | 199:25 |
| 130:2 | 155:4 155:6 | 178:3 178:5 | 200:3 |
| 130:19 130:24 | 155:13 155:24 | 178:7 | 200:16 200:19 |
| 131:9 | 156:1 156:8 | 178:14 178:18 | 201:6 |
| 131:12 131:15 | 156:11 157:15 | 178:21 | 201:12 201:14 |
| 131:18 131:21 | 157:17 | 179:4 179:7 | 202:1 202:9 |
| 132:12 132:21 | 158:2 158:3 | 179:10 179:13 | 202:16 202:19 |
| 132:24 | 158:6 158:9 | 179:21 | 203:2 203:7 |
| 133:5 | 159:8 | 180:7 | 203:12 203:21 |
| 133:15 134:11 | 159:11 159:14 | 180:15 180:21 | 203:24 |
| 134:22 134:25 | 159:17 159:20 | 181:4 181:6 | 204:2 204:4 |
| 135:6 | 159:22 159:25 | 181:9 | 204:7 |
| 135:24 | 160:10 160:12 | 181:15 181:21 | 204:10 204:19 |
| 136:5 136:8 | 160:15 160:17 | 181:25 | 205:15 |
| 136:20 136:23 | 161:7 | 182:7 182:8 | 206:8 |
| 137:6 | 161:12 161:19 | 182:16 182:18 | 206:24 |
| 137:20 137:25 | 161:23 | 182:22 | 207:4 207:6 |
| 138:22 138:25 | 162:3 162:9 | 183:7 | 208:1 |
| 139:3 139:6 | 162:17 163:19 | 183:14 183:16 | 208:12 208:22 |
| 139:11 141:21 | 164:12 164:22 | 183:24 184:10 | 209:22 209:25 |
| 141:25 | 165:2 | 184:11 184:20 | 210:24 |
| 142:7 | 165:21 | 184:23 | 211:4 211:6 |
| 142:11 | 166:9 | 185:2 | 211:12 211:24 |
| 143:1 143:2 | 166:20 166:22 | 185:10 185:17 | 212:13 213:16 |
| 143:5 | 167:5 | 185:20 186:25 | 213:23 214:20 |
| 143:14 143:16 | 167:15 167:20 | 187:3 187:6 | 215:3 215:6 |
| 143:20 | 167:21 167:22 | 187:9 | 216:6 |
| 144:7 144:9 | 167:25 | 187:12 | 216:11 216:12 |
| 144:15 144:24 | 168:4 | 188:3 | 216:19 216:21 |
| 144:25 | 168:13 | 188:16 188:25 | 216:25 |
| 145:4 | 169:4 | 189:7 189:9 | 217:5 |
| 145:24 | 169:11 169:17 | 190:17 190:19 | 217:22 218:22 |
| 146:1 146:4 | 169:20 170:21 | 191:3 191:6 | 218:25 |
| 146:12 146:13 | 171:18 171:19 | 191:16 192:15 | 219:6 |
| 146:22 146:22 | 171:21 172:22 | 193:6 | 219:10 219:17 |
| 146:25 148:13 | 172:25 | 193:10 193:18 | 219:22 219:25 |
| 148:21 | 173:1 173:7 | 193:21 | 220:1 220:3 |
| 150:3 150:5 | 173:11 173:21 | 194:2 | 220:15 |
| 150:8 | 173:23 | 194:16 194:22 | 222:1 |
| 150:16 150:19 | 174:1 174:5 | 196:3 | 222:10 222:15 |

222:20 222:25
223:1
223:10 223:15
223:18 223:20
223:24 223:25
224:2 224:3
224:4
224:14 224:17
225:6
226:13 226:17
226:24
227:2 227:3
227:6
227:18 227:20
228:2 228:4
228:7
228:10 228:17
228:18 228:20
228:23
229:5
229:15 229:16
229:19
230:3 230:5
230:19 232:25
233:10 233:12
235:8
235:12 235:13
237:6 238:4
238:21 238:25
239:4 239:7
239:20
240:3 240:5
240:11 240:24
241:1
241:12
242:4 242:7
242:23 243:16
243:22 245:10
245:24 246:19
247:4 247:6
247:10 247:23
248:9
248:16 249:13
250:11 251:12
251:19 251:23
251:25 252:20
253:2 253:6
253:18

254:4
254:13
255:8
255:14 255:19
256:1
256:11 256:14
257:4 258:3
258:5 258:6
258:12 258:14
258:15
259:2
259:16 259:21
260:11 260:13
260:15 260:20
260:23
261:1 261:3
261:14 261:20
262:12
263:2 263:3
263:8
263:15 264:24
265:20
266:4 266:7
266:12 266:14
268:16
269:9
269:14 269:22
270:3
270:10 270:18
270:23 270:25
271:3 271:6
271:14 271:17
271:21 271:23
272:1 272:5
272:10
273:2 273:8
273:19 273:24
274:1 274:4
274:11 274:24
275:3 275:9
275:13 275:18
275:22
276:6
276:11 276:15
277:7
277:10 277:12
277:14 277:16
277:18

278:7
278:10 278:13
278:15 278:17
278:18 278:23
279:6 279:9
279:19 279:22
279:25
280:4 280:7
280:10
281:5
281:12 281:17
281:21
282:3 282:7
282:10 282:13
282:16 283:13
283:19
284:2 284:9
285:2
285:14 285:22

**sis** 195:14

**sister** 19:24
20:11 21:6
60:8 61:7

**sit** 50:22

**site** 45:24
45:24

**sits** 176:17
231:1

**sitting** 15:17
15:20 52:16
74:24 81:8
81:12 81:15
84:2 84:4
97:3 97:11
98:20 99:7
101:12 110:14
143:6
153:16 154:16
155:22
157:8 158:5
164:19
168:1 176:1
193:2 259:7

**six** 18:19 18:20
34:20 47:10
95:7 135:12

139:24
180:6 211:20

**size** 256:13

**skip** 269:1

**skirting** 76:22

**slash** 32:7
90:19

**slaughter** 93:14
105:16

**slick** 231:10

**slim** 192:12

**slipped** 156:17

**slow** 82:5

**slowly** 106:3

**small** 168:9
168:16 201:16
262:4

**smaller** 264:7

**smart** 126:18
176:9 248:18

**smartass**
89:18 91:17
120:12 180:3

**smarter** 257:24

**Smith** 18:12
18:14

**soap** 27:8

**Social** 141:22

**socially** 277:19

**sold** 26:19
26:20 26:22
26:25 27:7
32:7 72:9
79:10 79:21
79:25 80:3
80:16 82:10
84:6 84:16
84:17 85:5
87:14 88:23
89:6 94:9

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0399

95:2 95:24
97:18 97:24
98:1 98:2
98:4 98:5
101:16
103:5
103:12 103:17
103:20 104:12
105:16 105:17
105:22 110:21
114:24
118:4
118:22
123:2
124:15 124:17
130:11 130:12
130:19 133:12
139:10 139:14
140:21 140:22
142:5
144:23 147:23
190:21
206:6 207:1
231:2
232:16
233:1 233:2
233:3 236:4
236:25 238:24
242:15 242:17
252:4
275:15 275:16

**sole** 70:4
134:24
161:2 210:12

**solemnly** 10:18

**somebody**
26:15 60:4
118:11
233:1
238:18 270:21
274:6 274:7
286:20

**somehow**
137:23
155:7 155:9
155:9

228:22 247:17

**someone** 31:15
35:10 35:20
35:21 38:22
49:19 77:20
106:8
106:10 115:18
153:22 153:24
170:18 176:22
222:3 233:1
246:10

**Somewhat** 141:15

**somewhere** 38:20
94:18 101:8
113:19
247:8
249:12 260:1

**somewheres**
25:13 54:13
83:13 101:9
253:8

**son** 59:17
133:15 133:20
135:9
135:22
137:1
137:23
138:8
139:25 251:17
258:18 258:22

**son's** 96:15
135:24 141:13
170:24
171:6 171:12

**sorry** 27:21
34:19 58:25
83:24 87:4
91:12 92:4
92:4 99:21
118:18 122:17
125:1
142:20
150:7
162:12 162:15
162:22 165:15
182:4 205:8

218:6
221:11 225:24
237:6
242:20 255:19
265:6 267:8

**sound** 19:3
151:18
191:7
204:13 209:11
209:11
213:5 276:14

**sounds** 31:3
85:13
195:17 243:14
256:3

**source** 272:7

**south** 20:7 94:2
237:13
262:8 262:9
262:10

**Spanish** 96:16

**speak** 179:14

**speaking** 69:5
164:17

**speculation**
56:8 57:10

**spend** 11:11

**spending** 105:13
195:12

**spent** 154:20
195:16 243:24

**split** 64:14
268:15
281:9 282:25

**spoke** 21:10

**spot** 185:22

**spreadsheet**
153:1
167:11 167:13
169:13
272:4 276:1

**Square** 24:7

**stable** 70:15

**stage** 32:16
32:18

**standard** 215:14

**start** 16:18
23:19 27:7
27:18 27:20
28:11 42:10
54:9 118:18
190:4 232:9
234:20 243:18

**started** 14:22
16:17 16:20
21:22 23:7
23:20 24:10
27:6 27:20
28:6 28:25
30:16 31:8
34:3 34:3
36:13 37:5
37:9 43:17
54:3 54:12
54:15 62:16
64:15 64:17
64:18 74:22
87:18 93:8
106:13 108:16
112:14
113:5 114:3
117:2
135:20
140:8
140:12 140:20
140:20 174:22
189:21
190:4 205:3
210:7 211:6
232:11
246:8 251:8
252:19

**starting** 31:13

**state** 9:12 11:1
11:19 16:12
36:1 62:23
100:22 101:2

109:25
110:1
110:19 155:19
157:9 223:3
266:11

**statement**
9:24 13:7
92:3 167:17
173:6 173:9
182:8 185:7
185:7

**statements**
224:1 240:19

**stay** 11:10
11:13 70:11
86:16 104:4
104:5 109:5
117:15 192:13

**stayed** 116:24

**steam** 16:17
16:18 23:8
23:8 23:8
23:13 23:15
23:15 28:18
90:19 91:5
153:9
153:10 155:15
155:16 157:21
157:22 212:24

**steaming** 25:25

**Steiger** 97:22
97:23

**step** 281:19

**Stephen** 9:2 9:8
10:22 11:3
46:13 153:8
153:13 155:15
157:21 157:24
164:9 191:1
229:14 287:6

**stepped**
109:18 109:22
110:6 110:9
156:16

**steps** 40:1
44:16

**Steve** 9:18 38:4
38:7 61:8
144:21 147:22
201:11 201:19
201:24 202:12
204:25 205:21
206:4
227:16 234:25
264:4

**Steve's**
144:21 147:22

**sticky** 221:11

**stipulate** 10:3

**stock** 28:22
28:23 30:20
30:21 30:24
85:22 86:1
86:3 86:10
86:12
207:14 207:15

**stocks** 28:5

**stole** 253:9
253:9

**stolen** 50:5

**stop** 32:12
151:10
188:2 188:5

**stopped** 49:9
74:23
187:14 252:18

**storage** 127:23

**store** 252:14

**stored** 84:11
127:3

**stories** 194:25

**straight**
82:18
100:21
101:2 101:6
149:17 180:25

**street** 85:2

**strip** 142:4
211:10 211:10

**stripped** 145:14

**Stroup** 187:25

**struggle** 24:17

**struggling** 48:9

**stuff** 25:4
29:18 33:12
34:5 35:22
36:3 40:4
43:2 77:13
84:18 84:24
95:21
107:18
113:4 118:5
118:8 118:8
118:12 118:15
120:1
120:22
128:9 135:3
188:15
196:3
198:20
206:2
206:11
210:5
211:24 213:10
221:20 221:21
222:12 241:16
244:24
251:1
275:19 283:9

**stupid** 19:1

**style** 83:15

**subject** 130:3
247:17

**subpoena**
37:24 38:12
38:16 39:3
39:7 39:17
39:22 43:25
44:12 51:4
51:13 52:9

52:13 52:18
52:21 52:25
53:4 260:9

**Suburban**
40:24 51:17

**succeeds** 281:19

**successful**
23:23 34:7

**sue** 160:17
160:18 160:21
182:5

**sued** 224:1

**suffer** 160:24

**sufficient**
275:7

**suggesting**
128:12

**suitable** 219:16

**summarize** 51:10

**summer** 219:1
236:13

**sums** 177:13

**super** 239:11

**supplemental**
189:10

**support** 63:20
157:25 161:22
191:20 194:19
224:20

**supported**
192:10

**supporting**
146:20

**supposed**
56:19 91:2
138:6 138:7
195:23
215:9 242:3
246:22 262:18

**supposedly**
243:17

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0401

**sure** 20:20 32:2
38:19 40:19
42:16 44:3
44:7 44:18
59:13 59:22
69:16 69:20
70:22 71:11
71:13 73:14
73:25 75:12
76:13 78:18
79:17 82:25
89:7 93:19
95:19 96:10
98:22 98:22
99:6 99:24
102:4
103:21
104:3
104:21 104:21
123:21
132:3
132:12 147:25
149:5 156:4
157:11 158:23
168:23 170:18
170:19 177:10
198:8 200:8
206:16 206:25
212:16 213:20
217:15 217:25
219:2
229:23
230:9 231:6
231:22 234:24
235:17 235:18
236:6 236:7
236:11
244:8
245:18 247:18
248:4 248:9
250:15 252:23
254:10
256:8
259:15 270:12
271:9
278:11 283:4

**surrender** 41:3

**surrendered**
40:21

**surrendering**
80:25

**surveyed**
94:11 241:24

**suspect**
114:11 114:12
277:11

**suspended**
256:16
257:5 257:9

**suspicion** 277:5

**SUVs** 116:4

**swap** 233:18

**swapped** 236:23

**swather** 97:12
98:2

**s-w-a-t-h-e-r**
97:12

**swear** 9:22
10:18

**Swindell**
41:11 41:12
41:23 115:7
115:11
116:3 117:6
126:25

**sworn** 10:22

**system** 101:24
102:1
102:15 193:21

**systems** 102:7

---
T
---
**tab** 220:19
220:21
221:2 221:9
222:8

**table** 138:14

**tack** 257:24

**taking** 55:15
56:18 94:2
184:22 204:16

**talk** 12:17
12:19 12:21
12:22 13:21
13:23 13:25
14:4 14:12
14:15 21:16
27:4 27:4
37:23 39:7
49:15 54:11
58:8 72:10
95:14
106:14
107:2
111:14 150:25
165:23 165:25
190:24 211:20
213:21 221:18
255:9 271:10

**talked** 14:13
28:1 28:1
53:5 71:3
71:4 85:20
99:6 110:24
111:15 111:16
133:19
174:6
174:19 196:14
221:15
237:2
247:14 257:17
259:11 259:17
259:24 270:19
271:16
272:6
272:12 277:21
277:23

**talking** 13:20
25:1 25:20
36:9 41:14
58:7 68:25
81:9 90:10
96:14
111:25 117:1

123:14
128:4
142:14 150:10
164:10 164:11
171:4
211:11 243:12
284:16

**talks** 79:9
83:14 85:21
85:22 86:23
87:2 97:12
97:21
104:10 148:19
172:18
175:8
176:21 198:15
198:17 212:24
216:17 219:24
226:25 229:24
264:23 266:15
281:18

**tanks** 93:10
120:1

**Tarbox** 148:1
181:11 182:3

**Tarbox's** 143:11
164:12 168:22
197:6

**tax** 29:17 40:10
73:18 73:23
74:4 74:20
75:1 156:7
171:16 178:20
185:11 193:10
198:7
208:20 208:21
208:24
209:8
209:10
224:4
241:14 241:17
256:13 256:25
272:8

**taxed** 241:19

**taxes** 141:11
189:15 255:25

256:4 262:2
262:14 262:17
262:20

**temporarily**
84:10

**ten** 97:10
123:18 251:25
252:8
252:10 255:16

**tenants** 111:16

**Tennessee** 210:4

**tenor** 256:20

**tens** 98:14

**tenth** 210:18

**term** 54:4
65:1 69:24
69:25 70:2
70:3 72:16
106:19 106:24
112:20 129:12

**terminology**
89:15 93:14

**terms** 71:12
131:16

**terribly** 121:11

**testified** 10:23
51:16 268:21

**testify** 12:11
224:25

**testifying**
40:15

**testimony**
10:3 10:19
58:6 239:5
244:6 275:5

**Texas** 11:7
34:14
217:23
219:5
219:24 261:19

**text** 43:3

**Thank** 22:16
167:13 167:15
179:1 184:6
203:18 226:14
226:16 226:17
235:2
244:11 255:22
263:3
264:17 265:16
276:25
285:2 285:23

**Thanks** 172:9
186:2 221:13

**that'd** 253:2

**That'll**
209:14 209:14

**themselves**
125:12

**thereafter** 54:3

**there'd** 80:4
177:8

**there'll** 285:18

**there's** 25:14
35:22 40:3
47:10 47:14
51:5 51:5
56:17 58:15
59:23 59:23
59:25 60:2
62:18 63:3
63:4 65:18
73:11 75:7
76:1 77:15
79:20 81:10
82:16 83:3
83:6 83:6
83:10 83:15
84:23 85:12
95:22 96:9
96:9 96:13
96:17 96:24
98:17
102:18 103:11
103:11 103:18
104:19 104:19

109:10
110:5 114:9
114:9
118:16 120:17
121:9
127:24 128:12
141:9
167:11 168:10
176:11 176:20
184:9
198:10 202:17
210:3 212:8
216:14 217:17
220:9
220:19 220:21
227:22
228:5 228:8
233:19 236:24
254:2 255:6
260:1 260:1
264:21 264:22
265:5
265:10 265:12
266:9
266:19
267:3 267:3
270:5
275:14 275:20
285:7
286:14 286:15

**they'd** 127:21
130:13 134:15
136:7 245:3

**they'll** 133:8
244:22

**they're** 46:9
49:5 80:4
81:7 81:12
83:8 83:8
83:12 83:21
84:2 84:4
86:14 86:15
105:15 116:22
121:18
127:2
128:22
155:1 155:2

169:9
177:19 182:21
196:25 244:21
244:22
253:8 254:4
261:20 265:22

**They've** 139:23

**thick** 141:2

**thin** 163:8

**third** 103:4
107:7
112:23
126:2 150:8
230:12

**Thomas** 60:20

**thousand**
98:13
192:14
196:8
201:15 240:7

**thousands** 98:14

**threw** 117:2

**throw** 38:3

**thrown** 50:19

**Thursday** 164:21

**ticket** 121:21

**tied** 114:20
127:6

**tight** 87:18
92:15

**til** 24:7
33:22 66:1
66:2 118:21
240:10

**timesheets**
274:3

**Tindal** 94:7
94:14
232:20 232:24
233:6 252:4

**title** 94:10

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0403

157:2
259:19 259:20
259:23 260:4

**titled** 156:4
157:3 203:9

**today** 12:11
15:17 15:20
19:20 20:2
20:12 20:14
20:24 21:7
41:17 50:22
52:17 74:24
109:13 110:15
113:11 113:15
124:2
141:14 141:17
141:20
143:6
153:16 155:22
156:16
158:5 168:1
171:12
193:2
222:15 223:25
225:8
225:10 239:12
242:1 263:1
269:5 271:4
271:16
272:3 277:17

**today's** 9:10
10:2 10:5
12:13 13:21

**tomorrow** 161:1

**ton** 82:23
112:18
113:3 126:8
129:9
132:10 132:13
132:20 144:12
144:17

**tonnage** 121:22

**tons** 81:10
122:5
123:12 130:19

130:20

**top** 60:3
74:16 74:17
87:4 87:5
87:5 87:6
143:14 143:16
143:20 172:10
176:20
179:3 179:9
198:15
226:6 264:7

**topic** 15:3
197:18 228:24

**top-level** 23:25

**tornado** 50:9

**total** 130:16
227:24

**towards** 193:4
195:7
216:13 240:25
241:1

**town** 90:22 93:2

**Traci** 19:7
20:12 60:6
280:12

**track** 47:16
122:13
181:1 230:4
230:4 230:9
235:22
236:8
236:10 252:24
274:5 275:20

**tracking** 96:24

**tracks** 275:17

**tract** 241:10
242:5

**tractor** 26:14
95:22 96:2
96:7 97:6
97:10 97:22
99:3 99:5
99:8 99:22

99:23 99:23
100:7 101:7
101:16

**tractors**
95:25 96:9
96:13 96:15
96:16 98:17
98:25
170:24 171:5

**tractor's** 96:11
98:22

**trade** 92:21
169:25 234:9

**traded** 78:1
138:4
230:15
231:5
231:12 232:4

**trading** 79:12
94:13

**trailer** 75:23
76:1 76:7
76:9 76:10
77:9 79:21
107:8
121:16 236:18
237:12 241:13

**transacted**
71:21

**transacting**
72:5

**transaction**
88:3 109:18
141:1 208:7
230:16 230:25
231:17
232:1
232:10 237:13
238:1
238:10
252:3
255:15 255:17
255:21

**transactions**

94:25
105:18 105:19
149:1 151:8
197:11 226:10
226:11 226:12
231:19 246:15
255:3
274:16 274:16

**transcript** 16:2
285:17 285:18
286:7
286:13 286:19

**transfer**
29:15 77:19
138:8 180:16

**transferred**
85:4 90:1
251:22
254:9
260:19 261:21

**Transferring**
229:11

**transfers**
168:11 168:17
169:24

**transition**
27:10
185:22 189:24
231:10

**transmission**
100:1

**transmission's**
99:24

**trashed** 85:7

**Trew** 60:25

**tricky** 220:18

**tried** 26:17
65:8 174:9

**triggered**
55:9 147:10

**trivial** 128:15

**trouble** 21:13

NAEGELI
DEPOSITION & TRIAL
CELEBRATING 40 YEARS IN BUSINESS
(800)528-3335
NAEGELIUSA.COM
PAPP 0404

21:15 104:8
107:17 114:24
120:22

**troubles**
57:19 71:15
192:14

**truck** 79:11
82:6 83:3
83:11
121:24
122:5 122:6
123:16 124:16

**trucking** 139:15

**truckload**
125:16

**trucks** 33:10
77:17 77:20
78:7 80:12
83:7 83:12
122:3
122:11 123:11
123:18 124:13
124:15 125:21
127:20 128:6

**true** 51:14
52:17 67:3
67:3 78:21
79:19 80:23
144:24 153:17
155:25
158:4 168:7
177:2 197:7
253:5

**trust** 53:17
53:20 53:23
54:1 54:15
55:22 58:9
63:14 63:17
63:22 63:25
64:3 64:16
64:24 64:24
65:8 71:10
110:3
193:16 193:25
194:1 194:12

229:6
229:10 229:13
237:18 242:16
256:23 257:16
265:3 266:1
266:24 267:18
277:15 278:19
279:4 279:5
280:3 282:5
282:8
282:12 282:15
282:18 282:19

**trusted** 173:22

**trustee** 70:20
70:25 71:10
71:14 89:5
193:16 193:19
193:23
194:1
194:12 263:12
279:24

**trustee's** 13:15

**trusts** 53:18
56:5 56:13
59:11 63:12
64:3 64:7
64:11 65:6
70:21 70:25
194:15 194:15
194:18 268:14
268:18 268:23
279:8
279:12 279:17
279:21 279:24
280:6 280:9
280:12 280:13
280:20 280:23
282:24

**truth** 10:19
10:20 10:20
19:23

**truthful**
78:21 82:20

**try** 39:15
40:1 48:9
71:18 73:15

75:5 88:11
143:20
187:7 221:1
223:10 225:15
232:7

**trying** 14:23
48:10 48:10
55:2 55:5
56:5 57:1
57:16 58:2
58:19 59:8
59:17 69:22
69:22 70:14
89:18 104:6
119:24 120:12
125:8
129:15 133:18
140:13 152:12
165:11
176:9 180:3
192:15 192:24
195:17 195:19
196:21 196:21
196:23 196:24
208:13
214:2
223:11 224:23
248:18 280:17

**tubing** 23:15

**Tulsa** 195:3

**turn** 20:16 48:6
122:22
124:4 153:9
155:16 157:22
190:18 226:3

**turned** 40:16
272:8

**TV** 180:19

**Twenty** 163:6

**Twenty-seven**
162:20

**twice** 195:3

**Twitty** 40:6
41:13 46:2

50:25 76:16
76:22 77:2
77:4 83:21
83:22 83:25
90:23
117:18 117:21
118:2
118:14 118:15
118:20 118:23
118:25
119:5
119:18 119:22
119:24 127:6

**two-page**
218:8 218:19

**two-thirds**
220:19 263:25

**type** 22:23
25:20 29:15
33:12 45:14
246:11

**typed** 148:3
265:2

**types** 107:3

**typewriter**
164:13

**typical** 24:17

**typically** 92:20

**typing** 164:18

—————————
U
—————————

**U.S** 11:9

**Uh-huh** 76:11
227:4

**ultimately**
126:13 196:12

**unanimous**
235:10 235:15
236:3 242:2

**underneath**
102:15

**understand**

11:25 12:7
13:12 15:12
30:14 39:22
43:10 45:5
53:9 55:24
56:16 57:1
57:23 58:12
64:17 66:11
66:16 66:18
66:19 67:8
67:17 67:20
67:22 68:1
68:9 68:10
69:15 71:12
71:13 72:12
73:7 88:4
89:6 89:14
89:17 89:20
89:25 91:9
91:15 91:16
93:4 116:2
120:20 123:21
125:9 136:2
148:23 165:11
180:20 193:21
194:4 194:9
196:24 197:15
211:13 223:25
224:2
243:13 269:12
275:5
283:17 283:20
285:21

**understanding**
12:24 13:2
37:19 47:24
56:2 56:4
56:15 57:15
59:7 63:24
64:2 64:10
65:19 65:23
66:3 66:20
68:5 69:17
72:4 72:17
74:6 81:18
81:24 84:20
89:5 89:21
89:22 95:16

107:10 109:13
124:1
140:16 148:14
161:14
169:2
193:22 194:14
194:17
197:8 200:1
228:22
234:3 251:3
254:5 254:8
258:8 259:8
265:25 268:11
276:1 283:11

**understood**
64:13 64:21
64:23 67:9
70:12 73:6
73:7 102:24
133:18 194:4

**Underwood**
36:6 67:15
133:7 133:10

**unexpected**
193:3

**unfair** 223:16

**University**
16:12

**unless** 147:6
280:13

**unlock** 248:11

**unpaid** 15:24
215:19 255:25

**unprocessed**
125:25

**upon** 55:5 59:8

**upset** 55:9

**urgency** 286:15

**usually**
154:17 286:3

**utilities**
188:15 191:18

---
V
---

**valuable** 255:1

**value** 26:11
84:8 88:12
254:14

**van** 52:1 155:18
156:3 156:6
156:9
156:22 156:24
157:2 157:2
157:5
157:10
162:2 162:5
162:8
163:23
191:4 259:25

**various** 39:18
104:12

**Vasek** 60:21
60:23

**V-a-s-e-k** 60:23

**vehicle** 81:9
81:16 81:19
81:24 82:7
83:11 171:1
258:13

**vehicles**
25:24 77:17
77:20 77:24
78:7 79:24
80:2 81:8
171:11

**vendor's** 235:11
238:12
239:2 239:9

**verbal** 22:15

**verge** 133:19

**Vernon** 35:13

**version** 199:13

**versus** 274:7

**vessels** 23:16

**vest** 72:12
72:13

**v-e-s-t** 72:15

**Vest** 72:15

**vested** 250:18
251:4 251:10

**VIDEOGRAPHER**
9:7 9:22 62:2
62:4 132:4
132:7 186:3
186:5
212:17 212:19
218:13 225:20
225:22 287:5

**videotape** 9:7

**videotaped** 16:6

**view** 187:17

**vintage** 258:1

**visit** 21:17
151:5 194:7

**visited** 12:15
232:11

**visual** 10:6

**Volkswagen**
258:2

**volume** 129:4

---
W
---

**wages** 157:24
158:1 158:7
158:10
160:2 160:5
203:22 246:1

**walk** 38:10
284:22

**warranty** 235:11
238:12 239:1

**wasn't** 24:8
33:7 33:22
41:16 84:21
107:17
111:3 123:2

135:21
145:5
147:12 147:12
159:1
175:15
188:9 189:3
189:3 192:4
219:16
256:4 256:5
270:21 283:3

**waste** 223:22

**wasting** 185:16

**water** 31:25
33:10 93:9
93:10

**waters** 32:1
102:17

**ways** 107:25

**weak** 98:16
106:6

**wealth** 34:1

**Weatherly** 84:23
99:18 99:20
100:3 100:4
100:19 100:20
101:17 110:21
110:24

**Weatherly's**
98:21 99:7
99:10 99:12
101:12 101:15

**we'd** 36:3 41:15
96:21
100:18
126:3
130:11 130:16
147:7
195:22 238:19

**WEDNESDAY** 9:4

**week** 21:4 38:13
196:9 196:10

**weekends** 164:22

**weekly** 123:11

149:9

**weeks** 32:24
143:13

**weighed** 270:20

**weighted** 272:15

**welding** 31:24

**we'll** 37:23
60:13 60:13
61:4 61:4
72:10 73:18
77:12 77:12
165:23 165:25
170:13 197:17
197:18
213:9 223:2
259:15
269:1 287:3

**wells** 72:21
72:22
107:16
108:8
109:12 109:14
112:1 141:22

**we're** 13:3
24:25 48:21
58:7 68:25
71:13 77:13
94:21
127:14 128:25
131:25 142:18
164:10 164:11
183:24 195:11
198:22 209:17
225:14
269:6
269:10 269:17
274:9 281:8
281:9
284:16 284:16
285:25

**west** 34:20
262:10

**we've** 22:23
51:25 51:25
55:13 58:8

58:16 60:12
60:14 60:16
85:13 94:20
96:12
111:15 111:16
119:10 149:14
224:4 224:5
224:5 224:5
225:8
259:16 259:24
263:7
263:11
272:2 272:6
279:3 282:4

**What'd** 162:11

**whatever**
30:18 37:18
37:21 42:8
43:12 50:9
50:23 52:12
53:5 68:14
70:10 86:15
88:6 88:6
88:8 88:9
88:12 88:14
99:5 105:21
105:23
106:2 106:6
107:8
109:19 112:20
113:2
114:25 116:24
121:21 125:18
126:1
129:11 129:16
132:17 132:18
135:4
137:15 137:16
142:1
145:14 151:21
151:22 159:24
180:19 189:25
204:16
206:8 210:6
241:18

**whatever's** 13:6
94:24

184:22 239:19
239:21

**wheat** 100:6
100:7
100:18 102:25
103:2 103:5
103:10

**Wheeler** 34:20

**whenever**
26:21 37:19
40:17 61:20
105:22 106:11
109:17
141:6
151:14 151:15
260:8

**whereby** 157:13

**Where'd** 16:14
177:11

**Where's** 260:6

**WHEREUPON**
38:1 62:3
73:20 132:6
142:21
146:9 167:8
175:4
182:10
183:4 186:4
193:12 197:20
199:9
200:22 209:19
212:5
212:18 214:12
216:3 217:9
225:21
229:7 235:4
244:12
277:1 287:6

**whether** 14:20
23:5 34:3
44:16 48:2
51:3 57:15
64:10 72:4
73:2 74:19
82:7 82:11

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0407

89:25 98:24
102:15
108:7
108:22 109:13
110:7
120:13 127:15
127:22 127:24
128:15 128:16
131:19 138:20
141:5
149:15
155:7
157:12
169:2
169:13 186:15
194:17
209:8
215:10 215:21
222:5
224:24 247:11
247:19 269:23
275:24 284:24
284:24

**whirlwind** 15:6

**white** 81:13
260:24

**whoever** 63:1
88:18 151:4
240:17 281:23

**whole** 10:20
92:7 95:12
122:12 193:21
194:5
256:20 265:21
283:10

**whom** 9:12

**who's** 45:17
60:10
232:24 266:22
266:22
272:7 274:7

**whose** 92:17
261:11

**widower** 17:12

**wife** 17:19

17:25 18:6
18:8 33:20
195:19

**wife's** 18:11

**Wiley's** 258:10

**wintertime**
100:18

**withholding**
256:6

**witness** 9:23
10:17 10:21
22:14 38:5
38:8 51:23
51:25 57:5
57:7 57:9
58:4 58:23
60:6 69:9
70:9 87:12
89:8 162:20
172:6
201:22
218:9
221:14 224:24
226:17 255:21
263:4 264:5
264:13 264:16
264:19
266:7
276:20
285:3 285:22

**wondering** 35:19

**work** 16:13
16:14 16:16
24:8 24:8
26:5 26:9
31:21 31:23
100:5
139:18 141:23
141:25 143:13
159:18
161:3 161:5
161:11 161:15
168:8
244:21 244:24
245:7 245:12

246:1 246:2
246:17 272:20
274:6 274:7
275:21 277:17

**worked** 16:15
23:16 25:4
32:14 37:6
43:23 43:24
156:14 159:21
159:24 160:12
161:6 209:5
248:24
249:1 271:2
271:22 272:18

**working** 24:10
32:6 32:9
32:12 32:13
48:13 50:16
62:1 108:9
116:14
123:3
158:22 164:20
246:11 284:25

**works** 96:16
188:1 286:23

**worried** 136:6
252:25

**worse** 20:17
122:22

**worth** 26:15
26:18 30:9
34:23 83:4
90:8 138:18
140:1
238:16 243:17

**wow** 191:19

**wrap** 225:15

**writing** 146:3
219:24

**written** 102:4
112:10
146:3
153:25 154:4

157:13 157:18
159:15 161:21
163:15 177:22
235:10 235:15
236:4 242:2
253:15

**wrong** 23:5 68:9
128:13
143:7
143:21
171:3
171:14 171:14
200:7
209:11 224:13
268:9

**wrote** 112:11
132:15 134:11
178:14 178:15
190:13 249:11
253:21

---

Y

**yard** 84:6 84:16
84:17 84:19
84:22 85:4
87:2 87:14
87:20 87:23
88:23 89:1
89:15 122:3
127:7
128:19
230:7
230:16
231:1
231:15 231:15
232:10
233:3 233:4
233:7
236:17 236:22
236:23
237:1 237:3
237:10 237:12
237:19 242:5

**Yard's** 236:24

**year-by-year**
24:1

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM

PAPP 0408

**Yep** 10:8
  87:11
  172:16 226:12
  245:25

**yet** 171:19

**you'll** 11:1
  87:7 134:16
  142:16 143:15
  143:16
  146:6
  171:15
  180:7 183:7
  227:25
  243:5 249:8

**Young's** 14:23
  15:2

**yours** 15:23
  38:5 172:7
  172:8 184:3

**yourself** 16:9
  49:23 52:2
  154:18 158:24
  206:20 206:22
  219:20 228:19
  260:21

**you've** 14:20
  130:20 141:23
  167:21 269:20
  271:4

———————————
              Z
———————————
**Zaiontz** 19:8
  61:10 61:15

**Z-a-i-o-n-t-z**
  61:16

**ZAIONTZ** 61:10
  61:12 61:14
  61:16
  162:19 162:25
  163:4

**zero** 173:6
  184:8 184:8

**Zoom** 60:2 60:11

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ NORTHERN _____ District of _____ TEXAS _____

In re    MICHAEL STEPHEN GALMOR
_____
Debtor

_(Complete if issued in an adversary proceeding)_

KENT RIES, TRUSTEE
_____
Plaintiff
v.
GALMOR FAMILY LIMITED PARTNERSHIP
_____
Defendant

Case No.    18-20209-RLJ-7

Chapter    7

Adv. Proc. No.    20-2003

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    MICHAEL STEPHEN GALMOR
_____
_(Name of person to whom the subpoena is directed)_

☒ _Testimony_: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE    Embassy Suites Amarillo<br>550 South Buchanan Street<br>Amarillo, Texas 79101 | DATE AND TIME<br><br>October 20, 2020 at 9:00 a.m. |
|---|---|

The deposition will be recorded by this method:

stenographer and video

☒ _Production_: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See enclosed NOTICE OF SUBPOENA DUCES TECUM TO MICHAEL STEPHEN GALMOR

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    9/11/2020

CLERK OF COURT

OR

_____    _____
Signature of Clerk or Deputy Clerk    _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
LESLIE PRITCHARD
_____ , who issues or requests this subpoena, are:

Davor Rukavina; Munsch Hardt Kopf & Harr, P.C.; 3800 Ross Tower, Dallas, Texas 75201; (214) 855-7587; drukavina@munsch.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored informa... inspection of premises before trial, a notice and a copy of this subpoena must be serve... the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

EXHIBIT
1

DEPONENT NAME:    DATE:
Galmor    3/24/21

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

                              _____

                                    *Server's signature*

                              _____

                                  *Printed name and title*

                              _____

                                  *Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, | § | CASE NO. 18-20210-RLJ-7 |
| INC., | § | |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED | § | |
| PARTNERSHIP and GALMOR | § | |
| MANAGEMENT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

## NOTICE OF SUBPOENA DUCES TECUM TO MICHAEL STEPHEN GALMOR

**TO: MICHAEL STEPHEN GALMOR, 6535 US Highway 83, Shamrock, Texas 79079.**

Leslie Pritchard ("Pritchard"), court-appointed liquidator of the Galmor Family Limited
Partnership ("GFLP") and Galmor Management, L.L.C. ("GM"), defendants in the above styled
and numbered adversary proceeding (the "Adversary Proceeding"), on behalf of herself in a
representative capacity and on behalf of GFLP and GM, hereby serves, pursuant to FED. R. BANKR.
P. 9016 and 7034, and the *Subpoena Duces Tecum* served concurrently hereby, this her *Notice of
Subpoena Duces Tecum to Michael Stephen Galmor* as follows, providing notice to all other parties
in the Adversary Proceeding of the same.

PAPP 0413

## I.    **INSTRUCTIONS**

Pursuant to the attached Subpoena, and unless a different location, time, and method is agreed to, you are to produce the Documents listed in Section III of these Requests, using the instructions listed in Section I of these Requests and the Definitions listed in Section II of these Requests, no later than **October 12, 2020**, at the following:

Munsch Hardt Kopf & Harr, P.C.
Attn: Davor Rukavina
500 N. Akard St., #3800
Dallas, Texas 75201

You are also to a appear for the deposition commanded in the Subpoena. As stated therein, and unless a different location, time, and method is agreed to, the deposition shall be held on **October 20, 2020**, commencing at 9:00 a.m., and shall be recorded by stenographer and videographer, and shall take place at:

Embassy Suites Amarillo
550 South Buchanan Street
Amarillo, Texas 79101

In answering or responding to the Requests that follow, You are required to review all information available to You including, but not limited to, information in the possession of Your attorneys or their investigators or in the possession of Your advisors, agents, or associates, or any information in Your possession, custody, or control. If You are unable to answer or respond to any Request fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state, answer each such Request to the extent that You deem possible, specify the portion of such Request that You claim You are unable to answer fully and completely, and state the facts on which You rely to support Your contention that You are unable to answer that Request fully and completely.

PAPP 0414

Documents that are responsive to the Requests must be produced as they are kept in the ordinary course of business or organized and labeled to correspond with the categories of Documents described herein.

Whenever a Request calls for a Document that is not available to You in the form requested but which is available in another form or can be obtained at least in part from another form, You must so state and either supply the information requested in the form in which it is available or supply the data from which the information requested can be obtained.

If the original of any Document has, to Your knowledge, been destroyed or lost, set forth the content of the Document, the date on which it was lost or destroyed, the procedures and authority under which it was destroyed, and the identity of the last known custodian of such Document prior to its destruction.

If, to Your knowledge, any Document responsive to these Requests was, but no longer is, in Your possession, custody or control, set forth the manner and circumstances under which it left Your possession, custody and control and the document's present, or last known, location.

All Documents that relate or respond, in whole or in part, to any of the Requests or the subject matter thereof shall be produced in their entirety, including all attachments and enclosures. All copies of all such Documents (including drafts of such Documents) that have handwritten or other notations, comments, underlining, or marks of any kind also shall be produced in their entirety, without abbreviation or reduction.

All uses of the conjunctive should be interpreted as including the disjunctive and vice versa. Words in the singular should be interpreted as including the plural and vice versa. Words of one gender should be interpreted as including the other gender.

These Requests are continuing in nature and require supplementary responses if You or Your attorney obtain information that reveals that Your responses were incorrect or incomplete when made or that Your responses are no longer correct or complete.

Unless instructed differently in the Requests, the Requests shall extend in time from April 1, 2013 through May 1, 2020.

## II.   DEFINITIONS

"And" means "or/and."

"Communication" means any exchange or transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether written or oral, including, but not limited to, any Documents or exchanges of information in conversation (both face to face and telephonic) and correspondence.

"Document(s)" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes writings of every kind, source, and authorship, both originals and/or all non-identical copies thereof, in Your possession, custody, or control, or known by You to exist, irrespective of whether the writing is one intended for or transmitted internally by You, or intended for or transmitted to any other Person or entity, including, without limitation, any government agency, department, administrative entity, or personnel.  The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.  For purposes of illustration, and not limitation, the term shall include: correspondence; transcripts of testimony; letters; notes; reports; appraisals; papers; files; books; other communications sent or received; diaries; calendars; logs, notes, or memoranda of

PAPP 0416

telephonic or face-to-face conversations; drafts; work papers; agendas; bulletins; notices; circulars; announcements; instructions; schedules; minutes, summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews, or telephone conversations; bills, statements, and other records of obligations and expenditures; canceled checks, vouchers, receipts, and other records of payments; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; analyses; statements; interviews; affidavits; printed matter (including published books, articles, speeches, and newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; parts lists; memoranda of all kinds to and from any Person, agency, or entity; evaluations, advice, recommendations, commentaries, conclusions, studies, tests, manuals, procedures, data, reports, and results; records of administrative, technical, and financial actions taken or recommended; and all other writings, the contents of which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested

"Each," "any" and/or "all" mean "each, any, and all."

"GFLP" means the Galmor Family Limited Partnerhip.

"GF" means the Galmor Family Trust.

"GM" means Galmor Management, L.L.C.

"Person" means all individuals and entities, and shall be deemed to include natural persons, firms, partnerships, limited partnership, associations, organizations, joint ventures, corporations, professional corporations, affiliates, and any legal or government other entity or association.

"Relate or refer," "relating or referring," mean in any way to comprise, constitute, describe, discuss, evidence, identify, memorialize, reflect, support, refute, make a statement about, deal with, consist of, refer to, relate to, pertain to, or being in any way logically or factually connected with, in whole or in part, the subject matter of the discovery Request.

PAPP 0417

"You" and "Yours" means Michael Stephen Galmor and includes any agent acting on your behalf.

## III.   DOCUMENTS FOR PRODUCTION

### REQUEST NO. 1

All bank statements of the GFLP or the GM or the GFT.

**RESPONSE:**

### REQUEST NO. 2

All credit card or other charge or other revolving account invoices of the GFLP or the GM or the GFT.

**RESPONSE:**

### REQUEST NO. 3

All Documents and Communications related to any debt, including any bank debt, whether unsecured or secured, of the GFLP or the GM or the GFT, including any promissory note and deed of trust, and including any Documents and Communications related to the payment of any of the same by any Person.

**RESPONSE:**

### REQUEST NO. 4

All Documents and Communications related to the transfer of any property of the GFLP or the GM or the GFT to you or to any spouse, child, or other relative of yours.

**RESPONSE:**

### REQUEST NO. 5

All Documents and Communications related to the transfer of any real property from the GFLP or the GM or the GFT.

**RESPONSE:**

**REQUEST NO. 6**

     All Documents and Communications related to any income generated or earned by the FGLP or the GM or the GFT from third parties, including for grazing rights or for mineral or rock extraction, and including any lease or other agreement related to or evidencing the same.

     **RESPONSE:**


**REQUEST NO. 7**

     All bank statements held in your name, or with respect to which you were a signatory, between May 1, 2014 and October 1, 2018.

     **RESPONSE:**


**REQUEST NO. 8**

     All credit card statements for credit cards held in your name, or with respect to which you were an authorized user, between May 1, 2014 and October 1, 2018.

     **RESPONSE:**


**REQUEST NO. 9**

     Customary books and records of the GFLP or the GM or the GFT, including balance sheets, general ledgers, income statements, profit and loss reports, and the like.

     **RESPONSE:**


**REQUEST NO. 10**

     Documents and Communications related to any sale or removal of any minerals or rocks, sand, or gravel, extracted from any property owned by the GFLP or the GM or the GFT, including any sales or transfers from any rock, sand, or gravel quarry owned or operated or used by the GFLP or the GM or the GFT, including: (i) Documents and Communications related to the amount of any such minerals or rocks removed; (ii) contracts or agreements with third parties related to such removal, including pricing; (iii) invoices or bills related to such removal; and (iv) Documents and Communications evidencing where any funds in exchange for the same were paid into.

     **RESPONSE:**

PAPP 0419

**REQUEST NO. 11**

Documents and Communications related to the purchase of, sale of, other transfer or disposition of, lease of, of gift of any vehicle, machinery, or equipment by the GFLP or the GM or the GFT.

**RESPONSE:**

**REQUEST NO. 12**

Documents and Communications related to any mineral interests, including oil and gas interests, of the GFLP or the GM or the GFT, including related to any funds received or paid on account of the same, any JIBs, any leases, any royalties, and any sales, transfers, or other dispositions thereof.

**RESPONSE:**

**REQUEST NO. 13**

Tax returns filed by you or by your spouse, or by any entity which you controlled.

**RESPONSE:**

**REQUEST NO. 14**

Documents and Communications related to the real property you scheduled on your Schedules (including oil wells and mineral interests), including: (i) any deeds by which you acquired or transferred any interest in the same; (ii) any promissory notes, deeds of trust, or mortgages regarding any loan related to the same; (iii) any payoff statement or release of lien related to the same; (iv) payment of any monthly installment, balloon payment, or other debt or mortgage payment related to the same; and (v) real property tax assessments and payment of real property taxes related to the same.

**RESPONSE:**

PAPP 0420

**REQUEST NO. 15**

Documents and Communications related to the $1,310,807.00 you list in your Schedules as owed to you by "Galmor Family Limited Partnership," including: (i) any promissory note evidencing the same; (ii) any other agreement or contract related to the same; (iii) any invoice, bill, or receipt related to any funds advanced on behalf of said entity; and (iv) any check, invoice, credit card receipt or other Document evidencing the payment of any debt or obligation thereof by you.

**RESPONSE:**

**REQUEST NO. 16**

Documents and Communications related to the $2,470,135.03 you list in your Schedules as owed to you by "Galmor's/G&G Steam Service, Inc.," including: (i) any promissory note evidencing the same; (ii) any other agreement or contract related to the same; (iii) any invoice, bill, or receipt related to any funds advanced on behalf of said entity; and (iv) any check, invoice, credit card receipt or other Document evidencing the payment of any debt or obligation thereof by you.

**RESPONSE:**

**REQUEST NO. 17**

Documents and Communications between you, on the one hand, and Kent Ries, Trustee, on the other hand. Note that the foregoing (as well as all other Requests) includes any communication between an agent or attorney of yours and Mr. Ries.

**RESPONSE:**

**REQUEST NO. 18**

Tax returns, including franchise tax returns, and any documents submitted to the Texas Railroad Commission, filed for the GFLP or the GM or the GFT.

**RESPONSE:**

**REQUEST NO. 19**

Appraisals of any real or personal property of the GFLP or the GM or the GFT.

**RESPONSE:**

Dated at Dallas, Texas this 11th day of September, 2020.

MUNSCH HARDT KOPF & HARR PC

By: _____

Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 North Akard St.
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR LESLIE
PRITCHARD**

**2017 Partnership Return**
prepared for:

**GALMOR FAMILY LTD PARTNERSHIP**
PO BOX 349
SHAMROCK, TX 79079

**P K & Company PLLC**
1000 N. Main, P.O. Box 1728
Elk City, OK 73648



EXHIBIT

2

DEPONENT NAME: Galmor     DATE: 3 /24/21

**P K & COMPANY PLLC**
**1000 N. MAIN, P.O. BOX 1728**
**ELK CITY, OK 73648**
**(580) 225-8877**

August 30, 2018

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

Dear Client:

Your 2017 Federal Partnership Income Tax return will be electronically filed with the Internal Revenue Service upon receipt of a signed Form 8879PE - IRS e-file Signature Authorization.  No tax is payable with the filing of this return.

Please call if you have any questions.

Sincerely,

KELLYE L FUCHS, CPA

**12/31/17**

# 2017 FEDERAL DEPRECIATION SCHEDULE

**PAGE 1**

2388

## GALMOR FAMILY LTD PARTNERSHIP

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP. DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RENTAL REAL ESTATE - RENTAL REAL ESTATE | | | | | | | | | | | | | | |
| 70 | RENT HOUSE IMPROVEMENTS | 12/15/09 | | 11,050 | | | | | | | 11,050 | 2,831 | S/L MM 27.5 | .03636 | 402 |
| 87 | 2005 CLAYTON MOBILE HOME | 5/02/11 | | 18,049 | | | | | | | 18,049 | 15,632 | 200DB HY 7 | .08930 | 1,612 |
| 91 | TWITTY - SEPTIC | 5/09/11 | | 5,300 | | | 5,300 | | | | 0 | | 150DB HY 15 | | 0 |
| 92 | IMPROVEMENTS - BARTLETT | 5/10/11 | | 2,559 | | | 2,559 | | | | 0 | | S/L MM 27.5 | | 0 |
| 93 | SKIRTING - TWITTY | 6/11/11 | | 1,000 | | | | | | | 1,000 | 1,000 | 200DB HY 7 | .08930 | 0 |
| 111 | RENT HOUSE IMPROVEMENTS | 9/24/14 | | 22,333 | | | | | | | 22,333 | 1,861 | S/L MM 27.5 | .03636 | 812 |
| 119 | NEW A/C UNIT | 8/09/16 | | 4,217 | | | 2,109 | | | | 2,108 | 29 | S/L MM 27.5 | .03636 | 77 |
| | TOTAL | | | 64,508 | | 0 | 0 | 9,968 | 0 | 0 | 54,540 | 21,353 | | | 2,903 |
| | BUILDINGS | | | | | | | | | | | | | | |
| 122 | STORAGE BUILDING | 2/28/17 | | 3,000 | | | | | | | 3,000 | | 200DB HY 10 | .10000 | 300 |
| | TOTAL BUILDINGS | | | 3,000 | | 0 | 0 | 0 | 0 | 0 | 3,000 | 0 | | | 300 |
| | TOTAL DEPRECIATION | | | 67,508 | | 0 | 0 | 9,968 | 0 | 0 | 57,540 | 21,353 | | | 3,203 |
| | FORM 1065, SCHEDULE F - CATTLE & WHEAT | | | | | | | | | | | | | | |
| 59 | HOUSE - 592 | 10/15/08 | | 5,000 | | | | | | | 5,000 | 1,494 | S/L MM 27.5 | .03636 | 182 |
| | TOTAL | | | 5,000 | | 0 | 0 | 0 | 0 | 0 | 5,000 | 1,494 | | | 182 |
| | AUTO / TRANSPORT EQUIPMENT | | | | | | | | | | | | | | |
| 40 | 08 KING RANCH PICKUP | 3/31/08 | 6/15/17 | 66,333 | | | | | | | 66,333 | 66,333 | 150DB HY 5 | | 0 |
| 41 | 97 INTL GRAIN TRUCK | 4/01/08 | | 10,500 | | | | | | | 10,500 | 10,500 | 150DB HY 5 | | 0 |

**12/31/17**  **2017 FEDERAL DEPRECIATION SCHEDULE**  **PAGE 2**

27-4132388

## GALMOR FAMILY LTD PARTNERSHIP

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP DEPR | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | 01 FORD 1 TON PICKUP | 9/30/08 | | 8,233 | | | | | | | 8,233 | 8,233 | 150DB HY | 5 | | 0 |
| 53 | 09 CPS BELLY DUMP TRAILER | 10/21/08 | 1/31/17 | 31,100 | | | | | | | 31,100 | 31,100 | 150DB HY | 5 | | 0 |
| 54 | 05 FORD DUALLY | 7/17/08 | | 38,240 | | | | | | | 38,240 | 38,240 | 150DB HY | 5 | | 0 |
| 55 | 03 LINCOLN NAVIGATOR | 8/14/08 | 1/15/17 | 47,140 | | | | | | | 47,140 | 47,140 | 150DB HY | 5 | | 0 |
| 58 | GMC GRAIN TRUCK | 2/26/08 | | 1,500 | | | | | | | 1,500 | 1,500 | 150DB HY | 5 | | 0 |
| 76 | 2010 WHITE JEEP | 2/03/10 | | 23,231 | | | | 11,616 | | | 11,615 | 11,615 | 150DB HY | 5 | | 0 |
| 82 | 91 FORD FUEL TRUCK | 2/25/10 | | 2,200 | | | | | | | 2,200 | 2,200 | 150DB HY | 5 | | 0 |
| 94 | 2006 JEEP | 7/07/11 | 1/01/17 | 22,500 | | | | | | | 22,500 | 22,500 | 150DB HY | 5 | | 0 |
| 95 | 98 GMC YUKON | 6/04/11 | 1/01/17 | 3,500 | | | | | | | 3,500 | 3,500 | 150DB HY | 5 | | 0 |
| 96 | TRAILER | 6/30/11 | | 1,000 | | | | | | | 1,000 | 817 | 150DB HY | 7 | .12250 | 123 |
| 98 | KUBOTA MULE | 5/15/12 | 6/01/12 | 15,998 | | | | | | | 15,998 | 15,998 | 150DB HY | 7 | .12250 | 0 |
| | TOTAL AUTO / TRANSPORT EQUIP | | | 271,475 | | 0 | 0 | 11,616 | 0 | 0 | 259,859 | 259,676 | | | | 123 |
| | BUILDINGS | | | | | | | | | | | | | | | |
| 65 | CONE STYLE GRAIN BINS | 6/15/09 | | 5,819 | | | | | | | 5,819 | 3,242 | 150DB HY | 15 | .05910 | 344 |
| 72 | BARN - BRADLEY LAND | 11/12/10 | | 5,000 | | | | | | | 5,000 | 2,492 | 150DB HY | 15 | .05900 | 295 |
| 80 | GRAIN BINS | 1/18/10 | | 6,635 | | | | 3,318 | | | 3,317 | 1,653 | 150DB HY | 15 | .05900 | 196 |
| 90 | MOBILE HOME - 592 | 5/02/11 | | 17,049 | | | | | | | 17,049 | 15,440 | 150DB HY | 7 | .12250 | 1,609 |
| 114 | BUILDING REPAIRS | 9/11/15 | | 4,532 | | | | | | | 4,532 | 213 | S/L MM | 27.5 | .03636 | 165 |
| | TOTAL BUILDINGS | | | 39,035 | | 0 | 0 | 3,318 | 0 | 0 | 35,717 | 23,040 | | | | 2,609 |
| | IMPROVEMENTS | | | | | | | | | | | | | | | |
| 1 | BARN | 8/01/90 | | 1,200 | | | | | | | 1,200 | 1,200 | S/L HY | 15 | | 0 |
| 4 | STOCK PENS | 3/21/01 | | 5,433 | | | | | | | 5,433 | 5,433 | 150DB HY | 5 | | 0 |
| 9 | STOCK PENS | 3/27/03 | | 6,140 | | | | | | | 6,140 | 6,140 | 150DB HY | 5 | | 0 |

PAPP 0426

# 2017 FEDERAL DEPRECIATION SCHEDULE

**12/31/17**

**PAGE 3**

**27-4132388**

### GALMOR FAMILY LTD PARTNERSHIP

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/ BONUS/ SP. DEPR | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | CATTLE PENS | 1/31/06 | | 3,690 | | | | 3,690 | | | 0 | 0 | 150DB HY | 5 | | 0 |
| 17 | CATTLE PENS | 3/31/06 | | 1,799 | | | | 1,799 | | | 0 | 0 | 150DB HY | 5 | | 0 |
| 24 | FENCE - EMERITT PL | 5/31/07 | | 21,657 | | | | | | | 21,657 | 21,657 | 150DB HY | 7 | | 0 |
| 25 | CATTLE PENS - EMERITT PL | 5/31/07 | | 4,130 | | | | | | | 4,130 | 4,130 | 150DB HY | 7 | | 0 |
| 48 | CONCRETE FOR WATER TANKS | 10/31/08 | | 3,482 | | | | 3,482 | | | 0 | | 150DB HY | 7 | | 0 |
| 51 | CATTLE PENS | 11/30/08 | | 7,625 | | | | 7,625 | | | 0 | | 150DB HY | 7 | | 0 |
| 66 | FENCE | 3/06/09 | | 11,430 | | | | | | | 11,430 | 11,430 | 150DB HY | 5 | | 0 |
| 68 | FENCE | 8/07/09 | | 2,610 | | | | | | | 2,610 | 2,610 | 150DB HY | 7 | | 0 |
| 69 | GRAVEL | 3/30/09 | | 10,673 | | | | 5,337 | | | 5,336 | 2,973 | 150DB HY | 15 | .05910 | 315 |
| 78 | FEED STORAGE | 5/21/10 | | 4,612 | | | | 2,306 | | | 2,306 | 2,163 | 150DB HY | 7 | .06120 | 143 |
| 81 | FENCE | 9/29/10 | | 3,325 | | | | 3,325 | | | 0 | | 150DB HY | 7 | | 0 |
| 85 | STORAGE - 592 | 5/19/11 | | 2,241 | | | | 2,241 | | | 0 | | 150DB HY | 4 | | 0 |
| 88 | FENCE - BRADLEY | 5/11/11 | | 12,054 | | | | 12,054 | | | 0 | | 150DB HY | 7 | | 0 |
| 89 | OFFICE FURNITURE | 3/15/11 | | 2,239 | | | | 2,239 | | | 0 | | 150DB HY | 7 | | 0 |
| 103 | FENCE | 9/26/13 | | 2,974 | | | | 1,487 | | | 1,487 | 848 | 150DB HY | 7 | .12250 | 182 |
| 105 | FENCE | 3/29/14 | | 2,700 | | | | 1,350 | | | 1,350 | 673 | 150DB MQ | 7 | .12160 | 164 |
| 106 | SUBMERGIBLE PUMP | 8/07/14 | | 4,356 | | | | 2,178 | | | 2,178 | 941 | 150DB MQ | 7 | .12280 | 267 |
| 110 | SUB PUMP | 10/10/14 | | 6,542 | | | | 3,271 | | | 3,271 | 1,306 | 150DB MQ | 7 | .12870 | 421 |
| 115 | FENCING | 5/26/15 | | 28,786 | | | | 14,393 | | | 14,393 | 4,294 | 150DB HY | 7 | .15030 | 2,163 |
| | TOTAL IMPROVEMENTS | | | 149,698 | | 0 | 0 | 66,777 | 0 | 0 | 82,921 | 65,798 | | | | 3,655 |
| | **LAND** | | | | | | | | | | | | | | | |
| 60 | GIN YARD - LAND | 3/15/08 | 1/01/17 | 8,000 | | | | | | | 8,000 | | | | | 0 |
| 61 | LAND - EMERITT | 5/31/07 | | 266,598 | | | | | | | 266,598 | | | | | 0 |
| 71 | BRADLEY LAND - 603 ACRES | 11/12/10 | | 296,330 | | | | | | | 296,330 | | | | | 0 |
| 101 | LAND - S OF JACK'S HOUSE | 6/03/13 | 1/01/17 | 5,000 | | | | | | | 5,000 | | | | | 0 |
| | TOTAL LAND | | | 575,928 | | 0 | 0 | 0 | 0 | 0 | 575,928 | 0 | | | | 0 |

**12/31/17**   **2017 FEDERAL DEPRECIATION SCHEDULE**   **PAGE 4**

**GALMOR FAMILY LTD PARTNERSHIP**

27-4132388

### MACHINERY AND EQUIPMENT

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP.DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | BOX CAR | 7/03/98 | | 1,200 | | | | | | | 1,200 | 1,200 | 150DB HY | 7 | | 0 |
| 3 | BUSH HOG | 9/22/00 | | 1,695 | | | | | | | 1,695 | 1,695 | 150DB HY | 5 | | 0 |
| 5 | IRRIGATION PUMP | 4/08/01 | | 3,000 | | | | | | | 3,000 | 3,000 | 150DB HY | 5 | | 0 |
| 6 | CHUTE TRAILER | 4/30/01 | | 2,500 | | | | | | | 2,500 | 2,500 | 150DB HY | 5 | | 0 |
| 7 | 2 PLOWS | 5/15/01 | | 2,100 | | | | | | | 2,100 | 2,100 | 150DB HY | 5 | | 0 |
| 8 | STOCK TRAILER | 12/28/01 | | 850 | | | | | | | 850 | 850 | 150DB HY | 5 | | 0 |
| 10 | EQUIPMENT | 6/30/03 | | 8,000 | | | | | | | 8,000 | 8,000 | 150DB HY | 5 | | 0 |
| 11 | TRAILER | 7/31/03 | | 9,600 | | | | | | | 9,600 | 9,600 | 150DB HY | 5 | | 0 |
| 12 | IRRIGATION EQUIPMENT | 8/29/03 | | 14,750 | | | | | | | 14,750 | 14,750 | 150DB HY | 5 | | 0 |
| 13 | EQUIPMENT | 9/30/03 | | 2,010 | | | | | | | 2,010 | 2,010 | 150DB HY | 5 | | 0 |
| 14 | EQUIPMENT | 7/30/04 | | 12,936 | | | | | | | 12,936 | 12,936 | 150DB HY | 5 | | 0 |
| 15 | GREAT PLAINS DRILL | 1/25/06 | | 18,700 | | | | | 18,700 | | | 0 | | 150DB HY | 5 | | 0 |
| 18 | TRACTOR | 7/25/06 | | 3,000 | | | | | 3,000 | | | 0 | | 150DB HY | 5 | | 0 |
| 19 | SWATHER | 8/31/06 | | 17,589 | | | | | | | 17,589 | 17,589 | 150DB HY | 5 | | 0 |
| 20 | CASE TRACKING HOE | 8/31/06 | | 25,948 | | | | | 7,326 | | | 18,622 | 17,822 | 150DB HY | 5 | | 0 |
| 21 | DONAHUE SWATHER TRAILER | 8/31/06 | | 6,800 | | | | | 2,800 | | | 4,000 | 3,827 | 150DB HY | 5 | | 0 |
| 22 | RED RHINO BALE TRAILER | 6/01/07 | | 7,500 | | | | | | | 7,500 | 7,500 | 150DB HY | 5 | | 0 |
| 23 | 210/300 GALLON BARRELLS | 7/31/07 | | 5,500 | | | | | | | 5,500 | 5,500 | 150DB HY | 7 | | 0 |
| 26 | KUBOTA 4WD TRACTOR | 8/02/06 | | 28,890 | | | | | | | 28,890 | 28,890 | 150DB HY | 7 | | 0 |
| 27 | WOODS BATWING MOWER | 8/02/06 | | 5,778 | | | | | | | 5,778 | 5,778 | 150DB HY | 7 | | 0 |
| 28 | FRONT END LOADER | 8/02/06 | | 3,852 | | | | | | | 3,852 | 3,852 | 150DB HY | 7 | | 0 |
| 29 | 1400 STEIGER TRACTOR | 8/23/06 | 1/15/17 | 29,000 | | | | | | | 29,000 | 22,925 | 150DB HY | 7 | | 0 |
| 30 | JD CHISEL | 8/23/06 | | 3,500 | | | | | | | 3,500 | 3,500 | 150DB HY | 7 | | 0 |
| 31 | IRRIGATION EQUIPMENT | 10/05/04 | | 58,810 | | | | | | | 58,810 | 58,810 | 150DB HY | 7 | | 0 |

# 2017 FEDERAL DEPRECIATION SCHEDULE

**12/31/17**  **PAGE 5**

**GALMOR FAMILY LTD PARTNERSHIP**  27-4132388

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP.DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | DONAHUE TRAILER | 6/29/07 | | 6,850 | | | | | | | 6,850 | 6,850 | 150DB HY | 7 | | 0 |
| 33 | 1610 JD CHISEL | 8/31/07 | | 6,000 | | | | | | | 6,000 | 6,000 | 150DB HY | 7 | | 0 |
| 34 | GRAIN AUGER | 8/31/07 | | 3,600 | | | | | | | 3,600 | 3,600 | 150DB HY | 7 | | 0 |
| 35 | JD 4960 TRACTOR | 4/07/08 | | 31,135 | | | | 31,135 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 36 | JD 9300 TRACTOR - 2000 | 5/22/08 | | 64,884 | | | | 64,884 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 37 | JD 9600 COMBINE - 1991 | 5/22/08 | | 47,750 | | | | 47,750 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 38 | JD 930 30' COMBINE HEADER | 5/22/08 | | 8,500 | | | | | | | 8,500 | 8,500 | 150DB HY | 7 | | 0 |
| 39 | GRAIN CART | 2/26/08 | | 1,500 | | | | 200 | | | 1,300 | 1,300 | 150DB HY | 7 | | 0 |
| 42 | STOCK TRAILER | 5/30/08 | | 3,500 | | | | 3,500 | | | 0 | | 150DB HY | 7 | | 0 |
| 43 | 10 11' STOCK TANKS | 6/30/08 | | 6,800 | | | | 6,800 | | | 0 | | 150DB HY | 7 | | 0 |
| 45 | 36' GRAIN DRILL | 7/31/08 | | 17,500 | | | | 17,500 | | | 0 | | 150DB HY | 7 | | 0 |
| 46 | HAY SPEAR | 7/31/08 | | 522 | | | | 261 | | | 261 | 261 | 150DB HY | 7 | | 0 |
| 49 | 50' CHISEL | 10/31/08 | | 12,500 | | | | 12,500 | | | 0 | | 150DB HY | 7 | | 0 |
| 50 | 1/2 ROUND BALER | 12/24/08 | | 3,194 | | | | 1,597 | | | 1,597 | 1,597 | 150DB HY | 7 | | 0 |
| 52 | 60' MOWER | 10/16/08 | | 9,389 | | | | 4,695 | | | 4,694 | 4,694 | 150DB HY | 7 | | 0 |
| 56 | IRRIGATION SYSTEM | 5/08/07 | | 78,901 | | | | | | | 78,901 | 78,892 | 150DB HY | 7 | | 0 |
| 57 | IRRIGATION SYSTEM | 10/05/04 | | 58,810 | | | | | | | 58,810 | 58,810 | 150DB HY | 7 | | 0 |
| 62 | FLATBED TRAILER | 10/19/09 | | 475 | | | | | | | 475 | 475 | 150DB HY | 7 | | 0 |
| 63 | CHUTE & SCALE | 6/11/09 | | 4,000 | | | | | | | 4,000 | 4,000 | 150DB HY | 7 | | 0 |
| 64 | HAY FEEDERS | 11/16/09 | | 1,950 | | | | | | | 1,950 | 1,950 | 150DB HY | 7 | | 0 |
| 67 | HAY FEEDERS | 11/16/09 | | 1,950 | | | | | | | 1,950 | 1,950 | 150DB HY | 7 | | 0 |
| 73 | CATERPILLAR CH85C | 3/31/10 | 1/01/17 | 44,000 | | | | | | | 44,000 | 41,302 | 150DB HY | 7 | .06120 | 1,347 |
| 74 | GP 354000 DRILL | 7/15/10 | | 21,550 | | | | | | | 21,550 | 20,230 | 150DB HY | 7 | .06120 | 1,320 |
| 75 | JD MOWER - LN05 | 7/15/10 | | 810 | | | 405 | | | | 405 | 381 | 150DB HY | 7 | .06120 | 24 |
| 77 | CATTLE TRAILER | 8/23/10 | | 12,000 | | | | 6,000 | | | 6,000 | 5,633 | 150DB HY | 7 | .06120 | 367 |
| 79 | VERMEER 210 HAY RAKE | 5/12/10 | | 2,250 | | | | | | | 2,250 | 2,113 | 150DB HY | 7 | .06120 | 137 |
| 83 | FUEL TANKS | 2/25/10 | | 1,800 | | | | | | | 1,800 | 1,692 | 150DB HY | 7 | .06120 | 108 |

| 12/31/17 | | | | | | | **2017 FEDERAL DEPRECIATION SCHEDULE** | | | | | | | | | **PAGE 6** |
| | | | | | | | **GALMOR FAMILY LTD PARTNERSHIP** | | | | | | | | | 27-4132388 |

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/BONUS/SP DEPR | PRIOR DEC. BAL DEPR | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 84 | BALER | 1/21/10 | | 6,388 | | | | | | | 6,388 | 5,998 | 150DB HY | 7 | .06120 | 390 |
| 86 | 3 HARROWS | 1/03/11 | 1/01/17 | 54,750 | | | | | | | 54,750 | 54,750 | 150DB HY | 7 | .12250 | 0 |
| 97 | 91 JD CHISEL PLOW | 8/03/11 | | 12,180 | | | | | | | 12,180 | 9,941 | 150DB HY | 7 | .12250 | 1,492 |
| 102 | ROUND BALE HAULER - 1/2 | 9/10/13 | | 2,263 | | | | 1,132 | | | 1,131 | 1,017 | 150DB HY | 4 | .10160 | 114 |
| 112 | NEW G89 GEARHEAD | 8/11/15 | | 3,350 | | | | 1,675 | | | 1,675 | 499 | 150DB HY | 7 | .15030 | 252 |
| 113 | WATER WELL - ARROW | 11/23/15 | | 1,874 | | | | 937 | | | 937 | 279 | 150DB HY | 7 | .15030 | 141 |
| | TOTAL MACHINERY AND EQUIPME | | | 806,433 | | 0 | 0 | 232,797 | 0 | 0 | 573,636 | 557,348 | | | | 5,692 |
| | MISCELLANEOUS | | | | | | | | | | | | | | | |
| 99 | 3 BULLS | 6/08/12 | | 8,721 | | | | 8,721 | | | 0 | | 150DB HY | 5 | | 0 |
| 100 | 54 BRED HEIFERS | 9/16/13 | VARIOUS | 75,600 | | | | | | | 75,600 | 66,153 | 150DB HY | 5 | .16660 | 6,298 |
| 104 | 34 COWS | 1/17/12 | | 38,297 | | | | | | | 38,297 | 38,297 | 150DB HY | 5 | .08330 | 0 |
| 107 | 1 BULL - SHANE MORG | 3/27/14 | VARIOUS | 2,500 | | | | | | | 2,500 | 2,062 | 150DB MQ | 5 | .16520 | 155 |
| 108 | 2 COWS | 6/17/14 | VARIOUS | 2,800 | | | | | | | 2,800 | 2,243 | 150DB MQ | 5 | .16760 | 176 |
| 109 | 60 HEIFERS | 10/20/14 | VARIOUS | 65,257 | | | | | | | 65,257 | 49,870 | 150DB MQ | 5 | .16400 | 4,013 |
| 116 | 3 BULLS | 2/14/15 | VARIOUS | 9,000 | | | | | | | 9,000 | 6,323 | 150DB HY | 5 | .17850 | 804 |
| 117 | 1 BULL 3 HEIFERS | 7/15/15 | VARIOUS | 8,800 | | | | | | | 8,800 | 6,182 | 150DB HY | 5 | .17850 | 786 |
| 118 | 2 BUFFALO | 7/21/15 | VARIOUS | 4,400 | | | | | | | 4,400 | 3,091 | 150DB HY | 5 | .17850 | 393 |
| 120 | 4 BULLS | 6/08/12 | VARIOUS | 11,629 | | | | | | | 11,629 | 11,629 | 150DB HY | 5 | .08330 | 0 |
| 121 | 4 COWS | 1/17/12 | VARIOUS | 4,506 | | | | | | | 4,506 | 4,506 | 150DB HY | 5 | .08330 | 0 |
| | TOTAL MISCELLANEOUS | | | 231,510 | | 0 | 0 | 8,721 | 0 | 0 | 222,789 | 190,356 | | | | 12,625 |
| | TOTAL DEPRECIATION | | | 2,079,079 | | 0 | 0 | 323,229 | 0 | 0 | 1,755,850 | 1,097,712 | | | | 24,886 |

| 12/31/17 | | | | | 2017 FEDERAL DEPRECIATION SCHEDULE | | | | | | | | | PAGE 7 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | GALMOR FAMILY LTD PARTNERSHIP | | | | | | | | | 27-4132388 |
| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP. DEPR. | PRIOR DEC. BAL DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD LIFE RATE | CURRENT DEPR. |
| | GRAND TOTAL DEPRECIATION | | | 2,146,587 | | 0 | 0 | 333,197 | 0 | 0 | 1,813,390 | 1,119,065 | | 28,089 |
| | DEPRECIATION ASSETS SOLD | | | 529,402 | | 0 | 0 | 0 | 0 | 0 | 529,402 | 475,196 | | 13,972 |
| | DEPR REMAINING ASSETS | | | 1,617,185 | | 0 | 0 | 333,197 | 0 | 0 | 1,283,988 | 643,869 | | 14,117 |

Form **8879-PE**

### IRS e-file Signature Authorization for Form 1065

► Return completed Form 8879-PE to your ERO. (Don't send to the IRS.)

► Go to *www.irs.gov/Form8879PE* for the latest information.

OMB No. 1545-0123

**2017**

Department of the Treasury
Internal Revenue Service

For calendar year 2017, or tax year beginning _____, 2017, and ending _____,

| Name of partnership | Employer identification number |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

**Part I**    **Tax Return Information** (Whole dollars only)

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales less returns and allowances (Form 1065, line 1c) | 1 | 79,627. |
| 2 | Gross profit (Form 1065, line 3) | 2 | 79,627. |
| 3 | Ordinary business income (loss) (Form 1065, line 22) | 3 | -96,848. |
| 4 | Net rental real estate income (loss) (Form 1065, Schedule K, line 2) | 4 | -3,156. |
| 5 | Other net rental income (loss) (Form 1065, Schedule K, line 3c) | 5 | |

**Part II**    **Declaration and Signature Authorization of Partner or Member**
         **(Be sure to get a copy of the partnership's return)**

Under penalties of perjury, I declare that I am a partner or member of the above partnership and that I have examined a copy of the partnership's 2017 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's *electronic return of partnership income*. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission and (b) the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic return of partnership income.

**Partner or Member's PIN: check one box only**

[X]   I authorize   P K & COMPANY PLLC   to enter my PIN   55555   as my signature on the
                         ERO firm name                    Don't enter all zeros
partnership's 2017 electronically filed return of partnership income.

[ ]   As a partner or member of the partnership, I will enter my PIN as my signature on the partnership's 2017 electronically filed
return of partnership income.

Partner or member's signature   ► _____

Title ► _____          Date ► _____

**Part III**    **Certification and Authentication**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.   73695054733
                                                                       Don't enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2017 electronically filed return of partnership income for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub. 3112,** IRS *e-file* Application and Participation, and **Pub. 4163,** Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature ► _____      Date ► _____

**ERO Must Retain This Form — See Instructions**
**Don't Submit This Form to the IRS Unless Requested To Do So**

**BAA For Paperwork Reduction Act Notice, see instructions.**                          Form **8879-PE** (2017)

PTPA0901L   11/20/17

Form **1065**

Department of the Treasury
Internal Revenue Service

### U.S. Return of Partnership Income

For calendar year 2017, or tax year beginning _____ , 2017,
ending _____ , 20 ____ .
▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

OMB No. 1545-0123

**2017**

| | | |
|---|---|---|
| **A** Principal business activity<br>SERVICE | **Type**<br>**or**<br>**Print** | GALMOR FAMILY LTD PARTNERSHIP<br>PO BOX 349,<br>SHAMROCK, TX 79079 |
| **B** Principal product or service<br>FARM/OIL & GAS | | |
| **C** Business code number<br>213110 | | |

**D** Employer identification no.
27-4132388

**E** Date business started
6/03/2011

**F** Total assets (see the instrs)
$ 698,475.

**G** Check applicable boxes: (1) ☐ Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change   (5) ☐ Amended return
(6) ☐ Technical termination — also check (1) or (2)

**H** Check accounting method: (1) ☒ Cash   (2) ☐ Accrual   (3) ☐ Other (specify) ▶ _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year   ▶ _____ 4

**J** Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

*Caution. Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | |
|---|---|---:|---|---:|
| **I N C O M E** | **1 a** Gross receipts or sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1a** | 79,627. | |
| | **b** Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1b** | | |
| | **c** Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . | | **1c** | 79,627. |
| | **2** Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . . . . | | **2** | |
| | **3** Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . . . . | | **3** | 79,627. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts<br>(attach statement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **4** | |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . . . . . . . . . . . . . | | **5** | -137,549. |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . . . . | | **6** | 43,694. |
| | **7** Other income (loss)<br>(attach statement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **7** | |
| | **8** Total income (loss). Combine lines 3 through 7 . . . . . . . . . . . . . . . . . . . . | | **8** | -14,228. |
| **D E D U C T I O N S** (SEE INSTRS FOR LIMITATIONS) | **9** Salaries and wages (other than to partners) (less employment credits) . . . . . . . . . . | | **9** | |
| | **10** Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . . . . . . | | **10** | |
| | **11** Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **11** | |
| | **12** Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **12** | |
| | **13** Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **13** | |
| | **14** Taxes and licenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **14** | 28,549. |
| | **15** Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **15** | |
| | **16a** Depreciation (if required, attach Form 4562) . . . . . . . . . . . | **16a** | 24,886. | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return . . . | **16b** | 24,886. | **16c** | |
| | **17** Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . . . . . . . . . . | | **17** | |
| | **18** Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **18** | |
| | **19** Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **19** | |
| | **20** Other deductions<br>(attach statement) . . . . . . . . . . . . . . . . . . . . . . . SEE STATEMENT 1 | | **20** | 54,071. |
| | **21** Total deductions. Add the amounts shown in the far right column for lines 9 through 20 . . . . . . . . . | | **21** | 82,620. |
| | **22** Ordinary business income (loss). Subtract line 21 from line 8 . . . . . . . . . . . . . . . . . . . . | | **22** | -96,848. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____
Signature of partner or limited liability company member

▶ _____
Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | | |
|---|---|---|---|
| Print/Type preparer's name<br>KELLYE L FUCHS, CPA | Preparer's signature | Date | Check ☐ if self-employed   PTIN<br>P01254733 |
| Firm's name ▶ P K & COMPANY PLLC | | | Firm's EIN ▶ 47-3985644 |
| Firm's address ▶ 1000 N. MAIN, P.O. BOX 1728<br>ELK CITY, OK 73648 | | | Phone no. (580) 225-8877 |

**BAA  For Paperwork Reduction Act Notice, see separate instructions.**          PTPA0105L 08/22/17          Form **1065** (2017)

Form **1065** (2017) GALMOR FAMILY LTD PARTNERSHIP      27-4132388    Page **2**

| **Schedule B** | **Other Information** | | |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |

  **a** [X] Domestic general partnership      **b** [ ] Domestic limited partnership

  **c** [ ] Domestic limited liability company      **d** [ ] Domestic limited liability partnership

  **e** [ ] Foreign partnership      **f** [ ] Other ►

| | | Yes | No |
|---|---|---|---|
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person?................................................................................................ | X | |
| **3** | At the end of the tax year: | | |
| **a** | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership................................................................. | | X |
| **b** | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership................................................................. | | X |
| **4** | At the end of the tax year, did the partnership: | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (iv) below. ............................................................................... | | X |

| **(i)** Name of Corporation | **(ii)** Employer Identification Number (if any) | **(iii)** Country of Incorporation | **(iv)** Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below ..................................... | | X |

| **(i)** Name of Entity | **(ii)** Employer Identification Number (if any) | **(iii)** Type of Entity | **(iv)** Country of Organization | **(v)** Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details........ | | X |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** | The partnership's total receipts for the tax year were less than $250,000. | | |
| **b** | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| **c** | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| **d** | The partnership is not filing and is not required to file Schedule M-3................................................. | X | |
| | If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)?................................... | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt?.......................................................... | | X |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? .................................................................... | | X |
| **10** | At any time during calendar year 2017, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If 'Yes,' enter the name of the foreign country. ► | | X |

PTPA0112L 08/22/17                Form **1065** (2017)

Form 1065 (2017) GALMOR FAMILY LTD PARTNERSHIP        27-4132388      Page **3**

| **Schedule B** | **Other Information** *(continued)* | | |
|---|---|---|---|
| | | Yes | No |
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions. | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election?. . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this year an optional basis adjustment under section 743(b) or 734(b)? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. | | |
| | See instructions   ▶ | | |
| 16 | Does the partnership have any foreign partners? If 'Yes,' enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| 18a | Did you make any payments in 2017 that would require you to file Form(s) 1099? See instructions. . . . . . . . . . . . . . . . . . . . . | X | |
| b | If 'Yes,' did you or will you file required Form(s) 1099? | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| 20 | Enter the number of partners that are foreign governments under section 892.    ▶ 0 | | |
| 21 | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)?. . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 22 | Was the partnership a specified domestic entity required to file Form 8938 for the tax year (See the Instructions for Form 8938)?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |

**Designation of Tax Matters Partner** (see instructions)
Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | GALMOR MANAGEMENT LLC | Identifying number of TMP ▶ | 27-4132505 |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative ▶ | MICHAEL S GALMOR | Phone number of TMP ▶ | |
| Address of designated TMP ▶ | PO BOX 349 SHAMROCK, TX 79079 | | |

PTPA0112L 08/22/17                               Form **1065** (2017)

Form **1065** (2017) GALMOR FAMILY LTD PARTNERSHIP 27-4132388 Page **4**

| Schedule K | Partners' Distributive Share Items | | Total amount |
|---|---|---|---|
| **Income (Loss)** | **1** Ordinary business income (loss) (page 1, line 22) | **1** | -96,848. |
| | **2** Net rental real estate income (loss) (attach Form 8825) | **2** | -3,156. |
| | **3a** Other gross rental income (loss) | 3a | |
| | **b** Expenses from other rental activities (attach stmt) | 3b | |
| | **c** Other net rental income (loss). Subtract line 3b from line 3a | **3c** | |
| | **4** Guaranteed payments | **4** | |
| | **5** Interest income | **5** | 2,324. |
| | **6** Dividends: **a** Ordinary dividends | **6a** | |
| | **b** Qualified dividends | 6b | |
| | **7** Royalties | **7** | 41,518. |
| | **8** Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | **8** | |
| | **9a** Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | **9a** | |
| | **b** Collectibles (28%) gain (loss) | 9b | |
| | **c** Unrecaptured section 1250 gain (attach statement) | 9c | |
| | **10** Net section 1231 gain (loss) (attach Form 4797) | **10** | -20,426. |
| | **11** Other income (loss) (see instructions) Type ► | **11** | |
| **Deduc-tions** | **12** Section 179 deduction (attach Form 4562) | **12** | |
| | **13a** Contributions | **13a** | |
| | **b** Investment interest expense | **13b** | |
| | **c** Section 59(e)(2) expenditures: **(1)** Type ► _____ **(2)** Amount ► | **13c (2)** | |
| | **d** Other deductions (see instructions) Type ► SEE STATEMENT 2 | **13d** | 23. |
| **Self-Employ-ment** | **14a** Net earnings (loss) from self-employment | **14a** | -1,405. |
| | **b** Gross farming or fishing income | **14b** | 52,390. |
| | **c** Gross nonfarm income | **14c** | |
| **Credits** | **15a** Low-income housing credit (section 42(j)(5)) | **15a** | |
| | **b** Low-income housing credit (other) | **15b** | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | **15c** | |
| | **d** Other rental real estate credits (see instructions) Type ► | **15d** | |
| | **e** Other rental credits (see instructions) Type ► | **15e** | |
| | **f** Other credits (see instructions) Type ► | **15f** | |
| **Foreign Trans-actions** | **16a** Name of country or U.S. possession ... ► | | |
| | **b** Gross income from all sources | **16b** | |
| | **c** Gross income sourced at partner level | **16c** | |
| | Foreign gross income sourced at partnership level | | |
| | **d** Passive category ► _____ **e** General category ► _____ **f** Other ► | **16f** | |
| | Deductions allocated and apportioned at partner level | | |
| | **g** Interest expense ► _____ **h** Other ► | **16h** | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | **i** Passive category ► _____ **j** General category ► _____ **k** Other ► | **16k** | |
| | **l** Total foreign taxes (check one): ► Paid ☐ Accrued ☐ | **16l** | |
| | **m** Reduction in taxes available for credit (attach statement) | **16m** | |
| | **n** Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | **17a** Post-1986 depreciation adjustment | **17a** | -5,823. |
| | **b** Adjusted gain or loss | **17b** | -164,316. |
| | **c** Depletion (other than oil and gas) | **17c** | |
| | **d** Oil, gas, and geothermal properties — gross income | **17d** | 121,145. |
| | **e** Oil, gas, and geothermal properties — deductions | **17e** | 50,219. |
| | **f** Other AMT items (attach stmt) | **17f** | |
| **Other Infor-mation** | **18a** Tax-exempt interest income | **18a** | |
| | **b** Other tax-exempt income | **18b** | |
| | **c** Nondeductible expenses | **18c** | |
| | **19a** Distributions of cash and marketable securities | **19a** | 55,756. |
| | **b** Distributions of other property | **19b** | |
| | **20a** Investment income | **20a** | 43,842. |
| | **b** Investment expenses | **20b** | 23. |
| | **c** Other items and amounts (attach stmt) | | |

**BAA** Form **1065** (2017)

PTPA0134L 08/22/17

Form **1065** (2017) GALMOR FAMILY LTD PARTNERSHIP      27-4132388      Page **5**

## Analysis of Net Income (Loss)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l.................................................. | | | **1** | -76,611. |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| **a** | General partners... | | | | -766. | | |
| **b** | Limited partners.... | | | -9,490. | | | -66,355. |

## Schedule L — Balance Sheets per Books

| | | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | (a) | (b) | (c) | (d) |
| 1 | Cash.......................................... | | 20,694. | | 336. |
| 2a | Trade notes and accounts receivable........ | | | | |
| **b** | Less allowance for bad debts............... | | | | |
| 3 | Inventories................................. | | | | |
| 4 | U.S. government obligations................ | | | | |
| 5 | Tax-exempt securities...................... | | | | |
| 6 | Other current assets (attach stmt)......... | | | | |
| 7a | Loans to partners (or persons related to partners)..... | | | | |
| **b** | Mortgage and real estate loans............. | | | | |
| 8 | Other investments (attach stmt)............ | | | | |
| 9a | Buildings and other depreciable assets...... | 2,161,587. | | 1,617,185. | |
| **b** | Less accumulated depreciation............. | 1,452,262. | 709,325. | 991,183. | 626,002. |
| 10a | Depletable assets.......................... | | | | |
| **b** | Less accumulated depletion................ | | | | |
| 11 | Land (net of any amortization)............. | | | | |
| 12a | Intangible assets (amortizable only)......... | | | | |
| **b** | Less accumulated amortization............ | | | | |
| 13 | Other assets (attach stmt)..... SEE ST 3 | | 81,902. | | 72,137. |
| 14 | Total assets................................ | | 811,921. | | 698,475. |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable........................... | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year.... | | | | |
| 17 | Other current liabilities (attach stmt) .. SEE ST 4 | | 174,079. | | 173,470. |
| 18 | All nonrecourse loans...................... | | | | |
| 19a | Loans from partners (or persons related to partners).... | | | | |
| **b** | Mortgages, notes, bonds payable in 1 year or more..... | | 640,896. | | 593,047. |
| 20 | Other liabilities (attach stmt).............. | | | | |
| 21 | Partners' capital accounts.................. | | -3,054. | | -68,042. |
| 22 | Total liabilities and capital................. | | 811,921. | | 698,475. |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note.** The partnership may be required to file Schedule M-3 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books............ | -76,611. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | **a** | Tax-exempt interest .. $ _____ | |
| 3 | Guaranteed pmts (other than health insurance)..... | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | **a** | Depreciation...... $ _____ | |
| | **a** Depreciation...... $ _____ | | 8 | Add lines 6 and 7......................... | |
| | **b** Travel and entertainment..... $ _____ | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5...................... | -76,611. |
| 5 | Add lines 1 through 4.................... | -76,611. | | | |

## Schedule M-2 — Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year........... | -3,054. | 6 | Distributions: **a** Cash............ | 55,756. |
| 2 | Capital contributed: **a** Cash........... | 11,006. | | **b** Property............. | |
| | **b** Property......... | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books............ | -76,611. | | _____ | |
| 4 | Other increases (itemize): | | | | |
| | STATEMENT 5 | 56,373. | 8 | Add lines 6 and 7........................ | 55,756. |
| 5 | Add lines 1 through 4................... | -12,286. | 9 | Balance at end of year. Subtract line 8 from line 5.... | -68,042. |

PTPA0134L 08/22/17      Form **1065** (2017)

**SCHEDULE F**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Farming

► Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.
► Go to *www.irs.gov/ScheduleF* for instructions and the latest information.

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **14**

Name of proprietor: GALMOR FAMILY LTD PARTNERSHIP

Social security number (SSN)

| A Principal crop or activity | B Enter code from Part IV | C Accounting method: | D Employer ID number (EIN), (see instr) |
|---|---|---|---|
| CATTLE & WHEAT | ► 112111 | [X] Cash  [ ] Accrual | 27-4132388 |

E Did you 'materially participate' in the operation of this business during 2017? If 'No,' see instructions for limit on passive losses......................... [X] Yes [ ] No

F Did you make any payments in 2017 that would require you to file Form(s) 1099 (see instructions)?...................... [ ] Yes [X] No

G If 'Yes,' did you or will you file required Forms 1099?........................................................... [ ] Yes [ ] No

## Part I — Farm Income — Cash Method. Complete Parts I and II. (Accrual method. Complete Parts II and III, and Part I, line 9.)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1a Sales of livestock and other resale items (see instructions).................. | 1a | | | | | |
| b Cost or other basis of livestock or other items reported on line 1a............. | 1b | | | | | |
| c Subtract line 1b from line 1a................................................ | | | | | 1c | |
| 2 Sales of livestock, produce, grains, and other products you raised ......................................... | | | | | 2 | 45,915. |
| 3a Cooperative distributions (Form(s) 1099-PATR)..... | 3a | 602. | 3b Taxable amount ..... | | 3b | 602. |
| 4a Agricultural program payments (see instructions)...... | 4a | | 4b Taxable amount ..... | | 4b | |
| 5a Commodity Credit Corporation (CCC) loans reported under election ................. | | | | | 5a | |
| b CCC loans forfeited................................ | 5b | | 5c Taxable amount ..... | | 5c | |
| 6 Crop insurance proceeds and federal crop disaster payments (see instructions) | | | | | | |
| a Amount received in 2017................. | 6a | 3,948. | 6b Taxable amount ..... | | 6b | 3,948. |
| c If election to defer to 2018 is attached, check here.... ► [ ] | | | 6d Amount deferred from 2016... | | 6d | |
| 7 Custom hire (machine work) income ............................................. | | | | | 7 | |
| 8 Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)..................................... SEE STATEMENT 6 | | | | | 8 | 1,925. |
| 9 Gross income. Add amounts in the right column (lines 1c, 2, 3b, 4b, 5a, 5c, 6b, 6d, 7, and 8). If you use the accrual method, enter the amount from Part III, line 50. See instructions ......................... ► | | | | | 9 | 52,390. |

## Part II — Farm Expenses — Cash and Accrual Method. Do not include personal or living expenses. See instructions.

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 Car and truck expenses (see instructions). Also attach Form 4562.............. | 10 | | 23 Pension and profit-sharing plans ..... | 23 | | |
| 11 Chemicals..................... | 11 | | 24 Rent or lease (see instructions): | | | |
| 12 Conservation expenses (see instructions) ............. | 12 | | a Vehicles, machinery, equipment..... | 24a | | |
| | | | b Other (land, animals, etc.)........... | 24b | | |
| 13 Custom hire (machine work)..... | 13 | | 25 Repairs and maintenance............. | 25 | | 6,879. |
| 14 Depreciation and section 179 expense (see instructions)....... | 14 | 24,886. | 26 Seeds and plants................. | 26 | | 4,575. |
| | | | 27 Storage and warehousing............. | 27 | | |
| 15 Employee benefit programs other than on line 23........ | 15 | | 28 Supplies....................... | 28 | | 10,265. |
| | | | 29 Taxes......................... | 29 | | |
| 16 Feed............................ | 16 | | 30 Utilities....................... | 30 | | 18,150. |
| 17 Fertilizers and lime ............. | 17 | | 31 Veterinary, breeding, and medicine.... | 31 | | 1,711. |
| 18 Freight and trucking............. | 18 | | 32 Other expenses (specify): | | | |
| 19 Gasoline, fuel, and oil........... | 19 | 17,009. | a BANK CHARGES | 32a | | 5,553. |
| 20 Insurance (other than health).... | 20 | 21,605. | b CONTRACT LABOR | 32b | | 17,935. |
| 21 Interest: | | | c DUES | 32c | | 38. |
| a Mortgage (paid to banks, etc.)... | 21a | 60,857. | d TELEPHONE | 32d | | 476. |
| b Other............................ | 21b | | e | 32e | | |
| 22 Labor hired (less employment credits) ... | 22 | | f | 32f | | |
| 33 Total expenses. Add lines 10 through 32f. If line 32f is negative, see instructions ......................... ► | | | | 33 | | 189,939. |
| 34 Net farm profit or (loss). Subtract line 33 from line 9............................. | | | | 34 | | -137,549. |

If a profit, stop here and see instructions for where to report. If a loss, complete lines 35 and 36.

35 Did you receive an applicable subsidy in 2017? See instructions ........................................ [ ] Yes [X] No

36 Check the box that describes your investment in this activity and see instructions for where to report your loss.

a [ ] All investment is at risk.  b [ ] Some investment is not at risk.

**BAA For Paperwork Reduction Act Notice, see the separate instructions.**   FDIZ0212L 08/08/17   Schedule F (Form 1040) 2017

Form **8825**
(Rev. September 2017)

Department of the Treasury
Internal Revenue Service

## Rental Real Estate Income and Expenses of a Partnership or an S Corporation

► **Attach to Form 1065, Form 1065-B, or Form 1120S.**
► **Go to www.irs.gov/Form8825 for the latest information.**

OMB No. 1545-0123

Name
GALMOR FAMILY LTD PARTNERSHIP

Employer identification number
27-4132388

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions. See page 2 to list additional properties.

| | Physical address of each property — street, city, state, ZIP code | Type — Enter code 1–8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|---|
| **A** | 15767 FM 1036 SHAMROCK, OK 79079 | 5 | | 365 |
| **B** | | | | |
| **C** | | | | |
| **D** | | | | |

| | | | Properties | | | |
|---|---|---|---|---|---|---|
| **Rental Real Estate Income** | | | **A** | **B** | **C** | **D** |
| **2** Gross rents | **2** | | 1,200. | | | |
| **Rental Real Estate Expenses** | | | | | | |
| **3** Advertising | **3** | | | | | |
| **4** Auto and travel | **4** | | | | | |
| **5** Cleaning and maintenance | **5** | | | | | |
| **6** Commissions | **6** | | | | | |
| **7** Insurance | **7** | | 250. | | | |
| **8** Legal and other professional fees | **8** | | | | | |
| **9** Interest | **9** | | | | | |
| **10** Repairs | **10** | | 903. | | | |
| **11** Taxes | **11** | | | | | |
| **12** Utilities | **12** | | | | | |
| **13** Wages and salaries | **13** | | | | | |
| **14** Depreciation (see instructions) | **14** | | 3,203. | | | |
| **15** Other (list) ► | | | | | | |
| | **15** | | | | | |
| **16** Total expenses for each property. Add lines 3 through 15 | **16** | | 4,356. | | | |
| **17** Income or (loss) from each property. Subtract line 16 from line 2 | **17** | | -3,156. | | | |

| | | | |
|---|---|---|---|
| **18a** Total gross rents. Add gross rents from line 2, columns A through H | **18a** | | 1,200. |
| **b** Total expenses. Add total expenses from line 16, columns A through H | **18b** | | -4,356. |
| **19** Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities | **19** | | |
| **20a** Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | **20a** | | |

**b** Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed.

| **(1)** Name | **(2)** Employer identification number |
|---|---|
| | |
| | |

| | | | |
|---|---|---|---|
| **21** Net rental estate income (loss). Combine lines 18a through 20a. Enter the result here and on: | **21** | | -3,156. |
| • **Form 1065 or 1120S:** Schedule K, line 2; or | | | |
| • **Form 1065-B:** Part I, line 4 | | | |

**BAA** For Paperwork Reduction Act Notice, see instructions.

SPSZ0101L 09/28/17

Form **8825** (Rev. 9-2017)

Form 8825 (Rev. 9-2017) GALMOR FAMILY LTD PARTNERSHIP 27-4132388        Page **2**

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days at fair rental value and days with personal use. See instructions.

| Physical address of each property — street, city, state, ZIP code | Type — Enter code 1–8; see below for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|
| **E** | | | |
| **F** | | | |
| **G** | | | |
| **H** | | | |

| | | Properties | | | |
|---|---|---|---|---|---|
| **Rental Real Estate Income** | | **E** | **F** | **G** | **H** |
| **2** Gross rents | **2** | | | | |
| **Rental Real Estate Expenses** | | | | | |
| **3** Advertising | **3** | | | | |
| **4** Auto and travel | **4** | | | | |
| **5** Cleaning and maintenance | **5** | | | | |
| **6** Commissions | **6** | | | | |
| **7** Insurance | **7** | | | | |
| **8** Legal and other professional fees | **8** | | | | |
| **9** Interest | **9** | | | | |
| **10** Repairs | **10** | | | | |
| **11** Taxes | **11** | | | | |
| **12** Utilities | **12** | | | | |
| **13** Wages and salaries | **13** | | | | |
| **14** Depreciation (see instructions) | **14** | | | | |
| **15** Other (list) ► | **15** | | | | |
| **16** Total expenses for each property. Add lines 3 through 15 | **16** | | | | |
| **17** Income or (loss) from each property. Subtract line 16 from line 2 | **17** | | | | |

**Allowable Codes for Type of Property**

1 — Single Family Residence
2 — Multi-Family Residence
3 — Vacation or Short-Term Rental
4 — Commercial
5 — Land
6 — Royalties
7 — Self-Rental
8 — Other (include description with the code on Form 8825 or on a separate statement)

**BAA**       SPSZ0102L 09/28/17       Form **8825** (Rev. 9-2017)

| Form **4562** | **Depreciation and Amortization** (Including Information on Listed Property) ► Attach to your tax return. ► Go to www.irs.gov/Form4562 for instructions and the latest information. | OMB No. 1545-0172 **2017** |
|---|---|---|
| Department of the Treasury Internal Revenue Service (99) | | Attachment Sequence No. **179** |

| Name(s) shown on return | Identifying number |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

Business or activity to which this form relates

FORM 8825, RENTAL REAL ESTATE - RENTAL REAL ESTATE

**Part I**   **Election To Expense Certain Property Under Section 179**
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | 510,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | 3,000. |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | 2,030,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | 0. |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | 510,000. |

| 6 | **(a)** Description of property | **(b)** Cost (business use only) | **(c)** Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | 0. |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2016 Form 4562 | **10** | 230,240. |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs). | **11** | 0. |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | **12** | 0. |
| 13 | Carryover of disallowed deduction to 2018. Add lines 9 and 10, less line 12 ► **13** | | 230,240. |

Note: Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II**   **Special Depreciation Allowance and Other Depreciation** (Don't include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 15 | Property subject to section 168(f)(1) election | **15** | |
| 16 | Other depreciation (including ACRS) | **16** | |

**Part III**   **MACRS Depreciation** (Don't include listed property.) (See instructions.)

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2017 | **17** | 2,903. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

**Section B — Assets Placed in Service During 2017 Tax Year Using the General Depreciation System**

| **(a)** Classification of property | **(b)** Month and year placed in service | **(c)** Basis for depreciation (business/investment use only — see instructions) | **(d)** Recovery period | **(e)** Convention | **(f)** Method | **(g)** Depreciation deduction |
|---|---|---|---|---|---|---|
| **19a** 3-year property | | | | | | |
| **b** 5-year property | | | | | | |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | 3,000. | 10 | HY | 200DB | 300. |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs | | S/L | |
| **h** Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| **i** Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

**Section C — Assets Placed in Service During 2017 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| **20a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs | | S/L | |
| **c** 40-year | | | 40 yrs | MM | S/L | |

**Part IV**   **Summary** (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | **22** | 3,203. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

**BAA For Paperwork Reduction Act Notice, see separate instructions.**     FDIZ0812L 08/15/17     Form **4562** (2017)

Form **4797**

Department of the Treasury
Internal Revenue Service

**Sales of Business Property**
(Also Involuntary Conversions and Recapture Amounts
Under Sections 179 and 280F(b)(2))
► **Attach to your tax return.**
► **Go to www.irs.gov/Form4797 for instructions and the latest information.**

OMB No. 1545-0184

**2017**

Attachment
Sequence No. 27

Name(s) shown on return

GALMOR FAMILY LTD PARTNERSHIP

Identifying number

27-4132388

1   Enter the gross proceeds from sales or exchanges reported to you for 2017 on Form(s) 1099-B or 1099-S
(or substitute statement) that you are including on line 2, 10, or 20. See instructions......................... | **1** |

| **Part I** | **Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft — Most Property Held More Than 1 Year** (see instructions) |

**2**

| **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| SEE STATEMENT 7 | | | | | | -20,426. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| 3   Gain, if any, from Form 4684, line 39................................................................ | **3** | |
| 4   Section 1231 gain from installment sales from Form 6252, line 26 or 37............................ | **4** | |
| 5   Section 1231 gain or (loss) from like-kind exchanges from Form 8824............................. | **5** | |
| 6   Gain, if any, from line 32, from other than casualty or theft..................................... | **6** | |
| 7   Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows:.............. | **7** | -20,426. |

**Partnerships (except electing large partnerships) and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| 8   Nonrecaptured net section 1231 losses from prior years. See instructions........................... | **8** | |
| 9   Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions................................. | **9** | |

| **Part II** | **Ordinary Gains and Losses** (see instructions) |

10   Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---|
| 11   Loss, if any, from line 7......................................................................... | **11** | |
| 12   Gain, if any, from line 7 or amount from line 8, if applicable...................................... | **12** | |
| 13   Gain, if any, from line 31........................................................................ | **13** | 43,694. |
| 14   Net gain or (loss) from Form 4684, lines 31 and 38a.............................................. | **14** | |
| 15   Ordinary gain from installment sales from Form 6252, line 25 or 36................................ | **15** | |
| 16   Ordinary gain or (loss) from like-kind exchanges from Form 8824................................. | **16** | |
| 17   Combine lines 10 through 16..................................................................... | **17** | 43,694. |

18   For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below:

a   If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 28, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 23. Identify as from 'Form 4797, line 18a.' See instructions...................................................................................... | **18a** |

b   Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14........................................................................................... | **18b** |

**BAA For Paperwork Reduction Act Notice, see separate instructions.**                    Form **4797** (2017)

FDIZ1001L  08/23/17

Form 4797 (2017) GALMOR FAMILY LTD PARTNERSHIP 27-4132388 Page **2**

**Part III** Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255 (see instructions)

| **19(a)** Description of section 1245, 1250, 1252, 1254, or 1255 property: | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) |
|---|---|---|
| A 54 BRED HEIFERS | 9/16/13 | VARIOUS |
| B | | |
| C | | |
| D | | |

| These columns relate to the properties on lines 19A through 19D . . . . . . . . . . . . . . . . . . . . . . . . ▶ | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|
| **20** Gross sales price (**Note:** *See line 1 before completing.*) . . . . . . . . . . . . . . . . . . | **20** | 63,502. | | | |
| **21** Cost or other basis plus expense of sale . . . . . . . | **21** | 184,492. | | | |
| **22** Depreciation (or depletion) allowed or allowable . . | **22** | 164,684. | | | |
| **23** Adjusted basis. Subtract line 22 from line 21 . . . . . | **23** | 19,808. | | | |
| **24** Total gain. Subtract line 23 from line 20 . . . . . . . | **24** | 43,694. | | | |
| **25 If section 1245 property:** | | | | | |
| **a** Depreciation allowed or allowable from line 22 . . . . | **25a** | 164,684. | | | |
| **b** Enter the **smaller** of line 24 or 25a . . . . . | **25b** | 43,694. | | | |
| **26 If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| **a** Additional depreciation after 1975. See instrs . . . . | **26a** | | | | |
| **b** Applicable percentage multiplied by the **smaller** of line 24 or line 26a. See instructions . . . . . . . . | **26b** | | | | |
| **c** Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e . . . . . . . . . . . . . . . . . . . . . . | **26c** | | | | |
| **d** Additional depreciation after 1969 and before 1976 | **26d** | | | | |
| **e** Enter the **smaller** of line 26c or 26d . . . . | **26e** | | | | |
| **f** Section 291 amount (corporations only) . . . . . . . . | **26f** | | | | |
| **g** Add lines 26b, 26e, and 26f . . . . . . . . . . | **26g** | | | | |
| **27 If section 1252 property:** Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | | |
| **a** Soil, water, and land clearing expenses . . . . . . . . | **27a** | | | | |
| **b** Line 27a multiplied by applicable percentage. See instructions . . . . . . . . . . | **27b** | | | | |
| **c** Enter the **smaller** of line 24 or 27b . . . . . | **27c** | | | | |
| **28 If section 1254 property:** | | | | | |
| **a** Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion. See instructions . . . . . . . . . . . . . . . . . . | **28a** | | | | |
| **b** Enter the **smaller** of line 24 or 28a . . . . . | **28b** | | | | |
| **29 If section 1255 property:** | | | | | |
| **a** Applicable percentage of payments excluded from income under section 126. See instructions . . . . . . . . . . | **29a** | | | | |
| **b** Enter the smaller of line 24 or 29a. See instrs . . . | **29b** | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| **30** Total gains for all properties. Add property columns A through D, line 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **30** | 43,694. |
|---|---|---|
| **31** Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 . . . . . . . . . . . . . . . . . . . . . . . . | **31** | 43,694. |
| **32** Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **32** | 0. |

**Part IV** Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less (see instructions)

| | | **(a)** Section 179 | **(b)** Section 280F(b)(2) |
|---|---|---|---|
| **33** Section 179 expense deduction or depreciation allowable in prior years . . . . . . . . . . . . | **33** | | |
| **34** Recomputed depreciation. See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **34** | | |
| **35** Recapture amount. Subtract line 34 from line 33. See the instructions for where to report . . . . . . . . . . . . . . | **35** | | |

BAA FDIZ1002L 01/15/18 Form **4797** (2017)

# 2017 Other Rental Activities Schedule
Form 1065, Schedule K, Line 3

| Name | Employer Identification Number |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

**1** Description of Property

A  WATER SALES

B

C

D

| | | Properties | | | |
|---|---|---|---|---|---|
| **Other Rental Income** | | **A** | **B** | **C** | **D** |
| **2** Gross rents......................... | | | | | |
| Ordinary inc. (loss) federal amount . | | | | | |
| Total Gross Income................ | 2 | | | | |
| **Rental Expenses** | | | | | |
| **3** Advertising........................ | 3 | | | | |
| **4** Auto and travel.................... | 4 | | | | |
| **5** Cleaning and maintenance......... | 5 | | | | |
| **6** Commissions...................... | 6 | | | | |
| **7** Insurance......................... | 7 | | | | |
| **8** Legal and other professional fees... | 8 | | | | |
| **9** Interest........................... | 9 | | | | |
| **10** Repairs........................... | 10 | | | | |
| **11** Taxes............................. | 11 | | | | |
| **12** Utilities........................... | 12 | | | | |
| **13** Wages and salaries............... | 13 | | | | |
| **14** Depreciation...................... | 14 | | | | |
| **15 ▸** | 15 | | | | |
| **16** Total Expenses. Add lines 3 through 15...... | 16 | | | | |
| **17** Net income (loss) from other rental activities Subtract line 16 from line 2............... | 17 | | | | |
| **Passive Activity Info** | | | | | |
| **18a** Passive (P) / Nonpassive (NP)...... | 18a | P | | | |
| **b** Section 1231 gain (loss)........... | 18b | | | | |

## SUMMARY OF OTHER RENTAL ACTIVITIES
PTPL1601L 07/06/17

| | | | |
|---|---|---|---|
| **19** | Total Gross income from all other rental activities.................................................... | 19 | |
| **20** | Net income (loss) from other rental activities from partnerships and fiduciaries in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1)..................................... | 20 | 0. |
| **21** | Total Gross income from all activities and passthroughs. Line 19 plus Line 20. Enter on Sch. K, line 3a | 21 | 0. |
| **22** | Total expenses from all other rental activities. Enter on Sch. K, line 3b............................ | 22 | |
| **23** | Net income (loss) from other rental activities. Line 21 minus Line 22. Enter the result here and on Schedule K, line 3c................................... | 23 | 0. |

| 2017 | **FEDERAL STATEMENTS** | PAGE 1 |
|---|---|---|
| | **GALMOR FAMILY LTD PARTNERSHIP** | 27-4132388 |

**STATEMENT 1**
**FORM 1065, LINE 20**
**OTHER DEDUCTIONS**

| | | |
|---|---|---|
| LEGAL AND PROFESSIONAL | $ | 3,875. |
| OPERATING EXPENSE FROM O & G ACTIVITIES | | 50,193. |
| PRODUCTION TAX FROM O & G ACTIVITIES | | 3. |
| | TOTAL $ | 54,071. |

**STATEMENT 2**
**FORM 1065, SCHEDULE K, LINE 13D**
**OTHER DEDUCTIONS**

| | | |
|---|---|---|
| ROYALTY INCOME: PRODUCTION TAX FROM O & G ACTIVITIES | $ | 23. |
| | TOTAL $ | 23. |

**QUALIFIED DOMESTIC PRODUCTION ACTIVITY INFORMATION - ALL ACTIVITIES**

| | | |
|---|---|---|
| QUALIFIED PRODUCTION ACTIVITIES INCOME | $ | -132,374. |

**STATEMENT 3**
**FORM 1065, SCHEDULE L, LINE 13**
**OTHER ASSETS**

| | BEGINNING | ENDING |
|---|---|---|
| NOTE RECEIVABLE - CARTER | $ 81,902. | $ 72,136. |
| ROUNDING | 0. | 1. |
| TOTAL | $ 81,902. | $ 72,137. |

**STATEMENT 4**
**FORM 1065, SCHEDULE L, LINE 17**
**OTHER CURRENT LIABILITIES**

| | BEGINNING | ENDING |
|---|---|---|
| BANK OVERDRAFT | $ 0. | $ 8,203. |
| SHALE ADVANCE | 174,079. | 165,267. |
| TOTAL | $ 174,079. | $ 173,470. |

**STATEMENT 5**
**FORM 1065, SCHEDULE M-2, LINE 4**
**OTHER INCREASES**

| | | |
|---|---|---|
| | $ | 56,373. |
| | TOTAL $ | 56,373. |

| **2017** | **FEDERAL STATEMENTS** | **PAGE 2** |
|---|---|---|
| | **GALMOR FAMILY LTD PARTNERSHIP** | **27-4132388** |

**STATEMENT 6**
**SCHEDULE F, LINE 8**
**OTHER INCOME**

```
REIMB - FEED.................................................................  $        1,925.
                                                             TOTAL  $        1,925.
```

**STATEMENT 7**
**FORM 4797, PAGE 1, PART I**
**SALES OR EXCHANGES OF CERTAIN PROPERTY HELD OVER ONE YEAR**

| DESCRIPTION OF PROPERTY | DATE ACQUIRED | DATE SOLD | SALES PRICE | DEPRECIATION ALLOWED | COST OR BASIS | GAIN OR LOSS |
|---|---|---|---|---|---|---|
| SWATHER | 8/31/06 | 1/15/17 | | 17,589. | 17,589. $ | 0. |
| 1400 STEIGER TRACTOR | 8/23/06 | 1/15/17 | | 22,925. | 29,000. | -6,075. |
| 08 KING RANCH PICKUP | 3/31/08 | 6/15/17 | | 66,333. | 66,333. | 0. |
| 09 CPS BELLY DUMP TRAILER | 10/21/08 | 1/31/17 | | 31,100. | 31,100. | 0. |
| 08 LINCOLN NAVIGATOR | 8/14/08 | 1/15/17 | | 47,140. | 47,140. | 0. |
| GIN YARD - LAND | 3/15/08 | 1/01/17 | | | 8,000. | -8,000. |
| CATERPILLAR CH85C | 3/31/10 | 1/01/17 | | 42,649. | 44,000. | -1,351. |
| 3 HARROWS | 1/03/11 | 1/01/17 | | 54,750. | 54,750. | 0. |
| 2006 JEEP | 7/07/11 | 1/01/17 | | 22,500. | 22,500. | 0. |
| 98 GMC YUKON | 6/04/11 | 1/01/17 | | 3,500. | 3,500. | 0. |
| KUBOTA MULE | 5/15/12 | 6/01/17 | | 15,998. | 15,998. | 0. |
| LAND - S OF JACK'S HOUSE | 6/03/13 | 1/01/17 | | | 5,000. | -5,000. |
| | | | | | TOTAL $ | -20,426. |

| 2017 | GENERAL ELECTIONS | PAGE 1 |
|---|---|---|
| | **GALMOR FAMILY LTD PARTNERSHIP** | **27-4132388** |

**SECTION 1.263(A)-1(F) DE MINIMIS SAFE HARBOR ELECTION**

THE TAXPAYER HEREBY MAKES THE DE MINIMIS SAFE HARBOR ELECTION UNDER REGULATION
1.263(A)-1(F).

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
27-4132388

| 12/31/17 | 2017 FEDERAL OIL AND GAS INCOME (LOSS) REPORT | PAGE 1 |
| --- | --- | --- |

**GALMOR FAMILY LTD PARTNERSHIP**

27-4132388

| PROP NUMBER | PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS INCOME | PRODUCTION TAX | IDC* | OPERATING EXPENSES | AMORTIZATIO DEPRECIATION | SECTION 179 | * ALLOCATED OVERHEAD | DRY HOLE EXPENSE* | OTHER EXPENSES | NET INCOME |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | BARKER PRODUCTION CO | PRIMARY GAS | 1,024 | 10 | | | | | | | | 1,014 |
| 21 | CIMAREX | PRIMARY GAS | 182 | 13 | | | | | | | | 169 |
| | TOTALS: SCHEDULE K - ROYALTIES | | 1,206 | 23 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,183 |
| 13 | BARKER PRODUCTION - TX | PRIMARY GAS | 76,482 | | | 50,193 | | | | | | 26,289 |
| 22 | BARKER PRODUCTION - OK | PRIMARY GAS | 3,145 | 3 | | | | | | | | 3,142 |
| | TOTALS: TRADE OR BUSINESS INCOME | | 79,627 | 3 | 0 | 50,193 | 0 | 0 | 0 | 0 | 0 | 29,431 |
| 19 | GALMOR'S/G&G STEAM SERVICE INC | NONPRODUCING | 40,312 | | | | | | | | | 40,312 |
| | TOTALS: SCHEDULE K - ROYALTIES | | 40,312 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40,312 |
| | GRAND TOTALS | | 121,145 | 26 | 0 | 50,193 | 0 | 0 | 0 | 0 | 0 | 70,926 |

* - PASS-THROUGH EXPENSES INCLUDED IN NET INCOME ONLY FOR CALCULATION OF NET INCOME LIMITATION ON THE FEDERAL OIL AND GAS ALLOWABLE DEPLETION REPORT.

PAPP 0448

**12/31/17**      **2017 FEDERAL OIL AND GAS ALLOWABLE DEPLETION REPORT**      **PAGE 1**

GALMOR FAMILY LTD PARTNERSHIP

27-4132388

| PROP NUMBER | PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS % DEPLETION | TENTATIVE % DEPLETION | COST DEPLETION | GREATER OF % OR COST | DEPLETION IN EXCESS OF BASIS | EXCESS IDC |
|---|---|---|---|---|---|---|---|---|
| 1 | BARKER PRODUCTION CO | PRIMARY GAS | 154 | 154 | | 154 | 154 | |
| 21 | CIMAREX | PRIMARY GAS | 27 | 27 | | 27 | 27 | |
| | TOTALS: SCHEDULE K - ROYALTIES | | 181 | 181 | 0 | 181 | 181 | 0 |
| 13 | BARKER PRODUCTION - TX | PRIMARY GAS | 11,472 | 11,472 | | 11,472 | 11,472 | |
| 22 | BARKER PRODUCTION - OK | PRIMARY GAS | 472 | 472 | | 472 | 472 | |
| | TOTALS: TRADE OR BUSINESS INCOME | | 11,944 | 11,944 | 0 | 11,944 | 11,944 | 0 |
| 19 | GALMOR'S/G&G STEAM SERVICE INC | NONPRODUCING | 2,016 | 2,016 | | 2,016 | 2,016 | |
| | TOTALS: SCHEDULE K - ROYALTIES | | 2,016 | 2,016 | 0 | 2,016 | 2,016 | 0 |
| | GRAND TOTALS | | 14,141 | 14,141 | 0 | 14,141 | 14,141 | 0 |

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

August 30, 2018

THE GALMOR CONTRIBUTION TRUST
PO BOX 349
SHAMROCK, TX 79079

RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2017 Return of Income

Dear THE GALMOR CONTRIBUTION TRUST:

Enclosed is your 2017 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2017 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.

Sincerely,

GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

**Schedule K-1**
(Form 1065)

**2017**

Department of the Treasury
Internal Revenue Service

For calendar year 2017, or tax

| | Final K-1 | | Amended K-1 | 651117 |
OMB No. 1545-0123

beginning ___/___/ 2017 ending ___/___/___

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

### Part I Information About the Partnership

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code

THE GALMOR CONTRIBUTION TRUST
PO BOX 349
SHAMROCK, TX 79079

**G** ☐ General partner or LLC member-manager ☒ Limited partner or other LLC member

**H** ☒ Domestic partner ☐ Foreign partner

**I1** What type of entity is this partner? ........ INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ................................. ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 49.5 % | % |
| Loss | 49.5 % | % |
| Capital | 49.5 % | % |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ |
| Recourse | $ |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ -1,516. |
| Capital contributed during the year | $ 11,006. |
| Current year increase (decrease) | $ -9,490. |
| Withdrawals & distributions | $ |
| Ending capital account | $ 0. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes ☒ No
If 'Yes', attach statement (see instructions)

### Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| **1** Ordinary business income (loss) | **15** Credits | |
| -11,985. | | |
| **2** Net rental real estate income (loss) | | |
| * -391. | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income | | |
| 288. | | |
| **6a** Ordinary dividends | | |
| **6b** Qualified dividends | | |
| **7** Royalties | | |
| 5,138. | | |
| **8** Net short-term capital gain (loss) | | |
| **9a** Net long-term capital gain (loss) | **17** Alternative minimum tax (AMT) items | |
| | A -721. | |
| **9b** Collectibles (28%) gain (loss) | B -20,334. | |
| **9c** Unrecaptured section 1250 gain | * STMT | |
| **10** Net section 1231 gain (loss) | **18** Tax-exempt income and nondeductible expenses | |
| -2,528. | | |
| **11** Other income (loss) | | |
| | **19** Distributions | |
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| I* 12. | **20** Other information | |
| U -16,381. | A 5,426. | |
| | B 12. | |
| **14** Self-employment earnings (loss) | | |
| B 6,483. | T* STMT | |

*See attached statement for additional information.

F O R I R S U S E O N L Y

**BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.**

Schedule **K-1** (Form 1065) 2017

PTPA0312L 08/17/17

PAPP 0451

Schedule **K-1** (Form 1065) 2017    GALMOR FAMILY LTD PARTNERSHIP    27-4132388      Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.



| | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (k) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6 a** | **Ordinary dividends** | Form 1040, line 9a |
| **6 b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | **Code** | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub. 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | See the Partner's Instructions |
| | **D** Noncash contributions (30%) | |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 19 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |

**Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | |
|---|---|---|
| **A** | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| **B** | Gross farming or fishing income | See the Partner's Instructions |
| **C** | Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| **A** | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| **B** | Low-income housing credit (other) from pre-2008 buildings | |
| **C** | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| **D** | Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| **E** | Qualified rehabilitation expenditures (rental real estate) | |
| **F** | Other rental real estate credits | |
| **G** | Other rental credits | |
| **H** | Undistributed capital gains credit | Form 1040, line 73; check box a |
| **I** | Biofuel producer credit | |
| **J** | Work opportunity credit | See the Partner's Instructions |
| **K** | Disabled access credit | |

| | **Code** | Report on |
|---|---|---|
| **L** | Empowerment zone employment credit | |
| **M** | Credit for increasing research activities | |
| **N** | Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| **O** | Backup withholding | |
| **P** | Other credits | |
| **16** | **Foreign transactions** | |
| **A** | Name of country or U.S. possession | |
| **B** | Gross income from all sources | Form 1116, Part I |
| **C** | Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| **D** | Passive category | |
| **E** | General category | Form 1116, Part I |
| **F** | Other | |
| | *Deductions allocated and apportioned at partner level* | |
| **G** | Interest expense | Form 1116, Part I |
| **H** | Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| **I** | Passive category | |
| **J** | General category | Form 1116, Part I |
| **K** | Other | |
| | *Other information* | |
| **L** | Total foreign taxes paid | Form 1116, Part II |
| **M** | Total foreign taxes accrued | Form 1116, Part II |
| **N** | Reduction in taxes available for credit | Form 1116, line 12 |
| **O** | Foreign trading gross receipts | Form 8873 |
| **P** | Extraterritorial income exclusion | Form 8873 |
| **Q** | Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| **A** | Post-1986 depreciation adjustment | |
| **B** | Adjusted gain or loss | |
| **C** | Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| **D** | Oil, gas, & geothermal — gross income | |
| **E** | Oil, gas, & geothermal — deductions | |
| **F** | Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| **A** | Tax-exempt interest income | Form 1040, line 8b |
| **B** | Other tax-exempt income | See the Partner's Instructions |
| **C** | Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| **A** | Cash and marketable securities | |
| **B** | Distribution subject to section 737 | See the Partner's Instructions |
| **C** | Other property | |
| **20** | **Other information** | |
| **A** | Investment income | Form 4952, line 4a |
| **B** | Investment expenses | Form 4952, line 5 |
| **C** | Fuel tax credit information | Form 4136 |
| **D** | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| **E** | Basis of energy property | See the Partner's Instructions |
| **F** | Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| **G** | Recapture of low-income housing credit (other) | Form 8611, line 8 |
| **H** | Recapture of investment credit | See Form 4255 |
| **I** | Recapture of other credits | See the Partner's Instructions |
| **J** | Look-back interest — completed long-term contracts | See Form 8697 |
| **K** | Look-back interest — income forecast method | See Form 8866 |
| **L** | Dispositions of property with section 179 deductions | |
| **M** | Recapture of section 179 deduction | |
| **N** | Interest expense for corporate partners | |
| **O** | Section 453(l)(3) information | |
| **P** | Section 453A(c) information | |
| **Q** | Section 1260(b) information | |
| **R** | Interest allocable to production expenditures | See the Partner's Instructions |
| **S** | CCF nonqualified withdrawals | |
| **T** | Depletion information — oil and gas | |
| **U** | Reserved | |
| **V** | Unrelated business taxable income | |
| **W** | Precontribution gain (loss) | |
| **X** | Section 108(i) information | |
| **Y** | Net investment income | |
| **Z** | Other information | |

THE GALMOR CONTRIBUTION TRUST    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      PTPA0312L   08/17/17      Schedule **K-1** (Form 1065) 2017

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

SCHEDULE K-1 (FORM 1065) 2017 **SUPPLEMENTAL INFORMATION** PAGE 3

## BOX 2
## RENTAL REAL ESTATE ACTIVITIES

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND<br>15767 FM 1036 SHAMROCK, OK 79079<br>ROUNDING OR SPECIALLY ALLOCATED | | | | PASSIVE | |
| NET INCOME (LOSS) ADJUSTMENT | | | -391. | | |
| TOTAL $ | | | -391. | | |

## BOX 13
## OTHER DEDUCTIONS

**\* DESCRIPTIVE INFORMATION**

I   PRODUCTION TAX FROM O & G ACTIVITIES......................................  $        12.

## BOX 17
## ALTERNATIVE MINIMUM TAX (AMT) ITEMS

**CONTINUED FROM SCHEDULE K-1**

D          14,992.
E           6,214.

THE GALMOR CONTRIBUTION TRUST    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

SPSL1201L  07/06/17

GALMOR FAMILY LTD PARTNERSHIP   27-4132388

# 2017 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES

### (Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| THE GALMOR CONTRIBUTION TRUST | 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 |

**INCOME:**

| | |
|---|---|
| 1. Gross income from oil and gas activities (Sch. K-1 line 17, Code D) | 14,992. |

**EXPENSES:**

| | |
|---|---|
| 2. Production tax | 3. |
| 3. Operating expenses | 6,211. |
| 4. Depreciation | |
| 5. Allocated overhead | |
| 6. Other expenses | |
| 7. Total deductions allocable to oil and gas activities (Schedule K-1 line 17, Code E) | 6,214. |
| 8. Net income from oil and gas activities (line 1 minus line 7) | 8,778. |

**PASSTHROUGH EXPENSES:**

| | |
|---|---|
| 9. Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) | |
| 10. Dry hole costs (Schedule K-1 line 13, Code J) | |
| 11. Section 179 expense deduction (Schedule K-1 line 12) | |

**DEPLETION INFORMATION:**

| | |
|---|---|
| 12. Total cost depletion (greater than percentage) from all properties | |
| 13. Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 1,750. |
| 14. Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 15. Total tentative depletion deduction (add lines 12, 13 and 14) | 1,750. |
| 16. Total AMT cost depletion (greater than percentage) from all properties | |
| 17. Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 1,750. |
| 18. Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 19. Total tentative AMT depletion deduction (add lines 16, 17 and 18) | 1,750. |

**OTHER INFORMATION:**

| | |
|---|---|
| 20. Total percentage depletion in excess of basis | 1,750. |
| 21. Total excess intangible drilling costs (IDC) | |

PTPL1101L 07/06/17

THE GALMOR CONTRIBUTION TRUST   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

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

August 30, 2018

GALMOR MANAGEMENT LLC
PO BOX 349
SHAMROCK, TX 79079

RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2017 Return of Income

Dear GALMOR MANAGEMENT LLC:

Enclosed is your 2017 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2017 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.

Sincerely,

GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

# Schedule K-1
### (Form 1065)
Department of the Treasury
Internal Revenue Service

## 2017
For calendar year 2017, or tax

beginning ___/___/ 2017 ending ___/___/___

☐ Final K-1  ☐ Amended K-1

651117
OMB No. 1545-0123

## Partner's Share of Income, Deductions, Credits, etc.
► See separate instructions.

### Part I  Information About the Partnership

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's identifying number
27-4132505

**F** Partner's name, address, city, state, and ZIP code

GALMOR MANAGEMENT LLC
PO BOX 349
SHAMROCK, TX 79079

**G** ☒ General partner or LLC member-manager  ☐ Limited partner or other LLC member

**H** ☒ Domestic partner  ☐ Foreign partner

**I1** What type of entity is this partner? ....... PARTNERSHIP

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here. ................................. ☐

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 1 % | 1 % |
| Loss | 1 % | 1 % |
| Capital | 1 % | 1 % |

**K** Partner's share of liabilities at year end:

Nonrecourse ........................ $ _____
Qualified nonrecourse financing ........ $ _____
Recourse ........................... $ 6,036.

**L** Partner's capital account analysis:

Beginning capital account ............. $ -30.
Capital contributed during the year ..... $ _____
Current year increase (decrease) ....... $ -203.
Withdrawals & distributions ........... $ _____
Ending capital account ................ $ -233.

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| **1** Ordinary business income (loss) -968. | **15** Credits | |
| **2** Net rental real estate income (loss) * -32. | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income 23. | | |
| **6a** Ordinary dividends | | |
| **6b** Qualified dividends | | |
| **7** Royalties 415. | | |
| **8** Net short-term capital gain (loss) | | |
| **9a** Net long-term capital gain (loss) | **17** Alternative minimum tax (AMT) items | |
| **9b** Collectibles (28%) gain (loss) | A -59. | |
| **9c** Unrecaptured section 1250 gain | B -1,644. | |
| | * STMT | |
| **10** Net section 1231 gain (loss) -204. | **18** Tax-exempt income and nondeductible expenses | |
| **11** Other income (loss) | | |
| | **19** Distributions | |
| **12** Section 179 deduction | | |
| **13** Other deductions U -1,324. | **20** Other information | |
| | A 438. | |
| **14** Self-employment earnings (loss) A -1,405. | T* STMT | |
| B 524. | | |

*See attached statement for additional information.

F O R   I R S   U S E   O N L Y

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule **K-1** (Form 1065) 2017

PTPA0312L 08/17/17

Schedule **K-1** (Form 1065) 2017 GALMOR FAMILY LTD PARTNERSHIP 27-4132388 Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.



| | | |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | *Report on* |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6 a** | **Ordinary dividends** | Form 1040, line 9a |
| **6 b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | **Code** | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub. 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | |
| | **D** Noncash contributions (30%) | See the Partner's Instructions |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 19 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |
| | **Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE. | |
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | **B** Low-income housing credit (other) from pre-2008 buildings | |
| | **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | **D** Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | **E** Qualified rehabilitation expenditures (rental real estate) | |
| | **F** Other rental real estate credits | |
| | **G** Other rental credits | |
| | **H** Undistributed capital gains credit | Form 1040, line 73; check box a |
| | **I** Biofuel producer credit | |
| | **J** Work opportunity credit | See the Partner's Instructions |
| | **K** Disabled access credit | |

| | | |
|---|---|---|
| | **Code** | *Report on* |
| | **L** Empowerment zone employment credit | |
| | **M** Credit for increasing research activities | |
| | **N** Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| | **O** Backup withholding | |
| | **P** Other credits | |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | |
| | **B** Gross income from all sources | Form 1116, Part I |
| | **C** Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive category | |
| | **E** General category | Form 1116, Part I |
| | **F** Other | |
| | *Deductions allocated and apportioned at partner level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive category | |
| | **J** General category | Form 1116, Part I |
| | **K** Other | |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | |
| | **B** Adjusted gain or loss | |
| | **C** Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| | **D** Oil, gas, & geothermal — gross income | |
| | **E** Oil, gas, & geothermal — deductions | |
| | **F** Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | |
| | **B** Distribution subject to section 737 | See the Partner's Instructions |
| | **C** Other property | |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | **E** Basis of energy property | See the Partner's Instructions |
| | **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **H** Recapture of investment credit | See Form 4255 |
| | **I** Recapture of other credits | See the Partner's Instructions |
| | **J** Look-back interest — completed long-term contracts | See Form 8697 |
| | **K** Look-back interest — income forecast method | See Form 8866 |
| | **L** Dispositions of property with section 179 deductions | |
| | **M** Recapture of section 179 deduction | |
| | **N** Interest expense for corporate partners | |
| | **O** Section 453(l)(3) information | |
| | **P** Section 453A(c) information | |
| | **Q** Section 1260(b) information | |
| | **R** Interest allocable to production expenditures | See the Partner's Instructions |
| | **S** CCF nonqualified withdrawals | |
| | **T** Depletion information — oil and gas | |
| | **U** Reserved | |
| | **V** Unrelated business taxable income | |
| | **W** Precontribution gain (loss) | |
| | **X** Section 108(i) information | |
| | **Y** Net investment income | |
| | **Z** Other information | |

GALMOR MANAGEMENT LLC    27-4132505

PTPA0312L  08/17/17        Schedule **K-1** (Form 1065) 2017

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

**SUPPLEMENTAL INFORMATION**
PAGE 3

---

**BOX 2**
**RENTAL REAL ESTATE ACTIVITIES**

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND | | | | | |
| 15767 FM 1036 SHAMROCK, OK 79079 | | | | | |
| | 12. | 44. $ | -32. | PASSIVE | |
| | | TOTAL $ | -32. | | |

---

**BOX 17**
**ALTERNATIVE MINIMUM TAX (AMT) ITEMS**

**CONTINUED FROM SCHEDULE K-1**

D          1,211.
E            501.

GALMOR MANAGEMENT LLC    27-4132505

SPSL1201L  07/06/17

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

# 2017 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES
(Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| GALMOR MANAGEMENT LLC | 27-4132505 |

**INCOME:**

1. Gross income from oil and gas activities (Sch. K-1 line 17, Code D) ..................................... 1,211.

**EXPENSES:**

2. Production tax ..................................................................
3. Operating expenses .............................................................. 501.
4. Depreciation ....................................................................
5. Allocated overhead ..............................................................
6. Other expenses ..................................................................

7. **Total deductions allocable to oil and gas activities (Schedule K-1 line 17, Code E)** ......................... 501.

8. **Net income from oil and gas activities (line 1 minus line 7)** ................................................ 710.

**PASSTHROUGH EXPENSES:**

9. Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) ...........................................
10. Dry hole costs (Schedule K-1 line 13, Code J) .................................................................
11. Section 179 expense deduction (Schedule K-1 line 12) .........................................................

**DEPLETION INFORMATION:**

12. Total cost depletion (greater than percentage) from all properties ...........................................
13. Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) .. 143.
14. Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) .....................
15. Total tentative depletion deduction (add lines 12, 13 and 14) ................................................ 143.

16. Total AMT cost depletion (greater than percentage) from all properties .......................................
17. Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) ................... 143.
18. Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) ................
19. Total tentative AMT depletion deduction (add lines 16, 17 and 18) ............................................ 143.

**OTHER INFORMATION:**

20. Total percentage depletion in excess of basis .............................................................. 143.
21. Total excess intangible drilling costs (IDC) ...............................................................

PTPL1101L 07/06/17

GALMOR MANAGEMENT LLC 27-4132505

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

August 30, 2018

THE GALMOR FAMILY TRUST
P.O. BOX 349
SHAMROCK, TX 79079

RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2017 Return of Income

Dear THE GALMOR FAMILY TRUST:

Enclosed is your 2017 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions,
Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the
amounts you need to complete your income tax return. The amounts shown are your distributive
share of partnership tax items to be reported on your tax return, and may not correspond to actual
distributions you have received during the year. This information is included in the Partnership's
2017 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.

Sincerely,

GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2017**

For calendar year 2017, or tax

☐ Final K-1    ☐ Amended K-1

651117

OMB No. 1545-0123

beginning [ / / 2017 ]  ending [ / / ]

## Partner's Share of Income, Deductions, Credits, etc.
► See separate instructions.

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| 1 | Ordinary business income (loss) | 15 | Credits |
|---|---|---|---|
|  | -47,940. |  |  |

| 2 | Net rental real estate income (loss) |
|---|---|
| * | -1,562. |

| 3 | Other net rental income (loss) | 16 | Foreign transactions |
|---|---|---|---|

| 4 | Guaranteed payments |
|---|---|

| 5 | Interest income |
|---|---|
|  | 1,150. |

| 6a | Ordinary dividends |
|---|---|

| 6b | Qualified dividends |
|---|---|

| 7 | Royalties |
|---|---|
|  | 20,551. |

| 8 | Net short-term capital gain (loss) |
|---|---|

### Part I  Information About the Partnership

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
|---|---|---|---|
|  |  | A | -2,882. |

| 9b | Collectibles (28%) gain (loss) |
|---|---|
|  |  | B | -81,336. |

| 9c | Unrecaptured section 1250 gain |
|---|---|
|  |  | * | STMT |

| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
|---|---|---|---|
|  | -10,111. |  |  |

| 11 | Other income (loss) |
|---|---|

### Part II  Information About the Partner

**E** Partner's identifying number
46-7363977

**F** Partner's name, address, city, state, and ZIP code

THE GALMOR FAMILY TRUST
P.O. BOX 349
SHAMROCK, TX 79079

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner? ....... FIDUCIARY

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here. ................................ ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 49.5 % | 49.5 % |
| Loss | 49.5 % | 49.5 % |
| Capital | 49.5 % | 49.5 % |

**K** Partner's share of liabilities at year end:

Nonrecourse ........................ $ _____
Qualified nonrecourse financing ........ $ _____
Recourse ......................... $ 298,802.

**L** Partner's capital account analysis:

Beginning capital account ............. $ -1,508.
Capital contributed during the year ..... $ _____
Current year increase (decrease) ....... $ -10,018.
Withdrawals & distributions ........... $ _____
Ending capital account ............... $ -11,526.

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

| 19 | Distributions |
|---|---|

| 12 | Section 179 deduction |
|---|---|

| 13 | Other deductions | 20 | Other information |
|---|---|---|---|
| I* | 11. | A | 21,701. |
| U | -65,525. | B | 11. |

| 14 | Self-employment earnings (loss) |
|---|---|
| B | 25,933. | T* | STMT |

*See attached statement for additional information.

F O R  I R S  U S E  O N L Y

Schedule **K-1** (Form 1065) 2017

PTPA0312L  08/17/17

PAPP 0461

Schedule K-1 (Form 1065) 2017  GALMOR FAMILY LTD PARTNERSHIP  27-4132388  Page 2

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6 a** | **Ordinary dividends** | Form 1040, line 9a |
| **6 b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | *Code* | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub. 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | |
| | **D** Noncash contributions (30%) | See the Partner's Instructions |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 19 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |

**Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | |
|---|---|---|
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | **B** Low-income housing credit (other) from pre-2008 buildings | |
| | **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | **D** Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | **E** Qualified rehabilitation expenditures (rental real estate) | |
| | **F** Other rental real estate credits | |
| | **G** Other rental credits | |
| | **H** Undistributed capital gains credit | Form 1040, line 73; check box a |
| | **I** Biofuel producer credit | |
| | **J** Work opportunity credit | See the Partner's Instructions |
| | **K** Disabled access credit | |

| | *Code* | Report on |
|---|---|---|
| | **L** Empowerment zone employment credit | |
| | **M** Credit for increasing research activities | See the Partner's Instructions |
| | **N** Credit for employer social security and Medicare taxes | |
| | **O** Backup withholding | |
| | **P** Other credits | |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | |
| | **B** Gross income from all sources | Form 1116, Part I |
| | **C** Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive category | |
| | **E** General category | Form 1116, Part I |
| | **F** Other | |
| | *Deductions allocated and apportioned at partner level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive category | |
| | **J** General category | Form 1116, Part I |
| | **K** Other | |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | |
| | **B** Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | **C** Depletion (other than oil & gas) | |
| | **D** Oil, gas, & geothermal — gross income | |
| | **E** Oil, gas, & geothermal — deductions | |
| | **F** Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | See the Partner's Instructions |
| | **B** Distribution subject to section 737 | |
| | **C** Other property | |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | **E** Basis of energy property | See the Partner's Instructions |
| | **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **H** Recapture of investment credit | See Form 4255 |
| | **I** Recapture of other credits | See the Partner's Instructions |
| | **J** Look-back interest — completed long-term contracts | See Form 8697 |
| | **K** Look-back interest — income forecast method | See Form 8866 |
| | **L** Dispositions of property with section 179 deductions | |
| | **M** Recapture of section 179 deduction | |
| | **N** Interest expense for corporate partners | |
| | **O** Section 453(l)(3) information | |
| | **P** Section 453A(c) information | |
| | **Q** Section 1260(b) information | |
| | **R** Interest allocable to production expenditures | See the Partner's Instructions |
| | **S** CCF nonqualified withdrawals | |
| | **T** Depletion information — oil and gas | |
| | **U** Reserved | |
| | **V** Unrelated business taxable income | |
| | **W** Precontribution gain (loss) | |
| | **X** Section 108(i) information | |
| | **Y** Net investment income | |
| | **Z** Other information | |

THE GALMOR FAMILY TRUST  46-7363977  PTPA0312L  08/17/17  Schedule K-1 (Form 1065) 2017

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

## BOX 2
## RENTAL REAL ESTATE ACTIVITIES

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND 15767 FM 1036 SHAMROCK, OK 79079 | 594. | 2,156. | $ -1,562. | PASSIVE | |
| | | TOTAL | $ -1,562. | | |

## BOX 13
## OTHER DEDUCTIONS

**\* DESCRIPTIVE INFORMATION**

I     PRODUCTION TAX FROM O & G ACTIVITIES.......................................  $     11.

## BOX 17
## ALTERNATIVE MINIMUM TAX (AMT) ITEMS

**CONTINUED FROM SCHEDULE K-1**

D      59,967.
E      24,859.

THE GALMOR FAMILY TRUST    46-7363977

SPSL1201L  07/06/17

GALMOR FAMILY LTD PARTNERSHIP    27-4132388

# 2017 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES
### (Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| THE GALMOR FAMILY TRUST | 46-7363977 |

**INCOME:**

| | | |
|---|---|---:|
| 1. | Gross income from oil and gas activities (Sch. K-1 line 17, Code D) | 59,967. |

**EXPENSES:**

| | | |
|---|---|---:|
| 2. | Production tax | 13. |
| 3. | Operating expenses | 24,846. |
| 4. | Depreciation | |
| 5. | Allocated overhead | |
| 6. | Other expenses | |
| 7. | **Total deductions allocable to oil and gas activities (Schedule K-1 line 17, Code E)** | 24,859. |
| 8. | **Net income from oil and gas activities (line 1 minus line 7)** | 35,108. |

**PASSTHROUGH EXPENSES:**

| | | |
|---|---|---:|
| 9. | Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) | |
| 10. | Dry hole costs (Schedule K-1 line 13, Code J) | |
| 11. | Section 179 expense deduction (Schedule K-1 line 12) | |

**DEPLETION INFORMATION:**

| | | |
|---|---|---:|
| 12. | Total cost depletion (greater than percentage) from all properties | |
| 13. | Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 6,999. |
| 14. | Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 15. | Total tentative depletion deduction (add lines 12, 13 and 14) | 6,999. |
| 16. | Total AMT cost depletion (greater than percentage) from all properties | |
| 17. | Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 6,999. |
| 18. | Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 19. | Total tentative AMT depletion deduction (add lines 16, 17 and 18) | 6,999. |

**OTHER INFORMATION:**

| | | |
|---|---|---:|
| 20. | Total percentage depletion in excess of basis | 6,999. |
| 21. | Total excess intangible drilling costs (IDC) | |

PTPL1101L  07/06/17

THE GALMOR FAMILY TRUST    46-7363977

**GALMOR FAMILY LTD PARTNERSHIP**
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

August 30, 2018

THE GALMOR CONTRIBUTION TRUST
PO BOX 349
SHAMROCK, TX 79079


RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2017 Return of Income

Dear THE GALMOR CONTRIBUTION TRUST:


Enclosed is your 2017 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2017 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.


Sincerely,



GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2017**

For calendar year 2017, or tax

☐ Final K-1    ☐ Amended K-1

651117

OMB No. 1545-0123

beginning [ / / 2017 ]  ending [ / / ]

## Partner's Share of Income, Deductions, Credits, etc.
► See separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| Part I | Information About the Partnership |

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |

**E** Partner's identifying number
82-7087205

**F** Partner's name, address, city, state, and ZIP code

THE GALMOR CONTRIBUTION TRUST
PO BOX 349
SHAMROCK, TX 79079

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner? ........ FIDUCIARY

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here. ............................... ☐

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | % | 49.5 % |
| Loss | % | 49.5 % |
| Capital | % | 49.5 % |

**K** Partner's share of liabilities at year end:

Nonrecourse ........................ $ _____
Qualified nonrecourse financing ........ $ _____
Recourse ........................... $ 298,802.

**L** Partner's capital account analysis:

Beginning capital account ............. $ 0.
Capital contributed during the year ..... $ _____
Current year increase (decrease) ....... $ -527.
Withdrawals & distributions ........... $ ( 55,756.)
Ending capital account ............... $ -56,283.

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

| 1 | Ordinary business income (loss) | 15 | Credits |
|---|---|---|---|
|  | -35,955. |  | - - - - - - - |
| 2 | Net rental real estate income (loss) |  |  |
| * | -1,171. |  | - - - - - - - |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
|  |  |  | - - - - - - - |
| 4 | Guaranteed payments |  |  |
|  |  |  | - - - - - - - |
| 5 | Interest income |  | - - - - - - - |
|  | 863. |  |  |
| 6a | Ordinary dividends |  | - - - - - - - |
|  |  |  |  |
| 6b | Qualified dividends |  | - - - - - - - |
|  |  |  |  |
| 7 | Royalties |  | - - - - - - - |
|  | 15,414. |  |  |
| 8 | Net short-term capital gain (loss) |  | - - - - - - - |
|  |  |  |  |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
|  |  | A | -2,161. |
| 9b | Collectibles (28%) gain (loss) |  |  |
|  |  | B | -61,002. |
| 9c | Unrecaptured section 1250 gain | * | STMT |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
|  | -7,583. |  |  |
| 11 | Other income (loss) |  | - - - - - - - |
|  |  |  | - - - - - - - |
|  |  | 19 | Distributions |
|  |  | A | 55,756. |
| 12 | Section 179 deduction |  |  |
| 13 | Other deductions | 20 | Other information |
| U | -49,144. |  |  |
|  |  | A | 16,277. |
| 14 | Self-employment earnings (loss) | T* | STMT |
| B | 19,450. |  |  |

*See attached statement for additional information.

F
O
R

I
R
S

U
S
E

O
N
L
Y

**BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.**

Schedule **K-1** (Form 1065) 2017

PTPA0312L  08/17/17

PAPP 0466

Schedule K-1 (Form 1065) 2017  GALMOR FAMILY LTD PARTNERSHIP  27-4132388  Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.



| | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | See the Partner's Instructions |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6 a** | **Ordinary dividends** | Form 1040, line 9a |
| **6 b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | **Code** | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub. 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | |
| | **D** Noncash contributions (30%) | See the Partner's Instructions |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 19 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |

**Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | |
|---|---|---|
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | **B** Low-income housing credit (other) from pre-2008 buildings | |
| | **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | **D** Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | **E** Qualified rehabilitation expenditures (rental real estate) | |
| | **F** Other rental real estate credits | |
| | **G** Other rental credits | |
| | **H** Undistributed capital gains credit | Form 1040, line 73; check box a |
| | **I** Biofuel producer credit | |
| | **J** Work opportunity credit | See the Partner's Instructions |
| | **K** Disabled access credit | |

| | | Report on |
|---|---|---|
| | **Code** | |
| | **L** Empowerment zone employment credit | |
| | **M** Credit for increasing research activities | |
| | **N** Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| | **O** Backup withholding | |
| | **P** Other credits | |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | |
| | **B** Gross income from all sources | Form 1116, Part I |
| | **C** Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive category | |
| | **E** General category | Form 1116, Part I |
| | **F** Other | |
| | *Deductions allocated and apportioned at partner level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive category | |
| | **J** General category | Form 1116, Part I |
| | **K** Other | |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | |
| | **B** Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | **C** Depletion (other than oil & gas) | |
| | **D** Oil, gas, & geothermal — gross income | |
| | **E** Oil, gas, & geothermal — deductions | |
| | **F** Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | |
| | **B** Distribution subject to section 737 | See the Partner's Instructions |
| | **C** Other property | |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | **E** Basis of energy property | See the Partner's Instructions |
| | **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **H** Recapture of investment credit | See Form 4255 |
| | **I** Recapture of other credits | See the Partner's Instructions |
| | **J** Look-back interest — completed long-term contracts | See Form 8697 |
| | **K** Look-back interest — income forecast method | See Form 8866 |
| | **L** Dispositions of property with section 179 deductions | |
| | **M** Recapture of section 179 deduction | |
| | **N** Interest expense for corporate partners | |
| | **O** Section 453(l)(3) information | |
| | **P** Section 453A(c) information | |
| | **Q** Section 1260(b) information | |
| | **R** Interest allocable to production expenditures | See the Partner's Instructions |
| | **S** CCF nonqualified withdrawals | |
| | **T** Depletion information — oil and gas | |
| | **U** Reserved | |
| | **V** Unrelated business taxable income | |
| | **W** Precontribution gain (loss) | |
| | **X** Section 108(i) information | |
| | **Y** Net investment income | |
| | **Z** Other information | |

THE GALMOR CONTRIBUTION TRUST  82-7087205  PTPA0312L 08/17/17  Schedule **K-1** (Form 1065) 2017

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

SCHEDULE K-1 (FORM 1065) 2017              **SUPPLEMENTAL INFORMATION**                          PAGE  3

**BOX 2**
**RENTAL REAL ESTATE ACTIVITIES**

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND | | | | | |
| 15767 FM 1036 SHAMROCK, OK 79079 | | | | | |
| | 594. | 2,156. $ | -1,562. | PASSIVE | |
| ROUNDING OR SPECIALLY ALLOCATED | | | | | |
| NET INCOME (LOSS) ADJUSTMENT | | | 391. | | |
| | | TOTAL $ | -1,171. | | |

**BOX 17**
**ALTERNATIVE MINIMUM TAX (AMT) ITEMS**

**CONTINUED FROM SCHEDULE K-1**

D          44,975.
E          18,645.

THE GALMOR CONTRIBUTION TRUST    82-7087205
SPSL1201L  07/06/17

PAPP 0468

GALMOR FAMILY LTD PARTNERSHIP   27-4132388

# 2017 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES
### (Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| THE GALMOR CONTRIBUTION TRUST | 82-7087205 |

**INCOME:**

| | |
|---|---|
| 1. **Gross income from oil and gas activities (Sch. K-1 line 17, Code D)** | 44,975. |

**EXPENSES:**

| | |
|---|---|
| 2. Production tax | 10. |
| 3. Operating expenses | 18,635. |
| 4. Depreciation | |
| 5. Allocated overhead | |
| 6. Other expenses | |
| 7. **Total deductions allocable to oil and gas activities (Schedule K-1 line 17, Code E)** | 18,645. |
| 8. **Net income from oil and gas activities (line 1 minus line 7)** | 26,330. |

**PASSTHROUGH EXPENSES:**

| | |
|---|---|
| 9. Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) | |
| 10. Dry hole costs (Schedule K-1 line 13, Code J) | |
| 11. Section 179 expense deduction (Schedule K-1 line 12) | |

**DEPLETION INFORMATION:**

| | |
|---|---|
| 12. Total cost depletion (greater than percentage) from all properties | |
| 13. Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 5,249. |
| 14. Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 15. Total tentative depletion deduction (add lines 12, 13 and 14) | 5,249. |
| 16. Total AMT cost depletion (greater than percentage) from all properties | |
| 17. Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 5,249. |
| 18. Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 19. Total tentative AMT depletion deduction (add lines 16, 17 and 18) | 5,249. |

**OTHER INFORMATION:**

| | |
|---|---|
| 20. Total percentage depletion in excess of basis | 5,249. |
| 21. Total excess intangible drilling costs (IDC) | |

PTPL1101L  07/06/17

THE GALMOR CONTRIBUTION TRUST   82-7087205

**Fill in this information to identify the case:**

Debtor name   **Galmor's/G&G Steam Service, Inc.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **18-20210**

☐ Check if this is an
    amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                    12/15

**Part 1:    Summary of Assets**

1.    ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*........................................................................................... $           215,000.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*......................................................................................... $         3,823,085.95

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*........................................................................................... $         4,038,085.95

**Part 2:    Summary of Liabilities**

2.    ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*................... $           289,426.72

3.    ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................ $         1,786,747.89

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................. +$         3,654,267.92

4.    **Total liabilities** ................................................................................................
   Lines 2 + 3a + 3b                                                                                                        $         5,730,442.53

**EXHIBIT**

3

DEPONENT NAME:  Galmor        DATE: 3 /24/21

**Fill in this information to identify the case:**

Debtor name   **Galmor's/G&G Steam Service, Inc.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **18-20210**

☐ Check if this is an
amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
■ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of
debtor's interest

3.      Checking, savings, money market, or financial brokerage accounts *(Identify all)*
Name of institution (bank or brokerage firm)          Type of account              Last 4 digits of account
number

| | | | |
|---|---|---|---|
| 3.1. | **Checking Account No. 443766**<br>**Great Plains National Bank**<br>**PO Box 488**<br>**Elk City, Oklahoma, 73648** | **Checking Account** | 3766 | $3,976.84 |
| 3.2. | **Checking AccountNo. 443762**<br>**Great Plains National Bank**<br>**PO Box 488**<br>**Elk City, Oklahoma, 73648** | **Checking Account** | 3762 | $1,671.56 |
| 3.3. | **Checking Account No. 14818**<br>**AIM Bank**<br>**305 N. Main Street**<br>**Shamrock, Texas 79079** | **Checking Account** | 4818 | $2,306.88 |
| 3.4. | **Savings Account No. -9453**<br>**Great Plains National Bank**<br>**PO Box 488**<br>**Elk City, Oklahoma, 73648** | **Savings** | 9453 | $589.57 |
| 3.5. | **Savings Account No. -4110**<br>**Great Plains National Bank**<br>**PO Box 488**<br>**Elk City, Oklahoma, 73648** | **Savings** | 4110 | $4,611.93 |

Debtor    **Galmor's/G&G Steam Service, Inc.**       Case number *(If known)* **18-20210**
        Name

| | | |
|---|---|---|
| **Savings Account No. -4064** | | |
| **Great Plains National Bank** | | |
| **PO Box 488** | | |
| 3.6.   **Elk City, Oklahoma, 73648** | **Savings**      4064 | **$815.76** |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**                                       **$13,972.54**
      Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**Part 2:**    **Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

    ■ No. Go to Part 3.
    ☐ Yes Fill in the information below.

**Part 3:**    **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

    ☐ No. Go to Part 4.
    ■ Yes Fill in the information below.

11.    **Accounts receivable**

      11a. 90 days old or less:      **421,978.50**   -      **0.00**   = ....      **$421,978.50**
                          face amount            doubtful or uncollectible accounts

12.    **Total of Part 3.**                                      **$421,978.50**
      Current value on lines 11a + 11b = line 12. Copy the total to line 82.

**Part 4:**    **Investments**

13. **Does the debtor own any investments?**

    ■ No. Go to Part 5.
    ☐ Yes Fill in the information below.

**Part 5:**    **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**

    ■ No. Go to Part 6.
    ☐ Yes Fill in the information below.

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

    ■ No. Go to Part 7.
    ☐ Yes Fill in the information below.

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

    ☐ No. Go to Part 8.
    ■ Yes Fill in the information below.

---

Debtor **Galmor's/G&G Steam Service, Inc.**     Case number *(if known)* **18-20210**
Name

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture**<br>**Office Furniture** | **$0.00** | N/A | **$10,000.00** |
| 40. | **Office fixtures** | | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software**<br>**Electronics: Computers, Printers, Xerox Machines** | **$0.00** | N/A | **$10,000.00** |
| 42. | **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 43. | **Total of Part 7.**<br>Add lines 39 through 42. Copy the total to line 86. | | | **$20,000.00** |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
 ■ No
 ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
 ■ No
 ☐ Yes

**Part 8:**    Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

 ☐ No. Go to Part 9.
 ■ Yes Fill in the information below.

| | General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 47. | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1. | **2013 MGL Conveyer** | **$0.00** | N/A | **$45,000.00** |
| 47.2. | **2013 Kleeman MC09I EVO Cone Crusher** | **$0.00** | N/A | **$350,000.00** |
| 47.3. | **Vehicles and Equipment Free and Clear of Liens.**<br>**See Attached List.** | **$0.00** | N/A | **$625,600.00** |
| 47.4. | **Vehicles and Equipment.**<br>**See Attached List.**<br>**These vehicles were paid in full, but then used as collateral on the note at Great Plains National Bank** | **$0.00** | N/A | **$1,250,483.59** |

Official Form 206A/B      Schedule A/B Assets - Real and Personal Property      page 3

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number *(if known)* | **18-20210** |
|---|---|---|---|
| | Name | | |

48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

51. **Total of Part 8.**

     Add lines 47 through 50. Copy the total to line 87.

$2,271,083.59

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
- ■ No
- ☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
- ■ No
- ☐ Yes

**Part 9:**    **Real property**

**54. Does the debtor own or lease any real property?**

- ☐ No.  Go to Part 10.
- ■ Yes Fill in the information below.

55.    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.   **Other: Office Building In Elk City, Oklahoma**<br>**112 Panel Road**<br>**Elk City, Oklahoma 73664**<br>**Legal Description: 1.51 Acres, Addition 425, Block 11N, Lot 21W** | Fee simple | $0.00 | N/A | $200,000.00 |
| 55.2.   **Storage Building in Shamrock, Texas**<br>**Physical Address: 805 W. Hwy 66 Shamrock, Texas 79079**<br>**Legal Description: E119 Lot 5 and W6 Lot 6, Block 3, Schlegel-Shamrock** | Fee simple | $0.00 | N/A | $15,000.00 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

PAPP 0474

| Debtor | **Galmor's/G&G Steam Service, Inc.** | | Case number *(If known)* | **18-20210** |
|---|---|---|---|---|
| | Name | | | |

**56.** **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

> $215,000.00

**57.** **Is a depreciation schedule available for any of the property listed in Part 9?**

■ No
☐ Yes

**58.** **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

■ No
☐ Yes

**Part 10:** **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No. Go to Part 11.
☐ Yes Fill in the information below.

**Part 11:** **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
■ Yes Fill in the information below.

Current value of
debtor's interest

**71.** **Notes receivable**
Description (include name of obligor)

**72.** **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

**73.** **Interests in insurance policies or annuities**

**74.** **Causes of action against third parties (whether or not a lawsuit
has been filed)**
**Amount Owed to Debtor by Galmor Family Limited
Partnership.**
**Debtor operated a rock quarry on Galmor Family
Limited Partnership land and paid a royalty of .50 per
ton of produced product. Debtor gave an advance to
Galmor Family Limited Partnership to cover their
personal expenses and bills. After the death of Steve
Galmor's father, Steve's mother couldn't pay her bills.
Debtor advanced money on the rock to be sold so his
mother could pay her bills.**

$186,341.19

| Nature of claim | Collection | |
|---|---|---|
| Amount requested | | $186,341.19 |

---

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number *(If known)* **18-20210** |
|---|---|---|
| | Name | |

| | | |
|---|---|---|
| **Amount Owed to Debtor by Galmor Family Limited Partnership**<br>Michael Stephen Galmor loaned funds to Galmor's/G&G Steam Service, Inc. In turn, Galmor's/G&G Steam Service, Inc. distributed those funds to Galmor Family Limited Partnership to pay payroll obligations and medical insurance for the Partnership's employees and also for medical aid for the care of Michael Stephen Galmor's mother. | | $384,902.74 |
| Nature of claim | Collection | |
| Amount requested | $384,902.74 | |

| | | |
|---|---|---|
| **Amount Owed to Debtor by Galmor Family Limited Partnership.**<br>Michael Stephen Galmor loaned funds to Galmor's/G&G Steam Service, Inc. In turn, Galmor's/G&G Steam Service, Inc. distributed those funds to Galmor Family Limited Partnership to pay off a handicap van for his mother that was financed at First State Bank. | | $24,807.39 |
| Nature of claim | Collection | |
| Amount requested | $24,807.39 | |

| | | |
|---|---|---|
| **Amount Owed to Debtor by Galmor Family Limited Partnership**<br>Michael Stephen Galmor loaned funds to Galmor's/G&G Steam Service, Inc. In turn, Galmor's/G&G Steam Service, Inc. distributed those funds to Galmor Family Limited Partnership to pay the wages of Michael Stephen Galmor and Deena Carter becuase the Galmor Family Limited Partnership couldn't support the wages. | | $500,000.00 |
| Nature of claim | Collection | |
| Amount requested | $500,000.00 | |

| | |
|---|---|
| 75. | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** |
| 76. | **Trusts, equitable or future interests in property** |
| 77. | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership |
| 78. | **Total of Part 11.**<br>Add lines 71 through 77. Copy the total to line 90. | $1,096,051.32 |
| 79. | **Has any of the property listed in Part 11 been appraised by a professional within the last year?**<br>■ No<br>☐ Yes |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

PAPP 0476

Debtor    **Galmor's/G&G Steam Service, Inc.**                Case number *(if known)*  **18-20210**
_____
Name

---

**Part 12:**    **Summary**
_____

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $13,972.54 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $421,978.50 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $20,000.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $2,271,083.59 | |
| 88. **Real property.** *Copy line 56, Part 9.* ......................................> | | $215,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $1,096,051.32 | |
| 91. **Total.** Add lines 80 through 90 for each column | $3,823,085.95 | + 91b.  $215,000.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $4,038,085.95 |

---

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 7

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

PAPP 0477

| Make | Type | Year | Model | Vin# | Market Value |
|---|---|---|---|---|---|
| Ford | Pickup | 2009 | F-250 | 1FTSX215X9EA34845 | 10,000 |
| Circle M | Trailer | 2005 | Circle M Trailer - 32'x102" 6800# | 1C9GS32245A634027 | 3,000 |
| Circle M | Trailer | 2005 | Circle M Trailer - 30'x102" 6400# | 1C9GS30245A634029 | 2,500 |
| Ford | Service Truck | 1997 | F350 Ford XL (white) | 1FDJX35G46FB11230 | 1,200 |
| Chevy | Pickup | 2003 | Silverado 1500 | 1GCEC14XX3Z334742 | 2,100 |
| Dodge | Pickup | 2002 | Ram 2500 | 3B6KF26602M261390 | 3,000 |
| Ford | Pickup | 1972 | 4 wheel drive | F26YNK21282 | 800 |
| Merrit | Trailer | 1989 | Merrit Cattle Trailer | 1MT2N4821JH006097 | 5,000 |
| Dodge | Sports Car | 2012 | Steve's Challenger CS8-CP | 2C3CDYCJOCH148125 | 42,000 |
| GMC | Service Truck | 2005 | 1 1/2 Ton Truck C5C-CB | 1GDE5C1245F532344 | 37,000 |
| Cadillac | Car | 1999 | 1999 Cadillac | 1G6KD54Y2XU742917 | 5,500 |
| Ford | Pickup | 2005 | Excursion | 1FMSU45P95EA31165 | 20,000 |
| Stock Trailer | Trailer | 2012 | 5x16 Stock Trailer | 1H9BL16282C484914 | 4,500 |
| Astec | Screener | | Astec Mobile Screen JCI GT165DF | T110183 | 145,000 |
| Peterbilt | Water Truck | 1997 | Peterbilt Water Truck | 1NPAL79X8VD438083 | 26,000 |
| Kleeman | Screener | 2013 | Kleeman MS19Z Mobiscreen | K054.0252 | 215,000 |
| Lincoln | Navigator | 2012 | Lincoln Navigator | 5LMJU3J56CEL03829 | 25,000 |
| Conveyor | Conveyor | | MS65 32 Hydraulic Wheeled Conveyor | 14M56532534 | 39,000 |
| Conveyor | Conveyor | | MS65 32 Hydraulic Wheeled Conveyor | 14M56532540 | 39,000 |

**FREE AND CLEAR OF ALL LIENS**

PAPP 0478

| Make | Type | Year | Model | Vin# | Market Value |
|------|------|------|-------|------|--------------|
| Caterpillar | Loader/Forklift | 2011 | 980H Loader | OJMS06159 | 250,000 |
| Caterpillar | Loader/Forklift | 2011 | 980H Loader | OJMS06296 | 250,000 |
| Caterpillar | Surface Miner | 2011 | Wirtgen 2200SM Surface miner | 821.0601 | 650,000 |
| Komatsu | Loader/Forklift | | WA500-6 Wheel Loader | A93060 | 130,000 |
| Komatsu | Loader/Forklift | 2012 | 380 Loader | 66184 | 110,000 |

**USED AS COLLATERAL AT GREAT PLAINS NATIONAL BANK**

**Fill in this information to identify the case:**

Debtor name **Galmor's/G&G Steam Service, Inc.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF TEXAS

Case number (if known) **18-20210**

☐ Check if this is an amended filing

Official Form 206D
# Schedule D: Creditors Who Have Claims Secured by Property
12/15

Be as complete and accurate as possible.

1. Do any creditors have claims secured by debtor's property?

  ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

  ■ Yes. Fill in all of the information below.

**Part 1:** List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** |

| 2.1 | **Beckham County Treasurer** Creditor's Name | Describe debtor's property that is subject to a lien **Office Building In Elk City, Oklahoma 112 Panel Road Elk City, Oklahoma 73664 Legal Description: 1.51 Acres, Addition 425, Block 11N, Lot 21W** | $3,426.72 | $200,000.00 |

**P.O. Box 600
Sayre, OK 73662**
Creditor's mailing address

Describe the lien
**Statutory Lien**
Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**2016 and 2017**
Last 4 digits of account number
**2336**

Do multiple creditors have an interest in the same property?
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Beckham County Treasurer
2. Great Plains National Bank**

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| 2.2 | **Great Plains National Bank** Creditor's Name | Describe debtor's property that is subject to a lien **Other: Office Building In Elk City, Oklahoma 112 Panel Road Elk City, Oklahoma 73664 Legal Description: 1.51 Acres, Addition 425, Block 11N, Lot 21W** | $22,000.00 | $200,000.00 |

**2017 W. 3rd St.
Elk City, OK 73644**
Creditor's mailing address

Describe the lien
**First Mortgage**
Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

PAPP 0480

Debtor    **Galmor's/G&G Steam Service, Inc.**    Case number (if know)    **18-20210**

Name

| | |
|---|---|
| Date debt was incurred | ☐ No |
| **12/29/2012** | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| Last 4 digits of account number | |
| **8672** | |
| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
| ☐ No | ☐ Contingent |
| ■ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| **Specified on line 2.1** | ☐ Disputed |

---

| | | | | |
|---|---|---|---|---|
| 2.3 | **Great Plains National Bank** | Describe debtor's property that is subject to a lien | Unknown | $1,250,483.59 |
| | Creditor's Name | **Vehicles and Equipment.** | | |
| | | **See Attached List.** | | |
| | | **These vehicles were paid in full, but then** | | |
| | **1300 South Main** | **used as collateral on the note at Great Plains** | | |
| | **Elk City, OK 73648** | **National Bank** | | |
| | Creditor's mailing address | | | |
| | | Describe the lien | | |
| | | **Security Interest** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | Creditor's email address, if known | ☐ Yes | | |
| | | Is anyone else liable on this claim? | | |
| | **Date debt was incurred** | ☐ No | | |
| | **09/2014** | ■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | Last 4 digits of account number | | | |
| | **2338** | | | |
| | Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply | | |
| | ■ No | ☐ Contingent | | |
| | ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

---

| | | | | |
|---|---|---|---|---|
| 2.4 | **InterBank** | Describe debtor's property that is subject to a lien | $55,000.00 | $300,000.00 |
| | Creditor's Name | **Harbison-Fischer Pumps, parts, equipment** | | |
| | **1620 W. 3rd.** | | | |
| | **Elk City, OK 73644** | | | |
| | Creditor's mailing address | Describe the lien | | |
| | | **Non-Purchase Money Security** | | |
| | | Is the creditor an insider or related party? | | |
| | | ■ No | | |
| | Creditor's email address, if known | ☐ Yes | | |
| | | Is anyone else liable on this claim? | | |
| | **Date debt was incurred** | ■ No | | |
| | **11/2015** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) | | |
| | Last 4 digits of account number | | | |
| | **1664** | | | |
| | Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply | | |
| | ■ No | ☐ Contingent | | |
| | ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated | | |
| | | ☐ Disputed | | |

---

| | | | | |
|---|---|---|---|---|
| 2.5 | **Wells Fargo Equipment Finance, Inc.** | Describe debtor's property that is subject to a lien | $209,000.00 | $350,000.00 |

---

Official Form 206D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 3

PAPP 0481

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if know) | 18-20210 |
|---|---|---|---|
| | Name | | |

| | |
|---|---|
| Creditor's Name | **2013 Kleeman MC09I EVO Cone Crusher** |
| **NW-5934** | |
| **PO Box 1450** | |
| **Minneapolis, MN** | |
| **55485-5934** | |
| Creditor's mailing address | **Describe the lien** |
| | **Security Interest** |
| | **Is the creditor an insider or related party?** |
| | ■ No |
| | ☐ Yes |
| Creditor's email address, if known | **Is anyone else liable on this claim?** |
| | ■ No |
| **Date debt was incurred** | ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H) |
| **09/18/2014** | |
| **Last 4 digits of account number** | |
| **NA** | |
| **Do multiple creditors have an interest in the same property?** | **As of the petition filing date, the claim is:** |
| | Check all that apply |
| ■ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

3.   Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.   $289,426.72

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| Don Dwight Sunderland<br>P.O. Box 31656<br>Amarillo, TX 79120-1117 | Line  2.5 | |

---

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

PAPP 0482

**Fill in this information to identify the case:**

Debtor name      **Galmor's/G&G Steam Service, Inc.**

United States Bankruptcy Court for the:      NORTHERN DISTRICT OF TEXAS

Case number (if known)    **18-20210**

☐ Check if this is an
   amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                                 12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**     **List All Creditors with PRIORITY Unsecured Claims**

1.  **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

☐ No. Go to Part 2.

■ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
    with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  |  | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Internal Revenue Service**<br>**P.O. Box 7346**<br>**Philadelphia, PA 19101-7346** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$0.00** | **$0.00** |
|  | Date or dates debt was incurred | Basis for the claim:<br>**FOR NOTICE PURPOSES ONLY** |  |  |
|  | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes |  |  |
| **2.2** | Priority creditor's name and mailing address<br>**IRS**<br>**P.O. Box 802501**<br>**Cincinnati, OH 45280-2501** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$973,760.26** | **$973,760.26** |
|  | Date or dates debt was incurred<br><br><br>**02/01/2016** | Basis for the claim:<br>**Payroll Taxes**<br>**2016-$456,562.07**<br>**2017-$382,085.71**<br>**2018-$135,112.48** |  |  |
|  | Last 4 digits of account number **2157**<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes |  |  |

PAPP 0483

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

---

**2.3**

| Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,698.96 | $0.00 |
|---|---|---|---|

**Oklahoma Employment Security Commission**
**401 E Broadway St**
**Sand Springs, OK 74063**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **04/30/2018** | **Unpaid Unemployment For 1st Quarter Of 2018** |

Last 4 digits of account number **0416**

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

**2.4**

| Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,980.00 | $0.00 |
|---|---|---|---|

**Oklahoma Tax Commision**
**P.O. Box 26930**
**Oklahoma City, OK 73126-0930**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **04/20/2018** | **Oklahoma Withholding Payroll Taxes for 1st Quarter of 2018** |

Last 4 digits of account number **6133**

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

**2.5**

| Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $778,415.43 | $0.00 |
|---|---|---|---|

**Oklahoma Tax Commision**
**P.O. Box 26930**
**Oklahoma City, OK 73126-0930**

Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **2013** | **Audit For 2013, 2014, & 2015** |

Last 4 digits of account number **6133**

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

**2.6**

| Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,519.34 | $2,519.34 |
|---|---|---|---|

**Oklahoma Tax Commission**
**2501 North Lincoln Blvd.**
**Oklahoma City, OK 73194**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

| Date or dates debt was incurred | Basis for the claim: |
|---|---|
| **05/2018** | **Sales Tax for May 2008** |

Last 4 digits of account number **6133**

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

■ No
☐ Yes

---

PAPP 0484

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if known) | 18-20210 |
|---|---|---|---|
| | Name | | |

| | | | | |
|---|---|---|---|---|
| 2.7 | Priority creditor's name and mailing address<br>**Texas Attorney General**<br>P.O. Box 12548<br>Austin, TX 78711 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $0.00 | $0.00 |
| | Date or dates debt was incurred | Basis for the claim:<br>**FOR NOTICE PURPOSES ONLY** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| | | | | |
|---|---|---|---|---|
| 2.8 | Priority creditor's name and mailing address<br>**Texas Comptroller**<br>**111**<br>**East 17th Street**<br>Austin, TX 78774 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $5,728.09 | $5,728.09 |
| | Date or dates debt was incurred<br>05/2018 | Basis for the claim:<br>**Sales Tax for May 2018** | | |
| | Last 4 digits of account number **1363**<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| | | | | |
|---|---|---|---|---|
| 2.9 | Priority creditor's name and mailing address<br>**Texas Workforce Commission**<br>2505 Lakeview Drive<br>Suite 300<br>Amarillo, TX 79109 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $5,645.81 | $5,645.81 |
| | Date or dates debt was incurred<br>2018 | Basis for the claim:<br>**Unemployment Tax** | | |
| | Last 4 digits of account number **1363**<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| | | | | |
|---|---|---|---|---|
| 2.10 | Priority creditor's name and mailing address<br>**U.S. Attorney General**<br>**U.S. Department of Justice**<br>10th & Pennsylvania Ave<br>Washington, DC 20530 | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $0.00 | $0.00 |
| | Date or dates debt was incurred | Basis for the claim:<br>**FOR NOTICE PURPOSES ONLY** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

Debtor **Galmor's/G&G Steam Service, Inc.**
_____
Name

Case number (if known)   **18-20210**

| 2.11 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $0.00 | $0.00 |

**U.S. Attorney's Office**
**1205 Texas Ave. Room 700**
**Lubbock, TX 79401**

Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**FOR NOTICE PURPOSES ONLY**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

**Part 2:**  List All Creditors with NONPRIORITY Unsecured Claims

3.  List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,144.50 |

**A Rental Company**
**4901 E Main Street**
**Weatherford, OK 73096**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **11/2017**
Last 4 digits of account number  **NA**

Basis for the claim:  **Deficiency on Equipment Rental.**
**Equipment no longer in Debtor's possession.**

Is the claim subject to offset? ■ No ☐ Yes

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $14.52 |

**Advanced Water Solutions**
**1509 S Van Buren St.**
**Enid, OK 73703-7857**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **04/30/2018**
Last 4 digits of account number  **NA**

Basis for the claim:  **Water Delivered**

Is the claim subject to offset? ■ No ☐ Yes

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $180,493.71 |

**AEG Petroleum LLC**
**P.O. Box 1003**
**Amarillo, TX 79105**

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2017**
Last 4 digits of account number  **7ECV**

Basis for the claim:  **Deficiency.**
**Lawsuit was filed by creditor.**

Is the claim subject to offset? ■ No ☐ Yes

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $482.44 |

**Albert Brothers**
**115 6th St.**
**Elk City, OK 73644**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **03/21/2018**
Last 4 digits of account number  **NA**

Basis for the claim:  **Safety Products**

Is the claim subject to offset? ■ No ☐ Yes

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,800.00 |

**American Express**
**P.O. Box 650448**
**Dallas, TX 75265-0448**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **Date Opened: 05/1/2013**
**Last Used: 06/11/2018**
Last 4 digits of account number  **3007**

Basis for the claim:  **Credit Card**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Galmor's/G&G Steam Service, Inc. | | Case number (if known) | 18-20210 |
|---|---|---|---|---|
| | Name | | | |

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $10,391.10 |
|---|---|---|---|

**Apex Remington, Inc.**
13505 E 61st Street
Suite A
Broken Arrow, OK 74012

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **03/19/2018**

Basis for the claim: **Parts**

Last 4 digits of account number **NA**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $366.60 |
|---|---|---|---|

**AT&T**
P.O. Box 105414
Atlanta, GA 30348-5414

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **NA**

Basis for the claim: **Placed In Collections Old Account**

Last 4 digits of account number **2112**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $51,168.44 |
|---|---|---|---|

**Bank Of America**
P.O. Box 15710
Wilmington, DE 19886-5710

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **2015**

Basis for the claim: **Credit Card**

Last 4 digits of account number **4430**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,943.73 |
|---|---|---|---|

**Barber Dyson Ford**
P.O. Box 743
Elk City, OK 73648

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **02/27/2018**

Basis for the claim: **Repairs and Parts**

Last 4 digits of account number **NA**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $150.02 |
|---|---|---|---|

**Beaver Express**
P.O. Box 1168
Woodward, OK 73802-1168

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **NA**

Basis for the claim: **Freight**

Last 4 digits of account number **2018**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,446.70 |
|---|---|---|---|

**Blue Cross Blue Shield**
PO Box 731428
Dallas, TX 75373-1428

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **06/2018**

Basis for the claim: **Unpaid Health Insurance**

Last 4 digits of account number **6551**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $225.71 |
|---|---|---|---|

**Camrock Quality**
P.O. Box 2407
Elk City, OK 73648

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **12/21/2017**

Basis for the claim: **Supplies**

Last 4 digits of account number **NA**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if known) | 18-20210 |
|---|---|---|---|
| | Name | | |

---

**3.13** | Nonpriority creditor's name and mailing address

**Canyon Oilfield Services**
11552 S Hwy 6
Elk City, OK 73644

Date(s) debt was incurred **01/11/2017**

Last 4 digits of account number **NA**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Subcontractor**

Is the claim subject to offset? ☑ No ☐ Yes

**$8,916.67**

---

**3.14** | Nonpriority creditor's name and mailing address

**Caterpillar Financial Services Corp**
2120 West End Avenue
Nashville, TN 37203

Date(s) debt was incurred **2017**

Last 4 digits of account number **1769**

As of the petition filing date, the claim is: *Check all that apply.*

☑ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Deficiency.**
**Lawsuit was filed by creditor.**

Is the claim subject to offset? ☑ No ☐ Yes

**Unknown**

---

**3.15** | Nonpriority creditor's name and mailing address

**Centergas Fuels, Inc.**
P.O. Box 2603
Pampa, TX 79065

Date(s) debt was incurred **06/01/2018**

Last 4 digits of account number **NA**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Propane**

Is the claim subject to offset? ☑ No ☐ Yes

**$1,368.00**

---

**3.16** | Nonpriority creditor's name and mailing address

**Chase**
P.O. Box 94014
Palatine, IL 60094-4014

Date(s) debt was incurred **2015**

Last 4 digits of account number **2286**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Credit Card**

Is the claim subject to offset? ☑ No ☐ Yes

**$25,909.01**

---

**3.17** | Nonpriority creditor's name and mailing address

**Cintas Corporation**
P.O. Box 631025
Cincinnati, OH 45263-1025

Date(s) debt was incurred **05/2018**

Last 4 digits of account number **NA**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Uniforms**

Is the claim subject to offset? ☑ No ☐ Yes

**$25.88**

---

**3.18** | Nonpriority creditor's name and mailing address

**CMI Drug Testing**
6704 Guada Coma
Shertz, TX 78154

Date(s) debt was incurred **04/2018**

Last 4 digits of account number **NA**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Drug Testing**

Is the claim subject to offset? ☑ No ☐ Yes

**$359.28**

---

**3.19** | Nonpriority creditor's name and mailing address

**CMT Engineering Inc.**
P.O. Box 1786
Dripping Springs, TX 78620

Date(s) debt was incurred **01/05/2017**

Last 4 digits of account number **NA**

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Rock Testing**

Is the claim subject to offset? ☑ No ☐ Yes

**$1,019.00**

---

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if known) | 18-20210 |
|---|---|---|---|
| | Name | | |

---

**3.20**

Nonpriority creditor's name and mailing address
**Crossroads**
**1627 North Main St.**
**Shamrock, TX 79079**

Date(s) debt was incurred  **04/30/2018**

Last 4 digits of account number  **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Fuel**

Is the claim subject to offset? ☑ No ☐ Yes

**$9,560.08**

---

**3.21**

Nonpriority creditor's name and mailing address
**Culligan Water Conditioning**
**P.O. Box 1597**
**Pampa, TX 79066-1597**

Date(s) debt was incurred  **12/2017**

Last 4 digits of account number  **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Water Softner Machine**

Is the claim subject to offset? ☑ No ☐ Yes

**$950.22**

---

**3.22**

Nonpriority creditor's name and mailing address
**Culver Electric LLC**
**P.O. Box 427**
**Elk City, OK 73648**

Date(s) debt was incurred  **03/21/2018**

Last 4 digits of account number  **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Generator**

Is the claim subject to offset? ☑ No ☐ Yes

**$999.00**

---

**3.23**

Nonpriority creditor's name and mailing address
**David W. Bank, M.D.**
**P.O. Box 528**
**Elk City, OK 73648**

Date(s) debt was incurred  **10/2017**

Last 4 digits of account number  **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Medical**

Is the claim subject to offset? ☑ No ☐ Yes

**$110.00**

---

**3.24**

Nonpriority creditor's name and mailing address
**Dennis J. Hefley**
**15400 County Road EE**
**Briscoe, TX 79011**

Date(s) debt was incurred  **08/2015**

Last 4 digits of account number  **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Unpaid Royalties on Hemphill Count Pit**

Is the claim subject to offset? ☑ No ☐ Yes

**$286,551.05**

---

**3.25**

Nonpriority creditor's name and mailing address
**Dental Select**
**PO Box 301680**
**Dallas, TX 75303**

Date(s) debt was incurred  **06/2018**

Last 4 digits of account number  **1455**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Unpaid Dental and Vision Insurance**

Is the claim subject to offset? ☑ No ☐ Yes

**$784.30**

---

**3.26**

Nonpriority creditor's name and mailing address
**Dickey Oilfield Sales Company**
**2211 Hwy 79 South**
**Wichita Falls, TX 76310**

Date(s) debt was incurred  **11/23/2017**

Last 4 digits of account number  **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Parts**

Is the claim subject to offset? ☑ No ☐ Yes

**$8,191.87**

---

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if known) | 18-20210 |
|---|---|---|---|
| | Name | | |

---

| 3.27 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,387.50 |
|---|---|---|---|

**Distribution Now**
P.O. Box 200822
Dallas, TX 75320-0822

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  04/18/2018

**Basis for the claim:**  Parts

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.28 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,869.14 |
|---|---|---|---|

**DJ's Rental**
911 South Main Street
Elk City, OK 73644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  08/22/2017

**Basis for the claim:**  Deficiency on Equipment Rental.
**Equipment no longer in Debtor's possession.**

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.29 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $659.56 |
|---|---|---|---|

**Dolese Bros. Co.**
P.O. Box 960144
Oklahoma City, OK 73196-0144

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  03/29/2018

**Basis for the claim:**  Rock

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.30 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,872.47 |
|---|---|---|---|

**Double H Oil Tools, Inc.**
P.O. Box 2473
Pampa, TX 79066-2473

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  05/11/21018

**Basis for the claim:**  Repairs

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.31 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,881.01 |
|---|---|---|---|

**Doug Gray Ford, Inc.**
P.O. Box 485
Sayre, OK 73662

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  03/09/2018

**Basis for the claim:**  Repairs and Parts

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.32 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $13,000.00 |
|---|---|---|---|

**Galmor FLP**
6994 US HWY 83
Shamrock, TX 79079

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  10/2017

**Basis for the claim:**  Loan

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.33 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $59,000.00 |
|---|---|---|---|

**Galmor's Roustabout Service, LLC**
320 Mary Drive
Elk City, OK 73644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  NA

**Basis for the claim:**  Loan

Last 4 digits of account number  Galmor's

Is the claim subject to offset? ■ No  ☐ Yes

---

**Schedule E/F: Creditors Who Have Unsecured Claims**

PAPP 0490

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

| 3.34 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $14,081.47 |
|---|---|---|---|

**GR Energy Services**
**2150 Town Square Place**
**Suite 410**
**Sugar Land, TX 77479**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **08/31/2015**

Basis for the claim:   **Parts**

Last 4 digits of account number   **Galmor's**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.35 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $850,173.59 |
|---|---|---|---|

**Great Plains National Bank**
**2017 W. 3rd St.**
**Elk City, OK 73644**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **04/2018**

Basis for the claim:   **Loan Paying Back Factored Invoiced**

Last 4 digits of account number   **6448**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.36 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $361.25 |
|---|---|---|---|

**Great Plains Pest Control**
**P.O. Box 192**
**Lefors, TX 79054**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **05/2018**

Basis for the claim:   **Pest Control Services**

Last 4 digits of account number   **Galmor's**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.37 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $14,278.91 |
|---|---|---|---|

**H.J. Garrison Oil Company**
**P.O. Box 231**
**Shamrock, TX 79079**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **02/2018**

Basis for the claim:   **Fuel**

Last 4 digits of account number   **Galmor's**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.38 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $204,335.79 |
|---|---|---|---|

**Harbison Fischer Manufacturing**
**P.O. Box 731403**
**Dallas, TX 75373-1403**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **2017**

Basis for the claim:   **Parts**

Last 4 digits of account number   **Galmor's**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.39 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,632.38 |
|---|---|---|---|

**Innovative Technology**
**P.O. Box 726**
**Elk City, OK 73648**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **08/2017**

Basis for the claim:   **IT Services**

Last 4 digits of account number   **Galmor's**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.40 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $14,158.49 |
|---|---|---|---|

**IPFS Corporation**
**P.O. Box 730223**
**Dallas, TX 75373-0223**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred   **06/2018**

Basis for the claim:   **Insurance**

Last 4 digits of account number   **1142**

Is the claim subject to offset? ■ No ☐ Yes

---

PAPP 0491

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

---

**3.41** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,074.32**

**Janning Welding**
918 N. Van Buren
Elk City, OK 73644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **10/2016**

Basis for the claim:  **Welding Services**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.42** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$6,678.29**

**Jones Passodelis**
Gulf Tower-Suite 3410
707 Grant Street
Pittsburgh, PA 15219

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **04/2018**

Basis for the claim:  **Legal Services**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.43** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$4,193.69**

**JWD International Marketing, Inc.**
P.O. Box 1000
Skiatook, OK 74070-5000

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **02/2017**

Basis for the claim:  **Parts**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.44** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,011,166.75**

**Kirby Smith Machinery, Inc.**
3922 I-40 E
Amarillo, TX 79103

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **12/20/2017**

Basis for the claim:  **Deficiency.**
**Lawsuit filed by creditor**

Last 4 digits of account number  **7150**

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.45** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$386.54**

**KJC Fire Safety Solutions**
805 Shore Dr.
Elk City, OK 73644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **05/2018**

Basis for the claim:  **Fire Extinguisher Maintenance**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.46** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown**

**Komatsu Financial**
1701 Golf Road, Suite 1-100
Rolling Meadows, IL 60008

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **09/15/2017**

Basis for the claim:  **Deficiency on repossessed equipment. Equipment**
**was repossessed on 09/15/2017.**

Last 4 digits of account number  **NA**

Is the claim subject to offset? ■ No  ☐ Yes

---

**3.47** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,031.29**

**Lease Consultants Corporation**
P.O. Box 71397
Des Moines, IA 50325

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **06/2018**

Basis for the claim:  **Deficiency on Equipment Rental.**
**Equipment no longer in Debtor's possession.**

Last 4 digits of account number  **0403**

Is the claim subject to offset? ■ No  ☐ Yes

---

Debtor    **Galmor's/G&G Steam Service, Inc.**        Case number (if known)    **18-20210**
_____
Name

| 3.48 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $43.76 |

**3.48**   Nonpriority creditor's name and mailing address

**Lindley Equipment**
P.O. Box 457
Cordell, OK 73632

Date(s) debt was incurred   **04/2018**

Last 4 digits of account number   **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Parts**

Is the claim subject to offset? ☒ No ☐ Yes

**$43.76**

---

**3.49**   Nonpriority creditor's name and mailing address

**M. B. McKee Company, Inc.**
2205 Avenue #
Lubbock, TX 79404

Date(s) debt was incurred   **03/2018**

Last 4 digits of account number   **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Parts**

Is the claim subject to offset? ☒ No ☐ Yes

**$3,298.74**

---

**3.50**   Nonpriority creditor's name and mailing address

**Marshall Discount Auto**
P.O. Box 451
Wheeler, TX 79096

Date(s) debt was incurred   **04/2018**

Last 4 digits of account number   **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Parts**

Is the claim subject to offset? ☒ No ☐ Yes

**$2,854.58**

---

**3.51**   Nonpriority creditor's name and mailing address

**Martins Air Conditioning**
2116 W. 20th St.
Elk City, OK 73644-9252

Date(s) debt was incurred   **04/25/2018**

Last 4 digits of account number   **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Replacement AC Unit for Elk City, OK Office**

Is the claim subject to offset? ☒ No ☐ Yes

**$3,825.00**

---

**3.52**   Nonpriority creditor's name and mailing address

**McLemore Sand & Top Soil**
11157 N. 1930 Road
Sayre, OK 73662

Date(s) debt was incurred   **05/2018**

Last 4 digits of account number   **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Supplies**

Is the claim subject to offset? ☒ No ☐ Yes

**$202.50**

---

**3.53**   Nonpriority creditor's name and mailing address

**MetLife- Group Benefits**
PO Box 804466
Kansas City, MO 64180

Date(s) debt was incurred   **06/2018**

Last 4 digits of account number   **8612**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Unpaid Voluntary Life Insurance**

Is the claim subject to offset? ☒ No ☐ Yes

**$446.30**

---

**3.54**   Nonpriority creditor's name and mailing address

**Mine Safety & Health Administration**
P.O. Box 790390
St. Louis, MO 63179-0390

Date(s) debt was incurred   **05/2018**

Last 4 digits of account number   **Galmor's**

As of the petition filing date, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Basis for the claim:   **Unpaid MSHA Ticket**

Is the claim subject to offset? ☒ No ☐ Yes

**$462.36**

---

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

PAPP 0493

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

---

| 3.55 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$9,646.33** |
|---|---|---|---|

**MPS Enterprise, Inc.**
1205 S. Eastern Ave.
Elk City, OK 73644

Date(s) debt was incurred  **05/24/2015**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Pipe**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.56 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,023.57** |
|---|---|---|---|

**NAPA Auto Parts**
716 West 3rd St.
Elk City, OK 73644

Date(s) debt was incurred  **12/2017**

Last 4 digits of account number  **1399**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Parts**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.57 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$26,922.08** |
|---|---|---|---|

**Navman Wireless**
32996 Collection Center Dr.
Chicago, IL 60693

Date(s) debt was incurred  **10/2016**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Deficiency on Equipment Rental.
Equipment no longer in Debtor's possession.**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.58 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$4,459.30** |
|---|---|---|---|

**NCW Insurance**
P.O. Box 506
Amarillo, TX 79105-0506

Date(s) debt was incurred  **04/2018**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Unpaid Bond and Insurance**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.59 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$367.92** |
|---|---|---|---|

**Nesmith Propane**
3502 West 3rd Street
Elk City, OK 73644

Date(s) debt was incurred  **01/2018**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Propane**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.60 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Oklahoma Tax Commission**
2501 North Lincoln Blvd.
Oklahoma City, OK 73194

Date(s) debt was incurred  **2018**

Last 4 digits of account number  **0944**

■ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Ongoing Audit**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.61 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$16,416.00** |
|---|---|---|---|

**P K & Company PLLC**
P.O. Box 1728
Elk City, OK 73648

Date(s) debt was incurred  **02/2017**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Accounting Services**

Is the claim subject to offset? ■ No  ☐ Yes

---

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if known) | 18-20210 |
|---|---|---|---|
| | Name | | |

---

**3.62**    Nonpriority creditor's name and mailing address

**PNC Equipment Finance, LLC**
**655 Business Center Drive**
**Suite 250**
**Horsham, PA 19044**

Date(s) debt was incurred __2017__

Last 4 digits of account number __6798,0CDJ__

As of the petition filing date, the claim is: *Check all that apply.*

■ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Deficiency.__
__Lawsuit filed by creditor,__

Is the claim subject to offset? ■ No ☐ Yes

**$360,409.42**

---

**3.63**    Nonpriority creditor's name and mailing address

**Powerscreen Texas, Inc.**
**P.O. Box 658**
**La Grange, TX 78945**

Date(s) debt was incurred __06/2017__

Last 4 digits of account number __Galmor's__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Deficiency on Equipment Rental.__
__Equipment no longer in Debtor's possession.__

Is the claim subject to offset? ■ No ☐ Yes

**$82,395.81**

---

**3.64**    Nonpriority creditor's name and mailing address

**Quality Heating & Cooling**
**311 S Nebraska**
**Shamrock, TX 79079**

Date(s) debt was incurred __10/2017__

Last 4 digits of account number __Galmor's__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __AC Repairs__

Is the claim subject to offset? ■ No ☐ Yes

**$118.80**

---

**3.65**    Nonpriority creditor's name and mailing address

**Quill Corporation**
**P.O. Box 37600**
**Philadelphia, PA 19101-0600**

Date(s) debt was incurred __04/25/2018__

Last 4 digits of account number __Galmor's__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Office Supplies__

Is the claim subject to offset? ■ No ☐ Yes

**$220.22**

---

**3.66**    Nonpriority creditor's name and mailing address

**Ryan Construction**
**9500 County Road 270**
**Zephyr, TX 76890**

Date(s) debt was incurred __08/2018__

Last 4 digits of account number __Galmor's__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Unpaid Subcontractor__

Is the claim subject to offset? ■ No ☐ Yes

**$17,006.00**

---

**3.67**    Nonpriority creditor's name and mailing address

**Safety-Kleen Systems, Inc.**
**P.O. Box 650509**
**Dallas, TX 75265-0509**

Date(s) debt was incurred __01/2017__

Last 4 digits of account number __Galmor's__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: __Parts__

Is the claim subject to offset? ■ No ☐ Yes

**$2,288.79**

---

**3.68**    Nonpriority creditor's name and mailing address

**Silver Arc Welding**
**P.O. Box 3366**
**Enid, OK 73702**

Date(s) debt was incurred __02/2018__

Last 4 digits of account number __Galmor's__

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Welding Services__

Is the claim subject to offset? ■ No ☐ Yes

**$270.00**

---

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number (if known) | 18-20210 |
|---|---|---|---|
| | Name | | |

---

**3.69** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$607.34**

Skinner Bros. Company
P.O. Box 21228
Dept 9
Tulsa, OK 74121-1228

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  03/2018

Basis for the claim:  **Parts**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset?  ■ No  ☐ Yes

---

**3.70** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$7,960.49**

Steve's Diesel & Truck Service
P.O. Box 166
Elk City, OK 73648

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  11/2016

Basis for the claim:  **Repairs**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset?  ■ No  ☐ Yes

---

**3.71** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,228.44**

SuddenLink
P.O. 660365
Dallas, TX 75266

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  2018

Basis for the claim:  **Utilities**

Last 4 digits of account number  **5701**

Is the claim subject to offset?  ■ No  ☐ Yes

---

**3.72** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$4,464.18**

T&W Tire
P.O. Box 258859
Oklahoma City, OK 73125-8859

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  05/2018

Basis for the claim:  **Tires**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset?  ■ No  ☐ Yes

---

**3.73** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$325.00**

Teddy's Glass
515 N Van Buren
Elk City, OK 73644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  11/2018

Basis for the claim:  **Glass Replacement**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset?  ■ No  ☐ Yes

---

**3.74** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$5,798.90**

Triple D Services
203 N Houston
Shamrock, TX 79079

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  09/2017

Basis for the claim:  **Trucking**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset?  ■ No  ☐ Yes

---

**3.75** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$8,095.05**

Troy Jones Equipment
1203 S Main St
Elk City, OK 73644

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  02/18/2018

Basis for the claim:  **Deficiency on Equipment Rental.
Equipment no longer in Debtor's possession.**

Last 4 digits of account number  **Galmor's**

Is the claim subject to offset?  ■ No  ☐ Yes

---

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

---

**3.76** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$251.49**

**Unified Life Insurance Co.**
P.O. Box 142153
Overland Park, KS 66225-5326

Date(s) debt was incurred **06/2018**

Last 4 digits of account number **55LP**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Life Insurance**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.77** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,211.95**

**Unifirst Corp.**
4210 S.E. 22nd Street
Amarillo, TX 79103

Date(s) debt was incurred **04/2018**

Last 4 digits of account number **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Uniform and Janitorial Services**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.78** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$27,498.04**

**United Healthcare**
P.O. Box 94017
Palatine, IL 60094-4017

Date(s) debt was incurred **09/01/2017**

Last 4 digits of account number **8289**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Health Insurance**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.79** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,025.72**

**United Rentals**
P.O. Box 840514
Dallas, TX 75284-0514

Date(s) debt was incurred **04/13/2018**

Last 4 digits of account number **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Deficiency on Equipment Rental. Equipment no longer in Debtor's possession.**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.80** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$55,313.38**

**Warren CAT**
P.O. Box 842116
Dallas, TX 75284-2116

Date(s) debt was incurred **2015**

Last 4 digits of account number **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Parts**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.81** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,242.56**

**WB Supply**
P.O. Box 206620
Dallas, TX 75320-6620

Date(s) debt was incurred **04/2018**

Last 4 digits of account number **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Parts**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.82** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$916.06**

**Weldon Parts**
1100 S. Main St.
Elk City, OK 73644

Date(s) debt was incurred **03/2018**

Last 4 digits of account number **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Parts**

Is the claim subject to offset? ■ No ☐ Yes

---

PAPP 0497

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

---

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $32,000.00 |
|---|---|---|---|

**Wells Fargo Business Line**
P.O. Box 51174
Los Angeles, CA 90051-5474

Date(s) debt was incurred  **2015**

Last 4 digits of account number  **2490**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Credit ard/Line of Credit**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $142,384.03 |
|---|---|---|---|

**Wells Fargo Vendor Financial Services**
MAC N9300-100
600 S 4th Street
Minneapolis, MN 55415

Date(s) debt was incurred  **2017**

Last 4 digits of account number  **8752**

■ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Deficiency. Lawsuit was filed by creditor.**

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $4,143.29 |
|---|---|---|---|

**Western Equipment**
404 Frisco Avenue
Clinton, OK 73601

Date(s) debt was incurred  **12/06/2017**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Parts**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $499.17 |
|---|---|---|---|

**Xerox Corporation**
P.O. Box 650361
Dallas, TX 75265-0361

Date(s) debt was incurred  **04/18/2018**

Last 4 digits of account number  **7993**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Deficiency on Copy Machine Rental. Equipment no longer in Debtor's possession.**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $10,762.11 |
|---|---|---|---|

**Yow Automotive**
221 S. Jefferson
Elk City, OK 73644

Date(s) debt was incurred  **12/22/2017**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Parts**

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.88 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $268.97 |
|---|---|---|---|

**Zee Medical**
13 NW 132nd Street
Oklahoma City, OK 73114

Date(s) debt was incurred  **04/04/2018**

Last 4 digits of account number  **Galmor's**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **First Aid Supplies**

Is the claim subject to offset? ■ No  ☐ Yes

---

**Part 3:    List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number (if known) | **18-20210** |
|---|---|---|---|
| | Name | | |

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| **4.1**   **Clay P. Booth**<br>**102 East Thatcher Street**<br>**Edmond, OK 73034** | Line   **3.44**<br><br>☐   Not listed. Explain ____ | __ |
| **4.2**   **J. Eric Atherholt**<br>**Flamm Walton Heimbach PC**<br>**794 Penllyn Pike**<br>**Blue Bell, PA 19422** | Line   **3.62**<br><br>☐   Not listed. Explain ____ | __ |
| **4.3**   **MARS**<br>**PO Box 470910**<br>**Tulsa, OK 74147** | Line   **3.80**<br><br>☐   Not listed. Explain ____ | __ |
| **4.4**   **Wade Alexander**<br>**P.O. Box 1003**<br>**Amarillo, TX 79105** | Line   **3.3**<br><br>☐   Not listed. Explain ____ | __ |

---

**Part 4:**   **Total Amounts of the Priority and Nonpriority Unsecured Claims**

**5.** Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a.   $ | **1,786,747.89** |
| **5b. Total claims from Part 2** | 5b.   +   $ | **3,654,267.92** |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c.    $ | **5,441,015.81** |

**Fill in this information to identify the case:**

Debtor name    **Galmor's/G&G Steam Service, Inc.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF TEXAS

Case number (if known)    **18-20210**

☐ Check if this is an
amended filing

Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.

■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal*    *Property*
(Official Form 206A/B).

**2. List all contracts and unexpired leases**

**State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

| | | |
|---|---|---|
| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Lease of rock pit in Gageby, Texas. Debtor pays $1.50 per ton of rock they take from the rock pit.** |
| | State the term remaining | |
| | List the contract number of any government contract | **Dennis Hefley** |
| 2.2. | State what the contract or lease is for and the nature of the debtor's interest | **Lease of rock pit in Twitty, Texas. Debtor pays $.50 per ton of rock taken from rock pit.** |
| | State the term remaining | |
| | List the contract number of any government contract | **Galmor FLP** |
| 2.3. | State what the contract or lease is for and the nature of the debtor's interest | **Lease of office located at 1001 Sooner Trend Road, Enid, Oklahoma 73701. $2,500.00/ Month. Lease expires 10/2018.** |
| | State the term remaining | |
| | List the contract number of any government contract | **Richard Roberts 3517 Lakeshore Drive Enid, OK 73703** |

| Fill in this information to identify the case: |
| --- |
| Debtor name **Galmor's/G&G Steam Service, Inc.** |
| United States Bankruptcy Court for the: NORTHERN DISTRICT OF TEXAS |
| Case number (if known) **18-20210** |

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

### 1. Do you have any codebtors?

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

### 2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

*Column 1:* **Codebtor**                                      *Column 2:* **Creditor**

| | Name | Mailing Address | Name | Check all schedules that apply: |
| --- | --- | --- | --- | --- |
| 2.1 | **Michael Stephen Galmor** | 6535 U.S. 83 Shamrock, TX 79079 | **Great Plains National Bank** | ■ D __2.2__ ☐ E/F _____ ☐ G _____ |
| 2.2 | **Michael Stephen Galmor** | 6535 U.S. 83 Shamrock, TX 79079 | **Great Plains National Bank** | ■ D __2.3__ ☐ E/F _____ ☐ G _____ |
| 2.3 | **Michael Stephen Galmor** | 6535 U.S. 83 Shamrock, TX 79079 | **AEG Petroleum LLC** | ☐ D _____ ■ E/F __3.3__ ☐ G _____ |
| 2.4 | **Michael Stephen Galmor** | 6535 U.S. 83 Shamrock, TX 79079 | **Kirby Smith Machinery, Inc.** | ☐ D _____ ■ E/F __3.44__ ☐ G _____ |
| 2.5 | **Michael Stephen Galmor** | 6535 U.S. 83 Shamrock, TX 79079 | **Komatsu Financial** | ☐ D _____ ■ E/F __3.46__ ☐ G _____ |

| Royalty Advances Given To FLP | | | Advance Payments Back To Galmor's/G&G Steam Service, In | | |
|---|---|---|---|---|---|
| Date | Check # | Amount | Date | Amount | |
| 5/27/2015 | 74844 | $ 15,000.00 | 5/30/2015 | $ 15,000.00 | Total Of Advances |
| 7/15/2015 | 75096 | $ 5,000.00 | 6/30/2015 | $ 5,000.00 | Total Payment Back |
| 7/22/2015 | 75120 | $ 5,000.00 | 8/31/2015 | $ 5,000.00 | Amount Still Owed |
| 8/18/2015 | 75265 | $ 3,500.00 | 8/31/2015 | $ 3,500.00 | |
| 9/1/2015 | 75318 | $ 5,000.00 | 8/31/2015 | $ 5,000.00 | |
| 9/4/2015 | 75350 | $ 5,000.00 | 8/31/2015 | $ 5,000.00 | |
| 9/14/2015 | 75410 | $ 15,000.00 | 9/30/2015 | $ 15,000.00 | |
| 9/16/2015 | 75421 | $ 10,000.00 | 9/30/2015 | $ 10,000.00 | |
| 9/18/2015 | 75425 | $ 15,000.00 | 9/30/2015 | $ 1,364.79 | |
| 9/22/2015 | 75436 | $ 6,800.00 | 10/31/2015 | $ 13,635.21 | |
| 10/7/2015 | 75517 | $ 15,000.00 | 10/31/2015 | $ 3,650.18 | |
| 10/14/2015 | 75545 | $ 38,000.00 | 11/30/2015 | $ 3,149.82 | |
| 10/19/2015 | 75562 | $ 5,000.00 | 11/30/2015 | $ 15,000.00 | |
| 10/22/2015 | 75573 | $ 39,000.00 | 11/30/2015 | $ 5,440.26 | |
| 10/29/2015 | 75621 | $ 2,000.00 | 12/31/2015 | $ 13,680.49 | |
| 11/3/2015 | 75628 | $ 15,000.00 | 1/31/2016 | $ 12,254.78 | |
| 11/6/2015 | 75657 | $ 10,000.00 | 2/29/2016 | $ 6,624.47 | |
| 11/17/2015 | 75706 | $ 10,000.00 | 2/29/2016 | $ 5,000.00 | |
| 11/18/2015 | 75710 | $ 20,000.00 | 2/29/2016 | $ 3,008.19 | |
| 11/20/2015 | 75720 | $ 3,000.00 | 3/30/2016 | $ 8,594.74 | |
| 12/3/2015 | 75767 | $ 5,000.00 | 3/31/2016 | $ 9,935.45 | |
| 12/14/2015 | 75816 | $ 30,000.00 | 4/30/2016 | $ 4,664.27 | |
| 12/16/2015 | 75834 | $ 10,000.00 | 5/25/2016 | $ 60,000.00 | |
| 12/18/2015 | 75842 | $ 6,200.00 | 5/31/2016 | $ 8,362.32 | |
| 1/6/2016 | 76408 | $ 10,000.00 | 6/30/2016 | $ 4,435.05 | |
| 1/12/2016 | 76429 | $ 7,000.00 | 6/30/2016 | $ 2,000.00 | |
| 1/15/2016 | 76431 | $ 10,000.00 | 6/30/2016 | $ 6,318.47 | |
| 1/20/2016 | 76448 | $ 15,000.00 | 6/30/2016 | $ 20,000.00 | |
| 2/3/2016 | 76503 | $ 5,000.00 | 7/31/2016 | $ 4,232.72 | |
| 2/5/2016 | 76508 | $ 3,500.00 | 8/31/2016 | $ 4,448.81 | |
| 2/8/2016 | 76516 | $ 4,000.00 | 8/31/2016 | $ 8,794.56 | |
| 2/10/2016 | 76523 | $ 3,500.00 | 9/30/2016 | $ 1,205.44 | |
| 2/18/2016 | 76539 | $ 10,000.00 | 9/30/2016 | $ 7,937.54 | |
| 3/7/2016 | 75897 | $ 15,000.00 | 10/31/2016 | $ 2,062.46 | |
| 3/10/2016 | 75914 | $ 5,000.00 | 10/31/2016 | $ 4,272.71 | |
| 3/21/2016 | 75942 | $ 10,000.00 | 11/30/2016 | $ 7,445.11 | |
| 4/4/2016 | 75990 | $ 12,500.00 | 12/30/2016 | $ 4,000.00 | |
| 4/13/2016 | 76004 | $ 1,650.00 | 12/31/2016 | $ 736.83 | |
| 4/14/2016 | 76022 | $ 3,500.00 | 1/31/2017 | $ 1,903.91 | |
| 4/18/2016 | 76032 | $ 6,500.00 | 2/28/2017 | $ 969.28 | |
| 4/21/2016 | 76043 | $ 3,500.00 | 3/31/2017 | $ 1,301.33 | |
| 5/3/2016 | 76070 | $ 3,500.00 | 4/30/2017 | $ 2,701.04 | |
| 5/10/2016 | 76106 | $ 2,000.00 | 5/31/2017 | $ 669.79 | |
| 5/18/2016 | 76125 | $ 2,500.00 | 5/31/2017 | $ 2,098.76 | |

EXHIBIT

4

DEPONENT NAME:
Galmor

DATE: 3 /24/21

**SG_016723**

c.

| | | |
|---|---|---|
| $ 561,050.00 | Advances Still Owed | $ 186,341.19 |
| $ 374,708.81 | Amount Owed For | $ 384,902.74 |
| $ 186,341.19 | FLP Cowboy and Care | |
| | Total Owed | $ 571,243.93 |

**SG_016724**

PAPP 0503

| Date | Check | Amount | | Date | Amount |
|---|---|---|---|---|---|
| 5/19/2016 | 76129 | $ 2,700.00 | | 6/30/2017 | $ 901.24 |
| 6/1/2016 | 76601 | $ 5,500.00 | | 6/30/2017 | $ 4,605.91 |
| 6/8/2016 | 76223 | $ 10,000.00 | | 7/30/2017 | $ 3,236.95 |
| 6/16/2016 | 76286 | $ 2,500.00 | | 8/31/2017 | $ 6,337.29 |
| 6/22/2016 | 76289 | $ 2,000.00 | | 9/30/2017 | $ 2,533.77 |
| 6/24/2016 | 76310 | $ 6,000.00 | | 10/31/2017 | $ 2,356.21 |
| 7/5/2016 | 76329 | $ 2,500.00 | | 11/30/2017 | $ 5,230.96 |
| 7/6/2016 | 2174 | $ 3,000.00 | | 12/31/2017 | $ 5,465.75 |
| 7/12/2016 | 76581 | $ 2,500.00 | | 1/31/2018 | $ 6,643.58 |
| 8/11/2016 | 76714 | $ 10,000.00 | | 2/28/2018 | $ 4,843.54 |
| 8/15/2016 | 76719 | $ 7,500.00 | | 3/31/2018 | $ 4,306.15 |
| 8/17/2016 | 2186 | $ 6,000.00 | | 4/30/2018 | $ 2,848.68 |
| 10/6/2016 | 1089 | $ 2,000.00 | | Total | $ 374,708.81 |
| 10/14/2016 | 1095 | $ 2,500.00 | | | |
| 10/6/2016 | 1089 | $ 2,000.00 | | | |
| 10/14/2016 | 1095 | $ 2,500.00 | | | |
| 10/24/2016 | 77040 | $ 3,500.00 | | | |
| 11/3/2016 | 1097 | $ 7,000.00 | | | |
| 11/8/2016 | Transfer | $ 6,000.00 | | | |
| 11/9/2016 | 1031 | $ 4,700.00 | | | |
| 11/29/2016 | 1041 | $ 2,000.00 | | | |
| 12/2/2016 | 1048 | $ 1,500.00 | | | |
| 12/12/2016 | 10047 | $ 2,500.00 | | | |
| 12/14/2016 | 77152 | $ 2,000.00 | | | |
| 12/20/2016 | 10050 | $ 4,000.00 | | | |
| 1/3/2017 | 77192 | $ 2,000.00 | | | |
| 1/4/2017 | 77194 | $ 5,000.00 | | | |
| 1/13/2017 | 77242 | $ 1,500.00 | | | |
| 2/8/2017 | 77349 | $ 2,500.00 | | | |
| 2/15/2017 | 77369 | $ 2,500.00 | | | |
| 3/15/2017 | 10230 | $ 5,000.00 | | | |
| 3/17/2017 | 10273 | $ 7,000.00 | | | |
| 4/3/2017 | 10330 | $ 2,000.00 | | | |
| 4/14/2017 | 10340 | $ 4,000.00 | | | |
| | Total | $ 561,050.00 | | | |

**SG_016725**

PAPP 0504

SG_016726

PAPP 0505

**Fill in this information to identify the case:**

Debtor name   **Galmor's/G&G Steam Service, Inc.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **18-20210**

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy      04/16

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:**   **Income**

1. **Gross revenue from business**

   ☐ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
   |---|---|---|
   | **From the beginning of the fiscal year to filing date:**<br>From **1/01/2018** to **Filing Date** | ■ Operating a business<br>☐ Other | $1,127,269.31 |
   | **For prior year:**<br>From **1/01/2017** to **12/31/2017** | ■ Operating a business<br>☐ Other | $3,673,156.44 |
   | **For year before that:**<br>From **1/01/2016** to **12/31/2016** | ■ Operating a business<br>☐ Other | $4,275,466.00 |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

   | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
   |---|---|---|

**Part 2:**   **List Certain Transfers Made Before Filing for Bankruptcy**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
   |---|---|---|---|

Official Form 207                        Statement of Financial Affairs for Non-Individuals Filing for [...]

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

EXHIBIT

5

DEPONENT NAME:   DATE:
Galmor          3 /24/21
BAPP 0506

Debtor   **Galmor's/G&G Steam Service, Inc.**                              Case number (if known)   **18-20210**

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|---|
| 3.1. | **Andrew Davis**<br>**Attorney at Law**<br>**100 North Broadway Avenue**<br>**Suite 3300**<br>**Oklahoma City, OK 73102** | 06/11/2018<br>for $8,000.00<br>05/10/2018<br>for $2,592.00<br>05/10/2018<br>for $1,869.00 | $12,461.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.2. | **Crossroads**<br>**1627 North Main Street**<br>**Shamrock, TX 79079** | 06/06/2018<br>for $8,000.00<br>05/18/2018<br>for $30.62<br>05/07/2018<br>for<br>$13,436.88<br>04/18/2018<br>for $3,500.00<br>04/10/2018<br>for $3,000.00<br>04/10/2018<br>for $2,462.20 | $30,429.70 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.3. | **Enterprise Fleet Management**<br>**PO Box 800089**<br>**Kansas City, MO 64180** | 05/20/2018<br>for $3,661.86<br>04/20/2018<br>for $4,858.22 | $8,520.08 | ■ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.4. | **Kevin Furnace**<br>**Elk City, OK 73644** | 06/08/2018<br>for $1,976.00<br>05/25/2018<br>for $2,096.00<br>05/11/2018<br>for $1,760.00<br>04/27/2018<br>for $2,184.00<br>04/13/2018<br>for $1,840.00<br>04/13/2018<br>for $1,840.00 | $11,696.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.5. | **Interbank**<br>**PO Box 1049**<br>**Elk City, OK 73648** | 05/10/2018<br>for $8,415.97 | $8,415.97 | ■ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.6. | **IPFS Corporation**<br>**PO Box 730223**<br>**Dallas, TX 75373** | 06/08/2018<br>for<br>$14,871.41<br>05/07/2018<br>for<br>$14,871.41<br>04/06/2018<br>for<br>$14,871.41 | $44,614.23 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other  Insurance Coverage |

Debtor **Galmor's/G&G Steam Service, Inc.**                     Case number *(if known)* **18-20210**

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.7. **Wells Fargo Equipment Finance** PO Box 1450 Minneapolis, MN 55485 | **04/19/2018** **for** **$12,514.66** | **$12,514.66** | ■ Secured debt ☐ Unsecured loan repayments ☐ Suppliers or vendors ☐ Services ☐ Other___ |

---

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ■ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ☐ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|
| **Komatsu Financial** 1701 Golf Road, Suite 1-100 Rolling Meadows, IL 60008 | **2015 WA470-7 Loader VIN A47151** | **09/15/2017** | **$99,058.00** |
| **Komatsu Financial** 1701 Golf Road, Suite 1-100 Rolling Meadows, IL 60008 | **2016 AW380-8 Loader VIN A74197** | **09/15/2017** | **$132,619.00** |
| **Komatsu Financial** 1701 Golf Road, Suite 1-100 Rolling Meadows, IL 60008 | **2013 WA470-7 Loader VIN 10068** | **09/15/2017** | **$97,080.00** |
| **Komatsu Financial** 1701 Golf Road, Suite 1-100 Rolling Meadows, IL 60008 | **2012 MS19Z Mobiscreen VIN K0540216** | **09/15/2017** | **$33,000.00** |
| **Komatsu Financial** 1701 Golf Road, Suite 1-100 Rolling Meadows, IL 60008 | **2014 MS19Z Mobiscreen VIN K0540264** | **09/15/2017** | **$81,000.00** |
| **Komatsu Financial** 1701 Golf Road, Suite 1-100 Rolling Meadows, IL 60008 | **2015 MS19D Mobiscreen VIN K0550416** | **09/15/2017** | **$151,933.00** |

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

---

| Debtor | Galmor's/G&G Steam Service, Inc. | Case number *(if known)* | **18-20210** |
|---|---|---|---|

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

**Part 3:**    Legal Actions or Assignments

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Kirby-Smith Machinery, Inc. vs Galmor's/G&G Steam Services, Inc., succesor by merger of Galmor's, Inc. with and into G&G Steam Service, Inc.; and Michael Stephen Galmor**<br>**CJ-2017-7149** | Collection | **District Court of Oklahoma County**<br>**320 Robert S. Kerr Avenue**<br>**Oklahoma City, OK 73102** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.2. | **Wells Fargo Vendor Financial Services, LLC vs G&G Steam Service, Inc aka Galmor's/G&G Steam Service, Inc.**<br>**CJ-17-101** | Collection | **District Court of Oklahoma County**<br>**320 Robert S. Kerr Avenue**<br>**Oklahoma City, OK 73102** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.3. | **AEG Petroleum, LLC vs Galmor's/G&G Steam Service, Inc. and Michael Stephen Galmor**<br>**107287-E-CV** | Collection | **108th District Court of Potter County**<br>**501 S. Filmore Street**<br>**Amarillo, TX 79101** | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.4. | **ECN Financial, LLC vs Galmor's/G&G Steam Services, Inc., and Steve Galmor vs Total Equipment and Rental, LLC dba Bobcat of Oklahoma City**<br>**17-CV-02760-CDJ** | Collection | **District Court for the Eastern District Court of Pennsylvania**<br>**504 Hamilton Street**<br>**Allentown, PA 18101** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.5. | **Caterpillar Financial Services Corporation vs Galmor's/G&G Steam Service, Inc and Steve N. Galmor**<br>**CJ-2017-69** | Collection | **District Court of Beckham County**<br>**104 S. 3rd Street**<br>**Sayre, OK 73662** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| 7.6. | **Oklahoma Tax Commission Audit ID: A585170944** | Ongoing Audit | **Oklahoma Tax Commission**<br>**2501 North Lincoln Blvd.**<br>**Oklahoma City, OK 73194** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

| Debtor | **Galmor's/G&G Steam Service, Inc.** | | Case number *(if known)* | **18-20210** |

| | Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.7. | **Galmor's/G&G Steam Service, Inc. and SGM Leasing, LLC vs Advantage Energy Services. LLC CJ-2018-02034** | Collection | **District Court of Tulsa County** 333 W. 4th Street Suite 411 Tulsa, OK 74103 | ■ Pending ☐ On appeal ☐ Concluded |

**8. Assignments and recievership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:   Certain Gifts and Charitable Contributions**

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

**Part 5:   Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

**Part 6:   Certain Payments or Transfers**

**11. Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Tarbox Law, P.C. 2301 Broadway Lubbock, TX 79401** | **$25,000.00 Retainer** | 06/18/2018 | $25,000.00 |
| | Email or website address | | | |
| | Who made the payment, if not debtor? | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Debtor   **Galmor's/G&G Steam Service, Inc.**                          Case number *(if known)*   **18-20210**

Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:   Previous Locations**

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

**Part 8:   Health Care Bankruptcies**

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:   Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

■ No.
☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

**Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

Debtor **Galmor's/G&G Steam Service, Inc.**      Case number *(if known)* **18-20210**

---

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

**Part 11:**    **Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:**    **Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ No.
☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

Official Form 207      Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy      page **7**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

PAPP 0512

Debtor    **Galmor's/G&G Steam Service, Inc.**                                    Case number *(if known)*  **18-20210**

---

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number |
|---|---|---|
| | | Do not include Social Security number or ITIN. |
| | | **Dates business existed** |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| Name and address | Date of service From-To |
|---|---|
| 26a.1.  **Kellye Fuchs** **PK & Company** **PO Box 1728** **Elk City, OK 73648** | **02/2004- Present** |
| 26a.2.  **Deena Carter** **PO Box 226** **Shamrock, TX 79079** | **06/2001- Present** |
| 26a.3.  **Matthew Brooks** **1901 Iowa Circle** **Sayre, OK 73662** | **06/2014- Present** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.  **Oklahoma Tax Commission** **2501 North Lincoln Blvd.** **Oklahoma City, OK 73194** | **On-going** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

---

| Debtor | **Galmor's/G&G Steam Service, Inc.** | Case number *(if known)* **18-20210** |
|---|---|---|

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. **Kellye Fuchs**<br>**P K Company**<br>**P.O. Box 1728**<br>**Elk City, OK 73648** | |
| 26c.2. **Debtor** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

**Name and address**

| 26d.1. | **Great Plains National Bank**<br>**PO Box 488**<br>**Elk City, OK 73648** |
|---|---|
| 26d.2. | **Interbank**<br>**PO Box 1049**<br>**Elk City, OK 73648** |
| 26d.3. | **NCW Insurance**<br>**PO Box 506**<br>**Amarillo, TX 79105** |

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Michael Stephen Galmor** | **6535 US Hwy 83**<br>**Shamrock, TX 79079** | **President** | **100%** |

**29.** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

■ No
☐ Yes. Identify below.

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
■ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|

Debtor    **Galmor's/G&G Steam Service, Inc.**                                        Case number *(if known)* **18-20210**

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1 | **Michael Stephen Galmor** | **$91,874.18** | **Last 12 Months** | **Salary** |
| | **Relationship to debtor**<br>**President** | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

- ■ No
- ☐ Yes. Identify below.

Name of the parent corporation                                    Employer Identification number of the parent corporation

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

- ■ No
- ☐ Yes. Identify below.

Name of the pension fund                                    Employer Identification number of the parent corporation

**Part 14:    Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on      **July  2, 2018**

**/s/ Michael Stephen Galmor**                              **Michael Stephen Galmor**
Signature of individual signing on behalf of the debtor      Printed name

Position or relationship to debtor    **President**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
■ No
☐ Yes

In re:   Michael Stephen Galmor                          Case No. 18-20209-rlj11

### DECLARATION CONCERNING DEBTOR'S AMENDED SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I, Michael Stephen Galmor, declare under penalty of perjury that I have read the foregoing Schedules A/B and C consisting of 19 pages, and that they are true and correct to the best of my knowledge, information and belief.

Date: _10-26-18_                          _M. St L_
                                          Michael Stephen Galmor

November 1, 2018
Deena Carter

DEENA CARTER
Notary ID # 130508495
My Commission Expires
January 22, 2020

00323558.WPD - ver

EXHIBIT
6

| DEPONENT NAME: | DATE: |
|---|---|
| Galmor | 3 /24/21 |

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| Debtor 1 | **Michael Stephen Galmor** | |
| | First Name          Middle Name          Last Name | |
| Debtor 2 | | |
| (Spouse, if filing) | First Name          Middle Name          Last Name | |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF TEXAS | |
| Case number | **18-20209** | ■ Check if this is an amended filing |

## Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

1.1

**6535 US Hwy 83**
_____
Street address, if available, or other description


**Shamrock      TX     79079-0000**
City           State     ZIP Code


**Wheeler**
_____
County

**What is the property?** Check all that apply
■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Homestead (Residence)  on 175 Acres, with Bunkhouse.**
**Legal Description: H and GN, Block 17, out of W/2 of Sec. 64**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?  **$500,000.00**
Current value of the portion you own?  **$500,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property
(see instructions)

Debtor 1  **Michael Stephen Galmor**                    Case number *(if known)*  **18-20209**

**1.2**  **If you own or have more than one, list here:**

**Quartz Mountain Nature Park**
**Rt. 1 Box 57**
Street address, if available, or other description

**Lone Wolf**        **OK**        **73655-0000**
City                State        ZIP Code

**Kiowa**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$175,000.00** | **$175,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

☐ **Check if this is community property** (see instructions)

**2 Mobile Homes at lake.**
**Mobile homes are attached to property and cannot be moved.**
**Legal Description:**
**Tract 158 x 190.98 in Lots 1 and 2, SE Section 215-20 657/357 SWD**
**1982 Solitaire Mobile Home Serial No. N868937**
**SE/4 of Section 21, T5N, R20W of the Indian Base and Meridaian, Kiowa County, Oklahoma.**

**1998 Champion Mobile Home Serial No. 4659**

---

**1.3**  **If you own or have more than one, list here:**

**6525 US Hwy 83**
Street address, if available, or other description

**Shamrock**        **TX**        **79079-0000**
City                State        ZIP Code

**Wheeler**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$35,000.00** | **$35,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

☐ **Check if this is community property** (see instructions)

**Double Wide Mobile Home on 7.15 Acres**
**Legal Description: H and GN, Block 17, Section 64, W/PT**
**Mobile Home Serial No. TEX0206976/77.**

---

Debtor 1    **Michael Stephen Galmor**                                      Case number *(if known)*  **18-20209**

**If you own or have more than one, list here:**

**1.4**

| | |
|---|---|
| **Sayre, Oklahoma**<br>**Sec 28 T10 R22** | |
| Street address, if available, or other description | |

| | | |
|---|---|---|
| **Sayre** | **OK** | **73622-0000** |
| City | State | ZIP Code |

| |
|---|
| **Beckham** |
| County |

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☑ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**2 Mobile Homes:**
**2005 Crystal Valley Mobile Home. Serial No. CV533411V**
**2005 Hart Homes Mobile Home. Serial No. 50002**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$16,000.00** | **$16,000.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ **Check if this is community property** (see instructions)

---

**If you own or have more than one, list here:**

**1.5**

| |
|---|
| **South Frontage Road** |
| Street address, if available, or other description |

| | | |
|---|---|---|
| **Sayre** | **OK** | **73622-0000** |
| City | State | ZIP Code |

| |
|---|
| **Beckham** |
| County |

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☑ Land
☐ Investment property
☐ Timeshare
☑ Other **Building**

**Who has an interest in the property?** Check one

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Storage Building at Sayre on 5 Acres**
**WEST HALF (W1/2) of the NORTHEAST QUARTER (NE1/4) of Section**
**Seventeen (17), Township Nine (9) North, Range Twenty-Three (23) West**
**of Indian Meridian, Beckham County, Oklahoma.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$18,500.00** | **$18,500.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ **Check if this is community property** (see instructions)

---

Official Form 106A/B                          Schedule A/B: Property                          page 3

Debtor 1 __Michael Stephen Galmor__     Case number *(if known)* __18-20209__

**If you own or have more than one, list here:**

1.6

**CR 14**

Street address, if available, or other description

**What is the property?** Check all that apply

- ☐ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☑ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Shamrock**    **TX**    **79079-0000**
City     State     ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $320,000.00 | $320,000.00 |

**Who has an interest in the property?** Check one

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Wheeler**

County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

**320 Acres. Grass Only. No Farming**
**Legal Description: H and GN, Block 17, Section 88, W/2, 320 Acres**

---

**If you own or have more than one, list here:**

1.7

**1200 S. Washington Street**

Street address, if available, or other description

**What is the property?** Check all that apply

- ☑ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☑ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Elk City,**    **OK**    **73644-0000**
City     State     ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $20,000.00 | $20,000.00 |

**Who has an interest in the property?** Check one

- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Beckham**

County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

**House and Lots behind old shop**
**Lot 1,2,5,6,7,8,9,10 in Block 134 of the Original Town of Elk City, Oklahoma**
**and**
**West 75 Feet of Lot 6,7,8,9,20, of Block 13, of the Original Town of Elk City, Oklahoma**

---

Debtor 1    **Michael Stephen Galmor**                                    Case number *(if known)*    **18-20209**

**If you own or have more than one, list here:**

1.8

**6994 US Hwy 83**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
■ Other    **office and storage buildings**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$25,000.00** | **$25,000.00** |

**Shamrock    TX    79079-0000**
City          State    ZIP Code

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

**Wheeler**
County

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Other: Office at Gin Yard**
**Legal Description: H and GN, Block A-8, Section 3, 16.8 Acres**

---

**If you own or have more than one, list here:**

1.9

**Sayre, Oklahoma**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$480,000.00** | **$480,000.00** |

**Sayre    OK    73662-0000**
City          State    ZIP Code

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

**Beckham**
County

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Farm Land: 480 Acres in Beckham County Oklahoma**
**SW/4 Less 1 Acre Tract and S/2 NW/4 of Section 28. Township 10 North, Range 22, Beckham County, Oklahoma**
**SE/4 less 8 acres, Section 29, Township 10 North, Range 22, Beckham County, Oklahoma**
**W/2 NE/4 Section 29, Township 10 North, Range 22, Beckham County, Oklahoma**

---

Debtor 1 **Michael Stephen Galmor**  Case number (if known) **18-20209**

**If you own or have more than one, list here:**

1.10

**Intersection of CR 1320 and CR 2160**
Street address, if available, or other description

**Sentinel**  **OK**  **73664-0000**
City  State  ZIP Code

**Kiowa**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Farm Land: 5 acres and house with barns in Kiowa County, Oklahoma**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$30,000.00** | **$30,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

☐ Check if this is community property (see instructions)

---

**If you own or have more than one, list here:**

1.11

**Rocky Oklahoma**
Street address, if available, or other description

**Rocky**  **OK**  **73661-0000**
City  State  ZIP Code

**Washita**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Farm Land: 120 acres in Washita County Oklahoma
North Half (N/2) of the South Half (S/2) of the SW Quarter of Section 34, Township Eight (8). Range Eighteen (18), Oklahoma.
and
South Half (N/2) of the South Half (S/2) of the SW Quarter of Section 34, Township Eight (8). Range Eighteen (18) Washita County, Oklahoma.**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$120,000.00** | **$120,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

☐ Check if this is community property (see instructions)

---

PAPP 0522

Debtor 1 **Michael Stephen Galmor**                     Case number *(if known)* **18-20209**

### 1.1 2 If you own or have more than one, list here:

**NA**

Street address, if available, or other description

City                State        ZIP Code

**Beckham/Greer**

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other   **Oil Wells**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**60 Oil Wells, Oklahoma**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$162,000.00** | **$162,000.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

### 1.1 3 If you own or have more than one, list here:

**NA**

Street address, if available, or other description

City                State        ZIP Code

**Beckham**

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other   **Oil Wells**

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**6 Oil Wel, Oklahoma**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$108,000.00** | **$108,000.00** |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................................=>**   | **$2,009,500.00** |

**Part 2: Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1    **Michael Stephen Galmor**                                      Case number *(if known)*    **18-20209**

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | | | |
|---|---|---|---|---|
| **3.1** | Make: **Ford** | **Who has an interest in the property?** Check one | *Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: **F150** | ■ Debtor 1 only | | |
| | Year: **2011** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: **57,000** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$22,000.00** | **$22,000.00** |

| | | | | |
|---|---|---|---|---|
| **3.2** | Make: **Ford** | **Who has an interest in the property?** Check one | *Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: **Thunderbird** | ■ Debtor 1 only | | |
| | Year: **1972** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: **NA** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$1,000.00** | **$1,000.00** |

| | | | | |
|---|---|---|---|---|
| **3.3** | Make: **Pontiac** | **Who has an interest in the property?** Check one | *Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: **TransAm** | ■ Debtor 1 only | | |
| | Year: **1976** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: **NA** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$1,500.00** | **$1,500.00** |

| | | | | |
|---|---|---|---|---|
| **3.4** | Make: **Ford** | **Who has an interest in the property?** Check one | *Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: **F-250** | ■ Debtor 1 only | | |
| | Year: **1970** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | Approximate mileage: **NA** | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$1,000.00** | **$1,000.00** |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

| | | | | |
|---|---|---|---|---|
| **4.1** | Make: **Aircraft** | **Who has an interest in the property?** Check one | *Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | Model: **C172 Cessna** | ■ Debtor 1 only | | |
| | Year: **1955** | ☐ Debtor 2 only | **Current value of the entire property?** | **Current value of the portion you own?** |
| | | ☐ Debtor 1 and Debtor 2 only | | |
| | Other information: | ☐ At least one of the debtors and another | | |
| | | ☐ Check if this is community property (see instructions) | **$8,000.00** | **$8,000.00** |

Debtor 1   **Michael Stephen Galmor**                                        Case number *(if known)*   **18-20209**

| 4.2 | Make: | **Boat** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

Model:   **Crownline**

Year:   **2002**

Other Information:

Who has an interest in the property? Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this is community property (see instructions)

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$7,500.00** | **$7,500.00** |

| 4.3 | Make: | **Kenner** |

Model:   **Boat**

Year:   **2006**

Other Information:

Who has an interest in the property? Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$7,500.00** | **$7,500.00** |

5   Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here........................................................................=>

**$48,500.00**

**Part 3:   Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own? Do not deduct secured claims or exemptions.

6.  **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes.  Describe.....

**Furniture and household goods at Debtor's Floydada residence. The following does not include any furnishings or items that are part of the estate of Shirley Jo Galmor and currently pending in the matter of the Estate of Shirley Jo Galmor, Deceased, Case No. 3822, in the County Court of Wheeler County, Texas.**
**1 Couch - $40.00**
**1 Chair - $40.00**
**1 Coffee Table - $20.00**
**1 Refrigerator - $200.00**
**1 Microwave - $50.00**
**1 Bunkbed - $100.00**
**2 Queen Beds - $200.00**
**2 Dressers - $100.00**
**1 Table and Chairs - $100.00**

**$850.00**

Debtor 1   **Michael Stephen Galmor**                              Case number *(if known)*   **18-20209**

---

| **Furniture and household goods at Debtor's Lake House residence. The following does not include any furnishings or items that are part of the estate of Shirley Jo Galmor, Deceased, Case No. 3822, In the County Court of Wheeler County, Texas.** | |
| 1 Couch - $100.00 | |
| 1 Chair - $75.00 | |
| 1 Recliner - $75.00 | |
| 1 Glider - $50.00 | |
| 1 Refrigerator - $200.00 | |
| 1 Propane Stove - $75.00 | |
| 1 Microwave - $25.00 | |
| 1 Bunkbed - $300.00 | |
| 2 Queen Beds - $500.00 | |
| 4 Dressers - $700.00 | |
| 4 Night Stands - $300.00 | |
| 2 Futons - $350.00 | |
| 1 Table and Chairs - $100.00 | $2,850.00 |

---

| **Furniture and household goods at Debtor's Twitty Residence.  The following list does not include any furnishings or items that are part of the estate of Shirley Jo Galmor, Deceased, Case No. 3822, In the County Court of Wheeler County, Texas.** | |
| 1 Couch - $150.00 | |
| 3 Chairs - $100.00 | |
| 1 Electric Stove - $75.00 | |
| 1 Microwave - $25.00 | |
| 1 Queen Bed - $100.00 | |
| 1 Dresser - $100.00 | |
| 1 Night Stand - $50.00 | |
| 1 Bar and Stools - $100.00 | $700.00 |

---

| **Furniture and household goods in storage.  The following does not include any furnishings or items that are part of the estate of Shirley Jo Galmor and currently pending in the matter of the Estate of Shirley Jo Galmor, Deceased, Case No. 3822, In the County Court of Wheeler County, Texas.** | |
| 2 Beds - $100.00 | |
| 1 Dresser - $50.00 | |
| 1 Chest - $25.00 | |
| 1 Night Stand - $50.00 | $225.00 |

---

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

   ☐ No
   ■ Yes. Describe.....

| 2 TV's - $300 | $300.00 |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

   ■ No
   ☐ Yes. Describe.....

---

Debtor 1    **Michael Stephen Galmor** _____    Case number _(if known)_ __18-20209__

**9. Equipment for sports and hobbies**
   _Examples:_ Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☐ No
   ■ Yes. Describe.....

| Saddles, tack | $1,000.00 |
|---|---|

**10. Firearms**
   _Examples:_ Pistols, rifles, shotguns, ammunition, and related equipment
   ☐ No
   ■ Yes. Describe.....

| Snakecharmer 410 shotgun  (Value: $300.00)<br>870 Remington Pump (Value: $200.00) | $500.00 |
|---|---|

| Winchester 22 Automatic Rifle | $100.00 |
|---|---|

**11. Clothes**
   _Examples:_ Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes. Describe.....

| Clothes | $200.00 |
|---|---|

**12. Jewelry**
   _Examples:_ Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes. Describe.....

| 2 pair of diamond earrings given to Debtor by his mother - $700.00<br>Wedding Rings - $300.00 | $1,000.00 |
|---|---|

**13. Non-farm animals**
   _Examples:_ Dogs, cats, birds, horses
   ■ No
   ☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...................................................................................

| $7,725.00 |
|---|

**Part 4:**    **Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own?<br>Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
   _Examples:_ Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ■ No
   ☐ Yes................................................................................................................

Debtor 1   **Michael Stephen Galmor** _____   Case number *(if known)*   **18-20209**

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes.......................

| | | | Institution name: | |
|---|---|---|---|---|
| 17.1. | Checking | | **Checking Account No. 100153955**<br>**Aimbank**<br>**PO Box 590**<br>**Shamrock, Texas 79079** | $401.82 |
| 17.2. | Checking | | **Checking Account No. 4021197**<br>**First State Bank of Mobeetie**<br>**PO Box 8**<br>**Mobettie, Texas 79061** | $2,104.03 |
| 17.3. | Checking | | **Checking Account No. 2303007560**<br>**Happy State Bank**<br>**711 North Main**<br>**Shamrock, Texas 79079** | $17.66 |
| 17.4. | Checking | | **Checking Account No. 7230755**<br>**Interbank**<br>**PO Box 1049**<br>**Elk City, OK 73644** | $0.00 |
| 17.5. | Checking | | **Checking Account No. 443739**<br>**Great Plains National Bank**<br>**PO Box 448**<br>**Elk City, OK 79648** | $0.00 |
| 17.6. | Checking | | **Checking Account No. 395242**<br>**Great Plains National Bank**<br>**PO Box 448**<br>**Elk City, OK 79648** | $0.00 |
| 17.7. | Savings | | **Savings Account No. 6865959**<br>**Interbank**<br>**PO Box 1049**<br>**Elk City, OK 73644** | $1.30 |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No
☐ Yes.................   Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
■ Yes.  Give specific information about them...................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| **Galmor's/G&G Steam Services, Inc.** | **100%** | % | $0.00 |
| **SGM Leasing, LLC** | **100%** | % | $325,000.00 |
| **SGM Management, LLC** | **100%** | % | $0.00 |
| **SGM Real Estate, LLC** | **100%** | % | $0.00 |

Debtor 1    **Michael Stephen Galmor**                                       Case number *(if known)*    **18-20209**

| | | | |
|---|---|---|---|
| **MSG Oil and Gas** | **100%** | % | **$40,000.00** |
| **Galmor Land and Cattle** | **100%** | % | **$0.00** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
■ No
☐ Yes. Give specific information about them
           Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
☐ No
■ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| **401(k)** | **401(k)- Policy No. 831418**<br>**Mass Mutual**<br>**PO Box 1583**<br>**Hartford, CT 06144-1583** | **$48,000.00** |

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
■ No
☐ Yes. ...................                  Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
■ No
☐ Yes.............     Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes.............     Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
☐ No
■ Yes. Give specific information about them...

| | |
|---|---|
| **Life Estates: Galmor Contribution Trust, Galmor Family Trust, Galmor Family Limited Partnership** | **Unknown** |

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes. Give specific information about them...

**Money or property owed to you?**                                                        **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

Debtor 1    **Michael Stephen Galmor**        Case number *(if known)*   **18-20209**

**28. Tax refunds owed to you**

■ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No

☐ Yes. Give specific information......

**30. Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security
           benefits; unpaid loans you made to someone else

☐ No

■ Yes. Give specific information..

| | |
|---|---|
| **Amount Owed to Debtor by Galmor Family Limited Partnership.**<br>**Claim: $1,310,807.00** | **Unknown** |
| **Amount Owed to Debtor by Galmor's/G&G Steam Service, Inc.**<br>**Claim: $2,470,135.03** | **Unknown** |

**31. Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No

☐ Yes. Name the insurance company of each policy and list its value.
                 Company name:                          Beneficiary:                    Surrender or refund value:

**32. Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☐ No

■ Yes. Give specific information..

| | |
|---|---|
| **Inheritance: 25% owner of Galmor Family Trust and Galmor Family Limited Partnership** | **Unknown** |

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No

☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No

☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**

■ No

☐ Yes. Give specific information..

**36.   Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached**
     for Part 4. Write that number here................................................................................................................

                                                          **$415,524.81**

**Part 5:   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

Debtor 1    **Michael Stephen Galmor**                                    Case number *(if known)*   **18-20209**

37. **Do you own or have any legal or equitable interest in any business-related property?**
   ■ No. Go to Part 6.
   ☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
   ☐ No. Go to Part 7.
   ■ Yes.  Go to line 47.

Current value of the portion you own? Do not deduct secured claims or exemptions.

47. **Farm animals**
   *Examples:* Livestock, poultry, farm-raised fish
   ☐ No
   ■ Yes................

| | |
|---|---|
| 120 Head of Cattle | $104,000.00 |
| 5 Head of Horses | $5,000.00 |
| 84 Head of Yearlings | $71,000.00 |

48. **Crops—either growing or harvested**
   ■ No
   ☐ Yes. Give specific information.....

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**
   ☐ No
   ■ Yes................

| | |
|---|---|
| 2004 John Deere 7820 Row Tractor and 2008 John Deere 4995 Swather | $150,000.00 |

50. **Farm and fishing supplies, chemicals, and feed**
   ■ No
   ☐ Yes................

51. **Any farm- and commercial fishing-related property you did not already list**
   ■ No
   ☐ Yes. Give specific information.....

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ...................................................................................................................

| |
|---|
| $330,000.00 |

| Part 7: | Describe All Property You Own or Have an Interest In That You Did Not List Above |
|---|---|

Debtor 1   **Michael Stephen Galmor**                                    Case number *(if known)*   **18-20209**

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    ■ No
    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................................   | $0.00

| Part 8: | List the Totals of Each Part of this Form |
|---------|-------------------------------------------|

| | | | |
|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ................................................................................................ | | $2,009,500.00 |
| 56. | **Part 2: Total vehicles, line 5** | $48,500.00 | |
| 57. | Part 3: Total personal and household items, line 15 | $7,725.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $415,524.81 | |
| 59. | Part 5: Total business-related property, line 45 | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $330,000.00 | |
| 61. | Part 7: Total other property not listed, line 54 | + $0.00 | |
| 62. | **Total personal property.** Add lines 56 through 61... | **$801,749.81** | Copy personal property total ⟶ **$801,749.81** |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62 | | **$2,811,249.81** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

PAPP 0532

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Michael Stephen Galmor** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF TEXAS |
| Case number | **18-20209** |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt

4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:     Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own Copy the value from *Schedule A/B* | Amount of the exemption you claim *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **6535 US Hwy 83 Shamrock, TX 79079 Wheeler County Homestead (Residence)  on 175 Acres, with Bunkhouse. Legal Description: H and GN, Block 17, out of W/2 of Sec. 64** Line from *Schedule A/B*: **1.1** | $500,000.00 | ☑ $288,420.10 ☐ 100% of fair market value, up to any applicable statutory limit | Tex. Const. art. XVI, §§ 50, 51, Tex. Prop. Code §§ 41.001-.002 |
| **2011 Ford F150 57,000 miles** Line from *Schedule A/B*: **3.1** | $22,000.00 | ☑ $22,000.00 ☐ 100% of fair market value, up to any applicable statutory limit | Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(9) |
| **1970 Ford F-250 NA miles** Line from *Schedule A/B*: **3.4** | $1,000.00 | ☑ $1,000.00 ☐ 100% of fair market value, up to any applicable statutory limit | Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(3) |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com
Best Case Bankruptcy

PAPP 0533

Debtor 1    **Michael Stephen Galmor**                                   Case number (if known)    **18-20209**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| **Furniture and household goods at Debtor's Floydada residence.  The** following does not include any furnishings or items that are part of the estate of Shirley Jo Galmor and currently pending in the matter of the **Estate of Shirley Jo Galmor, Deceased, Case N**<br>Line from *Schedule A/B*: **6.1** | $850.00 | ■ $850.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(1)** |
| **Furniture and household goods at Debtor's Lake House residence.  The** following does not include any furnishings or items that are part of the estate of Shirley Jo Galmor and currently pending in the matter of the **Estate of Shirley Jo Galmor, Deceased, Case**<br>Line from *Schedule A/B*: **6.2** | $2,850.00 | ■ $2,850.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(1)** |
| **Furniture and household goods at Debtor's Twitty Residence.  The** following list does not include any furnishings or items that are part of the estate of Shirley Jo Galmor and currently pending in the matter of the **Estate of Shirley Jo Galmor, Deceased, Cas**<br>Line from *Schedule A/B*: **6.3** | $700.00 | ■ $700.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(1)** |
| **Furniture and household goods in storage.  The following does not** include any furnishings or items that are part of the estate of Shirley Jo Galmor and currently pending in the matter of the Estate of Shirley Jo Galmor, Deceased, Case No. 3822, in the Coun<br>Line from *Schedule A/B*: **6.4** | $225.00 | ■ $225.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(1)** |
| **2 TV's - $300**<br>Line from *Schedule A/B*: **7.1** | $300.00 | ■ $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(1)** |
| **Saddles, tack**<br>Line from *Schedule A/B*: **9.1** | $1,000.00 | ■ $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(3)** |
| **Snakecharmer 410 shotgun  (Value: $300.00)** **870 Remington Pump (Value: $200.00)**<br>Line from *Schedule A/B*: **10.1** | $500.00 | ■ $500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(7)** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

PAPP 0534

Debtor 1  **Michael Stephen Galmor** _____    Case number (if known)    **18-20209**

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own<br><br>Copy the value from Schedule A/B | Amount of the exemption you claim<br><br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| **Clothes**<br>Line from Schedule A/B: **11.1** | $200.00 | ■  $200.00<br>☐  100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(5)** |
| **2 pair of diamond earrings given to Debtor by his mother - $700.00**<br>**Wedding Rings - $300.00**<br>Line from Schedule A/B: **12.1** | $1,000.00 | ■  $1,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(6)** |
| **401(k): 401(k)- Policy No. 831418**<br>**Mass Mutual**<br>**PO Box 1583**<br>**Hartford, CT 06144-1583**<br>Line from Schedule A/B: **21.1** | $48,000.00 | ■  $48,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code § 42.0021** |
| **120 Head of Cattle**<br>Line from Schedule A/B: **47.1** | $104,000.00 | ■  $9,600.00<br>☐  100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(10)** |
| **5 Head of Horses**<br>Line from Schedule A/B: **47.2** | $5,000.00 | ■  2,000.00<br>☐  100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(10)** |
| **2004 John Deere 7820 Row Tractor and 2008 John Deere 4995 Swather**<br>Line from Schedule A/B: **49.1** | $150,000.00 | ■  $7,100.00<br>☐  100% of fair market value, up to any applicable statutory limit | **Tex. Prop. Code §§ 42.001(a)(1), (2), 42.002(a)(3)** |

3.  **Are you claiming a homestead exemption of more than $160,375?**
(Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

☐  No

■  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ■  No

    ☐  Yes

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Michael Stephen Galmor** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF TEXAS | | |
| Case number (if known) | **18-20209** | | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy          4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Give Details About Your Marital Status and Where You Lived Before**

1.   **What is your current marital status?**

☐ Married
■ Not married

2.   **During the last 3 years, have you lived anywhere other than where you live now?**

☐ No
■ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| P.O. Box 2199 Elk City, OK 73648 | From-To: **2010- 2013** | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 From-To: |

3.   **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

☐ No
■ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2    Explain the Sources of Your Income**

4.   **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
     Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
     If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 Sources of income Check all that apply. | Gross income (before deductions and exclusions) | Debtor 2 Sources of income Check all that apply. | Gross income (before deductions and exclusions) |
|---|---|---|---|---|
| From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | **$55,920.02** | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Oper | |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com

EXHIBIT
7
DEPONENT NAME: Galmor          DATE: 3  12/4/21

PAPP 0536

Debtor 1 **Michael Stephen Galmor**     Case number *(if known)* **18-20209**

| | Debtor 1<br>Sources of income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) | Debtor 2<br>Sources of income<br>Check all that apply. | Gross income<br>(before deductions<br>and exclusions) |
|---|---|---|---|---|
| | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $41,013.33 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| **For last calendar year:**<br>**(January 1 to December 31, 2017 )** | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $111,840.04 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $114,205.29 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $134,897.64 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| **For the calendar year before that:**<br>**(January 1 to December 31, 2016 )** | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $102,467.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $103,384.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $800,000.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $93,426.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |

PAPP 0537

| Debtor 1 | **Michael Stephen Galmor** | Case number *(if known)* | **18-20209** |
|---|---|---|---|

**5.**    **Did you receive any other income during this year or the two previous calendar years?**

Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

|  | Debtor 1<br>Sources of income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) | Debtor 2<br>Sources of income<br>Describe below. | Gross income<br>(before deductions<br>and exclusions) |
|---|---|---|---|---|
| From January 1 of current year until<br>the date you filed for bankruptcy: | **Rent House and<br>Building** | $5,400.00 |  |  |
| For last calendar year:<br>(January 1 to December 31, 2017 ) | **Rent House and<br>Building** | $9,000.00 |  |  |

---

**Part 3:**    **List Certain Payments You Made Before You Filed for Bankruptcy**

**6.**    **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

■   **No.**    Neither Debtor 1 nor Debtor 2 has primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

     During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?

     ☐ No.    Go to line 7.

     ■ Yes    List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

     * Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

☐   **Yes.**   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

     During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

     ☐ No.    Go to line 7.

     ☐ Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount<br>paid | Amount you<br>still owe | Was this payment for ... |
|---|---|---|---|---|
| **Great Plains National Bank<br>PO Box 488<br>Elk City, OK 73648** | 04/24/2018 for<br>$5,068.83<br>03/26/2018 for<br>$5,068.83 | $10,137.66 | $30,412.00 | ☐ Mortgage<br>☐ Car<br>☐ Credit Card<br>■ Loan Repayment<br>☐ Suppliers or vendors<br>☐ Other___ |

| Debtor 1 | **Michael Stephen Galmor** | Case number (*if known*) | **18-20209** |
|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

**Part 4:**    Identify Legal Actions, Repossessions, and Foreclosures

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Kirby-Smith Machinery, Inc.**<br>**vs**<br>**Galmor's/G&G Steam Services,**<br>**Inc., succesor by merger of**<br>**Galmor's, Inc. with and into G&G**<br>**Steam Service, Inc.; and Michael**<br>**Stephen Galmor**<br>**CJ-2017-7149** | **Garnishment** | **District Court of Wheeler**<br>**County**<br>**400 S. Main Street**<br>**Wheeler, TX 79096** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Audit**<br>**A585170944** | **on going audit -**<br>**most recent**<br>**correspondence**<br>**shows payment**<br>**due of 778,415.43** | **Oklahoma Tax Commission**<br>**P.O. Box 269054**<br>**Oklahoma City, OK**<br>**73126-9054** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Kirby Smith Machinery, Inc.**<br>**vs**<br>**SGM Leasing, LLC and Michael**<br>**Stephen Galmor**<br>**CJ-2017-7150** | **Collection** | **District Court of Oklahoma**<br>**County**<br>**320 Robert S. Kerr Avenue**<br>**Oklahoma City, OK 73102** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| **AEG Petroleum, LLC**<br>**vs**<br>**Galmor's/G&G Steam Service, Inc.**<br>**and Michael Stephen Galmor**<br>**107287-E-CV** | **Collection** | **108th District Court of**<br>**Potter County**<br>**501 S. Filmore Street**<br>**Amarillo, TX 79101** | ☐ Pending<br>☐ On appeal<br>■ Concluded |

Debtor 1  **Michael Stephen Galmor**                                        Case number *(if known)* **18-20209**

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **PNC Finacial, LLC**<br>**vs**<br>**Galmor's/G&G Steam Services,**<br>**Inc., and Steve Galmor**<br>**vs**<br>**Total Equipment and Rental, LLC**<br>**dba Bobcat of Oklahoma City**<br>**2:17-CV-02760-CDJ** | Collection | **Montgomery County Court**<br>**of Common Pleas**<br>**2 E. Airy Street**<br>**Norristown, PA 19401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Caterpillar Financial Services**<br>**Corporation**<br>**vs**<br>**Galmor's/G&G Steam Service, Inc**<br>**and Steve N. Galmor**<br>**CJ-2017-69** | Collection | **District Court of Beckham**<br>**County**<br>**104 S. 3rd Street**<br>**Sayre, OK 73662** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ■ No. Go to line 11.
    ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property | Date | Value of the property |
|---|---|---|---|
| | Explain what happened | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

    ■ No
    ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

    ■ No
    ☐ Yes

**Part 5:   List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

    ■ No
    ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| Person to Whom You Gave the Gift and Address: | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

    ■ No
    ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

| Debtor 1 | **Michael Stephen Galmor** | Case number (*if known*) | **18-20209** |
|---|---|---|---|

---

**Part 6:    List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

    ■ No
    ☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

---

**Part 7:    List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
    Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

    ☐ No
    ■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Tarbox Law, P.C.<br>2301 Broadway<br>Lubbock, TX 79401<br>Galmor's/G&G Steam Service, Inc. | $25,000.00 Retainer | 06/18/2018 | $25,000.00 |
| InCharge Debt Solutions<br>5750 Major Blvd<br>Suite 310,<br>Orlando, FL 32819 | $25.00 Credit Counseling Course | 06/18/2018 | $25.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
    Do not include any payment or transfer that you listed on line 16.

    ■ No
    ☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
    Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

    ☐ No
    ■ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Darrel Dunn<br>11721 N. 2000 Rd.<br>Elk City, OK 73644 | Quarter of Section 28 in Beckham County, Oklahoma<br>$232,365.00 | Sold for $232,365.00 | 06/07/2017 |
| None | | | |

---

PAPP 0541

Debtor 1 **Michael Stephen Galmor**  Case number (*if known*) **18-20209**

| Person Who Received Transfer Address | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Person's relationship to you | | | |
| Darrel Dunn 11721 N. 2000 Rd. Elk City, OK 73644 | 240 Acres in Section 28, Beckahm County, Oklahoma | Sold for $250,000.00 | 04/2018 |
| None | | | |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)
- ■ No
- ☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

---

**Part 8:** List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.
- ■ No
- ☐ Yes. *Fill in the details.*

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**
- ☐ No
- ■ Yes. Fill in the details.

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|
| Aimbank 305 N. Main Shamrock, TX 79079 | Deena Carter PO Box 226 Shamrock, Texas 79079 | Legal Papers, Jewlery | ☐ No ■ Yes |

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**
- ■ No
- ☐ Yes. Fill in the details.

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

---

**Part 9:** Identify Property You Hold or Control for Someone Else

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**
- ☐ No
- ■ Yes. Fill in the details.

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

---

Debtor 1 **Michael Stephen Galmor**　　　　　　　　　　Case number (*if known*) **18-20209**

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|
| **Galmor Family Trust**<br>**P.O. Box 349**<br>**Shamrock, TX 79079** | **Wheeler Co., Texas** | **Oil & Gas**<br>**Debtor owns 1/4 interest in**<br>**the property.**<br>**He is the administrator of the**<br>**Trust.** | $79,200.00 |
| **Galmor Family Limited Partnership**<br>**P.O. Box 349**<br>**Shamrock, TX 79079** | **Wheeler Co., Texas** | **3,600 acres of land.**<br>**Debtor owns 1/4 interest in**<br>**the property.**<br>**He is the manager of the**<br>**Partnership.** | $3,600,000.00 |

**Part 10:** Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

- *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
- *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
- *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

- ■ No
- ☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:** Give Details About Your Business or Connections to Any Business

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

- ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
- ☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)
- ☐ A partner in a partnership
- ☐ An officer, director, or managing executive of a corporation

Debtor 1 **Michael Stephen Galmor**                                  Case number (*if known*) **18-20209**

      ☐ An owner of at least 5% of the voting or equity securities of a corporation

☐ **No. None of the above applies. Go to Part 12.**

■ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name<br>**Address**<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **Galmor's/G&G Steam Service Inc.**<br>**P.O. Box 349**<br>**Shamrock, TX 79079** | **Oil and Gas related - roustabout services, supply shop, pump repair and rock quarry** | EIN: **75-1752157**<br><br>From-To **1999- Present** |
| | **Accountant :**<br>**Kellye Fuchs**<br>**P K & Company**<br>**P.O. Box 1728**<br>**Elk City, OK 73648** | |
| **MSG Oil & Gas**<br>**P.O. Box 2172**<br>**Elk City, OK 73648** | **Oil and Gas Production**<br><br>**Bookkeeper:**<br>**DeVona Seymour** | EIN: **NA**<br><br>From-To **1986- Present** |

28. *Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.*

    ☐ **No**

    ■ **Yes. Fill in the details below.**

| Name<br>**Address**<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| **Great Plains National Bank**<br>**P.O. Box 488**<br>**Elk City, OK 73648** | **10/2017** |
| **Interbank**<br>**P.O. Box 1049**<br>**Elk City, OK 73648** | **2017**<br>**Debtor provides financial statements annually.** |
| **First State Bank**<br>**101 S. Wheeler**<br>**Mobeetie, TX 79061** | **2017**<br>**Debtor provides financial statements annually.** |
| **Happy State Bank**<br>**711 N. MAin**<br>**Shamrock, TX 79079** | **2017**<br>**Debtor provides financial statements annually.** |

**Part 12:** **Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

  **/s/ Michael Stephen Galmor**
  **Michael Stephen Galmor**                                  **Signature of Debtor 2**
  **Signature of Debtor 1**

Date  **July  2, 2018**                                  Date

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?

■ No

☐ Yes

Debtor 1   **Michael Stephen Galmor**     Case number (*if known*)   **18-20209**

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**2016 Partnership Return**
prepared for:

**GALMOR FAMILY LTD PARTNERSHIP**
PO BOX 349
SHAMROCK, TX 79079

**P K & Company PLLC**
1000 N. Main, P.O. Box 1728
Elk City, OK 73648

EXHIBIT

8

DEPONENT NAME: Galmor    DATE: 3 124/21

**P K & COMPANY PLLC**
**1000 N. MAIN, P.O. BOX 1728**
**ELK CITY, OK 73648**
**(580) 225-8877**

September 13, 2017

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

Dear Client:

Your 2016 Federal Partnership Income Tax return will be electronically filed with the Internal Revenue Service upon receipt of a signed Form 8879PE - IRS e-file Signature Authorization. No tax is payable with the filing of this return.

Please call if you have any questions.

Sincerely,

KELLYE L FUCHS, CPA

**12/31/16**  **2016 FEDERAL DEPRECIATION SCHEDULE**  **PAGE 1**

**GALMOR FAMILY LTD PARTNERSHIP**

27-4132388

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/ BONUS/ SP. DEPR | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD LIFE RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENTAL REAL ESTATE - RENTAL REAL ESTATE** | | | | | | | | | | | | | | |
| 70 | RENT HOUSE IMPROVEMENTS | 12/15/09 | | 11,050 | | | | | | | 11,050 | 2,429 | S/L MM 27.5 .03636 | 402 |
| 87 | 2005 CLAYTON MOBILE HOME | 5/02/11 | | 18,049 | | | | | | | 18,049 | 14,022 | 200DB HY 7 .08920 | 1,610 |
| 91 | TWITTY - SEPTIC | 5/09/11 | | 5,300 | | | | 5,300 | | | 0 | 0 | 150DB HY 15 | 0 |
| 92 | IMPROVEMENTS - BARTLETT | 5/10/11 | | 2,559 | | | | 2,559 | | | 0 | 0 | S/L MM 27.5 | 0 |
| 93 | SKIRTING - TWITTY | 6/11/11 | | 1,000 | | | | | | | 1,000 | 1,000 | 200DB HY 7 .08920 | 0 |
| 111 | RENT HOUSE IMPROVEMENTS | 9/24/14 | | 22,333 | | | | | | | 22,333 | 1,049 | S/L MM 27.5 .03636 | 812 |
| 119 | NEW A/C UNIT | 8/09/16 | | 4,217 | | | 2,109 | | | | 2,108 | | S/L MM 27.5 .01364 | 29 |
| | TOTAL | | | 64,508 | | 0 | 2,109 | 7,859 | 0 | 0 | 54,540 | 18,500 | | 2,853 |
| | TOTAL DEPRECIATION | | | 64,508 | | 0 | 2,109 | 7,859 | 0 | 0 | 54,540 | 18,500 | | 2,853 |
| **FORM 1065, SCHEDULE F - CATTLE & WHEAT** | | | | | | | | | | | | | | |
| 59 | HOUSE - 592 | 10/15/08 | | 5,000 | | | | | | | 5,000 | 1,312 | S/L MM 27.5 .03636 | 182 |
| | TOTAL | | | 5,000 | | 0 | | 0 | 0 | 0 | 5,000 | 1,312 | | 182 |
| **AUTO / TRANSPORT EQUIPMENT** | | | | | | | | | | | | | | |
| 40 | 08 KING RANCH PICKUP | 3/31/08 | | 66,333 | | | | 33,167 | | | 33,166 | 33,166 | 150DB HY 5 | 0 |
| 41 | 97 INT'L GRAIN TRUCK | 4/01/08 | | 10,500 | | | | | | | 10,500 | 10,500 | 150DB HY 5 | 0 |
| 44 | 06 F350 TRUCK | 7/16/08 | | 15,000 | | | | | | | 15,000 | 15,000 | 150DB HY 5 | 0 |
| 47 | 01 FORD 1 TON PICKUP | 9/30/08 | | 8,233 | | | | | | | 8,233 | 8,233 | 150DB HY 5 | 0 |
| 53 | 09 CPS BELLY DUMP TRAILER | 10/21/08 | | 31,100 | | | | 15,550 | | | 15,550 | 15,550 | 150DB HY 5 | 0 |
| 54 | 06 FORD DUALLY | 7/17/08 | | 23,240 | | | | | | | 23,240 | 23,240 | 150DB HY 5 | 0 |
| 55 | 08 LINCOLN NAVIGATOR | 8/14/08 | | 47,140 | | | | 23,570 | | | 23,570 | 23,570 | 150DB HY 5 | 0 |

# 2016 FEDERAL DEPRECIATION SCHEDULE

12/31/16

PAGE 2

27-4132388

## GALMOR FAMILY LTD PARTNERSHIP

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/BONUS/SP.DEPR | PRIOR DEC. BAL. DEPR | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 58 | GMC GRAIN TRUCK | 2/26/08 | | 1,500 | | | | | | | 1,500 | 1,500 | 150DB HY | 5 | | 0 |
| 76 | 2010 WHITE JEEP | 2/03/10 | | 23,231 | | | | 11,616 | | | 11,615 | 11,615 | 150DB HY | 5 | | 0 |
| 82 | 91 FORD FUEL TRUCK | 2/25/10 | | 2,200 | | | | | | | 2,200 | 2,200 | 150DB HY | 5 | | 0 |
| 94 | 2006 JEEP | 7/07/11 | | 22,500 | | | | | | | 22,500 | 20,627 | 150DB HY | 5 | .08330 | 1,873 |
| 95 | 98 GMC YUKON | 6/04/11 | | 3,500 | | | | | | | 3,500 | 3,209 | 150DB HY | 5 | .08330 | 291 |
| 96 | TRAILER | 6/30/11 | | 1,000 | | | | | | | 1,000 | 694 | 150DB HY | 7 | .12250 | 123 |
| 98 | KUBOTA MULE | 5/15/12 | | 15,998 | | | | 15,998 | | | 0 | | 150DB HY | 7 | | 0 |
| | TOTAL AUTO / TRANSPORT EQUIP | | | 271,475 | | 0 | 0 | 99,901 | 0 | 0 | 171,574 | 169,104 | | | | 2,287 |
| | BUILDINGS | | | | | | | | | | | | | | | |
| 65 | CONE STYLE GRAIN BINS | 6/15/09 | | 5,819 | | | | | | | 5,819 | 2,899 | 150DB HY | 15 | .05900 | 343 |
| 72 | BARN - BRADLEY LAND | 11/12/10 | | 5,000 | | | | | | | 5,000 | 2,197 | 150DB HY | 15 | .05900 | 295 |
| 80 | GRAIN BINS | 1/18/10 | | 6,635 | | | | 3,318 | | | 3,317 | 1,457 | 150DB HY | 15 | .05900 | 196 |
| 90 | MOBILE HOME - 592 | 5/02/11 | | 17,049 | | | | | | | 17,049 | 13,351 | 150DB HY | 7 | .12250 | 2,089 |
| 114 | BUILDING REPAIRS | 9/11/15 | | 4,532 | | | | | | | 4,532 | 48 | S/L MM | 27.5 | .03636 | 165 |
| | TOTAL BUILDINGS | | | 39,035 | | 0 | 0 | 3,318 | 0 | 0 | 35,717 | 19,952 | | | | 3,088 |
| | IMPROVEMENTS | | | | | | | | | | | | | | | |
| 1 | BARN | 8/01/90 | | 1,200 | | | | | | | 1,200 | 1,200 | S/L HY | 15 | | 0 |
| 4 | STOCK PENS | 3/21/01 | | 5,433 | | | | | | | 5,433 | 5,433 | 150DB HY | 5 | | 0 |
| 9 | STOCK PENS | 3/27/03 | | 6,140 | | | | | | | 6,140 | 6,140 | 150DB HY | 5 | | 0 |
| 16 | CATTLE PENS | 1/31/06 | | 3,690 | | | | 3,690 | | | 0 | | 150DB HY | 5 | | 0 |
| 17 | CATTLE PENS | 3/31/06 | | 1,799 | | | | 1,799 | | | 0 | | 150DB HY | 5 | | 0 |
| 24 | FENCE - EMERITT PL | 5/31/07 | | 21,657 | | | | | | | 21,657 | 21,657 | 150DB HY | 7 | | 0 |
| 25 | CATTLE PENS - EMERITT PL | 5/31/07 | | 4,130 | | | | | | | 4,130 | 4,130 | 150DB HY | 7 | | 0 |

| 12/31/16 | | | | 2016 FEDERAL DEPRECIATION SCHEDULE | | | | | | | | | | | | PAGE 3 |

GALMOR FAMILY LTD PARTNERSHIP

27-4132388

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP.DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 48 | CONCRETE FOR WATER TANKS | 10/31/08 | | 3,482 | | | | 3,482 | | | 0 | | 150DB HY | 7 | | 0 |
| 51 | CATTLE PENS | 11/30/08 | | 7,625 | | | | 7,625 | | | 0 | | 150DB HY | 7 | | 0 |
| 66 | FENCE | 3/06/09 | | 11,430 | | | | | | | 11,430 | 11,430 | 150DB HY | 5 | | 0 |
| 68 | FENCE | 8/07/09 | | 2,610 | | | | | | | 2,610 | 2,451 | 150DB HY | 7 | .06120 | 159 |
| 69 | GRAVEL | 3/30/09 | | 10,673 | | | | 5,337 | | | 5,336 | 2,658 | 150DB HY | 15 | .05900 | 315 |
| 78 | FEED STORAGE | 5/21/10 | | 4,612 | | | | 2,306 | | | 2,306 | 1,881 | 150DB HY | 7 | .12250 | 282 |
| 81 | FENCE | 9/29/10 | | 3,325 | | | | 3,325 | | | 0 | | 150DB HY | 7 | | 0 |
| 85 | STORAGE - 592 | 5/19/11 | | 2,241 | | | | 2,241 | | | 0 | | 150DB HY | 4 | | 0 |
| 88 | FENCE - BRADLEY | 5/11/11 | | 12,054 | | | | 12,054 | | | 0 | | 150DB HY | 7 | | 0 |
| 89 | OFFICE FURNITURE | 3/15/11 | | 2,239 | | | | 2,239 | | | 0 | | 150DB HY | 7 | | 0 |
| 103 | FENCE | 9/26/13 | | 2,974 | | | | 1,487 | | | 1,487 | 666 | 150DB HY | 7 | .12250 | 182 |
| 105 | FENCE | 3/29/14 | | 2,700 | | | | 1,350 | | | 1,350 | 488 | 150DB MQ | 7 | .13680 | 185 |
| 106 | SUBMERGIBLE PUMP | 8/07/14 | | 4,356 | | | | 2,178 | | | 2,178 | 604 | 150DB MQ | 7 | .15480 | 337 |
| 110 | SUB PUMP | 10/10/14 | | 6,542 | | | | 3,271 | | | 3,271 | 770 | 150DB MQ | 7 | .16390 | 536 |
| 115 | FENCING | 5/26/15 | | 28,786 | | | | 14,393 | | | 14,393 | 1,541 | 150DB HY | 7 | .19130 | 2,753 |
| | TOTAL IMPROVEMENTS | | | 149,698 | | 0 | 0 | 66,777 | 0 | 0 | 82,921 | 61,049 | | | | 4,749 |
| | LAND | | | | | | | | | | | | | | | |
| 60 | GIN YARD - LAND | 3/15/08 | | 8,000 | | | | | | | 8,000 | | | | | 0 |
| 61 | LAND - EMERITT | 5/31/07 | | 266,598 | | | | | | | 266,598 | | | | | 0 |
| 71 | BRADLEY LAND - 603 ACRES | 11/12/10 | | 296,330 | | | | | | | 296,330 | | | | | 0 |
| 101 | LAND - S OF JACK'S HOUSE | 6/03/13 | | 5,000 | | | | | | | 5,000 | | | | | 0 |
| | TOTAL LAND | | | 575,928 | | 0 | 0 | 0 | 0 | 0 | 575,928 | 0 | | | | 0 |
| | MACHINERY AND EQUIPMENT | | | | | | | | | | | | | | | |

# 2016 FEDERAL DEPRECIATION SCHEDULE

**PAGE 4**

**12/31/16**

**GALMOR FAMILY LTD PARTNERSHIP**

27-4132388

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/BONUS/SP. DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | BOX CAR | 7/03/98 | | 1,200 | | | | | | | 1,200 | 1,200 | 150DB HY | 7 | | 0 |
| 3 | BUSH HOG | 9/22/00 | | 1,695 | | | | | | | 1,695 | 1,695 | 150DB HY | 5 | | 0 |
| 5 | IRRIGATION PUMP | 4/08/01 | | 3,000 | | | | | | | 3,000 | 3,000 | 150DB HY | 5 | | 0 |
| 6 | CHUTE TRAILER | 4/30/01 | | 2,500 | | | | | | | 2,500 | 2,500 | 150DB HY | 5 | | 0 |
| 7 | 2 PLOWS | 5/15/01 | | 2,100 | | | | | | | 2,100 | 2,100 | 150DB HY | 5 | | 0 |
| 8 | STOCK TRAILER | 12/28/01 | | 850 | | | | | | | 850 | 850 | 150DB HY | 5 | | 0 |
| 10 | EQUIPMENT | 6/30/03 | | 8,000 | | | | | | | 8,000 | 8,000 | 150DB HY | 5 | | 0 |
| 11 | TRAILER | 7/31/03 | | 9,600 | | | | | | | 9,600 | 9,600 | 150DB HY | 5 | | 0 |
| 12 | IRRIGATION EQUIPMENT | 8/29/03 | | 14,750 | | | | | | | 14,750 | 14,750 | 150DB HY | 5 | | 0 |
| 13 | EQUIPMENT | 9/30/03 | | 2,010 | | | | | | | 2,010 | 2,010 | 150DB HY | 5 | | 0 |
| 14 | EQUIPMENT | 7/30/04 | | 12,936 | | | | | | | 12,936 | 12,936 | 150DB HY | 5 | | 0 |
| 15 | GREAT PLAINS DRILL | 1/25/06 | | 18,700 | | | | 18,700 | | | 0 | | 150DB HY | 5 | | 0 |
| 18 | TRACTOR | 7/25/06 | | 3,000 | | | | 3,000 | | | 0 | | 150DB HY | 5 | | 0 |
| 19 | SWATHER | 8/31/06 | | 17,589 | | | | 17,589 | | | 0 | | 150DB HY | 5 | | 0 |
| 20 | CASE TRACKING HOE | 8/31/06 | | 25,948 | | | | 7,326 | | | 18,622 | 17,822 | 150DB HY | 5 | | 0 |
| 21 | DONAHUE SWATHER TRAILER | 8/31/06 | | 6,800 | | | | 2,800 | | | 4,000 | 3,827 | 150DB HY | 5 | | 0 |
| 22 | RED RHINO BALE TRAILER | 6/01/07 | | 7,500 | | | | | | | 7,500 | 7,500 | 150DB HY | 5 | | 0 |
| 23 | 210;300 GALLON BARRELLS | 7/31/07 | | 5,500 | | | | | | | 5,500 | 5,500 | 150DB HY | 7 | | 0 |
| 26 | KUBOTA 4WD TRACTOR | 8/02/06 | | 28,890 | | | | | | | 28,890 | 28,890 | 150DB HY | 7 | | 0 |
| 27 | WOODS BATWING MOWER | 8/02/06 | | 5,778 | | | | | | | 5,778 | 5,778 | 150DB HY | 7 | | 0 |
| 28 | FRONT END LOADER | 8/02/06 | | 3,852 | | | | | | | 3,852 | 3,852 | 150DB HY | 7 | | 0 |
| 29 | 1400 STEIGER TRACTOR | 8/23/06 | | 29,000 | | | | 8,654 | | | 20,346 | 14,271 | 150DB HY | 7 | | 0 |
| 30 | JD CHISEL | 8/23/06 | | 3,500 | | | | | | | 3,500 | 3,500 | 150DB HY | 7 | | 0 |
| 31 | IRRIGATION EQUIPMENT | 10/05/04 | | 58,810 | | | | | | | 58,810 | 58,810 | 150DB HY | 7 | | 0 |
| 32 | DONAHUE TRAILER | 6/29/07 | | 6,850 | | | | | | | 6,850 | 6,850 | 150DB HY | 7 | | 0 |
| 33 | 1610 JD CHISEL | 8/31/07 | | 6,000 | | | | | | | 6,000 | 6,000 | 150DB HY | 7 | | 0 |
| 34 | GRAIN AUGER | 8/31/07 | | 3,600 | | | | | | | 3,600 | 3,600 | 150DB HY | 7 | | 0 |

| 12/31/16 | | | | | | | | | | | | | | | | 2016 FEDERAL DEPRECIATION SCHEDULE | PAGE 5 |

**GALMOR FAMILY LTD PARTNERSHIP**  27-4132388

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP. DEPR. | PRIOR DEC. BAL DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35 | JD 4960 TRACTOR | 4/07/08 | | 31,135 | | | | 31,135 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 36 | JD 9300 TRACTOR - 2000 | 5/22/08 | | 64,884 | | | | 64,884 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 37 | JD 9600 COMBINE - 1991 | 5/22/08 | | 47,750 | | | | 47,750 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 38 | JD 930 30' COMBINE HEADER | 5/22/08 | | 8,500 | | | | | | | 8,500 | 8,500 | 150DB HY | 7 | | 0 |
| 39 | GRAIN CART | 2/26/08 | | 1,500 | | | | 200 | | | 1,300 | 1,300 | 150DB HY | 7 | | 0 |
| 42 | STOCK TRAILER | 5/30/08 | | 3,500 | | | | 3,500 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 43 | 10 11' STOCK TANKS | 6/30/08 | | 6,800 | | | | 6,800 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 45 | 36' GRAIN DRILL | 7/31/08 | | 17,500 | | | | 17,500 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 46 | HAY SPEAR | 7/31/08 | | 522 | | | | 261 | | | 261 | 261 | 150DB HY | 7 | | 0 |
| 49 | 50' CHISEL | 10/31/08 | | 12,500 | | | | 12,500 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 50 | 1/2 ROUND BALER | 12/24/08 | | 3,194 | | | | 1,597 | | | 1,597 | 1,597 | 150DB HY | 7 | | 0 |
| 52 | 60' MOWER | 10/16/08 | | 9,389 | | | | 4,695 | | | 4,694 | 4,694 | 150DB HY | 7 | | 0 |
| 56 | IRRIGATION SYSTEM | 5/08/07 | | 78,901 | | | | | | | 78,901 | 78,892 | 150DB HY | 7 | | 0 |
| 57 | IRRIGATION SYSTEM | 10/05/04 | | 58,810 | | | | | | | 58,810 | 58,810 | 150DB HY | 7 | | 0 |
| 62 | FLATBED TRAILER | 10/19/09 | | 475 | | | | | | | 475 | 445 | 150DB HY | 7 | .06120 | 30 |
| 63 | CHUTE & SCALE | 6/11/09 | | 4,000 | | | | | | | 4,000 | 3,754 | 150DB HY | 7 | .06120 | 246 |
| 64 | HAY FEEDERS | 11/16/09 | | 1,950 | | | | | | | 1,950 | 1,831 | 150DB HY | 7 | .06120 | 119 |
| 67 | HAY FEEDERS | 11/16/09 | | 1,950 | | | | | | | 1,950 | 1,831 | 150DB HY | 7 | .06120 | 119 |
| 73 | CATERPILLAR CH85C | 3/31/10 | | 44,000 | | | | | | | 44,000 | 35,912 | 150DB HY | 7 | .12250 | 5,390 |
| 74 | GP 354000 DRILL | 7/15/10 | | 21,550 | | | | | | | 21,550 | 17,590 | 150DB HY | 7 | .12250 | 2,640 |
| 75 | JD MOWER - LN05 | 7/15/10 | | 810 | | | | 405 | | | 405 | 331 | 150DB HY | 7 | .12250 | 50 |
| 77 | CATTLE TRAILER | 8/23/10 | | 12,000 | | | | 6,000 | | | 6,000 | 4,898 | 150DB HY | 7 | .12250 | 735 |
| 79 | VERMEER 210 HAY RAKE | 5/12/10 | | 2,250 | | | | | | | 2,250 | 1,837 | 150DB HY | 7 | .12250 | 276 |
| 83 | FUEL TANKS | 2/25/10 | | 1,800 | | | | | | | 1,800 | 1,471 | 150DB HY | 7 | .12250 | 221 |
| 84 | BALER | 1/21/10 | | 6,388 | | | | | | | 6,388 | 5,215 | 150DB HY | 7 | .12250 | 783 |
| 86 | 3 HARROWS | 1/03/11 | | 54,750 | | | | 54,750 | | | 0 | 0 | 150DB HY | 7 | | 0 |
| 97 | 91 JD CHISEL PLOW | 8/03/11 | | 12,180 | | | | | | | 12,180 | 8,449 | 150DB HY | 7 | .12250 | 1,492 |

**12/31/16**

# 2016 FEDERAL DEPRECIATION SCHEDULE

**GALMOR FAMILY LTD PARTNERSHIP**

**PAGE 6**

**27-4132388**

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP. DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 102 | ROUND BALE HAULER - 1/2 | 9/10/13 | | 2,263 | | | | 1,132 | | | 1,131 | 787 | 150DB HY | 4 | .20310 | 230 |
| 112 | NEW G80 GEARHEAD | 8/11/15 | | 3,350 | | | | 1,675 | | | 1,675 | 179 | 150DB HY | 7 | .19130 | 320 |
| 113 | WATER WELL - ARROW | 11/23/15 | | 1,874 | | | | 937 | | | 937 | 100 | 150DB HY | 7 | .19130 | 179 |
| | TOTAL MACHINERY AND EQUIPME | | | 805,433 | | | 0 | 313,790 | 0 | 0 | 492,643 | 463,525 | | | | 12,830 |
| | MISCELLANEOUS | | | | | | | | | | | | | | | |
| 99 | 7 BULLS | 6/08/12 | | 20,350 | | | | 20,350 | | | 0 | | 150DB HY | 5 | | 0 |
| 100 | 54 BRED HEIFERS | 9/16/13 | | 75,600 | | | | 37,800 | | | 37,800 | 22,056 | 150DB HY | 5 | .16660 | 6,297 |
| 104 | 38 COWS | 1/17/12 | | 42,803 | | | | | | | 42,803 | 42,803 | 150DB HY | 5 | .16660 | 0 |
| 107 | 1 BULL - SHANE MORG | 3/27/14 | | 2,500 | | | | 1,250 | | | 1,250 | 605 | 150DB MQ | 5 | .16520 | 207 |
| 108 | 2 COWS | 6/17/14 | | 2,800 | | | | 1,400 | | | 1,400 | 604 | 150DB MQ | 5 | .17060 | 239 |
| 109 | 60 HEIFERS | 10/20/14 | | 65,257 | | | | 32,628 | | | 32,628 | 10,647 | 150DB MQ | 5 | .20210 | 6,594 |
| 116 | 3 BULLS | 2/14/15 | | 9,000 | | | | 4,500 | | | 4,500 | 675 | 150DB HY | 5 | .25500 | 1,148 |
| 117 | 1 BULL 3 HEIFERS | 7/15/15 | | 8,800 | | | | 4,400 | | | 4,400 | 660 | 150DB HY | 5 | .25500 | 1,122 |
| 118 | 2 BUFFALO | 7/21/15 | | 4,400 | | | | 2,200 | | | 2,200 | 330 | 150DB HY | 5 | .25500 | 561 |
| | TOTAL MISCELLANEOUS | | | 231,510 | | | 0 | 104,529 | 0 | 0 | 126,981 | 78,380 | | | | 16,168 |
| | TOTAL DEPRECIATION | | | 2,079,079 | | | 0 | 588,315 | 0 | 0 | 1,490,764 | 793,322 | | | | 39,304 |
| | GRAND TOTAL DEPRECIATION | | | 2,143,587 | | | 2,109 | 596,174 | 0 | 0 | 1,545,304 | 811,822 | | | | 42,157 |

Form **8879-PE**

**IRS e-file Signature Authorization for Form 1065**

► **Don't send to the IRS. Keep for your records.**

► **Information about Form 8879-PE and its instructions is at www.irs.gov/form8879pe.**

OMB No. 1545-0123

**2016**

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax year beginning _____ , 2016, and ending _____ , _____ .

| Name of partnership | Employer identification number |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

| **Part I** | **Tax Return Information** (Whole dollars only) | | |
|---|---|---|---|
| **1** | Gross receipts or sales less returns and allowances (Form 1065, line 1c)................................. | **1** | 70,009. |
| **2** | Gross profit (Form 1065, line 3)........................................................................ | **2** | 70,009. |
| **3** | Ordinary business income (loss) (Form 1065, line 22)................................................... | **3** | -99,178. |
| **4** | Net rental real estate income (loss) (Form 1065, Schedule K, line 2)................................... | **4** | 10,573. |
| **5** | Other net rental income (loss) (Form 1065, Schedule K, line 3c)....................................... | **5** | |

| **Part II** | **Declaration and Signature Authorization of General Partner or Limited Liability Company Member Manager (Be sure to get a copy of the partnership's return)** |
|---|---|

Under penalties of perjury, I declare that I am a general partner or limited liability company member manager of the above partnership and that I have examined a copy of the partnership's 2016 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic return of partnership income. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic return of partnership income.

**General Partner or Limited Liability Company Member Manager's PIN: check one box only**

[X] I authorize _P K & COMPANY PLLC_ to enter my PIN _55555_ as my signature on the
ERO firm name                                                        don't enter all zeros
partnership's 2016 electronically filed return of partnership income.

[ ] As a general partner or limited liability company member manager of the partnership, I will enter my PIN as my signature on the
partnership's 2016 electronically filed return of partnership income.

General partner or limited liability company member manager's signature ► _____

Title ► _____                          Date ► _____

| **Part III** | **Certification and Authentication** |
|---|---|

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN. _73695054733_
don't enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2016 electronically filed return of partnership income for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub 3112,** IRS *e-file* Application and Participation, and **Pub 4163,** Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature ► _____                          Date ► _____

**ERO Must Retain This Form — See Instructions**
**Don't Submit This Form to the IRS Unless Requested To Do So**

**BAA  For Paperwork Reduction Act Notice, see instructions.**                          Form **8879-PE** (2016)

PTPA0901L  09/20/16

Form **1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2016, or tax year beginning _____ , 2016,
ending _____ , 20 ___ .
► **Information about Form 1065 and its separate instructions is at** *www.irs.gov/form1065.*

OMB No. 1545-0123

**2016**

| | | |
|---|---|---|
| **A** Principal business activity<br>SERVICE | **Type<br>or<br>Print** | GALMOR FAMILY LTD PARTNERSHIP<br>PO BOX 349<br>SHAMROCK, TX 79079 |
| **B** Principal product or service<br>FARM/OIL & GAS | | |
| **C** Business code number<br>213110 | | |

**D** Employer identification no.
27-4132388

**E** Date business started
6/03/2011

**F** Total assets (see the instrs)
$ 811,921.

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return
**(6)** ☐ Technical termination — also check (1) or (2)

**H** Check accounting method: **(1)** ☒ Cash **(2)** ☐ Accrual **(3)** ☐ Other (specify) ► _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► _____ 3

**J** Check if Schedules C and M-3 are attached ........................................................................... ☐

**Caution.** Include *only* trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **INCOME** | **1a** Gross receipts or sales ........................................ | **1a** | 70,009. | |
| | **b** Returns and allowances ........................................ | **1b** | | |
| | **c** Balance. Subtract line 1b from line 1a ........................................................ | **1c** | | 70,009. |
| | **2** Cost of goods sold (attach Form 1125-A) ........................................................ | **2** | | |
| | **3** Gross profit. Subtract line 2 from line 1c ........................................................ | **3** | | 70,009. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) ........................................ | **4** | | |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040)) ........................................ | **5** | | -83,754. |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ........................ | **6** | | |
| | **7** Other income (loss) (attach statement) ........................................ | **7** | | |
| | **8** **Total income (loss).** Combine lines 3 through 7 ........................................ | **8** | | -13,745. |
| **DEDUCTIONS (SEE INSTRS FOR LIMITATIONS)** | **9** Salaries and wages (other than to partners) (less employment credits) ........................ | **9** | | |
| | **10** Guaranteed payments to partners ........................................ | **10** | | |
| | **11** Repairs and maintenance ........................................ | **11** | | |
| | **12** Bad debts ........................................ | **12** | | |
| | **13** Rent ........................................ | **13** | | |
| | **14** Taxes and licenses ........................................ | **14** | | 16,475. |
| | **15** Interest ........................................ | **15** | | |
| | **16a** Depreciation (if required, attach Form 4562) ........................ **16a** 39,304. | | | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return ... **16b** 39,304. | **16c** | | |
| | **17** Depletion **(Do not deduct oil and gas depletion.)** ........................ | **17** | | |
| | **18** Retirement plans, etc. ........................................ | **18** | | |
| | **19** Employee benefit programs ........................................ | **19** | | |
| | **20** Other deductions (attach statement) ........................ SEE STATEMENT 1 | **20** | | 68,958. |
| | **21** **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 ........ | **21** | | 85,433. |
| | **22** **Ordinary business income (loss).** Subtract line 21 from line 8 ........................ | **22** | | -99,178. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

_____ ►
Signature of general partner or limited liability company member manager            Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | | | |
|---|---|---|---|---|
| Print/Type preparer's name<br>KELLYE L FUCHS, CPA | Preparer's signature | Date | Check ☐ if self-employed | PTIN<br>P01254733 |
| Firm's name ► P K & COMPANY PLLC | | | | Firm's EIN ► 47-3985644 |
| Firm's address ► 1000 N. MAIN, P.O. BOX 1728<br>ELK CITY, OK 73648 | | | | Phone no. (580) 225-8877 |

**BAA For Paperwork Reduction Act Notice, see separate instructions.**            PTPA0105L 01/06/17            Form **1065** (2016)

Form **1065** (2016)  GALMOR FAMILY LTD PARTNERSHIP                                    27-4132388          Page **2**

| **Schedule B** | **Other Information** | | |
|---|---|---|---|

| | | Yes | No |
|---|---|---|---|
| **1** | What type of entity is filing this return? Check the applicable box: | | |
| **a** [X] Domestic general partnership  **b** [ ] Domestic limited partnership | | | |
| **c** [ ] Domestic limited liability company  **d** [ ] Domestic limited liability partnership | | | |
| **e** [ ] Foreign partnership  **f** [ ] Other ► | | | |
| **2** | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person?.................................................................................................... | X | |
| **3** | At the end of the tax year: | | |
| **a** Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership.............................................................................. | | X |
| **b** Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership.............................................................................. | | X |
| **4** | At the end of the tax year, did the partnership: | | |
| **a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (iv) below............................................................................................ | | X |

| **(i)** Name of Corporation | **(ii)** Employer Identification Number (if any) | **(iii)** Country of Incorporation | **(iv)** Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| **b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below............................................. | | X |

| **(i)** Name of Entity | **(ii)** Employer Identification Number (if any) | **(iii)** Type of Entity | **(iv)** Country of Organization | **(v)** Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| **5** | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details........ | | X |
| **6** | Does the partnership satisfy **all four** of the following conditions? | | |
| **a** The partnership's total receipts for the tax year were less than $250,000. | | | |
| **b** The partnership's total assets at the end of the tax year were less than $1 million. | | | |
| **c** Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | | |
| **d** The partnership is not filing and is not required to file Schedule M-3.................................................... | | X |
| If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | | |
| **7** | Is this partnership a publicly traded partnership as defined in section 469(k)(2)?............................................ | | X |
| **8** | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt?.............................................................................. | | X |
| **9** | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction?........................................................................................ | | X |
| **10** | At any time during calendar year 2016, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If 'Yes,' enter the name of the foreign country. ► | | X |

PTPA0112L 01/06/17                                                          Form **1065** (2016)

Form **1065** (2016)   GALMOR FAMILY LTD PARTNERSHIP                                    27-4132388                        Page **3**

| Schedule B | Other Information *(continued)* | | |
|---|---|---|---|
| | | Yes | No |
| **11** | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions. | | X |
| **12a** | Is the partnership making, or had it previously made (and not revoked), a section 754 election? | | X |
| | See instructions for details regarding a section 754 election. | | |
| **b** | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions. | | X |
| **c** | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| **13** | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year). ▶ ☐ | | |
| **14** | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| **15** | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached.<br>See instructions   ▶ | | |
| **16** | Does the partnership have any foreign partners? If 'Yes,' enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership.   ▶ | | X |
| **17** | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| **18a** | Did you make any payments in 2016 that would require you to file Form(s) 1099? See instructions | X | |
| **b** | If 'Yes,' did you or will you file required Form(s) 1099? | X | |
| **19** | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| **20** | Enter the number of partners that are foreign governments under section 892.        ▶ 0 | | |
| **21** | During the partnership's tax year, did the partnership make any payments that would require it to file Form 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474)? | | X |
| **22** | Was the partnership a specified domestic entity required to file Form 8938 for the tax year (See the Instructions for Form 8938)? | | X |

**Designation of Tax Matters Partner** (see instructions)
Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| | | | | |
|---|---|---|---|---|
| Name of designated TMP | ▶ | THE GALMOR CONTRIBUTION TRUST | Identifying number of TMP ▶ | 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 |
| If the TMP is an entity, name of TMP representative | ▶ | MICHAEL S GALMOR | Phone number of TMP ▶ | |
| Address of designated TMP | ▶ | PO BOX 349<br>SHAMROCK, TX 79079 | | |

PTPA0112L 01/06/17                                                                        Form **1065** (2016)

Form **1065** (2016) GALMOR FAMILY LTD PARTNERSHIP                27-4132388              Page **4**

## Schedule K    Partners' Distributive Share Items

| | | | Total amount |
|---|---|---|---:|
| **Income (Loss)** | **1** | Ordinary business income (loss) (page 1, line 22)............................... **1** | -99,178. |
| | **2** | Net rental real estate income (loss) (attach Form 8825)......................... **2** | 10,573. |
| | **3a** | Other gross rental income (loss)............................ **3a** | |
| | **b** | Expenses from other rental activities (attach stmt)........ **3b** | |
| | **c** | Other net rental income (loss). Subtract line 3b from line 3a.............. **3c** | |
| | **4** | Guaranteed payments........................................ **4** | |
| | **5** | Interest income................................................ **5** | 2,383. |
| | **6** | Dividends: **a** Ordinary dividends................................ **6a** | |
| | | **b** Qualified dividends................. **6b** | |
| | **7** | Royalties....................................................... **7** | 156,080. |
| | **8** | Net short-term capital gain (loss) (attach Schedule D (Form 1065))........... **8** | |
| | **9a** | Net long-term capital gain (loss) (attach Schedule D (Form 1065))........... **9a** | |
| | | **b** Collectibles (28%) gain (loss)................. **9b** | |
| | | **c** Unrecaptured section 1250 gain (attach statement)........... **9c** | |
| | **10** | Net section 1231 gain (loss) (attach Form 4797)............................ **10** | |
| | **11** | Other income (loss) (see instructions)    Type ▶ **11** | |
| **Deductions** | **12** | Section 179 deduction (attach Form 4562)................................ **12** | |
| | **13a** | Contributions............................................... **13a** | |
| | **b** | Investment interest expense.................................. **13b** | |
| | **c** | Section 59(e)(2) expenditures: **(1)** Type ▶ _____ **(2)** Amount ▶ **13c (2)** | |
| | **d** | Other deductions (see instructions)   Type ▶  SEE STATEMENT 2 **13d** | 69. |
| **Self-Employ-ment** | **14a** | Net earnings (loss) from self-employment.................................. **14a** | -992. |
| | **b** | Gross farming or fishing income............................. **14b** | 197,581. |
| | **c** | Gross nonfarm income......................................... **14c** | |
| **Credits** | **15a** | Low-income housing credit (section 42(j)(5))................................ **15a** | |
| | **b** | Low-income housing credit (other)........................... **15b** | |
| | **c** | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable)... **15c** | |
| | **d** | Other rental real estate credits (see instructions)  Type ▶ **15d** | |
| | **e** | Other rental credits (see instructions)........... Type ▶ **15e** | |
| | **f** | Other credits (see instructions)................. Type ▶ **15f** | |
| **Foreign Trans-actions** | **16a** | Name of country or U.S. possession ... ▶ | |
| | **b** | Gross income from all sources............................... **16b** | |
| | **c** | Gross income sourced at partner level...................... **16c** | |
| | | Foreign gross income sourced at partnership level | |
| | **d** | Passive category ▶ _____ **e** General category ▶ _____ **f** Other ▶ **16f** | |
| | | Deductions allocated and apportioned at partner level | |
| | **g** | Interest expense ▶ _____ **h** Other.. ▶ **16h** | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | |
| | **i** | Passive category ▶ _____ **j** General category ▶ _____ **k** Other ▶ **16k** | |
| | **l** | Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ **16l** | |
| | **m** | Reduction in taxes available for credit (attach statement)................ **16m** | |
| | **n** | Other foreign tax information (attach statement) | |
| **Alternative Minimum Tax (AMT) Items** | **17a** | Post-1986 depreciation adjustment...................................... **17a** | -601. |
| | **b** | Adjusted gain or loss........................................ **17b** | |
| | **c** | Depletion (other than oil and gas)............................ **17c** | |
| | **d** | Oil, gas, and geothermal properties — gross income........ **17d** | 226,089. |
| | **e** | Oil, gas, and geothermal properties — deductions.......... **17e** | 53,708. |
| | **f** | Other AMT items (attach stmt)................................ **17f** | |
| **Other Infor-mation** | **18a** | Tax-exempt interest income................................. **18a** | |
| | **b** | Other tax-exempt income.................................... **18b** | |
| | **c** | Nondeductible expenses..................................... **18c** | 159. |
| | **19a** | Distributions of cash and marketable securities............ **19a** | 151,848. |
| | **b** | Distributions of other property............................... **19b** | |
| | **20a** | Investment income........................................... **20a** | 158,463. |
| | **b** | Investment expenses......................................... **20b** | 69. |
| | **c** | Other items and amounts (attach stmt)....................... | |

**BAA**                                                                                          Form **1065** (2016)

Form **1065** (2016) GALMOR FAMILY LTD PARTNERSHIP      27-4132388      Page **5**

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| **1** | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l. | | | | **1** | 69,789. |

| **2** Analysis by partner type: | **(i)** Corporate | **(ii)** Individual (active) | **(iii)** Individual (passive) | **(iv)** Partnership | **(v)** Exempt Organization | **(vi)** Nominee/Other |
|---|---|---|---|---|---|---|
| **a** General partners. . . | | | | 698. | | |
| **b** Limited partners. . . | | | | | | 69,091. |

## Schedule L — Balance Sheets per Books

| | Assets | Beginning of tax year (a) | Beginning of tax year (b) | End of tax year (c) | End of tax year (d) |
|---|---|---|---|---|---|
| **1** | Cash. . . . . . . . . . . . . . . . . . . . . . . . . | | 15,442. | | 20,694. |
| **2a** | Trade notes and accounts receivable. . . . . . . | | | | |
| **b** | Less allowance for bad debts. . . . . . . . . . . . | | | | |
| **3** | Inventories. . . . . . . . . . . . . . . . . . . . . . . | | | | |
| **4** | U.S. government obligations. . . . . . . . . . . . . | | | | |
| **5** | Tax-exempt securities. . . . . . . . . . . . . . . . . | | | | |
| **6** | Other current assets (attach stmt) . . . . . . . . . | | | | |
| **7a** | Loans to partners (or persons related to partners). . . . | | | | |
| **b** | Mortgage and real estate loans. . . . . . . . . . . | | | | |
| **8** | Other investments (attach stmt). . . . . . . . . . . | | | | |
| **9a** | Buildings and other depreciable assets. . . . . . | 2,157,370. | | 2,161,587. | |
| **b** | Less accumulated depreciation. . . . . . . . . . . . | 1,407,996. | 749,374. | 1,452,262. | 709,325. |
| **10a** | Depletable assets. . . . . . . . . . . . . . . . . . . . | | | | |
| **b** | Less accumulated depletion. . . . . . . . . . . . . . | | | | |
| **11** | Land (net of any amortization). . . . . . . . . . . . | | | | |
| **12a** | Intangible assets (amortizable only). . . . . . . . | | | | |
| **b** | Less accumulated amortization. . . . . . . . . . . . | | | | |
| **13** | Other assets (attach stmt). . . . . SEE ST 3 | | 90,600. | | 81,902. |
| **14** | Total assets. . . . . . . . . . . . . . . . . . . . . . . | | 855,416. | | 811,921. |
| | **Liabilities and Capital** | | | | |
| **15** | Accounts payable. . . . . . . . . . . . . . . . . . . . | | | | |
| **16** | Mortgages, notes, bonds payable in less than 1 year. . . . | | | | |
| **17** | Other current liabilities (attach stmt) . . SEE ST 4 | | 174,079. | | 174,079. |
| **18** | All nonrecourse loans. . . . . . . . . . . . . . . . . | | | | |
| **19a** | Loans from partners (or persons related to partners). . . . | | | | |
| **b** | Mortgages, notes, bonds payable in 1 year or more. . . . . | | 677,548. | | 640,896. |
| **20** | Other liabilities (attach stmt) . . . . . . . . . . . . | | | | |
| **21** | Partners' capital accounts. . . . . . . . . . . . . . | | 3,789. | | -3,054. |
| **22** | Total liabilities and capital. . . . . . . . . . . . . | | 855,416. | | 811,921. |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return
**Note.** The partnership may be required to file Schedule M-3 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| **1** | Net income (loss) per books. . . . . . . | 51,227. | **6** | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| **2** | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | **a** Tax-exempt interest . . $ _____ | |
| | | | **7** | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| **3** | Guaranteed pmts (other than health insurance). . . . . | | | **a** Depreciation . . . . . $ _____ | |
| **4** | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | | | |
| | **a** Depreciation . . . . . . $ _____ | | | | |
| | **b** Travel and entertainment . . . . . $ ___ 159. | | | | |
| | STATEMENT 5 ___ 18,403. | 18,562. | **8** | Add lines 6 and 7. . . . . . . . . . . . . . | |
| **5** | Add lines 1 through 4. . . . . . . . . . . | 69,789. | **9** | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5. . . . . . . . . . . | 69,789. |

## Schedule M-2 — Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| **1** | Balance at beginning of year. . . . . . . . . | 3,789. | **6** | Distributions: **a** Cash. . . . . . . . . . . . . | 151,848. |
| **2** | Capital contributed: **a** Cash. . . . . . . . . | | | **b** Property. . . . . . . . . . | |
| | **b** Property. . . . . . . | | **7** | Other decreases (itemize): | |
| **3** | Net income (loss) per books. . . . . . . . . | 51,227. | | _____ | |
| **4** | Other increases (itemize): | | | _____ | |
| | STATEMENT 6 | 93,778. | **8** | Add lines 6 and 7. . . . . . . . . . . . . . | 151,848. |
| **5** | Add lines 1 through 4. . . . . . . . . . . . . | 148,794. | **9** | Balance at end of year. Subtract line 8 from line 5. . . . | -3,054. |

PTPA0134L 08/25/16      Form **1065** (2016)

**SCHEDULE F**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

**Profit or Loss From Farming**

► Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.
► Information about Schedule F and its separate instructions is at *www.irs.gov/schedulef.*

OMB No. 1545-0074

**2016**

Attachment
Sequence No. **14**

| Name of proprietor | Social security number (SSN) |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | |

| A Principal crop or activity | B Enter code from Part IV | C Accounting method: | D Employer ID number (EIN), (see instr) |
|---|---|---|---|
| CATTLE & WHEAT | ► 112111 | [X] Cash  [ ] Accrual | 27-4132388 |

E  Did you 'materially participate' in the operation of this business during 2016? If 'No,' see instructions for limit on passive losses......  [X] Yes  [ ] No

F  Did you make any payments in 2016 that would require you to file Form(s) 1099 (see instructions)?......  [ ] Yes  [X] No

G  If 'Yes,' did you or will you file required Forms 1099?......  [ ] Yes  [ ] No

| Part I | Farm Income — Cash Method. Complete Parts I and II (Accrual method. Complete Parts II and III, and Part I, line 9.) | | | |
|---|---|---|---|---|
| 1a Sales of livestock and other resale items (see instructions)............... | 1a | | | |
| b Cost or other basis of livestock or other items reported on line 1a.......... | 1b | | | |
| c Subtract line 1b from line 1a............................................... | | | 1c | |
| 2 Sales of livestock, produce, grains, and other products you raised ........................................... | | | 2 | 193,150. |
| 3a Cooperative distributions (Form(s) 1099-PATR).... | 3a | 1,338. | 3b Taxable amount...... 3b | 1,338. |
| 4a Agricultural program payments (see instructions)...... | 4a | | 4b Taxable amount...... 4b | |
| 5a Commodity Credit Corporation (CCC) loans reported under election................ | | | 5a | |
| b CCC loans forfeited............................. | 5b | | 5c Taxable amount...... 5c | |
| 6 Crop insurance proceeds and federal crop disaster payments (see instructions) | | | | |
| a Amount received in 2016....................... | 6a | 3,093. | 6b Taxable amount...... 6b | 3,093. |
| c If election to defer to 2017 is attached, check here.... ► [ ] | | 6d Amount deferred from 2015.... 6d | |
| 7 Custom hire (machine work) income .................................................................... | | | 7 | |
| 8 Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)......................................................................... | | | 8 | |
| 9 Gross income. Add amounts in the right column (lines 1c, 2, 3b, 4b, 5a, 5c, 6b, 6d, 7, and 8). If you use the accrual method, enter the amount from Part III, line 50 (see instructions)......................► | | | 9 | 197,581. |

| Part II | Farm Expenses — Cash and Accrual Method. Do not include personal or living expenses (see instructions). | | | | | | |
|---|---|---|---|---|---|---|---|
| 10 Car and truck expenses (see instructions). Also attach Form 4562............... | 10 | | 23 Pension and profit-sharing plans...... | 23 | | |
| 11 Chemicals......................... | 11 | | 24 Rent or lease (see instructions): | | | |
| 12 Conservation expenses (see instructions)............... | 12 | | a Vehicles, machinery, equipment........ | 24a | | |
| | | | b Other (land, animals, etc.)........... | 24b | | |
| 13 Custom hire (machine work)..... | 13 | | 25 Repairs and maintenance............ | 25 | 33,684. |
| 14 Depreciation and section 179 expense (see instructions)...... | 14 | 39,304. | 26 Seeds and plants.................... | 26 | 4,690. |
| | | | 27 Storage and warehousing............ | 27 | | |
| 15 Employee benefit programs other than on line 23........... | 15 | | 28 Supplies............................. | 28 | 16,156. |
| | | | 29 Taxes.............................. | 29 | | |
| 16 Feed............................. | 16 | 24,343. | 30 Utilities............................ | 30 | 19,810. |
| 17 Fertilizers and lime............. | 17 | 36,222. | 31 Veterinary, breeding, and medicine.... | 31 | 3,437. |
| 18 Freight and trucking............. | 18 | 254. | 32 Other expenses (specify): | | |
| 19 Gasoline, fuel, and oil.......... | 19 | 27,381. | a BANK CHARGES | 32a | 7,837. |
| 20 Insurance (other than health).... | 20 | 34,706. | b CONTRACT LABOR | 32b | 8,470. |
| 21 Interest: | | | c MILEAGE | 32c | 1,360. |
| a Mortgage (paid to banks, etc.).... | 21a | 22,169. | d TELEPHONE | 32d | 1,512. |
| b Other.......................... | 21b | | e | 32e | |
| 22 Labor hired (less employment credits)... | 22 | | f | 32f | |
| 33 Total expenses. Add lines 10 through 32f. If line 32f is negative, see instructions ......................► | | | 33 | 281,335. |
| 34 Net farm profit or (loss). Subtract line 33 from line 9.................................................. | | | 34 | -83,754. |
| | If a profit, stop here and see instructions for where to report. If a loss, complete lines 35 and 36. | | | |
| 35 Did you receive an applicable subsidy in 2016? (see instructions).................................... [ ] Yes  [X] No | | | | |
| 36 Check the box that describes your investment in this activity and see instructions for where to report your loss. | | | | |
| a [ ] All investment is at risk. | b [ ] Some investment is not at risk. | | | |

**BAA  For Paperwork Reduction Act Notice, see the separate instructions.**   FDIZ0212L  12/19/16   **Schedule F (Form 1040) 2016**

| Form **8825** | **Rental Real Estate Income and Expenses of a Partnership or an S Corporation** | OMB No. 1545-1186 |
|---|---|---|
| (Rev December 2010) Department of the Treasury Internal Revenue Service | ► **See instructions.** ► **Attach to Form 1065, Form 1065-B, or Form 1120S.** | |

| Name | Employer identification number |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions. See page 2 to list additional properties.

| | Physical address of each property — street, city, state, ZIP code | Type — Enter code 1-8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|---|
| **A** | 15767 FM 1036 SHAMROCK, OK 79079 | 5 | 366 | |
| **B** | | | | |
| **C** | | | | |
| **D** | | | | |

| | | | Properties | | | |
|---|---|---|---|---|---|---|
| **Rental Real Estate Income** | | **A** | **B** | **C** | **D** |
| **2** Gross rents | **2** | 26,961. | | | |
| **Rental Real Estate Expenses** | | | | | |
| **3** Advertising | **3** | | | | |
| **4** Auto and travel | **4** | | | | |
| **5** Cleaning and maintenance | **5** | | | | |
| **6** Commissions | **6** | | | | |
| **7** Insurance | **7** | | | | |
| **8** Legal and other professional fees | **8** | | | | |
| **9** Interest | **9** | | | | |
| **10** Repairs | **10** | 11,426. | | | |
| **11** Taxes | **11** | | | | |
| **12** Utilities | **12** | | | | |
| **13** Wages and salaries | **13** | | | | |
| **14** Depreciation (see instructions) | **14** | 4,962. | | | |
| **15** Other (list) ► | **15** | | | | |
| **16** Total expenses for each property. Add lines 3 through 15 | **16** | 16,388. | | | |
| **17** Income or (Loss) from each property. Subtract line 16 from line 2 | **17** | 10,573. | | | |

| | | |
|---|---|---|
| **18a** Total gross rents. Add gross rents from line 2, columns A through H | **18a** | 26,961. |
| **18b** Total expenses. Add total expenses from line 16, columns A through H | **18b** | -16,388. |
| **19** Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities | **19** | |
| **20a** Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | **20a** | |

**b** Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

| **(1)** Name | **(2)** Employer identification number |
|---|---|
| | |
| | |

| | | |
|---|---|---|
| **21** Net rental estate income (loss). Combine lines 18a through 20a. Enter the result here and on: • **Form 1065 or 1120S:** Schedule K, line 2, or • **Form 1065-B:** Part I, line 4 | **21** | 10,573. |

**BAA For Paperwork Reduction Act Notice, see the separate instructions.** SPSZ0101L 03/09/11 Form **8825** (12-2010)

Form 8825 (12-2010)  GALMOR FAMILY LTD PARTNERSHIP  27-4132388  Page **2**

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days at fair rental value and days with personal use. See instructions.

| Physical address of each property — street, city, state, ZIP code | Type — Enter code 1-8; see below for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|
| **E** _____ | _____ | _____ | _____ |
| **F** _____ | _____ | _____ | _____ |
| **G** _____ | _____ | _____ | _____ |
| **H** _____ | _____ | _____ | _____ |

|  |  | Properties | | | |
|---|---|---|---|---|---|
| **Rental Real Estate Income** |  | **E** | **F** | **G** | **H** |
| **2** Gross rents | **2** | | | | |
| **Rental Real Estate Expenses** | | | | | |
| **3** Advertising | **3** | | | | |
| **4** Auto and travel | **4** | | | | |
| **5** Cleaning and maintenance | **5** | | | | |
| **6** Commissions | **6** | | | | |
| **7** Insurance | **7** | | | | |
| **8** Legal and other professional fees | **8** | | | | |
| **9** Interest | **9** | | | | |
| **10** Repairs | **10** | | | | |
| **11** Taxes | **11** | | | | |
| **12** Utilities | **12** | | | | |
| **13** Wages and salaries | **13** | | | | |
| **14** Depreciation (see instructions) | **14** | | | | |
| **15** Other (list) ► _____ _____ _____ | **15** | | | | |
| **16** Total expenses for each property. Add lines 3 through 15 | **16** | | | | |
| **17** Income or (Loss) from each property. Subtract line 16 from line 2 | **17** | | | | |

**Allowable Codes for Type of Property**

1 — Single Family Residence
2 — Multi-Family Residence
3 — Vacation or Short-Term Rental
4 — Commercial
5 — Land
6 — Royalties
7 — Self-Rental
8 — Other (include description with the code on Form 8825 or on a separate statement)

Form **4562**

Department of the Treasury
Internal Revenue Service (99)

**Depreciation and Amortization**
**(Including Information on Listed Property)**
► Attach to your tax return.
► Information about Form 4562 and its separate instructions is at *www.irs.gov/form4562.*

OMB No. 1545-0172

**2016**

Attachment
Sequence No. **179**

Name(s) shown on return

GALMOR FAMILY LTD PARTNERSHIP

Identifying number

27-4132388

Business or activity to which this form relates

FORM 8825, RENTAL REAL ESTATE - RENTAL REAL ESTATE

| **Part I** | **Election To Expense Certain Property Under Section 179** |
|---|---|

Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions)..................................................... | **1** | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions)........................ | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions)...................... | **3** | 2,010,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0-.................... | **4** | 0. |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions........................................................... | **5** | 500,000. |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29................................. **7** | 0. | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7........................ | **8** | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8....................................... | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2015 Form 4562.......................... | **10** | 230,240. |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs).. | **11** | 0. |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11.............. | **12** | 0. |
| 13 | Carryover of disallowed deduction to 2017. Add lines 9 and 10, less line 12...... ► **13** | 230,240. | |

Note: *Don't use Part II or Part III below for listed property. Instead, use Part V.*

| **Part II** | **Special Depreciation Allowance and Other Depreciation** (Don't include listed property.) (See instructions.) |
|---|---|

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions)....................................................... | **14** | 2,109. |
| 15 | Property subject to section 168(f)(1) election........................................... | **15** | |
| 16 | Other depreciation (including ACRS)................................................... | **16** | |

| **Part III** | **MACRS Depreciation** (Don't include listed property.) (See instructions.) |
|---|---|

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2016........................ | **17** | 2,824. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here........................................................ ► ☐ | | |

**Section B — Assets Placed in Service During 2016 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **19 a** 3-year property........... | | | | | | |
| **b** 5-year property........... | | | | | | |
| **c** 7-year property........... | | | | | | |
| **d** 10-year property......... | | | | | | |
| **e** 15-year property......... | | | | | | |
| **f** 20-year property......... | | | | | | |
| **g** 25-year property......... | | | 25 yrs | | S/L | |
| **h** Residential rental property......... | 8/09/16 | 2,108. | 27.5 yrs | MM | S/L | 29. |
| | | | 27.5 yrs | MM | S/L | |
| **i** Nonresidential real property......... | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

**Section C — Assets Placed in Service During 2016 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| **20 a** Class life............... | | | | | S/L | |
| **b** 12-year............... | | | 12 yrs | | S/L | |
| **c** 40-year............... | | | 40 yrs | MM | S/L | |

| **Part IV** | **Summary** (See instructions.) |
|---|---|

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28.................................... | **21** | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions............. | **22** | 4,962. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs...................... **23** | | |

**BAA For Paperwork Reduction Act Notice, see separate instructions.**       FDIZ0812L 01/24/17       Form **4562** (2016)

# 2016 Other Rental Activities Schedule

Form 1065, Schedule K, Line 3

| Name | Employer Identification Number |
|---|---|
| GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

**1** Description of Property

A WATER SALES

B

C

D

| Other Rental Income | | Properties | | | |
|---|---|---|---|---|---|
| | | **A** | **B** | **C** | **D** |
| **2** Gross rents...................... | | | | | |
| Ordinary inc. (loss) federal amount. | | | | | |
| Total Gross Income................ | 2 | | | | |
| **Rental Expenses** | | | | | |
| **3** Advertising...................... | 3 | | | | |
| **4** Auto and travel................... | 4 | | | | |
| **5** Cleaning and maintenance......... | 5 | | | | |
| **6** Commissions..................... | 6 | | | | |
| **7** Insurance....................... | 7 | | | | |
| **8** Legal and other professional fees... | 8 | | | | |
| **9** Interest.......................... | 9 | | | | |
| **10** Repairs.......................... | 10 | | | | |
| **11** Taxes............................ | 11 | | | | |
| **12** Utilities......................... | 12 | | | | |
| **13** Wages and salaries............... | 13 | | | | |
| **14** Depreciation...................... | 14 | | | | |
| **15 ►** | 15 | | | | |
| **16** Total Expenses. Add lines 3 through 15...... | 16 | | | | |
| **17** Net income (loss) from other rental activities Subtract line 16 from line 2............. | 17 | | | | |
| **Passive Activity Info** | | | | | |
| **18a** Passive (P) / Nonpassive (NP)...... | 18a | P | | | |
| **b** Section 1231 gain (loss)............ | 18b | | | | |

**SUMMARY OF OTHER RENTAL ACTIVITIES**                                    PTPL1601L  06/16/16

| | | | |
|---|---|---|---|
| **19** | Total Gross income from all other rental activities................................................. | 19 | |
| **20** | Net income (loss) from other rental activities from partnerships and fiduciaries in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1)..................................... | 20 | 0. |
| **21** | Total Gross income from all activities and passthroughs. Line 19 plus Line 20. Enter on Sch. K, line 3a | 21 | 0. |
| **22** | Total expenses from all other rental activities. Enter on Sch. K, line 3b............................. | 22 | |
| **23** | Net income (loss) from other rental activities. Line 21 minus Line 22, Enter the result here and on Schedule K, line 3c................................................. | 23 | 0. |

| 2016 | **FEDERAL STATEMENTS** | PAGE 1 |
|------|------------------------|--------|
| | **GALMOR FAMILY LTD PARTNERSHIP** | 27-4132388 |

**STATEMENT 1**
**FORM 1065, LINE 20**
**OTHER DEDUCTIONS**

| | | |
|---|---|---|
| LEGAL AND PROFESSIONAL | $ | 11,638. |
| MEALS AND ENTERTAINMENT | | 160. |
| OPERATING EXPENSE FROM O & G ACTIVITIES | | 53,155. |
| POSTAGE | | 25. |
| PRODUCTION TAX FROM O & G ACTIVITIES | | 484. |
| UTILITIES | | 3,496. |
| | TOTAL $ | 68,958. |

**STATEMENT 2**
**FORM 1065, SCHEDULE K, LINE 13D**
**OTHER DEDUCTIONS**

| | | |
|---|---|---|
| ROYALTY INCOME: PRODUCTION TAX FROM O & G ACTIVITIES | $ | 69. |
| | TOTAL $ | 69. |

**QUALIFIED DOMESTIC PRODUCTION ACTIVITY INFORMATION - ALL ACTIVITIES**

| | | |
|---|---|---|
| QUALIFIED PRODUCTION ACTIVITIES INCOME | $ | -99,106. |

**STATEMENT 3**
**FORM 1065, SCHEDULE L, LINE 13**
**OTHER ASSETS**

| | BEGINNING | ENDING |
|---|---|---|
| NOTE RECEIVABLE - CARTER | $ 90,600. | $ 81,902. |
| TOTAL | $ 90,600. | $ 81,902. |

**STATEMENT 4**
**FORM 1065, SCHEDULE L, LINE 17**
**OTHER CURRENT LIABILITIES**

| | BEGINNING | ENDING |
|---|---|---|
| SHALE ADVANCE | $ 174,079. | $ 174,079. |
| TOTAL | $ 174,079. | $ 174,079. |

**STATEMENT 5**
**FORM 1065, SCHEDULE M-1, LINE 4**
**EXPENSES ON BOOKS NOT ON SCHEDULE K**

| | | |
|---|---|---|
| OIL AND GAS DEPLETION EXPENSE | $ | 18,403. |
| | TOTAL $ | 18,403. |

| 2016 | FEDERAL STATEMENTS | PAGE 2 |
|---|---|---|
| | GALMOR FAMILY LTD PARTNERSHIP | 27-4132388 |

**STATEMENT 6**
**FORM 1065, SCHEDULE M-2, LINE 4**
**OTHER INCREASES**

| | | |
|---|---|---|
| ..................................................................................... | $ | 18,204. |
| ..................................................................................... | | 75,574. |
| | TOTAL $ | 93,778. |

| 2016 | GENERAL ELECTIONS | PAGE 1 |
|---|---|---|
| | **GALMOR FAMILY LTD PARTNERSHIP** | 27-4132388 |

### SECTION 1.263(A)-1(F) DE MINIMIS SAFE HARBOR ELECTION

THE TAXPAYER HEREBY MAKES THE DE MINIMIS SAFE HARBOR ELECTION UNDER REGULATION 1.263(A)-1(F).

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
27-4132388

| 12/31/16 | 2016 FEDERAL OIL AND GAS INCOME (LOSS) REPORT | | | | | | | | | | PAGE 1 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | GALMOR FAMILY LTD PARTNERSHIP | | | | | | | | | | 27-4132388 | |

| PROP NUMBER | PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS INCOME | PRODUCTION TAX | IDC* | OPERATING EXPENSES | AMORTIZATIO DEPRECIATION | SECTION 179 | * ALLOCATED OVERHEAD | DRY HOLE EXPENSE* | OTHER EXPENSES | NET INCOME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BARKER PRODUCTION CO | PRIMARY GAS | 790 | 56 | | | | | | | | 734 |
| 20 | SCOUT ENERGY | PRIMARY GAS | 189 | 13 | | | | | | | | 176 |
| | TOTALS: SCHEDULE K - ROYALTIES | | 979 | 69 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 910 |
| 13 | BARKER PRODUCTION COMPANY LP | PRIMARY GAS | 70,009 | 484 | | 53,155 | | | | | | 16,370 |
| | TOTALS: TRADE OR BUSINESS INCOME | | 70,009 | 484 | 0 | 53,155 | 0 | 0 | 0 | 0 | 0 | 16,370 |
| 19 | GALMOR'S/G&G STEAM SERVICE INC | NONPRODUCING | 155,101 | | | | | | | | | 155,101 |
| | TOTALS: SCHEDULE K - ROYALTIES | | 155,101 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 155,101 |
| | GRAND TOTALS | | 226,089 | 553 | 0 | 53,155 | 0 | 0 | 0 | 0 | 0 | 172,381 |

* - PASS-THROUGH EXPENSES INCLUDED IN NET INCOME ONLY FOR CALCULATION OF NET INCOME LIMITATION ON THE FEDERAL OIL AND GAS ALLOWABLE DEPLETION REPORT.

| 12/31/16 | 2016 FEDERAL OIL AND GAS ALLOWABLE DEPLETION REPORT | | | | | | | PAGE 1 |
|---|---|---|---|---|---|---|---|---|
| | GALMOR FAMILY LTD PARTNERSHIP | | | | | | | 27-4132388 |

| PROP NUMBER | PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS % DEPLETION | TENTATIVE % DEPLETION | COST DEPLETION | GREATER OF % OR COST | DEPLETION IN EXCESS OF BASIS | EXCESS IDC |
|---|---|---|---|---|---|---|---|---|
| 1 | BARKER PRODUCTION CO | PRIMARY GAS | 119 | 119 | | 119 | 119 | |
| 20 | SCOUT ENERGY | PRIMARY GAS | 28 | 28 | | 28 | 28 | |
| | TOTALS: SCHEDULE K - ROYALTIES | | 147 | 147 | 0 | 147 | 147 | 0 |
| 13 | BARKER PRODUCTION COMPANY LP | PRIMARY GAS | 10,501 | 10,501 | | 10,501 | 10,501 | |
| | TOTALS: TRADE OR BUSINESS INCOME | | 10,501 | 10,501 | 0 | 10,501 | 10,501 | 0 |
| 19 | GALMOR'S/G&G STEAM SERVICE INC | NONPRODUCING | 7,755 | 7,755 | | 7,755 | 7,755 | |
| | TOTALS: SCHEDULE K - ROYALTIES | | 7,755 | 7,755 | 0 | 7,755 | 7,755 | 0 |
| | GRAND TOTALS | | 18,403 | 18,403 | 0 | 18,403 | 18,403 | 0 |

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

September 13, 2017

THE GALMOR CONTRIBUTION TRUST
PO BOX 349
SHAMROCK, TX 79079

RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2016 Return of Income

Dear THE GALMOR CONTRIBUTION TRUST:

Enclosed is your 2016 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2016 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.

Sincerely,

GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

| Schedule K-1 **(Form 1065)** | **2016** | ☐ Final K-1 ☐ Amended K-1 | 651113 OMB No. 1545-0123 |
|---|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax
year beginning _____ , 2016
ending _____ , ____

## Partner's Share of Income, Deductions, Credits, etc.
▶ See separate instructions.

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) **-49,093.** | 15 | Credits |
| 2 | Net rental real estate income (loss) * **5,233.** | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income **1,179.** | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties **77,259.** | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| | | A | **-298.** |
| 9b | Collectibles (28%) gain (loss) | D | **111,914.** |
| 9c | Unrecaptured section 1250 gain | E | **26,584.** |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | C | **78.** |
| | | 19 | Distributions |
| 12 | Section 179 deduction | A | **75,165.** |
| 13 | Other deductions | 20 | Other information |
| I* | **34.** | A | **78,438.** |
| U | **-49,058.** | B | **34.** |
| 14 | Self-employment earnings (loss) | | |
| B | **97,802.** | T* | STMT |

### Part I — Information About the Partnership

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code

THE GALMOR CONTRIBUTION TRUST
PO BOX 349
SHAMROCK, TX 79079

**G** ☐ General partner or LLC member-manager ☒ Limited partner or other LLC member

**H** ☒ Domestic partner ☐ Foreign partner

**I1** What type of entity is this partner? ....... FIDUCIARY

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 49.5 % | 49.5 % |
| Loss | 49.5 % | 49.5 % |
| Capital | 49.5 % | 49.5 % |

**K** Partner's share of liabilities at year end:

Nonrecourse .................... $ _____
Qualified nonrecourse financing ........ $ _____
Recourse ...................... $ _____

**L** Partner's capital account analysis:

Beginning capital account ............. $ 1,873.
Capital contributed during the year ..... $ _____
Current year increase (decrease)....... $ 71,776.
Withdrawals & distributions ........... $ ( 75,165. )
Ending capital account ............... $ -1,516.

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes ☒ No
If 'Yes', attach statement (see instructions)

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2016

PTPA0312L 08/26/16

PAPP 0571

Schedule **K-1** (Form 1065) 2016  GALMOR FAMILY LTD PARTNERSHIP  27-4132388  Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.



| | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6 a** | **Ordinary dividends** | Form 1040, line 9a |
| **6 b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | Code | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub. 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | |
| | **D** Noncash contributions (30%) | See the Partner's Instructions |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 19 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |

**Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.

| | | |
|---|---|---|
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | **B** Low-income housing credit (other) from pre-2008 buildings | |
| | **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | **D** Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | **E** Qualified rehabilitation expenditures (rental real estate) | |
| | **F** Other rental real estate credits | |
| | **G** Other rental credits | |
| | **H** Undistributed capital gains credit | Form 1040, line 73; check box a |
| | **I** Biofuel producer credit | |
| | **J** Work opportunity credit | See the Partner's Instructions |
| | **K** Disabled access credit | |

| | | Report on |
|---|---|---|
| | Code | |
| | **L** Empowerment zone employment credit | |
| | **M** Credit for increasing research activities | |
| | **N** Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| | **O** Backup withholding | |
| | **P** Other credits | |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | |
| | **B** Gross income from all sources | Form 1116, Part I |
| | **C** Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive category | |
| | **E** General category | Form 1116, Part I |
| | **F** Other | |
| | *Deductions allocated and apportioned at partner level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive category | |
| | **J** General category | Form 1116, Part I |
| | **K** Other | |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | |
| | **B** Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | **C** Depletion (other than oil & gas) | |
| | **D** Oil, gas, & geothermal — gross income | |
| | **E** Oil, gas, & geothermal — deductions | |
| | **F** Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | |
| | **B** Distribution subject to section 737 | See the Partner's Instructions |
| | **C** Other property | |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | **E** Basis of energy property | See the Partner's Instructions |
| | **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **H** Recapture of investment credit | See Form 4255 |
| | **I** Recapture of other credits | See the Partner's Instructions |
| | **J** Look-back interest — completed long-term contracts | See Form 8697 |
| | **K** Look-back interest — income forecast method | See Form 8866 |
| | **L** Dispositions of property with section 179 deductions | |
| | **M** Recapture of section 179 deduction | |
| | **N** Interest expense for corporate partners | |
| | **O** Section 453(l)(3) information | |
| | **P** Section 453A(c) information | |
| | **Q** Section 1260(b) information | |
| | **R** Interest allocable to production expenditures | See the Partner's Instructions |
| | **S** CCF nonqualified withdrawals | |
| | **T** Depletion information — oil and gas | |
| | **U** Reserved | |
| | **V** Unrelated business taxable income | |
| | **W** Precontribution gain (loss) | |
| | **X** Section 108(i) information | |
| | **Y** Net investment income | |
| | **Z** Other information | |

THE GALMOR CONTRIBUTION TRUST  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  PTPA0312L 08/26/16  Schedule **K-1** (Form 1065) 2016

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

SCHEDULE K-1 (FORM 1065) 2016 **SUPPLEMENTAL INFORMATION** PAGE 3

## BOX 2
**RENTAL REAL ESTATE ACTIVITIES**

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND | | | | | |
| 15767 FM 1036 SHAMROCK, OK 79079 | 13,346. | 8,112. $ | 5,234. | NONPASS | |
| ROUNDING OR SPECIALLY ALLOCATED NET INCOME (LOSS) ADJUSTMENT | | | -1. | | |
| | | TOTAL $ | 5,233. | | |

## BOX 13
**OTHER DEDUCTIONS**

**\* DESCRIPTIVE INFORMATION**

I    PRODUCTION TAX FROM O & G ACTIVITIES...................................... $         34.

THE GALMOR CONTRIBUTION TRUST    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

SPSL1201L  06/16/16

GALMOR FAMILY LTD PARTNERSHIP   27-4132388

# 2016 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES

### (Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| THE GALMOR CONTRIBUTION TRUST | 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 |

**INCOME:**

| | |
|---|---|
| 1. Gross income from oil and gas activities (Sch. K-1 line 17, Code D) | 111,914. |

**EXPENSES:**

| | |
|---|---|
| 2. Production tax | 273. |
| 3. Operating expenses | 26,311. |
| 4. Depreciation | |
| 5. Allocated overhead | |
| 6. Other expenses | |
| 7. Total deductions allocable to oil and gas activities (Schedule K-1 line 17, Code E) | 26,584. |
| 8. Net income from oil and gas activities (line 1 minus line 7) | 85,330. |

**PASSTHROUGH EXPENSES:**

| | |
|---|---|
| 9. Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) | |
| 10. Dry hole costs (Schedule K-1 line 13, Code J) | |
| 11. Section 179 expense deduction (Schedule K-1 line 12) | |

**DEPLETION INFORMATION:**

| | |
|---|---|
| 12. Total cost depletion (greater than percentage) from all properties | |
| 13. Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 9,110. |
| 14. Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 15. Total tentative depletion deduction (add lines 12, 13 and 14) | 9,110. |
| 16. Total AMT cost depletion (greater than percentage) from all properties | |
| 17. Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 9,110. |
| 18. Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 19. Total tentative AMT depletion deduction (add lines 16, 17 and 18) | 9,110. |

**OTHER INFORMATION:**

| | |
|---|---|
| 20. Total percentage depletion in excess of basis | 9,110. |
| 21. Total excess intangible drilling costs (IDC) | |

PTPL1101L  06/16/16

THE GALMOR CONTRIBUTION TRUST    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

PAPP 0574

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

September 13, 2017

GALMOR MANAGEMENT LLC
PO BOX 349
SHAMROCK, TX 79079

RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2016 Return of Income

Dear GALMOR MANAGEMENT LLC:

Enclosed is your 2016 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2016 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.

Sincerely,

GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2016**

For calendar year 2016, or tax
year beginning _____, 2016
ending _____, _____

**Partner's Share of Income, Deductions, Credits, etc.**

► See separate instructions.

☐ Final K-1   ☐ Amended K-1

651113

OMB No. 1545-0123

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| | | |
|---|---|---|
| 1 Ordinary business income (loss) | 15 | Credits |
| -992. | | |
| 2 Net rental real estate income (loss) * | | |
| 106. | | |
| 3 Other net rental income (loss) | 16 | Foreign transactions |
| 4 Guaranteed payments | | |
| 5 Interest income | | |
| 24. | | |
| 6a Ordinary dividends | | |
| 6b Qualified dividends | | |
| 7 Royalties | | |
| 1,561. | | |
| 8 Net short-term capital gain (loss) | | |
| 9a Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| | A | -6. |
| 9b Collectibles (28%) gain (loss) | D | 2,261. |
| 9c Unrecaptured section 1250 gain | E | 538. |
| 10 Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 Other income (loss) | C | 2. |
| 12 Section 179 deduction | 19 | Distributions |
| | A | 1,518. |
| 13 Other deductions | 20 | Other information |
| I* 1. | A | 1,585. |
| U -991. | B | 1. |
| 14 Self-employment earnings (loss) | | |
| A -992. | T* STMT | |
| B 1,976. | | |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E** Partner's identifying number
27-4132505

**F** Partner's name, address, city, state, and ZIP code

GALMOR MANAGEMENT LLC
PO BOX 349
SHAMROCK, TX 79079

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner? ....... PARTNERSHIP

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here. ................. ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 1 % | 1 % |
| Loss | 1 % | 1 % |
| Capital | 1 % | 1 % |

**K** Partner's share of liabilities at year end:

Nonrecourse ........................ $ _____
Qualified nonrecourse financing ....... $ _____
Recourse ........................... $ 640,896.

**L** Partner's capital account analysis:

Beginning capital account ............. $ 38.
Capital contributed during the year ..... $ _____
Current year increase (decrease)....... $ 1,450.
Withdrawals & distributions ........... $ ( 1,518.)
Ending capital account ............... $ -30.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If 'Yes', attach statement (see instructions)

*See attached statement for additional information.

F O R   I R S   U S E   O N L Y

**BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.**

Schedule K-1 (Form 1065) 2016

PTPA0312L  08/26/16

PAPP 0576

Schedule **K-1** (Form 1065) 2016    GALMOR FAMILY LTD PARTNERSHIP    27-4132388    Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| | Report on |
|---|---|
| **1 Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |
| **2 Net rental real estate income (loss)** | See the Partner's Instructions |
| **3 Other net rental income (loss)** | |
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |
| **4 Guaranteed payments** | Schedule E, line 28, column (j) |
| **5 Interest income** | Form 1040, line 8a |
| **6 a Ordinary dividends** | Form 1040, line 9a |
| **6 b Qualified dividends** | Form 1040, line 9b |
| **7 Royalties** | Schedule E, line 4 |
| **8 Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10 Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11 Other income (loss)** | |
| Code | |
| **A** Other portfolio income (loss) | See the Partner's Instructions |
| **B** Involuntary conversions | See the Partner's Instructions |
| **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| **D** Mining exploration costs recapture | See Pub. 535 |
| **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| **F** Other income (loss) | See the Partner's Instructions |
| **12 Section 179 deduction** | See the Partner's Instructions |
| **13 Other deductions** | |
| **A** Cash contributions (50%) | |
| **B** Cash contributions (30%) | |
| **C** Noncash contributions (50%) | |
| **D** Noncash contributions (30%) | See the Partner's Instructions |
| **E** Capital gain property to a 50% organization (30%) | |
| **F** Capital gain property (20%) | |
| **G** Contributions (100%) | |
| **H** Investment interest expense | Form 4952, line 1 |
| **I** Deductions — royalty income | Schedule E, line 19 |
| **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| **L** Deductions — portfolio (other) | Schedule A, line 28 |
| **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| **N** Educational assistance benefits | See the Partner's Instructions |
| **O** Dependent care benefits | Form 2441, line 12 |
| **P** Preproductive period expenses | See the Partner's Instructions |
| **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| **R** Pensions and IRAs | See the Partner's Instructions |
| **S** Reforestation expense deduction | See the Partner's Instructions |
| **T** Domestic production activities information | See Form 8903 Instructions |
| **U** Qualified production activities income | See Form 8903, line 7b |
| **V** Employer's Form W-2 wages | Form 8903, line 17 |
| **W** Other deductions | See the Partner's Instructions |
| **14 Self-employment earnings (loss)** | |
| **Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's instructions before completing Schedule SE. | |
| **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| **B** Gross farming or fishing income | See the Partner's Instructions |
| **C** Gross non-farm income | See the Partner's Instructions |
| **15 Credits** | |
| **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| **B** Low-income housing credit (other) from pre-2008 buildings | |
| **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| **D** Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| **E** Qualified rehabilitation expenditures (rental real estate) | |
| **F** Other rental real estate credits | |
| **G** Other rental credits | |
| **H** Undistributed capital gains credit | Form 1040, line 73; check box a |
| **I** Biofuel producer credit | |
| **J** Work opportunity credit | See the Partner's Instructions |
| **K** Disabled access credit | |

| | Report on |
|---|---|
| Code | |
| **L** Empowerment zone employment credit | |
| **M** Credit for increasing research activities | |
| **N** Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| **O** Backup withholding | |
| **P** Other credits | |
| **16 Foreign transactions** | |
| **A** Name of country or U.S. possession | |
| **B** Gross income from all sources | Form 1116, Part I |
| **C** Gross income sourced at partner level | |
| *Foreign gross income sourced at partnership level* | |
| **D** Passive category | |
| **E** General category | Form 1116, Part I |
| **F** Other | |
| *Deductions allocated and apportioned at partner level* | |
| **G** Interest expense | Form 1116, Part I |
| **H** Other | Form 1116, Part I |
| *Deductions allocated and apportioned at partnership level to foreign source income* | |
| **I** Passive category | |
| **J** General category | Form 1116, Part I |
| **K** Other | |
| *Other information* | |
| **L** Total foreign taxes paid | Form 1116, Part II |
| **M** Total foreign taxes accrued | Form 1116, Part II |
| **N** Reduction in taxes available for credit | Form 1116, line 12 |
| **O** Foreign trading gross receipts | Form 8873 |
| **P** Extraterritorial income exclusion | Form 8873 |
| **Q** Other foreign transactions | See the Partner's Instructions |
| **17 Alternative minimum tax (AMT) items** | |
| **A** Post-1986 depreciation adjustment | |
| **B** Adjusted gain or loss | |
| **C** Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| **D** Oil, gas, & geothermal — gross income | |
| **E** Oil, gas, & geothermal — deductions | |
| **F** Other AMT items | |
| **18 Tax-exempt income and nondeductible expenses** | |
| **A** Tax-exempt interest income | Form 1040, line 8b |
| **B** Other tax-exempt income | See the Partner's Instructions |
| **C** Nondeductible expenses | See the Partner's Instructions |
| **19 Distributions** | |
| **A** Cash and marketable securities | |
| **B** Distribution subject to section 737 | See the Partner's Instructions |
| **C** Other property | |
| **20 Other information** | |
| **A** Investment income | Form 4952, line 4a |
| **B** Investment expenses | Form 4952, line 5 |
| **C** Fuel tax credit information | Form 4136 |
| **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| **E** Basis of energy property | See the Partner's Instructions |
| **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| **H** Recapture of investment credit | See Form 4255 |
| **I** Recapture of other credits | See the Partner's Instructions |
| **J** Look-back interest — completed long-term contracts | See Form 8697 |
| **K** Look-back interest — income forecast method | See Form 8866 |
| **L** Dispositions of property with section 179 deductions | |
| **M** Recapture of section 179 deduction | |
| **N** Interest expense for corporate partners | |
| **O** Section 453(l)(3) information | |
| **P** Section 453A(c) information | |
| **Q** Section 1260(b) information | |
| **R** Interest allocable to production expenditures | See the Partner's Instructions |
| **S** CCF nonqualified withdrawals | |
| **T** Depletion information — oil and gas | |
| **U** Reserved | |
| **V** Unrelated business taxable income | |
| **W** Precontribution gain (loss) | |
| **X** Section 108(i) information | |
| **Y** Net investment income | |
| **Z** Other information | |

GALMOR MANAGEMENT LLC    27-4132505    PTPA0312L  08/26/16    Schedule **K-1**(Form 1065) 2016

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

SCHEDULE K-1 (FORM 1065) 2016      **SUPPLEMENTAL INFORMATION**       PAGE 3

## BOX 2
## RENTAL REAL ESTATE ACTIVITIES

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND | | | | | |
| 15767 FM 1036 SHAMROCK, OK 79079 | 270. | 164. $ | 106. | NONPASS | |
| | | TOTAL $ | 106. | | |

## BOX 13
## OTHER DEDUCTIONS

## * DESCRIPTIVE INFORMATION

I     PRODUCTION TAX FROM O & G ACTIVITIES...................................... $       1.

GALMOR MANAGEMENT LLC    27-4132505

SPSL1201L 06/16/16

GALMOR FAMILY LTD PARTNERSHIP    27-4132388

# 2016 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES
### (Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| GALMOR MANAGEMENT LLC | 27-4132505 |

**INCOME:**

| | |
|---|---:|
| 1. **Gross income from oil and gas activities** (Sch. K-1 line 17, Code D) ....................................... | 2,261. |

**EXPENSES:**

| | |
|---|---:|
| 2. Production tax ............................................................................................... | 6. |
| 3. Operating expenses ......................................................................................... | 532. |
| 4. Depreciation ................................................................................................. | |
| 5. Allocated overhead .......................................................................................... | |
| 6. Other expenses ............................................................................................... | |
| 7. **Total deductions allocable to oil and gas activities** (Schedule K-1 line 17, Code E) ......................... | 538. |
| 8. **Net income from oil and gas activities** (line 1 minus line 7) ................................................. | 1,723. |

**PASSTHROUGH EXPENSES:**

| | |
|---|---:|
| 9. Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) ......................................... | |
| 10. Dry hole costs (Schedule K-1 line 13, Code J) ............................................................. | |
| 11. Section 179 expense deduction (Schedule K-1 line 12) ...................................................... | |

**DEPLETION INFORMATION:**

| | |
|---|---:|
| 12. Total cost depletion (greater than percentage) from all properties ........................................... | |
| 13. Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) .. | 184. |
| 14. Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) ..................... | |
| 15. Total tentative depletion deduction (add lines 12, 13 and 14) ............................................... | 184. |
| 16. Total AMT cost depletion (greater than percentage) from all properties ...................................... | |
| 17. Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) ................... | 184. |
| 18. Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) ................ | |
| 19. Total tentative AMT depletion deduction (add lines 16, 17 and 18) ........................................... | 184. |

**OTHER INFORMATION:**

| | |
|---|---:|
| 20. Total percentage depletion in excess of basis ............................................................... | 184. |
| 21. Total excess intangible drilling costs (IDC) ................................................................ | |

PTPL1101L  06/16/16

GALMOR MANAGEMENT LLC    27-4132505

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079
806-256-2135

September 13, 2017

THE GALMOR FAMILY TRUST
P.O. BOX 349
SHAMROCK, TX 79079

RE:
GALMOR FAMILY LTD PARTNERSHIP
27-4132388
Schedule K-1 from Partnership's 2016 Return of Income

Dear THE GALMOR FAMILY TRUST:

Enclosed is your 2016 Schedule K-1 (Form 1065) Partner's Share of Income, Deductions, Credits, Etc. from GALMOR FAMILY LTD PARTNERSHIP. This information reflects the amounts you need to complete your income tax return. The amounts shown are your distributive share of partnership tax items to be reported on your tax return, and may not correspond to actual distributions you have received during the year. This information is included in the Partnership's 2016 Federal Return of Partnership Income that was filed with the Internal Revenue Service.

If you have any questions concerning this information, please contact us immediately.

Sincerely,

GALMOR FAMILY LTD PARTNERSHIP

Enclosure(s)

| ☐ Final K-1 | ☐ Amended K-1 | 651113 |
| --- | --- | --- |

OMB No. 1545-0123

**Schedule K-1**
**(Form 1065)**

**2016**

Department of the Treasury
Internal Revenue Service

For calendar year 2016, or tax
year beginning _____, 2016
ending _____, _____

**Partner's Share of Income, Deductions, Credits, etc.** ► See separate instructions.

| **Part I** Information About the Partnership |
| --- |

**A** Partnership's employer identification number
27-4132388

**B** Partnership's name, address, city, state, and ZIP code

GALMOR FAMILY LTD PARTNERSHIP
PO BOX 349
SHAMROCK, TX 79079

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| **Part II** Information About the Partner |
| --- |

**E** Partner's identifying number
46-7363977

**F** Partner's name, address, city, state, and ZIP code

THE GALMOR FAMILY TRUST
P.O. BOX 349
SHAMROCK, TX 79079

**G** ☐ General partner or LLC member-manager  ☒ Limited partner or other LLC member

**H** ☒ Domestic partner  ☐ Foreign partner

**I1** What type of entity is this partner?....... FIDUCIARY

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here. ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
| --- | --- | --- |
| Profit | 49.5 % | 49.5 % |
| Loss | 49.5 % | 49.5 % |
| Capital | 49.5 % | 49.5 % |

**K** Partner's share of liabilities at year end:

| | |
| --- | --- |
| Nonrecourse............................$ | |
| Qualified nonrecourse financing........$ | |
| Recourse...............................$ | |

**L** Partner's capital account analysis:

| | |
| --- | --- |
| Beginning capital account.............$ | 1,878. |
| Capital contributed during the year.....$ | |
| Current year increase (decrease)......$ | 71,779. |
| Withdrawals & distributions............$ | ( 75,165.) |
| Ending capital account................$ | -1,508. |

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
| --- | --- |

| # | Description | # | Description |
| --- | --- | --- | --- |
| 1 | Ordinary business income (loss) -49,093. | 15 | Credits |
| 2 | Net rental real estate income (loss) * 5,234. | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income 1,180. | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties 77,260. | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| | | A | -297. |
| 9b | Collectibles (28%) gain (loss) | D | 111,914. |
| 9c | Unrecaptured section 1250 gain | E | 26,586. |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | C | 79. |
| 12 | Section 179 deduction | 19 | Distributions |
| | | A | 75,165. |
| 13 | Other deductions I* 34. | 20 | Other information |
| | U -49,057. | A | 78,440. |
| | | B | 34. |
| 14 | Self-employment earnings (loss) B 97,803. | T* | STMT |

*See attached statement for additional information.

F
O
R

I
R
S

U
S
E

O
N
L
Y

BAA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule **K-1** (Form 1065) 2016

PTPA0312L  08/26/16

Schedule **K-1** (Form 1065) 2016    GALMOR FAMILY LTD PARTNERSHIP    27-4132388    Page **2**

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.



| | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6 a** | **Ordinary dividends** | Form 1040, line 9a |
| **6 b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5 |
| **9 a** | **Net long-term capital gain (loss)** | Schedule D, line 12 |
| **9 b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9 c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | *Code* | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Sec. 1256 contracts & straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub. 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | See the Partner's Instructions |
| | **D** Noncash contributions (30%) | |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 19 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |
| | **Note.** If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE. | |
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | |
| | **B** Low-income housing credit (other) from pre-2008 buildings | |
| | **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | |
| | **D** Low-income housing credit (other) from post-2007 buildings | See the Partner's Instructions |
| | **E** Qualified rehabilitation expenditures (rental real estate) | |
| | **F** Other rental real estate credits | |
| | **G** Other rental credits | |
| | **H** Undistributed capital gains credit | Form 1040, line 73; check box a |
| | **I** Biofuel producer credit | |
| | **J** Work opportunity credit | See the Partner's Instructions |
| | **K** Disabled access credit | |

| | | Report on |
|---|---|---|
| | *Code* | |
| | **L** Empowerment zone employment credit | |
| | **M** Credit for increasing research activities | |
| | **N** Credit for employer social security and Medicare taxes | See the Partner's Instructions |
| | **O** Backup withholding | |
| | **P** Other credits | |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | |
| | **B** Gross income from all sources | Form 1116, Part I |
| | **C** Gross income sourced at partner level | |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive category | |
| | **E** General category | Form 1116, Part I |
| | **F** Other | |
| | *Deductions allocated and apportioned at partner level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive category | |
| | **J** General category | Form 1116, Part I |
| | **K** Other | |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | |
| | **B** Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| | **C** Depletion (other than oil & gas) | |
| | **D** Oil, gas, & geothermal — gross income | |
| | **E** Oil, gas, & geothermal — deductions | |
| | **F** Other AMT items | |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | |
| | **B** Distribution subject to section 737 | See the Partner's Instructions |
| | **C** Other property | |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | **E** Basis of energy property | See the Partner's Instructions |
| | **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **H** Recapture of investment credit | See Form 4255 |
| | **I** Recapture of other credits | See the Partner's Instructions |
| | **J** Look-back interest — completed long-term contracts | See Form 8697 |
| | **K** Look-back interest — income forecast method | See Form 8866 |
| | **L** Dispositions of property with section 179 deductions | |
| | **M** Recapture of section 179 deduction | |
| | **N** Interest expense for corporate partners | |
| | **O** Section 453(l)(3) information | |
| | **P** Section 453A(c) information | |
| | **Q** Section 1260(b) information | |
| | **R** Interest allocable to production expenditures | See the Partner's Instructions |
| | **S** CCF nonqualified withdrawals | |
| | **T** Depletion information — oil and gas | |
| | **U** Reserved | |
| | **V** Unrelated business taxable income | |
| | **W** Precontribution gain (loss) | |
| | **X** Section 108(i) information | |
| | **Y** Net investment income | |
| | **Z** Other information | |

THE GALMOR FAMILY TRUST    46-7363977    PTPA0312L  08/26/16    Schedule **K-1** (Form 1065) 2016

GALMOR FAMILY LTD PARTNERSHIP 27-4132388

SCHEDULE K-1 (FORM 1065) 2016     **SUPPLEMENTAL INFORMATION**     PAGE   3

## BOX 2
## RENTAL REAL ESTATE ACTIVITIES

| PROPERTY TYPE AND ADDRESS | GROSS INCOME | NET EXPENSES | NET INCOME | PASSIVE NONPASS | SEC. 1231 TOTAL |
|---|---|---|---|---|---|
| TYPE: 5 - LAND | | | | | |
| 15767 FM 1036 SHAMROCK, OK 79079 | 13,346. | 8,112. $ | 5,234. | NONPASS | |
| | | TOTAL $ | 5,234. | | |

## BOX 13
## OTHER DEDUCTIONS

## * DESCRIPTIVE INFORMATION

I     PRODUCTION TAX FROM O & G ACTIVITIES...................................... $       34.

THE GALMOR FAMILY TRUST    46-7363977

SPSL1201L 06/16/16

GALMOR FAMILY LTD PARTNERSHIP   27-4132388

# 2016 PARTNER'S SUMMARY OF OIL AND GAS ACTIVITIES

(Form 1065, Schedule K-1, Box 20, Other Information, Code T)

| Partner's name | Partner's I.D. |
|---|---|
| THE GALMOR FAMILY TRUST | 46-7363977 |

**INCOME:**

| | | |
|---|---|---|
| 1. | Gross income from oil and gas activities (Sch. K-1 line 17, Code D) | 111,914. |

**EXPENSES:**

| | | |
|---|---|---|
| 2. | Production tax | 274. |
| 3. | Operating expenses | 26,312. |
| 4. | Depreciation | |
| 5. | Allocated overhead | |
| 6. | Other expenses | |
| 7. | Total deductions allocable to oil and gas activities (Schedule K-1 line 17, Code E) | 26,586. |
| 8. | Net income from oil and gas activities (line 1 minus line 7) | 85,328. |

**PASSTHROUGH EXPENSES:**

| | | |
|---|---|---|
| 9. | Total intangible drilling costs (IDC) (Schedule K-1 line 13, Code J) | |
| 10. | Dry hole costs (Schedule K-1 line 13, Code J) | |
| 11. | Section 179 expense deduction (Schedule K-1 line 12) | |

**DEPLETION INFORMATION:**

| | | |
|---|---|---|
| 12. | Total cost depletion (greater than percentage) from all properties | |
| 13. | Total percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 9,109. |
| 14. | Total percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 15. | Total tentative depletion deduction (add lines 12, 13 and 14) | 9,109. |
| 16. | Total AMT cost depletion (greater than percentage) from all properties | |
| 17. | Total AMT percentage depletion (greater than cost) from all properties (subject to 65% taxable income limitation) | 9,109. |
| 18. | Total AMT percentage depletion (greater than cost) from all properties (NOT subject to 65% taxable income limitation) | |
| 19. | Total tentative AMT depletion deduction (add lines 16, 17 and 18) | 9,109. |

**OTHER INFORMATION:**

| | | |
|---|---|---|
| 20. | Total percentage depletion in excess of basis | 9,109. |
| 21. | Total excess intangible drilling costs (IDC) | |

PTPL1101L  06/16/16

THE GALMOR FAMILY TRUST   46-7363977

**2017 Individual Return**
prepared for:

**STEVE GALMOR**
P.O. BOX 349
SHAMROCK, TX 79079

**P K & Company PLLC**
1000 N. Main, P.O. Box 1728
Elk City, OK 73648

**EXHIBIT**
9

DEPONENT NAME: Galmor
DATE: 3 /24/21

PAPP 0585

**P K & COMPANY PLLC**
**1000 N. MAIN, P.O. BOX 1728**
**ELK CITY, OK 73648**
**(580) 225-8877**

January 10, 2019

STEVE GALMOR
P.O. BOX 349
SHAMROCK, TX 79079

Dear Steve,

Your 2017 Federal Individual Income Tax return will be electronically filed with the Internal Revenue Service upon receipt of a signed Form 8879 - IRS e-file Signature Authorization. No tax is payable with the filing of this return. You will receive a refund of $11,618.

Under the Affordable Care Act, you and each member of your household had either health coverage or an exemption for each month during 2017. No individual shared responsibility payment is due with the filing of this return.

Your 2017 Oklahoma Individual Income Tax Return will be electronically filed with the State of Oklahoma. No tax is payable with the filing of this return.

Please be sure to call if you have any questions.

Sincerely,


KELLYE L FUCHS, CPA

| 2017 | FEDERAL K-1 RECONCILIATION WORKSHEET | | | | | PAGE 1 |
| | STEVE GALMOR | | | | | |

SGM LEASING LLC
45-4543762

| S CORPORATION NONPASSIVE | K-1 Input | Prior Year Unallowed At-Risk Loss | Disallowed Due to At-Risk | Prior Year Unallowed Passive Loss | Disallowed Passive Loss | Tax Return |
|---|---|---|---|---|---|---|
| **SCHEDULE E (page 2)** | | | K-1 INPUT COLUMN HAS BEEN DECREASED BY | | | |
| Ordinary income (loss)............. | -8. | | BASIS LIMITATION. SEE BASIS WORKSHEETS | | | |
| Rental real estate income (loss)...... | | | | | | |
| Other rental income (loss)........... | | | | | | |
| Section 59(e)(2) expenses.......... | | | | | | |
| Passive interest expense............ | | | | | | |
| Guaranteed payments (nonpassive)... | | | | | | |
| Section 179 expense and carryover... | | | | | | |
| Disallowed section 179 expense...... | | | | | | |
| Net income (loss)................... | -8. | | | | | -8. |
| First passive other.................. | | | | | | |
| Second passive other............... | | | | | | |
| Cost depletion...................... | | | | | | |
| Percentage depletion................ | | | | | | |
| Depletion carryover................. | | | | | | |
| Disallowed due to 65% limitation ..... | | | | | | |
| Unreimbursed expenses (nonpassive). | | | | | | |
| Nonpassive other.................... | | | | | | |
| Total Schedule E (page 2)........... | | | | | | -8. |
| **FORM 4797** | | | | | | |
| Section 1231 gain (loss) ............. | | | | | | |
| 4797 ordinary income............... | | | | | | |
| **SCHEDULE D** | | | | | | |
| Short-term capital gain (loss)........ | | | | | | |
| Long-term capital gain (loss)........ | | | | | | |
| **FORM 4952** | | | | | | |
| Investment interest expense.......... | | | | | | |
| Other net investment income......... | | | | | | |
| **SCHEDULE A** | | | | | | |
| Charitable contributions.............. | | | | | | |
| Deductions related to portfolio income | | | | | | |
| **SCHEDULE B** | | | | | | |
| Interest income (banks, S&L, C/U, etc.)....... | 8. | | | | | 8. |
| Interest income (U.S. bonds, T-bills, etc.) ...... | | | | | | |
| Ordinary dividends................... | | | | | | |
| Tax-exempt interest (total muni-bonds) ....... | | | | | | |
| Tax-exempt interest (in-state bonds) ......... | | | | | | |
| **FORM 6251** | | | | | | |
| Depreciation adjustment after 12/31/86....... | 48,969. | | | | | |
| Adjusted gain or loss ................ | -104,333. | | | | | |
| Depreciation (pre-1987)............... | | | | | | |
| Beneficiary's AMT adjustment........ | | | | | | |
| Depletion .......................... | | | | | | |
| Excess intangible drilling costs ....... | | | | | | |
| **MISCELLANEOUS** | | | | | | |
| Net earnings from self employment (SE)....... | | | | | | |
| Gross farming income (Sch. E, page 2)........ | | | | | | |
| Royalties (Sch. E, page 1)........... | | | | | | |
| Taxes on undistributed capital gains (1040) .... | | | | | | |
| Credit for income tax withheld........ | | | | | | |
| Estimated taxes credited from trust... | | | | | | |
| Credits............................. | | | | | | |

*Carries to AMT at-risk/passive worksheets to compute Form 6251, line 18 or 19.        FDIL1201L  07/13/17

# 2017 FEDERAL DEPRECIATION SCHEDULE

**12/31/17**  PAGE 1

STEVE GALMOR

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/BONUS/SP.DEPR. | PRIOR DEC. BAL DEPR. | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SCHEDULE C - MSG OIL & GAS** | | | | | | | | | | | | | | | | |
| 1 | GAS LEASE EQUIP | 5/01/93 | | 9,500 | | | | | | | 9,500 | 9,500 | 200DB HY | 7 | | 0 |
| 17 | 1986 FORD PUMPING TRUCK | 8/13/08 | | 2,500 | | | | | | | 2,500 | 2,500 | 200DB HY | 5 | | 0 |
| 33 | 3 MOBILE HOMES | 3/28/11 | | 49,897 | | | | | | | 49,897 | 33,056 | 150DB HY | 9 | .09650 | 4,815 |
| 34 | 2 MOBILE HOMES | 4/26/11 | | 31,598 | | | | | | | 31,598 | 20,933 | 150DB HY | 9 | .09650 | 3,049 |
| 35 | WELL EQUIPMENT | 1/01/11 | | 185,095 | | | | | | | 185,095 | 185,095 | 200DB HY | 5 | | 0 |
| 39 | TORNADO SHELTER | 5/07/13 | | 4,300 | | | | 2,150 | | | 2,150 | 2,016 | 200DB HY | 4 | .06250 | 134 |
| 48 | PIPELINE | 4/01/14 | | 32,000 | | | | | | | 32,000 | 26,000 | 200DB HY | 4 | .12500 | 4,000 |
| 49 | SAYRE LAND | 4/01/14 | | 30,000 | | | | | | | 30,000 | | | | | 0 |
| 50 | SAYRE SHOP | 4/01/14 | | 600 | | | | | | | 600 | 59 | S/L MM | 27.5 | .03636 | 22 |
| 51 | WELL EQUIPMENT | 4/01/14 | | 137,400 | | | | | | | 137,400 | 111,638 | 200DB HY | 4 | .12500 | 17,175 |
| 58 | WELL EQUIPMENT | 6/01/15 | | 53,049 | | | | 53,049 | | | 0 | 0 | 200DB MQ | 4 | | 0 |
| 59 | MOBILE HOME | 6/02/15 | | 13,148 | | | | | | | 13,148 | 3,333 | 150DB MQ | 9 | .12440 | 1,636 |
| | TOTAL | | | 549,087 | | 0 | 0 | 55,199 | 0 | 0 | 493,888 | 394,130 | | | | 30,831 |
| | TOTAL DEPRECIATION | | | 549,087 | | 0 | 0 | 55,199 | 0 | 0 | 493,888 | 394,130 | | | | 30,831 |
| **SCHEDULE F / FORM 4835 - LIVESTOCK** | | | | | | | | | | | | | | | | |
| **AUTO / TRANSPORT EQUIPMENT** | | | | | | | | | | | | | | | | |
| 18 | 2000 GMC PICKUP | 1/09/08 | | 6,500 | | | | 6,500 | | | 0 | 0 | 150DB HY | 3 | | 0 |
| 32 | PICKUP | 12/21/10 | | 8,000 | | | | 8,000 | | | 0 | 0 | 150DB HY | 3 | | 0 |
| 67 | 2000 TRUCK | 11/16/15 | | 1,000 | | | | 1,000 | | | 0 | 0 | 150DB MQ | 7 | | 0 |
| 71 | JEEP WAGONEER | 3/29/16 | | 3,500 | | | | | | | 3,500 | 919 | 150DB MQ | 5 | .22130 | 775 |
| 72 | ENGINE FOR 2005 DODGE | 9/02/16 | | 5,000 | | | | | | | 5,000 | 563 | 150DB MQ | 5 | .26620 | 1,331 |

**12/31/17**   **2017 FEDERAL DEPRECIATION SCHEDULE**   **PAGE 2**

STEVE GALMOR

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/BONUS/SP.DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 74 | 1995 FORD F150 | 1/30/17 | | 3,400 | | | | | | | 3,400 | | 150DB HY | 5 | .15000 | 510 |
| | TOTAL AUTO / TRANSPORT EQUIP | | | 27,400 | | 0 | 0 | 15,500 | 0 | 0 | 11,900 | 1,482 | | | | 2,616 |
| | BUILDINGS | | | | | | | | | | | | | | | |
| 11 | FARM STORAGE | 10/18/06 | | 4,235 | | | | | | | 4,235 | 4,235 | S/L HY | 9 | | 0 |
| 16 | BARN | 8/13/08 | | 28,013 | | | | 14,007 | | | 14,006 | 9,920 | S/L HY | 12 | .03330 | 1,167 |
| 20 | BARN | 7/01/08 | | 1,200 | | | | | | | 1,200 | 1,143 | 150DB HY | 9 | .04820 | 57 |
| 44 | 1/2 BARN | 6/30/14 | | 31,000 | | | | | | | 31,000 | 5,471 | 150DB HY | 20 | .06177 | 1,915 |
| 45 | 1/2 BUNKHOUSE | 6/30/14 | | 10,000 | | | | 15,000 | | | 10,000 | 925 | S/L MM | 27.5 | .03636 | 364 |
| 63 | BARN | 10/15/15 | | 15,000 | | | | 15,000 | | | 0 | | 150DB MQ | 20 | | 0 |
| | TOTAL BUILDINGS | | | 89,448 | | 0 | 0 | 29,007 | 0 | 0 | 60,441 | 21,694 | | | | 3,503 |
| | IMPROVEMENTS | | | | | | | | | | | | | | | |
| 2 | FARM IMP-WATER WELL | 2/01/00 | | 1,623 | | | | | | | 1,623 | 1,623 | 150DB HY | 6 | | 0 |
| 19 | FENCE - 6 MILE | 7/01/08 | | 18,000 | | | | 18,000 | | | 0 | | 150DB HY | 4 | | 0 |
| 21 | CATTLE PENS | 7/01/08 | | 8,000 | | | | 8,000 | | | 0 | | 150DB HY | 4 | | 0 |
| 22 | WATER WELLS/WINDMILLS | 7/01/08 | | 7,500 | | | | 7,500 | | | 0 | | 150DB HY | 9 | | 0 |
| 26 | CORRALS | 7/20/09 | | 8,000 | | | | 8,000 | | | 0 | | 150DB HY | 4 | | 0 |
| 27 | WINDMILL | 7/20/09 | 6/07/17 | 1,500 | | | | 1,500 | | | 0 | | 150DB HY | 4 | | 0 |
| 28 | FENCE | 7/20/09 | 6/07/17 | 8,000 | | | | 8,000 | | | 0 | | 150DB HY | 4 | | 0 |
| 37 | PIPE | 4/05/11 | 6/07/17 | 3,750 | | | | 3,750 | | | 0 | | 150DB HY | 4 | | 0 |
| 46 | 1/2 FENCE | 6/30/14 | | 9,000 | | | | | | | 9,000 | 4,039 | 150DB HY | 7 | .12250 | 1,103 |
| 62 | 2 MI FENCE - 320 ACRES | 10/15/15 | | 10,000 | | | | 10,000 | | | 0 | | 150DB MQ | 7 | | 0 |
| 64 | PENS | 10/15/15 | | 10,000 | | | | 10,000 | | | 0 | | 150DB MQ | 7 | | 0 |
| 65 | WATER WELL | 10/15/15 | | 50,000 | | | | 50,000 | | | 0 | | 150DB MQ | 15 | | 0 |
| | TOTAL IMPROVEMENTS | | | 135,373 | | 0 | 0 | 124,750 | 0 | 0 | 10,623 | 5,662 | | | | 1,103 |

PAPP 0589

# 12/31/17     2017 FEDERAL DEPRECIATION SCHEDULE     PAGE 3

## STEVE GALMOR

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/BONUS/SP DEPR. | PRIOR DEC. BAL. DEPR. | SALVAG/BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **LAND** | | | | | | | | | | | | | | | | |
| 23 | LAND - 880 ACRES | 7/01/08 | | 569,652 | | | | | | | 569,652 | | | | | 0 |
| 29 | 160 ACRES - BECK CTY OK | 7/20/09 | 6/07/17 | 101,859 | | | | | | | 101,859 | | | | | 0 |
| 47 | 1/2 LAND 158 ACRES | 6/30/14 | | 85,000 | | | | | | | 85,000 | | | | | 0 |
| 66 | LAND - 320 ACRES | 10/15/15 | | 187,000 | | | | | | | 187,000 | | | | | 0 |
| | **TOTAL LAND** | | | 943,511 | | 0 | 0 | 0 | 0 | 0 | 943,511 | 0 | | | | 0 |
| | **MACHINERY AND EQUIPMENT** | | | | | | | | | | | | | | | |
| 3 | 1/2 JD DRILL | 9/15/02 | | 500 | | | | | | | 500 | 500 | 150DB HY | 4 | | 0 |
| 4 | SWATHER | 6/15/02 | | 3,500 | | | | | | | 3,500 | 3,500 | 150DB HY | 4 | | 0 |
| 5 | WELDER | 6/15/02 | | 1,750 | | | | | | | 1,750 | 1,750 | 150DB HY | 4 | | 0 |
| 6 | CHEMICAL SPRAYER | 6/15/02 | | 250 | | | | | | | 250 | 250 | 150DB HY | 4 | | 0 |
| 7 | 2 PUMPS | 6/15/02 | | 642 | | | | | | | 642 | 642 | 150DB HY | 4 | | 0 |
| 8 | TOOLBAR | 3/10/03 | | 350 | | | | 350 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 9 | CATTLE TRAILER | 6/15/04 | | 6,550 | | | | 6,550 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 10 | CAKE BOX | 6/01/05 | | 1,911 | | | | 1,911 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 12 | 7800 TRACTOR & TS-46 | 2/10/06 | | 23,686 | | | | | | | 23,686 | 23,686 | 150DB HY | 4 | | 0 |
| 13 | 568 ROUND BALER | 9/13/06 | | 24,000 | | | | 24,000 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 14 | HAY BED | 3/10/08 | | 4,500 | | | | 4,500 | | | 0 | 0 | 150DB HY | 3 | | 0 |
| 15 | STOCK TRAILER - 1/2 | 5/01/08 | | 5,100 | | | | 5,100 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 24 | 2 HAY FEEDERS | 11/20/09 | | 650 | | | | 650 | | | 0 | 0 | 150DB HY | 3 | | 0 |
| 25 | HORSE TRAILER | 11/25/09 | | 3,800 | | | | 3,800 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 30 | HAY RAKE | 5/12/10 | | 2,250 | | | | 2,250 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 31 | SADDLE | 4/21/10 | | 1,200 | | | | 1,200 | | | 0 | 0 | 150DB HY | 4 | | 0 |
| 41 | 9300 JD TRACTOR | 8/31/13 | | 55,578 | | | | | | | 55,578 | 31,745 | 150DB HY | 7 | .12250 | 6,808 |

**12/31/17**  **2017 FEDERAL DEPRECIATION SCHEDULE**  **PAGE 4**

STEVE GALMOR

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW | PRIOR 179/ BONUS/ SP.DEPR. | PRIOR DEC.BAL DEPR. | SALVAG /BASIS REDUCT | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 42 | KUBOTA TRACTOR | 9/15/13 | | 21,709 | | | | 10,855 | | | 10,854 | 9,750 | 150DB HY | 4 | .10160 | 1,104 |
| 60 | JD 7820 | 1/15/15 | | 150,370 | | | | 150,370 | | | 0 | | 150DB MQ | 7 | | 0 |
| 61 | SKID STEER | 6/15/15 | | 45,000 | | | | 45,000 | | | 0 | | 150DB MQ | 7 | | 0 |
| | TOTAL MACHINERY AND EQUIPME | | | 353,296 | | | 0 | 256,536 | 0 | 0 | 96,760 | 71,823 | | | | 7,912 |
| | MISCELLANEOUS | | | | | | | | | | | | | | | |
| 36 | HORSE | 8/05/11 | | 1,500 | | | | 1,500 | | | 0 | | 150DB HY | 4 | | 0 |
| 38 | BULL | 6/11/12 | | 2,500 | | | | 1,250 | | | 1,250 | 1,250 | 150DB HY | 3 | | 0 |
| 40 | 34 COWS | 9/15/13 | | 62,900 | | | | | | | 62,900 | 62,900 | 150DB HY | 3 | | 0 |
| 43 | 20 HEIFERS | 10/28/14 | | 32,428 | | | | 16,214 | | | 16,214 | 9,461 | 150DB HY | 5 | .16660 | 2,701 |
| 52 | 3 BULLS | 2/17/15 | | 9,300 | | | | 9,300 | | | 0 | | 150DB MQ | 3 | | 0 |
| 53 | 1 BULL | 3/12/15 | | 3,500 | | | | 3,500 | | | 0 | | 150DB MQ | 3 | | 0 |
| 54 | 29 HEAD CATTLE | 6/10/15 | | 70,399 | | | | 70,399 | | | 0 | | 150DB MQ | 3 | | 0 |
| 55 | 6 COWS | 7/23/15 | | 8,696 | | | | 8,696 | | | 0 | | 150DB MQ | 3 | | 0 |
| 56 | 8 COWS | 7/27/15 | | 11,970 | | | | 11,970 | | | 0 | | 150DB MQ | 3 | | 0 |
| 57 | 8 HEAD | 8/04/15 | | 10,728 | | | | 10,728 | | | 0 | | 150DB MQ | 3 | | 0 |
| 68 | 38 HEIFERS | 11/14/15 | | 71,190 | | | | 35,595 | | | 35,595 | 11,615 | 150DB MQ | 5 | .20210 | 7,194 |
| 69 | 76 COWS | 10/05/16 | | 114,000 | | | | | | | 114,000 | 4,275 | 150DB MQ | 5 | .28880 | 32,923 |
| 70 | 1 MARE & 2 COLTS | 11/01/16 | | 2,750 | | | | | | | 2,750 | 103 | 150DB MQ | 5 | .28880 | 794 |
| 73 | 34 HEAD HEIFERS | 1/01/17 | | 51,000 | | | | | | | 51,000 | | 150DB HY | 5 | .15000 | 7,650 |
| | TOTAL MISCELLANEOUS | | | 452,861 | | | 0 | 169,152 | 0 | 0 | 283,709 | 89,604 | | | | 51,262 |
| | TOTAL DEPRECIATION | | | 2,001,889 | | | 0 | 594,945 | 0 | 0 | 1,406,944 | 190,255 | | | | 66,396 |

12/31/17

# 2017 FEDERAL DEPRECIATION SCHEDULE

PAGE 5

STEVE GALMOR

| NO. | DESCRIPTION | DATE ACQUIRED | DATE SOLD | COST/ BASIS | BUS. PCT. | CUR 179 BONUS | SPECIAL DEPR. ALLOW. | PRIOR 179/ BONUS/ SP DEPR. | PRIOR DEC. BAL DEPR. | SALVAG /BASIS REDUCT. | DEPR. BASIS | PRIOR DEPR. | METHOD | LIFE | RATE | CURRENT DEPR. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | GRAND TOTAL DEPRECIATION | | | 2,550,976 | | 0 | 0 | 650,144 | 0 | 0 | 1,900,832 | 584,395 | | | | 97,227 |
| | DEPRECIATION ASSETS SOLD | | | 119,359 | | 0 | 0 | 17,500 | 0 | 0 | 101,859 | 0 | | | | 0 |
| | DEPR REMAINING ASSETS | | | 2,431,617 | | 0 | 0 | 632,644 | 0 | 0 | 1,798,973 | 584,395 | | | | 97,227 |

| Form **8879** | IRS e-file Signature Authorization | OMB No. 1545-0074 |
|---|---|---|
| | ► **Return completed Form 8879 to your ERO. (Do not send to IRS.)** | **2017** |
| Department of the Treasury Internal Revenue Service | ►Go to *www.irs.gov/Form8879* for the latest information. | |

Submission Identification Number (SID)   ▶

| Taxpayer's name | Social security number |
|---|---|
| STEVE GALMOR | ▉▉▉▉▉ |
| Spouse's name | Spouse's social security number |
| | |

## Part I    Tax Return Information – Tax Year Ending December 31, 2017 (Whole dollars only)

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 38; Form 1040A, line 22; Form 1040EZ, line 4; Form 1040NR, line 37) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | 127,536. |
| 2 | Total tax (Form 1040, line 63; Form 1040A, line 39; Form 1040EZ, line 12; Form 1040NR, line 61) . . . . . . . . . . | **2** | 12,042. |
| 3 | Federal income tax withheld from Forms W-2 and 1099 (Form 1040, line 64; Form 1040A, line 40; Form 1040EZ, line 7; Form 1040NR, line 62a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | 23,660. |
| 4 | Refund (Form 1040, line 76a; Form 1040A, line 48a; Form 1040EZ, line 13a; Form 1040-SS, Part I, line 13a; Form 1040NR, line 73a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | 11,618. |
| 5 | Amount you owe (Form 1040, line 78; Form 1040A, line 50; Form 1040EZ, line 14; Form 1040NR, line 75) . . . | **5** | |

## Part II    Taxpayer Declaration and Signature Authorization (Be sure you get and keep a copy of your return)

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2017, and to the best of my knowledge and belief, it is true, correct, and accurately lists all amounts and sources of income I received during the tax year. I further declare that the amounts in Part I above are the amounts from my electronic income tax return. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission, **(b)** the reason for any delay in processing the return or refund, and **(c)** the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an ACH electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of my federal taxes owed on this return and/or a payment of estimated tax, and the financial institution to debit the entry to this account. This authorization is to remain in full force and effect until I notify the U.S. Treasury Financial Agent to terminate the authorization. To revoke (cancel) a payment, I must contact the U.S. Treasury Financial Agent at **1-888-353-4537**. Payment cancellation requests must be received no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I further acknowledge that the personal identification number (PIN) below is my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize    P K & COMPANY PLLC _____ to enter or generate my PIN    45106
                       **ERO firm name**                                                         **Enter five digits, but don't enter all zeros**

    as my signature on my tax year 2017 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2017 electronically filed income tax return. Check this box **only** if you are entering your own PIN **and** your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶ _____    Date ▶ _____

**Spouse's PIN: check one box only**

[ ] I authorize    _____ to enter or generate my PIN    
                       **ERO firm name**                                                         **Enter five digits, but don't enter all zeros**

    as my signature on my tax year 2017 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2017 electronically filed income tax return. Check this box **only** if you are entering your own PIN **and** your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶ _____    Date ▶ _____

## Practitioner PIN Method Returns Only — continue below

## Part III    Certification and Authentication — Practitioner PIN Method Only

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.    73695054733
                                                                                                       **Don't enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature for the tax year 2017 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and **Pub. 1345**, Handbook for Authorized IRS *e-file* Providers of Individual Income Tax Returns.

ERO's signature    ▶ _____    Date ▶ _____

**ERO Must Retain This Form — See Instructions**
**Don't Submit This Form to the IRS Unless Requested To Do So**

**BAA For Paperwork Reduction Act Notice, see your tax return instructions.**    Form **8879** (2017)

FDIA1701L  07/28/17

▼ **DETACH HERE** ▼

1030

**Form 4868**
Department of the Treasury
Internal Revenue Service (99)

**Application for Automatic Extension of Time**
**To File U.S. Individual Income Tax Return**
For calendar year 2017, or other tax year beginning , 2017, ending .

FDIA4601L 07/21/17.

**2017**

| Part I | Identification |
|---|---|

1

STEVE GALMOR
P K & COMPANY PLLC
1000 N. MAIN, P.O. BOX 1728
ELK CITY, OK 73648

2                    3

▉

| Part II | Individual Income Tax |
|---|---|

| | |
|---|---|
| 4 Estimate of total tax liability for 2017... $ | 23,660. |
| 5 Total 2017 payments................. | 0. |
| 6 **Balance due.** Subtract line 5 from line 4 (see instructions)..................... | 23,660. |
| 7 Amount you are paying (see instructions).................... ▶ | 0. |

8 Check here if you are 'out of the country' and a U.S. citizen or resident (see instructions)............... ▶ ☐

9 Check here if you file Form 1040NR or 1040NR-EZ and did not receive wages as an employee subject to U.S. income tax withholding.............................. ▶ ☐

▉ VY GALM 30 0 201712 670

PAPP 0594

Form **1040**  Department of the Treasury — Internal Revenue Service  (99)
**U.S. Individual Income Tax Return** **2017**  OMB No. 1545-0074   IRS Use Only — Do not write or staple in this space.

For the year Jan. 1 - Dec. 31, 2017, or other tax year beginning _____ , 2017, ending _____ , 20 ___   See separate instructions.

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| STEVE | GALMOR | |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |

Home address (number and street). If you have a P.O. box, see instructions.   Apt. no.

P.O. BOX 349

City, town or post office, state, and ZIP code. If you have a foreign address, also complete spaces below (see instructions).

SHAMROCK, TX 79079

Foreign country name              Foreign province/state/county              Foreign postal code

▲ Make sure the SSN(s) above and on line 6c are correct.

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.  ☐ You  ☐ Spouse

**Filing Status**
Check only one box.

1 ☒ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name here. ▶
4 ☐ Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) (see instructions)

**Exemptions**

6a ☒ **Yourself.** If someone can claim you as a dependent, **do not** check box 6a...........
b ☐ **Spouse** .......................................................................

c **Dependents:**

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if child under age 17 qualifying for child tax credit (see instructions) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

If more than four dependents, see instructions and check here . . ▶ ☐

| Boxes checked on 6a and 6b | 1 |
|---|---|
| No. of children on 6c who: | |
| • lived with you . . . . . | |
| • did not live with you due to divorce or separation (see instructions) | |
| Dependents on 6c not entered above | |
| **Add numbers on lines above** ▶ | 1 |

d Total number of exemptions claimed. ................................................. ▶

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2. .................................... | 7 | 111,840. |
| 8a | **Taxable** interest. Attach Schedule B if required. ................................ | 8a | 12. |
| b | **Tax-exempt** interest. **Do not** include on line 8a . . . . . . . . . . . . . | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required. .............................. | 9a | |
| b | Qualified dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes. ................ | 10 | |
| 11 | Alimony received. ............................................................ | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ. ........................... | 12 | 6,839. |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here . . . . . . . . ▶ ☐ | 13 | 115,506. |
| 14 | Other gains or (losses). Attach Form 4797. ...................................... | 14 | 15,000. |
| 15a | IRA distributions. . . . . . . . . . . | 15a | b Taxable amount. . . . . . . . . . . | 15b | |
| 16a | Pensions and annuities . . . . . | 16a | b Taxable amount. . . . . . . . . . . | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E. | 17 | 10. |
| 18 | Farm income or (loss). Attach Schedule F. ...................................... | 18 | −76,396. |
| 19 | Unemployment compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | |
| 20a | Social security benefits . . . . . . . . . | 20a | b Taxable amount. . . . . . . . . . . | 20b | |
| 21 | Other income. List type and amount NOL _ _ _ _ _ _ _ _ _ _ _ _ _ SEE STM 2 | 21 | −45,275. |
| 22 | Combine the amounts in the far right column for lines 7 through 21. This is your **total income**. . . . . . . . . . . . ▶ | 22 | 127,536. |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ. . . . . . . . . . . . . . . . . . | 24 | |
| 25 | Health savings account deduction. Attach Form 8889. . . . . . . . | 25 | |
| 26 | Moving expenses. Attach Form 3903. . . . . . . . . . . . . . . . . . | 26 | |
| 27 | Deductible part of self-employment tax. Attach Schedule SE . . . . . . . . . . . | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans. . . . . . . . . . . | 28 | |
| 29 | Self-employed health insurance deduction. . . . . . . . . . . . . . . | 29 | |
| 30 | Penalty on early withdrawal of savings. . . . . . . . . . . . . . . . . . | 30 | |
| 31a | Alimony paid b Recipient's SSN . . . . . ▶ | 31a | |
| 32 | IRA deduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 | |
| 33 | Student loan interest deduction. . . . . . . . . . . . . . . . . . . . . . | 33 | |
| 34 | Tuition and fees. Attach Form 8917. . . . . . . . . . . . . . . . . . . . | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903. . . . . . . . . . . . . | 35 | |
| 36 | Add lines 23 through 35. ....................................................... | 36 | 0. |
| 37 | Subtract line 36 from line 22. This is your **adjusted gross income** . . . . . . . . . . . . . . . . . . ▶ | 37 | 127,536. |

**BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**   FDIA0112L  02/22/18   Form **1040** (2017)

Form **1040** (2017)  STEVE GALMOR  Page **2**

| | | | | |
|---|---|---|---|---|
| | 38 | Amount from line 37 (adjusted gross income) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 38 | 127,536. |

**Tax and Credits**

| 39a | Check if: | You were born before January 2, 1953, ☐ Blind. Total boxes<br>Spouse was born before January 2, 1953, ☐ Blind. checked ▶ 39a | | |
|---|---|---|---|---|

**Standard Deduction for —**

• People who check any box on line 39a or 39b **or** who can be claimed as a dependent, see instructions.

• All others:

Single or Married filing separately, $6,350

Married filing jointly or Qualifying widow(er), $12,700

Head of household, $9,350

| | | | | |
|---|---|---|---|---|
| b | If your spouse itemizes on a separate return or you were a dual-status alien, check here . . . . . ▶ 39b | | | |
| 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) . . . . . . . . . | 40 | 6,350. |
| 41 | Subtract line 40 from line 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 41 | 121,186. |
| 42 | Exemptions. If line 38 is $156,900 or less, multiply $4,050 by the number on line 6d. Otherwise, see instrs. . . . . | 42 | 4,050. |
| 43 | Taxable income. Subtract line 42 from line 41.<br>If line 42 is more than line 41, enter -0-. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 43 | 117,136. |
| 44 | Tax (see instructions). Check if any from: **a** ☐ Form(s) 8814 **c** ☐<br>**b** ☐ Form 4972 . . . . . . . . . . . | 44 | 12,042. |
| 45 | Alternative minimum tax (see instructions). Attach Form 6251. . . . . . . . . . . . . . . . . . . . . . | 45 | 0. |
| 46 | Excess advance premium tax credit repayment. Attach Form 8962. . . . . . . . . . . . . . . . . . . | 46 | |
| 47 | Add lines 44, 45, and 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 47 | 12,042. |
| 48 | Foreign tax credit. Attach Form 1116 if required . . . . . . . . . | 48 | | |
| 49 | Credit for child and dependent care expenses. Attach Form 2441 . . . . . . | 49 | | |
| 50 | Education credits from Form 8863, line 19 . . . . . . . . . . . | 50 | | |
| 51 | Retirement savings contributions credit. Attach Form 8880 . . . | 51 | | |
| 52 | Child tax credit. Attach Schedule 8812, if required . . . . . . . | 52 | | |
| 53 | Residential energy credits. Attach Form 5695 . . . . . . . . . . | 53 | | |
| 54 | Other crs from Form: **a** ☐ 3800 **b** ☐ 8801 **c** ☐ | 54 | | |
| 55 | Add lines 48 through 54. These are your **total credits** . . . . . . . . . . . . . . . . . . . . . . . . . . | 55 | |
| 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- . . . . . . . . . . . . . . . ▶ | 56 | 12,042. |

**Other Taxes**

| 57 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 57 | |
|---|---|---|---|
| 58 | Unreported social security and Medicare tax from Form: **a** ☐ 4137 **b** ☐ 8919 . . . . . . . | 58 | |
| 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required . . . . . . . . . | 59 | |
| 60a | Household employment taxes from Schedule H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 60a | |
| b | First-time homebuyer credit repayment. Attach Form 5405 if required . . . . . . . . . . . . . . . . . | 60b | |
| 61 | Health care: individual responsibility (see instructions) Full-year coverage ☒ . . . . . . . . | 61 | |
| 62 | Taxes from: **a** ☐ Form 8959 **c** ☐ Instrs; enter code(s) | 62 | |
| 63 | Add lines 56 through 62. This is your **total tax** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 63 | 12,042. |

**Payments**

If you have a qualifying child, attach Schedule EIC.

| 64 | Federal income tax withheld from Forms W-2 and 1099 . . . . . | 64 | 23,660. | | |
|---|---|---|---|---|---|
| 65 | 2017 estimated tax payments and amount applied from 2016 return. . . . | 65 | | | |
| 66a | **Earned income credit (EIC)** . . . . . . . . . . . . . . . . . . | 66a | | | |
| b | Nontaxable combat pay election . . . . . | 66b | | | |
| 67 | Additional child tax credit. Attach Schedule 8812 . . . . . . . . . | 67 | | | |
| 68 | American opportunity credit from Form 8863, line 8 . . . . . . . . | 68 | | | |
| 69 | Net premium tax credit. Attach Form 8962 . . . . . . . . . . . | 69 | | | |
| 70 | Amount paid with request for extension to file . . . . . . . . . . | 70 | | | |
| 71 | Excess social security and tier 1 RRTA tax withheld . . . . . . . | 71 | | | |
| 72 | Credit for federal tax on fuels. Attach Form 4136 . . . . . . . . | 72 | | | |
| 73 | Credits from Form: **a** ☐ 2439 **b** ☐ Reserved **c** ☐ 8885 **d** ☐ | 73 | | | |
| 74 | Add lines 64, 65, 66a, and 67 through 73. These are your **total payments** . . . . . . . . . . . . ▶ | 74 | | 23,660. |

**Refund**

Direct deposit? See instructions.

| 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you **overpaid** . . . . . . . . . . . . | 75 | 11,618. |
|---|---|---|---|
| 76a | Amount of line 75 you want **refunded to you.** If Form 8888 is attached, check here . ▶ ☐ | 76a | 11,618. |
| ▶ b | Routing number . . . . . . . XXXXXXXXX ▶ **c** Type: ☐ Checking ☐ Savings | | |
| ▶ d | Account number . . . . . . . XXXXXXXXXXXXXXXXXXXXX | | |
| 77 | Amount of line 75 you want applied to your 2018 estimated tax . . . | 77 | | |

**Amount You Owe**

| 78 | Amount you owe. Subtract line 74 from line 63. For details on how to pay, see instructions. . . . . . . . . ▶ | 78 | |
|---|---|---|---|
| 79 | Estimated tax penalty (see instructions) . . . . . . . . . . . . | 79 | | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see instructions)? . . . . . . . . . . ☒ **Yes.** Complete below. ☐ **No**

Designee's name ▶ KELLYE L FUCHS, CPA  Phone no. ▶ 580-225-8877  Personal identification number (PIN) ▶ 54733

**Sign Here**

Joint return? See instructions.

Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurately list all amounts and sources of income I received during the tax year. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation<br>MANAGER | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here (see inst.) |

**Paid Preparer Use Only**

| Print/Type preparer's name<br>KELLYE L FUCHS, CPA | Preparer's signature | Date | Check ☐ if self-employed | PTIN<br>P01254733 |
|---|---|---|---|---|
| Firm's name ▶ P K & COMPANY PLLC | | | Firm's EIN ▶ 47-3985644 | |
| Firm's address ▶ 1000 N. MAIN, P.O. BOX 1728<br>ELK CITY, OK 73648 | | | Phone no. (580) 225-8877 | |

FDIA0112L 02/22/18

Form **1040** (2017)

PAPP 0596

**SCHEDULE A**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **07**

# Itemized Deductions

► Go to *www.irs.gov/ScheduleA* for instructions and the latest information.
► Attach to Form 1040.

**Caution:** If you are claiming a net qualified disaster loss on Form 4684, see the instructions for line 28.

Name(s) shown on Form 1040
STEVE GALMOR

Your social security number

| | | | | | |
|---|---|---|---|---|---|
| **Medical and Dental Expenses** | | **Caution:** Do not include expenses reimbursed or paid by others. | | | |
| | 1 | Medical and dental expenses (see instructions) .......... STATEMENT 3 | **1** | 5,717. | |
| | 2 | Enter amount from Form 1040, line 38..... **2** 127,536. | | | |
| | 3 | Multiply line 2 by 7.5% (0.075)................................ | **3** | 9,565. | |
| | 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0-................ | | **4** | 0. |
| **Taxes You Paid** | 5 | State and local **(check only one box):** | | | |
| | | a ☐ Income taxes, **or** | **5** | 859. | |
| | | b ☒ General sales taxes | | | |
| | 6 | Real estate taxes (see instructions) ............................ | **6** | | |
| | 7 | Personal property taxes ...................................... | **7** | | |
| | 8 | Other taxes. List type and amount ► _ _ _ _ _ _ _ _ _ _ _ _ | **8** | | |
| | 9 | Add lines 5 through 8......................................... | | **9** | 859. |
| **Interest You Paid** | 10 | Home mortgage interest and points reported to you on Form 1098.......... | **10** | | |
| | 11 | Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see instructions and show that person's name, identifying no., and address ► | | | |
| **Note:** Your mortgage interest deduction may be limited (see instructions). | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | |
| | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | |
| | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **11** | | |
| | 12 | Points not reported to you on Form 1098. See instructions for special rules..... | **12** | | |
| | 13 | Mortgage insurance premiums (see instructions).............. | **13** | | |
| | 14 | Investment interest. Attach Form 4952 if required. See instructions. | **14** | | |
| | 15 | Add lines 10 through 14....................................... | | **15** | 0. |
| **Gifts to Charity** | 16 | Gifts by cash or check. If you made any gift of $250 or more, see instructions....................... STATEMENT 4 | **16** | 1,885. | |
| If you made a gift and got a benefit for it, see instructions. | 17 | Other than by cash or check. If any gift of $250 or more, see instructions. You **must** attach Form 8283 if over $500................................... | **17** | | |
| | 18 | Carryover from prior year..................................... | **18** | | |
| | 19 | Add lines 16 through 18....................................... | | **19** | 1,885. |
| **Casualty and Theft Losses** | 20 | Casualty or theft loss(es) other than net qualified disaster losses. Attach Form 4684 and enter the amount from line 18 of that form. See instructions................................... | | **20** | 0. |
| **Job Expenses and Certain Miscellaneous Deductions** | 21 | Unreimbursed employee expenses—job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. See instructions. ► _ _ _ _ _ _ _ _ _ _ _ | **21** | | |
| | 22 | Tax preparation fees.......................................... | **22** | | |
| | 23 | Other expenses—investment, safe deposit box, etc. List type and amount ► _ _ _ _ _ _ _ _ _ _ _ | **23** | | |
| | 24 | Add lines 21 through 23 ...................................... | **24** | | |
| | 25 | Enter amount from Form 1040, line 38..... **25** | | | |
| | 26 | Multiply line 25 by 2% (0.02)................................ | **26** | | |
| | 27 | Subtract line 26 from line 24. If line 26 is more than line 24, enter -0-.................. | | **27** | 0. |
| **Other Miscellaneous Deductions** | 28 | Other—from list in instructions. List type and amount ► _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | |
| | | | | **28** | 0. |
| **Total Itemized Deductions** | 29 | Is Form 1040, line 38, over $156,900? | | | |
| | | ☒ **No.** Your deduction is not limited. Add the amounts in the far right column for lines 4 through 28. Also, enter this amount on Form 1040, line 40. | | | |
| | | ☐ **Yes.** Your deduction may be limited. See the Itemized Deductions Worksheet in the instructions to figure the amount to enter. | | **29** | 2,744. |
| | 30 | If you elect to itemize deductions even though they are less than your standard deduction, check here.................................................. ► ☐ | | | |

BAA For Paperwork Reduction Act Notice, see the Instructions for Form 1040.

FDIA0301L 02/22/18

Schedule A (Form 1040) 2017

PAPP 0597

**SCHEDULE B**
**(Form 1040A or 1040)**

Department of the Treasury
Internal Revenue Service (99)

## Interest and Ordinary Dividends

► Attach to Form 1040A or 1040.
► Go to *www.irs.gov/ScheduleB* for instructions and the latest information.

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **08**

Name(s) shown on return
STEVE GALMOR

Your social security number

| Part I | 1 | List name of payer. If any interest is from a seller-financed mortgage and the buyer used the property as a personal residence, see the instructions and list this interest first. Also, show that buyer's social security number and address ► | | Amount |
|---|---|---|---|---|
| **Interest** | | AIMBANK | | 4. |
| (See instructions and the instructions for Form 1040A, or Form 1040, line 8a.) | | SGM LEASING LLC | | 8. |
| | | | | |
| | | | | |
| **Note:** If you received a Form 1099-INT, Form 1099-OID, or substitute statement from a brokerage firm, list the firm's name as the payer and enter the total interest shown on that form. | | | **1** | |
| | | | | |
| | | | | |
| | 2 | Add the amounts on line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** | 12. |
| | 3 | Excludable interest on series EE and I U.S. savings bonds issued after 1989. Attach Form 8815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | |
| | 4 | Subtract line 3 from line 2. Enter the result here and on Form 1040A, or Form 1040, line 8a . . ► | **4** | 12. |

**Note:** If line 4 is over $1,500, you must complete Part III.

| Part II | 5 | List name of payer ► | | Amount |
|---|---|---|---|---|
| **Ordinary Dividends** | | | | |
| | | | | |
| (See instructions and the instructions for Form 1040A, or Form 1040, line 9a.) | | | | |
| | | | | |
| | | | | |
| **Note:** If you received a Form 1099-DIV or substitute statement from a brokerage firm, list the firm's name as the payer and enter the ordinary dividends shown on that form. | | | **5** | |
| | | | | |
| | | | | |
| | 6 | Add the amounts on line 5. Enter the total here and on Form 1040A, or Form 1040, line 9a . . . . . . . . ► | **6** | 0. |

**Note:** If line 6 is over $1,500, you must complete Part III.

| Part III | | You must complete this part if you **(a)** had over $1,500 of taxable interest or ordinary dividends; **(b)** had a foreign account; or **(c)** received a distribution from, or were a grantor of, or a transferor to, a foreign trust. | Yes | No |
|---|---|---|---|---|
| **Foreign Accounts and Trusts** | 7a | At any time during 2017, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| | | If 'Yes,' are you required to file FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR), to report that financial interest or signature authority? See FinCEN Form 114 and its instructions for filing requirements and exceptions to those requirements . . . . . . . . . . . . . . . | | |
| (See instructions.) | b | If you are required to file FinCEN Form 114, enter the name of the foreign country where the financial account is located ► | | |
| | 8 | During 2017, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If 'Yes,' you may have to file Form 3520. See instructions . . . . . . . . . . . . . . . . . | | X |

**BAA For Paperwork Reduction Act Notice, see your tax return instructions.** FDIA0401L 10/25/17 **Schedule B (Form 1040A or 1040) 2017**

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

**Profit or Loss From Business**
*(Sole Proprietorship)*

► Go to *www.irs.gov/ScheduleC* for instructions and the latest information.
► Attach to Form 1040, 1040NR, or 1041; partnerships generally must file Form 1065.

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **09**

| Name of proprietor | Social security number (SSN) |
|---|---|
| STEVE GALMOR | ██████████ |

| **A** Principal business or profession, including product or service (see instructions) | **B** Enter code from instructions |
|---|---|
| X | ► 213110 |

| **C** Business name. If no separate business name, leave blank. | **D** Employer ID number (EIN), (see instr.) |
|---|---|
| MSG OIL & GAS | |

**E** Business address (including suite or room no.) ► P.O. BOX 2172
City, town or post office, state, and ZIP code   ELK CITY, OK  73644

**F** Accounting method: (1) [X] Cash (2) [ ] Accrual (3) [ ] Other (specify) ► _____

**G** Did you 'materially participate' in the operation of this business during 2017? If 'No,' see instructions for limit on losses.  [X] Yes [ ] No

**H** If you started or acquired this business during 2017, check here ........................................ ►

**I** Did you make any payments in 2017 that would require you to file Form(s) 1099? (see instructions)................ [X] Yes [ ] No

**J** If 'Yes,' did you or will you file required Forms 1099?.................................................... [X] Yes [ ] No

## Part I  Income

| | | |
|---|---|---:|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the 'Statutory employee' box on that form was checked............................ ► [ ]   **1** | 114,205. |
| 2 | Returns and allowances...............................................................   **2** | |
| 3 | Subtract line 2 from line 1............................................................   **3** | 114,205. |
| 4 | Cost of goods sold (from line 42)......................................................   **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3............................................   **5** | 114,205. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)...........................................................................   **6** | |
| 7 | **Gross income.** Add lines 5 and 6.................................................. ►   **7** | 114,205. |

## Part II  Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | |
|---|---|---:|---|---|---:|
| 8 | Advertising................... | **8** | | 18 Office expense (see instructions)........ **18** | |
| 9 | Car and truck expenses (see instructions)........... | **9** | | 19 Pension and profit-sharing plans........ **19** | |
| 10 | Commissions and fees......... | **10** | | 20 Rent or lease (see instructions): | |
| 11 | Contract labor (see instructions)............. | **11** | | a Vehicles, machinery, and equipment.... **20a** | |
| | | | | b Other business property............... **20b** | |
| 12 | Depletion...................... | **12** | 25,502. | 21 Repairs and maintenance............. **21** | 3,953. |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions)............. | **13** | 30,831. | 22 Supplies (not included in Part III)....... **22** | 1,585. |
| | | | | 23 Taxes and licenses.................... **23** | 4,223. |
| 14 | Employee benefit programs (other than on line 19)........ | **14** | | 24 Travel, meals, and entertainment: | |
| | | | | a Travel.............................. **24a** | |
| 15 | Insurance (other than health)... | **15** | | b Deductible meals and entertainment (see instructions)..................... **24b** | |
| 16 | Interest: | | | 25 Utilities............................... **25** | 2,947. |
| a | Mortgage (paid to banks, etc.)........ | **16a** | | 26 Wages (less employment credits)........ **26** | |
| b | Other........................ | **16b** | | 27a Other expenses (from line 48)......... **27a** | 36,224. |
| 17 | Legal and professional services.. | **17** | 2,101. | b Reserved for future use................ **27b** | |

| | | |
|---|---|---:|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a...................... ►   **28** | 107,366. |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7.......................................   **29** | 6,839. |
| 30 | Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions). **Simplified method filers only:** enter the total square footage of: (a) your home: _____ and (b) the part of your home used for business: _____. Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30............................   **30** | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. • If a profit, enter on both **Form 1040, line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.** • If a loss, you **must** go to line 32.   **31** | 6,839. |
| 32 | If you have a loss, check the box that describes your investment in this activity (see instructions). • If you checked 32a, enter the loss on both **Form 1040, line 12,** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.** • If you checked 32b, **you must** attach **Form 6198.** Your loss may be limited.   **32a** [ ] All investment is at risk.   **32b** [ ] Some investment is not at risk. | |

**BAA  For Paperwork Reduction Act Notice, see the separate instructions.**   FDIZ0112L  10/19/17   **Schedule C (Form 1040) 2017**

Schedule C (Form 1040) 2017 STEVE GALMOR █████████ Page **2**

| **Part III** | **Cost of Goods Sold** (see instructions) | | |
|---|---|---|---|

**33** Method(s) used to value closing inventory: **a** ☐ Cost **b** ☐ Lower of cost or market **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If 'Yes,' attach explanation .................................................................................................... ☐ Yes ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation ................................................. | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use ........................................ | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself ...................................... | **37** | |
| **38** | Materials and supplies ...................................................................... | **38** | |
| **39** | Other costs ............................................................................... | **39** | |
| **40** | Add lines 35 through 39 ..................................................................... | **40** | |
| **41** | Inventory at end of year ..................................................................... | **41** | |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4 ................ | **42** | |

| **Part IV** | **Information on Your Vehicle.** Complete this part only if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year) ▶ _____

**44** Of the total number of miles you drove your vehicle during 2017, enter the number of miles you used your vehicle for:

**a** Business _____ **b** Commuting (see instructions) _____ **c** Other _____

**45** Was your vehicle available for personal use during off-duty hours? ........................................ ☐ Yes ☐ No

**46** Do you (or your spouse) have another vehicle available for personal use? .................................. ☐ Yes ☐ No

**47a** Do you have evidence to support your deduction? ...................................................... ☐ Yes ☐ No

**b** If 'Yes,' is the evidence written? ...................................................................... ☐ Yes ☐ No

| **Part V** | **Other Expenses.** List below business expenses not included on lines 8-26 or line 30. | |
|---|---|---|
| DISPOSAL EXPENSE | | 1,116. |
| DUES AND SUBSCRIPTIONS | | 670. |
| OPERATING EXPENSE | | 15,148. |
| ROYALTY PAID | | 19,290. |
| | | |
| | | |
| | | |
| | | |
| **48** | **Total other expenses.** Enter here and on line 27a ....................................... **48** | 36,224. |

Schedule C (Form 1040) 2017

FDIZ0112L 10/19/17

PAPP 0600

**SCHEDULE D**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

OMB No. 1545-0074

**Capital Gains and Losses**

► **Attach to Form 1040 or Form 1040NR.**
► **Go to** *www.irs.gov/ScheduleD* **for instructions and the latest information.**
► **Use Form 8949 to list your transactions for lines 1b, 2, 3, 8b, 9, and 10.**

**2017**

Attachment
Sequence No. **12**

| Name(s) shown on return | Your social security number |
|---|---|
| STEVE GALMOR | |

## Part I   Short-Term Capital Gains and Losses — Assets Held One Year or Less

| See instructions for how to figure the amounts to enter on the lines below.<br><br>This form may be easier to complete if you round off cents to whole dollars. | **(d)** Proceeds (sales price) | **(e)** Cost (or other basis) | **(g)** Adjustments to gain or loss from Form(s) 8949, Part I, line 2, column (g) | **(h) Gain or (loss)** Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **1a** Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b. . . . . . . . . . . . . . . . . | | | | |
| **1b** Totals for all transactions reported on Form(s) 8949 with **Box A** checked. . . . . . . . . . | | | | |
| **2** Totals for all transactions reported on Form(s) 8949 with **Box B** checked. . . . . . . . . . | | | | |
| **3** Totals for all transactions reported on Form(s) 8949 with **Box C** checked. . . . . . . . . . | | | | |

| | | |
|---|---|---|
| **4** Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824. . . . . . . . . . . | **4** | |
| **5** Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1. . . . | **5** | |
| **6** Short-term capital loss carryover. Enter the amount, if any, from line 8 of your **Capital Loss Carryover Worksheet** in the instructions. . . . . . . . . . . . . . . . . . | **6** | |
| **7** **Net short-term capital gain or (loss).** Combine lines 1a through 6 in column (h). If you have any long-term capital gains or losses, go to Part II below. Otherwise, go to Part III on the back. . . . . . . . . . . . . . . . . . . | **7** | |

## Part II   Long-Term Capital Gains and Losses — Assets Held More Than One Year

| See instructions for how to figure the amounts to enter on the lines below.<br><br>This form may be easier to complete if you round off cents to whole dollars. | **(d)** Proceeds (sales price) | **(e)** Cost (or other basis) | **(g)** Adjustments to gain or loss from Form(s) 8949, Part II, line 2, column (g) | **(h) Gain or (loss)** Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **8a** Totals for all long-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 8b. . . . . . . . . . . . . . . . . . | | | | |
| **8b** Totals for all transactions reported on Form(s) 8949 with **Box D** checked. . . . . . . . . . | | | | |
| **9** Totals for all transactions reported on Form(s) 8949 with **Box E** checked. . . . . . . . . . | | | | |
| **10** Totals for all transactions reported on Form(s) 8949 with **Box F** checked. . . . . . . . . . | | | | |

| | | |
|---|---|---|
| **11** Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824. . . . . . . . . . . . . . . . . | **11** | 115,506. |
| **12** Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1. . . . . | **12** | |
| **13** Capital gain distributions. See the instrs. . . . . . . . . . . . . . . . . | **13** | |
| **14** Long-term capital loss carryover. Enter the amount, if any, from line 13 of your **Capital Loss Carryover Worksheet** in the instructions. . . . . . . . . . . . . . . . . | **14** | |
| **15** **Net long-term capital gain or (loss).** Combine lines 8a through 14 in column (h). Then go to Part III on the back. . . . . . . . . . . . . . . . . . | **15** | 115,506. |

**BAA   For Paperwork Reduction Act Notice, see your tax return instructions.**                    **Schedule D (Form 1040) 2017**

FDIA0612L   08/16/17

Schedule D (Form 1040) 2017  STEVE GALMOR ████████ Page **2**

| **Part III** | **Summary** |

---

**16** Combine lines 7 and 15 and enter the result.............................................. | **16** | 115,506.

- If line 16 is a **gain,** enter the amount from line 16 on Form 1040, line 13, or Form 1040NR, line 14. Then go to line 17 below.
- If line 16 is a **loss,** skip lines 17 through 20 below. Then go to line 21. Also be sure to complete line 22.
- If line 16 is **zero,** skip lines 17 through 21 below and enter -0- on Form 1040, line 13, or Form 1040NR, line 14. Then go to line 22.

**17** Are lines 15 and 16 **both** gains?

[X] **Yes.** Go to line 18.

[ ] **No.** Skip lines 18 through 21, and go to line 22.

**18** If you are required to complete the **28% Rate Gain Worksheet** (see instructions), enter the amount, if any, from line 7 of that worksheet.............................................. ▶ | **18** | 0.

**19** If you are required to complete the **Unrecaptured Section 1250 Gain Worksheet** (see instructions), enter the amount, if any, from line 18 of that worksheet.............................. ▶ | **19** |

**20** Are lines 18 and 19 **both** zero or blank?

[X] **Yes.** Complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040, line 44 (or in the instructions for Form 1040NR, line 42). **Don't** complete lines 21 and 22 below.

[ ] **No.** Complete the **Schedule D Tax Worksheet** in the instructions. **Don't** complete lines 21 and 22 below.

**21** If line 16 is a loss, enter here and on Form 1040, line 13, or Form 1040NR, line 14, the **smaller** of:

- The loss on line 16 or
- ($3,000), or if married filing separately, ($1,500) .............................. | **21** |

**Note:** When figuring which amount is smaller, treat both amounts as positive numbers.

**22** Do you have qualified dividends on Form 1040, line 9b, or Form 1040NR, line 10b?

[ ] **Yes.** Complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040, line 44 (or in the instructions for Form 1040NR, line 42).

[ ] **No.** Complete the rest of Form 1040 or Form 1040NR.

Schedule D (Form 1040) 2017

FDIA0612L  08/16/17

**SCHEDULE E**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service   (99)

## Supplemental Income and Loss
(From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.)
► Attach to Form 1040, 1040NR, or Form 1041.
► Go to *www.irs.gov/ScheduleE* for instructions and the latest information.

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **13**

Name(s) shown on return

STEVE GALMOR

Your social security number

| Part I | Income or Loss From Rental Real Estate and Royalties | Note: If you are in the business of renting personal property, use |

Schedule C or C-EZ (see instructions). If you are an individual, report farm rental income or loss from Form 4835 on page 2, line 40.

**A** Did you make any payments in 2017 that would require you to file Form(s) 1099? (see instructions)...................  ☒ Yes   ☐ No
**B** If "Yes," did you or will you file required Forms 1099?...........................................................  ☒ Yes   ☐ No

**1 a** Physical address of each property (street, city, state, ZIP code)

**A**
**B**
**C**

| 1 b | Type of Property (from list below) | 2 For each rental real estate property listed above, report the number of fair rental and personal use days. Check the **QJV** box only if you meet the requirements to file as a qualified joint venture. See instructions. | | Fair Rental Days | Personal Use Days | QJV |
|---|---|---|---|---|---|---|
| **A** | 6 | | **A** | | | |
| **B** | | | **B** | | | |
| **C** | | | **C** | | | |

**Type of Property:**
1 Single Family Residence   3 Vacation/Short-Term Rental   5 Land   7 Self-Rental
2 Multi-Family Residence   4 Commercial   6 Royalties   8 Other (describe)

| Income: | | Properties: | A | B | C |
|---|---|---|---|---|---|
| **3** | Rents received................................................ | **3** | | | |
| **4** | Royalties received............................................ | **4** | 47. | | |
| **Expenses:** | | | | | |
| **5** | Advertising.................................................. | **5** | | | |
| **6** | Auto and travel (see instructions)............................ | **6** | | | |
| **7** | Cleaning and maintenance..................................... | **7** | | | |
| **8** | Commissions................................................. | **8** | | | |
| **9** | Insurance................................................... | **9** | | | |
| **10** | Legal and other professional fees............................ | **10** | | | |
| **11** | Management fees.............................................. | **11** | | | |
| **12** | Mortgage interest paid to banks, etc. (see instructions)...... | **12** | | | |
| **13** | Other interest.............................................. | **13** | | | |
| **14** | Repairs..................................................... | **14** | | | |
| **15** | Supplies.................................................... | **15** | | | |
| **16** | Taxes....................................................... | **16** | | | |
| **17** | Utilities................................................... | **17** | | | |
| **18** | Depreciation expense or depletion............................ | **18** | 26. | | |
| **19** | Other (list) ► SEE STM 5 _ _ _ _ _ _ _ _ _ _ _ _ _ | **19** | 3. | | |
| **20** | Total expenses. Add lines 5 through 19....................... | **20** | 29. | | |
| **21** | Subtract line 20 from line 3 (rents) and/ or 4 (royalties). If result is a (loss), see instructions to find out if you must file **Form 6198**.................................... | **21** | 18. | | |
| **22** | Deductible rental real estate loss after limitation, if any, on **Form 8582** (see instructions)............................. | **22** | | | |

| 23 a | Total of all amounts reported on line 3 for all rental properties..................... | **23a** | | |
|---|---|---|---|---|
| **b** | Total of all amounts reported on line 4 for all royalty properties.................... | **23b** | 47. | |
| **c** | Total of all amounts reported on line 12 for all properties........................... | **23c** | | |
| **d** | Total of all amounts reported on line 18 for all properties........................... | **23d** | 26. | |
| **e** | Total of all amounts reported on line 20 for all properties........................... | **23e** | 29. | |
| **24** | **Income.** Add positive amounts shown on line 21. **Do not** include any losses............................... | **24** | | 18. |
| **25** | **Losses.** Add royalty losses from line 21 and rental real estate losses from line 22. Enter total losses here... | **25** | | |
| **26** | Total rental real estate and royalty income or (loss). Combine lines 24 and 25. Enter the result here. If Parts II, III, IV, and line 40 on page 2 do not apply to you, also enter this amount on Form 1040, line 17, or Form 1040NR, line 18. Otherwise, include this amount in the total on line 41 on page 2.......................................................... | **26** | | 18. |

**BAA  For Paperwork Reduction Act Notice, see the separate instructions.**   FDIZ2301L  10/23/17   Schedule **E** (Form 1040) 2017

Schedule E (Form 1040) 2017        Attachment Sequence No. **13**        Page **2**

Name(s) shown on return. Do not enter name and social security number if shown on Page 1.

STEVE GALMOR

**Your social security number**

**Caution:** The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

| Part II | Income or Loss From Partnerships and S Corporations |
|---|---|

**Note:** If you report a loss from an at-risk activity for which *any* amount is **not** at risk, you **must** check the box in column **(e)** on line 28 and attach **Form 6198**. See instructions.

**27** Are you reporting any loss not allowed in a prior year due to the at-risk, excess farm loss, or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? If you answered "Yes," see instructions before completing this section.......................... ☐ **Yes** ☒ **No**

| **28** | **(a)** Name | **(b)** Enter **P** for partnership; **S** for S corporation | **(c)** Check if foreign partnership | **(d)** Employer identification number | **(e)** Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | SGM LEASING LLC | S | | 45-4543762 | |
| B | | | | | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | **(f)** Passive loss allowed (attach Form 8582 if required) | **(g)** Passive income from **Schedule K-1** | **(h)** Nonpassive loss from **Schedule K-1** | **(i)** Section 179 expense deduction from **Form 4562** | **(j)** Nonpassive income from **Schedule K-1** |
| A | | | 8. | | |
| B | | | | | |
| C | | | | | |
| D | | | | | |
| **29 a** Totals............. | | | 8. | | |
| **b** Totals............. | | | | | |

| | | | |
|---|---|---|---|
| **30** Add columns (g) and (j) of line 29a ......................................... | | **30** | |
| **31** Add columns (f), (h), and (i) of line 29b...........................SEE STATEMENT 6...... | | **31** | -8. |
| **32** Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below .......................... | | **32** | -8. |

| Part III | Income or Loss From Estates and Trusts |
|---|---|

| **33** | **(a)** Name | **(b)** Employer ID no. |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | **(c)** Passive deduction or loss allowed (attach **Form 8582** if required) | **(d)** Passive income from **Schedule K-1** | **(e)** Deduction or loss from **Schedule K-1** | **(f)** Other income from **Schedule K-1** |
| A | | | | |
| B | | | | |
| **34 a** Totals................................... | | | | |
| **b** Totals................................... | | | | |

| | | | |
|---|---|---|---|
| **35** Add columns (d) and (f) of line 34a................................................. | | **35** | |
| **36** Add columns (c) and (e) of line 34b................................................. | | **36** | |
| **37** Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below. | | **37** | |

| Part IV | Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) — Residual Holder |
|---|---|

| **38** | **(a)** Name | **(b)** Employer identification number | **(c)** Excess inclusion from Schedules Q, line 2c (see instructions) | **(d)** Taxable income (net loss) from Schedules Q, line 1b | **(e)** Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| | | | |
|---|---|---|---|
| **39** Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below........... | | **39** | |

| Part V | Summary |
|---|---|

| | | | |
|---|---|---|---|
| **40** Net farm rental income or (loss) from **Form 4835**. Also, complete line 42 below........................ | | **40** | |
| **41** Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17, or Form 1040NR, line 18 .......................................................... ▶ | | **41** | 10. |
| **42** Reconciliation of farming and fishing income. Enter your **gross** farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code V; and Schedule K-1 (Form 1041), box 14, code F (see instructions)........................... | **42** | | |
| **43** Reconciliation for real estate professionals. If you were a real estate professional (see instructions), enter the net income or (loss) you reported anywhere on Form 1040 or Form 1040NR from all rental real estate activities in which you materially participated under the passive activity loss rules........ | **43** | | |

**BAA**        FDIZ2302L 10/23/17        Schedule E (Form 1040) 2017

**SCHEDULE F**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

**Profit or Loss From Farming**

► Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.
► Go to *www.irs.gov/ScheduleF* for instructions and the latest information.

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **14**

| Name of proprietor | Social security number (SSN) |
|---|---|
| STEVE GALMOR | ▓▓▓▓▓▓▓▓ |

| **A** Principal crop or activity | **B** Enter code from Part IV | **C** Accounting method: | **D** Employer ID number (EIN), (see instr) |
|---|---|---|---|
| LIVESTOCK | ► 112111 | ☒ Cash ☐ Accrual | |

**E** Did you 'materially participate' in the operation of this business during 2017? If 'No,' see instructions for limit on passive losses. ........... ☒ Yes ☐ No

**F** Did you make any payments in 2017 that would require you to file Form(s) 1099 (see instructions)? ........... ☒ Yes ☐ No

**G** If 'Yes,' did you or will you file required Forms 1099? ........... ☒ Yes ☐ No

**Part I** **Farm Income — Cash Method.** Complete Parts I and II (Accrual method. Complete Parts II and III, and Part I, line 9.)

| | | | |
|---|---|---|---|
| **1a** Sales of livestock and other resale items (see instructions) ........... | 1a | 74,444. | |
| **b** Cost or other basis of livestock or other items reported on line 1a ........... | 1b | 63,000. | |
| **c** Subtract line 1b from line 1a ........... | | | 1c | 11,444. |
| **2** Sales of livestock, produce, grains, and other products you raised ........... | | | 2 | 60,454. |
| **3a** Cooperative distributions (Form(s) 1099-PATR) .... | 3a | | **3b** Taxable amount ..... | 3b | |
| **4a** Agricultural program payments (see instructions) ...... | 4a | 3,885. | **4b** Taxable amount ..... | 4b | 3,885. |
| **5a** Commodity Credit Corporation (CCC) loans reported under election ........... | | | 5a | |
| **b** CCC loans forfeited ........... | 5b | | **5c** Taxable amount ..... | 5c | |
| **6** Crop insurance proceeds and federal crop disaster payments (see instructions) | | | | |
| **a** Amount received in 2017 ........... | 6a | | **6b** Taxable amount ..... | 6b | |
| **c** If election to defer to 2018 is attached, check here .... ► ☐ | | **6d** Amount deferred from 2016.. | 6d | |
| **7** Custom hire (machine work) income ........... | | | 7 | 5,150. |
| **8** Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) ........... | | | 8 | |
| **9** **Gross income.** Add amounts in the right column (lines 1c, 2, 3b, 4b, 5a, 5c, 6b, 6d, 7, and 8). If you use the accrual method, enter the amount from Part III, line 50. See instructions ........... ► | | | 9 | 80,933. |

**Part II** **Farm Expenses — Cash and Accrual Method.** Do not include personal or living expenses. See instructions.

| | | | | | | |
|---|---|---|---|---|---|---|
| **10** Car and truck expenses (see instructions). Also attach Form 4562 ........... | 10 | | **23** Pension and profit-sharing plans ...... | 23 | |
| **11** Chemicals ........... | 11 | | **24** Rent or lease (see instructions): | | |
| **12** Conservation expenses (see instructions) ........... | 12 | | **a** Vehicles, machinery, equipment ....... | 24a | |
| | | | **b** Other (land, animals, etc.) ........... | 24b | 17,200. |
| **13** Custom hire (machine work) ..... | 13 | 7,701. | **25** Repairs and maintenance ........... | 25 | 13,068. |
| **14** Depreciation and section 179 expense (see instructions) ...... | 14 | 66,396. | **26** Seeds and plants ........... | 26 | 850. |
| | | | **27** Storage and warehousing ........... | 27 | |
| **15** Employee benefit programs other than on line 23 ........... | 15 | | **28** Supplies ........... | 28 | 3,488. |
| | | | **29** Taxes ........... | 29 | 6,766. |
| **16** Feed ........... | 16 | 8,218. | **30** Utilities ........... | 30 | 1,440. |
| **17** Fertilizers and lime ........... | 17 | 10,166. | **31** Veterinary, breeding, and medicine ..... | 31 | 295. |
| **18** Freight and trucking ........... | 18 | | **32** Other expenses (specify): | | |
| **19** Gasoline, fuel, and oil ........... | 19 | 600. | **a** SEE STATEMENT 7 | 32a | 5,058. |
| **20** Insurance (other than health) .... | 20 | 4,515. | **b** | 32b | |
| **21** Interest: | | | **c** | 32c | |
| **a** Mortgage (paid to banks, etc.) .... | 21a | | **d** | 32d | |
| **b** Other ........... | 21b | 11,568. | **e** | 32e | |
| **22** Labor hired (less employment credits) .. | 22 | | **f** | 32f | |

| | | |
|---|---|---|
| **33** **Total expenses.** Add lines 10 through 32f. If line 32f is negative, see instructions ........... ► | 33 | 157,329. |
| **34** **Net farm profit or (loss).** Subtract line 33 from line 9 ........... | 34 | −76,396. |
| If a profit, stop here and see instructions for where to report. If a loss, complete lines 35 and 36. | | |

**35** Did you receive an applicable subsidy in 2017? See instructions ........... ☒ Yes ☐ No

**36** Check the box that describes your investment in this activity and see instructions for where to report your loss.

**a** ☒ All investment is at risk.  **b** ☐ Some investment is not at risk.

**BAA For Paperwork Reduction Act Notice, see the separate instructions.** FDIZ0212L 08/08/17 Schedule F (Form 1040) 2017

Form **4797**

Department of the Treasury
Internal Revenue Service

**Sales of Business Property**
(Also Involuntary Conversions and Recapture Amounts
Under Sections 179 and 280F(b)(2))
► **Attach to your tax return.**
► **Go to** *www.irs.gov/Form4797* **for instructions and the latest information.**

OMB No. 1545-0184

**2017**

Attachment
Sequence No. **27**

Name(s) shown on return

STEVE GALMOR

Identifying number

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **1** | Enter the gross proceeds from sales or exchanges reported to you for 2017 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions | | | | | | **1** | 217,365. |

**Part I** **Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft — Most Property Held More Than 1 Year** (see instructions)

| **2** **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| 160 ACRES - BECK CTY OK | 7/20/09 | 6/07/17 | 217,365. | | 101,859. | 115,506. |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| **3** | Gain, if any, from Form 4684, line 39 | **3** | |
| **4** | Section 1231 gain from installment sales from Form 6252, line 26 or 37 | **4** | |
| **5** | Section 1231 gain or (loss) from like-kind exchanges from Form 8824 | **5** | |
| **6** | Gain, if any, from line 32, from other than casualty or theft | **6** | |
| **7** | Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows: | **7** | 115,506. |

Partnerships (except electing large partnerships) and S corporations. Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

Individuals, partners, S corporation shareholders, and all others. If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | | |
|---|---|---|---|
| **8** | Nonrecaptured net section 1231 losses from prior years. See instructions | **8** | |
| **9** | Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return | **9** | |

**Part II** **Ordinary Gains and Losses** (see instructions)

| | | | |
|---|---|---|---|
| **10** | Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less): | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| **11** | Loss, if any, from line 7 | **11** | |
| **12** | Gain, if any, from line 7 or amount from line 8, if applicable | **12** | |
| **13** | Gain, if any, from line 31 | **13** | 15,000. |
| **14** | Net gain or (loss) from Form 4684, lines 31 and 38a | **14** | |
| **15** | Ordinary gain from installment sales from Form 6252, line 25 or 36 | **15** | |
| **16** | Ordinary gain or (loss) from like-kind exchanges from Form 8824 | **16** | |
| **17** | Combine lines 10 through 16 | **17** | 15,000. |
| **18** | For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below: | | |
| **a** | If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 28, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 23. Identify as from 'Form 4797, line 18a.' See instructions | **18a** | |
| **b** | Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 | **18b** | 15,000. |

**BAA For Paperwork Reduction Act Notice, see separate instructions.** Form **4797** (2017)

FDIZ1001L 08/23/17

Form 4797 (2017) STEVE GALMOR                                                                 Page 2

**Part III** Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255 (see instructions)

| 19(a) Description of section 1245, 1250, 1252, 1254, or 1255 property: | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) |
|---|---|---|
| A FARM IMPROVEMENTS | 7/20/09 | 6/07/17 |
| B | | |
| C | | |
| D | | |

| These columns relate to the properties on lines 19A through 19D. ▶ | | **Property A** | **Property B** | **Property C** | **Property D** |
|---|---|---|---|---|---|
| **20** Gross sales price (**Note:** *See line 1 before completing.*) | 20 | 15,000. | | | |
| **21** Cost or other basis plus expense of sale. | 21 | 17,500. | | | |
| **22** Depreciation (or depletion) allowed or allowable | 22 | 17,500. | | | |
| **23** Adjusted basis. Subtract line 22 from line 21. | 23 | | | | |
| **24** Total gain. Subtract line 23 from line 20. | 24 | 15,000. | | | |
| **25** If section 1245 property: | | | | | |
| **a** Depreciation allowed or allowable from line 22 | 25a | 17,500. | | | |
| **b** Enter the **smaller** of line 24 or 25a. | 25b | 15,000. | | | |
| **26** If section 1250 property: If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| **a** Additional depreciation after 1975. See instrs | 26a | | | | |
| **b** Applicable percentage multiplied by the **smaller** of line 24 or line 26a. See instructions | 26b | | | | |
| **c** Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e | 26c | | | | |
| **d** Additional depreciation after 1969 and before 1976 | 26d | | | | |
| **e** Enter the **smaller** of line 26c or 26d. | 26e | | | | |
| **f** Section 291 amount (corporations only) | 26f | | | | |
| **g** Add lines 26b, 26e, and 26f | 26g | | | | |
| **27** If section 1252 property: Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | | |
| **a** Soil, water, and land clearing expenses. | 27a | | | | |
| **b** Line 27a multiplied by applicable percentage. See instructions | 27b | | | | |
| **c** Enter the **smaller** of line 24 or 27b. | 27c | | | | |
| **28** If section 1254 property: | | | | | |
| **a** Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion. See instructions. | 28a | | | | |
| **b** Enter the **smaller** of line 24 or 28a. | 28b | | | | |
| **29** If section 1255 property: | | | | | |
| **a** Applicable percentage of payments excluded from income under section 126. See instructions | 29a | | | | |
| **b** Enter the smaller of line 24 or 29a. See instrs. | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | | |
|---|---|---|---|
| **30** Total gains for all properties. Add property columns A through D, line 24. | 30 | | 15,000. |
| **31** Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13. | 31 | | 15,000. |
| **32** Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | | 0. |

**Part IV** Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less (see instructions)

| | | **(a)** Section 179 | **(b)** Section 280F(b)(2) |
|---|---|---|---|
| **33** Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| **34** Recomputed depreciation. See instructions. | 34 | | |
| **35** Recapture amount. Subtract line 34 from line 33. See the instructions for where to report. | 35 | | |

BAA                               FDIZ1002L 01/15/18                               Form **4797** (2017)

Form **6251**

Department of the Treasury
Internal Revenue Service (99)

### Alternative Minimum Tax — Individuals
► Go to *www.irs.gov/Form6251* for instructions and the latest information.
► Attach to Form 1040 or Form 1040NR.

OMB No. 1545-0074

**2017**

Attachment
Sequence No. **32**

Name(s) shown on Form 1040 or Form 1040NR

STEVE GALMOR

Your social security number

| **Part I** | **Alternative Minimum Taxable Income** (See instructions for how to complete each line.) | | |
|---|---|---|---|
| 1 | If filing Schedule A (Form 1040), enter the amount from Form 1040, line 41, and go to line 2. Otherwise, enter the amount from Form 1040, line 38, and go to line 7. (If less than zero, enter as a negative amount.) | 1 | 127,536. |
| 2 | Reserved for future use | 2 | |
| 3 | Taxes from Schedule A (Form 1040), line 9 | 3 | |
| 4 | Enter the home mortgage interest adjustment, if any, from line 6 of the worksheet in the instructions for this line | 4 | |
| 5 | Miscellaneous deductions from Schedule A (Form 1040), line 27 | 5 | |
| 6 | If Form 1040, line 38, is $156,900 or less, enter -0-. Otherwise, see instructions | 6 | |
| 7 | Tax refund from Form 1040, line 10 or line 21 | 7 | |
| 8 | Investment interest expense (difference between regular tax and AMT) | 8 | |
| 9 | Depletion (difference between regular tax and AMT) | 9 | |
| 10 | Net operating loss deduction from Form 1040, line 21. Enter as a positive amount | 10 | 45,275. |
| 11 | Alternative tax net operating loss deduction | 11 | -47,388. |
| 12 | Interest from specified private activity bonds exempt from the regular tax | 12 | |
| 13 | Qualified small business stock, see instructions | 13 | |
| 14 | Exercise of incentive stock options (excess of AMT income over regular tax income) | 14 | |
| 15 | Estates and trusts (amount from Schedule K-1 (Form 1041), box 12, code A) | 15 | |
| 16 | Electing large partnerships (amount from Schedule K-1 (Form 1065-B), box 6) | 16 | |
| 17 | Disposition of property (difference between AMT and regular tax gain or loss) | 17 | |
| 18 | Depreciation on assets placed in service after 1986 (difference between regular tax and AMT) | 18 | |
| 19 | Passive activities (difference between AMT and regular tax income or loss) | 19 | |
| 20 | Loss limitations (difference between AMT and regular tax income or loss) | 20 | |
| 21 | Circulation costs (difference between regular tax and AMT) | 21 | |
| 22 | Long-term contracts (difference between AMT and regular tax income) | 22 | |
| 23 | Mining costs (difference between regular tax and AMT) | 23 | |
| 24 | Research and experimental costs (difference between regular tax and AMT) | 24 | |
| 25 | Income from certain installment sales before January 1, 1987 | 25 | |
| 26 | Intangible drilling costs preference | 26 | |
| 27 | Other adjustments, including income-based related adjustments | 27 | |
| 28 | **Alternative minimum taxable income.** Combine lines 1 through 27. (If married filing separately and line 28 is more than $249,450, see instructions.) | 28 | 125,423. |

| **Part II** | **Alternative Minimum Tax (AMT)** | | |
|---|---|---|---|
| 29 | Exemption. (If you were under age 24 at the end of 2017, see instructions.) | | |

| IF your filing status is . . . | AND line 28 is not over . . . | THEN enter on line 29 . . . . | | |
|---|---|---|---|---|
| Single or head of household | $120,700 | $54,300 | | |
| Married filing jointly or qualifying widow(er) | 160,900 | 84,500 | | |
| Married filing separately | 80,450 | 42,250 | | |

| | | | |
|---|---|---|---|
| | If line 28 is **over** the amount shown above for your filing status, see instructions. | 29 | 53,119. |
| 30 | Subtract line 29 from line 28. If more than zero, go to line 31. If zero or less, enter -0- here and on lines 31, 33, and 35, and go to line 34 | 30 | 72,304. |
| 31 | • If you are filing Form 2555 or 2555-EZ, see instructions for the amount to enter. • If you reported capital gain distributions directly on Form 1040, line 13; you reported qualified dividends on Form 1040, line 9b; or you had a gain on both lines 15 and 16 of Schedule D (Form 1040) (as refigured for the AMT, if necessary), complete Part III on the back and enter the amount from line 64 here. • **All others:** If line 30 is $187,800 or less ($93,900 or less if married filing separately), multiply line 30 by 26% (0.26). Otherwise, multiply line 30 by 28% (0.28) and subtract $3,756 ($1,878 if married filing separately) from the result. | 31 | 5,398. |
| 32 | Alternative minimum tax foreign tax credit (see instructions) | 32 | |
| 33 | Tentative minimum tax. Subtract line 32 from line 31 | 33 | 5,398. |
| 34 | Add Form 1040, line 44 (minus any tax from Form 4972), and Form 1040, line 46. Subtract from the result any foreign tax credit from Form 1040, line 48. If you used Schedule J to figure your tax on Form 1040, line 44, refigure that tax without using Schedule J before completing this line (see instructions) | 34 | 12,042. |
| 35 | **AMT.** Subtract line 34 from line 33. If zero or less, enter -0-. Enter here and on Form 1040, line 45 | 35 | 0. |

**BAA For Paperwork Reduction Act Notice, see your tax return instructions.**     FDIA5312L  01/11/18     Form **6251** (2017)

Form 6251 (2017)    STEVE GALMOR    ████████    Page **2**

| **Part III** | **Tax Computation Using Maximum Capital Gains Rates** |
|---|---|

Complete Part III only if you are required to do so by line 31 or by the Foreign Earned Income Tax Worksheet in the instructions.

| | | | |
|---|---|---|---|
| 36 | Enter the amount from Form 6251, line 30. If you are filing Form 2555 or 2555-EZ, enter the amount from line 3 of the worksheet in the instructions for line 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 36 | 72,304. |
| 37 | Enter the amount from line 6 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 44, or the amount from line 13 of the Schedule D Tax Worksheet in the instructions for Schedule D (Form 1040), whichever applies (as refigured for the AMT, if necessary) (see instructions). If you are filing Form 2555 or 2555-EZ, see instructions for the amount to enter . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 | 115,506. |
| 38 | Enter the amount from Schedule D (Form 1040), line 19 (as refigured for the AMT, if necessary) (see instructions). If you are filing Form 2555 or 2555-EZ, see instructions for the amount to enter . . . . . . . . . . . . . . | 38 | |
| 39 | If you did not complete a Schedule D Tax Worksheet for the regular tax or the AMT, enter the amount from line 37. Otherwise, add lines 37 and 38, and enter the **smaller** of that result or the amount from line 10 of the Schedule D Tax Worksheet (as refigured for the AMT, if necessary). If you are filing Form 2555 or 2555-EZ, see instructions for the amount to enter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 39 | 115,506. |
| 40 | Enter the **smaller** of line 36 or line 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 | 72,304. |
| 41 | Subtract line 40 from line 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 41 | |
| 42 | If line 41 is $187,800 or less ($93,900 or less if married filing separately), multiply line 41 by 26% (0.26). Otherwise, multiply line 41 by 28% (0.28) and subtract $3,756 ($1,878 if married filing separately) from the result . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 42 | |
| 43 | Enter: <br> • $75,900 if married filing jointly or qualifying widow(er), <br> • $37,950 if single or married filing separately, or <br> • $50,800 if head of household. | 43 | 37,950. |
| 44 | Enter the amount from line 7 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 44, or the amount from line 14 of the Schedule D Tax Worksheet in the instructions for Schedule D (Form 1040), whichever applies (as figured for the regular tax). If you did not complete either worksheet for the regular tax, enter the amount from Form 1040, line 43; if zero or less, enter -0-. If you are filing Form 2555 or 2555-EZ, see instructions for the amount to enter . . . . . . . . . . . . . . . . . . . . . . . . . . | 44 | 1,630. |
| 45 | Subtract line 44 from line 43. If zero or less, enter -0- . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 45 | 36,320. |
| 46 | Enter the **smaller** of line 36 or line 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 46 | 72,304. |
| 47 | Enter the **smaller** of line 45 or line 46. This amount is taxed at 0% . . . . . . . . . . . . . . . . . . . . . . . . . . . | 47 | 36,320. |
| 48 | Subtract line 47 from line 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 48 | 35,984. |
| 49 | Enter: <br> • $418,400 if single <br> • $235,350 if married filing separately <br> • $470,700 if married filing jointly or qualifying widow(er) <br> • $444,550 if head of household | 49 | 418,400. |
| 50 | Enter the amount from line 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 50 | 36,320. |
| 51 | Enter the amount from line 7 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 44, or the amount from line 19 of the Schedule D Tax Worksheet, whichever applies (as figured for the regular tax). If you did not complete either worksheet for the regular tax, enter the amount from Form 1040, line 43; if zero or less, enter -0-. If you are filing Form 2555 or Form 2555-EZ, see instructions for the amount to enter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 51 | 1,630. |
| 52 | Add line 50 and line 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 52 | 37,950. |
| 53 | Subtract line 52 from line 49. If zero or less, enter -0- . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 53 | 380,450. |
| 54 | Enter the smaller of line 48 or line 53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 54 | 35,984. |
| 55 | Multiply line 54 by 15% (0.15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 55 | 5,398. |
| 56 | Add lines 47 and 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 56 | 72,304. |
| | **If lines 56 and 36 are the same, skip lines 57 through 61 and go to line 62. Otherwise, go to line 57.** | | |
| 57 | Subtract line 56 from line 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 57 | |
| 58 | Multiply line 57 by 20% (0.20) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 58 | |
| | **If line 38 is zero or blank, skip lines 59 through 61 and go to line 62. Otherwise, go to line 59.** | | |
| 59 | Add lines 41, 56, and 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 59 | |
| 60 | Subtract line 59 from line 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 60 | |
| 61 | Multiply line 60 by 25% (0.25) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | 61 | |
| 62 | Add lines 42, 55, 58, and 61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 62 | 5,398. |
| 63 | If line 36 is $187,800 or less ($93,900 or less if married filing separately), multiply line 36 by 26% (0.26). Otherwise, multiply line 36 by 28% (0.28) and subtract $3,756 ($1,878 if married filing separately) from the result . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 63 | 18,799. |
| 64 | Enter the **smaller** of line 62 or line 63 here and on line 31. If you are filing Form 2555 or 2555-EZ, do not enter this amount on line 31. Instead, enter it on line 4 of the worksheet in the instructions for line 31 . . . . . . . | 64 | 5,398. |

| Form **4562** | **Depreciation and Amortization** (Including Information on Listed Property) ▶ Attach to your tax return. ▶ Go to *www.irs.gov/Form4562* for instructions and the latest information. | OMB No. 1545-0172 **2017** Attachment Sequence No. **179** |
|---|---|---|

Department of the Treasury
Internal Revenue Service (99)

Name(s) shown on return
STEVE GALMOR

Identifying number ▉▉▉▉▉▉▉▉

Business or activity to which this form relates
SCHEDULE C - MSG OIL & GAS

## Part I — Election To Expense Certain Property Under Section 179
Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 510,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,030,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 .......... 7 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2016 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs). | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2018. Add lines 9 and 10, less line 12 ▶ 13 | | |

Note: *Don't use Part II or Part III below for listed property. Instead, use Part V.*

## Part II — Special Depreciation Allowance and Other Depreciation (Don't include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

## Part III — MACRS Depreciation (Don't include listed property.) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2017 | 17 | 30,831. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

### Section B — Assets Placed in Service During 2017 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19 a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C — Assets Placed in Service During 2017 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

## Part IV — Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 30,831. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs .......... 23 | | |

**BAA For Paperwork Reduction Act Notice, see separate instructions.** FDIZ0812L 08/15/17 Form **4562** (2017)

| Form **4562** | **Depreciation and Amortization**<br>**(Including Information on Listed Property)**<br>▶ Attach to your tax return. | OMB No. 1545-0172 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service (99) | ▶ Go to *www.irs.gov/Form4562* for instructions and the latest information. | **2017**<br>Attachment<br>Sequence No. **179** |

Name(s) shown on return
STEVE GALMOR

Identifying number [ ]

Business or activity to which this form relates
SCHEDULE F / FORM 4835 – LIVESTOCK

| **Part I** | **Election To Expense Certain Property Under Section 179** |
|---|---|

**Note:** *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | 510,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | 2,030,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| | | | | |
|---|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** | | |
| 10 | Carryover of disallowed deduction from line 13 of your 2016 Form 4562 | **10** | | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | **11** | | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | **12** | | |
| 13 | Carryover of disallowed deduction to 2018. Add lines 9 and 10, less line 12 ▶ | **13** | | |

**Note:** *Don't use Part II or Part III below for listed property. Instead, use Part V.*

| **Part II** | **Special Depreciation Allowance and Other Depreciation** (Don't include listed property.) (See instructions.) |
|---|---|

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | **14** | |
| 15 | Property subject to section 168(f)(1) election | **15** | |
| 16 | Other depreciation (including ACRS) | **16** | |

| **Part III** | **MACRS Depreciation** (Don't include listed property.) (See instructions.) |
|---|---|

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2017 | **17** | 58,236. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ▶ ☐ | | |

**Section B — Assets Placed in Service During 2017 Tax Year Using the General Depreciation System**

| (a)<br>Classification of property | (b) Month and<br>year placed<br>in service | (c) Basis for depreciation<br>(business/investment use<br>only — see instructions) | (d)<br>Recovery period | (e)<br>Convention | (f)<br>Method | (g) Depreciation<br>deduction |
|---|---|---|---|---|---|---|
| **19 a** 3-year property | | | | | | |
| **b** 5-year property | | 54,400. | 5 | HY | 150DB | 8,160. |
| **c** 7-year property | | | | | | |
| **d** 10-year property | | | | | | |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | | | | | |
| **g** 25-year property | | | 25 yrs | | S/L | |
| **h** Residential rental<br>property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| **i** Nonresidential real<br>property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

**Section C — Assets Placed in Service During 2017 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| **20 a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs | | S/L | |
| **c** 40-year | | | 40 yrs | MM | S/L | |

| **Part IV** | **Summary** (See instructions.) |
|---|---|

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | **22** | 66,396. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

BAA **For Paperwork Reduction Act Notice, see separate instructions.**      FDIZ0812L 08/15/17      Form **4562** (2017)

| 2017 | FEDERAL STATEMENTS | PAGE 1 |
|------|--------------------|--------|
| | STEVE GALMOR | |

## STATEMENT 1
## FORM 1040
## WAGE SCHEDULE

| TAXPAYER - EMPLOYER | WAGES | FEDERAL W/H | FICA | MEDI-CARE | STATE W/H | LOCAL W/H |
|---------------------|-------|-------------|------|-----------|-----------|-----------|
| GALMORS/G&G STEAM SERVICE INC | 111,840. | 23,660. | 6,934. | 1,622. | | |
| GRAND TOTAL | 111,840. | 23,660. | 6,934. | 1,622. | 0. | 0. |

## STATEMENT 2
## FORM 1040, LINE 21
## COMPUTATION OF 2017 TAXABLE INCOME FOR NOL UTILIZATION

| | |
|---|---|
| TAXABLE INCOME (FORM 1040, LINE 41) | 121,186. |
| LESS: DEDUCTION FOR EXEMPTIONS (FORM 1040, LINE 42) | -4,050. |
| PLUS: NOL CARRYOVERS FROM 2016 AND LATER YEARS | 45,275. |
| 2017 TAXABLE INCOME BEFORE NOL DEDUCTION | 162,411. |

## STATEMENT 2
## FORM 1040, LINE 21
## 2016 NOL UTILIZATION

| | |
|---|---|
| INITIAL LOSS | 45,275. |
| NOL CARRYOVER AVAILABLE IN 2017 | 45,275. |
| TAXABLE INCOME BEFORE NOL DEDUCTION | 162,411. |
| NOL ABSORBED THIS YEAR | 45,275. |
| TAXABLE INCOME AFTER NOL DEDUCTION | 117,136. |
| NOL CARRYOVER TO 2018 | 0. |

## STATEMENT 3
## SCHEDULE A, LINE 1
## MEDICAL AND DENTAL EXPENSES

| | | |
|---|---|---|
| DOCTORS, DENTISTS, AND NURSES.................................................... | $ | 734. |
| INSURANCE PREMIUMS FROM SE HEALTH............................................. | | 4,983. |
| TOTAL | $ | 5,717. |

## STATEMENT 4
## SCHEDULE A, LINE 16
## CONTRIBUTIONS BY CASH OR CHECK

| | | |
|---|---|---|
| ................................................................................................ | $ | 1,735. |
| ................................................................................................ | | 150. |
| TOTAL | $ | 1,885. |

**2017**                    **FEDERAL STATEMENTS**                    **PAGE 2**

**STEVE GALMOR**

**STATEMENT 5**
**SCHEDULE E, LINE 19**
**OTHER RENTAL AND ROYALTY EXPENSES**

PRODUCTION TAX................................................................ $            3.
                                                            TOTAL $            3.

| 2017 | **FEDERAL STATEMENTS** | **PAGE 3** |
|------|------------------------|------------|

**STEVE GALMOR**

**STATEMENT 6**
**SCHEDULE E, LINE 31**
**BASIS LIMITATION**
**ACTIVITY NAME: SGM LEASING LLC**

| | |
|---|---|
| STOCK BASIS AT BEGINNING OF YEAR | 0. |
| ADDITIONAL AMOUNTS INVESTED IN CURRENT YEAR | |
| CURRENT YEAR DISTRIBUTIONS | |
| CURRENT YEAR INCOME FROM S CORPORATION | 8. |
| LESS INCOME USED TO RESTORE DEBT BASIS | |
| STOCK BASIS USED FOR BASIS LIMITATION | 8. |
| LOSS ALLOWED BY BASIS LIMITATION | 8. |
| STOCK BASIS AT END OF YEAR | 0. |

PRINCIPAL AMOUNT OF DEBT S CORP OWES TO SHAREHOLDER AT BEGINNING OF YEAR

| | |
|---|---|
| DEBT BASIS | 0. |
| INCOME USED TO RESTORE DEBT BASIS | |
| LOANS MADE TO S CORP DURING THE YEAR | |
| LOAN REPAYMENTS | |
| DEBT BASIS USED FOR BASIS LIMITATION | 0. |
| LOSS ALLOWED BY BASIS LIMITATION | 0. |
| DEBT BASIS AT END OF YEAR | 0. |

PRINCIPAL AMOUNT OF DEBT S CORP OWES TO SHAREHOLDER AT END OF YEAR

| | (A) CURRENT YEAR LOSS OR DEDUCTION | (B) PRIOR YEAR UNALLOWED BASIS LOSS | (C) LOSS ALLOWABLE BY BASIS LIMITATION | (D) BASIS CARRYOVER |
|---|---|---|---|---|
| **INCOME OR LOSS** | | | | |
| ORDINARY INCOME (LOSS) | 1,231,785. | 3,379,064. | 8. | 4,610,841. |
| PASSIVE SEC 1231 LOSS | 19,595. | 1,894. | | 21,489. |
| REGULAR TAX | 1,251,380. | 3,380,958. | 8. | 4,632,330. |
| **DEDUCTIONS** | | | | |
| REGULAR TAX | 0. | 0. | 0. | 0. |

| 2017 | **FEDERAL STATEMENTS** | **PAGE 4** |
|---|---|---|

**STEVE GALMOR**

**STATEMENT 6 (CONTINUED)**
**SCHEDULE E, LINE 31**
**BASIS LIMITATION**
**ACTIVITY NAME: SGM LEASING LLC**


ALTERNATIVE MINIMUM TAX

| | |
|---|---|
| ALT MIN TAX BEGINNING BASIS | 0. |
| ALT MIN TAX INCOME | 8. |
| CURRENT YEAR ADJUSTMENTS TO BASIS | |
| ALT MIN TAX BASIS USED FOR LIMITATION | 8. |
| LOSS ALLOWED BY ALT MIN TAX BASIS | 8. |
| ALT MIN TAX FINAL BASIS | 0. |

| | ALT MIN TAX LOSS ALLOWED | ALT MIN TAX BASIS CARRYOVER |
|---|---|---|
| ALT MIN TAX ORDINARY INCOME (LOSS) | 8. | 2,578,977. |
| ALT MIN TAX PASSIVE SEC 1231 LOSS | 0. | 20,592. |
| TOTAL | $ 8. | $ 2,599,569. |


**STATEMENT 7 - LIVESTOCK**
**SCHEDULE F, LINE 32**
**OTHER EXPENSES**

| | | |
|---|---|---|
| BANK CHARGES | $ | 80. |
| DUES | | 155. |
| LEGAL & PROFESSIONAL | | 1,585. |
| OFFICE EXPENSE | | 120. |
| OUTSIDE SERVICES | | 1,250. |
| TAGS | | 218. |
| TOOLS | | 1,650. |
| TOTAL | $ | 5,058. |

**2017**       # GENERAL ELECTIONS       **PAGE 1**

**STEVE GALMOR** ████

## SECTION 1.263(A)-1(F) DE MINIMIS SAFE HARBOR ELECTION

THE TAXPAYER HEREBY MAKES THE DE MINIMIS SAFE HARBOR ELECTION UNDER REGULATION
1.263(A)-1(F).

STEVE GALMOR
████████████
P.O. BOX 349
SHAMROCK, TX 79079

| 12/31/17 | 2017 FEDERAL OIL AND GAS INCOME (LOSS) REPORT | | | | | | | | | | | | PAGE 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

STEVE GALMOR

| PROP NUMBER PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS INCOME | PRODUCTION TAX | IDC | OPERATING EXPENSES | AMORTIZATIO DEPRECIATION | SECTION 179 | ALLOCATED OVERHEAD | DRY HOLE EXPENSE | OTHER EXPENSES | NET INCOME |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 SCOUT ENERGY | PRIMARY GAS | 94,915 | | | 15,148 | | | | | | 79,767 |
| TOTALS: SCH C - X | | 94,915 | 0 | 0 | 15,148 | 0 | 0 | 0 | 0 | 0 | 79,767 |
| 12 FOURPOINT ENERGY | PRIMARY GAS | 47 | 3 | | | | | | | | 44 |
| TOTALS: SCH E - OIL & GAS PRODUCTION | | 47 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 44 |
| GRAND TOTALS | | 94,962 | 3 | 0 | 15,148 | 0 | 0 | 0 | 0 | 0 | 79,811 |

| 12/31/17 | | 2017 FEDERAL OIL AND GAS ALLOWABLE DEPLETION REPORT | | | | | | | | | | PAGE 1 |

STEVE GALMOR

| PROP NUMBER PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS % DEPLETION | TENTATIVE % DEPLETION | COST DEPLETION | GREATER OF % OR COST | DEPLETION CARRYOVER | BEFORE 65% LIMITATION | ALLOWABLE DEPLETION | CARRYOVER TO 2018 | DEPLETION ADJUSTMENT | EXCESS IDC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 SCOUT ENERGY | PRIMARY GAS | 14,237 | 14,237 | | 14,237 | 11,265 | 25,502 | 25,502 | | 0 | 0 |
| TOTALS: SCH C - X | | 14,237 | 14,237 | 0 | 14,237 | 11,265 | 25,502 | 25,502 | 0 | 0 | 0 |
| 12 FOURPOINT ENERGY | PRIMARY GAS | 7 | 7 | | 7 | 19 | 26 | 26 | | 0 | 0 |
| TOTALS: SCH E - OIL & GAS PRODUCTION | | 7 | 7 | 0 | 7 | 19 | 26 | 26 | 0 | 0 | 0 |
| GRAND TOTALS | | 14,244 | 14,244 | 0 | 14,244 | 11,284 | 25,528 | 25,528 | 0 | 0 | 0 |



**Form 511NR**
**2017**

# OKLAHOMA NONRESIDENT/
# PART-YEAR INCOME TAX RETURN

Your Social Security Number | Place an 'X' in this box if this taxpayer is deceased ➡ | **AMENDED RETURN!**

Spouse's Social Security Number (joint return only) | Place an 'X' in this box if this taxpayer is deceased ➡

Place an 'X' in this box if this is an amended 511NR. See Schedule 511NR-G..

**NAME AND ADDRESS PLEASE PRINT OR TYPE**

Your first name, middle initial and last name
STEVE GALMOR
If a joint return, spouse's first name, middle initial and last name

Mailing address (number and street, including apartment no., rural route or PO Box)
P.O. BOX 349
City, State and ZIP
SHAMROCK, TX 79079

**NOT REQUIRED TO FILE**
Place an 'X' in this box if you are a nonresident whose gross income from Oklahoma sources is less than $1,000. ➡
(see instructions)

**FILING STATUS**

1 [X] Single
2 [ ] Married filing joint return (even if only one had income)
3 [ ] Married filing separate
 • If spouse is also filing, list name and SSN in the boxes: Name: / SSN:
4 [ ] Head of household with qualifying person
5 [ ] Qualifying widow(er) with dependent child
 • Please list the year spouse died in box at right:

**EXEMPTIONS**

\* NOTE: If claiming Special Exemption, see instructions on page 8 of 511NR Packet.

| | REGULAR | \*SPECIAL | BLIND | |
|---|---|---|---|---|
| YOURSELF | 1 | + | + | = 1 |
| SPOUSE | | + | + | = |

ADD THE TOTALS FROM THE 4 BOXES. WRITE THE TOTAL IN THE BOX BELOW.

NUMBER OF DEPENDENT CHILDREN =
NUMBER OF OTHER DEPENDENTS =

**TOTAL** = 1

NOTE: IF YOU MAY BE CLAIMED AS A DEPENDENT ON ANOTHER RETURN, ENTER '0' FOR YOUR REGULAR EXEMPTION.

**RESIDENCY STATUS**

[X] Nonresident(s) State of Residence: TX
[ ] Part-Year Resident(s) From ___ to ___
[ ] Resident/Part-Year Resident/Nonresident
State of Residence: Yourself ___ Spouse ___

Age 65 OR OVER? (Please see instructions) [ ] Yourself [ ] Spouse

**Please Round to Nearest Whole Dollar**

COMPLETE SCHEDULE **511NR-1** INCOME ALLOCATION FOR NONRESIDENTS AND PART-YEAR RESIDENTS to arrive at Oklahoma
Source Income (line 1) and Federal adjusted gross income (line 2).

| | | FEDERAL AMOUNT | | OKLAHOMA AMOUNT |
|---|---|---|---|---|
| 1 | **Oklahoma source income** (Schedule 511NR-1, line 18)....... | | 1 | 1,656. 00 |
| 2 | **Federal adjusted gross income** (Schedule 511NR-1, line 19)..... | 127,536. 00 | 2 | |
| 3 | Oklahoma additions: Schedule 511NR-A, line 7................. | 49,915. 00 | 3 | 49,915. 00 |
| 4 | Add lines (Federal 2 and 3) and then (Oklahoma 1 and 3)........ | 177,451. 00 | 4 | 51,571. 00 |
| 5 | Oklahoma subtractions: Schedule 511NR-B, line 16............ | 160,781. 00 | 5 | 160,781. 00 |
| 6 | Adjusted gross income: **Oklahoma Source** (line 4 minus line 5)..... | | 6 | -109,210. 00 |
| 7 | Adjusted gross income: All Sources (line 4 minus line 5) Also enter on line 8..... | 16,670. 00 | 7 | |

| 8 | Adjusted gross income: **All Sources** (from line 7)................................ 8 | | 16,670. 00 |
|---|---|---|---|
| 9 | Oklahoma Adjustments (Schedule 511NR-C, line 7).............................. 9 | | 00 |
| 10 | Income after adjustments (line 8 minus line 9)............................10 | | 16,670. 00 |
| 11A | Federal itemized deductions from Federal Schedule A, line 29............... 11A | 00 | |
| | (Provide copy of the Federal Schedule A.) (If you did not itemize, skip lines 11A and 11B; enter the Oklahoma standard deduction on line 11C) | | |
| 11B | State and local sales or income taxes included in line 11A.................. 11B | 00 | |
| 11C | Oklahoma itemized deductions (line 11A minus line 11B) or Oklahoma standard deduction **(Single or Married Filing Separate: $6,350** • **Married Filing Joint or Qualifying Widow(er): $12,700** • Head of Household: $9,350)................. 11C | | 6,350. 00 |
| 12 | Exemptions ($1,000 x number of exemptions claimed above)........................ 12 | | 1,000. 00 |
| 13 | Total deductions and exemptions (add lines 11C and 12)............................ 13 | | 7,350. 00 |
| 14 | **Oklahoma Taxable Income:** (line 10 minus line 13)................................ 14 | | 9,320. 00 |
| 15 | Oklahoma Income Tax from Tax Table............................................ 15 | | |
| | If using Farm Income Averaging, enter tax from Form 573, line 22 and enter a '1' in box. If paying the Health Savings Account additional 10% tax, add additional tax here and enter a '2' in box......... | | 278. 00 |

OKIA0912L  11/14/17



**2017 Form 511NR - Nonresident/Part-Year Income Tax Return - Page 2**

| Name(s) shown on Form 511NR: | STEVE GALMOR | Your Social Security Number: | |
|---|---|---|---|

| 16 | **Amount from line 15 on page 1**............................................................ | 16 | 278.|00 |
|---|---|---|---|
| | **STOP AND READ:** If line 7 is equal to or larger than line 2, complete line 17. If line 7 is smaller than line 2, see Schedule 511NR-D. | | |
| 17 | Oklahoma child care/child tax credit (see instructions)........................... | 17 | 00 |
| 18 | Subtract line 17 from line 16 (This is your tax base) (Do not enter less than zero)................... | 18 | 278.|00 |
| 19 | Tax percentage: **Oklahoma Amount** (from line 6) a) −109,210. ÷ **Federal Amount** (from line 7) b) 16,670. | 19 | % |
| 20 | **Oklahoma Income Tax.** Multiply line 18 by line 19 If recapturing the Oklahoma Affordable Housing Tax Credit, add recaptured credit here and enter a "1" in box | 20 | 00 |
| 21 | Oklahoma earned income credit (Schedule 511NR-E, line 4)......................... | 21 | 00 |
| 22 | Credit for taxes paid to another state (provide Form 511TX) nonresidents do not qualify........... | 22 | 00 |
| 23 | Form 511CR — Other Credits Form — List 511CR line number claimed here:........ | 23 | 00 |
| 24 | Line 20 minus lines 21, 22 and 23............................... **(Do not enter less than zero)** | 24 | 00 |
| 25 | Use tax due on Internet, mail order, or other out-of-state purchases while living in Oklahoma.......... | 25 | |
| | If you certify that no use tax is due, place an 'X' here: | | 00 |
| 26 | Balance (add lines 24 and 25)................................................ | 26 | 00 |
| 27 | Oklahoma withholding **(provide W-2s, 1099s or withholding statement)**........... 27 | | 00 | |
| 28 | 2017 Oklahoma estimated tax payments If you are a qualified farmer, place an 'X' here: 28 | | 00 | |
| 29 | 2017 payment with extension.................................... 29 | | 00 | |
| 30 | Credits from Form a) 577..... b) 578..... 30 | | 00 | |
| 31 | Amount paid with original return plus additional paid after it was filed (amended return only)............................................ 31 | | 00 | |
| 32 | **Payments and credits** (add lines 27-31)..................................... | 32 | 00 |
| 33 | Overpayment, if any, as shown on original return and/or prior amended return(s) or as previously adjusted by Oklahoma (amended return only)............................ | 33 | 00 |
| 34 | **Total payments and credits** (line 32 minus line 33)............................. | 34 | 00 |
| 35 | If line 34 is more than line 26, subtract line 26 from line 34. This is your **overpayment**............ | 35 | 00 |
| 36 | Amount of line 35 to be applied to 2018 estimated tax **(original return only)** (see page 4 of 511NR Packet for further information).. 36 | | 00 | |
| | Schedule 511NR-F provides you with the opportunity to make a financial gift from your refund to a variety of Oklahoma organizations. Please place the line number of the organization from Schedule 511NR-F in the box below. If you give to more than one organization, put a '99' in the box. Provide Schedule 511NR-F. | | |
| 37 | Donations from your refund (total from Schedule 511NR-F)................. 37 | | 00 | |
| 38 | Total deductions from refund (add lines 36 and 37).............................. | 38 | 00 |
| 39 | Amount to be **refunded** (line 35 minus line 38)............................... | 39 | 00 |

| **Direct Deposit Note:** | Is this refund going to or through an account that is located outside of the United States? | ☐ Yes ☐ No |
|---|---|---|
| Verify your account and routing numbers are correct. If your direct deposit fails to process or you do not choose direct deposit, you will receive a debit card. See the 511NR Packet for direct deposit and debit card information. | **Deposit my refund in my:** ☐ Checking Account ☐ Savings Account Routing Number: Account Number: | |

| 40 | If line 26 is more than line 34, subtract line 34 from line 26. This is your **tax due**................. | 40 | 0.|00 |
|---|---|---|---|
| 41 | Donation: Support the Oklahoma General Revenue Fund **(original return only)**...... | 41 | 00 |
| 42 | Underpayment of estimated tax interest (annualized installment method ☐ )........ | 42 | 00 |
| 43 | **For delinquent payment** add penalty of 5%.......................... $ | | |
| | plus interest of 1.25% per month.................................. $ | 43 | 00 |
| 44 | **Total** tax, donation, penalty and interest (add lines 40-43)........................... | 44 | 0.|00 |

Under penalty of perjury, I declare the information contained in this document, and all attachments and schedules, is true and correct to the best of my knowledge and belief.

Place an 'X' in this box if the Oklahoma Tax Commission may discuss this return with your tax preparer. ☒

| Taxpayer's signature | Date | Spouse's signature | Date | Paid Preparer's signature | Date |
|---|---|---|---|---|---|
| Taxpayer's occupation MANAGER | | Spouse's occupation | | Paid Preparer's address and phone number (580) 225-8877 P K & COMPANY PLLC 1000 N. MAIN, P.O. BOX 1728 ELK CITY, OK 73648 | |
| Daytime Phone Number (optional) | | | **A COPY OF FEDERAL RETURN MUST BE PROVIDED.** | Paid Preparer's PTIN P01254733 | |

***Please remit to: Oklahoma Tax Commission, P.O. Box 26800, Oklahoma City, OK 73126-0800***  OKIA0912L 11/14/17

PAPP 0620



**2017 Form 511NR - Nonresident/Part-Year Income Tax Return - Page 3**
**NOTE: Provide this page with your return.**

Name(s) shown on Form 511NR: STEVE GALMOR

Your Social Security Number: ▮▮▮▮▮▮

## SCHEDULE 511NR-1 — Income Allocation for Nonresidents and Part-Year Residents

Lines 1-19: In the Federal column, enter the amounts from your Federal tax return. See the instructions to figure the amounts to report in the Oklahoma column.

| | | FEDERAL AMOUNT | | OKLAHOMA AMOUNT |
|---|---|---|---|---|
| 1 | Wages, salaries, tips, etc. | 111,840.00 | 1 | 00 |
| 2 | Taxable interest income | 12.00 | 2 | 4.00 |
| 3 | Dividend income | 00 | 3 | 00 |
| 4 | Taxable refunds (state income tax) | 00 | 4 | 00 |
| 5 | Alimony received | 00 | 5 | 00 |
| 6 | Business income or (loss) (Federal Schedule C) | 6,839.00 | 6 | 7,839.00 |
| 7 | Capital gains or losses (Federal Schedule D) | 115,506.00 | 7 | 115,506.00 |
| 8 | Other gains or losses (Federal Form 4797) | 15,000.00 | 8 | 00 |
| 9 | Taxable IRA distribution | 00 | 9 | 00 |
| 10 | Taxable pensions and annuities | 00 | 10 | 00 |
| 11 | Rental real estate, royalties, partnerships, etc. | 10.00 | 11 | −22.00 |
| 12 | Farm income or (loss) | −76,396.00 | 12 | −76,396.00 |
| 13 | Unemployment compensation | 00 | 13 | 00 |
| 14 | Taxable Social Security benefits (also enter on line 2 of Schedule 511NR-B) | 00 | 14 | 00 |
| 15 | Other income (identify: NET OPERATING LOSS CARRYOVER ) | −45,275.00 | 15 | −45,275.00 |
| 16 | Add lines 1 through 15 | 127,536.00 | 16 | 1,656.00 |
| 17 | Total Federal adjustments to income (identify: _____ ) | 00 | 17 | |
| 18 | **Oklahoma source income** (line 16 minus line 17) Enter here and on page 1, line 1 | | 18 | 1,656.00 |
| 19 | **Federal adjusted gross income** (line 16 minus line 17) Enter here and on page 1, line 2 | 127,536.00 | 19 | |

## SCHEDULE 511NR-A — Oklahoma Additions

See instructions for details on qualifications and required documents.

| | | FEDERAL AMOUNT | | OKLAHOMA AMOUNT |
|---|---|---|---|---|
| 1 | State and municipal bond interest | 00 | 1 | 00 |
| 2 | Lump sum distributions (not included in your Federal AGI) | 00 | 2 | 00 |
| 3 | Federal net operating loss | 45,275.00 | 3 | 45,275.00 |
| 4 | Recapture depletion claimed on a lease bonus or add back of excess Federal depletion | 00 | 4 | 00 |
| 5 | Recapture of contributions to Oklahoma 529 College Savings Plan and OklahomaDream 529 Account(s) | 00 | 5 | 00 |
| 6 | Miscellaneous: Other additions...... SEE STATEMENT 1 (enter number in box for the type of addition [ 5 ]) | 4,640.00 | 6 | 4,640.00 |
| 7 | **Total additions** (add lines 1-6, enter total here and on line 3 of Form 511NR) | 49,915.00 | 7 | 49,915.00 |

OKIA0935L   11/14/17



**2017 Form 511NR - Nonresident/Part-Year Income Tax Return - Page 4**
NOTE: Provide this page *ONLY* if you have an amount shown on a schedule.

| Name(s) shown on Form 511NR: | STEVE GALMOR | Your Social Security Number: |
|---|---|---|

## SCHEDULE 511NR-B — Oklahoma Subtractions

See instructions for details on qualifications and required documents.

| | | FEDERAL AMOUNT | | OKLAHOMA AMOUNT | |
|---|---|---|---|---|---|
| 1 | Interest on U.S. government obligations | 00 | 1 | | 00 |
| 2 | Taxable Social Security (from Schedule 511NR-1, line 14) | 00 | 2 | | 00 |
| 3 | Federal civil service retirement in lieu of social security | 00 | 3 | | 00 |
| | -Retirement Claim Number: TAXPAYER NUMBER / SPOUSE NUMBER | | | | |
| 4 | Military Retirement (see instructions for limitation) | 00 | 4 | | 00 |
| 5 | Oklahoma government or Federal civil service retirement | 00 | 5 | | 00 |
| 6 | Other retirement income | 00 | 6 | | 00 |
| 7 | U.S. Railroad Retirement Board Benefits | 00 | 7 | | 00 |
| 8 | Additional depletion | 00 | 8 | | 00 |
| 9 | Oklahoma net operating loss (Loss Year[s]) 2016 | 45,275. 00 | 9 | 45,275. | 00 |
| 10 | Exempt tribal income | 00 | 10 | | 00 |
| 11 | Gains from the sale of exempt government obligations | 00 | 11 | | 00 |
| 12 | Nonresident military wages (provide W-2) | 00 | 12 | | |
| 13 | Oklahoma Capital Gain Deduction (Provide Form 561NR) | 115,506. 00 | 13 | 115,506. | 00 |
| 14 | Income Tax Refund (Federal Form 1040, line 10) | 00 | 14 | | 00 |
| 15 | Miscellaneous: Other subtractions (enter number in box for the type of deduction) | 00 | 15 | | 00 |
| 16 | **Total subtractions** (add lines 1-15, enter total here and on line 5 of Form 511NR) | 160,781. 00 | 16 | 160,781. | 00 |

## SCHEDULE 511NR-C — Oklahoma Adjustments

See instructions for details on qualifications and required documents.

| | | | |
|---|---|---|---|
| 1 | Military pay exclusion — Active Duty, Reserve and National Guard (not retirement) | 1 | 00 |
| 2 | Qualifying disability deduction (residents and part-year residents only) | 2 | 00 |
| 3 | Qualified adoption expense | 3 | 00 |
| 4 | Contributions to Oklahoma 529 College Savings Plan and OklahomaDream 529 Account(s) | 4 | 00 |
| 5 | Deductions for providing foster care | 5 | 00 |
| 6 | Miscellaneous: Other adj (enter number in box for the type of deduction) | 6 | 00 |
| 7 | **Total Adjustments** (add lines 1-6, enter total here and on line 9 of Form 511NR) | 7 | 00 |

OKIA0935L  11/14/17



**State of Oklahoma**
# OKLAHOMA CAPITAL GAIN DEDUCTION
## FOR PART-YEAR AND NONRESIDENTS FILING FORM 511NR

(Qualifying Assets Held for the Applicable 2 or 5 Year Period)

FORM **561NR** 2017

| Name(s) as Shown on Return | Social Security Number |
|---|---|
| STEVE GALMOR | ████████ |

**1** List qualifying Oklahoma capital gains and losses, not included on lines 2 through 5 below.

| A1 Description of Property / A2 Oklahoma Location/Address or Federal ID Number | B Date Acquired (mm/dd/yy) (See instructions) | C Date Sold or Disposed (mm/dd/yy) | D Proceeds (Sales Price) | E Cost or Other Basis minus Adjustments to Gain or Loss | F Federal Amount Gain or (Loss) | G Oklahoma Amount Gain or (Loss) |
|---|---|---|---|---|---|---|
| A1) | | | | | | |
| A2) | | | | | | |
| A1) | | | | | | |
| A2) | | | | | | |
| A1) | | | | | | |
| A2) | | | | | | |
| A1) | | | | | | |
| A2) | | | | | | |
| A1) | | | | | | |
| A2) | | | | | | |
| A1) | | | | | | |
| A2) | | | | | | |
| A1) | | | | | | |
| A2) | | | | | | |

| | | | F | G |
|---|---|---|---|---|
| **2** | Qualifying Oklahoma capital gain from installment sales reported on Federal Schedule D, line 11. **Provide a copy of Federal Form 6252**. | **2** | | |
| **3** | Qualifying Oklahoma net capital gain from sale of business property reported on Federal Schedule D, line 11. **Provide a copy of Federal Form 4797 (If gain/loss is from a Federal K-1, complete the Worksheet on page 2 and provide a copy of the Federal Schedule K-1)** | **3** | 115,506. | 115,506. |
| **4** | Other qualifying Oklahoma net capital gain or (loss) reported on Federal Schedule D, line 11, not included on lines 2 and 3 above. **Provide a copy of the applicable Federal form(s)**. | **4** | | |
| **5** | Qualifying Oklahoma net capital gain or (loss) from partnerships, S corporations, estates or trusts reported on Federal Schedule D, line 12. **(Complete the worksheet on page 2 and provide a copy of the Federal Schedule K-1)**. | **5** | | |
| **6** | Add amounts in Columns F and G on line 1 and lines 2 through 5. | **6** | 115,506. | 115,506. |
| **7** | Qualifying Oklahoma capital loss carryover reported on Federal Schedule D, line 14 (See instructions). | **7** | | |
| **8** | Qualifying Oklahoma net capital gain. Subtract line 7 from line 6. (If zero or less, enter '0'). | **8** | 115,506. | 115,506. |
| **9** | Net capital gain. (See instructions) (If zero or less, enter '0') | **9** | 115,506. | 115,506. |
| **10** | **Oklahoma Capital Gain Deduction.** Enter the smaller of lines 8 or 9 (Do not enter less than zero). | **10** | 115,506. | 115,506. |

**Provide Federal Form 1040, Schedule D and Form(s) 8949**

OKIA1701L 09/03/17

| 2017 | OKLAHOMA STATEMENTS | PAGE 1 |
|------|---------------------|--------|

**STEVE GALMOR**

**STATEMENT 1**
**FORM 511NR, SCHEDULE 511NR-A, LINE 7**
**OTHER ADDITIONS**

|  | FEDERAL | OKLAHOMA |
|---|---|---|
| FEDERAL DEPLETION IN EXCESS OF OKLAHOMA DEPLETION............. | 4,640. | 4,640. |
| TOTAL | $ 4,640. | $ 4,640. |

12/31/17

# 2017 OKLAHOMA OIL AND GAS INCOME (LOSS) REPORT

PAGE 1

## STEVE GALMOR

| PROP NUMBER | PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS INCOME | PRODUCTION TAX | IDC | OPERATING EXPENSES | AMORTIZATIO DEPRECIATION | SECTION 179 | ALLOCATED OVERHEAD | DRY HOLE EXPENSE | OTHER EXPENSES | NET INCOME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | SCOUT ENERGY | PRIMARY GAS | 94,915 | | | 15,148 | | | | | | 79,767 |
| | TOTALS: SCH C - X | | 94,915 | 0 | 0 | 15,148 | 0 | 0 | 0 | 0 | 0 | 79,767 |
| 12 | FOURPOINT ENERGY | PRIMARY GAS | 47 | 3 | | | | | | | | 44 |
| | TOTALS: SCH E - OIL & GAS PRODUCTION | | 47 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 44 |
| | GRAND TOTALS | | 94,962 | 3 | 0 | 15,148 | 0 | 0 | 0 | 0 | 0 | 79,811 |

| 12/31/17 | 2017 OKLAHOMA OIL AND GAS ALLOWABLE DEPLETION REPORT | | | | | | | | | | | PAGE 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

STEVE GALMOR

| PROP NUMBER PROPERTY DESCRIPTION | PRODUCTION TYPE | GROSS % DEPLETION | TENTATIVE % DEPLETION | COST DEPLETION | GREATER OF % OR COST | DEPLETION CARRYOVER | BEFORE 65% LIMITATION | ALLOWABLE DEPLETION | CARRYOVER TO 2018 | DEPLETION ADJUSTMENT | EXCESS IDC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 SCOUT ENERGY | PRIMARY GAS | 20,881 | 20,881 | | 20,881 | 11,265 | 32,146 | 20,881 | | | |
| TOTALS: SCH C - X | | 20,881 | 20,881 | 0 | 20,881 | 11,265 | 32,146 | 20,881 | 0 | 0 | 0 |
| 12 FOURPOINT ENERGY | PRIMARY GAS | 10 | 10 | | 10 | 19 | 29 | 10 | | | |
| TOTALS: SCH E - OIL & GAS PRODUCTION | | 10 | 10 | 0 | 10 | 19 | 29 | 10 | 0 | 0 | 0 |
| GRAND TOTALS | | 20,891 | 20,891 | 0 | 20,891 | 11,284 | 32,175 | 20,891 | 0 | 0 | 0 |

Galmor's/G&G Steam Service, Inc.
Profit & Loss
All Transactions

| | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | Nov 13, 18 | TOTAL |
|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | |
| **Income** | | | | | | |
| Miscellaneous Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **4070 · Services** | | | | | | |
| 4001 · Materials Revenue | 11,435.89 | 0.00 | 8,285.56 | 371,107.51 | 661,482.37 | 1,052,311.33 |
| 4002 · Labor Revenue | 0.00 | 0.00 | 0.00 | 0.00 | 766,605.00 | 766,605.00 |
| 4004 · Equipment Revenue | 0.00 | 0.00 | 0.00 | 0.00 | 290,747.94 | 290,747.94 |
| 4005 · Truck Hauling Revenue | 0.00 | 0.00 | 0.00 | 0.00 | 5,350.00 | 5,350.00 |
| 4008 · Disposal Revenue | 0.00 | 0.00 | 0.00 | 0.00 | 9,893.75 | 9,893.75 |
| 4070 · Services - Other | 0.00 | 0.00 | 0.00 | 206,398.81 | 142,477.61 | 348,876.42 |
| **Total 4070 · Services** | 11,435.89 | 0.00 | 8,285.56 | 577,506.32 | 1,876,556.67 | 2,473,784.44 |
| **Total Income** | 11,435.89 | 0.00 | 8,285.56 | 577,506.32 | 1,876,556.67 | 2,473,784.44 |
| **Cost of Goods Sold** | | | | | | |
| **5001 · Materials Expense** | | | | | | |
| Job Expense-Materials | 0.00 | 0.00 | 0.00 | 3,163.71 | 0.00 | 3,163.71 |
| Materials For Resale | 0.00 | 11,539.47 | 8,411.67 | 2,706.12 | 15,152.47 | 37,809.73 |
| Rock | 0.00 | 0.00 | 0.00 | 0.00 | 1,853.00 | 1,853.00 |
| Welding Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 113.54 | 113.54 |
| 5001 · Materials Expense - Other | 0.00 | 0.00 | 2,074.32 | 44,735.82 | 108,510.08 | 155,320.22 |
| **Total 5001 · Materials Expense** | 0.00 | 11,539.47 | 10,485.99 | 50,605.65 | 125,629.16 | 198,260.27 |
| **5002 · Labor** | | | | | | |
| **5002.0 · Wages** | | | | | | |
| Field Overtime | 0.00 | 0.00 | 0.00 | 0.00 | 276,300.13 | 276,300.13 |
| Field Wages | 0.00 | 0.00 | 0.00 | 0.00 | 436,316.53 | 436,316.53 |
| **Total 5002.0 · Wages** | 0.00 | 0.00 | 0.00 | 0.00 | 712,616.66 | 712,616.66 |
| **Total 5002 · Labor** | 0.00 | 0.00 | 0.00 | 0.00 | 712,616.66 | 712,616.66 |
| **5003 · Subcontractor Expense** | | | | | | |
| Subcontractor Services | 0.00 | 0.00 | 0.00 | 78,918.00 | 21,264.37 | 100,182.37 |
| **Total 5003 · Subcontractor Expense** | 0.00 | 0.00 | 0.00 | 78,918.00 | 21,264.37 | 100,182.37 |
| **5004 · Equip Rental For Job** | | | | | | |
| SGM Leasing, LLC | 0.00 | 0.00 | 0.00 | 0.00 | 186,249.47 | 186,249.47 |
| 6170 · Equipment Rental | 0.00 | 0.00 | 0.00 | 70,361.97 | 30,520.85 | 100,882.82 |
| 5004 · Equip Rental For Job - Other | 0.00 | 0.00 | 0.00 | 0.00 | 4,830.95 | 4,830.95 |
| **Total 5004 · Equip Rental For Job** | 0.00 | 0.00 | 0.00 | 70,361.97 | 221,601.27 | 291,963.24 |
| **5006 · Royalty Expense** | 0.00 | 77,846.63 | 173,452.38 | 27,721.47 | 33,219.55 | 312,240.03 |
| **Total COGS** | 0.00 | 89,386.10 | 183,938.37 | 227,607.09 | 1,114,331.01 | 1,615,262.57 |
| **Gross Profit** | 11,435.89 | -89,386.10 | -175,652.81 | 349,899.23 | 762,225.66 | 858,521.87 |
| **Expense** | | | | | | |
| Interest/Finance/Fee Expense | 0.00 | 0.00 | 0.00 | 0.00 | 5,962.59 | 5,962.59 |
| **6100 · Indirect Job Costs** | | | | | | |
| Equipment Repairs | 0.00 | 0.00 | 0.00 | 886.30 | 14,664.05 | 15,550.35 |
| Freight & Shipping | 0.00 | 0.00 | 0.00 | 0.00 | 68.18 | 68.18 |
| Lease Expense | 0.00 | 0.00 | 0.00 | 0.00 | 253.75 | 253.75 |
| Safety Program | 0.00 | 0.00 | 150.00 | 6,367.84 | 16,349.12 | 22,866.96 |
| **Supplies & Tools** | | | | | | |
| Shop Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 3,067.74 | 3,067.74 |
| Tools & Small Equipment | 0.00 | 0.00 | 0.00 | 608.59 | 2,978.10 | 3,586.69 |
| Supplies & Tools - Other | 0.00 | 0.00 | 0.00 | 2,117.00 | 1,373.16 | 3,490.16 |
| **Total Supplies & Tools** | 0.00 | 0.00 | 0.00 | 2,725.59 | 7,419.00 | 10,144.59 |
| **Truck Expense** | | | | | | |
| Fuel | 0.00 | 0.00 | 0.00 | 166,541.37 | 142,473.14 | 309,014.51 |
| Repairs | 0.00 | 0.00 | 0.00 | 6,564.60 | 7,919.86 | 14,484.46 |
| Tags/Fees/License | 0.00 | 0.00 | 2,331.25 | 0.00 | 7,677.09 | 10,008.34 |
| Trucking/Hauling Expense | 0.00 | 0.00 | 0.00 | 0.00 | 148.75 | 148.75 |
| Truck Expense - Other | 0.00 | 0.00 | 0.00 | 0.00 | 3,105.36 | 3,105.36 |
| **Total Truck Expense** | 0.00 | 0.00 | 2,331.25 | 173,105.97 | 161,324.20 | 336,761.42 |
| Uniforms | 0.00 | 0.00 | 0.00 | 660.24 | 6,548.32 | 7,208.56 |
| **6290 · Rent** | | | | | | |
| Building Rent | 0.00 | 0.00 | 0.00 | 2,500.00 | 10,000.00 | 12,500.00 |
| Hanger Rent | 0.00 | 0.00 | 0.00 | 0.00 | 1,250.00 | 1,250.00 |

**EXHIBIT**

10

DEPONENT NAME:
Galmor

PA_GALMOR0627

3 | 24 | 21

Galmor's/G&G Steam Service, Inc.
Profit & Loss
All Transactions

| | | | | | |
|---|---|---|---|---|---|
| Total 6290 · Rent | 0.00 | 0.00 | 0.00 | 2,500.00 | 11,250.00 | 13,750.00 |
| 6330 · Equipment Repairs & Maintenance | 0.00 | 0.00 | 57,507.98 | 29,997.24 | 58,683.85 | 146,189.07 |
| 6100 · Indirect Job Costs - Other | 0.00 | 0.00 | 0.00 | 73.69 | 1,048.59 | 1,122.28 |
| Total 6100 · Indirect Job Costs | 0.00 | 0.00 | 59,989.23 | 216,316.87 | 277,609.06 | 553,915.16 |
| 6200 · Administrative Expense | | | | | | |
| Advertising and Promotion | 0.00 | 0.00 | 0.00 | 4,000.00 | 644.36 | 4,644.36 |
| Donation | 0.00 | 0.00 | 0.00 | 200.00 | 300.00 | 500.00 |
| Employee Benefits | | | | | | |
| BlueCross BlueShield Expense | 0.00 | 0.00 | 0.00 | 3,446.70 | 42,774.40 | 46,221.10 |
| Dental Select Dental Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 5,682.80 | 5,682.80 |
| Dental Select Vision Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 874.05 | 874.05 |
| MetLife Term Life Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 2,458.15 | 2,458.15 |
| Employee Benefits - Other | 0.00 | 0.00 | 0.00 | 27,573.04 | 2,710.80 | 30,283.84 |
| Total Employee Benefits | 0.00 | 0.00 | 0.00 | 31,019.74 | 54,500.20 | 85,519.94 |
| Late Fees | 0.00 | 0.00 | 0.00 | 1,155.70 | 9,933.92 | 11,089.62 |
| Office Expenses | | | | | | |
| Office Equipment Rental | 0.00 | 0.00 | 0.00 | 0.00 | 2,335.06 | 2,335.06 |
| Office Supplies | 0.00 | 0.00 | 0.00 | 211.27 | 5,176.06 | 5,387.33 |
| Office Expenses - Other | 0.00 | 0.00 | 0.00 | 7,409.12 | 13,281.57 | 20,690.69 |
| Total Office Expenses | 0.00 | 0.00 | 0.00 | 7,620.39 | 20,792.69 | 28,413.08 |
| Payroll | | | | | | |
| Holiday | 0.00 | 0.00 | 0.00 | 0.00 | 10,608.00 | 10,608.00 |
| Office | 0.00 | 0.00 | 0.00 | 0.00 | 78,137.70 | 78,137.70 |
| Office Overtime | 0.00 | 0.00 | 0.00 | 0.00 | 4,507.95 | 4,507.95 |
| Salary | 0.00 | 0.00 | 0.00 | 0.00 | 339,827.74 | 339,827.74 |
| Vacation | 0.00 | 0.00 | 0.00 | 0.00 | 9,052.00 | 9,052.00 |
| Payroll - Other | 0.00 | 0.00 | 0.00 | 0.00 | 402.39 | 402.39 |
| Total Payroll | 0.00 | 0.00 | 0.00 | 0.00 | 442,535.78 | 442,535.78 |
| Postage | 0.00 | 0.00 | 0.00 | 0.00 | 473.79 | 473.79 |
| 6160 · Dues and Subscriptions | 0.00 | 0.00 | 0.00 | 500.49 | 4,774.17 | 5,274.66 |
| 6180 · Insurance Expense | | | | | | |
| Auto & Business Liability | 0.00 | 0.00 | 0.00 | 0.00 | 59,857.08 | 59,857.08 |
| Workers Comp | 0.00 | 0.00 | 0.00 | 27,448.00 | -27,306.00 | 142.00 |
| 6180 · Insurance Expense - Other | 0.00 | 0.00 | 0.00 | 1,888.96 | 90,072.79 | 91,961.75 |
| Total 6180 · Insurance Expense | 0.00 | 0.00 | 0.00 | 29,336.96 | 122,623.87 | 151,960.83 |
| 6230 · Licenses & Permits | 0.00 | 0.00 | 0.00 | 0.00 | 119.00 | 119.00 |
| 6270 · Professional Fees | | | | | | |
| Contract Labor | 0.00 | 0.00 | 0.00 | 0.00 | 36,055.86 | 36,055.86 |
| 6280 · Legal Fees | 0.00 | 0.00 | 0.00 | 6,941.98 | 92,074.09 | 99,016.07 |
| 6270 · Professional Fees - Other | 0.00 | 0.00 | 11,025.00 | 18,476.51 | 15,719.15 | 45,220.66 |
| Total 6270 · Professional Fees | 0.00 | 0.00 | 11,025.00 | 25,418.49 | 143,849.10 | 180,292.59 |
| 6350 · Travel & Entertainment | | | | | | |
| 6360 · Entertainment | 0.00 | 0.00 | 0.00 | 412.97 | 280.39 | 693.36 |
| 6370 · Meals | 0.00 | 0.00 | 44.79 | 0.00 | 633.51 | 678.30 |
| 6350 · Travel & Entertainment - Other | 0.00 | 0.00 | 0.00 | 0.00 | 353.00 | 353.00 |
| Total 6350 · Travel & Entertainment | 0.00 | 0.00 | 44.79 | 412.97 | 1,266.90 | 1,724.66 |
| 6390 · Utilities | | | | | | |
| Cable | 0.00 | 0.00 | 0.00 | 0.00 | 1,448.06 | 1,448.06 |
| Internet Service | 0.00 | 0.00 | 0.00 | 0.00 | 5,906.38 | 5,906.38 |
| Propane | 0.00 | 0.00 | 0.00 | 0.00 | 10,799.99 | 10,799.99 |
| Trash Pickup | 0.00 | 0.00 | 0.00 | 140.00 | 6,500.00 | 6,640.00 |
| 6340 · Telephone Expense | 0.00 | 0.00 | 1,632.50 | 4,503.51 | 16,371.30 | 22,507.31 |
| 6400 · Gas & Electric | 0.00 | 0.00 | 0.00 | 0.00 | 17,064.99 | 17,064.99 |
| 6410 · Water | 0.00 | 0.00 | 0.00 | 0.00 | 2,734.61 | 2,734.61 |
| 6390 · Utilities - Other | 0.00 | 0.00 | 0.00 | 0.00 | 443.20 | 443.20 |
| Total 6390 · Utilities | 0.00 | 0.00 | 1,632.50 | 4,643.51 | 61,268.53 | 67,544.54 |
| 6750 · Janitorial Expense | 0.00 | 0.00 | 0.00 | 4,189.88 | 4,218.97 | 8,408.85 |
| 6820 · Taxes | | | | | | |
| Franchise | 0.00 | 0.00 | 0.00 | 0.00 | 350.00 | 350.00 |
| Fuel Tax | 0.00 | 0.00 | 0.00 | 0.00 | 437.50 | 437.50 |
| Unemployment | 0.00 | 0.00 | 0.00 | 0.00 | 7,221.27 | 7,221.27 |

Galmor's/G&G Steam Service, Inc.
Profit & Loss
All Transactions

| | | | | | | |
|---|---|---|---|---|---|---|
| 6850 · Property | 0.00 | 24,671.76 | 93,708.86 | 55,147.59 | -154,028.29 | 19,499.92 |
| 6860 · State | 0.00 | 0.00 | 0.00 | 0.00 | 22,095.16 | 22,095.16 |
| 6820 · Taxes - Other | 0.00 | 0.00 | 0.00 | 0.00 | 23,722.06 | 23,722.06 |
| Total 6820 · Taxes | 0.00 | 24,671.76 | 93,708.86 | 55,147.59 | -100,202.30 | 73,325.91 |
| 6200 · Administrative Expense - Other | 0.00 | 0.00 | 0.00 | 1,362.55 | 379.23 | 1,741.78 |
| Total 6200 · Administrative Expense | 0.00 | 24,671.76 | 106,411.15 | 165,008.27 | 767,478.21 | 1,063,569.39 |
| 66000 · Payroll Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 194,861.51 | 194,861.51 |
| Total Expense | 0.00 | 24,671.76 | 166,400.38 | 381,325.14 | 1,245,911.37 | 1,818,308.65 |
| Net Ordinary Income | 11,435.89 | -114,057.86 | -342,053.19 | -31,425.91 | -483,685.71 | -959,786.78 |
| Other Income/Expense | | | | | | |
| Other Income | | | | | | |
| Sale Of Fixed Assets | 0.00 | 0.00 | 0.00 | 0.00 | 68,624.50 | 68,624.50 |
| Total Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 68,624.50 | 68,624.50 |
| Other Expense | | | | | | |
| Int/Finance/Fee Expense | 0.00 | 0.00 | 0.00 | 240,035.61 | 19,920.50 | 259,956.11 |
| 80000 · Ask My Accountant | 0.00 | 0.00 | 0.00 | 30,221.42 | -56,820.23 | -26,598.81 |
| Total Other Expense | 0.00 | 0.00 | 0.00 | 270,257.03 | -36,899.73 | 233,357.30 |
| Net Other Income | 0.00 | 0.00 | 0.00 | -270,257.03 | 105,524.23 | -164,732.80 |
| Net Income | 11,435.89 | -114,057.86 | -342,053.19 | -301,682.94 | -378,161.48 | -1,124,519.58 |

Galmor's/G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | Nov 13, 18 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| **Current Assets** | | | | | |
| **Checking/Savings** | | | | | |
| AimBank- #14818 | 0.00 | 0.00 | 0.00 | -51,294.05 | 130.51 |
| D-I-P -18-20210 | 0.00 | 0.00 | 0.00 | 0.00 | 11,262.19 |
| GPNB-Galmor's #443762 | 0.00 | 0.00 | 0.00 | 0.00 | 653.36 |
| GPNB-Galmor's/G&G Steam Service | 0.00 | 0.00 | 0.00 | -10,994.78 | 9,293.51 |
| MMDDA G&G Steam | 0.00 | 0.00 | 0.00 | 0.00 | -3,735.24 |
| Reserve - GPNB | 0.00 | 0.00 | 0.00 | 917.41 | 13,913.25 |
| **Total Checking/Savings** | 0.00 | 0.00 | 0.00 | -61,371.42 | 31,517.58 |
| **Accounts Receivable** | | | | | |
| 1200 · Accounts Receivable | 11,435.89 | 11,435.89 | 19,721.45 | 414,821.61 | 361,125.16 |
| **Total Accounts Receivable** | 11,435.89 | 11,435.89 | 19,721.45 | 414,821.61 | 361,125.16 |
| **Other Current Assets** | | | | | |
| 12000 · *Undeposited Funds | 0.00 | 0.00 | 0.00 | 181,488.75 | 0.00 |
| 1210 · Inventory Asset | 0.00 | 0.00 | 0.00 | 0.00 | 7,305.87 |
| **Total Other Current Assets** | 0.00 | 0.00 | 0.00 | 181,488.75 | 7,305.87 |
| **Total Current Assets** | 11,435.89 | 11,435.89 | 19,721.45 | 534,938.94 | 399,948.61 |
| **Fixed Assets** | | | | | |
| **Buildings** | 0.00 | 0.00 | 0.00 | 0.00 | 24,747.15 |
| **Equipment** | 0.00 | 0.00 | 0.00 | 0.00 | -4.34 |
| **Office Equipment** | 0.00 | 0.00 | 0.00 | 0.00 | 4,571.34 |
| **Transportaion Equipment** | | | | | |
| Tracking Systems | 0.00 | 0.00 | 6,801.72 | 24,726.04 | 26,922.08 |
| Transportaion Equipment - Other | 0.00 | 0.00 | 0.00 | 0.00 | 2,768.97 |
| **Total Transportaion Equipment** | 0.00 | 0.00 | 6,801.72 | 24,726.04 | 29,691.05 |
| **Total Fixed Assets** | 0.00 | 0.00 | 6,801.72 | 24,726.04 | 59,005.20 |
| **TOTAL ASSETS** | 11,435.89 | 11,435.89 | 26,523.17 | 559,664.98 | 458,953.81 |
| **LIABILITIES & EQUITY** | | | | | |
| **Liabilities** | | | | | |
| **Current Liabilities** | | | | | |
| **Accounts Payable** | | | | | |
| 2000 · Accounts Payable | 0.00 | 114,057.86 | 471,198.33 | 1,303,865.37 | 1,185,558.54 |
| **Total Accounts Payable** | 0.00 | 114,057.86 | 471,198.33 | 1,303,865.37 | 1,185,558.54 |
| **Credit Cards** | | | | | |
| **American Express** | | | | | |
| AE Steve Galmor-3007 | 0.00 | 0.00 | 0.00 | 0.00 | 125.44 |
| **Total American Express** | 0.00 | 0.00 | 0.00 | 0.00 | 125.44 |
| **Bank Of America** | | | | | |
| Clifford Seftone-4965 | 0.00 | 0.00 | 0.00 | 0.00 | 1,758.37 |
| Deena Carter-2826 | 0.00 | 0.00 | 0.00 | 935.00 | 1,699.46 |
| Eric Copeland-8085 | 0.00 | 0.00 | 0.00 | 0.00 | 1,146.74 |
| Jack Hernandez-7667 | 0.00 | 0.00 | 0.00 | 0.00 | 2,894.25 |
| Jorge Bustos-1615 | 0.00 | 0.00 | 0.00 | 1,206.72 | 2,204.08 |
| Justin Galmor-7580 | 0.00 | 0.00 | 0.00 | 0.00 | 2,858.60 |
| Kallen Nichols-1110 | 0.00 | 0.00 | 0.00 | 15.99 | 1,128.37 |
| Kimberlie Bales-4387 | 0.00 | 0.00 | 0.00 | 0.00 | 1,347.85 |
| Michael Hobbs-4046 | 0.00 | 0.00 | 0.00 | 0.00 | 3,261.25 |
| Scott Brehm-0044 | 0.00 | 0.00 | 0.00 | 0.00 | 2,065.95 |
| Shane Gray-5381 | 0.00 | 0.00 | 0.00 | 0.00 | 2,725.51 |
| Steve Galmor-5198 | 0.00 | 0.00 | 0.00 | 0.00 | 21,179.07 |
| Steve Hogg-1268 | 0.00 | 0.00 | 0.00 | 0.00 | 1,032.75 |
| William Anderson-7413 | 0.00 | 0.00 | 0.00 | 0.00 | 1,726.45 |
| Bank Of America - Other | 0.00 | 0.00 | 0.00 | 0.00 | 196.61 |

Galmor's/G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | | | | | |
|---|---|---|---|---|---|
| Total Bank Of America | 0.00 | 0.00 | 0.00 | 2,157.71 | 47,225.31 |
| Chase | | | | | |
| Chase Freedom | 0.00 | 0.00 | 0.00 | 0.00 | 1,222.28 |
| Chase Ink | 0.00 | 0.00 | 0.00 | 0.00 | 22,696.73 |
| Total Chase | 0.00 | 0.00 | 0.00 | 0.00 | 23,919.01 |
| John Deere Financial-Atwoods | 0.00 | 0.00 | 0.00 | 0.00 | 17.71 |
| Sam's Club Credit Card | 0.00 | 0.00 | 0.00 | 0.00 | -129.41 |
| Wells Fargo Credit Card | 0.00 | 0.00 | 0.00 | 0.00 | -3,324.00 |
| Total Credit Cards | 0.00 | 0.00 | 0.00 | 2,157.71 | 67,834.06 |
| Other Current Liabilities | | | | | |
| Payroll Tax Payable | | | | | |
| Federal Unemployment Payable | 0.00 | 0.00 | 0.00 | 0.00 | 1,728.49 |
| Garnishment Payable | 0.00 | 0.00 | 0.00 | 0.00 | -74.24 |
| Oklahoma Unemployment Payable | 0.00 | 0.00 | 0.00 | 0.00 | 22,104.54 |
| Texas Unemployment Payable | 0.00 | 0.00 | 0.00 | 0.00 | 2,261.81 |
| 2100 · Payroll Liabilities Payable | | | | | |
| BlueCross BlueShield Liability | 0.00 | 0.00 | 0.00 | 0.00 | 16,703.19 |
| Dental Select Payable | 0.00 | 0.00 | 0.00 | 0.00 | 2,632.42 |
| 2100 · Payroll Liabilities Payable - Other | 0.00 | 0.00 | 0.00 | 0.00 | 345,552.91 |
| Total 2100 · Payroll Liabilities Payable | 0.00 | 0.00 | 0.00 | 0.00 | 364,888.52 |
| Total Payroll Tax Payable | 0.00 | 0.00 | 0.00 | 0.00 | 390,909.12 |
| 2200 · Sales Tax Payable | 0.00 | 0.00 | 0.00 | 0.00 | 19,928.01 |
| Total Other Current Liabilities | 0.00 | 0.00 | 0.00 | 0.00 | 410,837.13 |
| Total Current Liabilities | 0.00 | 114,057.86 | 471,198.33 | 1,306,023.08 | 1,664,229.73 |
| Long Term Liabilities | | | | | |
| Ally | | | | | |
| #611917899173 #429 Div-09 | 0.00 | 0.00 | 0.00 | 0.00 | -626.73 |
| Ally - Other | 0.00 | 0.00 | 0.00 | 0.00 | -685.39 |
| Total Ally | 0.00 | 0.00 | 0.00 | 0.00 | -1,312.12 |
| Great Plains National Bank | | | | | |
| Panel Road-118672 | 0.00 | 0.00 | 0.00 | 0.00 | 19,288.76 |
| Great Plains National Bank - Other | 0.00 | 0.00 | 0.00 | 0.00 | -17,001.17 |
| Total Great Plains National Bank | 0.00 | 0.00 | 0.00 | 0.00 | 2,287.59 |
| Interbank | | | | | |
| Loan #20091664-Enid Div 12-004 | 0.00 | 0.00 | 0.00 | 0.00 | -17,524.17 |
| Total Interbank | 0.00 | 0.00 | 0.00 | 0.00 | -17,524.17 |
| Lease Consultants Corporation | 0.00 | 0.00 | 0.00 | 0.00 | 6,835.41 |
| Loan Payable to Steve Galmor | 0.00 | 0.00 | 0.00 | 0.00 | 92,332.02 |
| Wells Fargo | | | | | |
| #001-0288752-704 #468 Div 4 | 0.00 | 0.00 | 0.00 | 0.00 | 182,236.54 |
| Total Wells Fargo | 0.00 | 0.00 | 0.00 | 0.00 | 182,236.54 |
| Total Long Term Liabilities | 0.00 | 0.00 | 0.00 | 0.00 | 264,855.27 |
| Total Liabilities | 0.00 | 114,057.86 | 471,198.33 | 1,306,023.08 | 1,929,085.00 |
| Equity | | | | | |
| 3000 · Opening Balance Equity | 0.00 | 0.00 | 0.00 | 0.00 | -345,611.61 |
| 32000 · Retained Earnings | 0.00 | 11,435.89 | -102,621.97 | -444,675.16 | -746,358.10 |
| Net Income | 11,435.89 | -114,057.86 | -342,053.19 | -301,682.94 | -378,161.48 |
| Total Equity | 11,435.89 | -102,621.97 | -444,675.16 | -746,358.10 | -1,470,131.19 |
| TOTAL LIABILITIES & EQUITY | 11,435.89 | 11,435.89 | 26,523.17 | 559,664.98 | 458,953.81 |

2:34 PM
12/05/18
Accrual Basis

**Gaimor / G&G Steam Service, Inc.**
**Profit & Loss**
**All Transactions**

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | TOTAL |
|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | |
| **Income** | | | | | | |
| Miscellaneous Income | 21,446.42 | 346,260.01 | 5,363.99 | 372,615.00 | | 745,685.42 |
| Rent Income | 1,200.00 | 5,100.00 | | | | 6,300.00 |
| Sales Income | | | | 540.01 | | 540.01 |
| 4070 · Services | | | | | | |
| 4001 Materials Revenue | 4,744,069.07 | 7,682,336.07 | 10,246,151.32 | 5,241,577.15 | 2,770,937.93 | 30,685,071.54 |
| 4002 Labor Revenue | 13,465,258.73 | 12,769,516.17 | 1,686,912.64 | 167,366.40 | 444,561.65 | 28,533,615.59 |
| 4003 Subcontractor Revenue | 201,820.71 | 200,151.45 | 230,900.00 | | | 632,872.16 |
| 4004 Equipment Revenue | 4,868,686.36 | 3,022,008.17 | 722,809.58 | 62,991.20 | 199,422.73 | 8,875,918.04 |
| 4005 Truck Hauling Revenue | 2,249,672.18 | 1,724,866.47 | 378,015.22 | 22,521.61 | 143,454.90 | 4,518,530.38 |
| 4006 Per Diem Revenue | 5,760.00 | 3,960.00 | 1,440.00 | | | 11,160.00 |
| 4008 Disposal Revenue | | 5,794.00 | 2,490.00 | | | 8,284.00 |
| 4070 · Services - Other | 967.54 | 236,189.67 | 120,444.89 | 91,634.22 | 114,768.62 | 564,004.94 |
| Total 4070 · Services | 25,536,234.59 | 25,644,822.00 | 13,389,163.65 | 5,586,090.58 | 3,673,145.83 | 73,829,456.65 |
| 7010 · Interest Income | 5.68 | 1,422.26 | 97.13 | -457.27 | 10.61 | 1,078.41 |
| **Total Income** | 25,558,886.69 | 25,997,604.27 | 13,394,624.77 | 5,958,788.32 | 3,673,156.44 | 74,583,060.49 |
| **Cost of Goods Sold** | | | | | | |
| 5001 Materials Expense | | | | | | |
| Job expense-Materials | 1,325,784.75 | 1,518,473.37 | 1,005,948.68 | 24,128.85 | 17,698.95 | 3,892,034.60 |
| Materials For Resale | 252,125.70 | 37,656.44 | -145,402.51 | 602,543.84 | 706,578.87 | 1,453,502.34 |
| Materials for Resale - Montague | 5,175.00 | | | | | 5,175.00 |
| Materials for Resale - Shamrock | 3,863.87 | | | | | 3,863.87 |
| Rock | 319,591.62 | 146,823.36 | 77,549.00 | 3,150.04 | 1,523.36 | 548,638.28 |
| Welding Supplies | 672.50 | | | 35.73 | | 708.23 |
| 5001 Materials Expense - Other | 9,167.08 | -2,605.43 | 473,765.00 | -7,590.93 | 58,905.64 | 531,731.36 |
| Total 5001 Materials Expense | 1,916,380.52 | 1,700,347.74 | 1,411,860.17 | 622,268.43 | 784,796.82 | 6,435,653.68 |
| 5002 Labor | | | | | | |
| 5002.0 Wages | | | | | | |
| Driver Commissions | 528,742.86 | 445,452.19 | 85,969.33 | | | 1,060,164.38 |
| Field Overtime | 2,631,344.01 | 2,630,393.44 | 959,012.54 | 345,956.89 | 218,100.07 | 6,784,812.95 |
| Field Salary | 911,742.66 | 893,266.14 | 451,243.54 | 364,846.18 | 253,404.09 | 2,874,502.61 |
| Field Wages | 3,975,595.22 | 4,289,321.63 | 1,675,086.01 | 633,851.71 | 593,398.89 | 11,167,251.46 |
| Foreman | 44.36 | | | | | 44.36 |
| Total 5002.0 Wages | 8,047,469.11 | 8,258,433.40 | 3,171,311.42 | 1,344,654.78 | 1,064,907.05 | 21,886,775.76 |
| 5002.2 Per Diem | 855,545.50 | 592,274.00 | 98,475.00 | | | 1,546,294.50 |
| 5002.4 Truck Rental | 1,100.00 | | | 210.00 | | 1,310.00 |
| Total 5002 Labor | 8,904,114.61 | 8,850,707.40 | 3,269,786.42 | 1,344,864.78 | 1,064,907.05 | 23,434,380.26 |
| 5002.1 Labor Per Diem | | | -240.00 | | | -240.00 |
| 5003 Subcontractor Expense | | | | | | |
| Sub-Contractor Building Repairs | 47,843.56 | 26,196.97 | | | | 74,040.53 |
| Sub-Contractor Services | 1,675,670.53 | 1,754,366.84 | 441,270.72 | 440,933.82 | 290,700.36 | 4,602,942.37 |
| 5003 Subcontractor Expense - Other | | | 39,245.88 | | | 39,245.88 |
| Total 5003 Subcontractor Expense | 1,723,514.09 | 1,780,563.81 | 480,516.60 | 440,933.82 | 290,700.36 | 4,716,228.78 |
| 5004 Equip Rental for Job | | | | | | |
| SGM Leasing, LLC | 123,534.40 | 206,777.40 | 346,994.30 | 512,606.40 | 366,788.31 | 1,556,700.81 |
| 6170 - Equipment Rental | 17,855.50 | 6,982.42 | 2,913.00 | 20,691.38 | | 48,442.30 |
| 5004 Equip Rental for Job - Other | 604,435.00 | 849,445.67 | 794,987.39 | 343,762.95 | 265,744.64 | 2,858,375.74 |
| Total 5004 Equip Rental for Job | 745,824.90 | 1,063,205.49 | 1,144,894.69 | 877,060.73 | 632,532.95 | 4,463,518.85 |
| 5005 Equip Rental for Purchase | | 41.00 | | | | 41.00 |
| 5006 Royalty Expense | 247,795.20 | 271,508.37 | 1,569,750.80 | 155,101.25 | 86,727.39 | 2,330,883.01 |
| **Total COGS** | 13,537,629.41 | 13,666,373.81 | 7,876,568.68 | 3,440,229.11 | 2,859,664.57 | 41,380,465.58 |
| **Gross Profit** | 12,021,257.28 | 12,331,230.46 | 5,518,056.09 | 2,518,559.21 | 813,491.87 | 33,202,594.91 |
| **Expense** | | | | | | |
| 6100 Indirect Job Costs | | | | | | |
| Equipment Repairs - Montague | | 7,730.96 | | 909.30 | | 8,640.26 |
| Equipment Repairs - Shamrock | 1,259.32 | 280.27 | 6,104.77 | 13,964.83 | 8,364.42 | 29,973.61 |
| Freight & Shipping | 5,369.71 | 2,800.61 | 2,374.04 | 4,378.95 | 1,803.86 | 16,727.17 |
| Indirect Field Payroll | | | | | | |
| Shop Wages | 72,481.63 | 1,897.00 | | | | 74,378.63 |
| Shop Welder | 32,015.50 | 19,425.00 | 1,073.00 | | | 52,513.50 |
| Indirect Field Payroll - Other | | | | | | |
| Total Indirect Field Payroll | 104,497.13 | 21,322.00 | 1,073.00 | | | 126,892.13 |
| Lease Expense | | 56,343.71 | 61,210.37 | 87,196.81 | 24,139.13 | 228,890.02 |
| Safety Program | 140,028.89 | 118,388.02 | 40,752.91 | 28,653.57 | 25,739.64 | 353,563.03 |
| Supplies & Tools | | | | | | |
| Shop Supplies | 79,576.15 | 31,686.06 | 102,303.47 | 48,773.05 | 5,685.88 | 268,024.71 |
| Shop Supplies - Montague | 86.34 | | | | | 86.34 |
| Shop Supplies - Shamrock | 347.40 | | | | | 347.40 |
| Tools - Montague | 351.95 | | | | | 351.95 |
| Tools & Small Equipment | 40,173.56 | 50,216.07 | 47,154.55 | 20,980.73 | 636.25 | 159,161.16 |
| Supplies & Tools - Other | 20,561.12 | 1,701.17 | 1,153.02 | 4,954.96 | 4,034.96 | 32,405.23 |
| Total Supplies & Tools | 141,096.52 | 83,603.30 | 150,611.04 | 74,708.74 | 10,357.19 | 460,376.79 |
| Truck Expense | | | | | | |
| Accessories | 2,287.60 | | 6,055.36 | | | 8,342.96 |
| Fuel All | | | | | | |
| Fuel | 3,187,188.41 | 3,207,651.28 | 1,340,945.30 | 603,164.64 | 308,828.25 | 8,647,777.88 |
| Fuel - Okie Tex | 131.88 | | | | | 131.88 |
| Fuel All - Other | -1.65 | | | | 13,414.32 | 13,412.67 |
| Total Fuel All | 3,187,318.64 | 3,207,651.28 | 1,340,945.30 | 603,164.64 | 322,242.57 | 8,661,322.43 |
| GPS Equipment | 72,377.17 | 85,289.94 | 58,768.71 | 29,275.84 | 17,924.32 | 263,635.98 |
| Oil, Filters and Maintenance | 1,674.31 | 20.84 | 14,427.81 | 9,408.14 | | 25,531.10 |
| Repairs | 298,120.07 | 4,723.62 | 14,473.06 | 15,849.01 | 7,599.04 | 340,763.80 |



EXHIBIT
1 )

DEPONENT NAME: Gaimor   DATE: 3 /24/21

2:34 PM
12/05/18
Accrual Basis

**Galmors / G&G Steam Service, Inc.**
**Profit & Loss**
**All Transactions**

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | TOTAL |
|---|---|---|---|---|---|---|
| Repairs - Montague | 474.02 | | | | | 474.02 |
| Repairs - Shamrock | 6,762.76 | 592.00 | 23,286.61 | 4,233.86 | 2,050.88 | 36,925.91 |
| Tags/Fees/License | 36,988.53 | 18,537.93 | 47,478.80 | 11,068.99 | 3,936.75 | 118,011.89 |
| Tires | 77,230.58 | 3,207.07 | | 100.00 | | 80,537.65 |
| Tracking Systems / Radios | 16,771.88 | 9,510.10 | 583.00 | | | 26,864.98 |
| Truck Wash | 1,442.75 | | 17.00 | | | 1,459.75 |
| Trucking/Hauling Expense | 2,101.09 | 46.64 | | 1,300.00 | | 3,447.73 |
| Truck expense - Other | 13,584.89 | | | | 59.50 | 13,644.39 |
| Total Truck expense | 3,717,134.29 | 3,329,579.42 | 1,506,036.54 | 674,399.48 | 353,812.86 | 9,580,962.59 |
| Uniforms | | | | | | |
| Uniforms - Breckenridge | 183.82 | 2,069.24 | 3,769.09 | 938.44 | | 6,960.59 |
| Uniforms - Elk City | 71,712.98 | 86,049.44 | 11,262.43 | | | 169,024.85 |
| Uniforms - Montague | 2,017.27 | 2,222.10 | 1,648.18 | | | 5,887.55 |
| Uniforms - Shamrock | 9,318.39 | 19,937.45 | 18,234.66 | 30,503.30 | 10,508.31 | 88,502.11 |
| Uniforms - Other | 94,208.58 | 4,421.15 | 7,058.00 | 1,055.86 | | 106,743.59 |
| Total Uniforms | 177,441.04 | 114,699.38 | 41,972.36 | 32,497.60 | 10,508.31 | 377,118.69 |
| 6290 - Rent | | | | | | |
| Building Rent | 88,585.25 | 88,800.00 | 39,500.00 | 42,300.00 | 42,500.00 | 301,685.25 |
| Hanger Rent | 2,952.50 | 2,460.00 | 1,375.00 | 1,500.00 | 1,375.00 | 9,662.50 |
| Tower Rent | | 1,920.00 | 3,200.00 | 3,840.00 | 2,240.00 | 11,200.00 |
| Truck Lease | 578,216.32 | 471,907.32 | 98,855.40 | 3,832.50 | 9,937.50 | 1,162,749.04 |
| 6290 - Rent - Other | 128.37 | | -675.83 | 600.00 | 1,481.36 | 1,533.90 |
| Total 6290 - Rent | 669,882.44 | 565,087.32 | 142,254.57 | 52,072.50 | 57,533.86 | 1,486,830.69 |
| 6330 - Equipment Repairs - Maintenance | 1,005,936.91 | 1,475,871.39 | 1,025,456.01 | 497,483.71 | 117,849.86 | 4,183,599.78 |
| 6100 Indirect Job Costs - Other | 11,623.69 | | 2,304.43 | 16.34 | 125.00 | 14,069.46 |
| Total 6100 Indirect Job Costs | 6,034,269.84 | 5,776,706.38 | 2,980,161.04 | 1,466,281.83 | 610,234.13 | 16,867,653.22 |
| 6200 Administrative Expense | | | | | | |
| Advertising | 43,871.01 | 40,285.75 | 9,544.29 | 1,966.11 | 10,737.68 | 106,404.84 |
| Bad Debt Expense | 372.10 | 29,970.77 | 264,102.67 | 144,346.40 | 48,252.46 | 487,044.40 |
| Business Improvement | | | | | | |
| Profit Improvement | 64,576.72 | | | | | 64,576.72 |
| Business Improvement - Other | 33,660.56 | 39,059.00 | 26,077.40 | | | 98,796.96 |
| Total Business Improvement | 98,237.28 | 39,059.00 | 26,077.40 | | | 163,373.68 |
| Donation | 18,189.13 | 15,009.42 | 8,205.06 | 1,590.00 | 644.84 | 43,638.45 |
| Employee Benefits | | | | | | |
| 401 K Contribution | 98,778.02 | 90,660.28 | 46,066.19 | 22,615.02 | -692.50 | 257,426.91 |
| AFLAC | 952.82 | 304.02 | -96.46 | | | 1,160.38 |
| Ameritas Vsion | 1,133.32 | | | | | 1,133.32 |
| Blue Cross | 113,835.89 | | 107,160.84 | 172,074.52 | 40,847.83 | 433,919.08 |
| Cobra Help | -297.86 | | | -8,909.04 | 17,963.79 | 8,756.89 |
| Coventry | 3,491.83 | 53.79 | | | | 3,545.62 |
| Dental Insurance | 3,105.35 | 95.71 | -5,406.25 | | 1,258.54 | -946.65 |
| Dental Select Vision | | | | | -1,609.09 | -1,609.09 |
| Ft. Dearborn | 2,089.63 | 1,777.83 | -328.81 | | | 3,538.65 |
| Guarantee Life Insurance | 660.20 | 1,009.96 | 310.56 | 39.95 | | 2,020.67 |
| Health Insurance | 1,716.17 | 72.00 | 547.89 | 20,555.50 | 17,582.08 | 46,473.64 |
| Insurance - Cobra Coverage | | | | | | |
| Boyett, Diana | | -248.99 | -1,254.69 | | | -1,503.68 |
| Childs, Kevin | | 1,132.41 | -1,081.74 | | | 50.67 |
| Galmor, Brandon | | 258.16 | | | | 258.16 |
| Howell, Jerry | | -114.35 | 661.84 | | | 547.49 |
| Klick, Jeff | | 94.29 | -761.02 | | | -666.73 |
| Montgomery, Teri | | -3,612.34 | 4,419.25 | | | 806.91 |
| Stacher, Lori | | -443.72 | 1,062.04 | | | 618.32 |
| Wingo, James | | -109.80 | | | | -109.80 |
| Total Insurance - Cobra Coverage | | -3,044.34 | 3,045.68 | | | 1.34 |
| Life Insurance | | 8,618.80 | 10,760.02 | 15,261.21 | 7,259.05 | 39,909.16 |
| Medical Expense | 30,042.00 | 58,264.50 | 27,382.49 | 22,984.23 | 31,296.97 | 169,970.19 |
| Met Life TERM | 6,054.84 | 8,073.23 | 2,693.81 | 4,618.61 | 4,478.79 | 26,819.28 |
| MetLife | 14,947.03 | 15,235.07 | 8,240.76 | 7,484.77 | 1,720.26 | 47,627.89 |
| Occidental Life Insurance | 4,267.36 | 4,081.02 | 2,980.25 | 2,386.23 | 1,416.48 | 15,131.34 |
| Unified Life Insurance | 392.40 | 1,410.00 | 586.81 | | | 2,389.21 |
| United Health Care | | | | | | |
| Insurance Service Fees | | | | | | |
| United Health Care - Other | 324,316.73 | 534,355.09 | 66,831.62 | | 22,468.56 | 947,972.00 |
| Total United Health Care | 324,316.73 | 534,355.09 | 66,831.62 | | 22,468.56 | 947,972.00 |
| VSP Vision | | 9,823.51 | -512.00 | | | 9,311.51 |
| Employee Benefits - Other | 1,686.17 | 5,707.74 | 72,880.03 | 7,854.27 | 15,621.46 | 103,749.67 |
| Total Employee Benefits | 607,171.90 | 735,398.29 | 343,133.43 | 272,985.27 | 159,612.12 | 2,118,301.01 |
| Factoring Fees | 90,898.66 | 433,567.71 | 210,751.10 | 98,097.34 | 342.36 | 833,657.17 |
| Late Fees | 98,035.66 | 127,158.97 | 102,978.83 | 52,463.77 | 21,428.97 | 402,066.20 |
| Management Fees | | | | 151.20 | | 151.20 |
| Miscellenous | | 10,800.00 | | | | 10,800.00 |
| Office Expenes | | | | | | |
| Office Equipment Rental | 7,105.95 | 26,699.45 | 31,835.44 | 5,317.50 | 1,569.52 | 72,527.86 |
| Office Supplies | 47,874.09 | 47,918.78 | 33,806.83 | 20,501.18 | 10,729.90 | 160,830.78 |
| Office Supplies - Montague | 622.50 | | | | | 622.50 |
| Office Expenes - Other | | | 2,517.02 | 3,180.43 | 8,499.84 | 14,197.29 |
| Total Office Expenes | 55,602.54 | 74,618.23 | 68,159.29 | 28,999.11 | 20,799.26 | 248,178.43 |
| Payroll | | | | | | |
| Bonus | | | 9,900.00 | 135.00 | | 10,035.00 |
| Holiday | 97,063.00 | 98,840.00 | 42,906.00 | 24,017.50 | 19,186.00 | 282,012.50 |
| Office | 319,491.11 | 349,526.99 | 277,621.23 | 263,011.10 | 296,600.36 | 1,506,250.79 |

PAPP 0633

2:34 PM
12/05/18
Accrual Basis

Gaither's / G&G Steam Service, Inc.
**Profit & Loss**
**All Transactions**

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | TOTAL |
|---|---|---|---|---|---|---|
| Salary - Officer | 111,840.00 | 131,619.96 | 125,809.92 | 210,333.75 | 111,840.04 | 691,443.67 |
| 6560 · Payroll Expenses | 4,516.50 | -4.35 | 131.47 | 167,643.48 | 132,482.07 | 304,769.17 |
| Payroll - Other | 168.01 | 4.35 | 2,331.46 | 1,904.98 | 2,474.11 | 6,883.81 |
| **Total Payroll** | **533,079.52** | **579,986.95** | **458,700.08** | **667,045.81** | **562,582.58** | **2,801,394.94** |
| Postage | 6,224.92 | 4,981.41 | 4,086.68 | 2,822.09 | 1,092.37 | 19,207.47 |
| Security Cameras | 515.31 | | | | | 515.31 |
| Twitty | | 4,982.15 | | | | 4,982.15 |
| 4000 · Reconciliation Discrepancies | -5.83 | 0.06 | 0.82 | 8.53 | -0.03 | 3.55 |
| 6120 · Bank Service Charges | 398.68 | 77.85 | 128.00 | 1,228.00 | 7,749.00 | 9,581.53 |
| 6160 · Dues and Subscriptions | 8,626.32 | 7,377.64 | 11,373.54 | 14,402.64 | 5,712.36 | 47,492.50 |
| 6180 · Insurance | | | | | | |
| Airplane | 1,853.00 | 1,705.00 | | | | 3,558.00 |
| Auto and Business Liability | 730,010.05 | 488,200.75 | 525,445.88 | 723.00 | | 1,744,379.68 |
| Boat | 2,924.00 | 961.00 | | | | 3,885.00 |
| Deductible | | | 1,000.00 | | | 1,000.00 |
| Equipment | 665.59 | | 2,180.00 | 2,410.00 | | 5,250.59 |
| Insurance Rebate | | -4,037.24 | | | | -4,037.24 |
| Mobile home | | 3,280.00 | 1,350.00 | | | 4,630.00 |
| Property | | | | 1,857.25 | | 1,857.25 |
| 6185 · Workers Comp | 732,904.20 | 389,461.70 | 216,169.00 | 74,949.00 | 75,036.96 | 1,488,520.86 |
| 6180 · Insurance - Other | 400.63 | -230,462.00 | -71,889.37 | 46,080.00 | 280,405.15 | 24,534.41 |
| **Total 6180 · Insurance** | **1,468,758.47** | **649,109.21** | **674,255.51** | **126,010.25** | **355,442.11** | **3,273,584.55** |
| 6230 · Licenses and Permits | 30,893.04 | 52,698.65 | 1,857.00 | 2,594.31 | 1,732.61 | 89,775.61 |
| 6240 · SGM Leasing | | 10,358.71 | 68,546.32 | 16,108.67 | | 95,013.70 |
| 6270 · Professional Fees | | | | | | |
| Contract Labor | | 1,848.81 | 5,237.38 | 57,390.00 | 28,159.00 | 92,435.19 |
| Registration fee | 60.00 | | | | | 60.00 |
| 6280 · Legal Fees | 10,021.65 | 29,089.99 | 17,478.00 | 2,181.35 | 56,883.00 | 115,653.99 |
| 6650 · Accounting | 29,889.18 | 14,070.00 | 20,104.00 | 13,111.00 | 6,168.00 | 83,342.18 |
| 6270 · Professional Fees - Other | 2,124.00 | 2,818.25 | 22,916.40 | 11,818.50 | 2,165.11 | 41,842.26 |
| **Total 6270 · Professional Fees** | **42,094.83** | **47,627.05** | **65,735.78** | **84,500.85** | **93,375.11** | **333,333.62** |
| 6300 · Repairs | | | | | | |
| Building Repairs - Shamrock | 6,107.75 | 17,408.04 | 61,518.45 | | 161.18 | 85,195.42 |
| 6310 · Building Repairs | 34,801.34 | 77,809.60 | 121,237.17 | 9,324.84 | | 243,173.04 |
| 6320 · Computer Repairs | 39,138.75 | 4,708.44 | 988.26 | | 283.54 | 45,118.99 |
| 6300 · Repairs - Other | 18,203.10 | | 14,912.00 | 2,523.35 | 4,970.44 | 40,608.89 |
| **Total 6300 · Repairs** | **98,250.94** | **99,926.17** | **198,655.86** | **11,848.19** | **5,415.16** | **414,096.34** |
| 6350 · Travel & Ent | | | | | | |
| Lodging | 37,694.71 | 50,300.33 | 49,151.62 | 7,596.48 | | 144,743.14 |
| 6360 · Entertainment | 41,265.41 | 62,867.61 | 27,246.70 | 2,522.20 | 560.43 | 134,462.44 |
| 6370 · Meals | 38,282.45 | 47,460.86 | 26,836.39 | 3,216.64 | 266.99 | 116,063.33 |
| 6390 · Travel | 10,891.41 | 2,632.55 | 842.39 | 500.00 | | 14,866.35 |
| 6350 · Travel & Ent - Other | 8,807.18 | 3,000.00 | 5,099.96 | | | 16,907.14 |
| **Total 6350 · Travel & Ent** | **136,941.16** | **166,261.35** | **109,177.06** | **13,835.41** | **827.42** | **427,042.40** |
| 6390 · Utilities | | | | | | |
| Cable | 5,817.95 | 9,895.47 | 6,284.02 | 5,578.61 | 4,148.24 | 31,724.49 |
| Internet service | 4,624.75 | 2,974.25 | 3,438.06 | 5,174.50 | 3,822.85 | 20,034.41 |
| Propane | 3,779.29 | 8,820.51 | 7,321.41 | 7,568.26 | 2,534.32 | 30,023.79 |
| Trash Pickup | 20,713.43 | 25,906.76 | 13,129.82 | 4,947.55 | 2,181.56 | 66,870.14 |
| 6340 · Telephone | 91,044.56 | 85,252.56 | 36,976.74 | 22,572.12 | 15,042.66 | 250,888.78 |
| 6400 · Gas and Electric | 24,105.20 | 36,195.73 | 26,778.17 | 19,741.29 | 18,558.85 | 125,379.24 |
| 6410 · Water | 10,440.78 | 6,955.57 | 7,686.45 | 4,805.49 | 8,450.69 | 38,338.98 |
| 6390 · Utilities - Other | 3,373.26 | -10.76 | 1,109.44 | 8,806.40 | 1,589.27 | 14,957.61 |
| **Total 6390 · Utilities** | **163,899.16** | **175,990.11** | **102,814.11** | **79,194.42** | **56,328.64** | **578,226.44** |
| 6630 · Professional Development | 7,000.00 | | | 155.00 | | 7,155.00 |
| 6750 · Janitorial Expense | 16,431.89 | 11,783.64 | 7,609.08 | 5,950.43 | 5,687.79 | 47,462.83 |
| 6820 · Taxes | | | | | | |
| Franchise | | 4,655.00 | 4,943.75 | 778.00 | 99.50 | 10,476.25 |
| Fuel Tax | 60.00 | 4,023.09 | 11,977.08 | | -550.00 | 15,510.17 |
| Heavy Highway Vehicle Tax | 1,576.00 | | | 66.75 | | 1,642.75 |
| Payroll Taxes | 749,101.70 | 768,857.47 | 322,809.11 | 187,171.84 | 132,211.62 | 2,160,211.83 |
| Personal | | 15,307.96 | 13,981.94 | 22,343.09 | | 51,723.01 |
| Unemployment | | 7,323.86 | | 2,839.95 | 20,404.47 | 30,568.28 |
| 6850 · Property | 3,166.14 | 107,872.89 | 7,003.15 | 79,020.46 | 3,253.86 | 200,316.50 |
| 6860 · State | | 2,603.65 | 17,507.71 | | | 20,111.36 |
| 6820 · Taxes - Other | 518.80 | 16,826.34 | 8,925.04 | 20,045.02 | 119,068.39 | 165,384.19 |
| **Total 6820 · Taxes** | **754,422.73** | **927,560.26** | **387,208.40** | **312,265.11** | **274,487.84** | **2,655,944.34** |
| 6200 Administrative Expense - Other | | | 5,132.80 | 5,991.62 | 62.37 | 11,186.79 |
| **Total 6200 Administrative Expense** | **4,279,909.42** | **4,244,589.35** | **3,126,233.13** | **1,944,569.53** | **1,632,313.02** | **15,229,614.45** |
| 6999 · Uncategorized Expenses | | | | | | |
| **Total Expense** | **10,314,179.26** | **10,021,295.73** | **6,108,394.17** | **3,410,851.36** | **2,242,547.15** | **32,097,267.67** |
| **Net Ordinary Income** | **1,707,078.02** | **2,309,034.73** | **-590,338.06** | **-692,292.15** | **-1,429,055.28** | **1,105,327.24** |
| Other Income/Expense | | | | | | |
| Other Income | | | | | | |
| Gain on Sale of Equipment | | | | | 317,108.32 | 317,108.32 |
| Royalties Payable* | | | | | | |
| Sale of Fixed Assets | 476,209.03 | 1,269,913.58 | 2,966,363.57 | 3,827,256.18 | | 8,539,742.36 |
| Sale of Goodwill | | | 1,722,981.25 | | | 1,722,981.25 |
| **Total Other Income** | **476,209.03** | **1,269,913.58** | **4,689,344.82** | **3,827,256.18** | **317,108.32** | **10,579,831.93** |
| Other Expense | | | | | | |
| Basis of Fixed Assets | 61,731.25 | 571,216.00 | 831,478.78 | 2,644,647.00 | | 4,109,073.03 |
| 6150 · Depreciation Expense | 2,219,249.00 | 3,125,003.00 | 2,688,578.00 | 738,726.00 | 195,540.75 | 8,977,096.75 |
| 6200 · Int/Finance/Fee Expense | 279,315.51 | 358,029.68 | 270,800.12 | 61,625.76 | 167,376.96 | 1,137,238.03 |

2:54 PM
12/05/18
Accrual Basis

**Gaffors / G&G Steam Service, Inc.**
**Profit & Loss**
All Transactions

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | TOTAL |
|---|---|---|---|---|---|---|
| Total Other Expense | 2,560,295.76 | 4,054,246.68 | 3,800,946.90 | 3,444,908.76 | 362,917.71 | 14,223,407.81 |
| Net Other Income | -2,084,086.73 | -2,784,335.10 | 888,397.92 | 362,257.42 | -45,809.39 | -3,643,575.88 |
| Net Income | -377,008.71 | -474,400.37 | 298,059.84 | -510,034.73 | -1,474,864.67 | -2,538,248.64 |

Galmor's / G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
|   **Current Assets** | | | | | |
|     **Checking/Savings** | | | | | |
|       GPNB - Galmor's #443762 | -2,422.17 | 31,275.20 | 4,521.89 | -4,468.51 | -4,722.50 |
|       GPNB - Galmor's Savings | | 36.66 | 43.30 | 43.30 | -176.70 |
|       GPNB - Galmor's/G&G Steam Serv | 564,348.12 | 858,938.53 | 726,934.46 | 715,164.87 | 723,326.45 |
|       Invoice Clearing Acct. - PBI | -96,992.40 | | | -8,705.24 | |
|       MMDDA G & G STEAM | 5.68 | 11.36 | 17.05 | 22.74 | -4,814.90 |
|       NBC - Shamrock #014818 | 300.11 | -97.53 | 7,927.77 | -4,730.34 | 54,755.52 |
|       Per Diem-Trucking Clearing Acct | 11,088.00 | 11,088.00 | | | |
|       Petty Cash | | 6,949.77 | | 700.00 | 700.00 |
|       Reserve PBI (Savings) 424110 | 478,414.05 | 773,524.46 | 68,005.19 | -152,422.12 | 19,034.40 |
|       Steve Galmor - Bank | | | | -277,026.54 | |
|     **Total Checking/Savings** | 954,741.39 | 1,681,726.45 | 807,449.66 | 268,578.16 | 788,102.27 |
|     **Accounts Receivable** | | | | | |
|       1200 · Accounts Receivable | 264,068.82 | -500,145.72 | -3,666,636.68 | -4,365,208.31 | -4,287,453.72 |
|     **Total Accounts Receivable** | 264,068.82 | -500,145.72 | -3,666,636.68 | -4,365,208.31 | -4,287,453.72 |
|     **Other Current Assets** | | | | | |
|       A/R- Galmor's | 4,694.24 | 4,694.24 | 4,694.24 | 4,694.24 | 4,694.24 |
|       A/R Steve Galmor | -271.91 | 451,347.92 | -1,751,633.33 | -2,325,801.33 | -28,652.08 |
|       CD - GPNB #391985 | | 82,555.54 | | | |
|       Hemphill County Rock | | 417,521.50 | | | |
|       Inventory | -127,195.00 | -127,195.00 | -127,195.20 | -127,195.20 | -279,445.20 |
|       Prepaid Insurance | | | | | |
|         Prepaid Liability & Auto | 73,746.20 | 127,789.81 | | 190,152.08 | |
|         Prepaid Workers Comp | 68,852.70 | 34,835.00 | | | |
|       **Total Prepaid Insurance** | 142,598.90 | 162,624.81 | | 190,152.08 | |
|       Royalty Advance | | | 174,079.25 | 229,768.75 | 284,733.42 |
|       Unbilled Revenue | | 8,270.00 | | | |
|       1120 · Inventory Asset | | | | 22,077.08 | 31,977.09 |
|       1499 · Undeposited Funds | 267,450.75 | -102,444.40 | -3,035.84 | 1,699.27 | -3,035.84 |
|       1510 · Employee Advances | 12,700.49 | 17,441.55 | -12.84 | 7,437.53 | -12.84 |
|     **Total Other Current Assets** | 299,977.47 | 914,816.16 | -1,703,103.72 | -1,997,167.58 | 10,258.79 |
|   **Total Current Assets** | 1,518,787.68 | 2,096,396.89 | -4,562,290.74 | -6,093,797.73 | -3,489,092.66 |
|   **Fixed Assets** | | | | | |
|     Accumulated Depreciation | -781,193.00 | -1,560,138.00 | 2,848,863.22 | 5,903,204.22 | 6,002,020.47 |
|     Buildings | 10,984.00 | -487,352.00 | -471,089.00 | -471,089.00 | -471,089.00 |
|     Equipment | 2,788,264.45 | 2,174,890.83 | -5,303,762.74 | -3,679,424.31 | -4,012,129.31 |
|     Land | | 60,449.97 | 60,449.97 | 60,449.97 | 60,449.97 |
|     Office Equipment | 7,421.13 | -42,466.88 | -34,007.68 | -30,348.32 | -30,348.32 |
|     Transportation Equip | | | | | |
|       Tracking Systems | | 3,255.25 | 3,255.25 | 3,255.25 | 3,255.25 |
|       Transportation Equip - Other | -635,681.39 | 2,093,800.43 | 2,182,740.43 | -4,264,226.10 | -4,264,226.10 |
|     **Total Transportation Equip** | -635,681.39 | 2,097,055.68 | 2,185,995.68 | -4,260,970.85 | -4,260,970.85 |
|   **Total Fixed Assets** | 1,389,795.19 | 2,242,439.60 | -713,550.55 | -2,478,178.29 | -2,712,067.04 |
|   **Other Assets** | | | | | |
|     N/R - Advantage Energy Serv LLC | | | 800,000.00 | 800,000.00 | |
|   **Total Other Assets** | | | 800,000.00 | 800,000.00 | |

Galmor's / G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | | | | | |
|---|---|---|---|---|---|
| **TOTAL ASSETS** | 2,308,362.87 | 4,338,836.49 | -4,475,841.29 | -7,771,976.02 | -6,201,159.70 |
| **LIABILITIES & EQUITY** | | | | | |
| Liabilities | | | | | |
| Current Liabilities | | | | | |
| Accounts Payable | | | | | |
| 2000 · Accounts Payable | 323,913.33 | 661,644.75 | -833,889.99 | -1,034,328.88 | -841,933.57 |
| **Total Accounts Payable** | 323,913.33 | 661,644.75 | -833,889.99 | -1,034,328.88 | -841,933.57 |
| Credit Cards | | | | | |
| American Express | | | | | |
| AE Steve Galmor - 3007 (2009) | 20,075.16 | 6,972.70 | -463.97 | 4,159.31 | -272.12 |
| American Express - Other | | | 789.38 | 1,351.09 | 1,351.09 |
| **Total American Express** | 20,075.16 | 6,972.70 | 325.41 | 5,510.40 | 1,078.97 |
| Bank of America | | | | | |
| Alan Perkins - 7348 | | 528.61 | | | |
| Bowie Texas -0062 | 673.23 | 192.05 | -173.17 | -173.17 | -173.17 |
| Brandon Galmor-9471 | -1,522.82 | -1,705.27 | -1,705.27 | -1,705.27 | -1,705.27 |
| Clarence Yarborough-2994 (5876) | 315.59 | 70.35 | -593.17 | -593.17 | -593.17 |
| Clifford Seftone - 4965 (6669) | | 2,733.56 | 2,894.47 | 2,338.75 | |
| David Gilchrist - 4907 | | 1,007.87 | 1,037.96 | | |
| Deena Carter - 2826 | -265.16 | -229.08 | 1,464.98 | 396.94 | 298.42 |
| G&G/Eric Copeland - 8085 | -966.68 | 58.60 | 448.06 | -140.35 | -446.54 |
| Jack Hernandez - 7667 | | | 4,909.87 | 3,854.92 | -103.97 |
| James Wells -4275 | -182.30 | -521.13 | -521.13 | -521.13 | -521.13 |
| James Wingo -6992 | -221.49 | -221.49 | -221.49 | -221.49 | -221.49 |
| Jason Garrett -6592 (3387) | 7,951.20 | -790.12 | -1,700.13 | -1,700.13 | -1,700.13 |
| Jason Smith -7548 | -195.75 | -312.05 | -312.05 | -312.05 | -312.05 |
| Jeff Klick - 3378 | 1,769.20 | -45.79 | -45.79 | -45.79 | -45.79 |
| Jerry Howell -6808 | -1,918.50 | -1,918.50 | -1,918.50 | -1,918.50 | -1,918.50 |
| Jesus Ramirez - 0608 | | 460.91 | | | |
| John Couts - 4999 | 676.44 | -150.59 | -458.61 | -580.02 | -580.02 |
| Jorge Bustos - 1615 | -636.79 | -986.64 | -900.51 | 2,243.13 | -801.52 |
| Justin Galmor - 7580 | -276.92 | 10,789.30 | 959.27 | 622.74 | -3,073.89 |
| Kallen Nichols - 1110 | | | 1,659.64 | 737.92 | 1,407.83 |
| Kimberlie Bales-4387 | | | 1,516.33 | 1,837.86 | -70.80 |
| Mario Rascon - 2900 | 1,208.61 | 482.86 | 1,448.25 | 1,220.19 | |
| Mark Galmor -5823 | -604.55 | -604.55 | -604.55 | -604.55 | -604.55 |
| Michael Hobbs - 4046 | -68.46 | 374.87 | 3,404.42 | 2,689.66 | -1,503.77 |
| Nathan Allen - 9416 | | 608.63 | | | |
| Ora Blocker -8701 | -341.90 | -341.90 | -341.90 | -341.90 | -341.90 |
| Perry Duke -8802 | 2,340.39 | 742.08 | 622.49 | -170.65 | -266.54 |
| Scott Brehm- 0044 | 94.61 | 2,214.26 | 3,258.57 | 2,793.68 | -86.21 |
| Shane Gray - 5381 | | 5,615.45 | 4,230.83 | 3,638.74 | 3,154.89 |
| Steve Galmor - 5033 | -175.01 | -175.01 | -175.01 | -175.01 | -175.01 |
| Steve Galmor - 5198 (3492) | 759.63 | -3,908.94 | 24,235.93 | 19,679.79 | 16,262.99 |
| Steve Hogg -1268 (1484) | -386.97 | -127.70 | 1,355.52 | 1,053.84 | -479.97 |
| Trey Evans - 9590 | | 750.38 | 386.70 | | |
| Will Region -6731 | -10.34 | -10.34 | -29.34 | -29.34 | -29.34 |
| William Anderson-7413 | | | 2,756.42 | 2,357.20 | 2,016.02 |
| Bank of America - Other | | | | 1.28 | 29,172.44 |

Galmor's / G&G Steam Service, Inc.

Balance Sheet

All Transactions

| | | | | | |
|---|---|---|---|---|---|
| Total Bank of America | 8,015.26 | 14,580.68 | 46,889.09 | 36,234.12 | 36,557.86 |
| CAT Access Acct - 2350 | | 4,241.36 | | -3,850.78 | |
| Cat Access Acct -3711 | 220.62 | 4,819.21 | 61,728.88 | -666.76 | -2,412.15 |
| **Chase** | | | | | |
| Chase 2286, 2302, & 5931 | -667.05 | 5,717.56 | 24,737.55 | 22,548.02 | 20,249.02 |
| Chase 4266 8411 1874 8829 | -9,298.41 | -11,198.33 | -11,392.62 | -11,398.55 | -6,770.75 |
| Total Chase | -9,965.46 | -5,480.77 | 13,344.93 | 11,149.47 | 13,478.27 |
| DitchWitch Platinum Card - 9845 | 11,994.08 | -524.71 | 236.89 | 236.89 | -524.71 |
| John Deere Financial-Steve | | | | 1,524.36 | |
| John Deere Financial - Atwoods | | 892.00 | 4,992.09 | 2,607.02 | |
| Petty Cash Due | 16,324.42 | 16,324.42 | | | |
| Sam's Club Mastercard | | 2,534.33 | 1,205.30 | -2,093.70 | |
| Wells Fargo Payable - 4810 | 55,802.52 | 32,710.42 | 46,418.72 | 22,789.50 | 34,007.49 |
| **Total Credit Cards** | 102,466.60 | 77,069.64 | 175,141.31 | 73,440.52 | 82,185.73 |
| **Other Current Liabilities** | | | | | |
| A/P - Galmor's - Okie Tex | | 344,783.31 | 342,104.53 | 342,104.53 | 342,104.53 |
| A/P Steve Galmor | | -5,000.00 | 524,450.00 | 639,557.89 | 161,503.47 |
| Deferred Income | | 2,150.94 | | | |
| Note Payable - GPNB #220507 | -1,753,712.05 | -1,753,712.05 | -1,753,712.05 | -1,753,712.05 | -1,753,712.05 |
| Notes Payable - Steve | | | -2,662,928.85 | -2,637,928.85 | |
| Payable to FLP | | | | | 51,140.00 |
| Payable to SGM | | | | | 3,715.69 |
| **Payroll Tax Payable** | | | | | |
| 401(k) Payable | | | -2,570.14 | -2,570.14 | -2,570.14 |
| Aflac Payable | 331.86 | -132.28 | -729.28 | -729.28 | -729.28 |
| Ameritas (Vision) Payable | 253.32 | 253.32 | 253.32 | 253.32 | 253.32 |
| Blue Cross Payable | 22,230.37 | 22,230.37 | 48,246.05 | 39,589.23 | 86,020.10 |
| Coventry One -Payroll Liability | 555.62 | 555.62 | 555.62 | 555.62 | 555.62 |
| Delta Dental -Payroll Liability | -637.83 | -542.12 | -542.12 | -542.12 | -542.12 |
| Federal Unemployment Payable | 4,499.31 | 6,865.10 | 6,865.10 | 6,865.10 | 6,865.10 |
| Ft. Dearborn Life Ins. | 398.38 | 337.44 | -119.79 | 798.05 | 798.05 |
| Garnishment Payable | 879.89 | -4,333.49 | -6,252.31 | -8,382.15 | -8,771.14 |
| Guarantee Trust Life Payable | -198.06 | -66.02 | -66.02 | -66.02 | -66.02 |
| Met Iife Dental Payable | 9,414.70 | 7,953.09 | 2,243.38 | 5,526.96 | 5,563.16 |
| Met Life TERM Payable | -7,919.13 | -8,254.94 | -11,077.95 | -8,721.02 | -6,379.07 |
| MetLife Vision Payable | | | | 863.26 | 863.26 |
| Occidental Life Payalbe | -744.20 | -732.53 | -1,123.13 | -199.49 | 1,216.99 |
| Oklahoma Unemployment Payable | 11,690.85 | 19,014.71 | 19,014.71 | 19,014.71 | 19,014.71 |
| Texas Unemployment Payable | 665.21 | 9,573.27 | 9,573.27 | 9,573.27 | 9,573.27 |
| Unified Life Payable | -1,009.33 | -1,005.96 | -1,089.79 | -1,089.79 | -1,089.79 |
| United Health Care Payable | -3,468.16 | -4,355.71 | -71,413.10 | -71,413.10 | -29,286.14 |
| VSP Vision Payable | -4,717.01 | -424.26 | -1,776.23 | -1,776.23 | -1,776.23 |
| 2100 · Payroll Liabilities Payable | -46,760.98 | -1,409.13 | 20,193.54 | 603,569.33 | 1,129,245.82 |
| **Total Payroll Tax Payable** | -14,535.19 | 45,526.48 | 10,185.13 | 591,119.51 | 1,208,759.47 |
| 2200 · Sales Tax Payable | 9,938.24 | 1,809.54 | -33,107.41 | -42,658.42 | -46,353.83 |
| **Total Other Current Liabilities** | -1,758,309.00 | -1,364,441.78 | -3,573,008.65 | -2,861,517.39 | -32,842.72 |
| **Total Current Liabilities** | -1,331,929.07 | -625,727.39 | -4,231,757.33 | -3,822,405.75 | -792,590.56 |
| **Long Term Liabilities** | | | | | |
| Ally | | | | | |

Galmor's / G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | | | | | |
|---|---|---|---|---|---|
| #005918095371  #376  Div-9 | -7,945.38 | -17,241.05 | -26,279.68 | -35,587.38 | -36,760.00 |
| #024918200197  #364  Div-2 | -5,782.58 | -11,923.61 | -26,451.03 | -26,451.03 | -26,451.03 |
| #611917899173  #429  Div-04-002 | 30,284.81 | 23,735.76 | 16,985.94 | 13,059.64 | 2,768.97 |
| 024916681847  #317  Div 1-40 | -4,555.02 | -10,573.02 | -19,463.24 | -19,463.24 | -19,463.24 |
| 024917751561  #341  Div-2 | -6,111.25 | -12,599.09 | -25,718.99 | -25,718.99 | -25,718.99 |
| 611916727213  #303  Div-1 Over | -14,464.22 | -15,677.99 | -15,677.99 | -15,677.99 | -15,677.99 |
| **Total Ally** | -8,573.64 | -44,279.00 | -96,604.99 | -109,838.99 | -121,302.28 |
| **ASCENTIUM   #428       Div-4** | 53,250.00 | | | | |
| **Atlas Copco** | | | | | |
| 400155          #271  Div-2 | -9,505.80 | -9,505.80 | -9,505.80 | -9,505.80 | -9,505.80 |
| **Total Atlas Copco** | -9,505.80 | -9,505.80 | -9,505.80 | -9,505.80 | -9,505.80 |
| **BMT Leasing** | | | | | |
| #08742  #441  Div 1-40 | 42,926.63 | 30,162.33 | | | |
| **Total BMT Leasing** | 42,926.63 | 30,162.33 | | | |
| **Caterpillar Financial Service** | | | | | |
| 001-0019614-001 #346   Div-4 | -322,049.92 | -519,940.30 | -519,940.30 | -519,940.30 | -519,940.30 |
| 001-0022699-000 #445   Div-4 | 1,088,267.77 | 701,706.44 | 322,536.09 | | |
| 001-0022699-000 #454  Div-4 | | 983,953.57 | 718,383.52 | | |
| 001-0590111-000 #143   Div-4 | -18,707.57 | -21,728.39 | -21,728.39 | -21,728.39 | -21,728.39 |
| 001-0591855-000  #264  Div-3 | -61,962.42 | -82,748.44 | -82,748.44 | -82,748.44 | -82,748.44 |
| 001-0604114-000   #173  Div-3 | -89,086.89 | -135,173.62 | -135,173.62 | -135,173.62 | -135,173.62 |
| 001-0614067000 #322 #323 Div-4 | -291,811.08 | -583,621.88 | -607,939.55 | -607,939.55 | -607,939.55 |
| 001-0617467-000  #381  Div-2 | -17,041.85 | -32,141.33 | -34,996.33 | -34,996.33 | -34,996.33 |
| 001-0621641-000 #372  Div-1-40 | -14,848.43 | -27,949.46 | -32,933.08 | -32,933.08 | -32,933.08 |
| 001-0639190-000 #416#192A Div-2 | -18,860.51 | -38,333.63 | -57,633.28 | -57,633.28 | -57,633.28 |
| 001-0666168-000 - #442  Div-4 | 379,181.98 | 303,356.36 | 231,297.39 | | |
| 001-0666170-000  #444   Div-4 | 157,559.71 | 125,544.37 | 96,236.24 | | |
| 001-0708854-000 - #460 - Div-4 | | 381,043.96 | 311,209.23 | | |
| 001-0717362-000 - #469 -Div-4 | | 393,209.19 | 323,849.10 | | |
| 001-0717366-000 - #470 - Div-4 | | 251,864.66 | 196,069.87 | | |
| **Total Caterpillar Financial Service** | 790,640.79 | 1,699,041.50 | 706,488.45 | -1,493,092.99 | -1,493,092.99 |
| **Deutsche Leasing USA, Inc** | | | | | |
| 100-0010677-001 #435  Div-4 | 234,753.91 | 173,371.48 | 109,334.16 | 46,386.78 | |
| **Total Deutsche Leasing USA, Inc** | 234,753.91 | 173,371.48 | 109,334.16 | 46,386.78 | |
| **Element Financial Corp** | | | | | |
| 132632 - #473 - Div-4 | | | 338,028.43 | | |
| **Total Element Financial Corp** | | | 338,028.43 | | |
| **First State Bank of Mobeetie** | | | | | |
| 60786  2012 Navigator | | 46,324.39 | 16,036.89 | 809.92 | |
| **Total First State Bank of Mobeetie** | | 46,324.39 | 16,036.89 | 809.92 | |
| **Ford Credit** | | | | | |
| 048101121 - #410 - Div-1 | -15,168.60 | -31,371.93 | -45,953.68 | -45,953.68 | -45,953.68 |
| 048101161 - #409 - Div-1 | -15,168.89 | -31,371.91 | -45,953.68 | -45,953.68 | -45,953.68 |
| 45614821 #262 Div 06 | -8,084.86 | -8,084.86 | -8,084.86 | -8,084.86 | -8,084.86 |
| 45897883 #268 F-350 | -3,188.33 | -3,188.33 | -3,188.33 | -3,188.33 | -3,188.33 |
| 45956891 #274 F-350 | -6,687.96 | -6,687.96 | -6,687.96 | -6,687.96 | -6,687.96 |
| 46011154 #284 Div1-60 | -9,803.65 | -9,803.65 | -9,803.65 | -9,803.65 | -9,803.65 |
| 46045397        #289        Div-3 | -9,959.21 | -9,959.21 | -9,959.21 | -9,959.21 | -9,959.21 |
| 46302608 - #308 - Div-7 | -10,022.88 | -20,045.76 | -31,739.53 | -31,739.53 | -31,739.53 |

Galmor's / G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | | | | | |
|---|---|---|---|---|---|
| 46670047 #327 F-250 | -14,337.99 | -14,337.99 | -14,337.99 | -14,337.99 | -14,337.99 |
| 46670075 - #326 - Div-6 | -13,869.66 | -22,252.40 | -22,252.40 | -22,252.40 | -22,252.40 |
| 46749438 - #331 - Div-3 | -5,762.21 | -9,862.09 | -9,862.09 | -9,862.09 | -9,862.09 |
| 46808201 - #107 - Div-3 | -5,796.87 | -10,940.34 | -10,940.34 | -10,940.34 | -10,940.34 |
| 46968084 - #15A - Div-4 | -7,741.96 | -14,800.60 | -14,800.60 | -14,800.60 | -14,800.60 |
| 46976286    #119    Div-3 | -19,212.94 | -19,212.94 | -19,212.94 | -19,212.94 | -19,212.94 |
| 47131454 - #352 - Div-1 | -11,529.38 | -24,207.46 | -24,207.46 | -24,207.46 | -24,207.46 |
| **Total Ford Credit** | -156,335.39 | -236,127.43 | -276,984.72 | -276,984.72 | -276,984.72 |
| **GE Capital Solutions** | | | | | |
| 9736919001 #453 - Div 1 | | 71,809.00 | | | |
| 9736919002 #457 - Div-1 | | 96,734.59 | | | |
| 9769938001 - #461 - Div-4 | | 431,051.77 | 354,164.40 | | |
| **Total GE Capital Solutions** | | 599,595.36 | 354,164.40 | | |
| **Great Plains NB** | | | | | |
| Building - 118672 | -8,963.57 | -17,019.32 | -25,164.26 | -34,690.23 | -44,175.43 |
| **Total Great Plains NB** | -8,963.57 | -17,019.32 | -25,164.26 | -34,690.23 | -44,175.43 |
| **Inter Bank** | | | | | |
| #10059 - #278 - Div-3 | -11,426.35 | -24,173.04 | -24,173.04 | -24,173.04 | -24,173.04 |
| #14405 #388 D-4, #389 & 390 D-5 | -25,348.77 | -65,177.61 | -65,177.61 | -65,177.61 | -65,177.61 |
| #16649 - #422 - Div-09 | -11,972.03 | -19,112.67 | -19,112.67 | -19,112.67 | -19,112.67 |
| #19795    #430    Div-4 | 22,811.56 | 10,784.26 | | | |
| #19817    #266    Div-6 | 7,230.21 | | | | |
| #20455    #432    Div-3 | 42,222.19 | 25,966.25 | | | |
| 47910    #266    Div-1-60 | -6,167.91 | -6,167.91 | -6,167.91 | -6,167.91 | -6,167.91 |
| 48554    #345  Div-2  Sold | -9,436.20 | -9,436.20 | -9,436.20 | -9,436.20 | -9,436.20 |
| 48966    #61    Div-2 | -8,685.60 | -8,685.60 | -8,685.60 | -8,685.60 | -8,685.60 |
| Loan #20091664-Enid-Div 12-004 | | | 120,080.00 | 91,767.02 | 67,448.78 |
| Inter Bank - Other | | | | | -6,455.28 |
| **Total Inter Bank** | -772.90 | -96,002.52 | -12,673.03 | -40,986.01 | -71,759.53 |
| **John Deere Credit** | | | | | |
| 510000420590    #269    Div-2 | -30,938.00 | -30,938.00 | -30,938.00 | -30,938.00 | -30,938.00 |
| 510000459926    #299    Div-3 | -67,566.80 | -67,566.80 | -67,566.80 | -67,566.80 | -67,566.80 |
| 510000494061    #296    Div-3 | -49,968.24 | -66,624.60 | -66,624.60 | -66,624.60 | -66,624.60 |
| 510000539417    #307    Div-3 | -44,252.10 | -76,092.48 | -76,092.48 | -76,092.48 | -76,092.48 |
| 510000560797    #330    Div-3 | -96,919.85 | -171,481.00 | -171,481.00 | -171,481.00 | -171,481.00 |
| 510000673554    #395    Div-3 | -44,872.45 | -88,907.31 | -120,209.67 | -120,209.67 | -120,209.67 |
| **Total John Deere Credit** | -334,517.44 | -501,610.19 | -532,912.55 | -532,912.55 | -532,912.55 |
| **Kirby Smith Machinery, Inc.** | | | | | |
| KSM | | | | 399,000.00 | 399,000.00 |
| KSM- ESA002789-1 #479& #480 -D4 | | | 74,622.27 | | |
| KSM - #462 - Div-3 | | 82,764.25 | | | |
| KSM -SIM10001071 #467 - Div-4 | | 286,843.16 | | | |
| **Total Kirby Smith Machinery, Inc.** | | 369,607.41 | 74,622.27 | 399,000.00 | 399,000.00 |
| **Komatsu** | | | | | |
| 777-0148558-000  #300    Div-2 | -47,653.53 | -56,384.93 | -56,384.93 | -56,384.93 | -56,384.93 |
| 777-0148558-001  #347    Div-3 | -89,853.57 | -172,626.46 | -172,626.46 | -172,626.46 | -172,626.46 |
| 777-0148558-002  348 & 349 D-2 | -77,985.47 | -153,091.22 | -153,091.22 | -153,091.22 | -153,091.22 |
| 777-0148558-003  #365    Div-4 | -127,276.63 | -231,965.40 | -343,617.68 | -353,015.52 | -353,015.52 |
| 777-0148558-004 #362    Div-4 | -53,811.89 | -122,214.43 | -127,664.48 | -127,664.48 | -127,664.48 |

Galmor's / G&G Steam Service, Inc.
Balance Sheet
All Transactions

| | | | | | | |
|---|---|---|---|---|---|---|
| 777-0148558-005  #378  Div-4 | -59,731.28 | -135,013.45 | -140,914.92 | -140,914.92 | -140,914.92 |
| 777-0148558-006  #357  Div-2 | 84,213.26 | 59,436.23 | | | |
| 777-0148558-007  #356  Div-2 | 84,213.26 | 59,569.02 | | | |
| 777-0148558-008  #385  Div-4 | 142,295.82 | 101,625.53 | 63,830.95 | 28,678.78 | |
| 777-0148558-009  #347SA  Div-3 | 4,969.44 | | | | |
| 777-0148558-010  #451  Div-4 | 380,140.64 | 283,951.98 | 177,514.25 | 86,361.75 | |
| 777-0148558-012  #350  Div-2 | -45,526.81 | -95,762.26 | -95,762.26 | -95,762.26 | -95,762.26 |
| **Total Komatsu** | 193,993.24 | -462,475.39 | -848,716.75 | -984,419.26 | -1,099,459.79 |
| **Leaf Capital Funding LLC** | | | | | |
| 100 2344598  001 #436  Div-4 | 47,993.05 | 30,364.74 | 10,827.20 | | |
| **Total Leaf Capital Funding LLC** | 47,993.05 | 30,364.74 | 10,827.20 | | |
| **M2 Leasing** | -19,968.00 | -39,936.00 | -51,177.66 | -51,177.66 | -51,177.66 |
| **PBI Line of Credit #337897** | 3,866,671.71 | 4,027,856.72 | 982,223.19 | 833,760.92 | 1,348,152.78 |
| **Providence Capital Funding** | 44,299.00 | | | | |
| **Summit Funding Group, Inc.** | | | | | |
| 106322 - #476 - Div.-4 | | 142,711.28 | 120,101.64 | 96,607.63 | |
| 106326 - #477 - Div-4 | | 157,433.03 | 134,127.14 | 108,599.09 | |
| **Total Summit Funding Group, Inc.** | | 300,144.31 | 254,228.78 | 205,206.72 | |
| **TCF Equipment Finance** | | | | | |
| 001-0600362-500 #363     Div-4 | -100,057.09 | -203,919.40 | -294,442.11 | -294,442.11 | -294,442.11 |
| 001-0600362-501 #354     Div-2 | -28,115.79 | -62,481.69 | -90,235.28 | -90,235.28 | -90,235.28 |
| 001-0600362-502  #417   Div-2 | -21,732.90 | -32,711.79 | -45,069.36 | -45,069.36 | -45,069.36 |
| 001-0600362-503  #419   Div-3 | -50,576.25 | -103,475.79 | -158,805.77 | -158,805.77 | -158,805.77 |
| **Total TCF Equipment Finance** | -200,482.03 | -402,588.67 | -588,552.52 | -588,552.52 | -588,552.52 |
| **Trinity / Bank of the West** | | | | | |
| 0042340-001  #368     Div-1 | -12,637.29 | -18,147.66 | -18,147.66 | -18,147.66 | -18,147.66 |
| 0042340-002  #394     Div-2 | -16,805.00 | -32,803.03 | -32,803.03 | -32,803.03 | -32,803.03 |
| 0042340-004  #433     Div-3 | 345,260.55 | 298,415.75 | | | |
| **Total Trinity / Bank of the West** | 315,818.26 | 247,465.06 | -50,950.69 | -50,950.69 | -50,950.69 |
| **Wells Fargo** | | | | | |
| #001-0288752-704 - #468 - Div-4 | | 601,236.25 | 494,153.80 | 339,360.10 | 260,000.00 |
| #002-0244474-702 #310 Div-1-60 | -17,898.04 | -24,632.91 | -24,632.91 | -24,632.91 | -24,632.91 |
| #002-0288752-701 #329    Div-4 | -93,466.68 | -147,988.87 | -147,988.87 | -147,988.87 | -147,988.87 |
| #002-0288752-702 #355 Div-2 | -59,216.26 | -89,859.65 | -89,859.65 | -89,859.65 | -89,859.65 |
| #002-0288752-703 - #360 - Div-3 | -63,851.19 | -143,017.11 | -180,964.16 | -180,964.16 | -180,964.16 |
| **Total Wells Fargo** | -234,432.17 | 195,737.71 | 50,708.21 | -104,085.49 | -183,445.59 |
| **Total Long Term Liabilities** | 4,616,795.65 | 5,910,126.69 | 403,419.01 | -2,792,032.57 | -2,776,166.77 |
| **Total Liabilities** | 3,284,866.58 | 5,284,399.30 | -3,828,338.32 | -6,614,438.32 | -3,568,757.33 |
| **Equity** | | | | | |
| Distribution to SGM Leasing LLC | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| 1110 · Member's Equity | 625.00 | -471,262.44 | -945,662.81 | -647,602.97 | -1,157,637.70 |
| Net Income | -377,008.71 | -474,400.37 | 298,059.84 | -510,034.73 | -1,474,864.67 |
| **Total Equity** | -376,283.71 | -945,562.81 | -647,502.97 | -1,157,537.70 | -2,632,402.37 |
| **TOTAL LIABILITIES & EQUITY** | 2,908,582.87 | 4,338,836.49 | -4,475,841.29 | -7,771,976.02 | -6,201,159.70 |

### GALMOR FAMILY LIMITED PARTNERSHIP
### Profit & Loss
### All Transactions

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | Nov 14, 18 | TOTAL |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| **Farm & Ranch Income** | | | | | | | |
| Crop Insurance Proceeds | 11,280.00 | 0.00 | 0.00 | 412.00 | 0.00 | 0.00 | 11,692.00 |
| **Livestock Sales** | | | | | | | |
| Sale of Breeding Stock | 0.00 | 0.00 | 0.00 | 0.00 | 32,128.00 | 6,103.02 | 38,231.02 |
| Sale of Purchased Calves | 0.00 | 0.00 | 20,923.98 | 0.00 | 0.00 | 0.00 | 20,923.98 |
| Sale of Raised Calves | 2,798.00 | 153,406.39 | 15,028.69 | 59,859.17 | 0.00 | 0.00 | 231,092.25 |
| Livestock Sales - Other | 127,791.30 | 0.00 | 117,085.00 | 20,253.35 | 0.00 | 2,286.51 | 267,416.16 |
| **Total Livestock Sales** | 130,589.30 | 153,406.39 | 153,037.67 | 80,112.52 | 32,128.00 | 8,389.53 | 557,663.41 |
| Miscellaneous Income | 2,411.35 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,411.35 |
| Pasture Rent | 750.00 | 0.00 | 9,335.70 | 95,405.00 | 45,915.29 | 47,940.00 | 199,345.99 |
| **Patronage Dividends** | | | | | | | |
| First Ag Credit, FCS | 0.00 | 0.00 | 0.00 | 0.00 | 601.55 | 637.60 | 1,239.15 |
| Patronage Dividends - Other | 1,810.27 | 0.00 | 694.63 | 0.00 | 0.00 | 768.86 | 3,273.76 |
| **Total Patronage Dividends** | 1,810.27 | 0.00 | 694.63 | 0.00 | 601.55 | 1,406.46 | 4,512.91 |
| Sale of Hay | 4,600.00 | 37,650.00 | 54,750.00 | 2,900.00 | 0.00 | 0.00 | 99,900.00 |
| Wheat Sales | 3,460.00 | 0.00 | 0.00 | 4,032.00 | 0.00 | 0.00 | 7,492.00 |
| Farm & Ranch Income - Other | 3,200.00 | 8,216.00 | 0.00 | 31,105.63 | 0.00 | 0.00 | 42,521.63 |
| **Total Farm & Ranch Income** | 158,100.92 | 199,272.39 | 217,818.00 | 213,967.15 | 78,644.84 | 57,735.99 | 925,539.29 |
| **Interest Income** | | | | | | | |
| Carter | 3,404.81 | 3,140.68 | 0.00 | 0.00 | 0.00 | 0.00 | 6,545.49 |
| Great Plains National Bank | 3.62 | 3.73 | 0.00 | 0.00 | 0.67 | 0.00 | 8.02 |
| National Bank of Commerce | 2.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.31 |
| Interest Income - Other | 0.00 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 |
| **Total Interest Income** | 3,410.74 | 3,144.42 | 0.00 | 0.00 | 0.67 | 0.00 | 6,555.83 |
| Investment Professionals Inc | 0.00 | 285.00 | 0.00 | 0.00 | 0.00 | 0.00 | 285.00 |
| **Oil & Gas Income** | | | | | | | |
| Barker Production Co | 156,600.81 | 118,397.40 | 34,714.77 | 15,695.60 | 30,443.91 | 22,060.35 | 377,912.84 |
| Bronco Oil Company | 0.00 | 0.00 | 15.85 | 0.00 | 0.00 | 0.00 | 15.85 |
| Cimarex Energy Co | 0.00 | 371.32 | 226.13 | 175.90 | 113.28 | 178.58 | 1,065.21 |
| Sierra Group, LLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Oil & Gas Income - Other | 0.00 | 0.00 | 0.00 | 4,158.68 | 55.94 | 0.20 | 4,214.82 |
| **Total Oil & Gas Income** | 156,600.81 | 118,768.72 | 34,956.75 | 20,030.18 | 30,613.13 | 22,239.13 | 383,208.72 |
| **Oil & Gas Investments** | | | | | | | |
| Debo Production | 0.00 | -1,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,500.00 |
| **Total Oil & Gas Investments** | 0.00 | -1,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1,500.00 |
| **Rental Income** | | | | | | | |
| Rental Income | 5,500.00 | 0.00 | 500.00 | 5,306.37 | 1,200.00 | 5,063.20 | 17,569.57 |
| Rental Income - Other | 1,350.00 | 600.00 | 2,014.80 | 1,250.00 | 0.00 | 1,100.00 | 6,314.80 |
| **Total Rental Income** | 6,850.00 | 600.00 | 2,514.80 | 6,556.37 | 1,200.00 | 6,163.20 | 23,884.37 |
| **Rock Quarry Income** | | | | | | | |
| Galmor's/G&G Steam Service Inc. | 68,364.98 | 216,336.77 | 403,733.98 | 138,050.00 | 31,500.00 | 3,981.82 | 861,967.55 |
| Rock Quarry Income - Other | 171,515.66 | 89,702.60 | 25,000.00 | 14,100.00 | 0.00 | 0.00 | 300,318.26 |
| **Total Rock Quarry Income** | 239,880.64 | 306,039.37 | 428,733.98 | 152,150.00 | 31,500.00 | 3,981.82 | 1,162,285.81 |
| **Total Income** | 564,843.11 | 626,609.90 | 684,023.53 | 392,703.70 | 141,958.64 | 90,120.14 | 2,500,259.02 |
| **Expense** | | | | | | | |
| **Discover** | | | | | | | |
| 4385 | 0.00 | 0.00 | 2,450.00 | 250.00 | 0.00 | 0.00 | 2,700.00 |
| Discover - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Discover** | 0.00 | 0.00 | 2,450.00 | 250.00 | 0.00 | 0.00 | 2,700.00 |
| **Farm & Ranch Expense** | | | | | | | |
| Bank Charges | 330.00 | 230.00 | 185.00 | 205.16 | 195.00 | 223.49 | 1,368.65 |
| Building Repairs | 0.00 | 0.00 | 4,532.00 | 0.00 | 0.00 | 0.00 | 4,532.00 |
| CCC Reimbursement | 12,025.15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,025.15 |
| Chemicals | 0.00 | 2,192.46 | 0.00 | 0.00 | 0.00 | 0.00 | 2,192.46 |
| Contract Labor | 42,068.00 | 87,828.22 | 58,173.62 | 8,220.00 | 17,055.00 | 20,165.00 | 233,509.84 |
| Depreciation | 112,157.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112,157.00 |
| Dues | 0.00 | 35.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35.00 |

**EXHIBIT**

12 8

DEPONENT NAME: PAPE 0642

Galmor 3 |24|21

GALMOR FAMILY LIMITED PARTNERSHIP

Profit & Loss

All Transactions

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Feed | 25,333.51 | 23,539.84 | 24,879.11 | 22,064.14 | -1,925.42 | 0.00 | 93,891.18 |
| Fertilizers and Lime | 46,501.38 | 66,435.81 | 45,451.56 | 36,222.00 | 0.00 | 0.00 | 194,610.75 |
| Freight and Trucking | 850.00 | 0.00 | 300.00 | 253.79 | 0.00 | 0.00 | 1,403.79 |
| Fuel | 50,038.10 | 26,018.68 | 37,836.83 | 27,712.04 | 17,008.96 | 6,458.64 | 165,073.25 |
| Home Improvements | 0.00 | 0.00 | 15,110.30 | 0.00 | 0.00 | 0.00 | 15,110.30 |
| Insurance | 23,084.92 | 18,915.27 | 21,517.77 | 36,584.11 | 21,816.27 | 4,545.22 | 126,463.56 |
| **Interest Expense** | | | | | | | |
| Capital Farm Credit | 9,081.00 | 3,954.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,035.00 |
| Citizens Bank | 2,205.72 | 1,712.30 | 0.00 | 0.00 | 0.00 | 0.00 | 3,918.02 |
| Conseco Health Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 70.00 | 0.00 | 70.00 |
| First State Bank of Mobeetie | 2,354.02 | 5,186.23 | 0.00 | 0.00 | 0.00 | 0.00 | 7,540.25 |
| Great Plains National Bank | 50,340.12 | 50,786.61 | 0.00 | 25.16 | 10,994.92 | 0.00 | 112,146.81 |
| Irrigation Finance | 1,844.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,844.00 |
| John Deere Credit | 2,936.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,936.84 |
| National Bank of Commerce | 773.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 773.01 |
| Interest Expense - Other | 0.00 | 0.00 | 21.21 | 0.00 | 0.00 | 0.00 | 21.21 |
| **Total Interest Expense** | 69,534.71 | 61,639.14 | 21.21 | 25.16 | 11,064.92 | 0.00 | 142,285.14 |
| Janitorial | 0.00 | 0.00 | 2,495.00 | 4,093.76 | 639.33 | 0.00 | 7,228.09 |
| License, Tags, Inspection, Fees | 619.88 | 5,114.01 | 1,334.71 | 0.00 | 0.00 | 0.00 | 7,068.60 |
| Machine Hire | 38,068.70 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38,068.70 |
| Office Supplies | 49.08 | 1,366.12 | 0.00 | 0.00 | 0.00 | 0.00 | 1,415.20 |
| Postage and Delivery | 0.00 | 112.00 | 0.00 | 0.00 | 0.00 | 0.00 | 112.00 |
| Purchase of Cattle | 0.00 | 0.00 | 22,200.00 | 0.00 | 0.00 | 0.00 | 22,200.00 |
| Rent Expense | 0.00 | 4,007.76 | 523.80 | 730.44 | 0.00 | 0.00 | 5,262.00 |
| **Repair & Maintenance** | | | | | | | |
| Equipment Repair | 52,467.12 | 40,668.23 | 59,992.93 | 18,688.54 | 5,545.62 | 11,965.13 | 189,327.57 |
| Vehicle Repairs | 3,037.07 | 40.29 | 62.26 | 93.63 | 0.00 | 509.65 | 3,742.90 |
| Repair & Maintenance - Other | 0.00 | 0.00 | 11,072.02 | 4,270.18 | 1,333.92 | 2,969.90 | 19,646.02 |
| **Total Repair & Maintenance** | 55,504.19 | 40,708.52 | 71,127.21 | 23,052.35 | 6,879.54 | 15,444.68 | 212,716.49 |
| Seed | 2,430.00 | 4,320.00 | 15,399.66 | 4,690.00 | 4,575.00 | 8,680.00 | 40,094.66 |
| Supplies | 6,115.40 | 4,572.62 | 14,155.50 | 2,347.96 | 2,571.54 | 1,494.22 | 31,257.24 |
| **Taxes** | | | | | | | |
| County Taxes | 11,417.76 | 19,237.77 | 0.00 | 286.15 | 8,748.76 | 15,457.96 | 55,148.40 |
| Property Taxes | 0.00 | 1,372.84 | 10,342.22 | 16,188.58 | 481.57 | 0.00 | 28,385.21 |
| Taxes - Other | 0.00 | 0.00 | 40,283.74 | 6,140.00 | 84.19 | 0.00 | 46,507.93 |
| **Total Taxes** | 11,417.76 | 20,610.61 | 50,625.96 | 22,614.73 | 9,314.52 | 15,457.96 | 130,041.54 |
| Telephone | 1,095.09 | 1,087.86 | 1,244.39 | 1,512.03 | 475.61 | 0.00 | 5,414.98 |
| Truck Rental | 4,350.00 | 3,150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,500.00 |
| Utilities | 24,232.67 | 38,794.61 | 32,054.15 | 31,075.16 | 24,122.18 | 18,765.30 | 169,044.07 |
| Veterinary Fees | 3,286.80 | 12,736.45 | 3,150.01 | 3,437.10 | 1,711.02 | 0.00 | 24,321.38 |
| Farm & Ranch Expense - Other | 1,345.14 | 19,403.41 | 57,586.86 | -29,805.94 | 13,651.53 | 9,116.86 | 71,297.86 |
| **Total Farm & Ranch Expense** | 530,437.48 | 442,818.39 | 479,904.65 | 195,033.99 | 129,155.00 | 100,351.37 | 1,877,700.88 |
| **Legal Expenses** | | | | | | | |
| Legal & Professional Fees | 6,502.00 | 16,260.34 | 4,808.01 | 5,498.00 | 3,875.00 | 2,480.00 | 39,423.35 |
| **Total Legal Expenses** | 6,502.00 | 16,260.34 | 4,808.01 | 5,498.00 | 3,875.00 | 2,480.00 | 39,423.35 |
| **Oil & Gas Expense** | | | | | | | |
| Contract Labor | 0.00 | 0.00 | 3,982.50 | 0.00 | 0.00 | 0.00 | 3,982.50 |
| Fuel | 0.00 | 2,800.83 | 65.01 | 779.49 | 0.00 | 8,378.86 | 12,024.19 |
| Insurance | 0.00 | -297.00 | -896.63 | 0.00 | 0.00 | 0.00 | -1,193.63 |
| Interest | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Legal & Professional | 703.63 | 5,955.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,658.63 |
| Operating Expenses | 93,580.49 | 28,291.28 | 0.00 | 0.00 | 0.00 | 0.00 | 121,871.77 |
| Repairs & Maintenance | 1,914.90 | 0.00 | 1,117.50 | 0.00 | 0.00 | 0.00 | 3,032.40 |
| Supplies | 0.00 | 0.00 | 2,122.86 | 0.00 | 0.00 | 0.00 | 2,122.86 |
| **Taxes** | | | | | | | |
| Production Tax | -5,439.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -5,439.36 |
| Property Tax | 17,576.00 | 0.00 | 0.00 | 0.00 | 19,203.43 | 0.00 | 36,779.43 |
| Taxes - Other | 0.00 | 0.00 | 0.00 | 2,516.01 | 4,981.91 | 211.00 | 7,708.92 |
| **Total Taxes** | 12,136.64 | 0.00 | 0.00 | 2,516.01 | 24,185.34 | 211.00 | 39,048.99 |
| Utilities | 1,467.41 | 0.00 | 407.77 | 0.00 | 77.39 | 0.00 | 1,952.57 |

GALMOR FAMILY LIMITED PARTNERSHIP

Profit & Loss

All Transactions

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Oil & Gas Expense - Other | 0.00 | 0.00 | 0.00 | -248.00 | 0.00 | 0.00 | -248.00 |
| **Total Oil & Gas Expense** | 109,803.07 | 36,750.11 | 6,799.01 | 3,047.50 | 24,262.73 | 8,589.86 | 189,252.28 |
| Reconciliation Discrepancies | 0.00 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 |
| **Rental Expense** | | | | | | | |
| Depreciation | 11,012.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,012.00 |
| Insurance | 242.75 | 214.29 | 0.00 | 0.00 | 0.00 | 0.00 | 457.04 |
| Rent House Repairs | 8,824.04 | 37,341.79 | 22,617.41 | 14,987.72 | 563.57 | 86.40 | 84,420.93 |
| Rental Expense - Other | 0.00 | 7,323.71 | 429.64 | 0.00 | 340.00 | 0.00 | 8,093.35 |
| **Total Rental Expense** | 20,078.79 | 44,879.79 | 23,047.05 | 14,987.72 | 903.57 | 86.40 | 103,983.32 |
| **Rock Quarry** | | | | | | | |
| Repair & Maintenance | 661.75 | 978.38 | 0.00 | 0.00 | 0.00 | 0.00 | 1,640.13 |
| Rock Quarry - Other | 0.00 | 0.00 | -7,148.23 | 0.00 | 0.00 | 0.00 | -7,148.23 |
| **Total Rock Quarry** | 661.75 | 978.38 | -7,148.23 | 0.00 | 0.00 | 0.00 | -5,508.10 |
| Salaries | 143,879.94 | 191,839.92 | 0.00 | 0.00 | 0.00 | 0.00 | 335,719.86 |
| **Total Expense** | 811,363.03 | 733,526.94 | 509,860.49 | 218,817.21 | 158,196.30 | 111,507.63 | 2,543,271.60 |
| **Net Ordinary Income** | -246,519.92 | -106,917.04 | 174,163.04 | 173,886.49 | -16,237.66 | -21,387.49 | -43,012.58 |
| **Other Income/Expense** | | | | | | | |
| **Other Income** | | | | | | | |
| Dividend Income | 0.00 | 0.00 | 0.00 | 1,337.67 | 0.00 | 0.00 | 1,337.67 |
| Sale of Breeding Stock | 110,996.79 | 0.00 | 130,320.85 | 0.00 | 4,750.00 | 35,441.39 | 281,509.03 |
| Sale of Fixed Assets | 128,281.69 | 72,000.00 | 0.00 | 0.00 | 0.00 | 78,686.14 | 278,967.83 |
| **Total Other Income** | 239,278.48 | 72,000.00 | 130,320.85 | 1,337.67 | 4,750.00 | 114,127.53 | 561,814.53 |
| **Other Expense** | | | | | | | |
| Ask My Accountant | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75,526.14 | 75,526.14 |
| Basis of Breeding Stock Sold | 723.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 723.00 |
| Basis of Fixed Assets Sold | 36,785.00 | 56,864.80 | 0.00 | 0.00 | 0.00 | 0.00 | 93,649.80 |
| **Total Other Expense** | 37,508.00 | 56,864.80 | 0.00 | 0.00 | 0.00 | 75,526.14 | 169,898.94 |
| **Net Other Income** | 201,770.48 | 15,135.20 | 130,320.85 | 1,337.67 | 4,750.00 | 38,601.39 | 391,915.59 |
| **Net Income** | -44,749.44 | -91,781.84 | 304,483.89 | 175,224.16 | -11,487.66 | 17,213.90 | 348,903.01 |

**GALMOR FAMILY LIMITED PARTNERSHIP**
**Balance Sheet**
**All Transactions**

| | Dec 31, 13 | Dec 31, 14 | Dec 31, 15 | Dec 31, 16 | Dec 31, 17 | Nov 14, 18 |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| **Current Assets** | | | | | | |
| **Checking/Savings** | | | | | | |
| **Cash in Bank** | | | | | | |
| Citizen's Bank | 0.00 | 0.00 | -5.00 | -5.00 | -5.00 | -5.00 |
| Great Plains National Bank | -2,982.51 | -3,090.48 | -3,291.69 | -3,141.30 | -11,917.66 | -13,297.43 |
| National Bank of Commerce | 9,135.27 | -3,469.41 | -6,668.18 | -1,569.52 | -21,354.88 | -87,681.78 |
| **Total Cash in Bank** | 6,152.76 | -6,559.89 | -9,964.87 | -4,715.82 | -33,277.54 | -100,984.21 |
| **Total Checking/Savings** | 6,152.76 | -6,559.89 | -9,964.87 | -4,715.82 | -33,277.54 | -100,984.21 |
| **Accounts Receivable** | | | | | | |
| Accounts Receivable | 8,886.49 | 10,086.49 | 10,086.49 | 10,086.49 | 25,086.49 | 18,086.49 |
| **Total Accounts Receivable** | 8,886.49 | 10,086.49 | 10,086.49 | 10,086.49 | 25,086.49 | 18,086.49 |
| **Other Current Assets** | | | | | | |
| Calves for Resale | 0.00 | 1,000.00 | -63,694.46 | -63,694.46 | -90,318.38 | -90,318.38 |
| **Certificates of Deposit** | | | | | | |
| **Citizen's Bank** | | | | | | |
| 16737 | -6,839.34 | -6,839.34 | -6,839.34 | -6,839.34 | -6,839.34 | -6,839.34 |
| 67202 | -832.12 | -832.12 | -832.12 | -832.12 | -832.12 | -832.12 |
| 9001556 | -2,688.78 | -2,688.78 | -2,688.78 | -2,688.78 | -2,688.78 | -2,688.78 |
| **Total Citizen's Bank** | -10,360.24 | -10,360.24 | -10,360.24 | -10,360.24 | -10,360.24 | -10,360.24 |
| **Great Plains National Bank** | | | | | | |
| 34509 | -99,463.85 | -99,463.85 | -99,463.85 | -99,463.85 | -99,463.85 | -99,463.85 |
| 35117 | -99,394.23 | -99,394.23 | -99,394.23 | -99,394.23 | -99,394.23 | -99,394.23 |
| 35649 (no hold) | -54,154.26 | -54,154.26 | -54,154.26 | -54,154.26 | -54,154.26 | -54,154.26 |
| 35661 (no hold) | -99,394.23 | -99,394.23 | -99,394.23 | -99,394.23 | -99,394.23 | -99,394.23 |
| 35768 | -199,319.49 | -199,319.49 | -199,319.49 | -199,319.49 | -199,319.49 | -199,319.49 |
| **Total Great Plains National Bank** | -551,726.06 | -551,726.06 | -551,726.06 | -551,726.06 | -551,726.06 | -551,726.06 |
| **National Bank of Commerce** | | | | | | |
| 518772 | -1,282.64 | -1,282.64 | -1,282.64 | -1,282.64 | -1,282.64 | -1,282.64 |
| **Total National Bank of Commerce** | -1,282.64 | -1,282.64 | -1,282.64 | -1,282.64 | -1,282.64 | -1,282.64 |
| **Total Certificates of Deposit** | -563,368.94 | -563,368.94 | -563,368.94 | -563,368.94 | -563,368.94 | -563,368.94 |
| **Total Other Current Assets** | -563,368.94 | -562,368.94 | -627,063.40 | -627,063.40 | -653,687.32 | -653,687.32 |
| **Total Current Assets** | -548,329.69 | -558,842.34 | -626,941.78 | -621,692.73 | -661,878.37 | -736,585.04 |
| **Fixed Assets** | | | | | | |
| **Fixed Assets** | | | | | | |
| Accumulated Depreciation | 248,326.00 | 288,728.00 | 288,728.00 | 288,728.00 | 288,728.00 | 288,728.00 |
| Farm Buildings and Improvements | 2,974.00 | 2,974.00 | 2,974.00 | 2,974.00 | 5,974.00 | 5,974.00 |
| Farm Equipment | -239,756.50 | -232,700.10 | -232,700.10 | -232,700.10 | -232,700.10 | -232,700.10 |
| Land | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Livestock | -91,384.00 | -20,827.43 | -20,827.43 | -20,827.43 | -20,827.43 | -20,827.43 |
| Oil & Gas Equipment | 0.00 | 6,542.00 | 6,542.00 | 6,542.00 | 6,542.00 | 6,542.00 |
| Rental Real Estate | 5,087.00 | -91,090.00 | -91,090.00 | -91,090.00 | -91,090.00 | -91,090.00 |
| **Total Fixed Assets** | -69,753.50 | -41,373.53 | -41,373.53 | -41,373.53 | -38,373.53 | -38,373.53 |
| **Total Fixed Assets** | -69,753.50 | -41,373.53 | -41,373.53 | -41,373.53 | -38,373.53 | -38,373.53 |
| **Other Assets** | | | | | | |
| Loan Receivable - Carter | -8,683.99 | -17,632.11 | -27,706.11 | -38,787.51 | -50,876.31 | -62,965.11 |
| Loan Receivable - Steve Galmor | 0.00 | 0.00 | -3,743.52 | -7,487.04 | -7,487.04 | -6,387.04 |
| **Total Other Assets** | -8,683.99 | -17,632.11 | -31,449.63 | -46,274.55 | -58,363.35 | -69,352.15 |
| **TOTAL ASSETS** | -626,767.18 | -617,847.98 | -699,764.94 | -709,340.81 | -758,615.25 | -844,310.72 |
| **LIABILITIES & EQUITY** | | | | | | |
| **Liabilities** | | | | | | |
| **Current Liabilities** | | | | | | |
| **Accounts Payable** | | | | | | |
| Accounts Payable | 143,879.94 | 319,733.20 | 319,733.20 | 319,733.20 | 319,733.20 | 319,733.20 |
| **Total Accounts Payable** | 143,879.94 | 319,733.20 | 319,733.20 | 319,733.20 | 319,733.20 | 319,733.20 |
| **Credit Cards** | | | | | | |
| Capital One | 0.00 | 0.00 | 0.00 | 0.00 | -352.26 | -44.90 |

GALMOR FAMILY LIMITED PARTNERSHIP
Balance Sheet
All Transactions

| | | | | | | |
|---|---:|---:|---:|---:|---:|---:|
| **Chase** | | | | | | |
| 4266841282225893 | 0.00 | 0.00 | -1,204.99 | -2,870.99 | -3,270.99 | -3,270.99 |
| Chase - Other | 0.00 | 0.00 | 0.00 | 0.00 | 10.74 | 10.74 |
| **Total Chase** | 0.00 | 0.00 | -1,204.99 | -2,870.99 | -3,260.25 | -3,260.25 |
| **Total Credit Cards** | 0.00 | 0.00 | -1,204.99 | -2,870.99 | -3,612.51 | -3,305.15 |
| **Total Current Liabilities** | 143,879.94 | 319,733.20 | 318,528.21 | 316,862.21 | 316,120.69 | 316,428.05 |
| **Long Term Liabilities** | | | | | | |
| Capital Farm Credit | -12,816.65 | -21,646.10 | -34,429.42 | -34,429.42 | -47,602.11 | -61,340.63 |
| Chase* | | | | | | |
| 11024514484507 | -3,215.18 | -3,215.18 | -3,215.18 | -3,215.18 | -3,215.18 | -3,215.18 |
| **Total Chase*** | -3,215.18 | -3,215.18 | -3,215.18 | -3,215.18 | -3,215.18 | -3,215.18 |
| Harris N.A. | | | | | | |
| 9901869004 | -23,647.60 | -23,647.60 | -23,647.60 | -23,647.60 | -23,647.60 | -23,647.60 |
| **Total Harris N.A.** | -23,647.60 | -23,647.60 | -23,647.60 | -23,647.60 | -23,647.60 | -23,647.60 |
| **Irrigation Finance Solutions** | -23,482.10 | -23,482.10 | -23,482.10 | -23,482.10 | -23,482.10 | -23,482.10 |
| John Deere Credit | | | | | | |
| 510000213429 | -5,170.52 | -5,170.52 | -5,170.52 | -5,170.52 | -5,170.52 | -5,170.52 |
| 510000407130 | -12,136.86 | -12,136.86 | -12,136.86 | -12,136.86 | -12,136.86 | -12,136.86 |
| 510000459433 | -64,339.51 | -64,339.51 | -64,339.51 | -64,339.51 | -64,339.51 | -64,339.51 |
| 510000531995 | -8,310.89 | -8,310.89 | -8,310.89 | -8,310.89 | -8,310.89 | -8,310.89 |
| John Deere Credit - Other | 0.00 | 0.00 | -11,391.43 | -29,380.05 | -29,380.05 | -29,380.05 |
| **Total John Deere Credit** | -89,957.78 | -89,957.78 | -101,349.21 | -119,337.83 | -119,337.83 | -119,337.83 |
| Kubota | | | | | | |
| 33151580 | -14,131.59 | -14,131.59 | -14,131.59 | -14,131.59 | -14,131.59 | -14,131.59 |
| 33640467 | -23,063.64 | -23,063.64 | -23,063.64 | -23,063.64 | -23,063.64 | -23,063.64 |
| **Total Kubota** | -37,195.23 | -37,195.23 | -37,195.23 | -37,195.23 | -37,195.23 | -37,195.23 |
| **Lincoln Automative Financial** | | | | | | |
| 47325832 | -39,865.52 | -39,865.52 | -39,865.52 | -39,865.52 | -39,865.52 | -39,865.52 |
| **Total Lincoln Automative Financial** | -39,865.52 | -39,865.52 | -39,865.52 | -39,865.52 | -39,865.52 | -39,865.52 |
| **Loan Payable - Steve Galmor** | 0.00 | 10,852.54 | 0.00 | 0.00 | 15,000.00 | 15,000.00 |
| Notes Payable | | | | | | |
| Citizens Bank | | | | | | |
| #17627 | -11,000.00 | -22,287.70 | -34,249.07 | -44,249.07 | -46,249.07 | -46,249.07 |
| **Total Citizens Bank** | -11,000.00 | -22,287.70 | -34,249.07 | -44,249.07 | -46,249.07 | -46,249.07 |
| First St Bank Mobeetie | | | | | | |
| #60500 Miller Property | -11,392.68 | -41,455.49 | -41,455.49 | -41,455.49 | -41,455.49 | -41,455.49 |
| 60395 | -11,730.16 | -11,730.16 | -11,730.16 | -11,730.16 | -11,730.16 | -11,730.16 |
| First St Bank Mobeetie - Other | 0.00 | 0.00 | -8,108.10 | -18,124.85 | -25,118.20 | -96,707.24 |
| **Total First St Bank Mobeetie** | -23,122.84 | -53,185.65 | -61,293.75 | -71,310.50 | -78,303.85 | -149,892.89 |
| GPNB | | | | | | |
| #124141 Personal Operating | -48,250.55 | -48,250.55 | -48,250.55 | -48,250.55 | -48,250.55 | -48,250.55 |
| #169900 Bradley Property | 19,236.65 | 15,131.82 | -9,818.31 | -32,912.37 | -32,912.37 | -32,912.37 |
| #327727 Credit Line | 124,135.00 | 124,576.84 | -5,075.29 | -5,075.29 | -5,075.29 | -5,075.29 |
| 130702 Catepillar Tractor | -43,500.00 | -43,500.00 | -43,500.00 | -43,500.00 | -43,500.00 | -43,500.00 |
| 232394 Cattle | -31,630.32 | -31,630.32 | -31,630.32 | -31,630.32 | -31,630.32 | -31,630.32 |
| 232424 Sidwell Property | 0.00 | 0.00 | -52,904.07 | -109,412.97 | -136,212.72 | -136,212.72 |
| 244880 Cattle-2 | -21,000.00 | -21,000.00 | -21,000.00 | -21,000.00 | -21,000.00 | -21,000.00 |
| 3048411 - 560 acres in Texas | 62,284.98 | 49,491.85 | 22,293.29 | 22,293.29 | -21,129.03 | -21,129.03 |
| 3067432 - operating acct | -59,667.09 | -59,667.09 | -59,667.09 | -59,667.09 | -59,667.09 | -59,667.09 |
| 3096645 - tax loan | -180,000.00 | -180,000.00 | -180,000.00 | -180,000.00 | -180,000.00 | -180,000.00 |
| 3126145 - real estate loan | 11,140.22 | -7,132.95 | -38,218.26 | -69,311.05 | -132,037.75 | -150,037.75 |
| 3177637 - consumer Loan | -40,321.65 | -40,321.65 | -40,321.65 | -40,321.65 | -40,321.65 | -40,321.65 |
| 37567 - ag loan | -96,489.32 | -96,489.32 | -96,489.32 | -96,489.32 | -96,489.32 | -96,489.32 |
| 63339 - real estate loan | -7,527.91 | -14,166.37 | -22,067.65 | -26,676.73 | -32,602.69 | -34,873.91 |
| 67350 - commercial loan | -47,517.76 | -47,517.76 | -47,517.76 | -47,517.76 | -47,517.76 | -47,517.76 |
| FLP Loan | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | 50,000.00 |
| GPNB - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -23,859.15 |
| **Total GPNB** | -359,107.75 | -400,475.50 | -674,166.98 | -789,471.81 | -878,346.54 | -922,476.91 |

GALMOR FAMILY LIMITED PARTNERSHIP
Balance Sheet
All Transactions

| | | | | | | |
|---|---|---|---|---|---|---|
| **National Bank of Comm** | | | | | | |
| 927167 | -20,000.00 | -20,000.00 | -20,000.00 | -20,000.00 | -20,000.00 | -20,000.00 |
| **National Bank of Comm - Other** | 0.00 | 0.00 | 0.00 | 30.00 | 30.00 | 30.00 |
| **Total National Bank of Comm** | -20,000.00 | -20,000.00 | -20,000.00 | -19,970.00 | -19,970.00 | -19,970.00 |
| **Total Notes Payable** | -413,230.59 | -495,948.85 | -789,709.80 | -925,001.38 | -1,022,869.46 | -1,138,588.87 |
| **Total Long Term Liabilities** | -643,410.65 | -724,105.82 | -1,052,894.06 | -1,206,174.26 | -1,302,215.03 | -1,431,672.96 |
| **Total Liabilities** | -499,530.71 | -404,372.62 | -734,365.85 | -889,312.05 | -986,094.34 | -1,115,244.91 |
| **Equity** | | | | | | |
| **Partner's Draw** | | | | | | |
| Donation | -295.00 | -525.00 | -945.00 | -1,115.00 | -1,115.00 | -1,115.00 |
| Gift | -2,800.00 | -900.00 | -1,075.00 | -1,075.00 | -1,075.00 | -1,075.00 |
| Health Insurance | -4,662.56 | -3,782.63 | -3,782.63 | -4,286.41 | -4,286.41 | -4,286.41 |
| Home Expenses | -31,113.06 | -60,000.00 | -60,000.00 | -60,000.00 | -60,243.00 | -60,243.00 |
| Internal Revenue Service | -91,303.00 | -6,878.31 | -6,878.31 | -6,878.31 | -6,878.31 | -6,878.31 |
| Medical | -22,725.70 | -353.62 | -1,316.63 | -1,316.63 | -1,583.06 | -1,583.06 |
| Personal | 50,458.02 | -43,174.46 | -95,518.34 | -101,873.96 | -107,139.42 | -113,098.22 |
| Prescriptions | -2,157.72 | -11,808.22 | -27,395.35 | -57,019.78 | -61,742.40 | -61,742.40 |
| Social Security | 4,918.80 | 9,837.60 | 9,837.60 | 9,837.60 | 9,837.60 | 9,837.60 |
| Partner's Draw - Other | 17,016.05 | -786.55 | -1,105.15 | -1,105.15 | 12,094.85 | 12,094.85 |
| **Total Partner's Draw** | -82,664.17 | -118,371.19 | -188,178.81 | -224,832.64 | -222,130.15 | -228,088.95 |
| **Partner's Equity** | 177.14 | -137,074.07 | -228,855.91 | 75,627.98 | 250,852.14 | 239,364.48 |
| **Partner Contributions** | | | | | | |
| The Galmor Contribution Trust | 0.00 | 70,188.17 | 71,188.17 | 75,488.17 | 98,488.17 | 116,088.17 |
| The Galmor Family Trust | 0.00 | 41,313.57 | 53,713.57 | 56,213.57 | 82,913.57 | 97,513.57 |
| Partner Contributions - Other | 0.00 | 22,250.00 | 22,250.00 | 22,250.00 | 28,843.02 | 28,843.02 |
| **Total Partner Contributions** | 0.00 | 133,751.74 | 147,151.74 | 153,951.74 | 210,244.76 | 242,444.76 |
| **Net Income** | -44,749.44 | -91,781.84 | 304,483.89 | 175,224.16 | -11,487.66 | 17,213.90 |
| **Total Equity** | -127,236.47 | -213,475.36 | 34,600.91 | 179,971.24 | 227,479.09 | 270,934.19 |
| **TOTAL LIABILITIES & EQUITY** | -626,767.18 | -617,847.98 | -699,764.94 | -709,340.81 | -758,615.25 | -844,310.72 |