Kent Ries, Attorney at Law
State Bar No. 16914050
2700 S. Western St., Suite 300
Amarillo, Texas 79109
(806) 242-7437
(806) 242-7440 – Fax
kent@kentries.com

COUNSEL FOR TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

**TRIAL BRIEF IN SUPPORT OF PLAINTIFF'S COMPLAINT**

Plaintiff Kent Ries, Trustee in the bankruptcy cases of Michael Stephen Galmor ("MSG") and Galmor's/G&G Steam Service, Inc. ("G&G") files this his Brief in Support of Plaintiff's Complaint (the "Brief") as to the claims of the G&G Estate against the Defendants, and in support thereof, respectfully shows the Court as follows:

**I.**

## SUMMARY

1.1    Plaintiff's First Amended Complaint in this proceeding alleges multiple debts owed by the Defendants to both MSG and G&G (the "Complaint"). The Plaintiff is only pursuing the claims asserted by G&G against the Defendants in this trial. The G&G claims, totaling $1,096,051.32 are briefly described in G&G's bankruptcy schedules; one of those four claims, regarding a vehicle in the amount of $24,807.39, is not being pursued in this trial. Therefore the principal amount actually at issue in this trial is 1,071,243.93.

1.2    The background facts regarding the Defendants are not in dispute. Leslie Pritchard, on behalf of the Defendants, previously filed an Adversary Proceeding (No. 18-2010) in this Court against MSG. In that proceeding, the Plaintiff's Original Complaint, pages 3-6, gave an overview of the family history and the parties in this proceeding. In short, the parents of Ms. Pritchard and MSG set up a Living Trust in 2005 and the Galmor Family Limited Partnership (the "GFLP") in 2010, they funded these entities with most all their assets to provide income for themselves for their lifetimes, with any remaining assets after both of their deaths to go to four of their five children. Following the death of Bobby Don Galmor (Ms. Pritchard and MSG's father) in April of 2013, MSG was the person in charge and with full authority over the Defendants until Ms. Pritchard took over in August of 2019. Unfortunately, the Defendants did not have sufficient funds to support their own business operations, let alone provide the care for Shirley Jo Galmor (Ms. Pritchard and MSG's mother), from the time of Bobby Don Galmor's death until her death in March of 2017.

1.3    Plaintiff's primary cause of action is a breach of contract, be it an oral or written contract, for the Defendants default in repaying the advances of funds and payment of expenses incurred by G&G for the benefit of the Defendants. MSG was the primary manager of both G&G and the Defendants at the time of all the relevant transactions in this trial. MSG had full authority to

enter into an agreement for each of the parties regarding the fund advances and expense payments by G&G and the promise to repay same by the Defendants.

1.4    In the alternative, Plaintiff alleges causes of action for quantum meruit, unjust enrichment, money had and received and suit on account in order to recover the fund advances and expense payments G&G made for the Defendants' benefit. G&G is a bankruptcy estate with over $8,158,000.00 in claims filed against it. A portion of those claims can by paid, and should be paid, from the recovery of funds G&G used to support the financial obligations of the Defendants as described above. The Defendants now have the funds to repay its debt to G&G. The law and equity demands that the Plaintiff recover the $1,071,243.93 owed to the G&G Estate by the Defendants. Looked at from the other side, the Defendants should not be allowed a financial windfall of $1,071,243.93 by retaining the funds and benefits it received from G&G.

## II.
## ARGUMENT AND AUTHORITY

### A. Breach of contract claim

2.1    "The elements of written and oral contracts are the same and must be present for a contract to be binding". Thorton v. Dobbs, 355 S.W.3d 312, 316 (Tex.Civ.App.—Dallas, 2011). See also Perez v. Sentry Insurance, 2013 Tex.App.Lexis 14884, p. 23 (Tex.Civ.App. —San Antonio, 2013). "The elements of a breach of contract claim are: (1) a valid contract, (2) plaintiff performed or tendered performance, (3) defendant breached the contract, and (4) plaintiff was damaged as a result of the breach." Id. "The following elements are required for the formation of a valid and binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contact with the intent that it be mutual and binding". Id.

2.2     The Trustee's primary claim in his First Amended Complaint is a suit on a debt based on the Defendants breach of the party's contract.  For example, invoices that indicate the intent of the parties was for G&G to bill the Galmor Family Limited Partnership (the GFLP") for services, salaries, material, etc. paid for and provided by G&G to the GFLP.  Further, the advance of funds by G&G to the GFLP are likewise documented in writing, primarily checks.  These written documents clearly evidence that an agreement between G&G and the GFLP existed at the time of all the transactions.  There would be no point for G&G to invoice the GFLP if the GFLP wasn't expected to pay these invoices.  These invoices and fund advances were done on or about the dates on the documents, which extended over a period of several years.

2.3     The contract between G&G and the GFLP will be established by MSG.  All the terms of a contract are met when, as here, the same person has authority to enter into an agreement for both parties to the agreement.  MSG supervised, for several years, G&G billing the services and material itemized on the invoices, and the advances of funds, and the time he and Deena Carter spent for the benefit of the GFLP.  MSG agreed, on behalf of the GFLP, to repay these invoices, advances, wages and debts owed to G&G.  No person, other than MSG, can dispute the existence of the agreement between G&G and the GFLP.  G&G's schedules filed in the G&G bankruptcy case and signed by MSG under penalty of perjury, support MSG's assertion of a contract for the transactions and debt that forms the basis of this proceeding.

2.4     Collateral estoppel prevents the Defendants from refuting the contract at issue, as MSG, with full authority to do so on behalf of the Defendants at the relevant time, filed bankruptcy schedules that bind both G&G and the Defendants.  A contract for G&G to provide materials, services and funds to the GFLP, and for the GFLP to repay G&G for the value of these items, exists as a matter of law.

