IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
|    Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
|    Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
|    Defendants. | § | |

## **DEFENDANTS' TRIAL BRIEF**

TO THE HONORABLE ROBERT JONES, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Leslie Pritchard ("Pritchard"), court-appointed liquidator for Galmor Family Limited Partnership (the "FLP") and Galmor Management, L.L.C. ("GM", with the FLP, the "Defendants"), the defendants in the above styled and numbered Adversary Proceeding, and files this *Trial Brief*, respectfully stating as follows:

### I.    SUMMARY

1.    The Court should deny the Trustee's claims that the FLP owes his estates the "Alleged Debt"; namely, that the FLP is liable to the Michael Stephen Galmor ("MSG") estate for

$1,310,807.00 for amounts that MSG alleged funded the FLP with or that he expended for the FLP's benefit, and that the FLP owes the Galmor's/G&G Steam Service, Inc. ("G&G") estate $1,096,051.32 for amounts that G&G alleged funded the FLP with or that it expended for the FLP's benefit. Simply put, the Alleged Debt does not exist as a question of fact, as will be demonstrated by the evidence. Nor can there be any oral agreement by the FLP to repay what does not exist. Indeed, on numerous accounting records, tax returns, and state law accounting, all prepared by or under the supervision of MSG, neither MSG, G&G, nor the FLP ever listed the Alleged Debt. The Trustee's *quantum meruit* claims also fail because there is no Alleged Debt and because, whatever funding, services, and goods were allegedly provided by MSG or G&G were not provided to the FLP and did not benefit the FLP.

2.  The Court should grant the FLP's counterclaims such that whatever interest the Trustee has to a share of the proceeds of the liquidation of the FLP, as an indirect equity holder, should be setoff or forfeited based on MSG's prepetition breaches of fiduciary duty and other torts committed at the expense of the FLP. MSG, despite his fiduciary duties, engaged in self-dealing and breached his fiduciary duties, by taking cash and other property of the FLP without any return consideration, by having the FLP pay his personal obligations, and by having G&G underpay the FLP for rock that it mined from the FLP's quarry, amounting to at least (and well over) $750,000 in damages to the FLP. It would be highly inequitable for MSG's estate, having already taken its share of the FLP's property at the expense of his siblings, for whose benefit he managed the FLP, to have an equal share in any final distribution of the FLP.

3.  In the end, the most important question of fact will be MSG's credibility. As the Court will see, he has none. There is and never was any Alleged Debt or any promise by the FLP to pay MSG or G&G. All that there is, is a multi-year scheme by MSG to defraud the FLP and his siblings by taking all of the fruits of their parents' life-long work and legacy for himself.

## II. THE TRUSTEE'S CLAIMS

A. **WHAT THE EVIDENCE WILL SHOW**

4. While MSG filed his and G&G's schedules under penalty of perjury that the Alleged Debt exists, the evidence will demonstrate the opposite; namely, that until bankruptcy, and even *after* it, MSG never listed, reported, or disclosed the Alleged Debt despite many opportunities to do so. Among other things:

   (i) The QuickBooks files of MSG do not list the Alleged Debt. Nor do his tax returns.

   (ii) The QuickBooks files of the FLP—which are missing, even though MSG swears that they were provided to the Trustee, with only fragments produced in prepetition litigation now remaining—do not list the Alleged Debt. Nor do its tax returns.

   (iii) The QuickBooks files of G&G, at least the most recent ones, do not list any of the Alleged Debt. A prior version of those files lists some of the Alleged Debt, in the form of inadmissible invoices, but even so those are prior files and the alleged invoices were written off, if not altogether fabricated.

   (iv) Pritchard' expert will confirm that, having conducted an audit of MSG, G&G, and the FLP's financial records, there is no evidentiary support for the Alleged Debt.

   (v) A state law mandated accounting of the FLP prepared by MSG and given to Pritchard in prepetition litigation, provided well *after* MSG filed his schedules, fails to list the Alleged Debt even though it purports to list all debts and obligations of the FLP, and it is simply inconceivable that MSG, his bookkeeper, and accountant all would "forget" that $2.4 million of Alleged Debt exists.

