



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed February 11, 2022**

_____
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL STEPHEN GALMOR, | § | CASE NO. 18-20209-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| And | § | |
| | § | |
| GALMOR'S/G&G STEAM SERVICE, INC., | § | CASE NO. 18-20210-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| KENT RIES, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-2003 |
| | § | |
| GALMOR FAMILY LIMITED PARTNERSHIP and GALMOR MANAGEMENT, L.L.C., | § | |
| | § | |
| Defendants. | § | |

**JOINT PRETRIAL ORDER**

Pursuant to Local District Court Rule 16.4 the parties file this Joint Pretrial Order as follows:

**A. Summary of Claims and Defenses of each Party**

1. Plaintiff's claims are for suit on debt, based on a breach of contract or, alternatively, quantum meruit, unjust enrichment, money had and received and/or suit on account. The claims are generally described as follows:

   a) Invoices billed by Galmor's/ G&G Steam Service, Inc. ("G&G") to the Galmor Family Limited Partnership ("GFLP") for products and services requested by the GFLP from G&G. That unpaid amount of these invoices totals $384,904.74.

   b) Fund advances requested by the GFLP from G&G. The unpaid amount of these advances totals $186,341.19.

   c) Salaries paid by G&G that are the responsibility of, and are properly allocated to, the GFLP. The unpaid amount of these salaries totals $500,000.00.

   d) Pre and post judgment interest on the above.

   e) Legal fee's incurred in the collection of the above.

2. Defendants' defenses and counterclaims are generally described as follows:

   a) That all of the Plaintiff's claims are not valid or recoverable because none of the disputed claims and debt exist or ever existed, including because the GFLP never agreed to pay the alleged debts, there is no written agreement or contract, Michael Stephen Galmor ("MSG") is not credible in alleging an oral contract or promise, and the alleged debts did not benefit the GFLP.

    b) To the extent that any of the Plaintiff's claims are allowed, the Defendants seek a reduction in such claims based on the breaches of fiduciary duty, self-dealings, and frauds committed on the GFLP by Galmor during the time that Galmor managed the GFLP and used the GFLP's property for his personal benefit.

    c) The Defendants also assert that any equity distribution rights otherwise payable by the GFLP directly or indirectly to Galmor should be forfeited, and therefore that any such rights of his estate should also be forfeited, based on the breaches of fiduciary duty, self-dealings, and frauds committed on the GFLP by Galmor during the time that Galmor managed the GFLP and used the GFLP's property for his personal benefit, or that any such distribution rights should be setoff against based on such breaches, self-dealings, and frauds.

    d) The Defendants seek their reasonable attorney's fees and expenses incurred in this litigation.

### B. Statement of Stipulated Facts

**A.**     **THE GALMOR FAMILY**

1. Bobby Don Galmor ("<u>BDG</u>") and Shirley Joe Galmor ("<u>SJG</u>") were married for many years and raised a family in and near Shamrock, Texas.

2. BDG and SJG had five children together, all of whom are still alive: (i) MSG; (ii) Leslie Pritchard ("<u>Pritchard</u>"); (iii) Traci Coleman; (iv) Rudas (Mark) Galmor; and (v) Shawn Zaiontz.

3. BDG passed away on April 3, 2013.

4. SJG passed away in March, 2017.

5. While they were alive, BDG and SJG created significant wealth for their family, including through BDG's work in oilfield services and his creation of a company that provided for steam cleaning of pipes in that industry. Through investments and real estate purchases, including oil and gas interests, ranching, farming, and land investment, BDG and SJG grew their wealth. As they approached old age, and in light of health issues that both were having, they sought and obtained legal, accounting, and financial advice in the nature of "estate planning."

6. To that end, a trust was created by and for BDG and SJG.

**B. THE DEBTORS**

7. MSG filed a voluntary petition for relief under Chapter 11 on June 19, 2018, thereby initiating Bankruptcy Case No. 18-20209. The Court ordered the conversion of his case to Chapter 7 on January 8, 2019. Kent Ries (the "Trustee") is the duly appointed Chapter 7 trustee of the MSG estate.