2.5	All the elements of a breach of contract claim likewise exist in this trial as a matter of fact and law. As above, G&G and the GFLP have a valid contract for each category of transactions at issue. Further, consistent with G&G's bankruptcy schedules, testimony will prove that the amount of (1) $186,341.19 was due and owing to G&G for funds advanced to the GFLP, in excess of repayments by the GFLP, (2) $384,902.74 was due and owing to G&G for the materials, labor, expenses and services provided to the GFLP as described in the invoices and (3) $500,000.00 was due and owing to G&G for wages paid to MSG and Deena Carter by G&G that benefited the GFLP. In total, $1,071,243.93 is owed by the GFLP to G&G and the GFLP is in breach of its obligation to pay this debt. The G&G Estate is damaged in the amount of $1,071,243.93 due to the GFLP's default in making this payment.

**Equitable claims**

2.6	Even if a breach of contract claim was not available to the Trustee in this case, Texas law (as adopted by bankruptcy courts) provides equitable claims and remedies that would render the same result as the contract claim described above. In short, equitable claims seek to eliminate the unjust enrichment of one party at the inequitable expense of another party.

2.7	With respect to G&G's first claim, for $186,341.19, based on funds advanced by G&G to the GFLP, money had and received is an equitable remedy that prevents such unjust enrichment. In re Krisu Hospitality, LLC, 2021 Banks.Lexis 788, p. 17 (Bankr.N.D.Tex.—Ama. 2021). This cause of action exists when a defendant obtains money which in equity and good conscience belongs to the plaintiff. Vitela v. Gallery Model Homes, Inc., 2019 Tex.App.Lexis 2593, p. 11 (Tex.Civ.App—Houston 2019). In this proceeding, the GFLP has received funds of $186,341.19 that rightfully belong to G&G.

2.8     Additionally, the equitable remedy of quantum meruit would apply if a contract claim could not be established. For example, G&G's claim for $384,902.74 is based on the numerous invoices, and G&G's claim for $500,000.00 is based on wages of MSG and Deena Carter that were paid by G&G, but benefitted the GFLP.

2.9     The elements of quantum meruit are a) a plaintiff who provides services or materials, b) for the benefit of the defendant, c) that were accepted by the defendant and d) that defendant had reasonable notice that the plaintiff expected compensation for the services or materials. Town Center Mall, L.P. v. Dyer, 2018 Tex.App.Lexis 10213, p. 6 (Tex.Civ.App— Ft. W. 2015). Similar to the breach of contract claim, all of these elements are fulfilled, based on the position of authority of MSG for both G&G and the GFLP, and his direction, over several years, that G&G provide the described services and materials to the GFLP. In the Town Center case, an oral breach of contract claim was asserted, but in that case the proof of a contact was more difficult to prove than in the present proceeding. So the Town Center court found that the plaintiff was entitled to recover the same damages under quantum meruit as would have been allowed in a contract claim. As the Texas Supreme Court has stated regarding quantum meruit, the remedy "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted". Vortt Exploration Company, Inc. v. Chevron U.S.A., Inc. 787 S.W.2d 942, 944 (Tex. 1990). "Recovery in question meruit will be had when nonpayment for the services rendered could result in an unjust enrichment to the party benefitted by the work." Id. In this proceeding, it is undisputed that substantial services, materials and funds were provided by G&G, at the expense of G&G, for the benefit of the GFLP. As a matter of law, it would be an unjust enrichment to the GFLP to have obtained all the benefits described in the Plaintiff's Complaint, without having to provide G&G compensation for same.

**TRIAL BRIEF IN SUPPORT OF PLAINTIFF'S COMPLAINT**                                **Page 6 of 8**

## III.
## DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

3.1    The Defendants alleged numerous counterclaims and affirmative defenses in their Answer to the First Amended Complaint. All of those responses relate to MSG and the claims the MSG estate have against the GFLP. Therefore none of those counterclaims or affirmative defenses are relevant to this trial by G&G.

3.2    Additionally, the Trustee objected to the claim filed in the G&G case by Leslie Pritchard, acting individually and on behalf of the Defendants. This Court has entered an Order in the G&G bankruptcy case (Document #172, entered on October 27, 2020) denying that claim in its entirety. Defendants counsel was served with the objection and had no response to it. Therefore, as above, the counterclaims or affirmative defenses asserted in Defendant's Answer are barred by the principles of Res Judicata from being asserted against G&G in this Adversary Proceeding and this Trial.

## IV.
## CONCLUSION AND REQUEST FOR RELIEF

4.1    The evidence presented in the trial will establish as a matter of law that the Trustee is entitled to a judgement in favor of the G&G estate in the amount of $1,071,243.93. Each element of a contract claim has been established as a matter of law that supports such a judgement. Alternatively, each element of the equitable claims and remedies cited herein have likewise been established as a matter of law to support the requested judgement.

4.2    The Trustee respectfully requests that this Court grant G&G's bankruptcy estate a Judgement against the Defendants, jointly and severally, and all such other relief to which the Trustee has shown himself entitled.

Respectfully submitted,

Kent Ries, Attorney at Law
2700 S. Western St., Suite 300
Amarillo, Texas 79109
(806) 242-7437
(806) 242-7440-Fax

By: /s/ Kent Ries
    Kent Ries
    State Bar No. 16914050
  ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of February, 2022, a true and correct copy of the above and foregoing Trial was sent electronically via ECF to the party listed below:

Davor Rukavina
Munsch, Hardt, Kopf & Harr
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659

/s/ Kent Ries
Kent Ries