5. The only "evidence" that will be presented is the testimony of MSG. As the Court will see, however, MSG is not credible, and his action, inactions, and representations dispel any notion that the Alleged Debt exists or is legitimate in the first place.

6. The evidence will also demonstrate that any alleged funding, services, or goods advanced by MSG or G&G to or for the benefit of the FLP did not in fact confer any benefit on the FLP. Rather, the alleged services went to improve land that the FLP never owned, went to service obligations that were never obligations of the FLP, and went to pay for the wages and benefits of the employees of G&G.

7. As a minor example, the Trustee alleges that G&G paid off the note on a handicapped van used by the now-deceased mother. Yet it was MSG who made the payment; the van was owned by the mother and not the FLP; and the note was the obligation of the mother and not the FLP. Indeed, MSG took the van for himself after he paid it off, and the FLP has never obtained any resulting benefit.

B. **BREACH OF CONTRACT CLAIMS**

8. To prove the existence of a contract, including an oral one, the Trustee must prove, among other elements, "an offer and acceptance and a meeting of the minds on all essential elements." *Lanier v. Eastern Founds. Inc.*, 401 S.W.3d 445, 459 (Tex. App. – Dallas 2013, no pet.). As explained:

> The term 'meeting of the minds' refers to the parties' mutual understanding and assent to the expression of their agreement. To create an enforceable contract, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms. The parties must agree to the same thing, in the same sense, at the same time.

*Id*.

9. Thus, Texas law on the formation of a contract, meaning whether an enforceable contract was reached, requires the following:

> (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.

*Fanco v. Ysleta Indep. Sch. Dist.*, 346 S.W.3d 605, 608 (Tex. App. – El Paso 2009). Importantly, "[t]he parties' subjective thoughts and beliefs do not control. When the 'meeting of the minds' element is contested, it is a question for the fact finder." *Id*. (internal citation omitted).

10. Here, the Trustee's contract claims fail because there is no Alleged Debt and no evidence that the FLP ever agreed to repay the same.

11. The Trustee argues that, as MSG controlled himself and G&G at the same time as he did the FLP, he was free, in his mind, to form a binding contract where the FLP would pay the Alleged Debt. Perhaps in a different case this might be true. But here, where MSG is not credible, and where the fact of any such alleged agreement between himself is dispelled by so many documents where he had the opportunity—indeed the duty—to disclose the Alleged Debt, leads to the conclusion that the Alleged Debt itself never existed, even in MSG's own mind. Without that debt or any agreement to repay, there can be no breach of contract.

12. The Trustee will also seek to introduce into evidence various invoices from G&G to evidence some of the Alleged Debt. Pritchard has objected to the same as hearsay. But, if the Court admits the invoices into evidence, the invoices themselves do not form a contract. *See, e.g., Evans Advertising Agency Inc. v. Morphew*, 525 S.W.2d 56, 59 (Tex. Civ. App. – Tyler 1975) ("[i]nvoices or statements from plaintiff, copies of which are attached to its pleading, are not sufficient to show that personal services were rendered to defendant"). *See also Stefek v. Helvey*, 601 S.W. 2d 168, 171 (Tex. Civ. App. – Corpus Christi 1980) (holding that an invoice is not evidence of debt unless there is "an expression of a willingness to pay"). An invoice may be some evidence of an underlying contract, but it itself is not the contract.

13. Equally as importantly, if the Court admits these invoices into evidence, any evidentiary effect they may have will be overwhelmingly countered by the other evidence, including the fact that G&G did not carry these invoices on its most recent and current QuickBooks files. And, if those invoices are admitted, the evidence will demonstrate that they purported to bill the FLP for charges which did not benefit the FLP, but rather only benefited MSG who owns the land on which much of the work the subject of the invoices was allegedly given, and that they only benefitted G&G, the wages and benefits of whose employees G&G seeks to charge the FLP for.

14. As a question of fact and of law, there is no Alleged Debt and no promise, and therefore a breach of a promise, for the FLP to pay any of it.