8. During all times relevant to this Adversary Proceeding, MSG was the President of G&G and the sole owner of G&G.

9. During all such times, G&G had multiple businesses, one of which was operating a rock quarry.

10. G&G filed a voluntary petition for relief under Chapter 11 on June 19, 2018, thereby initiating Bankruptcy Case No. 18-20210. The Court ordered the conversion of its case to Chapter 7 on January 8, 2019. The Trustee is the duly appointed Chapter 7 trustee of the G&G estate.

**C. THE DEFENDANTS**

11. The GFLP was created as part of the estate planning of BDG and SJG.

12. The GFLP is a limited partnership organized and existing under the laws of the State of Texas.

13. The GFLP was primarily capitalized with various transfers of real property, oil and gas interests, and other property of BDG and SJG,.

14. The GFLP's sole general partner is Galmor Management, L.L.C. ("GM").

15. During all times relevant to this Adversary Proceeding, MSG was the manager of GM. As such, he also managed the GFLP.

16. During all times relevant to this Adversary Proceeding, MSG managed the GFLP as its sole manager or officer, through his role with GM.

17. Pritchard became the sole manager or officer of the GFLP in August, 2019.

18. Among the assets of GFLP during all times relevant to this Adversary Proceeding was certain real property that G&G operated to extract and mine rock; *i.e.* a rock quarry. The rock that G&G would extract would then be sold by G&G in the oilfield services business, to third parties, such as counties, primarily for road construction. G&G paid all costs and expenses of the rock quarry and, in turn, was entitled to all revenue and profit from the rocks that it extracted.

19. In return for using the GFLP's land as the rock quarry, G&G was obligated to pay the GFLP a royalty per ton of rock that G&G extracted from the rock quarry.

E. **BANKRUPTCY AND GFLP LIQUIDATION DEVELOPMENTS**

20. Prichard and MSG (and others) were involved in prepetition litigation in state court regarding, generally, the legitimacy of the will and probate of SJG and the actions of MSG as trustee of various trusts and as manager of the GFLP.

21. On September 4, 2018, Pritchard, on behalf of herself, the GFLP, and other entities filed a complaint against MSG and G&G with the Court, thereby initiating Adversary Proceeding

No. 18-02010 (the "Pritchard Complaint"). Among other things, by the Pritchard Complaint, Pritchard alleged various torts against MSG, and also sought objections to both the dischargeability of debt and to MSG's discharge under sections 523 and 727 of the Bankruptcy Code.

22. In the MSG bankruptcy case, Pritchard filed proof of claim number 15, as later amended, asserting claims on behalf of herself, the GFLP, and other entities based on MSG's alleged fraudulent transfers of property to himself, breaches of fiduciary duty, misappropriation, and other alleged torts as pled in the Pritchard Complaint.

23. In the G&G bankruptcy case, Pritchard filed proof of claim number 32, as later amended, asserting claims on behalf of herself, the GFLP, and other entities based on MSG's alleged fraudulent transfers of property to himself, breaches of fiduciary duty, misappropriation, and other alleged torts as pled in the Pritchard Complaint.

24. Subsequently, Pritchard, MSG, and others, but not the Trustee, entered into a settlement agreement pursuant to which Pritchard generally agreed to dismiss the Pritchard Complaint. On February 20, 2020, the Court accordingly dismissed the Pritchard Complaint and related adversary proceeding.

25. The Trustee subsequently objected to Pritchard's claim number 32 on the basis that the claim had been released or disallowed as a result of the foregoing settlement and dismissal of the Pritchard Complaint. On October 27, 2020, the Court entered an order in the G&G case disallowing claim number 32 in full.

26. The Trustee also objected to Pritchard's claim number 15 in the MSG case on the basis that the claim had been released or disallowed as a result of the foregoing settlement and dismissal of the Pritchard Complaint.

27. In the MSG bankruptcy case, on December 10, 2020, the Court entered its *Agreed Order Sustaining Trustee's Objection to Claim No. 15 of Leslie Pritchard* [docket no. 201] (the "Claim Order"). By the same, Claim No. 15 was disallowed, but without prejudice to this Adversary Proceeding, as otherwise provided in the Claim Order.