15. If the Court denies the Trustee's breach of contract claims, then the Court must also deny his claim for attorney's fees and expenses, as breach of contract is the only cause of action that the Trustee has asserted that could give rise to an award of attorney's fees and expenses. Since the Trustee must be the prevailing party on a breach of contract claim to also claim attorney's fees and expenses, such an award is not permitted as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE § 38.001. Nor, to Pritchard' knowledge, did the Trustee timely submit a demand for his claim as required by Texas statute. *See id*. § 38.002.

C. *QUANTUM MERUIT*

16. The Alleged Debt also fails under *quantum meruit*. To succeed on these claims under Texas law, the Trustee must prove the following elements: "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros. Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

17. Here, because the evidence will demonstrate that none of the Alleged Debt was for the benefit of the FLP, and was instead for the benefit of MSG, G&G, or his other businesses. As such, valuable services or materials were not furnished "to" the FLP or "accepted by" the FLP. And, the fact that the FLP did not carry the Alleged Debt on any of its books and records, and that the Alleged Debt is not on the accounting provided by MSG to Pritchard of the FLP's finances, means that the FLP could not have accepted any benefits under such circumstances as reasonably notified it that MSG or G&G expected payment—after all, surely MSG, who controlled the FLP

during all that time, would know that he or G&G expected payment by the FLP, such that he, for the FLP, would have disclosed that expectation at some reasonable point in time.

### D.  TRUSTEE'S REMAINING CLAIMS

18.  To succeed on his claim for money had and received for the Alleged Debt, the Trustee must prove, under Texas law, that the "defendant holds money." *Midwestern Cattle Mktg. LLC v. Legend Bank N.A.*, 800 Fed. App. 239, 246 (5th Cir. 2020). *Accord Edwards v. Mid-Continent Office Distribs. L.P.*, 252 S.W.3d 833, 837 (Tex. App. – Dallas 2008). Being owed an alleged debt is not the equivalent of actually holding money belonging to the plaintiff. *See id*. The FLP is not holding any funds belonging to MSG, G&G, or the Trustee. Accordingly, the Trustee's claims for money had and received fail as a matter of law.

19.  To succeed on his claim that *res judicata* applies to the Alleged Debt, the Trustee must point to a prior judgment on the existence of the Alleged Debt or promise to pay the same. *See, e.g., BVS Constr. v. Prosperity Bank (In re BVS Constr., Inc.)*, __ F.4th __, 2021 U.S. App. LEXIS 33822, *9-10 (5th Cir. Nov. 15, 2021) (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)). There is no such judgment, and MSG's and G&G's scheduling of the Alleged Debt is no substitute.

20.  To succeed on his claim that collateral estoppel applies to the Alleged Debt, the Trustee must point to prior litigation that concerned this issue where this issue was actually tried. *See Pace v. Bogalusa City Sch.Bd.*, 403 F.3d 272, 290 (5th Cir. 2005). There is no such litigation, and MSG's and G&G's scheduling of the Alleged Debt is no substitute.

21.  To succeed on his claim that the Alleged Debt is recoverable to avoid unjust enrichment, the Trustee must prove that the FLP received a windfall, took advantage of MSG or G&G, defrauded MSG or G&G, and that it was unjustly enriched. *See Heldenfels Bros. Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) "Unjust enrichment is not a proper remedy merely

because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant." *Id*. at 42. These claims fail for the same reason as the *quantum meruit* claims: there is no Alleged Debt and none of the Alleged Debt benefited the FLP in the first place, must less constituted a windfall.

E. **LIMITATIONS**

22. Finally, many of the Trustee's claims are barred by limitations. Money had and received has a two year limitations period under Texas law. *See, e.g., Payne v. Wells Fargo Bank N.A.*, 2015 U.S. Dist. LEXIS 39325 at *13-*14 (N.D. Tex. 2015); *Merry Homes Inc. v. Luc Dao*, 359 S.W.3d 881, 884 (Tex. App.—Houston 2012, no pet.). A claim for unjust enrichment is subject to a two (2) year statute of limitations. *See Elldge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870-71 (Tex. 2007) (construing unjust enrichment as an action for the "taking . . . the personal property of another" within application of TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a)). Breach of contract and *quantum meruit* each have a four (4) year statute of limitations under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 461 (Tex. App. – Houston [1st Dist.] 2007).