28. On August 30, 2019, the Trustee filed a complaint, thereby initiating Adversary Proceeding No. 19-02006 ("Adversary 19-02006"), to generally collect from the GFLP the claims that MSG and G&G alleged as owing on their schedules, and to compel the liquidation of the GFLP so that it may pay its debts and distribute any remaining proceeds to its interest holders.

29. Pritchard answered the Trustee's complaint in Adversary 19-02006.

30. After negotiations with the Trustee, on April 24, 2020, the Court entered its *Agreed Judgment: (i) Ordering Supervised Liquidation of Texas Entities; (ii) Appointing Managers of the Same; and (iii) Severing Remaining Claims* [docket no. 26] (the "Agreed Judgment").

31. Pursuant to the Agreed Judgment, and as more fully set forth therein, the Court: (i) ordered the liquidation of the GFLP and the GM; (ii) appointed the Trustee to liquidate and manage the real properties owned by the GFLP; (iii) appointed Pritchard to liquidate and manage all other properties of the GFLP; (iv) appointed Pritchard to wind-down and liquidate the GFLP and the GM; and (v) severed the Trustee's claims against the GFLP and the GM into this Adversary Proceeding.

32. Pursuant to the GFLP Liquidation Judgment, the Trustee has sold the real estate of the GFLP and, after payment of secured debt and other things, presently holds approximately $1,642,742.50in remaining proceeds of such sales.

## C. List of Contested issues of Fact[1]

1. Whether MSG had the authority to contract for both G&G and the GFLP (and GM) regarding the transactions that form the Trustee's claims.

2. Whether MSG owed fiduciary duties to the GFLP, including the duty of care, the duty of loyalty, and the duty to not engage in self-dealing.

3. Whether the GFLP and/or GM ever owed any debt to MSG or to G&G.

4. Whether MSG ever advanced any funds to the GFLP or expended advanced for its benefit.

5. Whether the GFLP ever agreed to repay any such funds or advances.

6. Whether the GFLP was ever benefited by any such funds or advances.

7. Whether the GFLP ever agreed to repay any funds or advances to MSG.

8. Whether there was any meeting of the minds between the GFLP and MSG on the repayment of such funds or advances, including on all material terms.

9. Whether G&G ever advanced any funds to the GFLP or expended advanced for its benefit.

10. Whether the GFLP ever agreed to repay any such funds or advances.

11. Whether the GFLP was ever benefited by any such funds or advances.

12. Whether the GFLP ever agreed to repay any funds or advances to G&G.

13. Whether there was any meeting of the minds between the GFLP and G&G on the repayment of such funds or advances, including on all material terms.

---

[1] The parties agree that, where an issue of fact is more properly an issue of law, or an issue of law is more properly an issue of fact, no party will be prejudiced by referring to the issue one way or the other.

14. Whether MSG and/or G&G, and therefore the Trustee, waived any ability to collect on any of the alleged debt by failing to take steps to collect the same and by failing to carry the alleged debt on its books and records and by representing that the alleged debt did not exist.

15. Whether MSG and/or G&G, and therefore the Trustee, are estopped from alleging the existence of, or collecting on, any of the alleged debt.

16. Whether MSG and/or G&G, and therefore the Trustee, are barred by the doctrine of unclean hands from collecting on any of the alleged debt.

17. What the advances or expenses the subject of the alleged debt were actually for, and who benefited.

18. What the value, if any, of MSG's and Deena Carter's services to the GFLP was, in the event that the GFLP should reimburse the Trustee for the same.

19. Whether MSG, from funds of the GFLP, spent approximately $91,356.06 on improvements to the homestead of SJG and $45,000 to build an outdoor kitchen, which homestead was never owned by the GFLP and is in fact owned by MSG, and whether the GFLP derived any benefit from these expenditures (the "Homestead Expenditures").

20. Whether MSG caused to be transferred to himself, for no return consideration, certain farm and ranch equipment owned by the GFLP, and MSG caused the GFLP to sell certain equipment, including a Kubota tractor L48 with loader and International truck, owned by the GFLP, but then kept the proceeds for himself instead of paying them over to the GFLP, and whether MSG caused the GFLP to trade in certain other equipment, including a Kubota tractor and a Kubota mower, for new equipment titled in the name of MSG, for which transfers the GFLP derived no benefit (the "Equipment Transfers").