23. While the Bankruptcy Code extends limitations for the Trustee, it does so only where limitations had not expired as of the petition date. Here, the evidence will demonstrate that much of the Alleged Debt, including various of the alleged invoices, are barred by the applicable statutes of limitation.

### III. PRITCHARD'S COUNTERCLAIMS

A. **WHAT THE EVIDENCE WILL SHOW**

24. There is no question that, at all relevant times, MSG managed and controlled the FLP both directly, as an officer, and through GM, its general partner, which he was a manager and member of. There is no question that MSG owed fiduciary duties to the FLP as a result.

25. In this respect, the evidence will show that MSG, over the course of several years, and despite the trust of his parents and siblings to manage the FLP for the equal benefit of all the siblings, used the FLP and its property as essentially a piggybank for himself, all the while telling his siblings that the FLP had no money, was broke, and was insolvent:

(i) G&G, which MSG solely owned and controlled, mined rock from a quarry owned by the FLP for sale to third parties, in exchange for royalties from G&G to the FLP. Weeks after the father died, and therefore no longer controlled the FLP, MSG changed the royalty from 75 cents per ton to 50 cents per ton, solely to benefit G&G at the expense of the FLP. And, this was despite the fact that G&G paid royalties of between $1 and $2 per ton for rocks at third-party quarries it also used. This reduction in price to 50 cents per ton alone cost the FLP over $400,000.

(ii) MSG caused the FLP to pay $58,000 for renovations to the homestead—which the FLP never owned (but MSG owned 50% of, later increased to 100%)—and $45,000 for an outdoor kitchen for the homestead, expenditures for which the FLP received no benefit and which it had no obligation to pay for, but which directly benefited MSG.

(iii) MSG caused the FLP to transfer various equipment and vehicles it owned to himself, for no consideration, and then caused the FLP to continue making debt payments to the third party lender on such equipment and vehicles and caused the FLP to pay for repairs for such equipment and vehicles, for which the FLP received no benefit and which it had no obligation to do, but which directly and solely benefited MSG.

(iv) MSG caused real property owned by the FLP to be transferred to himself, and in one instance as a gift to an employee, for no consideration, and then caused the FLP to make *ad valorem* tax payments on these properties.

(v) MSG caused the FLP to sell other equipment and vehicles it owned, and then pocketed the proceeds for himself, and in one instance traded in a tractor owned by the FLP for a different tractor which he had titled in his name.

(vi) MSG caused the FLP to pay $60,000 for feed for his cattle, and ran his cattle on FLP land without paying the FLP, for which the FLP received no benefit and which was not the obligation of the FLP, but which benefited MSG personally.

(vii) MSG is unable to account for a large amount of trucks, trailers, vehicles, and farm and ranch equipment owned by the FLP, and which he either does not know what happened to or believes the FLP sold before, but has no knowledge of when, to whom, for what price, and who received the funds.

26. The direct, monetary breaches by MSG of his duties to the FLP cost the FLP at least $750,000 in damages. There is far more that Pritchard and her expert have simply not been able to quantify, due in part to the fact that the FLP's QuickBooks files are missing, despite MSG and his bookkeeper testifying repeatedly that they gave the file to the Trustee (but which neither the Trustee nor Pritchard's expert could ever locate). And, even as MSG was helping himself to the FLP's cash and property, he never distributed any money from the FLP to his siblings.

27. To prevail on a counterclaim for breach of fiduciary duty under Texas law, Pritchard must prove: "the existence of a fiduciary duty, breach of the duty, causation, and damages." *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App. – Houston [1st Dist.] 2003). As the sole officer and manager of the FLP, and as the manager of the FLP's general partner, MSG owed fiduciary duties to the FLP, including the duty of care, the duty of loyalty, the duty to not self-deal, and the duty to not commit waste. *See, e.g., Gearhart Indus. v. Smith Int'l*, 741 F.2d 707 (5th Cir. 1984); *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1998); *Miller v. Lucas*, 2015 Tex. App. LEXIS 5195 at * 9 (Tex. App. – Fort Worth, 2015) ("a fiduciary owes his principal a high duty of good faith, fair dealing, honest performance, and strict accountability").