21. Whether MSG, from funds of the GFLP, paid approximately $50,000 in finance payments and $22,659.59 in repair expenses, both for farm equipment, even though the GFLP did not own this equipment and in fact MSG owned it, and whether the GFLP derived any benefit from these expenditures (the "Farm Equipment Expenditures").

22. Whether MSG, for no return consideration, caused the GFLP to transfer certain real property that it owned, including the Gin Yard and the Miller property, to himself, to Johnny and Deena Carter, and to Jacey Carter, and some of which land Jacey Carter then transferred to MSG (the "Land Transfers").

23. Whether MSG, from funds of the GFLP, paid *ad valorem* taxes on properties that the GFLP did not own, including his own properties, and whether the GFLP derived any benefit from these expenditures (the "Tax Expenditures").

24. Whether MSG caused the GFLP to pay for feed, for the benefit of Galmor Land and Cattle, a company owned by MSG and in which the GFLP had no interest, at Wheeler General Store in the approximate amount of $60,000, and whether the GLFP derived any benefit from these expenditures (the "Cattle Feed Expenditures").

25. Whether MSG ran cattle owned by himself and or Galmor Land and Cattle on land owned by the GFLP, for which the GFLP derived no value and for which MSG and Galmor Land and Cattle did not pay the GFLP (the "Cattle Running").

26. Whether MSG otherwise disposed of, and is unable to account for, numerous vehicles and equipment owned by the GFLP for which the GFLP derived no value and was not paid, and which vehicles and equipment do not presently exist (the "Missing Vehicles and Equipment").

27. Whether MSG intentionally caused G&G to pay the GFLP royalties on the rock quarry in amounts far below market and in amounts below what the royalty price was when BDG was alive, thus intentionally underpaying the GFLP for rock mined and quarried from the GFLP's land (the "Royalty Underpayments).

28. Collectively, the Homestead Expenditures, the Equipment Transfers, the Farm Equipment Expenditures, the Land Transfers, the Tax Expenditures, the Cattle Feed Expenditures, the Cattle Running, the Missing Vehicles and Equipment, and the Royalty Underpayments are referred to herein as the "Fiduciary Claims."

29. Whether MSG breached his fiduciary duties to the GFLP, including by committing waste, self-dealing, breaching the duty of loyalty, and breaching the duty of care, through the Fiduciary Claims.

30. Whether, as a result of the Fiduciary Claims, through setoff or equitable forfeiture, the Trustee should forfeit any distribution of the proceeds of the liquidation of the GFLP as equity proceeds, due to the misdeeds and torts of MSG at the time that he was a fiduciary of the GFLP.

### D. List of Contested issues of Law

1. Whether an enforceable contract, including an oral one, existed whereby the GFLP ever agreed to repay any alleged funds advanced to it or for its benefit, including whether there was ever (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.

2. Whether, if there was any such enforceable contract, G&G waived any claims or rights against the GFLP it may have had thereunder by not taking timely action to collect, not reporting the asset, not listing the asset on its current books and records, and writing off any receivable prepetition.

3. Whether, if there was any such enforceable contract, MSG waived any claims or rights against the GFLP he may have had thereunder by not taking timely action to collect, not reporting the asset, not listing the asset on his books and records, and writing off any receivable prepetition.

4. Whether, if there was any such enforceable contract, the GFLP breached it.

5. Whether the Plaintiff has any claim for *quantum meruit* and whether MSG and/or G&G provided any valuable services or materials to the GFLP, which the GFLP accepted, under such circumstances that the GFLP was reasonably notified that MSG and/or G&G expected to be paid by the GFLP for such services or materials.

6. Whether MSG breached his fiduciary duties to the GFLP, including by committing waste, self-dealing, breaching the duty of loyalty, and breaching the duty of care, through the Fiduciary Claims.

7. Whether the Plaintiff is estopped from arguing that the GFLP owes any alleged debt to MSG or to G&G based on MSG's prepetition representations, including pursuant to Texas statute, that no such debt existed.

8. Whether MSG's direct or indirect equity interest in and to a distribution by the GFLP of the proceeds of its liquidation should be forfeited based on his alleged torts to the GFLP committed at the time that he managed the GFLP.