28. The duty of loyalty generally required MSG to manage the FLP and its property and businesses such that he put its interests ahead of his own and such that he did not personally profit, as the expense of the FLP. *See, e.g., Moody v. Nat'l Western Life Ins. Co.*, 634 S.W.3d 256, 275 (Tex. App. – Houston [1st Dist.] 2021). A fiduciary may profit so long as his profit is incidental to the company's, and the fiduciary may deal with the company, so long as such dealing is fair, which is subject to strict scrutiny. Where a fiduciary engages in dealing with the company, it is his burden to prove the fairness of the transaction to the company. *See, e.g., Texas Bank & Trust v. Moore*, 595 S.W.2d 502, 508-09 (Tex. 1980). The duty of care generally required MSG

to handle his corporate duties with such care as an ordinarily prudent man would use under similar circumstances." *Gearhart Indus.*, 741 F.2d at 720. Generally, because business decisions are subject to the business judgment rule, violating the duty of care requires at least gross negligence. *See, e.g.*, *FDIC v. Schreiner*, 892 F. Supp. 869, 884 (W.D. Tex. 1995).

29. MSG breached his fiduciary duties through all of the ways stated above and as will be demonstrated at trial. Pritchard seeks, by counterclaim, for the Trustee's interests as indirect equity holder of the FLP to be setoff or forfeited as a result of the damage that these breaches and torts caused the FLP, with respect to any portion of the final liquidation proceeds of the FLP that the Trustee would otherwise be entitled to.

30. Texas recognizes the right of setoff. *See Bandy v. First State Bank*, 835 S.W.2d 609, 618 (Tex. 1992). Here, upon its liquidation, the FLP will owe MSG a portion of the proceeds remaining. MSG owes the FLP for his breaches of fiduciary duty. The question of mutuality— whether the debts are mutual between the same parties—is a difficult one to assess under Texas law due to the trusts being the actual equity owners of the FLP. However, there is mutuality between the Trustee and the FLP, and that is what matters for purposes of the mutual claims, for the setoff right is measured as of now and not as of some prior time.

31. Namely, the MSG estate owes the FLP damages for MSG's prepetition breaches of fiduciary duty, even though the Claims Order makes clear that that claim cannot be recovered as a monetary claim, but may be recovered under setoff. The FLP, upon its distribution, will owe the MSG estate resulting proceeds. This is because, whether MSG owned an interest in the FLP directly, or through one or more trusts, is immaterial: all of the same became property of his estate under the administration of the Trustee, and it is his estate, and therefore the Trustee, that will be owed the payment. So, how it gets to the Trustee is immaterial: it will get to the Trustee, for the estate, if there is anything to pay. There is therefore mutuality.

32. The Trustee's remaining arguments that the FLP cannot effectuate a setoff is wrong. First, it is not a setoff against G&G. MSG, and not G&G, owed the fiduciary duties to the FLP that MSG breached, and it is MSG, not G&G, that is entitled to any proceeds upon the final liquidation of the FLP. Second, this claim was expressly preserved in the Claims Order. Third, there is no prohibition under Texas law against setting off a debt against an equity interest; rather, it is the setting off of one obligation against another, and both are "obligations." Fourth, now that the FLP is being liquidated, MSG's and his estate's interests are converted from equity interests into claims, in that MSG and his estate have a claim; *i.e.* a right to payment, from the liquidating FLP.

33. With respect to forfeiture, equitable forfeiture is a remedy available under Texas law for a breach of fiduciary duty, when the breach is "clear and serious." *See, e.g., Swinnea v. ERI Consulting Eng'rs Inc.*, 481 S.W.3d 747, 753 (Tex. App. – Tyler, 2016). *See also Cooper v. Sanders H./Richard T. Mullen Inc.*, 2016 Tex. App. LEXIS 9253 at * 31 (Tex. App. – Dallas, 2016). Actual damages need not be proven for equitable forfeiture. *See ERI Consulting Eng'rs Inc. v. Swienna*, 318 S.W.3d 867, 874 (Tex. 2010). The remedy of constructive trust is also available for a breach of fiduciary duty. *See, e.g., Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex. 1974). MSG's breaches of his fiduciary duties are "clear and serious," especially given the special trust placed by his parents and siblings on him to manage the FLP for all of the siblings' benefit.