9. Whether limitations bars some of the Plaintiff's claims.

10. Whether MSG committed actionable torts against the GFLP for and related to the Fiduciary Claims such that, absent a discharge in bankruptcy, he would be monetarily liable to the GFLP for those torts, including breach of fiduciary duty, self-dealing, and defalcation.

11. Whether, as a result of, and remedy for, such torts of MSG, MSG, and therefore the Trustee, can and should forfeit any equity interest, direct or indirect, that they may have to a share of the proceeds of the liquidation of the GFLP, through principles of setoff, equitable forfeiture, and otherwise.

### E. Estimated length of trial

1. Plaintiff estimates two days for trial. This assumes Plaintiff's motion to dismiss the claims of MSG is granted.

### F. Additional Matters

1. All parties have consented to the Court's entry of final orders, in the event that any matter herein is not a core proceeding.

2. No party has requested a jury trial and all agree that this Adversary Proceeding will be tried to the bench.

3. In the event that the Court concludes that any party is entitled to an award of attorney's fees and expenses incurred in this Adversary Proceeding, all issues related to the quantification of such an award shall be handled post-trial on motion practice pursuant to Rule 54(d).

### ### END OF ORDER ###

Respectfully submitted:

/s/ Kent Ries
Kent Ries, Attorney for Plaintiff
State Bar No. 16914050
2700 S. Western St., Suite 300
Amarillo, Texas 79109
 (806) 242-7437
(806) 242-7440 - Fax

AND

Munsch, Hardt, Kopf & Harr
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659


/s/ Davor Rukavina
Davor Rukavina
Texas Bar No. 24030781
Attorney for Defendants

United States Bankruptcy Court

Northern District of Texas

Ries,
    Plaintiff

Galmor Family Limited Partnership,
    Defendant

Adv. Proc. No. 20-02003-rlj

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0539-2 | User: admin | Page 1 of 2 |
| Date Rcvd: Feb 11, 2022 | Form ID: pdf001 | Total Noticed: 2 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

\+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Feb 13, 2022:**

| Recip ID | Recipient Name and Address |
|---|---|
| aty | + Jerry D. McLaughlin, P.O. Box 9375, Amarillo, TX 79105-9375 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| ust | + Email/Text: ustpregion06.da.ecf@usdoj.gov | Feb 11 2022 21:30:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |

TOTAL: 1

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.
NONE

# NOTICE CERTIFICATION

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 13, 2022      Signature:      /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on February 11, 2022 at the address(es) listed below:

| Name | Email Address |
|---|---|
| Alysia Cordova | on behalf of Creditor Great Plains Bank acordova@mhba.com alopez@mhba.com |
| Davor Rukavina | on behalf of Defendant Galmor Management L.L.C. drukavina@munsch.com |
| Davor Rukavina | on behalf of Defendant Galmor Family Limited Partnership drukavina@munsch.com |

| | | |
|---|---|---|
| District/off: 0539-2 | User: admin | Page 2 of 2 |
| Date Rcvd: Feb 11, 2022 | Form ID: pdf001 | Total Noticed: 2 |

Davor Rukavina
 on behalf of Counter-Claimant Galmor Family Limited Partnership drukavina@munsch.com

Julian Preston Vasek
 on behalf of Defendant Galmor Family Limited Partnership jvasek@munsch.com

Julian Preston Vasek
 on behalf of Defendant Galmor Management L.L.C. jvasek@munsch.com

Kent David Ries
 on behalf of Plaintiff Kent Ries kent@kentries.com

Kent David Ries
 on behalf of Counter-Defendant Kent Ries trustee@kentries.com TX41@ecfcbis.com

Reuben L. Hancock
 on behalf of Creditor Happy State Bank rlh@rlhancock.com

Thomas Daniel Berghman
 on behalf of Counter-Claimant Galmor Management L.L.C. tberghman@munsch.com

Thomas Daniel Berghman
 on behalf of Counter-Claimant Galmor Family Limited Partnership tberghman@munsch.com

Thomas Daniel Berghman
 on behalf of Defendant Galmor Management L.L.C. tberghman@munsch.com

Thomas Daniel Berghman
 on behalf of Defendant Galmor Family Limited Partnership tberghman@munsch.com

TOTAL: 13