34. While equitable forfeiture and constructive trust are usually limited to the profits of the breach of fiduciary duty, this is not a limitation. *See, e.g., ERI Consulting*, 318 S.W.3d at 873 ("courts may fashion equitable remedies such as . . ."). Here, because MSG has received a discharge, and because he no longer has the fruits of his torts to account with or to disgorge, the only remaining equitable remedy is that he and his estate not recover any distribution from the

very entity that he committed those torts against; *i.e.* that neither he nor the estate share in any remaining proceeds upon the liquidation of the FLP.

35. It would be highly inequitable to permit MSG, and therefore his estate, to share equally with his siblings in the distribution of those proceeds when he has for years taken more than his share from the FLP at the expense of his siblings, who are equal indirect interest holders with him. In effect, he has "prepaid" himself any entitlement to proceeds, and, under principles of restitution, equitable equalization, and equitable reallocation, the Court can and should deem that MSG, and therefore his estate, have already been paid more than their fair share of the value of the FLP such that all value that remains will be split between the remaining indirect interest holders to the exclusion of MSG and his estate.

36. This is also appropriate under the FLP partnership agreement. Section 6.1 of that agreement requires that any distribution from the FLP be "pro rata" to the partners in the FLP. Section 11.4(b) requires that any funds paid upon a liquidation be paid "to the Partners in the amount equal to the credit balances in their capital accounts." MSG, by taking out money and property of the FLP and not sharing it pro-rata with the others, altered his indirect capital account such that there is a different balance, and such that the other partners need to be paid first before the MSG capital account will share, in order that sections 6.1 and 11.4(b), in addition to equity, be properly served.

37. Finally, Pritchard claims her reasonable attorney's fees and expenses incurred herein under section 38.001 of the Texas Civil Practice and Remedies Code and under the Texas Civil Theft statute.

38. The prevailing party in an action for breach of an oral contract is entitled to its reasonable attorney's fees and expenses. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8); TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b). Prichard, if she prevails, is entitled to those

fees and expenses even though she does not recover any monetary damages against the Trustee. *See, e.g., Rohrmoos Venture v. UTSW DVA Healthcare LLP*, 578 S.W.3d 469, 486 (Tex. 2019); *Essex Crane Rental Corp. v. Striland Constr. Co.*, 753 S.W.2d 751, 758 (Tex. App. – Dallas, 1988) (holding that defendant who successfully prosecutes a counterclaim within the operation of the statute is entitled to attorney's fees). *See also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (requiring liberal construction of the statute).

39. If Pritchard prevails on her claims that MSG committed civil theft against the FLP through his misappropriation of its property, then she is also entitled to attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.002 (defining "theft" as "unlawfully appropriating property"); TEX. PENAL CODE ANN. § 31.03(a) ("[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property").

40. The amount of any attorney's fees and expenses award that the Court may award Pritchard should be handled through post-trial motion practice as provided for in Rule 54(d).

## IV. CONCLUSION

41. The trial of this Adversary Proceeding will mostly involve questions of fact. As such, this Brief is fairly short. But, from those facts will flow two conclusions: (i) there is no Alleged Debt and there never was; and (ii) MSG committed massive breaches of fiduciary duty and trust against his very siblings. This Court can and should do something about this, and that is to have MSG and his estate forfeit any benefits from the liquidation of the FLP.

RESPECTFULLY SUBMITTED this 9th day of February, 2022.

                                    **MUNSCH HARDT KOPF & HARR, P.C.**

                                    By: /s/ Davor Rukavina
                                        Davor Rukavina, Esq.
                                        Texas Bar No. 24030781
                                        Thomas D. Berghman, Esq.
                                        Texas Bar No. 24082683
                                        3800 Ross Tower
                                        500 North Akard St.
                                        Dallas, Texas 75201
                                        Telephone: (214) 855-7500
                                        Facsimile: (214) 978-4375

                                    **ATTORNEYS FOR LESLIE PRITCHARD**

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that, on this the 9th day of February, 2022, true and correct copies of this document were served upon Kent Ries, Esq. via e-mail through the Court's ECF system.

                                    By: /s/ Davor Rukavina
                                        Davor Rukavina, Esq.